UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| NIMESH PATEL, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. |
| | ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| FACEBOOK, INC., | ) ) | |
| Defendant. | ) ) ) | |
| | ) | <u>DEMAND FOR JURY TRIAL</u> |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT**

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE ACTION ....................................................................................................1

PARTIES .....................................................................................................................................4

JURISDICTION AND VENUE ...................................................................................................4

SUBSTANTIVE ALLEGATIONS ..............................................................................................5

    Biometric Information and the Illinois BIPA ......................................................................5

    Facebook Collects and Stores Members' Biometric Information Without Informed
        Consent ......................................................................................................................6

    Facebook Fails to Provide a Publicly Available Written Policy Regarding the
        Retention and Destruction of Biometric Information ...............................................9

    Plaintiff's Personal Experiences ........................................................................................10

CLASS ACTION ALLEGATIONS ............................................................................................10

COUNT I .....................................................................................................................................13

    Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(b)
        (On Behalf of Plaintiff and the Class)....................................................................13

COUNT II .....................................................................................................................................15

    Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(a)
        (On Behalf of Plaintiff and the Class)....................................................................15

PRAYER FOR RELIEF ...............................................................................................................16

JURY DEMAND ..........................................................................................................................17

Plaintiff Nimesh Patel, individually and on behalf of all others similarly situated, through undersigned counsel, brings this Class Action Complaint for Violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*, against defendant Facebook, Inc. ("Facebook"), and alleges the following upon information and belief, except as to the allegations within plaintiff's personal knowledge.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.      Facebook is the largest social network in the United States and likely the world. Facebook has previously been alleged to abuse consumers' privacy rights.[1]  Plaintiff brings this class action to put an end to Facebook's latest privacy abuse – its collection, storage, and subsequent use of its users' biometric identifiers and biometric information **without informed consent**, in direct contravention of the BIPA.

2.      Biometric information is any information captured, converted, stored or shared based on a person's biometric identifier used to identify an individual.  A "biometric identifier" is any personal feature that is unique to an individual, including fingerprints, iris scans, DNA, "face geometry" (also referred to herein as "faceprint" or "facial features") and voice, among others. Biometric identification is the way of the future.  The City of Chicago has been selected by major national corporations as a "pilot testing site[] for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias."  740 ILCS 14/5(b).

3.      The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information."  740 ILCS 14/5(c).  "For

---

[1]      *See* https://epic.org/privacy/facebook/facebook_and_facial_recognitio.html (last visited May 12, 2015).

example, social security numbers, when compromised, can be changed.  Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

4.      In recognition of this legitimate concern over the security of biometric information, the Illinois Legislature enacted the BIPA, which provides, *inter alia*, that private entities like Facebook may not obtain a person's biometric information in any way unless it first: (1) informs that person in writing that biometric information will be collected or stored; (2) informs that person in writing of the specific purpose and length of term for which such biometric information is being collected, stored and used; ***and*** (3) receives a written release from the person for the collection of his or her biometric information.  *See* 740 ILCS 14/15(b).

5.      In direct violation of all three prongs of §15(b) of the BIPA, Facebook is actively collecting, storing, and using the biometric information of its reportedly more than one ***billion*** users without any written notice or informed written consent, including millions of Illinois residents.

6.      Specifically, sometime in late 2010, Facebook began implementing its "tag suggestion" feature ("Tag Suggestions"), which utilizes sophisticated facial recognition software to automatically match pictures with names.[2]  Facebook's software collects, analyzes and compares the facial features in user-uploaded photographs and saves what is known as a "face template" in Facebook's database.  When a user uploads a photograph, Facebook's Tag Suggestions compares the faces of any individual in that photograph to the face templates in the Facebook database.  If there is a match, Facebook suggests that the user "tag" the person in the photograph with the appropriate

---

[2]      *See* https://www.facebook.com/notes/facebook/making-photo-tagging-easier/467145887130 (last visited May 12, 2015).

name. Facebook's facial template database is so large that it dwarfs the FBI's.[3] Indeed, at a hearing before the U.S. Senate on Capitol Hill in 2012, Senator Al Franken described Facebook as the "world's largest privately held database of face prints – *without the explicit consent of its users*."[4]

7.  Indeed, Facebook never gave its members notice that their biometric information would be collected, stored or used, nor did Facebook inform its users of the specific purpose and length of term for which their biometric information would be collected, stored and used. Rather, Facebook announced that it was collecting such data only *after* it had already begun doing so. Facebook also never received a written release from its members for the collection, storage and use of their biometric information. Indeed, Facebook members are not even given an opportunity to provide a written release because Facebook enables Tag Suggestions on its users' accounts by *default*.

8.  Facebook's collection, storage and use of its members' biometric information has been the subject of a hearing before the U.S. Senate, and European regulators forced Facebook to pull Tag Suggestions.

9.  Moreover, §15(a) of the BIPA provides that:

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

---

[3]     *See* http://www.washingtonpost.com/blogs/the-switch/wp/2014/10/17/the-biometrics-revolution-is-already-here-and-you-may-not-be-ready-for-it/ (last visited May 12, 2015).

[4]     http://www.nytimes.com/2012/09/22/technology/facebook-backs-down-on-face-recognition-in-europe.html?_r=0 (last visited May 12, 2015).

740 ILCS 14/15(a).  Facebook does not provide its users with a publicly available retention schedule or guidelines for permanently destroying their biometric information as required by the BIPA. Therefore, defendant has also violated §15(a) of the BIPA.

10.    Plaintiff brings this action individually and on behalf of a proposed class in order to stop Facebook's violations of the BIPA and to recover statuary damages for the unauthorized collection, storage and use of their biometric information in violation of the BIPA.

## PARTIES

11.    Plaintiff Nimesh Patel is, and has been at all relevant times, a resident and citizen of the state of Illinois and a resident of Cook County, Illinois.  Plaintiff has been a Facebook user since at least 2009.

12.    Defendant Facebook is a Delaware corporation with its headquarters and principal executive offices at 1601 Willow Road, Menlo Park, California 94025.  Facebook is a citizen of the states of Delaware and California.  Facebook is also registered to conduct business in the State of Illinois (file number 66267067) and maintains an office in Cook County.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 in that plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

14.    Jurisdiction is also proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA"), because: (i) the proposed class consists of well over 100 members; (ii) the parties are minimally diverse, as members of the proposed class, including plaintiff, are citizens of a state different from defendant's home states; and (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.  It was reported that as of 2010, there were millions of Facebook users in Illinois.  The estimated number of Illinois Facebook users impacted by

defendant's conduct multiplied by BIPA's statutory liquidated damages figure ($5,000 for each intentional or reckless violation and $1,000 for each negligent violation) easily exceeds CAFA's $5,000,000 threshold.

15.     Venue is proper in this District because defendant is registered to conduct business in Illinois, conducts business transactions in this District, and the causes of action arose, in substantial part, in this District.  Venue is additionally proper because plaintiff resides in this District.

## SUBSTANTIVE ALLEGATIONS

**Biometric Information and the Illinois BIPA**

16.     A "biometric identifier" is any personal feature that is unique to an individual, including fingerprints, iris scans, DNA, facial features and voice, among others.[5]

17.     The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information."  740 ILCS 14/5(c).  "For example, social security numbers, when compromised, can be changed.  Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions."  *Id.*

18.     In recognition of this legitimate concern over the security of biometric information, the Illinois Legislature enacted the BIPA, which provides, *inter alia*, that:

> No private entity may collect, capture, purchase, receive through trade, or otherwise
> obtain a person's or a customer's biometric identifier or biometric information,
> **unless it first**:

---

[5]     The BIPA defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers." 740 ILCS 14/10.  Plaintiff herein uses the terms "biometric information" and "biometric identifier" interchangeably.

(1)     *informs* the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2)     *informs* the subject or the subject's legally authorized representative in writing of the *specific purpose and length of term* for which a biometric identifier or biometric information is being collected, stored, and used; *and*

(3)     receives a *written release* executed by the subject of the biometric identifier or biometric information or the subject's legally authorized *representative*.

740 ILCS 14/15(b).

19.     Section 15(a) of the BIPA further provides that:

A private entity in possession of biometric identifiers or biometric information *must develop a written policy, made available to the public*, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

20.     As alleged herein, Facebook's practices of collecting, storing and using its members' biometric information without informed written consent violates all three prongs of §15(b) of the BIPA. Facebook's failure to provide a publicly available written policy regarding its schedule and guidelines for the retention and permanent destruction of its users' biometric information violates §15(a) of the BIPA.

**Facebook Collects and Stores Members' Biometric Information Without Informed Consent**

21.     Facebook operates the largest online social network in the world with five new profiles being created every second and over one *billion* users and millions of users in Illinois alone.

22.     The Facebook network allows its members to create a "profile" page where members can upload photographs and communicate and interact with other Facebook members who also upload photographs to their own profiles. Member photographs have always been a vital part of the Facebook experience, with Facebook members uploading approximately *300 million photos per day*.

- 6 -

23.     Facebook allows its members to "tag" themselves and other members who appear in a user-uploaded photograph.  A tag identifies each person in a photograph and also acts as a hyperlink to that person's profile, which may display more photographs of that person, thereby increasing user engagement.  This basic "tagging" feature has existed since the early days of Facebook.

24.     On or about December 15, 2010, Facebook announced an upcoming new feature called Tag Suggestions.[6]  Tag Suggestions took photo tagging one step further by utilizing sophisticated facial recognition software to automatically match photographs of people with their proper names.

25.     Facebook's sophisticated facial recognition technology works by collecting and analyzing the facial features of individuals appearing in a user-uploaded photograph and generating a "biometric signature" or "face template" of each individual's face.  Facebook stores those face templates in a large database (which dwarfs the FBI's facial recognition database), and as Facebook members continue to manually tag friends, family and other people they recognize in a photograph, Facebook's software automatically compares those images to the face templates in its database.  If there is a match, Facebook suggests that a user tag the photograph with the appropriate name.

26.     Facebook's Tag Suggestions collects, stores, and uses its members' biometric information without notice and without informed written consent, in violation of all three prongs of §15(b) of the BIPA.

27.     *First*, in direct contravention of §15(b) of the BIPA, Facebook never informed its members that it would collect, store and use their biometric facial information.  Rather, on or about June 7, 2011, Facebook simply announced that it was collecting such biometric information *after* it

---

[6]     https://www.facebook.com/notes/facebook/making-photo-tagging-easier/467145887130 (last visited May 12, 2015).

- 7 -

had already begun doing so.[7]  To be sure, Facebook later admitted that "we should have been more clear during the roll-out process when this [feature] became available."[8]

28.   **Second**, in direct contravention of §15(b) of the BIPA, Facebook never informed its users of the specific purpose and length of term for which their biometric information would be collected, stored and used.

29.   **Third**, in direct contravention of §15(b) of the BIPA, Facebook never received a written release from its members before it began to collect, store and use their biometric information. Indeed, Facebook members are not even given an opportunity to provide a written release because Facebook enables Tag Suggestions on its users' accounts by **default**.  By contrast, some of Facebook's other features, like its "Nearby Friends" feature, which utilizes geolocation to identify a user's friends who may be nearby, provides users with several screens of information regarding the feature before asking the member to **opt in**.

30.   These issues were the subject of a U.S. Senate hearing in 2012 where Minnesota Senator Al Franken took issue with Facebook's practice of activating Tag Suggestions by default.[9] Senator Franken was likewise concerned with Facebook's lack of transparency regarding Tag Suggestions: "How can users make an informed decision about facial recognition in their privacy settings if you don't actually tell them that you are using facial recognition?"[10] he asked.  Even more troubling is that Facebook could not assure the Senate that Facebook would not sell its users' biometric information to third parties in the future, which is also prohibited by the BIPA.  *See* 740

---

[7]      *See id*.

[8]      *See* https://epic.org/privacy/facebook/facebook_and_facial_recognitio.html (last visited May 12, 2015).

[9]      *See* http://venturebeat.com/2012/07/18/facebook-hit-with-tough-questions-on-facial-recognition-in-senate-hearing/ (last visited May 12, 2015).

[10]     *See id*.

ILCS 14/15(c).  In an e-mail statement following the hearing, Senator Franken said that he hoped Facebook would offer a way for American users to ***opt in*** to its photographic database: "I believe that we have a fundamental right to privacy, and that means people should have the ability to choose whether or not they'll be enrolled in a commercial facial recognition database."[11]

31.     Facebook's collection, storage and use of its members' biometric information also drew scrutiny from European regulators from countries including Ireland, Belgium and the Netherlands.  Indeed, as a result, Facebook was forced to pull Tag Suggestions, promising European regulators that it would stop using facial recognition software and delete the data it stored, and also promised European regulators that it would not reinstate the feature until it got their approval.  In an e-mail statement, Senator Franken said: "I encourage Facebook to provide the same privacy protections to its American users as it does its foreign ones."[12]

32.     Facebook's intentional, reckless, or negligent failure to provide its members with written notice that their biometric information would be collected, stored and used; to inform members the specific time and purpose for which such biometric information would be stored; and to obtain its members' written release for the collection, storage and use of their biometric information, violates all three prongs of §15(b) of the BIPA.

**Facebook Fails to Provide a Publicly Available Written Policy**
**Regarding the Retention and Destruction of Biometric Information**

33.     Facebook does not comply with §15(a) of the BIPA's requirement to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information."  740 ILCS 14/15(a).

---

[11]     *See* http://www.nytimes.com/2012/09/22/technology/facebook-backs-down-on-face-recognition-in-europe.html?_r=0 (last visited May 12, 2015).

[12]     *See id.*

**Plaintiff's Personal Experiences**

34.     Plaintiff is a resident of Chicago, Illinois.  Plaintiff has been a member of Facebook since at least 2009.  Since joining Facebook, plaintiff has uploaded and posted many photographs to Facebook's network that include images of his face, and plaintiff has tagged himself in many of those photographs.  Plaintiff has also been tagged in photographs by other Facebook users.

35.     Using these manually tagged images of plaintiff, Facebook created a biometric face template of plaintiff's face that Facebook stores and uses without authorization.

36.     Plaintiff did not receive notice that Facebook would collect, store or use his biometric information.

37.     Plaintiff never provided informed consent, in writing or otherwise, to Facebook's collection, creation, storage, or use of his face template or any of his biometric information.

**CLASS ACTION ALLEGATIONS**

38.     Plaintiff brings this lawsuit pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure on behalf of the following proposed class (the "Class"):

> *All persons who, while residing in Illinois, had their biometric identifiers collected, captured, received or otherwise obtained by Facebook.*

39.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

40.     Specifically excluded from the Class are defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint-venturers, or any entities controlled by defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

41.     *Numerosity*.  The members of the Class are so numerous that individual joinder is impracticable.  Upon information and belief, plaintiff alleges that the Class contains many thousands of members.  Although the precise number of Class members is unknown to plaintiff, the true number of Class members is known by defendant, and thus, may be notified of the pendency of this action by first class mail, electronic mail and/or published notice.

42.     *Existence and predominance of common questions of law and fact*.  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)     whether defendant collected, captured, received, or otherwise obtained biometric identifiers or biometric information from plaintiff and the Class;

(b)     whether defendant informed plaintiff and the Class before collecting, using, and storing their biometric identifiers or biometric information, as required by §15(b) the BIPA;

(c)     whether defendant informed plaintiff and the Class of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored and used, as required by §15(b) the BIPA;

(d)     whether defendant obtained a written release, as defined by the BIPA, from plaintiff and the Class to collect, store, and use their biometric identifiers or biometric information;

(e)     whether defendant used biometric identifiers to identify plaintiff and the Class;

(f)     whether defendant provided a publicly available written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometrics information, as required by §15(a) of the BIPA;

- 11 -

(g)     whether defendant's violations of the BIPA were committed intentionally, recklessly or negligently;

(h)     whether plaintiff and the Class are entitled to statutory damages under the BIPA and the correct measure of those damages; and

(i)     whether plaintiff and the Class are entitled to declaratory and injunctive relief.

43.     *Typicality*.  Plaintiff's claims are typical of the claims of the other members of the Class in that defendant collected, stored and used his biometric information without informed consent in the exact same manner as every other Class member.

44.     *Adequacy of representation*.  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and plaintiff intends to vigorously prosecute this action.  Further, plaintiff has no interests that are antagonistic to those of the Class.

45.     *Superiority*.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against defendant.  It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

46.     The Class may also be certified because:

        (a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the defendant;

        (b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

        (c)     defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## COUNT I

### Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(b)
### (On Behalf of Plaintiff and the Class)

47.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

48.     Section 15(b) of the BIPA provides that a private entity may not, among other things, collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

        (l)     informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

        (2)     informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

        (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . .

740 ILCS 14/15(b).

49.     Facebook is a private entity under the BIPA. *See* 740 ILCS 14/10.

50.     Plaintiff and the Class members are individuals under the BIPA. *See id*.

51.     Facebook collected plaintiff's and the Class members' "biometric identifiers" through its facial recognition software, as alleged above. *See id*.

52.     Plaintiff's and the Class members' biometric identifiers collected by Facebook constitute "biometric information" as defined by the BIPA because Facebook used those biometric identifiers to identify plaintiff and the Class members. *See id*.

53.     Facebook systematically collected, used, and stored plaintiff's and the Class members' biometric identifiers and biometric information without first obtaining the written release required by §15(b) of the BIPA.

54.     As alleged above, Facebook did not inform plaintiff or the Class members in writing that their biometric identifiers or biometric information were being collected, stored and used, as required by §15(b) of the BIPA.

55.     As alleged above, Facebook did not inform plaintiff or the Class members in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored and used, as required by §15(b) of the BIPA.

56.     By collecting, storing, and using plaintiff's and the Class members' biometric identifiers and biometric information as described herein, Facebook violated plaintiff's and the Class members' rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1 *et seq*.

57.     Facebook's violations of §15(b) of the BIPA were intentional or reckless because Facebook intentionally activated Tag Suggestions by default and without written notice as required by the BIPA and, therefore, plaintiff and the Class members had no opportunity to provide defendant with a written release, as mandated by the BIPA.

58.     Alternatively, Facebook's violations of §15(b) of the BIPA were negligent because Facebook failed to meet the applicable standard of care in ensuring that its members were informed and consented to the collection, storage, and use of their biometric information and biometric identifiers.

59.     As a result of defendant's violations of §15(b) of the BIPA, plaintiff seeks the following relief individually and on behalf of the Class: (l) injunctive and equitable relief pursuant to 740 ILCS 14/20(4) requiring Facebook to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as alleged herein; (2) statutory damages of $5,000 for each intentional or reckless violation of the BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000 per negligent violation of the BIPA pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees and costs expenses pursuant to 740 ILCS 14/20(3).

## COUNT II

### Violations of the Illinois Biometric
### Information Privacy Act, 740 ILCS 14/15(a)
### (On Behalf of Plaintiff and the Class)

60.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

61.     Section 15(a) of the BIPA requires:

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

62.     Facebook does not provide a publicly available retention schedule or guidelines for permanently destroying its users' biometric identifiers and biometric information as required by the

- 15 -

BIPA.  Therefore, Facebook has violated §15(a) of the BIPA.  Facebook's violations of §15(a) of the BIPA were intentional or reckless or, alternatively, negligent.

63.     As a result of Facebook's violations of §15(a) of the BIPA, plaintiff seeks the following relief individually and on behalf of the Class: (l) injunctive and equitable relief pursuant to 740 ILCS 14/20(4) requiring Facebook to comply with §15(a) of the BIPA's requirement to establish and provide a publicly available retention schedule or guidelines for permanently destroying its users' biometric identifiers and biometric information; (2) statutory damages of $5,000 for each intentional or reckless violation of §15(a) of the BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000 per negligent violation of §15(a) of the BIPA pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees and costs expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for a judgment against defendant as follows:

A.     Certifying the Class as defined above, appointing plaintiff as Class Representative, and appointing Robbins Geller Rudman & Dowd LLP as Class Counsel;

B.     Declaring that defendant's actions, as alleged above, violate §15(a) and (b) of the BIPA, 740 ILCS 14/1 *et seq*.;

C.     Awarding statutory damages of $5,000 for each intentional or reckless violation of the BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000 per negligent violation of the BIPA pursuant to 740 ILCS 14/20(1);

D.     Awarding injunctive and equitable relief pursuant to 740 ILCS 14/20(4) requiring Facebook to comply with the BIPA by providing a publicly available retention schedule or guidelines for permanently destroying its users' biometric identifiers and biometric information and

forcing defendant to stop collecting, storing, and using plaintiff's and the Class members' biometric

identifiers and biometric information without first obtaining their informed written consent;

      E.      Awarding plaintiff attorneys' fees and costs pursuant to 740 ILCS 14/20(3); and

      F.      Awarding any further relief as the Court may deem just and proper.

## JURY DEMAND

      Plaintiff hereby demands a jury trial on all issues so triable.

DATED:  May 14, 2015
      ROBBINS GELLER RUDMAN
        & DOWD LLP
      JAMES E. BARZ (IL Bar # 6255605)
      FRANK RICHTER (IL Bar # 6310011)

*s/ James E. Barz*
JAMES E. BARZ

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
jbarz@rgrdlaw.com

*Local Counsel for Plaintiff*

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
DAVID W. HALL
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
PAUL J. GELLER
STUART A. DAVIDSON
MARK DEARMAN
CHRISTOPHER C. MARTINS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
TRAVIS E. DOWNS III
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

I:\Admin\CptDraft\Other\Cpt Facebook Biometric_ Federal.docx