1
2
3
4

MAYER BROWN LLP
John Nadolenco (SBN 181128)
350 South Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
jnadolenco@mayerbrown.com

5
6
7

Lauren R. Goldman (*pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2647
lrgoldman@mayerbrown.com

8
9
10

Archis A. Parasharami (*pro hac vice*)
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3328
aparasharami@mayerbrown.com

11

*Counsel for Defendant Facebook, Inc.*

12

13

## UNITED STATES DISTRICT COURT

14

## NORTHERN DISTRICT OF CALIFORNIA

15

## SAN FRANCISCO DIVISION

16
17

IN RE FACEBOOK BIOMETRIC
INFORMATION PRIVACY LITIGATION

Master Docket No.: 3:15-CV-03747-JD

**DEFENDANT FACEBOOK, INC.'S
REPLY IN SUPPORT OF MOTION TO
DISMISS**

18
19

THIS DOCUMENT RELATES TO:

Date: December 16, 2015
Time: 10:00 a.m.
Location: Courtroom 11

20

ALL ACTIONS

21

Hon. James Donato

22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.    PLAINTIFFS CANNOT PURSUE A CLAIM UNDER THE ILLINOIS BIPA BECAUSE THEY AGREED THAT CALIFORNIA LAW GOVERNS THEIR DISPUTES WITH FACEBOOK ...................................................................... 1

    A.    Plaintiffs Are Bound By Facebook's Terms ....................................................... 1

        1.    Plaintiffs Accepted Facebook's Terms ................................................. 1

        2.    Facebook's SRR Is Enforceable ........................................................... 3

        3.    Choice-of-Law Provisions Apply Equally To Statutory Claims ............. 3

    B.    Section 187 Of The Restatement (Second) Of Conflict Of Laws Requires Enforcement Of The Parties' Choice Of California Law ...................................... 4

II.   THE ILLINOIS BIPA DOES NOT APPLY TO TAG SUGGESTIONS ......................... 7

    A.    Plaintiffs' Argument Cannot Be Squared With BIPA's Structure........................ 7

    B.    The Term "Scan Of Hand Or Face Geometry" Refers To An In-Person Scan......................................................................................................................... 7

    C.    The Legislative History Of The BIPA Contradicts Plaintiffs' Interpretation...... 10

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Abat v. Chase Bank USA, N.A.*,
5    738 F. Supp. 2d 1093 (C.D. Cal. 2010) ...............................................................................3, 6

6 *Armstrong v. Accrediting Council for Continuing Educ. & Training, Inc.*,
   980 F. Supp. 53 (D.D.C. 1997) ............................................................................................3, 4

7 *Brittain v. Am. Express Inc.*,
   1995 WL 812805 (S.D. Ga. Nov. 16, 1995) .......................................................................3, 4
8

9 *Brown & Brown, Inc. v. Ali*,
   592 F. Supp. 2d 1009 (N.D. Ill. 2009) ....................................................................................6

10 *Brown & Brown, Inc. v. Mudron*,
   379 Ill. App. 3d 724 (2008) .....................................................................................................6
11

12 *C.M.D. v. Facebook, Inc.*,
   2014 WL 1266291 (N.D. Cal. Mar. 26, 2014)....................................................................2, 4

13 *Cardonet, Inc. v. IBM Corp.*,
   2007 WL 518909 (N.D. Cal. Feb. 14, 2007) ..........................................................................4
14

15 *Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*,
   889 F. Supp. 2d 1198 (E.D. Cal. 2012).....................................................................................4

16 *Cohen v. Chase Bank, N.A.*,
   679 F. Supp. 2d 582 (D.N.J. 2010) .........................................................................................3
17

18 *Davis v. Md. Bank, N.A.*,
   2002 WL 32713429 (N.D. Cal. June 19, 2002) ......................................................................3

19 *E.K.D. ex rel. Dawes v. Facebook, Inc.*,
   885 F. Supp. 2d 894 (S.D. Ill. 2012) ......................................................................................2
20

21 *Facebook, Inc. v. Fisher*,
   2009 WL 5095269 (N.D. Cal. Dec. 21, 2009) ........................................................................2

22 *Facebook, Inc. v. Wallace*,
   2009 WL 840391 (N.D. Cal. Mar. 24, 2009)..........................................................................2
23

24 *Fidelity Federal Bank, FSB v. Durga Ma Corp.*,
   387 F.3d 1021 (9th Cir. 2004) ................................................................................................4

25 *Franklin v. Facebook, Inc.*,
   No. 15-cv-655 (N.D. Ga. Nov. 24, 2015) ...............................................................................3
26

27 *Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012).....................................................................................2

28

*Griffith v. State Farm Mut. Auto Ins. Co.*,
  230 Cal. App. 3d 59 (1991) ..................................................................................5

*Guadagno v. E\*Trade Bank*,
  592 F. Supp. 2d 1263 (C.D. Cal. 2008) .................................................................3

*Hamilton v. Wells Fargo Bank, N.A.*,
  2010 WL 1460253 (N.D. Cal. Apr. 12, 2010) ........................................................3

*Langer Juice Co. v. Stonhard*,
  2014 WL 346643 (C.D. Cal. Jan. 30, 2014) ...........................................................4

*Maher & Associates v. Quality Cabinets*,
  267 Ill. App. 3d 69 (1994) .....................................................................................6

*Martin v. D-Wave Sys. Inc.*,
  2009 WL 4572743 (N.D. Cal. Dec. 1, 2009) ..........................................................4

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ..................................................................................7

*Mell v. Goodbody & Co.*,
  10 Ill. App. 3d 809 (1973) ......................................................................................5

*Miller v. Facebook, Inc.*,
  2010 WL 9525523, (N.D. Ga. Jan. 15, 2010) .........................................................2

*Nedlloyd Lines B.V. v. Super. Ct.*,
  3 Cal. 4th 459 (1992) ..............................................................................................6

*Pokorny v. Quixtar, Inc.*,
  601 F.3d 987 (9th Cir. 2010) ..................................................................................7

*Potomac Leasing Co. v. Chuck's Pub, Inc.*,
  156 Ill. App. 3d 755 (1987) ....................................................................................5

*Puritan Fin. Corp. v. Bechstein Constr. Corp.*,
  366 Ill. Dec. 335 (Ill. App. Ct. 2012)......................................................................8

*Resurgence Fin., LLC v. Chambers*,
  173 Cal. App. 4th Supp. 1 (2009) ...........................................................................3

*Schroeder v. Rynel, Ltd., Inc.*,
  720 A.2d 1164 (Me. 1998)......................................................................................4

*Sherman v. PremierGarage Sys., LLC*,
  2010 WL 3023320 (D. Ariz. July 30, 2010) ...........................................................4

*Soffin v. Echannel Network, Inc.*,
  2014 WL 2938347 (S.D. Fla. June 30, 2014) ..........................................................2

*Song fi Inc. v. Google, Inc.*,
  72 F. Supp. 3d 53, 64 (D.D.C. 2014) ......................................................................6

iii

*Song fi Inc. v. Google, Inc.*,
   2015 WL 3624335 (N.D. Cal. June 10, 2015) ....................................................................3, 4

*Swanson v. Image Bank, Inc.*,
   77 P.3d 439 (Ariz. 2003)..........................................................................................................4

*Tech Data Corp. v. AU Optronics Corp.*,
   2012 WL 3236065 (N.D. Cal. Aug. 6, 2012) ..........................................................................2

*Wash. Mut. Bank, FA v. Super. Ct.*,
   24 Cal. 4th 906 (2001) .............................................................................................................3

**Statutes**

28 U.S.C. § 1961 ............................................................................................................................4

720 ILCS 5/14 *et seq*....................................................................................................................10

740 ILCS 14/5(a) ..........................................................................................................................10

740 ILCS 14/5(b) ..........................................................................................................................10

740 ILCS 14/5(e) ..........................................................................................................................10

740 ILCS 14/10.........................................................................................................................8, 9

**Other Authorities**

FBI, *Recording Legible Fingerprints*,
   https://www.fbi.gov/aboutus/cjis/fingerprints_biometrics/recording-legible-
   fingerprints ...............................................................................................................................8

Ill. Const. art. I, § 12 .....................................................................................................................5

Lisa Myers, *An Explanation of Voice Biometrics*, SANS Institute (July 24, 2004),
   https://www.sans.org/reading-room/whitepapers/authentication/exploration-
   voice-biometrics-1436 ..............................................................................................................8

National Science and Technology Council, Subcommittee on Biometrics, *Hand
Geometry* (Aug. 7, 2006),
   http://www.biometrics.gov/documents/handgeometry.pdf......................................................9

Restatement (Second) of Conflict of Laws § 187 ..................................................................3, 4, 6

Plaintiffs' opposition serves only to confirm that these cases should be dismissed. Plaintiffs do not deny that by signing up for and using Facebook, they agreed to be bound by its terms of service, which provide that California law—not Illinois law—governs their disputes with Facebook.  Nor do plaintiffs have any response to the numerous Illinois cases that have enforced such clauses even where the effect is to preclude Illinois residents from asserting Illinois statutory claims.

Even if plaintiffs could bring a claim under Illinois law, they cannot state a claim under the Biometric Information Privacy Act ("BIPA").  Plaintiffs concede (as they must) that "photographs are not biometric *identifiers*" under the statute.  Opp. 11.  They concede (as they must) that "information derived from photographs is not biometric *information*" under the statute.  *Id.*  And they concede (as they must) that their challenge to Tag Suggestions—a simple and optional feature that is designed to help people find and tag their friends in photos—is wholly based on information derived from photographs.  Compl. ¶ 4.  Yet plaintiffs insist that if the Court reads the statute "as a whole," it will conclude that the very material *explicitly* excluded from the statute—information derived from photographs—is *implicitly* regulated under the rubric "scan of hand or face geometry."  The Court should reject plaintiffs' attempt to force a square peg into a round hole and dismiss their claims with prejudice.

**ARGUMENT**

**I.      PLAINTIFFS CANNOT PURSUE A CLAIM UNDER THE ILLINOIS BIPA BECAUSE THEY AGREED THAT CALIFORNIA LAW GOVERNS THEIR DISPUTES WITH FACEBOOK.**

**A.      Plaintiffs Are Bound By Facebook's Terms.**

**1.      Plaintiffs Accepted Facebook's Terms.**

Shortly after these cases were filed in Illinois, Facebook moved for a transfer of venue to this Court, invoking the forum-selection clause in the terms (the Statement of Rights and Responsibilities ("SRR")) that govern Facebook's relationship with the people who use its free service.  Facebook showed that each of the plaintiffs—like everyone else who uses Facebook— affirmatively agreed to Facebook's terms as a condition of creating his account; that Facebook provided email notice of the most recent changes to those terms; and that the SRR—hyperlinked

on virtually every page of the service—expressly states that "continued use" of Facebook constitutes acceptance of the terms. *See* Dkt. No. 21, at 2–3; RJN Ex. 1 ("Jordan Decl.") ¶¶ 6, 10, 11 & Ex. A § 13.3.[1]  Facebook cited numerous cases in which courts have enforced its SRR. Dkt. No. 21, at 6–7 (citing *Soffin v. Echannel Network, Inc.*, 2014 WL 2938347, at *1–2 (S.D. Fla. June 30, 2014) (enforcing Facebook's terms on motion to transfer venue); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 903 (S.D. Ill. 2012) (same); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 841 (S.D.N.Y. 2012) (same); *Miller v. Facebook, Inc.*, 2010 WL 9525523, at *4 (N.D. Ga. Jan. 15, 2010) (same).  Instead of opposing that motion, plaintiffs stipulated to transfer (albeit without conceding the enforceability of Facebook's terms).

That same showing underlies the choice-of-law argument in this motion.  Plaintiffs have had ample opportunity to allege facts to the contrary; but they have never tried to do so.  *Not one word* in plaintiffs' opposition to this motion—or any other filing, including the amended complaint filed after Facebook filed its transfer motion—even hints at such a denial.  Unlike the parties resisting contract formation in the cases they cite (*see* Opp. 8–9), plaintiffs do not deny that they affirmatively accepted Facebook's terms when they signed up for and used the service. Compl. ¶¶ 32, 39, 46.  Nor do plaintiffs dispute that Facebook's terms have *always* had a choice-of-law clause that selected the law of a state other than Illinois.  Opp. 8–9.  Instead, plaintiffs hide behind the assertion that Facebook has not met its evidentiary burden.  That argument is far from sufficient to justify evading their contractual commitments.  *See Tech Data Corp. v. AU Optronics Corp.*, 2012 WL 3236065, at *4 n.2 (N.D. Cal. Aug. 6, 2012) (taking judicial notice of contracts on a motion to dismiss, because the plaintiff had "contest[ed] the Court's ability to take judicial notice of the[] documents, but ha[d] not contested the authenticity of the documents themselves").  Accordingly, the Court should enforce Facebook's terms at the pleadings stage. Mem. 2; RJN 1–3; *see also C.M.D. v. Facebook, Inc.*, 2014 WL 1266291, at *5 (N.D. Cal. Mar. 26, 2014) (enforcing Facebook's choice-of-law clause on a motion to dismiss), *aff'd*, --- F.

---

[1]      *See also, e.g.*, *Facebook, Inc. v. Fisher*, 2009 WL 5095269, at *1 (N.D. Cal. Dec. 21, 2009) (holding, on motion for TRO, that "Facebook users must register with the website and agree to Facebook's Terms of Use"); *Facebook, Inc. v. Wallace*, 2009 WL 840391, at *1 (N.D. Cal. Mar. 24, 2009) (same on motion for preliminary injunction).

App'x ----, 2015 WL 6575724 (9th Cir. Oct. 30, 2015).

### 2.      Facebook's SRR Is Enforceable.

Plaintiffs argue that Facebook's choice-of-law clause is unenforceable because it is part of a standard form contract. Opp. 6 & n.2. But they ignore controlling precedent: California "has no public policy against the enforcement of choice-of-law provisions contained in contracts of adhesion where they are otherwise appropriate. . . . *Nedlloyd*'s analysis is properly applied in the context of consumer adhesion contracts." *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 917–18 (2001); *see also Davis v. Md. Bank, N.A.*, 2002 WL 32713429, at *11 (N.D. Cal. June 19, 2002); Mem. 8–9.[2] As one court recently observed in enforcing the SRR on a motion to transfer venue, "[t]he Court cannot identify a single instance where any federal court has struck down [Facebook's] SRR as an impermissible contract of adhesion induced by fraud or overreaching." Order, Dkt. No. 26, *Franklin v. Facebook, Inc.*, No. 15-cv-655, at 4 (N.D. Ga. Nov. 24, 2015) (attached as Exhibit A to Decl. of Rebecca B. Johns).

### 3.      Choice-of-Law Provisions Apply Equally To Statutory Claims.

Plaintiffs' argument that the SRR's choice-of-law provision is limited to contract claims and cannot apply to statutory claims (Opp. 9–10) is meritless: the terms state that California law governs "any claim that might arise"—contractual *or* statutory—between each plaintiff and Facebook.   Jordan Decl. Ex. A § 15.1.   Plaintiffs' BIPA claims are hardly "unrelated" to Facebook's terms (Opp. 10), which govern every aspect of plaintiffs' relationship with Facebook, including the uploading of the photographs on which their claims are based.  Mem. 10 & n.7.  And while plaintiffs accuse Facebook of omitting the "crucial" phrase "to govern their contractual rights and duties" from Section 187(2) of the Restatement, Opp. 10, they conveniently ignore the host of cases cited in Facebook's brief in which California and Illinois

---

[2]      *See also, e.g.*, *Song fi Inc. v. Google, Inc.*, --- F. Supp. 3d ----, 2015 WL 3624335, at *8 (N.D. Cal. June 10, 2015); *Abat v. Chase Bank USA, N.A.*, 738 F. Supp. 2d 1093, 1096 (C.D. Cal. 2010); *Hamilton v. Wells Fargo Bank, N.A.*, 2010 WL 1460253, at *2 (N.D. Cal. Apr. 12, 2010); *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1269–70 (C.D. Cal. 2008); *Resurgence Fin., LLC v. Chambers*, 173 Cal. App. 4th Supp. 1, 7 (2009); *Cohen v. Chase Bank, N.A.*, 679 F. Supp. 2d 582, 595–96 (D.N.J. 2010); *Armstrong v. Accrediting Council for Continuing Educ. & Training, Inc.*, 980 F. Supp. 53, 60 (D.D.C. 1997); *Brittain v. Am. Express Inc.*, 1995 WL 812805, at *4 (S.D. Ga. Nov. 16, 1995).

courts have applied choice-of-law provisions to bar *statutory* claims.  Those decisions include *C.M.D.*, in which Judge Seeborg enforced Facebook's choice-of-law clause to dismiss claims under the Illinois Right of Publicity Act (2014 WL 1266291, at *5); and *Song fi*, in which Judge Conti invoked the California choice-of-law clause in YouTube's online terms to dismiss District of Columbia consumer protection claims (2015 WL 3624335, at *8).  *See also* Mem. 9 & n.6 (collecting cases).[3]   Many of those courts quote the phrase "contractual rights and duties." *Martin v. D-Wave Sys. Inc.*, 2009 WL 4572743, at *4 (N.D. Cal. Dec. 1, 2009); *Cardonet*, 2007 WL 518909, at *3; *Sherman*, 2010 WL 3023320, at *6; *Swanson*, 77 P.3d at 442.

Finally, Plaintiffs' reliance on *Fidelity Federal Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021 (9th Cir. 2004), is likewise misplaced.  Because 28 U.S.C. § 1961, which governs an award of post-judgment interest in all federal cases, is a generally applicable procedural rule, its application can be waived only by specific agreement to that effect.  *Id*. at 1023.  But no such generally applicable procedural rule is at issue here, only the question of which state's substantive law governs the plaintiffs' claims—a question answered by Facebook's SRR.

**B.     Section 187 Of The Restatement (Second) Of Conflict Of Laws Requires Enforcement Of The Parties' Choice Of California Law.**

Plaintiffs invoke the narrow exception to enforcing choice-of-law provisions in Section 187(2)(b) of the Restatement, which requires them to show *both* that application of California law "would be contrary to a fundamental policy of" Illinois *and* that Illinois "has a materially greater interest than" California in this dispute.  Plaintiffs have shown neither.

**1.**     Plaintiffs argue that by enacting the BIPA, the Illinois General Assembly made a fundamental policy choice to protect its citizens' biometric privacy, and that application of California law would violate that policy.  Opp. 3–5.  But if the enactment of a statute were enough to override a choice-of-law provision, then a choice-of-law provision could never be enforced in any state with a statutory regime that varies or differs from the law of the chosen

---

[3]      *See also, e.g.*, *Langer Juice Co. v. Stonhard*, 2014 WL 346643, at *9 (C.D. Cal. Jan. 30, 2014); *Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, 889 F. Supp. 2d 1198, 1217 (E.D. Cal. 2012); *Cardonet, Inc. v. IBM Corp.*, 2007 WL 518909, at *3–5 (N.D. Cal. Feb. 14, 2007); *Sherman v. PremierGarage Sys., LLC*, 2010 WL 3023320, at *7 (D. Ariz. July 30, 2010); *Armstrong*, 980 F. Supp. at 60; *Brittain*, 1995 WL 812805, at *4; *Swanson v. Image Bank, Inc.*, 77 P.3d 439, 444 (Ariz. 2003); *Schroeder v. Rynel, Ltd., Inc.*, 720 A.2d 1164, 1167 (Me. 1998).

1    forum—which clearly is not the case.  *See* pp. 3–4, *supra*; Mem. 7–9.  Moreover, plaintiffs have

2    made no showing that California law fails to protect privacy and related interests.  *See Griffith v.*

3    *State Farm Mut. Auto Ins. Co.*, 230 Cal. App. 3d 59, 67 (1991) ("California protects privacy and

4    personal information in numerous ways." (citing authorities)).

5          Plaintiffs' assertion that the Illinois Constitution "enshrines [their] privacy rights as

6    fundamental" (Opp. 4) rests entirely on their misleading use of ellipses.  The sentence on which

7    they rely actually states:  "Every person shall find a certain remedy in the laws for all injuries

8    and wrongs which he receives to his person, privacy, property or reputation."  Ill. Const. art. I,

9    § 12.  Plaintiffs omitted the words "person," "property," and "reputation" in order to suggest that

10   the Illinois Constitution accords privacy claims a unique fundamental status; it does not.  And the

11   notion that *all* of the claims mentioned in Section 12 are exempt from choice-of-law clauses is

12   clearly contradicted by the Illinois courts' strong endorsement of such clauses.  *See* Mem. 7–8.

13         Plaintiffs next argue that Illinois policy forbids enforcing a choice-of-law provision when

14   the result would be to extinguish a particular cause of action altogether.  But Illinois courts

15   routinely enforce choice-of-law clauses to bar Illinois residents from asserting Illinois-specific

16   claims and defenses.  Mem. 7 & n.5 (citing cases).  Plaintiffs assert that these cases involved

17   minor differences in state law, "not a situation . . . where relief [would be] completely absent in

18   one forum."  Opp. 5.  That is false.  In *Midway Home Entertainment, Inc. v. Atwood Richards,*

19   *Inc.*, the court enforced the parties' choice of New York law and dismissed the plaintiffs'

20   fraudulent inducement claim outright, observing that Illinois courts enforce such clauses even

21   where it "would deprive Illinois citizens of protection from the alleged harm and leave them *no*

22   *recourse*." 1998 WL 774123, at *2–3 (N.D. Ill. Oct. 29, 1998) (emphasis added).  In *Potomac*

23   *Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill. App. 3d 755, 759 (1987), the plaintiff's claims rested

24   on a notice-of-cancellation provision found in Illinois' consumer protection laws but absent from

25   Michigan's—yet the plaintiff's interest in obtaining relief did "not warrant overriding the parties'

26   expressed choice of law."  And in *Mell v. Goodbody & Co.*, 10 Ill. App. 3d 809, 814 (1973), the

27   court upheld the application of a New York choice-of-law provision even though it completely

28   deprived plaintiffs of their usury claim under Illinois law.  *See id.* at 811, 813.

1       The two Illinois cases on which plaintiffs rely (Opp. 5) are inapposite.  In *Maher &*

2   *Associates v. Quality Cabinets*, 267 Ill. App. 3d 69 (1994), the plaintiff sued under an Illinois

3   statute that had an *explicit anti-waiver provision* stating that "[a]ny provision in any contract . . .

4   purporting to waive any of the provisions of this Act shall be void."  *Id.* at 75 (quoting 820 ILCS

5   120/2).[4]  BIPA, by contrast, has no anti-waiver provision.  In *Brown & Brown, Inc. v. Mudron*,

6   379 Ill. App. 3d 724, 727–28 (2008), the court held that an employer that had acquired an

7   Illinois-based insurance agency and then sued a former Illinois employee who had gone to work

8   for a competing Illinois agency could not avoid the restrictions Illinois places on covenants not

9   to compete by choosing the law of a state that had rejected such restrictions.  As a later decision

10   construing *Mudron* explains, "the Illinois Supreme Court has long held that the public policy of

11   Illinois requires a court to consider the hardship imposed on an employee in deciding whether to

12   enforce a restrictive covenant."  *Brown & Brown, Inc. v. Ali*, 592 F. Supp. 2d 1009, 1044 (N.D.

13   Ill. 2009) (citing *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 67 (2006); *Cockerill v.*

14   *Wilson*, 51 Ill. 2d 179, 184–85 (1972)).  Plaintiffs point to no such authority here.

15       Plaintiffs' remaining cases discuss whether the parties' choice of another state's law

16   violates the fundamental public policy of *California*—not, as relevant here, whether such a

17   contract violates the fundamental public policy of *Illinois*.  To answer that question, the places to

18   look are the Illinois cases Facebook has cited, and that plaintiffs have failed to distinguish.  *See,*

19   *e.g.*, *Am. Home Assur. Co. v. Stone*, 61 F.3d 1321, 1324–25 (7th Cir. 1995).

20       **2.**    Plaintiffs have likewise failed to meet their burden of proving that Illinois has a

21   materially greater interest than California in this dispute.  *Nedlloyd Lines B.V. v. Super. Ct.*, 3

22   Cal. 4th 459, 466 (1992).  They scoff at, but do not respond to, Facebook's showing that

23   California has a strong interest in "enforcing choice of law provisions for businesses with

24   nationwide consumers . . . to limit the risk and expenses of litigation under different laws in

25   every state."  *Abat*, 738 F. Supp. 2d at 1096; *see also Song fi Inc. v. Google, Inc.*, 72 F. Supp. 3d

26   53, 64 (D.D.C. 2014).  Plaintiffs' scorn is groundless:  the Restatement recognizes that "the

---

27   [4]    The commentary to the Restatement recognizes that a fundamental policy "may be
embodied in a statute which makes one or more kinds of contracts illegal."  Restatement
28   (Second) of Conflict of Laws § 187, cmt. g.  The BIPA contains no such clear policy statement.

1   demands of certainty, predictability and convenience dictate" enforcement of choice-of-law

2   clauses, even if one party may gain certain rights not otherwise available; or, conversely, may

3   not be subject to laws that might otherwise apply.  *See* Restatement § 187 cmt. e.[5]

4   **II.      THE ILLINOIS BIPA DOES NOT APPLY TO TAG SUGGESTIONS.**

5           Even if plaintiffs were entitled to sue Facebook under an Illinois statute, their claims

6   would fail:   the BIPA expressly excludes from its coverage both photographs and any

7   information derived from them.  Plaintiffs' argument that Tag Suggestions can be characterized

8   as a "scan of hand or face geometry" is foreclosed by the BIPA's structure, text, and history.

9           **A.      Plaintiffs' Argument Cannot Be Squared With BIPA's Structure.**

10          In enacting the BIPA, the Illinois General Assembly created two categories of covered

11  biometric data:  (1)  sources of information ("biometric identifiers") and (2) the data extracted or

12  derived from those sources ("biometric information").   In light of this structure, if data

13  "extracted" from "user-uploaded photographs" (Compl. ¶ 4) were covered by the BIPA, it

14  plainly would be regulated within the category of "biometric information" (Mem. 11–12).  Yet

15  plaintiffs concede that information drawn from photographs is expressly excluded from that

16  term's definition.  *See* Opp. 2 (biometric information "is not at issue in this case").

17          Plaintiffs' reading of the statute ignores this structure, with incoherent results. They

18  acknowledge that the term "biometric information" is "derivative information based on any of

19  the six [biometric] identifiers."  Opp. 11 (emphasis omitted).  They also agree that a "derivative

20  data point" extracted from photographs, "like someone's height," is "information derived from

21  photographs" and is thus expressly excluded from BIPA's reach; to conclude otherwise "would

22  make no sense."  *Id.*  But they do not explain why *other* measurements derived from the same

23  photo—such as "the distance between [the person's] eyes, nose, and ears" (Compl. ¶¶ 22–24)—

24  constitute a "biometric identifier" when that data cannot be declared "biometric information."

25          **B.      The Term "Scan Of Hand Or Face Geometry" Refers To An In-Person Scan.**

26          Plaintiffs' entire argument rests on the fact that the definition of a "biometric identifier"

---

[5]      Most of plaintiffs' cases should be disregarded because they do not involve contractual choice-of-law provisions—and thus Restatement § 187—at all.  *See, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010).

1   includes a "scan of hand or face geometry."  That reliance is ill-founded:  that term refers to a

2   *live* scan of a person's *actual* hand or face, typically for verification or security purposes—not

3   the application of facial recognition software to a user-uploaded photograph.  Mem. 12–13.  This

4   reading construes the term "scan of . . . face geometry" consistently with the other biometric

5   identifiers enumerated in the statute—scans of hand geometry, retina or iris scans, fingerprints,

6   and voiceprints (740 ILCS 14/10).  *See Puritan Fin. Corp. v. Bechstein Constr. Corp.*, 366 Ill.

7   Dec. 335, 339 (Ill. App. Ct. 2012) ("a word is known by the company it keeps") (quotation

8   marks omitted).  It also is the only way to harmonize the statute's express *exclusion* of

9   photographs and information derived from photographs, on the one hand, with its *inclusion* of

10  "scan[s] of . . . face geometry."

11      Plaintiffs' responses are meritless. They start by arguing that Facebook's argument

12  proves too much because "virtually all biometric identifiers are based in the first instance on

13  photographs."  Opp. 12–13.  That proposition is wrong in three key respects.  First, the scans

14  listed in the definition of biometric identifier all involve the physical capture of information from

15  the human body itself.  A fingerprint is produced when a live person touches a card, console, or

16  other object with his or her finger.[6]  A retina scan takes place when a live person holds up his eye

17  to a specialized machine—as plaintiffs' own sources confirm.[7]  And a voiceprint is the product

18  of a live person's spoken words.[8]

19      Second, although these live scans may produce an image that is then saved for later use,

20  that image is instantaneously captured by a *specialized recording device as part of the scan itself.*

21  Most notably, in a "scan of hand geometry," a person's actual hand "is placed on [a] plate, palm

22  [6]     *See* FBI, *Recording Legible Fingerprints*, https://www.fbi.gov/about-us/cjis/fingerprints_

23  biometrics/recording-legible-fingerprints (last accessed Nov. 23, 2015) ("Fingerprints can be recorded utilizing" either with ink on a "standard fingerprint card" or "electronically using a *live* scan device") (emphasis added).

24  [7]     *See, e.g.*, Opp. Ex. 1 (Nguyen Decl.) Ex. 1-B at 1 (retina scan uses a camera to "project[]

25  an infrared beam of light into your eyes" and then, based on "the reflection of the light from your retinas and choroids," to capture an image of "the vasculature structure of your eyes").

26  [8]     *See* Lisa Myers, *An Explanation of Voice Biometrics*, SANS Institute, at 4 (July 24,

27  2004),        https://www.sans.org/reading-room/whitepapers/authentication/exploration-voice-biometrics-1436 (last accessed Nov. 23, 2015) (in a voice authentication system, "[t]he user is

28  asked to speak a certain set of words or phrases, or to speak for a certain length of time," and "[f]rom that sample, a digital representation of the voice, called a voiceprint, is created").

1  down, and guided by five pegs that sense when the hand is in place."  National Science and

2  Technology Council, Subcommittee on Biometrics, *Hand Geometry* (Aug. 7, 2006), http://www.

3  biometrics.gov/documents/handgeometry.pdf (last accessed Nov. 23, 2015).  A camera

4  "capture[s] a silhouette image of the hand" as part of the scanning process.  *Id.*  And third, these

5  scans are *sources* of information, not the derivative product of analyzing such a source—which

6  is why they are regulated as biometric identifiers and not biometric information.

7       The operation of Tag Suggestions has nothing in common with those scans.  First of all, it

8  does not involve the live capture of an image of a person's actual face.  Facebook does not take

9  any images at all, specialized or otherwise.  Instead, a person takes a picture and then, at some

10  point later, he or she might voluntarily upload it to Facebook.  Mem. 3–4.  Second, Tag

11  Suggestions does not involve a specialized recording device; it is based on ordinary photos taken

12  by ordinary people every day.  Even plaintiffs do not assert that a "scan of hand geometry" can

13  be obtained by analyzing an ordinary photo of someone's hand; therefore, the parallel statutory

14  term "scan of face geometry" cannot mean something obtained by analyzing an ordinary photo

15  of someone's face.  And third, the "templates" on which plaintiffs' claims rest are *derived* from

16  those ordinary photos; a template is nothing more than "information derived from photographs,"

17  which is specifically excluded from the statute altogether.

18       Plaintiffs next argue that a "scan of hand or face geometry" cannot possibly refer to an in-

19  person scan because the statutory term "biometric identifier" refers solely to objects, and not

20  processes.  Opp. 14.  This argument is foreclosed by the plain text of the statute:  "[b]iometric

21  information does *not* include information derived from items *or procedures* excluded under the

22  definition of biometric identifiers."  740 ILCS 14/10 (emphasis added).  Thus, "biometric

23  identifiers" include (and exclude) not just "items," as plaintiffs assert, but "procedures" as well.

24       Finally, raising fears of illicit surveillance and wiretapping, plaintiffs contend that

25  reading the statutory phrase "scan of hand or face geometry" to require a live, physical scan of a

26  person's actual hand or face produces "absurd results."  Opp. 14.  But contrary to plaintiffs'

27  reimagining of the statute, BIPA was not designed as an all-purpose privacy statute covering

28  wiretaps; nor did it need to be, given that Illinois already *criminalizes* wiretapping.  *See* 720

9

ILCS 5/14 *et seq.* Moreover, there is nothing absurd about the Illinois legislature's focus on in-person "security screenings" and "biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(a)–(b). The legislature was concerned that additional regulation was needed to facilitate further innovation in, and public use of, "biometric identifier-facilitated transactions." *Id.* at 14/5(e).

### C. The Legislative History Of The BIPA Contradicts Plaintiffs' Interpretation.

Plaintiffs have virtually no response to Facebook's discussion of the legislative history (Mem. 14–15), which shows that the definitions of "biometric identifier" and "biometric information" were sharply narrowed as the bill progressed towards passage. The Illinois General Assembly specifically *rejected* a proposed expansion that would have included "records or scans of . . . facial recognition" within the definition of "biometric identifier"; narrowed that definition from an open-ended set of "indelible personal physical characteristic[s]" to a narrowly-cabined list of enumerated sources; and removed from that definition the term "records" and left only the narrower term "scan." *Id.* (citing RJN Exs. 3–6).[9] Plaintiffs merely deride these changes as "technical language variations." Opp. 15. But the changes cannot be swept so easily under the rug. The legislative history overwhelmingly supports the conclusion that the BIPA does not cover the application of facial-recognition technology to photographs uploaded to Facebook.

### CONCLUSION

The consolidated amended complaint should be dismissed with prejudice.

Dated: November 24, 2015

MAYER BROWN LLP

By: */s/ John Nadolenco*
John Nadolenco
Lauren R. Goldman
Archis A. Parasharami

*Counsel for Defendant Facebook, Inc.*

---

[9] The BIPA's unanimous passage by both houses of the Illinois General Assembly without extended debate (*see* Opp. 15) *undermines* plaintiffs' position: if the statute actually did impose sweeping regulation of online photo-tagging services, it surely would have generated more "questions" and "deliberation." *Id.* And its exclusion of many financial institutions (*see id.* at 15 & n.8) only confirms that BIPA is a narrow statute focused on specific issues.