ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
     – and –
PAUL J. GELLER (Admitted *pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com

LABATON SUCHAROW LLP
JOEL H. BERNSTEIN (Admitted *pro hac vice*)
140 Broadway
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
jbernstein@labaton.com

EDELSON PC
JAY EDELSON (Admitted *pro hac vice*)
350 North LaSalle Street, Suite 1300
Chicago, IL  60654
Telephone:  312/589-6370
312/589-6378 (fax)
jedelson@edelson.com

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re FACEBOOK BIOMETRIC INFORMATION PRIVACY LITIGATION | Master File No. 3:15-cv-03747-JD |
| This Document Relates To: | PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ALL ACTIONS. | DATE:       March 2, 2016<br>TIME:       10:00 a.m.<br>CTRM:      11, 19th Floor<br>JUDGE:     Honorable James Donato |

**REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND .................................................................................2

III.  LEGAL STANDARD .............................................................................................3

IV.   FACEBOOK IS NOT ENTITLED TO SUMMARY JUDGMENT ...................4

    A.   Genuine Issues of Material Fact Exist Concerning Whether Plaintiffs Assented to Facebook's Terms ...............................................................5

        1.   There Is No Direct Evidence of Plaintiffs' Assent to the Terms ................5

        2.   Facebook's Circumstantial Evidence Fails to Establish that Plaintiffs Assented to the Terms of Use .........................................7

    B.   Even if Accurate and Undisputed, Facebook's Purported Facts Would Not Warrant Judgment as Matter of Law .......................................................8

V.    CONCLUSION .....................................................................................................12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970)............................................................................3

*Albino v. Baca*,
747 F.3d 1162 (9th Cir. 2014) .........................................................2

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)............................................................................3

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) ............................................ *passim*

*Campbell v. Gen. Dynamics Gov't Sys. Corp.*,
407 F.3d 546 (1st Cir. 2005)...........................................................11

*Deleon v. Verizon Wireless, LLC*,
207 Cal. App. 4th 800 (2012) ..........................................................4

*Fara Estates Homeowners Ass'n v. Fara Estates, Ltd.*,
134 F.3d 377 (9th Cir. 1998) ...........................................................3

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)...........................................10

*Grajeda v. Rodgers*,
2015 WL 7350516 (N.D. Cal. Nov. 20, 2015) .............................1

*Gustafson v. BAC Home Loans Servicing, LP*,
294 F.R.D. 529 (C.D. Cal. 2013).....................................................6

*Harris v. comScore, Inc.*,
825 F. Supp. 2d 924 (N.D. Ill. 2011) ...........................................11

*Hernandez v. Burger*,
102 Cal. App. 3d 795 (Cal. Ct. Apps. 1980)...............................4

*Hines v. Overstock.com, Inc.*,
668 F. Supp. 2d 362 (E.D.N.Y. 2009) .........................................11

*Marra v. Bushee*,
447 F.2d 1282 (2d Cir. 1971)...........................................................2

*Mattel, Inc. v. MGA Entm't, Inc. & Consol. Actions*,
782 F. Supp. 2d 911 (C.D. Cal. 2010) ...........................................2

Page

*Mohamed v. Uber Techs., Inc.*,
109 F. Supp. 3d 1185 (N.D. Cal. 2015) ...................................................10

*Murphy v. Schneider Nat'l, Inc.*,
362 F.3d 1133 (9th Cir. 2003) .................................................................1, 2

*Nguyen v. Barnes & Noble, Inc.*,
763 F.3d 1171 (9th Cir. 2014) .................................................................4, 5

*Norcia v. Samsung Telecomms. Am., LLC*,
2014 U.S. Dist. LEXIS 131893
(N.D. Cal. Sept. 18, 2014) .............................................................................4

*Rodman v. Safeway Inc.*,
2015 U.S. Dist. LEXIS 115705
(N.D. Cal. 2015).............................................................................................4

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ........................................................................3

*Savetsky v. Pre-Paid Legal Servs.*,
2015 U.S. Dist. LEXIS 17591
(N.D. Cal. Feb. 12, 2015).............................................................................4

*SEC v. Phan*,
500 F.3d 895 (9th Cir. 2007) ........................................................................5

*Specht v. Netscape Commc'ns. Corp.*,
306 F.3d 17 (2d Cir. 2002)..............................................................4, 10, 12

*Tompkins v. 23andMe, Inc.*,
2014 U.S. Dist. LEXIS 88068
(N.D. Cal. June 25, 2014) ...........................................................................10

**Page**

**STATUTES, RULES AND REGULATIONS**

U.S. Const. Amendment VII ...............................................................................................1

Illinois Biometric Information Privacy Act,
    740 ILCS 14/15(b) ....................................................................................................1

Federal Rules of Evididence
    Rule 1001................................................................................................................8

Federal Rules of Civil Procedure
    Rule 12(d) .................................................................................................................1

Federal Rules of Civil Procedure
    Rule 56 .....................................................................................................................1


**SECONDARY AUTHORITIES**

14 Cal. Jur. 3d Contracts
    §82 (2015)................................................................................................................4

Contracts
    §25 (2015)................................................................................................................4

Ronald J. Mann & Travis Siebeneicher, *Just One Click: The Reality of Internet Retail
Contracting*, 108 Colum. L. Rev. 984, 995 (2008)................................................................11

Pursuant to the Court's December 18, 2015 Order and Federal Rules of Civil Procedure 12(d) and 56, Plaintiffs Nimesh Patel, Adam Pezen, and Carlo Licata submit this brief in opposition to defendant Facebook, Inc.'s ("Facebook") converted motion for summary judgment.

## I.   INTRODUCTION

Plaintiffs bring this class action on behalf of Illinois residents whose faceprints were extracted by Facebook in violation of Illinois's Biometric Information Privacy Act ("BIPA"). In moving to dismiss, Facebook asserted that Plaintiffs' claims were precluded by their purported assent to choice-of-law clauses buried in online adhesion contracts.  Because this affirmative defense raised issues of fact not alleged in Plaintiffs' complaint, the Court converted Facebook's motion into one for summary judgment.[1]  Despite Plaintiffs' narrowly tailored document requests, interrogatories, and notices of deposition, Facebook responded with boilerplate objections, piecemeal production, and inadequately prepared deponents. That deficient response only confirms Facebook cannot establish Plaintiffs' assent as a matter of law.[2]

To the extent the evidentiary hearing on the issue of assent would involve weighing evidence, assessing credibility of live testimony, and resolving disputed issues of fact, that would invade the province of the jury. *See* Fed. R. Civ. P. 12(d), 56; U.S. Const. Amend. VII; *see also Grajeda v. Rodgers*, 2015 WL 7350516, at *2 (N.D. Cal. Nov. 20, 2015) (Donato, J.) ("The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact."). During the February 24 telephone conference, Facebook relied on *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133 (9th Cir. 2003), to suggest that a mini-bench trial would be appropriate here. But *Murphy* is inapposite because it concerns venue, not

---

[1]  *See* Dec. 18 Hearing Tr. at 15 ("if you want to press the 'California law prevails' argument, I can get you to early summary judgment . . . [if] they've got a bunch of facts . . . they will have the opportunity to show that at summary judgment."), 17 ("Why should we not put this on hold and go to a contract formation early summary judgment?"), 18 ("And I'm saying, okay, let's go forward on early summary judgment and get that resolved. Then we can see where we are."), 19 ("So why not just do summary judgment . . . I have to have a basis in fact based on material from outside the record, which I can only handle, unless you two tell me differently, under Rule 56.").

[2]  To be sure, the issue of assent alone will not resolve Facebook's motion.  Even if Plaintiffs had assented (they have not), Facebook's choice-of-law clause would not preclude Plaintiffs' BIPA claims because applying California law would be contrary to the fundamental policy of Illinois, a state with a materially greater interest in the biometric privacy rights of millions of Illinois residents under an Illinois statute with no California counterpart.  Illinois law applies regardless of whether Plaintiffs assented to Facebook's choice-of-law clause.

1   choice of law.  *Id*.; *cf. Albino v. Baca*, 747 F.3d 1162, 1170-71 (9th Cir. 2014) (explaining "a judge

2   rather than a jury decides disputed factual questions relevant to jurisdiction and venue").  Unlike

3   venue, which does not impinge the merits, questions of fact underlying choice-of-law are reserved

4   for the jury.  *See Mattel, Inc. v. MGA Entm't, Inc. & Consol. Actions*, 782 F. Supp. 2d 911, 976-77

5   (C.D. Cal. 2010) (as to choice of law, "a genuine issue of material fact . . . is an issue the parties can

6   take up with the fact-finder"); *accord Marra v. Bushee*, 447 F.2d 1282, 1285 (2d Cir. 1971) (parties

7   are "entitled to the jury's finding of the facts . . . determinative of the choice of law principles").[3]

8        Summary judgment should be denied.

9   **II.    FACTUAL BACKGROUND**

10        Following the Court's December 18, 2015 Order, the parties engaged in targeted discovery

11   concerning whether Plaintiffs assented to Facebook's terms of use (the "Terms").[4] This has revealed

12   the following relevant facts:

13        **Undisputed Facts**. Both Facebook's Terms, and the webpage through which new users

14   registered for a Facebook account (the "Sign-Up Page"), have changed over time. Plaintiff Adam

15   Pezen registered for Facebook on or about ███████████ ; plaintiff Nimesh Patel registered for

16   Facebook on or about ██████████ ; and plaintiff Carlo Licata registered for Facebook on or

17   about ████████ .[5] The Terms and Sign-Up Page were different at each of those times.

18   Facebook has not produced, and apparently does not maintain, any record concerning whether any

19   plaintiff (or other Class member) ever agreed to, or even viewed, read, or was otherwise notified of,

20   the Terms, either at the time they registered or any time thereafter. *See infra* §IV.A.1.

21        **Disputed Facts**. Facebook has produced several documents that it contends constitute the

22   Sign-Up Pages as they existed on the date each plaintiff registered for Facebook. But as Facebook's

23   30(b)(6) witness admitted, ████████████████████████████████

24   ████████████████████████████████████████████████

---

[3]    Because plaintiffs have requested a jury trial on all issues, Plaintiffs object, do not consent to a bench trial, and reserve their right to a jury trial on disputed issues of fact. Dkt. No. 40.

[4]    For the sake of brevity, this brief uses "Terms" to encompass any of Facebook's purportedly binding adhesion contracts – including documents that have sometimes been called "Terms of Use," other times "Terms of Service," and today are called a "Statement of Rights and Responsibilities."

[5]    *See* Declaration of Shawn A. Williams ("Williams Decl."), Exhibit 1 (Pezen); Ex. 2 (Licata); Ex. 3 (Patel).

1  ███████████████████████████████████████ *See infra*

2  §IV.A.2. Additionally, a Facebook 30(b)(6) witness testified that ████████

3  ███████████████████████████████████████████████████

4  █████████████████████████ There is little or no direct evidence in the record

5  concerning what device or internet browser any of the Plaintiffs used to register for Facebook (and

6  Facebook produced no Sign-Up Pages for phones, which differ from those for computers, and at

7  least one of the Plaintiffs may have signed up by phone). Therefore, the record lacks any accurate

8  depiction of the Sign-Up Pages Plaintiffs actually viewed when they registered for Facebook.

9  **III.   LEGAL STANDARD**

10       Summary judgment is only appropriate "when no genuine and disputed issues of material fact

11  remain, and when, viewing the evidence most favorably to the nonmoving party, the movant is

12  clearly entitled to prevail as a matter of law." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946,

13  950 (9th Cir. 2009). A material issue of fact is a question the jury must answer under the substantive

14  law, and dispute is genuine "'if the evidence is such that a reasonable jury could return a verdict for

15  the nonmoving party.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).[6] "'Credibility

16  determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts

17  are jury functions, not those of a judge.'" *Id*. at 265.

18       Where, as here, "the moving party has the burden of proof at trial, that party must carry its

19  initial burden at summary judgment by presenting evidence affirmatively showing, for all essential

20  elements of its case, that no reasonable jury could find for the non-moving party." *Fara Estates*

21  *Homeowners Ass'n v. Fara Estates, Ltd.*, 134 F.3d 377, 378 (9th Cir. 1998). If a moving party fails

22  to carry its initial burden the nonmoving party has no evidentiary obligation and summary judgment

23  must be denied. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970) ("'No defense to an

24  insufficient showing is required.'"). Even if the moving party does carry its initial burden, the

25  nonmoving party need only "present evidence from which a jury might return a verdict in his favor"

26  to defeat summary judgment. *Anderson*, 477 U.S. at 257.

27

28  ───────────────
     [6]   Citations are omitted and emphasis added unless otherwise noted.

## IV.    FACEBOOK IS NOT ENTITLED TO SUMMARY JUDGMENT

Facebook premises summary judgment on a purported contract.  But "'[t]here is no contract until there is mutual consent of the parties.'" *Norcia v. Samsung Telecomms. Am., LLC*, 2014 U.S. Dist. LEXIS 131893, at 12 (N.D. Cal. Sept. 18, 2014) (alteration in original) (Donato, J.) (quoting *Deleon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 813 (2012)).[7] "The mutual consent necessary to form a contract" is a "'question of fact,'" "'determined under an objective standard applied to the outward manifestations or expressions of the parties, *i.e.*, the reasonable meaning of their words and acts.'" *Id*. Critically, "contracts cannot be formed on the basis of stealth drafting: 'when the offeree does not know that a proposal has been made to him this objective standard does not apply. Hence, an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Id*. at 13 (citing *Specht v. Netscape Commc'ns. Corp.*, 306 F.3d 17, 29-30 (2d Cir. 2002) (Sotomayor, J.)).

"'While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract.'" *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Across an ever-evolving variety of online formats – including, scrollwrap, clickwrap, browsewrap, and sign-in-wrap – the fundamental question remains: did the website provide the average internet user with adequate notice of the purported contract and its terms? If not, then there is no contract. *See Savetsky v. Pre-Paid Legal Servs.*, 2015 U.S. Dist. LEXIS 17591, at *7-*9 (N.D. Cal. Feb. 12, 2015).

Because adequacy of notice is a fact-specific inquiry that "depends on the design and content of the website and the agreement's webpage," *Nguyen*, 763 F.3d at 1177, it cannot be decided as a matter of law if the evidence leaves that design and content uncertain or disputed. *See, e.g.*, *Rodman v. Safeway Inc.*, 2015 U.S. Dist. LEXIS 115705, at 56-57 (N.D. Cal. 2015) (summary judgment denied where evidence of earlier version of website uncertain and disputed). Even when undisputed,

---

[7]    Contract formation is governed by state substantive law, and under California's governmental interest approach Illinois law has the greater interest. *See Hernandez v. Burger*, 102 Cal. App. 3d 795, 801 (Cal. Ct. Apps. 1980). Because Illinois and California law do not materially differ on assent, Plaintiffs apply California law. *See also* 14 Cal. Jur. 3d Contracts §82 (2015) (mutual assent required under California law); 12 Ill. Law and Prac. Contracts §25 (2015) (same under Illinois law).

"the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design all contribute to whether a reasonably prudent user would have [] notice of [the] agreement," *Nguyen*, 763 F.3d at 1177, and, as always, it "'is for the jury to decide whether the conduct in question meets the reasonable-person standard.'" *SEC v. Phan*, 500 F.3d 895, 908 (9th Cir. 2007). Any doubt must be construed in favor of the average internet user and against enforceability. *See Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 382 (E.D.N.Y. 2015).

### A. Genuine Issues of Material Fact Exist Concerning Whether Plaintiffs Assented to Facebook's Terms

Facebook fails to meet its burden of showing that no material issue of fact exists with respect to whether Plaintiffs assented to Facebook's Terms. That is so because Facebook has been unable to establish even the most basic facts of Plaintiffs' registrations including what exactly the registration forms looked like,[8] how exactly the "sign-up-flow" proceeded,"[9] and whether or not any Plaintiffs were ever presented with Facebook's Terms.[10] Facebook's witnesses even conceded, under oath, that ███████████████████████████████████████████████████████████████████████[11] And Facebook's witnesses also conceded that ████████████████████████████████████ ████████████████████████████████████████████████████[12] In short, Facebook's evidence fails to directly establish that Plaintiffs assented to Facebook's Terms.[13]

### 1. There Is No Direct Evidence of Plaintiffs' Assent to the Terms

There is no direct evidence – documentary or testimonial – that any plaintiff even reviewed (much less assented to) Facebook's terms when they registered. ***First***, none of the Plaintiffs recalled executing the reconstructed Sign-Up Pages presented by Facebook. Each Plaintiff testified that he did not recall the layout of the Sign-Up Pages at the time he registered, each testified that he did not

---

[8]  *See infra* IV.A.2.
[9]  *Id.*
[10]  *See infra* IV.A.1.
[11]  *See* Williams Decl., Ex. 4 at 83:25-86:25; 100:9-19; 120:6-11; 122:21-123:7; 165:17-20; 168:5-168:18; *see also* Williams Decl., Ex. 5 at 77:11-20.
[12]  *See* Williams Decl., Ex. 5 at 67:24-68:2; 68:5-7; 70:8-11; 70:14-16; 73:11-14; 73:23-74:1; *see also* Williams Decl., Ex. 4 at 168:20-169:15.
[13]  It defies belief that an internet company as monolithic as Facebook would fail to maintain records of its users' website conduct, yet assert that unrecorded conduct as a basis to deprive those users of their statutory privacy rights. This glaring absence of evidence not only cuts against Facebook on the present motion, but also raises credibility concerns that must await a later stage of the proceedings.

recall being presented with the Terms during the process, and Plaintiffs Licata and Pezen[14] testified that they did not recall clicking the "Sign Up" or "Register Now" buttons.[15] **Second**, each plaintiff testified that they conducted a thorough search and could find no e-mails or other evidence of having ever assented.[16] **Third**, Facebook's own 30(b)(6) witness conceded that ███████████████████████ █████████████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████████████ ████████████████████████████ ███████████████████████████████████████████████████ █████████████████████████,[19] despite the fact that Plaintiffs registered for Facebook in 2005, 2008, and 2009.[20] None of Facebook's 30(b)(6) witnesses ████████████████████████████ █████████████████████████████████████████████████████████████████████████████████ ████████████.[21] Nor did Facebook's records show that Plaintiffs reviewed, agreed to, or received notice of Facebook's Terms subsequent to registering their Facebook accounts.[22]

Because Facebook's own documentary evidence lacks any record of Plaintiffs being notified of, reading, or assenting to Facebook's Terms, Facebook has not met its burden of establishing the existence of a binding contract with the Plaintiffs that incorporated a valid choice-of-law clause. *See Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 535-36 (C.D. Cal. 2013).

---

[14]   Adam Pezen testified that he has recently read the Terms, but that has no bearing on whether he has agreed to such terms, especially as they relate to the claims alleged in the Consolidated Class Action Complaint (Dkt. No. 40) ("Complaint"), which date back to at least 2010 when Facebook began collecting biometric identifiers. Williams Decl., Ex. 6 at 56:22-57:20; *see also* Complaint, ¶¶ 21, 28. While Patel, a non-lawyer, acknowledged (subject to a valid objection) being bound to terms he did not read nor understand, this is precisely what cases such as *Gogo* seek to address. For assent to exist, the website and terms of service must be designed in such a way that a reasonable person would be drawn to understand that it is important to read them – that important rights may otherwise be compromised. Facebook's failure to present evidence of what was precisely in front of Patel (or any other plaintiff or Class member) makes it impossible for a trier of fact to make a judgment concerning what a reasonable person would have thought and thus Facebook cannot meet its burden. *See* Williams Decl., Ex. 7 61:18-25; 65:5-10; 66:2-8; 81:9-20; 99:16-108:24.
[15]   *See* Williams Decl., Ex. 6 at 8:13-21; 52:15-24; 53:16-19; 56:7-10; Ex. 8 at 51:24-52:11; 55:23-57:5 Ex. 7 at 58:20-59:8; 60:12-24; 61:19-62:1; 108:19-110:10.
[16]   *See* Williams Decl., Ex. 6 at 36:3-20; Ex. 8 at 31:12-15; Ex. 7 at 47:8-50:2.
[17]   *See* Williams Decl. Ex. 5 at 67:24-68:7 (Pezen); 70:8-16 (Licata); 73:11-74:1 (Patel).
[18]   *See* Williams Decl. Ex. 5 at 60:2-21; 63:23-25; 64:10-13 ████████████████████████████ ███████████████████).
[20]   *See* Williams Decl. Ex. 5 at  51:23-52:14 (Pezen); 69:17-25 (Licata); 72:9-15 (Patel).
[21]   *See* Williams Decl. Ex. 1 (Pezen); Williams Decl. Ex. 2 (Licata); Williams Decl. Ex. 3 (Patel).
[22]   *See* Williams Decl. Ex. 5 at 60:2-21; 63:23-25; 64:10-13; 77:11-20; Ex. 4 at 85:21-24; 86:2-25; 100:9-14; 120:6-11; 123:21-124:9; Ex. 9 at 56:7-57:12.
[22]   *See* Williams Decl. Ex. 5 at 79:1-16; 80:3-13; Ex. 4 at 168:5-169:15.

2.    **Facebook's Circumstantial Evidence Fails to Establish that Plaintiffs Assented to the Terms of Use**

Because Facebook has no direct evidence demonstrating Plaintiffs assented, Facebook's argument hinges on circumstantial evidence consisting of ████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████ Facebook contends that this evidence shows that Plaintiffs must have agreed to the Terms simply by virtue of the fact that they have Facebook accounts. But Facebook's tautological argument is belied by the evidence, which fails to establish even the most basic facts concerning the registration process when Plaintiffs registered their accounts.

***First***, Facebook admits that ████████████████████████████ ██████████████████[23] These factors affect the size and location of text and buttons displayed during the registration process[24] – crucial facts necessary to establish whether there was adequate notice of the terms (*see infra* IV.B). Facebook has produced no evidence detailing which device or browser Plaintiffs used when they signed up for Facebook. And each plaintiff testified that they had access to, and could have used, many different devices and/or browsers during the registration process.[25] Facebook ████████████████████████████████████████████ ██████████████████[26] Facebook has even conceded that, ███████████████████ ███████████████████████████████████████████ – and Facebook has failed to produce any evidence of which specific Terms configurations were presented to Plaintiffs.[27] Because neither Facebook nor Plaintiffs know what precise version of the registration process, if any, each plaintiff viewed, assent cannot be shown as a matter of law.

---

[23]    *See* Williams Decl. Ex. 9 at 35:19-36:9 █ ████████████████████████ ████████████████; *see also id.* at 94:17-95:5 (████████████████████████████████████). *Id.* at 65-66.
[25]    *See* Williams Decl. Ex. 6 at 37:24-39:5; Ex. 8 at 34:16-35:17; Ex. 7 at 54:4-57:20.
[26]    *See* Williams Decl. Ex. 9 at 98:2-24; 112:16-18; 113:3-12; 117:19-118:2.
[27]    For example, ████████████████████████ however, this does not represent all of the possible versions at that time, and defendant could not identify which version Plaintiffs may have seen. *See* Williams Decl. Ex. 9 at 90:16-92:4; *see also id.* at 71:24-25 ████████████████████████ ██████████████████████).

1    ***Second***, even Facebook's 30(b)(6) witness acknowledged that ████████████

2    ██████████████████████████████████████████████████████████████████████████████

3    ████████. Instead, Facebook ██████████████████████████████████████████████

4    ██████████████████████████████████████████████████████████████████████████████

5    ████████████████████████[28] Those reconstructions do not satisfy the best evidence rule and

6    should be afforded no evidentiary significance here.[29] *See* Fed. Rule Evid. 1001, *et seq*.

7            The many variations across the possible Sign-Up Pages Plaintiffs potentially viewed, and the

8    resulting questions of fact that Facebook cannot resolve, are directly material to whether Plaintiffs

9    received adequate notice of the Terms. For example, ██████████████████████████████████

10   ████████████████████████████████████████████████████.[30] ████████████████████

11   ██████████████████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████[31] Because what the

13   Plaintiffs potentially viewed remains uncertain, assent cannot be determined as a matter of law.

14   **B.    Even if Accurate and Undisputed, Facebook's Purported Facts Would**
     **Not Warrant Judgment as Matter of Law**

15           One thing the record ***does*** demonstrate is that from 2005, when plaintiff Pezen signed up for

16   Facebook, to 2008 and 2009, when Plaintiffs Patel and Licata signed up, Facebook increasingly

17   obfuscated the presentation of its Terms of Service to visitors of its website.[32] Facebook made those

---

[28]   Williams Decl. Ex. 9 at 79:25-80:3 ████████████████████████████████████████
██████████████████████████████████████ D: 80:6-20 ███ ██████████████████████████
██████████████████████████████████████ ██ ████████ D: 81:24-82:█ ███
████████); 94:5-95:10. This reconstruction process appears to have occurred at least with
respect to the 2008 and 2009 Sign Up Pages, and the record is unclear as to the creation of the 2005
version produced.

[29]   *Id.; see also* Williams Decl. Ex. 9 at 68:7-19; 78:5-79:1. Facebook also failed to produce other
crucial documents, such as the "style sheets" that, together with the source code, determines the
layout and appearance of the registration page that Plaintiffs and other Class members would have
viewed. *Id.* at 82:2-12; 92:23-93:6; 93:21-94:3; 114:2-25; 115:10-15; 116:1-15; 117:10-18.

[30]   *See* Williams Decl. Ex. 10; *see also* Ex. 9 at 118:3-11.

[31]   *See* Williams Decl. Ex. 10; *see also* Ex. 9 at 107:12-23; 118:3-11.

[32]   *See* Williams Decl., Ex. 11 (████████████████████████████); Ex. 12 (█████████
████████); Ex. 13 (██████████████████████████).

1    changes for the specific purpose of ███████████████████████[33] In other words, Facebook

2    intentionally sought to speed its users through the registration process at the expense of giving

3    meaningful notice of its Terms. As a result, Facebook did not actually present Plaintiffs with its

4    Terms, let alone did Plaintiffs read – or assent to – those Terms. Certainly, Plaintiffs were not on

5    notice that signing up for Facebook's service would mean waiving substantive privacy rights granted

6    by the Illinois legislature. Facebook has failed to show that Plaintiffs assented to its Terms and, as a

7    result, cannot enforce its choice-of-law clause against them.

8          Facebook argues that Licata assented to Facebook's Terms of Service "via sign-in-wrap" (a

9    type of browsewrap[34]) when he registered for Facebook's service in November of 2009. (*Cf.* Dkt.

10   No. 69 at 2-3.) But Facebook has failed to show that plaintiff Licata has ever even seen Facebook's

11   Terms of Service – much less manifested his assent to them.[35]

12         Rather, Facebook's facts (if they had been properly established) would only show that

13   Facebook's sign-up process, as it then existed, was unlikely to give Licata notice that he was

14   agreeing to any terms, much less that by doing so he would purportedly waive all rights conferred by

15   the State of Illinois. Specifically, at most, the record would demonstrate that Licata ████████████

16   ███████████████████████████████████████████████████████████████████

17   ███████████████████████████████████████████████████████████████████

18   ███████████████████████████████████████████████████████████████████

19   ██████████████████████████████████[36]███████████████████████████████

20   ████████████████████████████████████████████████████[37] Facebook's

21   purported method of obtaining Licata's assent is deficient for at least two reasons.

22         First, unlike "scrollwrap" agreements, which require a user to scroll through Terms of

23   Service before clicking an "I agree" checkbox, sign-in-wrap agreements like the one allegedly

24   [33]  *See* Williams Decl. Ex. 9 at 42:1-23.

25   [34]  *See Gogo*, 97 F. Supp. 3d at 399 ("A questionable form of internet contracting has been used in
     recent years – sign-in-wraps. These internet consumer contracts do not require the user to click on a

26   box showing acceptance of the "terms of use" in order to continue. Rather, the website is designed so
     that a user is notified of the existence and applicability of the site's "terms of use" when proceeding

27   through the website's sign-in or login process.").
     [35]  *See* Williams Decl. Ex. 5 at 64:21-23.

28   [36]  *See* Williams Decl. Ex. 5 at 55:8-13.
     [37]  *Id.*

presented to Licata require no additional affirmative action by the consumer, and are therefore generally unenforceable for failure to provide adequate notice. *See Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1196 (N.D. Cal. 2015) (sign-in-wrap agreements generally unenforceable); *see also Tompkins v. 23andMe, Inc.*, 2014 U.S. Dist. LEXIS 88068, at *22 (N.D. Cal. June 25, 2014) (refusing to enforce browsewrap agreement where website "did not require customers to acknowledge the TOS during purchase"). That is especially true when the party allegedly waiving rights is an individual consumer (rather than a corporation or other sophisticated business entity). *See Gogo*, 97 F. Supp. 3d at 396-97 (noting, in an 83-page order hailed as the most comprehensive opinion on electronic adhesion contracts, that "[f]ollowing the ruling in *Specht*, courts generally have enforced browsewrap terms only against knowledgeable accessors, such as corporations, not against individuals"). Thus, Facebook's request that this Court find that Licata (and millions of other Illinois residents) waived his statutory rights through a contract he was never required to view, never in fact saw, and never explicitly indicated his assent to, should be rejected.

Second, even if the Court were inclined to hold that sign-in-wrap agreements may ***sometimes*** be enforceable, the sign-in-wrap agreement Facebook alleges it presented to Licata is particularly problematic. In determining whether a sign-in-wrap agreement sufficiently puts the consumer on notice, the "[c]larity and conspicuousness of [the] terms are important." *Specht*, 306 F.3d at 30. Here, Facebook ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████[38] A reasonable consumer would not expect to be presented with Terms of Service on this page (much less that those Terms could waive fundamental privacy rights). *See Gogo*, 97 F. Supp. 3d at 402 (Terms must "clearly draw the consumer's attention" if they wish to alter the rights "a reasonable consumer would understand to be her default rights," including the right to "bring a civil consumer protection action under the law of her state of residence and in the courts in her state of residence."). Indeed, the Court in *Gogo* meticulously rejected Facebook's primary authority, *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012), explaining that "*Fteja* and lower court cases that follow its lead, mischaracterize

---

[38]   *See* Williams Decl., Ex. 13.

1    important Supreme Court and Court of Appeals precedent regarding contracts and the reasonable

2    person standard that must be applied to inquiry notice of, and manifestation of assent to, the terms in

3    a contract of adhesion." *Gogo*, 97 F. Supp. 3d at 403. Worse, Facebook ███████████████████

4    ████████████████████████████████████████████ That is, Facebook claims that ██

5    ████████████████████████████████████████████, which are intentionally

6    designed to command website users' full attention. *See id*. Facebook's choice to place its Terms

7    ***below*** the CAPTCHA, in text that was neither bold nor italicized nor underlined, further

8    demonstrates that a reasonable visitor would not notice the purported sign-in-wrap agreement.

9           The sign-in pages purportedly presented to Pezen and Patel also fail to establish assent. Even

10   if they were required to click on an "I agree" button, Pezen and Patel were not provided with

11   constructive notice of Facebook's Terms – much less the choice-of-law clause buried within. *See*

12   *Harris v. comScore, Inc.*, 825 F. Supp. 2d 924, 927 (N.D. Ill. 2011) (acknowledging "the possibility

13   that a click-through agreement is not enforceable if its terms are not reasonably apparent to the user"

14   and refusing to enforce where "the location of the license agreement was not readily apparent");

15   *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009) (finding no reasonable

16   communication and acceptance where "the link to the Terms and Conditions was not prominently

17   displayed"). Online agreements exist on a "continuum" based on "the level of assent required." For

18   example, scrollwrap agreements, which require "[s]crolling through contract terms" are more likely

19   to be enforced than agreements which merely contain a "button that must be affirmatively checked."

20   *See* Ronald J. Mann & Travis Siebeneicher, *Just One Click: The Reality of Internet Retail*

21   *Contracting*, 108 Colum. L. Rev. 984, 995 (2008). By contrast, where defendants fail to track

22   whether a consumer clicks and actually view a hyperlinked agreement, courts do not enforce the

23   agreement. *See, e.g.*, *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 548-49 (1st Cir.

24   2005) (refusing to enforce terms where defendant, because of insufficient records, failed "to

25   contradict the plaintiff's claim that he never read [them]").

26          Here, Facebook (1) failed to display its Terms to Patel and Pezen; (2) failed to indicate that

27   the Terms claimed to waive substantive rights; and (3) failed to determine or track whether Pezen or

28   Patel in fact viewed the Terms. Thus no enforceable contract was formed between Facebook and

1  Plaintiffs Patel and Pezen. *See Specht*, 306 F.3d at 29-30 ("a consumer's clicking on a [website]

2  button does not communicate assent to contractual terms if the offer did not make clear to the

3  consumer that clicking on the . . . button would signify assent to those terms"). Moreover, Facebook

4  made no effort to call attention to the Terms of Service hyperlink allegedly presented to Pezen and

5  Patel, whether through bolding, underlining, italicizing, or enlarging. *See id*. at 30 ("[c]larity and

6  conspicuousness" of Terms required). In fact, Pezen specifically testified that he typically decides

7  whether to review websites' terms of service based on whether he suspects a threat to his privacy

8  rights,[39] an eminently reasonable criteria given the proliferation of terms purporting to govern online

9  interactions, and yet one Facebook deliberately evades. *See also Gogo*, 97 F. Supp. 3d at 382 ("the

10  burden [is] on the offeror to impress upon the offeree . . . the importance of the details of the binding

11  contract being entered into. . . . [B]urden [] include[s] the duty to explain the relevance of the critical

12  terms governing the offeree's substantive rights").

13      Even if the Court were to find constructive notice of the hyperlink to Facebook's Terms,

14  Pezen and Patel still did not have notice of the choice-of-law clause inconspicuously buried within

15  those Terms. While many sections of the Terms were emphasized in all-caps or bold font, Facebook

16  buried the choice-of-law clause deep within the Terms, in smaller, unbolded, un-italicized text.[40]

17  Facebook's stealth drafting renders that clause unenforceable. *See Gogo*, 97 F. Supp. 3d at 402.

18  **V.     CONCLUSION**

19      For the foregoing reasons, summary judgment should be denied.

20  DATED:  February 24, 2016                ROBBINS GELLER RUDMAN
                                               & DOWD LLP
21                                          SHAWN A. WILLIAMS
                                            DAVID W. HALL
22

23

24                                            s/ Shawn A. Williams
                                            SHAWN A. WILLIAMS
25

26

27

28  [39]  *See* Williams Decl., Ex. 6 at 54:2-20.
    [40]  *See* Williams Decl. Ex. 4 at 115:1-14; 117:9-119:23.

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
PAUL J. GELLER*
STUART A. DAVIDSON*
MARK DEARMAN*
CHRISTOPHER C. MARTINS*
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
TRAVIS E. DOWNS III
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

LABATON SUCHAROW LLP
JOEL H. BERNSTEIN*
CORBAN S. RHODES*
ROSS M. KAMHI*
140 Broadway
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)

EDELSON PC
JAY EDELSON*
ALEXANDER T.H. NGUYEN*
350 North LaSalle Street, Suite 1300
Chicago, IL  60654
Telephone:  312/589-6370
312/589-6378 (fax)

Attorneys for Plaintiffs

* = Admitted *pro hac vice*

1

<u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on February 24, 2016, I authorized the electronic filing of the foregoing

3  with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

4  the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5  caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6  CM/ECF participants indicated on the attached Manual Notice List.

7      I certify under penalty of perjury under the laws of the United States of America that the

8  foregoing is true and correct.  Executed on February 24, 2016.

9                                                      s/ Shawn A. Williams
                                                    SHAWN A. WILLIAMS
10

11                                          ROBBINS GELLER RUDMAN
                                              & DOWD LLP
12                                          Post Montgomery Center
                                            One Montgomery Street, Suite 1800
13                                          San Francisco, CA  94104
                                            Telephone:  415/288-4545
14                                          415/288-4534 (fax)
                                            E-mail: shawnw@rgrdlaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPP. TO DEFENDANT'S MOT. FOR SUMMARY JUDGMENT - 3:15-cv-03747-JD

# Mailing Information for a Case 3:15-cv-03747-JD In re Facebook Biometric Information Privacy Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **James E Barz**
  jbarz@rgrdlaw.com

- **Joel H. Bernstein**
  jbernstein@labaton.com,lmehringer@labaton.com,sauer@labaton.com,electroniccasefiling@labaton.com

- **Stuart Andrew Davidson**
  sdavidson@rgrdlaw.com,jdennis@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Mark Dearman**
  mdearman@rgrdlaw.com,e_file_sd@rgrdlaw.com,cthornton@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Mark J. Dearman**
  mdearman@rgrdlaw.com

- **Jay Edelson**
  jedelson@edelson.com

- **Paul J. Geller**
  pgeller@rgrdlaw.com

- **Paul Jeffrey Geller**
  pgeller@rgrdlaw.com

- **Lauren R Goldman**
  lrgoldman@mayerbrown.com,jmarsala@mayerbrown.com

- **Ross M Kamhi**
  rkamhi@labaton.com

- **J. Dominick Larry**
  nlarry@edelson.com,cdore@edelson.com,docket@edelson.com

- **John Nadolenco**
  jnadolenco@mayerbrown.com,los-docket@mayerbrown.com,jaustgen@mayerbrown.com

- **Alexander Nguyen**
  anguyen@edelson.com,docket@edelson.com

- **Archis A. Parasharami**
  aparasharami@mayerbrown.com

- **Archis Ashok Parasharami**
  aparasharami@mayerbrown.com,wdc.docket@mayerbrown.com

- **Corban S Rhodes**
  crhodes@labaton.com

- **Frank Anthony Richter**
  frichter@rgrdlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ptiffith@rgrdlaw.com,dhall@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Vincent         J. Connelly**
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

**Facebook Inc.**
Cooley LLP
3000 El Camino Real
Five Palo Alto Square
Palo Alto, CA 94306-2155