1  MAYER BROWN LLP
   John Nadolenco (SBN 181128)
2  350 South Grand Avenue
   25th Floor
3  Los Angeles, CA 90071-1503
   Telephone: (213) 229-9500
4  jnadolenco@mayerbrown.com
5
   Lauren R. Goldman (*pro hac vice*)
6  1221 Avenue of the Americas
   New York, NY 10020
7  Telephone: (212) 506-2647
   lrgoldman@mayerbrown.com
8
9  Archis A. Parasharami (*pro hac vice*)
   1999 K Street, N.W.
10 Washington, D.C. 20006-1101
   Telephone: (202) 263-3328
11 aparasharami@mayerbrown.com
12
   *Counsel for Defendant Facebook, Inc.*
13

14              **UNITED STATES DISTRICT COURT**

15             **NORTHERN DISTRICT OF CALIFORNIA**

16               **SAN FRANCISCO DIVISION**

17
   IN RE FACEBOOK BIOMETRIC            Master Docket No.: 3:15-CV-03747-JD
18 INFORMATION PRIVACY LITIGATION
                                       **DEFENDANT FACEBOOK, INC.'S**
19                                     **ANSWER AND AFFIRMATIVE**
                                       **DEFENSES TO PLAINTIFFS'**
20 THIS DOCUMENT RELATES TO:           **COMPLAINT**

21 ALL ACTIONS                         Hon. James Donato

22

23

24

25

26

27

28

Defendant Facebook, Inc. ("Facebook"), by and through its attorneys, submits its Answer and Affirmative Defenses in response to the Consolidated Class Action Complaint (the "Complaint") of Plaintiffs Carlo Licata, Adam Pezen, and Nimesh Patel.

For ease of reference, Facebook's Answer tracks the Complaint's section headings, but Facebook specifically denies any and all allegations and inferences of wrongdoing that may be contained in those headings.  Facebook further states as follows:

## NATURE OF THE ACTION

1.     Defendant Facebook operates the largest social network in the world, with over one billion active users.

ANSWER:  Admitted.

2.     Facebook users can use its platform to, among other things, upload and share photographs with friends and relatives. Once a user uploads a photograph on Facebook, the user can "tag" (*i.e.*, identify by name) other Facebook users and non-users who appear in the photograph.

ANSWER:  Facebook admits that people with Facebook accounts can use its platform to upload photographs and tag other people who appear in the photographs.  Facebook denies that a tag necessarily identifies the tagged individual by name, and denies the allegations in Paragraph 2 to the extent they might suggest that the "Tag Suggestions" feature applies to people who do not have Facebook accounts.

3.     To encourage use of the tagging feature, Facebook launched a program in 2010 called "Tag Suggestions." Tag Suggestions functions by scanning photographs uploaded by the user and then identifying faces appearing in those photographs. If Tag Suggestions recognizes and identifies one of the faces appearing in the photograph, Facebook will suggest that individual's name or automatically tag them.

ANSWER:  Facebook admits that it began offering the "Tag Suggestions" feature in 2010 to people with Facebook accounts.  Facebook denies the other allegations in Paragraph 3.

1

2
4.      Facebook conceals that Tag Suggestions uses proprietary facial recognition
software to extract from user-uploaded photographs the unique biometric identifiers (*i.e.*,
3
graphical representations of facial features, also known as facial geometry) associated with
4
people's faces and identify who they are. Facebook does not disclose its biometrics data
collection to its users, nor does it even ask users to acknowledge, let alone consent to, these
5
practices.

6
ANSWER:  Facebook denies the allegations in Paragraph 4.

7

8
5.      Through these practices, Facebook not only disregards its users' privacy rights; it
also violates the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* (the "BIPA"), which
9
was specifically designed to protect Illinois residents from practices like Facebook's. In
particular, Facebook violated (and continues to violate) the BIPA because it did not:
10

11
    •  Properly inform Plaintiffs or the Class in writing that their biometric identifiers (face
       geometry) were being generated, collected or stored;
12

13
    •  Properly inform Plaintiffs or the Class in writing of the specific purpose and length of
       time for which their biometric identifiers were being collected, stored, and used;
14
    •  Provide a publicly available retention schedule and guidelines for permanently
15     destroying the biometric identifiers of Plaintiffs and the Class (who do not opt-out of
       "Tag Suggestions"); and
16
    •  Receive a written release from Plaintiffs or the Class to collect, capture, or otherwise
17     obtain their biometric identifiers.

18
ANSWER:  Facebook denies the allegations in Paragraph 5.

19

20
6.      Accordingly, this Complaint seeks an order: (i) declaring that Facebook's conduct
violates the BIPA; (ii) requiring Facebook to cease the unlawful activities discussed herein; and
21
(iii) awarding statutory damages to Plaintiffs and the proposed Class.

22
ANSWER:  Facebook admits that Plaintiffs seek declaratory relief, injunctive relief, and
23
statutory damages on behalf of themselves and the putative class, but denies all remaining
24
allegations in Paragraph 6 and that Plaintiffs are entitled to any relief.

25

26

27

28
DEFENDANT FACEBOOK, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS'
COMPLAINT; MASTER CASE NO. 3:15-CV-03747-JD

1

**PARTIES**

2

3

7.     Plaintiff Adam Pezen ("Pezen") is a natural person and Facebook user. Plaintiff is a resident and citizen of the State of Illinois.

4

5

ANSWER:  Facebook admits that Plaintiff Pezen is a natural person and that he has a

6

Facebook account, but Facebook lacks knowledge or information sufficient to form a belief

7

about the truth of the other allegations in Paragraph 7 and on that basis denies them.

8

9

8.     Plaintiff Carlo Licata ("Licata") is a natural person and Facebook user. Plaintiff is a resident and citizen of the State of Illinois.

10

11

ANSWER:  Facebook admits that Plaintiff Licata is a natural person and that he has a

Facebook account, but Facebook lacks knowledge or information sufficient to form a belief

12

about the truth of the other allegations in Paragraph 8 and on that basis denies them.

13

14

9.     Plaintiff Nimesh Patel ("Patel") is a natural person and Facebook user. Plaintiff is a resident and citizen of the State of Illinois.

15

16

ANSWER:  Facebook admits that Plaintiff Patel is a natural person and that he has a

17

Facebook account, but Facebook lacks knowledge or information sufficient to form a belief

18

about the truth of the other allegations in Paragraph 9 and on that basis denies them.

19

20

10.     Defendant Facebook, Inc. is a Delaware corporation with its principal executive offices and corporate headquarters located at 1601 Willow Road, Menlo Park, California 94025. Facebook is a citizen of the States of Delaware and California. Facebook is also registered to conduct business in the State of Illinois (file number 66267067) and maintains an office in Cook County, Illinois. Facebook conducts business throughout this District, the State of Illinois, the State of California, and the United States.

21

22

23

24

ANSWER:  Facebook admits the allegations in the first, second, and third sentences of

25

Paragraph 10.  The allegations in the last sentence of Paragraph 10 state legal conclusions to

26

which no response is required.

27

3

28

1
2

## JURISDICTION AND VENUE

3
4
5

11.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA"), because: (i) the proposed Class consists of well over 100 members; (ii) the parties are minimally diverse, as members of the proposed Class, including Plaintiffs, are citizens of a state different from Defendant's home state; and (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.

6
7
8

ANSWER:  The allegations in Paragraph 11 state legal conclusions to which no response is required.

9
10
11

12.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendant Facebook because Defendant has submitted to this Court's jurisdiction and has its corporate headquarters in Menlo Park, California.

12
13

ANSWER:  The allegations in Paragraph 12 state legal conclusions to which no response is required.

14
15

13.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant maintains its corporate headquarters and principal place of business in this District.

16
17
18

ANSWER:  The allegations in Paragraph 13 state legal conclusions to which no response is required.

19

## INTRADISTRICT ASSIGNMENT

20
21

14.     Pursuant to Civil Local Rule 3-2(d), this case should be assigned to the San Francisco Division.

22
23

ANSWER:  The allegations in Paragraph 14 state a legal conclusion to which no response is required.

24
25
26
27
28

DEFENDANT FACEBOOK, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT; MASTER CASE NO. 3:15-CV-03747-JD

# FACTUAL BACKGROUND

## I.    Biometrics and Consumer Privacy

15.    "Biometrics" refers to technologies used to identify an individual based on unique physical characteristics. Common biometric identifiers include retina or iris scans, fingerprints, or hand or face geometry scans, which are all generally obtained by first acquiring an image or photograph of the biometric identifier. One of the most prevalent uses of biometrics is facial recognition technology, which works by scanning an image for human faces, extracting facial feature data from a photograph or image of a human face, generating a "faceprint" from the image through the use of facial-recognition algorithms, and then comparing, or "matching," the resultant faceprint to other faceprints stored in a "faceprint database." If a database match is found, a person may be identified.

ANSWER:  Facebook denies the allegations in Paragraph 15.

16.    The recent sophistication of facial recognition software has generated many commercial applications of the technology, but also raised serious privacy concerns about its massive scale, scope, and surreptitiousness.[1] During a 2012 U.S. Senate hearing, Senator Al Franken noted that someone armed with a faceprint can find that person's "name . . . social networking account and . . . can find and track [them] in the street, in the stores [they] visit, the government buildings [they] enter, and the photos [their] friends post online."[2] Faceprints can even be used to identify protesters from afar and then "target them for selective jailing and prosecution."[3]

ANSWER:    Facebook lacks sufficient information to admit or deny whether the allegations in Paragraph 16 accurately reflect statements made by Senator Franken, and otherwise denies the allegations in Paragraph 16.

17.    Unlike other identifiers such as Social Security or credit card numbers, which can be changed if compromised or stolen, biometric identifiers linked to a specific voice or face

---

[1]    *What Facial Recognition Technology Means for Privacy and Civil Liberties: Hearing Before the Subcomm. on Privacy Tech & the Law of the S. Comm. on the Judiciary*, 112th Cong. 1 (2012) (statement of Jennifer Lynch, Staff Attorney, Electronic Frontier Foundation), *available at* https://www.eff.org/files/filenode/jenniferlynch_eff-senate-testimony-face_recognition.pdf.

[2]    *What Facial Recognition Technology Means for Privacy and Civil Liberties: Hearing Before the Subcomm. on Privacy Tech & the Law of the S. Comm. on the Judiciary*, 112th Cong. 1 (2012) (statement of Sen. Al Franken, Chairman, Subcomm. on Privacy, Tech. & the Law of the S. Comm. on the Judiciary), *available at* http://www.franken.senate.gov/?p=press_release&id=2144.

[3]    *Id.*

cannot. These unique and permanent biometric identifiers, once exposed, leave victims with no means to prevent identity theft and unauthorized tracking. Recognizing this, the Federal Trade Commission urged companies using facial recognition technology to ask for consent **before** ever scanning and extracting biometric data from their digital photographs.[4] Facebook has deliberately ignored this prevailing view, which is expressly required under the BIPA, failed to obtain user consent before launching its wide-spread facial recognition program, and continues to violate millions of Illinois residents' legal privacy rights.

ANSWER:   Facebook lacks sufficient information to admit or deny whether the allegations in Paragraph 17 accurately summarize the FTC's statements, and otherwise denies the allegations in Paragraph 17.

## II.    Illinois's Biometric Information Privacy Act

18.    The BIPA was enacted in 2008. Under the BIPA, companies may not "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier . . . unless it first:

(1)    informs the subject . . . in writing that a biometric identifier . . . is being collected or stored;

(2)    informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier . . . is being collected, stored, and used; and

(3)    receives a written release executed by the subject of the biometric identifier . . . ."

740 ILCS 14/15(b).

ANSWER:   Facebook admits that the BIPA was enacted in 2008.   Facebook maintains that the BIPA's statutory language speaks for itself and denies the allegations in Paragraph 18 to the extent they inaccurately quote from and/or mischaracterize the statute.

19.    The statute defines "biometric identifier" to include "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

---

[4]   *See Facing Facts: Best Practices for Common Uses of Facial Recognition Technologies*, Federal Trade Commission (Oct. 2012), *available at* http://www.ftc.gov/sites/default/files/ documents/reports/facing-facts-best-practices-common-uses-facial-recognition-technologies/121022facialtechrpt.pdf.

DEFENDANT FACEBOOK, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT; MASTER CASE NO. 3:15-CV-03747-JD

1

2

3

4

<u>ANSWER</u>:  Facebook maintains that the BIPA's statutory language speaks for itself and denies the allegations in Paragraph 19 to the extent they inaccurately quote from and/or mischaracterize the statute.

5

6

7

8

9

20.     The BIPA also regulates how companies must handle Illinois residents' biometric data. *See, e.g.*, 740 ILCS 14/15(c)–(d). For instance, the BIPA prohibits selling, leasing, trading, or otherwise profiting from a person's biometric data, 740 ILCS 14/15(c), and requires that companies develop a publicly available written policy establishing a retention schedule and guidelines for permanently destroying biometric data when the initial purpose for collecting such data has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

10

11

12

<u>ANSWER</u>:  Facebook maintains that the BIPA's statutory language speaks for itself and denies the allegations in Paragraph 20 to the extent they inaccurately quote from and/or mischaracterize the statute.

13

14

**III.     Facebook Violates the Biometric Information Privacy Act**

15

16

21.     In 2010, Facebook launched a program called "Tag Suggestions," which claimed to "automate the process of identifying and, if the user chooses, tagging friends in the photos he or she uploads."[5]

17

18

19

20

21

22

<u>ANSWER</u>:  Facebook admits that it began offering the "Tag Suggestions" feature in 2010 to people with Facebook accounts.  Answering further, Facebook maintains that the quoted testimony of Robert Sherman speaks for itself and denies the allegations in Paragraph 21 to the extent they inaccurately quote from and/or mischaracterize that testimony, and otherwise denies the allegations in Paragraph 21.

23

24

25

26

---

[5]     *What Facial Recognition Technology Means for Privacy and Civil Liberties: Hearing Before the Subcomm. on Privacy, Tech. & the Law of the S. Comm. on the Judiciary*, 112th Cong. 1 (2012) (statement of Robert Sherman, Manager of Privacy and Public Policy, Facebook, Inc.), *available at* http://www.judiciary.senate.gov/imo/media/doc/12-7-18ShermanTestimony.pdf.

27

28

1
2
3

22.     Unbeknownst to the public, Tag Suggestions relies on state-of-the-art facial recognition technology to extract biometric identifiers from user-uploaded photographs in order to determine who the people in the photographs are. <u>Figure 1</u> below shows an example of what Tag Suggestions looks like to a Facebook user.

4
5
6
7
8
9
10
11



12

(**Fig. 1.**)

13

<u>ANSWER</u>:  Facebook denies the allegations in Paragraph 22.

14
15
16

23.     Facebook uses facial recognition software to extract biometric data from user-uploaded photographs through the use of an algorithm that calculates a unique digital representation of the face (which it calls a "template") based on geometric relationship of their facial features, like the distance between their eyes, nose and ears.

17
18

<u>ANSWER</u>:  Facebook denies the allegations in Paragraph 23

19
20
21

24.     "Template" data (or, alternatively, faceprint data) stored by Facebook is a form of a biometric identifier extracted from the image of a person's face (*i.e.*, including information about the geometry of their face). (*See* <u>Figure 2</u>, showing an example of geometric data points of a human face.)

22
23
24
25
26
27
28



(**Fig. 2.**)

ANSWER:  Facebook denies the allegations in Paragraph 24.


25.    The process for creating image-based biometric identifiers (including those Facebook collects) is largely the same. In each case, an algorithm is used to calculate an individual's unique physical characteristics, which results in a biometric template that is separate and distinct from the image from which it was created.

ANSWER:  Facebook denies the allegations in Paragraph 25.


26.    Without even informing its users – let alone obtaining their informed written consent – Facebook through Tag Suggestions automatically enrolled them into its facial recognition program and extracted biometric identifiers from their uploaded photographs and previously tagged pictures, and stored these biometric identifiers in a database.

ANSWER:  Facebook denies the allegations in Paragraph 26.


27.    Because Facebook users were only allowed to opt out of the program *after the fact* (and even then, only if they knew to look for the opt-out mechanism), Facebook users unwittingly had their biometric identifiers extracted from photographs and then stored – a practice that continues to this day.

ANSWER:  Facebook admits that people with Facebook accounts may turn off the Tag Suggestions feature, and that when a person turns Tag Suggestions off Facebook will not suggest that people tag the person in photographs, but otherwise denies the allegations in Paragraph 27.

DEFENDANT FACEBOOK, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS'
COMPLAINT; MASTER CASE NO. 3:15-CV-03747-JD

**A.**   **Facebook Never Requires Users to Acknowledge Its Biometric Data Collection Practices, Never Obtains Their Express Written Consent to Collect the Same, and, Instead, Hides the Fact that It Systematically Collects Users' Biometrics**

28.   Since Tag Suggestions debuted in 2010, Facebook has been intentionally elusive in explaining how the technology works. First, Facebook does not directly inform users that it collects, captures, and obtains faceprints from users. In fact, even though Tag Suggestions has been in use for five years, Facebook still does not require users to acknowledge its collection of their biometric data, much less obtain a written release from them before collecting their faceprints. Instead, Facebook markets Tag Suggestions as a convenience feature, often with advertisements under the heading "Photos are better with friends." And nothing in those seemingly innocuous advertisements gives any indication that use of the feature would come at the cost of users' biometric privacy rights.[6]

ANSWER:  Facebook denies the allegations in Paragraph 28.

29.   Second, Facebook's Tag Suggestions are an opt-out (not an opt-in) program, so by default all users are automatically signed up. Facebook makes it difficult to opt out: In fact, since the Tag Suggestions feature was rolled out, Facebook has kept its biometrics data collection practices out of its privacy policies and has instead placed ambiguous statements about the true nature of its Tag Suggestions program on remote sections of its website (such as in its "Help Center" or the now defunct "Notes" sections). Uncovering these remote sections not only requires a user to know about Tag Suggestions in the first place, but also requires them to affirmatively seek out more information through multiple layers of additional pages.

ANSWER:  Facebook denies the allegations in Paragraph 29.

30.   Third, and compounding that problem and its violation of the BIPA, Facebook's website does not have a written, publicly available policy identifying its biometrics retention schedule, nor guidelines for permanently destroying users' (who do not opt-out of "Tag Suggestions") biometric identifiers when they are no longer needed.

ANSWER:  Facebook denies the allegations in Paragraph 30.

---

[6]   Facebook has not disclosed whether it will sell or lease its enormous database of faceprints to other companies for their facial recognition programs. *See, e.g.*, *Facebook Hit With Tough Questions On Facial Recognition In Senate Hearing*, VentureBeat, *available at* http://venturebeat.com/2012/07/18/facebook-hit-with-tough-questions-on-facial-recognition-in-senate-hearing/ (last visited Aug. 24, 2015).

DEFENDANT FACEBOOK, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS'
COMPLAINT; MASTER CASE NO. 3:15-CV-03747-JD

31.     By and through these actions, Facebook not only disregarded Plaintiffs and the Class's privacy rights, but it also violated their statutorily protected rights under BIPA to control the collection, use, and storage of their sensitive biometric data. Ignoring backlash over its unlawful biometric data collection practices, Facebook continues to roll out new products using facial recognition technology. Specifically, in June 2015, Facebook introduced a new mobile application, called Moments, that purports to allow Facebook users to more easily share photographs taken on users' mobile devices. This application also uses Facebook's proprietary facial recognition technology to extract biometric identifiers (including their face geometry) from photographs taken on a users' mobile device and identify others in those pictures. Facebook does not offer Moments in the Europe Union because of regulators' concerns about its facial recognition technology.

ANSWER:  Facebook admits that it began offering a mobile application called Moments in June 2015 and that Moments is not available in Europe.  Facebook denies the remaining allegations in Paragraph 31.

## IV.     Plaintiffs' Experiences

### A.     Plaintiff Adam Pezen's Experience

32.     Plaintiff Adam Pezen has been a Facebook user since 2005. Since then, Pezen has uploaded photographs to his account that include images of his face and has been tagged in many of them. Pezen has also been tagged in photographs uploaded by other Facebook members without his knowledge or consent.

ANSWER:  Facebook admits that Plaintiff Pezen has had a Facebook account since 2005 but lacks knowledge or information sufficient to form a belief about the truth of the other allegations in Paragraph 32 and on that basis denies them.

33.     Pezen never consented, agreed, or gave permission – written or otherwise – to Facebook to collect or store his biometric identifiers. Further, Pezen was never provided with nor ever signed a written release allowing Facebook to collect or store his biometric identifiers.

ANSWER:  Facebook denies the allegations in Paragraph 33.

34.     Facebook never informed Pezen by written notice or otherwise that he could prevent Facebook from collecting, storing or using his biometric identifiers.

ANSWER:  Facebook denies the allegations in Paragraph 34.

35.     Likewise, Pezen was never provided with an opportunity to prohibit or prevent Facebook from collecting, storing or using his biometric identifiers.

ANSWER:  Facebook denies the allegations in Paragraph 35.

36.     Nevertheless, when Pezen uploaded photographs to his account and made them his profile pictures, and also when he was tagged in photographs by other Facebook members without his knowledge or consent, Facebook extracted from those photographs a unique faceprint or "template" for him containing his biometric identifiers, including his facial geometry, and identified who he was. Facebook subsequently stored Pezen's biometric identifiers in its databases.

ANSWER:  Facebook denies that it has collected, stored, or used any "biometric identifier" associated with Plaintiff Pezen, and on that basis denies the allegations in Paragraph 36.

37.     As a result of Facebook's unauthorized collection and use of Pezen's biometric identifiers, Pezen was deprived of his control over that valuable information. By depriving him of his control over this valuable information, Facebook misappropriated the value of his biometric identifiers.

ANSWER:  Facebook denies the allegations in Paragraph 37.

38.     Pezen has additionally suffered damages in the diminution in value of his sensitive biometric identifiers.

ANSWER:  Facebook denies the allegations in Paragraph 38.

**B.     Plaintiff Carlo Licata's Experience**

39.     Plaintiff Carlo Licata has been a Facebook user since 2009. Since then, Licata has uploaded photographs to his account – including those used for his profile pictures – and has been tagged in photographs by friends.

1

2          ANSWER:  Facebook admits that Plaintiff Licata has had a Facebook account since 2009

3    but lacks knowledge or information sufficient to form a belief about the truth of the other

4    allegations in Paragraph 39 and on that basis denies them.

5          40.     Licata never consented, agreed, or gave permission – written or otherwise – to

6    Facebook to collect or store his biometric identifiers. Further, Licata was never provided with

7    nor ever signed a written release allowing Facebook to collect or store his biometric identifiers.

8          ANSWER:  Facebook denies the allegations in Paragraph 40.

9          41.     Facebook never informed Licata by written notice or otherwise that he could

10   prevent Facebook from collecting, storing or using his biometric identifiers.

11         ANSWER:  Facebook denies the allegations in Paragraph 41.

12

13         42.     Likewise, Licata was never provided with an opportunity to prohibit or prevent

     Facebook from collecting, storing or using his biometric identifiers.

14         ANSWER:  Facebook denies the allegations in Paragraph 42.

15

16         43.     Nevertheless, when Licata uploaded photographs to his account and made them

17   his profile pictures and also when he was tagged in photographs, Facebook extracted from those

     photographs a unique faceprint or "template" for him containing his biometric identifiers,

18   including his facial geometry, and identified who he was. Facebook subsequently stored Licata's

     biometric identifiers in its databases.

19         ANSWER:  Facebook denies that it has collected, stored, or used any "biometric

20   identifier" associated with Plaintiff Licata, and on that basis denies the allegations in Paragraph

21   43.

22

23         44.     As a result of Facebook's unauthorized collection and use of Licata's biometric

24   identifiers, Licata was deprived of his control over that valuable information. By depriving him

25   of his control over this valuable information, Facebook misappropriated the value of his

     biometric identifiers.

26         ANSWER:  Facebook denies the allegations in Paragraph 44.

27                                        13

28

45.    Licata has additionally suffered damages in the diminution in value of his sensitive biometric identifiers.

ANSWER:  Facebook denies the allegations in Paragraph 45.

### C.    Plaintiff Nimesh Patel's Experience

46.    Plaintiff Nimesh Patel has been a Facebook user since at least 2008. Since then, Patel has uploaded photographs to his account and has been tagged in photographs by friends.

ANSWER:  Facebook admits that Plaintiff Patel has had a Facebook account since 2008 but lacks knowledge or information sufficient to form a belief about the truth of the other allegations in Paragraph 46 and on that basis denies them.

47.    Patel never consented, agreed, or gave permission – written or otherwise – to Facebook to collect or store his biometric identifiers. Further, Patel was never provided with nor ever signed a written release allowing Facebook to collect or store his biometric identifiers.

ANSWER:  Facebook denies the allegations in Paragraph 47.

48.    Facebook never informed Patel by written notice or otherwise that he could prevent Facebook from collecting, storing or using his biometric identifiers.

ANSWER:  Facebook denies the allegations in Paragraph 48.

49.    Likewise, Patel was never provided with an opportunity to prohibit or prevent Facebook from collecting, storing or using his biometric identifiers.

ANSWER:  Facebook denies the allegations in Paragraph 49.

50.    Nevertheless, when Patel uploaded photographs to his account and when he was tagged in photographs, Facebook extracted from those photographs a unique faceprint or "template" for him containing his biometric identifiers, including his facial geometry, and identified who he was. Facebook subsequently stored Patel's biometric identifiers in its databases.

ANSWER:   Facebook denies that it has collected, stored, or used any "biometric identifier" associated with Plaintiff Patel, and on that basis denies the allegations in Paragraph 50.

51.     As a result of Facebook's unauthorized collection and use of Patel's biometric identifiers, Patel was deprived of his control over that valuable information. By depriving him of his control over this valuable information, Facebook misappropriated the value of his biometric identifiers.

ANSWER:  Facebook denies the allegations in Paragraph 51.

52.     Patel has additionally suffered damages in the diminution in value of his sensitive biometric identifiers.

ANSWER:  Facebook denies the allegations in Paragraph 52.

## CLASS ALLEGATIONS

53.     **Class Definition**: Plaintiffs Pezen, Licata, and Patel bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class of similarly situated individuals, defined as follows:

> All persons who had their biometric identifiers, faceprints, or face templates collected, captured, received, or otherwise obtained by Facebook while residing in Illinois.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

ANSWER:  Facebook admits that Plaintiffs have set forth a definition of a proposed class in Paragraph 53.  Facebook denies that this action may be properly maintained as a class action, that the definition is appropriate, or that it otherwise meets the requirements of Federal Rule of

Civil Procedure 23.  To the extent the allegations of this Paragraph are conclusions of law, no response is required, but to the extent a response is required, Facebook denies them.  Facebook otherwise denies the allegations in Paragraph 53.

54.     **Numerosity**: The exact number of Class members is unknown to Plaintiffs at this time, but it is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers from at least thousands (and potentially even millions) of individuals who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

ANSWER:  Facebook lacks knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegations concerning the number of absent members of the putative class. Facebook denies that this action may be properly maintained as a class action or that it otherwise meets the requirements of Federal Rule of Civil Procedure 23.  To the extent the allegations of this Paragraph are conclusions of law, no response is required, but to the extent a response is required, Facebook denies them.  Facebook otherwise denies the allegations in Paragraph 54.

55.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include the following:

(a)     whether Facebook collected, captured, received, or otherwise obtained Plaintiffs' and the Class's biometric identifiers;

(b)     whether Facebook properly informed Plaintiffs and the Class that it collected, used, and stored their biometric identifiers;

(c)     whether Facebook obtained a written release (as defined in 740 ILCS 14/10) from Plaintiffs and the Class to collect, capture, or otherwise obtain their biometric identifiers;

(d)     whether Facebook has sold, leased, traded, or otherwise profited from Plaintiffs' and the Class's biometrics identifiers;

(e)     whether Facebook had and made available to the public, a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers in compliance with the BIPA; and

(f)     whether Facebook's violations of the BIPA were committed intentionally, recklessly, or negligently.

<u>ANSWER</u>:  Facebook denies that this action may be properly maintained as a class action or that it otherwise meets the requirements of Federal Rule of Civil Procedure 23.  To the extent the allegations of this Paragraph are conclusions of law, no response is required, but to the extent a response is required, Facebook denies them.  Facebook otherwise denies the allegations in Paragraph 55.

56.     **Typicality**: Plaintiffs' claims are typical of the claims of all other members of the Class. Plaintiffs and the Class members sustained substantially similar damages as a result of Defendant's uniform wrongful conduct, based upon the same transactions that were made uniformly with Plaintiffs and the Class.

<u>ANSWER</u>:  Facebook denies that this action may be properly maintained as a class action or that it otherwise meets the requirements of Federal Rule of Civil Procedure 23.  To the extent the allegations of this Paragraph are conclusions of law, no response is required, but to the extent a response is required, Facebook denies them.  Facebook otherwise denies the allegations in Paragraph 56.

57.     **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect  the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class, and Defendant has no defenses unique to Plaintiffs.

<u>ANSWER</u>:  Facebook denies that this action may be properly maintained as a class action or that it otherwise meets the requirements of Federal Rule of Civil Procedure 23.  To the extent

1
2
3
4

the allegations of this Paragraph are conclusions of law, no response is required, but to the extent a response is required, Facebook denies them.  Facebook otherwise denies the allegations in Paragraph 57.

5
6

58.     **Policies Generally Applicable to the Class**: Defendant has acted or failed to act on grounds generally applicable to Plaintiffs and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible conduct towards the Class.

7
8
9
10
11
12

ANSWER:  Facebook denies that this action may be properly maintained as a class action or that it otherwise meets the requirements of Federal Rule of Civil Procedure 23.  To the extent the allegations of this Paragraph are conclusions of law, no response is required, but to the extent a response is required, Facebook denies them.  Facebook otherwise denies the allegations in Paragraph 58.

13
14
15
16
17
18
19
20
21

59.     **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain the cost of such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint, and present a tremendous burden for the courts. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be achieved.

22
23
24
25
26

ANSWER:  Facebook denies that this action may be properly maintained as a class action or that it otherwise meets the requirements of Federal Rule of Civil Procedure 23.  Facebook denies that class treatment would be superior to other methods of adjudication.  To the extent the allegations of this Paragraph are conclusions of law, no further response is required, but to the

27
28

extent a response is required, Facebook denies them.  Facebook otherwise denies the allegations in Paragraph 59.

## FIRST CAUSE OF ACTION

### Violation of 740 ILCS 14/15(b)
### (On Behalf of Plaintiffs and the Class)

60.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

ANSWER:   Facebook incorporates its responses and denials as to the foregoing allegations.

61.     The BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier . . . unless it first: (1) informs the subject . . . in writing that a biometric identifier . . . is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier . . . is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier . . . ." 740 ILCS 14/15(b) (emphasis added).

ANSWER:  Facebook maintains that the BIPA's statutory language speaks for itself and denies the allegations in Paragraph 61 to the extent they inaccurately quote from and/or mischaracterize the statute.

62.     Facebook is a Delaware corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

ANSWER:  Facebook admits it is a Delaware corporation.  The remaining allegations of this Paragraph are conclusions of law, and therefore no further response is required, but to the extent a response is required, Facebook denies the remaining allegations.

63.     As explained in detail in Section III, above, Plaintiffs' and the Class's faceprints or face geometry are "biometric identifiers" pursuant to 740 ILCS 14/10.

1    ANSWER:  Facebook denies the allegations in Paragraph 63.

2

3    64.    Facebook systematically and automatically collected, used, and stored Plaintiffs'
     and the Class's biometric identifiers without first obtaining the specific written release required

4    by 740 ILCS 14/15(b)(3).

5    ANSWER:  Facebook denies the allegations in Paragraph 64.

6

7    65.    As explained in Section III.A, Facebook did not properly inform Plaintiffs or the
     Class in writing that their biometric identifiers were being collected and stored, nor did it inform

8    them in writing of the specific purpose and length of term for which their biometric identifiers

9    were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)–(2).

10   ANSWER:  Facebook denies the allegations in Paragraph 65.

11

12   66.    By collecting, storing, and using Plaintiffs' and the Class's biometric identifiers
     as described herein, Facebook violated Plaintiffs' and the Class's rights to privacy in their

13   biometric identifiers as set forth in the BIPA, 740 ILCS 14/1, *et seq*.

14   ANSWER:  Facebook denies the allegations in Paragraph 66.

15

16   67.    On behalf of themselves and the Class, Plaintiffs seek: (i) injunctive and equitable
     relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Facebook to

17   comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers;
     (ii) statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740

18   ILCS 14/20(2) and statutory damages of $1,000 per negligent violation of the BIPA pursuant to
     740 ILCS 14/20(1); and (iii) reasonable attorneys' fees and costs and other litigation expenses

19   pursuant to 740 ILCS 14/20(3).

20   ANSWER:  Facebook admits that Plaintiffs seek the damages and other remedies

21   discussed in the allegations in Paragraph 67, but denies that Plaintiffs and absent members of the

22   putative class are entitled to any of those damages and remedies.

23

24                              **SECOND CAUSE OF ACTION**

25                            **Violation of 740 ILCS 14/15(a)**
                             **(On Behalf of Plaintiffs and the Class)**
26

27                                        20

68.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

<u>ANSWER</u>:    Facebook incorporates its responses and denials as to the foregoing allegations.

69.     Section 15(a) of the BIPA requires that any "private entity in possession of biometric identifiers . . . must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers . . . when the initial purpose for collecting or obtaining such identifiers . . . has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

<u>ANSWER</u>:  Facebook maintains that the BIPA's statutory language speaks for itself and denies the allegations in Paragraph 69 to the extent they inaccurately quote from and/or mischaracterize the statute.

70.     For users who do not opt-out of Tag Suggestions, Facebook does not publicly provide a retention schedule or guidelines for permanently destroying their biometric identifiers as specified by the BIPA. *See* 740 ILCS 14/15(a).

<u>ANSWER</u>:  Facebook denies the allegations in Paragraph 70.

71.     Accordingly, on behalf of themselves and the Class, Plaintiffs seek: (i) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Facebook to establish and make publicly available a policy for the permanent destruction of biometric identifiers compliant with 740 ILCS 14/15(a); (ii) statutory damages of $5,000 per intentional or reckless violation of the BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000 per negligent violation of the BIPA pursuant to 740 ILCS 14/20(1); and (iii) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

<u>ANSWER</u>:    Facebook admits that Plaintiffs seek the damages and other remedies discussed in the allegations in Paragraph 71, but denies that Plaintiffs and absent members of the putative class are entitled to any of those damages and remedies.

## **AFFIRMATIVE OR OTHER DEFENSES**

Without assuming any burden of proof not otherwise legally assigned to it, Facebook asserts the following separate and additional defenses to the Complaint brought against it:

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim Upon Which Relief Can Be Granted)

The Complaint, and each purported cause of action asserted therein, fail to state a claim upon which relief can be granted.  Among other deficiencies in the Complaint, the conduct alleged is not regulated or prohibited by the BIPA.

### SECOND AFFIRMATIVE DEFENSE

### (Lack of Standing)

Plaintiffs lack standing to seek the relief demanded because, for example, Plaintiffs have not suffered a sufficient injury in fact from the conduct alleged in the Complaint.

### THIRD AFFIRMATIVE DEFENSE

### (Consent)

Upon information and belief, Facebook alleges that every person who signs up for Facebook accepts terms of service and thereby consents to the conduct alleged in the Complaint. Upon information and belief, Facebook alleges that Plaintiffs and members of the asserted putative class so consented to the conduct alleged in the Complaint.  Further, upon information and belief, Facebook alleges that Plaintiffs and members of the asserted putative class consented to the conduct alleged in the Complaint because they continued using Facebook after being put on notice of the Tag Suggestions feature and how it worked.  Therefore, upon information and

belief, Facebook alleges that each of the claims asserted by Plaintiffs is barred because Plaintiffs and members of the asserted putative class consented to the activities of which they now complain.

## FOURTH AFFIRMATIVE DEFENSE

### (Choice of Law)

Upon information and belief, Facebook alleges that the terms of service accepted by Plaintiffs and members of the asserted putative class when they signed up for Facebook and/or through their continued use of Facebook required California law to govern any claim that might arise between Plaintiffs and/or member of the asserted putative class and Facebook.  Therefore, upon information and belief, Facebook alleges that each of the claims asserted by Plaintiffs is barred because Plaintiffs and members of the asserted putative class may not bring claims under Illinois law.

## FIFTH AFFIRMATIVE DEFENSE

### (Laches)

Upon information and belief, Facebook alleges that the Complaint and each purported cause of action asserted therein are barred by the doctrine of laches if, for example, Plaintiffs and/or members of the asserted putative class unreasonably delayed before pursuing their purported rights.

**SIXTH AFFIRMATIVE DEFENSE**

**(Release)**

Upon information and belief, Facebook alleges that by virtue of signing up for Facebook and accepting the terms for using Facebook, persons who signed up for Facebook released Facebook from liability for the conduct of which Plaintiffs now complain.  Upon information and belief, Facebook further alleges that the Complaint and each purported cause of action asserted therein are thus barred by a release of those claims.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate Damages)**

Plaintiffs and/or members of the asserted putative class failed to mitigate the alleged damages, and to the extent of such failure to mitigate, any damages awarded to Plaintiffs and/or members of the asserted putative class should be reduced accordingly.  Upon information and belief, Facebook alleges that, among other things, Plaintiffs and members of the asserted putative class failed to mitigate any damages by continuing to use Facebook, by continuing to allow the Tag Suggestions feature to suggest that people tag them in photographs, and/or by taking or failing to take other conduct.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

Upon information and belief, Facebook alleges that Plaintiffs and members of the asserted putative class consented to and, in some cases, participated in the uploading and "tagging" of photographs of which they now complain.  Upon information and belief, Facebook

alleges that the Complaint and each purported cause of action alleged therein are thus barred, in whole or in part, by the doctrine of unclean hands.

### NINTH AFFIRMATIVE DEFENSE

### (Lack of Causation)

The Complaint and each purported cause of action alleged therein are barred to the extent that Facebook's conduct was not the actual or proximate cause of any loss suffered by Plaintiffs and/or members of the asserted putative class.

### TENTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

No damages or other relief can be recovered by Plaintiffs and/or members of the asserted putative class to the extent the Complaint and each purported cause of action alleged therein are barred, in whole or in part, by an applicable contract provision and/or the statute of limitations. *See, e.g.*, 735 ILCS 5/13-202 (two-year limitations period to recover a statutory penalty); 735 ILCS 5/13-205 (five-year limitations period for "all civil actions not otherwise provided for"). Upon information and belief, Facebook alleges that Plaintiffs and/or members of the asserted putative class failed to bring their causes of action with respect to certain of the alleged violations within the periods required by the statutes of limitations.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Waiver)

Upon information and belief, Facebook alleges that Plaintiffs and members of the asserted putative class consented to and, in some cases, participated in the uploading and "tagging" of photographs of which they now complain.  Facebook further alleges that the Complaint and each purported cause of action alleged therein are thus barred, in whole or in part, by the doctrine of waiver.

## TWELFTH AFFIRMATIVE DEFENSE

### (Intervening Acts And/Or Omissions)

Facebook alleges that all or part of the damages alleged in the Complaint were caused by the acts and/or omissions of other persons or entities (including, without limitation, acts and/or omissions of Plaintiffs and/or members of the asserted putative class and/or persons who acted on their behalf), for whose conduct Facebook is not legally responsible, which intervened between the alleged acts and/or omissions of Facebook and the alleged damages of Plaintiffs and/or members of the asserted putative class.  The alleged damages, if any, are therefore not recoverable from Facebook.  In the alternative, any damages which Plaintiffs and/or members of the asserted putative class may be entitled to recover against Facebook must be reduced to the extent that such damages are attributable to persons or entities other than Facebook.

1

2

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Comparative Fault or Offset)**

Facebook alleges that all or part of the damages alleged in the Complaint were caused by the acts and/or omissions of other persons or entities (including, without limitation, acts and/or omissions of Plaintiffs and/or members of the asserted putative class and/or persons who acted on their behalf), for whose conduct Facebook is not legally responsible.  Therefore, if Plaintiffs and/or members of the asserted putative class are found to be entitled to recover any of the alleged damages, Facebook's share thereof must be apportioned or reduced to the extent that such damages are attributable to persons or entities other than Facebook.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(No Ascertainable Class)**

Facebook alleges as an affirmative defense that the putative class asserted in the Complaint is inappropriate for class certification because there is no ascertainable class.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Numerosity)**

Facebook alleges as an affirmative defense that the putative class asserted in the Complaint is inappropriate for class certification because the class is not so numerous that joinder of all members is impracticable.

DEFENDANT FACEBOOK, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT; MASTER CASE NO. 3:15-CV-03747-JD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Predominance)

Facebook alleges as an affirmative defense that the putative class asserted in the Complaint is inappropriate for class certification because common issues of law and fact do not predominate over individual issues.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (No Community of Interest – Common Questions of Law and Fact)

Facebook alleges as an affirmative defense that the putative class asserted in the Complaint is inappropriate for class certification because there is no well-defined community of interest in or commonality between the questions of law and fact involved in this putative class action.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Typicality)

Facebook alleges as an affirmative defense that the putative class asserted in the Complaint is inappropriate for class certification because Plaintiffs' claims are not typical of the claims of other members of the asserted putative class.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Superiority)

Facebook alleges as an affirmative defense that the putative class asserted in the Complaint is inappropriate for class certification because a class action is not superior to other methods for fairly and efficiently adjudicating this controversy.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Adequate Representation)

Facebook alleges as an affirmative defense that the putative class asserted in the Complaint is inappropriate for class certification because neither Plaintiffs nor their counsel is able to fairly and adequately protect the interest of all members of the alleged putative class.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Impropriety of Class-Wide Injunctive Relief)

Facebook alleges as an affirmative defense that the putative class asserted in the Complaint is inappropriate for class certification because Facebook has not acted or refused to act on grounds that apply generally to the class, and neither final injunctive relief nor corresponding declaratory relief is appropriate respecting the class a whole.

DEFENDANT FACEBOOK, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS'
COMPLAINT; MASTER CASE NO. 3:15-CV-03747-JD

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Injunctive Relief)

To the extent Plaintiffs are seeking injunctive relief, such relief is barred because Plaintiffs and/or members of the asserted putative class have not suffered irreparable harm and/or there is no real or immediate threat of injury.


## RESERVATION OF ADDITIONAL DEFENSES

Facebook reserves the right to raise any additional defenses, affirmative or otherwise, and any counterclaims which may become apparent through discovery in the course of this action.


WHEREFORE, Facebook respectfully requests entry of judgment against Plaintiffs and in favor of Facebook and that the Court award Facebook any such relief as this Court deems just and appropriate.

DEFENDANT FACEBOOK, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS'
COMPLAINT; MASTER CASE NO. 3:15-CV-03747-JD

Dated:  June 2, 2016

Respectfully submitted,

By:  */s/ John Nadolenco*
    John Nadolenco (SBN 181128)
    MAYER BROWN LLP
    350 South Grand Avenue
    25th Floor
    Los Angeles, CA 90071-1503
    Telephone: (213) 229-9500
    jnadolenco@mayerbrown.com

    Lauren R. Goldman (*pro hac vice*)
    MAYER BROWN LLP
    1221 Avenue of the Americas
    New York, NY 10020
    Telephone: (212) 506-2647
    lrgoldman@mayerbrown.com

    Archis A. Parasharami (*pro hac vice*)
    MAYER BROWN LLP
    1999 K Street, N.W.
    Washington, D.C. 20006-1101
    Telephone: (202) 263-3328
    aparasharami@mayerbrown.com

    *Counsel for Defendant Facebook, Inc.*

DEFENDANT FACEBOOK, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS'
COMPLAINT; MASTER CASE NO. 3:15-CV-03747-JD