PAGES 1 – 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO

IN RE:  FACEBOOK BIOMETRIC            )
INFORMATION PRIVACY LITIGATION        )  NO. 15-CV-3747 JD
                                      )
                                      )  SAN FRANCISCO, CALIFORNIA
                                      )  WEDNESDAY, JUNE 29, 2016
_____

FREDERICK WILLIAM GULLEN, ON          )
BEHALF OF HIMSELF AND ALL OTHERS      )
SIMILARLY SITUATED,                   )
                                      )
                     PLAINTIFF,       )
V.                                    )
FACEBOOK, INC.,                       )
                                      )
                     DEFENDANT.       )
_____

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  1:34 P.M. – 1:56 P.M.**

**APPEARANCES**:

**FOR PLAINTIFFS**          ROBBINS, GELLER, RUDMAN & DOWD, LLP
                         ONE MONTGOMERY STREET, SUITE 1800
                         SAN FRANCISCO, CALIFORNIA  94104
                  **BY:  SHAWN A. WILLIAMS, ESQUIRE**


(FURTHER APPEARANCES ON FOLLOWING PAGE)


***REPORTED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR***
                ***RETIRED OFFICIAL COURT REPORTER, USDC***

```
1    APPEARANCES (CONTINUED):

2    FOR PLAINTIFFS          LABATON SUCHAROW, LLP
                             140 BROADWAY
3                            NEW YORK, NEW YORK  10005
                       BY:  CORBAN S. RHODES, ESQUIRE
4

5                            EDELSON PC
                             123 TOWNSEND STREET, SUITE 100
6                            SAN FRANCISCO, CALIFORNIA  94107
                       BY:  RAFEY S. BALABANIAN, ESQUIRE
7

8                            CAREY RODRIGUEZ, LLP
                             1395 BRICKELL AVENUE, SUITE 700
9                            MIAMI, FLORIDA  33130
                       BY:  FRANK S. HEDIN, ESQUIRE
10                           DAVID MILLIAN, ESQUIRE

11
     FOR DEFENDANT           MAYER BROWN, LLP
12                           350 SOUTH GRAND AVENUE, 25TH FLOOR
                             LOS ANGELES, CALIFORNIA  90071
13                     BY:  JOHN NADOLENCO, ESQUIRE

14
                             MAYER BROWN, LLP
15                           1221 AVENUE OF THE AMERICAS
                             NEW YORK, NEW YORK  10020
16                     BY:  LAUREN R. GOLDMAN, ESQUIRE

17

18

19

20

21

22

23

24

25
```

1   WEDNESDAY, JUNE 29, 2016                                1:34 P.M.

2   (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSEL'S FAILURE TO

3   IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER

4   ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)

5                            PROCEEDINGS

6                            ---O0O---

7

8          **THE CLERK:**  CALLING CIVIL 15-3747, IN RE: FACEBOOK

9   BIOMETRIC INFORMATION PRIVACY LITIGATION AND CIVIL 16-937

10   GULLEN VERSUS FACEBOOK.

11          COUNSEL, PLEASE COME FORWARD AND STATE YOUR

12   APPEARANCES FOR THE RECORD.

13          **MR. WILLIAMS:**  GOOD AFTERNOON, YOUR HONOR.  SHAWN

14   WILLIAMS, ROBINS, GELLER, RUDMAN & DOWD ON BEHALF OF

15   PLAINTIFFS.

16          **MR. BALABANIAN:**  GOOD AFTERNOON, YOUR HONOR.  RAFEY

17   BALABANIAN OF EDELSON ON BEHALF OF PLAINTIFFS.

18          **MR. RHODES:**  GOOD AFTERNOON, YOUR HONOR.  CORBAN

19   RHODES FROM LABATON SUCHAROW ALSO ON BEHALF OF PLAINTIFFS.

20          **MR. HEDIN:**  GOOD AFTERNOON, YOUR HONOR.  FRANK HEDIN

21   ON BEHALF OF PLAINTIFF GULLEN.

22          **MR. MILLIAN:**  GOOD AFTERNOON, YOUR HONOR.  DAVID

23   MILLIAN ON BEHALF OF PLAINTIFF GULLEN.

24          **MR. NADOLENCO:**  GOOD AFTERNOON, YOUR HONOR.  JOHN

25   NADOLENCO OF MAYER BROWN ON BEHALF OF DEFENDANT FACEBOOK.

1          **MS. GOLDMAN:**  GOOD AFTERNOON, YOUR HONOR.  LAUREN

2     GOLDMAN OF MAYER BROWN ON BEHALF OF FACEBOOK.

3          **THE COURT:**  OKAY.  ALL RIGHT.  SO YOU ALL CAN JUST

4     STAY UP HERE.  I WILL -- HERE ARE MY MAIN CONCERNS:  I WANT TO

5     MAKE SURE WE DON'T DO EVERYTHING TWICE FOR DISCOVERY.  OKAY?

6          SO I'M GOING TO LET YOU ALL HAVE A JOINT CONFERENCE.

7     YOU ALL SIT DOWN AND JUST WORK SOMETHING OUT.

8          YOU MAY HAVE TO TAKE A LITTLE BIT LONGER FOR A DEPO,

9     FOR EXAMPLE, MAYBE AN EXTRA HOUR, YOU ALL DECIDE.  LET'S JUST

10    DO IT ONCE.  I DON'T WANT TO HAVE WITNESSES COMING BACK TWICE.

11    WE DON'T NEED TWO SETS OF PRODUCTION.

12         I MEAN, IT LOOKS TO ME THAT ABOUT 90 PERCENT-PLUS OF

13    THIS IS GOING TO OVERLAP BETWEEN THE TWO CASES.  CAN YOU ALL

14    WORK THAT OUT?  OKAY.

15         **UNIDENTIFIED SPEAKER:**  YES, YOUR HONOR.

16         **THE COURT:**  ALL RIGHT.  NOW, IF YOU CAN'T HAVE

17    AGREEMENTS ON YOUR DISCOVERY ISSUES, SEND ME THE LETTERS.  YOU

18    KNOW MY STANDING ORDER, SO JUST DO IT THAT WAY.  *SPOKEO*, I

19    GUESS, IS COMING DOWN THE PIKE.  IS THAT RIGHT?

20         **MR. RHODES:**  THAT'S RIGHT.  WE FILED IT THIS MORNING

21    IN THE LICATA CASE.

22         **THE COURT:**  IN WHICH CASE?

23         **MR. RHODES:**  THE LICATA CASE.  WE'LL BE FILING GULLEN

24    EITHER LATER THIS AFTERNOON OR IN THE MORNING.

25         **THE COURT:**  SO YOU FILED IT IN RE: FACEBOOK

1    BIOMETRIC?

2          **MR. RHODES:**  YES.

3          **THE COURT:**  WHAT DID YOU CALL IT?

4          **MR. RHODES:**  THE LICATA, THE ORIGINAL NAMED

5    PLAINTIFF.

6          **THE COURT:**  I THOUGHT IT WAS PEZEN?

7          **MR. WILLIAMS:**  THERE WERE THREE INITIAL CASES, AND

8    THE CASES WERE CONSOLIDATED.

9          **THE COURT:**  ALL RIGHT.  THAT'S WHY WE ARE DOING "IN

10   RE."

11         CAN WE JUST DO ONE BRIEF FOR EVERYBODY?  ALL RIGHT?

12   WE DON'T NEED TO HAVE DUPLICATIVE BRIEFS.

13         **MR. RHODES:**  THAT CAN BE (UNDISCERNIBLE).

14         **THE COURT:**  SO YOU ARE GOING TO WORK THAT OUT.

15         LET ME ASK YOU A QUESTION.  WHO ARE THE GULLEN

16   PEOPLE?  ALL RIGHT.  WE'RE JUST GOING TO CHAT HERE AMONG

17   FRIENDS.  ALL RIGHT?

18         NOW, YOU'RE BEING RECORDED, SO YOU HAVE TO -- THERE'S

19   NO COURT REPORTER, SO YOU HAVE TO SAY WHO YOU ARE BEFORE YOU

20   START SPEAKING.

21         BUT I JUST -- HELP ME UNDERSTAND HOW TAGGING WORKS IF

22   YOU DON'T HAVE A FACEBOOK ACCOUNT.

23         **MR. HEDIN:**  YOUR HONOR, THIS IS FRANK HEDIN FROM

24   CAREY RODRIGUEZ.  THERE'S NO TAGGING NECESSARILY INVOLVED IN

25   ALL OF THE NON-USERS' CLAIMS, BUT IN ORDER TO DETERMINE WHETHER

1    OR NOT A PARTICULAR PHOTO CONTAINS A USER OR A NON-USER THAT

2    MATCHES A FACE IN FACEBOOK'S DATABASE, FACEBOOK HAS TO COLLECT

3    A FACE SCAN OF ALL OF THE INDIVIDUALS APPEARING IN THE

4    PHOTOGRAPH, USERS AND NON-USERS ALIKE.

5          **THE COURT:**  WHAT DOES THAT MEAN, THOUGH?  YOU

6    THINK -- ARE YOU ALLEGING THAT FACEBOOK COLLECTS AND STORES THE

7    FACE GEOMETRY OF NON-USERS?

8          **MR. HEDIN:**  YES.  WE ALLEGE THAT THEY COLLECT AND

9    STORE BOTH, BUT DISCOVERY IS GOING TO REVEAL THE EXTENT OF

10   THEIR STORAGE, BUT AT THE VERY LEAST WE'RE CONFIDENT THAT

11   THEY'RE COLLECTING THE FACE SCANS OF NON-USERS IN ORDER TO

12   DETERMINE WHETHER OR NOT IT MATCHES THE FACE SCAN OF SOMEBODY

13   SAVED IN THEIR DATABASE.

14         **THE COURT:**  HOW ARE THEY GOING TO IDENTIFY -- I MEAN,

15   HOW -- IF YOU'RE A NON-USER, HOW ARE YOU GOING TO BE

16   IDENTIFIED?  ASSUMING THIS DATABASE EXISTS, HOW WOULD THAT FACE

17   BE IDENTIFIED?

18         **MR. HEDIN:**  HOW WOULD IT BE MATCHED AGAINST A FACE IN

19   THE DATABASE OR HOW WOULD IT BE IDENTIFIED?

20         **THE COURT:**  YOU'RE SAYING THEY'RE STORING IT.  HOW

21   ARE THEY GOING TO IDENTIFY THAT FACE GEOMETRY?  IF YOU ARE NOT

22   A USER, THERE'S NOTHING TO ASSOCIATE THAT FACE WITH AN ACCOUNT.

23   SO IF THERE'S NO ACCOUNT TO ASSOCIATE IT WITH, HOW ARE THEY

24   STORING IT?  ARE THEY JUST GIVING IT RANDOM IDENTIFICATION

25   NUMBERS?

1          **MR. HEDIN:**  WELL, FACEBOOK DOES ALLOW USERS TO TAG

2     NON-USERS' NAMES TO FACES.  THE EXTENT OF THE STORAGE OF THOSE

3     FACE TEMPLATES AFTER A NAME IS TAGGED TO A NON-USER, YOU KNOW,

4     WE'RE UNSURE OF.  BUT IN ORDER TO DETERMINE WHETHER OR NOT IT

5     MATCHES A USER, SOMEBODY THAT THEY CAN IDENTIFY AS DEFINITELY

6     BEING A USER OF FACEBOOK, THEY NEED TO COLLECT THE STANDARD

7     FACE GEOMETRY FROM EVERY FACE APPEARING IN EVERY PHOTO.

8          **THE COURT:**  SO WHEN YOU SAY "COLLECT," WHAT DO YOU

9     MEAN?  ARE THEY STORING IT?

10          **MR. HEDIN:**  I DON'T NECESSARILY KNOW IF THEY'RE

11     STORING IT, BUT THEY'RE DEFINITELY COLLECTING IT.  BECAUSE IN

12     ORDER TO DETERMINE WHETHER THE FACE IS THE FACE OF A USER OR A

13     NON-USER, THEY HAVE TO COLLECT FACE GEOMETRY TO COMPARE IT

14     AGAINST THE FACE GEOMETRY IN THE DATABASE.  AND THAT ALLEGATION

15     ALONE IS SUFFICIENT UNDER THE STATUTE.

16          **THE COURT:**  ALL RIGHT.  FACEBOOK?

17          **MS. GOLDMAN:**  NO, YOUR HONOR.  FACEBOOK DOES NOT

18     COLLECT, CREATE, STORE TEMPLATES OF NON-USERS' FACES.

19          **THE COURT:**  CAN YOU TAG A NON-USER?

20          **MS. GOLDMAN:**  YOU CAN PUT IN SOMETHING THAT IS CALLED

21     A FREEFORM TAG.  SO YOU COULD TAG SOMEBODY -- PLAINTIFF ALLEGES

22     THAT THE PLAINTIFF PERSON WAS TAGGED, FREDERICK W. GULLEN.  BUT

23     PEOPLE ALSO TAGGED MICKEY MOUSE OR AUNT SALLY.  BUT THAT

24     FREEFORM TAG DOES NOT -- IS NOT LINKED TO ANYTHING THAT WOULD

25     ALLOW FACEBOOK OR ANYBODY ELSE TO IDENTIFY --

1          **THE COURT:**  SO WHAT -- IS IT A ONE-TIME-ONLY

2    TRANSIENT -- WHAT DOES FREEFORM TAG MEAN?

3          **MS. GOLDMAN:**  IT MEANS THAT THERE IS A TAG THAT IS

4    ASSOCIATED WITH THAT PHOTOGRAPH, BUT NOT WITH ANY SCAN OF FACE

5    GEOMETRY IN THAT PHOTOGRAPH, JUST LITERALLY ASSOCIATED WITH THE

6    PHOTOGRAPH.

7          **THE COURT:**  THE PICTURE ITSELF?

8          **MS. GOLDMAN:**  CORRECT.

9          **THE COURT:**  DID YOU SHARE THIS WITH THE GULLEN

10   PLAINTIFF?

11         **MS. GOLDMAN:**  WE HAVEN'T UNDERGONE DISCOVERY.  THAT'S

12   JUST MY PERSONAL UNDERSTANDING OF HOW IT WORKS.  I AM NOT

13   MAKING REPRESENTATIONS, BUT I BELIEVE THAT IS WHAT DISCOVERY

14   WILL SHOW.

15         **THE COURT:**  IT DOES SEEM A LITTLE BIT MYSTERIOUS TO

16   ME.  IS IT "HEDIN" OR "HEDEN"?

17         **MR. HEDIN:**  HEDIN.

18         **THE COURT:**  HEDIN.  OPTION THREE.  ALL RIGHT.

19         LOOK, I MEAN, YOU ARE GOING TO DO WHAT YOU'RE GOING

20   TO DO, BUT I JUST HAVE TO SAY I'M A LITTLE AT SEA ON HOW

21   NON-ACCOUNT HOLDERS, WHICH IS ONE HUNDRED PERCENT OF YOUR

22   CLASS, ARE BEING COLLECTED AND STORED BY FACEBOOK.

23         **MR. HEDIN:**  EVEN ASSUMING THE FACE SCANS OF NON-USERS

24   ARE NOT BEING STORED, THEY'RE DEFINITELY BEING COLLECTED,

25   BECAUSE IN ORDER TO DETERMINE WHETHER A NON-USER -- IN THE

1    FIRST INSTANCE, IN ORDER TO DETERMINE WHETHER THAT FACE SCAN OF

2    A NON-USER MATCHES A FACE SCAN OF THE STORED USERS IN THE

3    DATABASE, THE FACE SCAN HAS TO BE COLLECTED.  YOU CAN'T

4    COMPARE -- YOU HAVE TO COMPARE APPLES TO APPLES.  YOU CAN'T

5    COMPARE APPLES WITH ORANGES.  YOU HAVE TO COLLECT A FACE SCAN

6    OF EVERYBODY APPEARING IN A PHOTOGRAPH IN ORDER TO DETERMINE

7    WHETHER OR NOT THOSE PEOPLE ARE, IN FACT, USERS OR NON-USERS.

8            **THE COURT:**  HOW WOULD THE BIPA WORK?  I MEAN, BIPA IS

9    A WRITTEN CONSENT STATUTE.  WHAT IS -- I MEAN, FACEBOOK, SURELY

10   YOU'RE NOT -- THIS IS RHETORICAL.  YOU DON'T HAVE TO ANSWER

11   THIS NOW.

12           SURELY, YOU'RE NOT CONTENDING THAT UNDER THE BIPA,

13   FACEBOOK HAS TO GET -- PROACTIVELY GET THE WRITTEN CONSENT OF

14   ANYBODY WHO MIGHT SHOW UP IN A FACEBOOK PHOTOGRAPH?  I MEAN,

15   THAT WOULD BE PATENTLY UNREASONABLE.

16           SO I JUST -- I MEAN, I DON'T UNDERSTAND HOW A

17   WRITTEN -- A PRIVACY WRITTEN NOTIFICATION AND CONSENT STATUTE

18   CAN APPLY TO PEOPLE WHO ARE NON-USERS.

19           **MR. HEDIN:**  WELL, FOR EXAMPLE, IN THE EUROPEAN UNION,

20   FACEBOOK HAS HAD TO DEACTIVATE THEIR ENTIRE FACE SCANNING

21   FEATURE FOR JUST THAT REASON.

22           **THE COURT:**  YES, BUT, COUNSEL, WE ARE IN THE UNITED

23   STATES.

24           **MR. HEDIN:**  RIGHT.

25           **THE COURT:**  WE'RE NOT IN THE EU.

1          **MR. HEDIN:**  I UNDERSTAND.

2          **THE COURT:**  AND THE EU HAS DIFFERENT DATA PROTECTION

3     POLICIES THAT WE DO NOT SHARE OR FOLLOW.

4          **MR. HEDIN:**  SO IF FACEBOOK CAN'T COMPLY WITH BIPA,

5     UNDER THE CIRCUMSTANCES --

6          **THE COURT:**  HOW COULD IT COMPLY WITH BIPA SHORT OF

7     REQUIRING EVERYBODY IN -- EVERY LIVING HUMAN IN THE STATE OF

8     ILLINOIS TO GIVE PROACTIVE WRITTEN CONSENT?  I MEAN, COULD IT

9     OTHERWISE COMPLY WITH BIPA?

10         **MR. HEDIN:**  IT COULD DISABLE THE FACE SCANNING

11    FEATURE FROM ALL PHOTOGRAPHS UPLOADED FROM IP ADDRESSES THAT

12    ARE -- THAT CORRESPOND TO THE STATE OF ILLINOIS.

13         **THE COURT:**  IN OTHER WORDS, JUST A BAN IN THE

14    PROGRAM?

15         **MR. HEDIN:**  POSSIBLY.

16         **THE COURT:**  SO, BASICALLY, IN YOUR VIEW, BIPA WOULD

17    MAKE IT ENTIRELY ILLEGAL TO DO TAGGING?

18         **MR. HEDIN:**  I'M NOT GOING TO -- I'M NOT SAYING THAT

19    AT THIS POINT.  DISCOVERY IS GOING TO REVEAL THE EXTENT OF

20    FACEBOOK'S --

21         **THE COURT:**  WE'RE TALKING ABOUT THE STATUTE.  WE'RE

22    NOT TALKING ABOUT THE FACTS.  YOU'RE SAYING THAT BIPA WOULD

23    MAKE IT PATENTLY ILLEGAL WITH NO EXCEPTIONS TO DO TAGGING,

24    RIGHT?  OTHERWISE, YOU WOULD GET THE PROBLEM THAT YOU'RE

25    HIGHLIGHTING, WHICH IS NON-ACCOUNT USERS GETTING CAUGHT UP IN

1  IT .

2      **MR. MILLIAN:**  DAVID MILLIAN.  SINCE WE'RE TALKING

3  ABOUT HYPOTHETICALS, OBVIOUSLY, IF THERE'S A PICTURE AND

4  THERE'S A SCAN FROM AN ILLINOIS IP ADDRESS THAT IMMEDIATELY

5  MATCHES A USER, THEN, CLEARLY, FACEBOOK KNOWS THIS IS A USER.

6  THEY'VE BEEN BEFORE UPLOADING IT OR STORING IT, PROVIDE A

7  CONSENT OR REQUIRED CONSENT --

8      **THE COURT:**  WELL, THAT'S YOUR COLLEAGUES.  THAT'S THE

9  OTHER CASE.  THAT'S THE USERS' CASE.

10      **MR. MILLIAN:**  RIGHT.  AND IF THERE WERE PICTURES FULL

11  OF USERS, THEN THEY'RE FINE.  BUT IF THEY DO THE SCAN AND ONE

12  OF THE PICTURES DOESN'T MATCH, THEY KNOW THERE IS A NON-USER

13  THERE.  AND IN THOSE INSTANCES -- WE'RE TALKING HYPOTHETICAL --

14      **THE COURT:**  I SEE.

15      **MR. MILLIAN:**  -- THAT MIGHT BE AN INSTANCE WHERE THEY

16  WOULDN'T BE ABLE TO --

17      **THE COURT:**  YOU'RE SAYING THEY SHOULD HAVE AN

18  ALGORITHM THAT IMMEDIATELY DROPS THE NON-USER BECAUSE THEY

19  COULD NOT AS A PRACTICAL MATTER GET CONSENT.  SO IF THEY CAN'T

20  GET CONSENT, THEY SHOULD NOT EVEN HAVE THOSE PEOPLE IN TAGGING.

21      **UNIDENTIFIED SPEAKER:**  (UNDISCERNIBLE.)

22      **THE COURT:**  OKAY.  ALL RIGHT.  IT JUST -- IT

23  INTERESTED ME FOR A MOMENT.

24      OKAY.  ANYTHING ELSE I CAN HELP YOU WITH?

25      **MR. MILLIAN:**  JUDGE, DAVID MILLIAN AGAIN.  WE HAD

1    ORIGINALLY FILED THE CASE IN STATE COURT AND SO --

2             **THE COURT:**  YES.

3             **MR. MILLIAN:**  -- WE WERE RECENTLY ADVISED THAT

4    FACEBOOK INTENDS TO FILE A MOTION TO DISMISS FOR LACK OF

5    SUBJECT MATTER JURISDICTION.

6             **THE COURT:**  AH.  SO YOU WANT TO STIPULATE TO A

7    REMAND?

8             **MR. MILLIAN:**  WE'RE PREPARED TO DO THAT.

9             **THE COURT:**  WHAT DO YOU THINK?

10            **MR. NADOLENCO:**  SO, YOUR HONOR, FACEBOOK'S NOT

11   PREPARED TO WAIVE ITS RIGHTS UNDER CAFA TO HAVE THE FEDERAL

12   COURT DECIDE SUBJECT MATTER JURISDICTION, AND WE THINK A REMAND

13   WOULD BE APPROPRIATE IF, AND ONLY IF, THE COURT DETERMINES IT

14   DOES NOT HAVE SUBJECT MATTER JURISDICTION.  AND, OF COURSE, WE

15   WOULDN'T TO BE LITIGATING THE SAME CASE IN BOTH FEDERAL COURT

16   AND IN STATE COURT, SO --

17            **THE COURT:**  HE JUST BROUGHT A *SPOKEO* MOTION, SO YOUR

18   DREAM MAY COME TRUE.

19            I MEAN, WHAT DO YOU WANT ME TO DO?  HE JUST FILED A

20   MOTION SAYING I CAN'T HEAR IT UNDER ARTICLE III.  NOW YOU'RE

21   TELLING ME, WELL, MAYBE YOU CAN?  I MEAN --

22            **MR. NADOLENCO:**  OBVIOUSLY, WE DON'T BELIEVE THE COURT

23   HAS SUBJECT MATTER JURISDICTION UNDER *SPOKEO*.  BUT IF THE COURT

24   WERE TO CONCLUDE OTHERWISE, THEN BOTH CASES WOULD REMAIN BEFORE

25   YOUR HONOR, AND WE WOULD LITIGATE THEM BOTH HERE; OTHERWISE,

1    PRESUMABLY, WE'D CONSIDER THE OPTIONS UPON THE RULING ON THE

2    MOTION TO DISMISS.

3              **THE COURT:**  WHERE DID YOU FILE IT?  IN CALIFORNIA?

4              **UNIDENTIFIED SPEAKER:**  CALIFORNIA, JUDGE.  IT WAS

5    REMOVED 30 DAYS AFTER FILING IN 2015.

6              **THE COURT:**  HOW DO YOU CROSS THE $5 MILLION CAFA

7    THRESHOLD?

8              **MR. NADOLENCO:**  PARDON ME?

9              **THE COURT:**  DID YOU REMOVE IT ON CAFA GROUNDS?

10             **MR. NADOLENCO:**  YES, YOUR HONOR.

11             **THE COURT:**  HOW DO THEY GET ACROSS $5 MILLION?

12             **MR. NADOLENCO:**  STATUTORY --

13             **THE COURT:**  HOW DO THEY GET ACROSS $5 MILLION?

14             **MR. NADOLENCO:**  THE AGGREGATION OF THE STATUTORY

15   DAMAGES UNDER BIPA.

16             **THE COURT:**  YOU DON'T KNOW HOW MANY PEOPLE ARE IN THE

17   CLASS, THOUGH, RIGHT?

18             **MR. NADOLENCO:**  THEY'VE ALLEGED IT'S THE --

19             **THE COURT:**  THE ENTIRE STATE OF ILLINOIS WHO'S NOT ON

20   FACEBOOK?

21             **MR. NADOLENCO:**  RIGHT, I MEAN --

22             **THE COURT:**  HOW MANY PEOPLE IS THAT?  20, 30?

23             **MR. NADOLENCO:**  IT'S A LOT.  IT'S A LOT.

24             **THE COURT:**  REALLY?  FACEBOOK'S LOSING SHARE IN

25   ILLINOIS?  HOW MANY PEOPLE IN ILLINOIS ARE NOT ON FACEBOOK?  I

1    MEAN, HOW DO YOU KNOW IT?

2              **MR. NADOLENCO:**  IT DOESN'T TAKE THAT MANY UNDER

3    THE --

4              **THE COURT:**  NO, BUT UNDER *DARK CHEROKEE* -- I GUESS

5    YOU GUYS DIDN'T CONTEST REMOVAL, DID YOU?

6              **MR. HEDIN:**  WE DID NOT, JUDGE.

7              **THE COURT:**  ALL RIGHT.  HAD YOU CONTESTED IT UNDER

8    *DARK CHEROKEE*, YOU WOULD HAVE PUT A PREPONDERANCE BURDEN OF

9    PROOF ON YOUR OPPONENTS TO COME UP WITH THE 5 MILLION, A BATTLE

10   YOU MAY HAVE WON, BECAUSE IT SOUNDS TO ME LIKE IT WOULD BE HARD

11   TO QUANTIFY THAT.  BUT, IN ANY EVENT, YOU'VE LOST THAT.

12             **MR. MILLIAN:**  JUDGE, DAVID MILLIAN AGAIN.

13        APPARENTLY, THE CIRCUMSTANCES HAVEN'T CHANGED.  WHEN

14   THEY FILED A NOTICE FOR REMOVAL, PRESUMABLY FACEBOOK BELIEVED

15   THIS COURT HAD SUBJECT MATTER JURISDICTION, BOTH CAFA AND

16   ARTICLE III.  OTHERWISE, THEY WOULD NOT HAVE BEEN IN A POSITION

17   TO REMOVE THE CASE AT THAT TIME.  NOTHING'S CHANGED OTHER THAN

18   AN OPINION HAS COME DOWN.  BUT THE FACTS ARE THE SAME.

19        IF THEY NOW BELIEVE THERE IS NO ARTICLE III

20   JURISDICTION, WE THINK REMAND IS APPROPRIATE.

21             **MR. NADOLENCO:**  THAT WAS A PRETTY BIG CHANGE, THOUGH,

22   YOUR HONOR, THE SUPREME COURT RULING IN *SPOKEO* WHEN WE REMOVED.

23   OBVIOUSLY, THAT WAS NOT THE LAW.  *EDWARDS* WAS THE LAW.  NOW

24   *SPOKEO* IS THE LAW.

25             **THE COURT:**  OKAY.  ANYTHING ELSE?  ALL RIGHT.  THANK

1    YOU.

2            **MR. WILLIAMS:**  MAY I BE HEARD?

3            **THE COURT:**  YES.  GO AHEAD, MR. WILLIAMS.

4            **MR. WILLIAMS:**  WE ARE OBVIOUSLY HERE ON THE --

5            **THE CLERK:**  STATE YOUR NAME.

6            **MR. WILLIAMS:**  I'M SORRY.  SHAWN WILLIAMS IN THE

7    CONSOLIDATED ACTION.  WE ARE HERE ON THAT CASE, YOUR HONOR.

8    DEFENDANTS HAVE FILED A *SPOKEO* MOTION IN THIS CASE THAT'S

9    BEFORE YOU.

10           **THE COURT:**  RIGHT.

11           **MR. WILLIAMS:**  NOT THE GULLEN CASE.  SO THAT ISSUE IS

12   GOING TO BE BEFORE YOU IN THAT ONE BEFORE THE STATE COURT

13   ACTION IS HEARD.

14           A COUPLE OF THINGS ABOUT OUR CASE MANAGEMENT.

15           **THE COURT:**  YOU FILED ORIGINALLY IN ILLINOIS FEDERAL

16   COURT?

17           **MR. WILLIAMS:**  ACTUALLY, THE CASE WAS INITIALLY FILED

18   IN ILLINOIS STATE COURT.  THAT'S THE LICATA ACTION.  THERE WERE

19   TWO ACTIONS THAT WERE FILED AFTERWARD, BUT THEY REMOVED THE

20   LICATA ACTION TO FEDERAL COURT, AND THEN THE CASE WAS

21   TRANSFERRED TO THIS COURT FROM THE --

22           **THE COURT:**  YOU WANT TO BE BACK IN ILLINOIS STATE

23   COURT?

24           **MR. WILLIAMS:**  I'M SORRY?

25           **THE COURT:**  WOULD YOU LIKE TO BE BACK IN ILLINOIS

1     STATE COURT?

2               **MR. WILLIAMS:**  WELL, YOUR HONOR, WE STIPULATED TO BE

3     HERE IN FRONT OF YOUR HONOR AND THE -- WE BELIEVE THAT THE CASE

4     IS APPROPRIATELY BEFORE YOU.

5               I READ THEIR BRIEF THIS MORNING BRIEFLY.  I DON'T

6     BELIEVE THAT IT IS PERSUASIVE, BUT THAT'S ME.

7               **THE COURT:**  GIVE ME -- JUST GIVE ME A SOUND BITE

8     ABOUT WHY.

9               **MR. WILLIAMS:**  WELL, BECAUSE I THINK THAT WE'VE

10    ADEQUATELY ALLEGED THE CONCRETENESS OF OUR PLAINTIFF'S INJURY.

11              *SPOKEO* HAS GONE BACK TO THE NINTH CIRCUIT.  I THINK

12    THESE LAWYERS ARE ACTUALLY LITIGATING THAT CASE IN FRONT OF THE

13    NINTH CIRCUIT.  THE NINTH CIRCUIT WILL EXPLAIN WHAT THE -- WHAT

14    HAS TO BE ALLEGED IN ORDER TO ADEQUATELY ALLEGE CONCRETENESS

15    CONSISTENT WITH THE SUPREME COURT OPINION IN *SPOKEO*.

16              WE DON'T KNOW WHAT THAT'S GOING TO BE, BUT IN OUR

17    CASE WE DON'T THINK THAT IT MATTERS.  WE THINK THAT WE'VE

18    ADEQUATELY ALLEGED CONCRETENESS, THAT THE -- THAT FACEBOOK

19    IMPROPERLY, WITHOUT CONSENT, TOOK THE BIOMETRIC IDENTIFIERS AND

20    DATA FROM OUR PLAINTIFFS AND MISAPPROPRIATED THEM --

21    MISAPPROPRIATED THEM, THEN USED THEM TO PROFIT OR TO EXPAND

22    FACEBOOK'S USER BASE BY OFFERING THIS TAGGING PROCESS.

23              **THE COURT:**  FACEBOOK IS A FREE -- YOU DON'T PAY

24    ANYTHING FOR THE SERVICE.

25              **MR. WILLIAMS:**  THAT'S RIGHT, YOU DON'T.

1      **THE COURT:**  SO HOW ARE THEY -- HOW IS FACEBOOK

2  PROFITING FROM EXPANDING ITS USER BASE?

3      **MR. WILLIAMS:**  BECAUSE THAT -- EXPANDING ITS USER

4  BASE ALLOWS THEM TO ADVERTISE TO MORE PEOPLE.  IT'S EXACTLY HOW

5  THEY EARN REVENUE.

6      SO -- AND I DON'T WANT TO OPINE ON -- I'LL GIVE YOU

7  MY OPINION ON HOW THEY MAKE MONEY.  BUT ONE OF THE WAYS IN

8  WHICH THEY MAKE MONEY IS OFFERING SERVICES THAT ARE ATTRACTIVE

9  TO PEOPLE, NOT JUST IN ILLINOIS, BUT ALL OVER.

10      ONE OF THE BIGGEST ATTRACTIONS BEING ABLE TO TAG YOUR

11  FRIENDS ON FACEBOOK.  THAT EXPANDS THEIR USER BASE, WHICH

12  EXPANDS THE NUMBER OF PEOPLE THAT THEY CAN ACTUALLY ADVERTISE

13  TO.

14      SO THEY MAY NOT -- YOU KNOW, PEOPLE MAY NOT BE PAYING

15  TO BE A MEMBER OF FACEBOOK, BUT THEY CERTAINLY ARE PROFITING

16  FROM THAT USER BASE BY OFFERING THIS PROCESS WHICH ALLOWS THEM

17  TO EXPAND THEIR USER BASE.

18      I'LL TELL YOU THAT ONE OF THE THINGS THAT WE'VE ASKED

19  FOR IN DISCOVERY IS EXACTLY HOW FACEBOOK IS PROFITING OR USING

20  TAGGING AND THE EXTRACTION OF BIOMETRIC INFORMATION AND

21  MONETIZING THAT ON ITS PLATFORM.

22      THE STATUTE DOES PROHIBIT, IN ADDITION TO EXTRACTING

23  BIOMETRIC INFORMATION, PROFITING FROM THE EXTRACTION OF THAT

24  INFORMATION.

25      SO I'M GIVING YOU MY OPINION.  WE'VE DEMANDED

1    INFORMATION FROM FACEBOOK IN THE PROCESS OF NORMAL DISCOVERY.

2    THEY HAVEN'T PRODUCED ANYTHING YET.

3          **THE COURT:**  BUT THE HARM TO YOUR PLAINTIFFS IS THE

4    STATUTORY VIOLATION, RIGHT?  THERE'S NO OTHER HARM?

5          **MR. WILLIAMS:**  STATUTORY --

6          **THE COURT:**  IT HASN'T COST THEM ANY MONEY.  IT HASN'T

7    DISRUPTED THEIR LIVES IN ANY WAY.  I MEAN, THE HARM IS

8    STRICTLY -- WHAT IS IT?  1500?  WHATEVER THE DOLLAR AMOUNT IS

9    IN BIPA.

10          **MR. WILLIAMS:**  IT'S A THOUSAND --

11          **THE COURT:**  THOUSAND.

12          **MR. WILLIAMS:**  -- DOLLARS PER NEGLIGENT VIOLATION.

13          **THE COURT:**  AND THE HARM?

14          **MR. WILLIAMS:**  THE STATUTE IDENTIFIES THE VIOLATION.

15    THE ALLEGATION OF THE CONCRETENESS OF THE HARM, WE BELIEVE, IS

16    THE TAKING OF THIS VERY UNIQUE INFORMATION WITHOUT --

17          **THE COURT:**  I UNDERSTAND THAT.  BUT THE DOLLAR HARM,

18    THE FINANCIAL HARM IS PURELY THE STATUTORY -- THE PENALTY UNDER

19    THE STATUTE.

20          **MR. WILLIAMS:**  YOU KNOW, IT'S HARD -- I WANT TO BE

21    CAREFUL HERE, YOUR HONOR, BECAUSE IT'S HARD TO SAY THAT'S THE

22    HARM BECAUSE THE STATUTE ACTUALLY IDENTIFIES WHAT THE PENALTY

23    IS FOR THIS VIOLATION.

24          SO IT'S HARD TO SAY THAT THE HARM IS THE MONEY.  I

25    THINK THAT THE HARM IS THE EXTRACTION OF THAT UNIQUE

1    INFORMATION AND USING IT FOR PROFIT.

2              **THE COURT:**  THE WORST THING THAT HAPPENS TO BOTH

3    SIDES IS YOU GET BACK TO THE COURT YOU ORIGINALLY FILED IN.

4    HARDLY A HEARTBREAK.  I DON'T KNOW WHY IT'S --

5              **MR. WILLIAMS:**  IT'S AN IRONIC --

6              **THE COURT:**  -- I MEAN, WHY FACEBOOK WANTS THAT.

7              **MR. WILLIAMS:**  IT IS IRONIC WHEN THEY ASKED TO BE

8    HERE.

9              **THE COURT:**  YEAH, BUT IF THEY WANT TO FIGHT MULTIPLE

10   WARS IN STATE COURT, THAT'S FINE.  EITHER WAY YOU'RE GOING TO

11   HAVE YOUR DAY IN COURT.

12             **MR. WILLIAMS:**  ONE WAY OR ANOTHER, I THINK SO, YOUR

13   HONOR.

14             **THE COURT:**  OKAY.  ALL RIGHT.  ANYTHING ELSE I CAN

15   HELP YOU WITH?

16             **MR. WILLIAMS:**  ONLY JUST SORT OF OUTLINING QUICKLY

17   YOUR HONOR'S EXPECTATIONS FOR THE -- YOU KNOW, THE SCHEDULE

18   GOING FORWARD.  WE TRIED --

19             **THE COURT:**  I'M PROBABLY GOING TO DO -- YOURS WAS --

20   THE PLAINTIFFS' SIDE WAS A LITTLE TOO BRISK, AND THE

21   DEFENDANT'S WAS TOO DRAWN OUT.  NOT AN UNCOMMON PROBLEM, SO I'M

22   GOING TO PICK SOMETHING THAT'S GOING TO BE KIND OF IN THE

23   MIDDLE.  OKAY.  ALL RIGHT?

24             GET TOGETHER SOON ON COORDINATING DISCOVERY.  AND WHY

25   DON'T YOU -- WHY DON'T WE DO THIS:  WHY DON'T -- WHEN YOU DO

1   THAT, WHY DON'T YOU ALSO DO A JOINT -- BOTH CASES AND

2   DEFENDANTS PROPOSE A NEW PROPOSED SCHEDULE.  OKAY?  YOU CAN ALL

3   SIT DOWN, TALK ABOUT WHAT YOUR NEEDS ARE GOING TO BE.  SEND ME

4   THAT AND ANY NEEDS YOU HAVE ON DISCOVERY, AND I'LL ISSUE A CASE

5   MANAGEMENT ORDER.  OKAY?  CAN YOU DO IT IN THE NEXT COUPLE OF

6   WEEKS?

7            **MR. WILLIAMS:**  YES, YOUR HONOR.

8            (SIMULTANEOUS SPEAKING.)

9            **MR. WILLIAMS:**  LAST POINT IS --

10           **THE COURT:**  PERHAPS EVEN IN THE HALLWAY ON THE WAY

11   OUT.

12           **MR. WILLIAMS:**  LAST POINT IS ASSUMING THE -- YOU

13   KNOW, THE COURT IS NOT STAYING DISCOVERY AS THEY SUGGESTED IN

14   THEIR --

15           **THE COURT:**  THE COURT DOES NOT ACT ON SUGGESTIONS.

16   IF YOU WANT TO BRING A MOTION, YOU CAN DO THAT.

17           **MR. WILLIAMS:**  THANK YOU, YOUR HONOR.

18           **THE COURT:**  WE DON'T DO THINGS OFF THE CUFF.

19           OKAY.  YES?

20           **MR. BALABANIAN:**  MAY I MAKE ONE POINT, YOUR HONOR?

21           **THE COURT:**  OF COURSE.  YEAH.

22           **MR. BALABANIAN:**  (UNDISCERNIBLE) I APPRECIATE IT.

23           **THE CLERK:**  AND YOU ARE?

24           **MR. BALABANIAN:**  RAFEY BALABANIAN -- EXCUSE ME -- FOR

25   PLAINTIFFS.

1          I WOULD JUST ADD TO WHAT MR. WILLIAMS WAS SAYING IN

2   TERMS OF THE HARM, WE ALSO ALLEGE AN INVASION OF PRIVACY.  AND

3   TO THE EXTENT THAT'S QUANTIFIABLE, THAT ISSUE IS OUT THERE, BUT

4   THE ACT OF TAKING PEOPLE'S BIOMETRIC INFORMATION IF YOU WANT TO

5   REDUCE IT TO KIND OF --

6          **THE COURT:**  OH WAIT.  YOU HAVE STATE LAW ILLINOIS

7   SEPARATE INVASION OF PRIVACY CLAIM?

8          **MR. BALABANIAN:**  NO, BUT THERE IS AN INVASION OF

9   PRIVACY THAT IS INHERENT IN THE CONDUCT ITSELF, AND THAT

10  INVASION OF PRIVACY WE BELIEVE IS QUANTIFIABLE.

11         WE BELIEVE THERE IS DAMAGE WHEN IT COMES TO THAT,

12  BECAUSE IF YOU MISAPPROPRIATE SOMEONE'S LIKENESS, THERE COULD

13  BE HARM THERE.  SO JUST TO LIMIT IT TO THE STATUTORY VIOLATION,

14  I THINK --

15         **THE COURT:**  WELL, THEY'RE NOT MISAPPROPRIATING IT --

16  I MEAN -- ALL RIGHT.  THIS GOES BACK TO THE IDEA THAT ANY

17  MISAPPROPRIATION IS SOMEHOW GOING TO INCREASE FACEBOOK'S BOTTOM

18  LINE?

19         I MEAN, THIS IS NOT CLASSIC MISAPPROPRIATION OF A

20  LIKENESS.  THEY'RE NOT PUTTING IT ON A COKE BOTTLE.

21         **MR. BALABANIAN:**  NO.  THAT IS EXACTLY RIGHT.  THE

22  COURT FOLLOWS IT EXACTLY.

23         BUT, YES, IT WOULD GO TO THEIR BOTTOM LINE, AND

24  THAT'S HOW WE UNDERSTAND THEY MAKE BUSINESS IN OUR NAIVE VIEW.

25         I WILL MAKE ONE POINT ABOUT THE *SPOKEO* ISSUE, AND THE

1   COURT'S HEARD PLENTY ABOUT IT, AND MY FIRM WAS THE OTHER SIDE

2   OF THE SUPREME COURT.

3          **THE COURT:**  THIS IS JUST A TEASER.  OKAY.  WE'RE

4   NOT -- NO DECISIONS ARE BEING MADE.

5          (SIMULTANEOUS SPEAKING)

6          **THE COURT:**  IT'S AN INTERESTING ISSUE.  GO AHEAD.

7   YEAH.

8          **MR. BALABANIAN:**  I'M NOT ARGUING, BECAUSE I WAS

9   NOT -- I'M CERTAINLY NOT SOPHISTICATED ENOUGH TO ACTUALLY ARGUE

10  THOSE ISSUES.

11         **THE COURT:**  YEAH.

12         **MR. BALABANIAN:**  I WILL SAY THAT IT SEEMS, THOUGH,

13  WHAT THEY'RE REALLY GETTING AT IS THEY WANT A RULING FROM THIS

14  COURT ABOUT SUBJECT MATTER JURISDICTION IN LIGHT OF A PRIVACY

15  STATUTE, BECAUSE IF WE'RE HERE SAYING, WE'LL STIPULATE TO

16  REMAND IT, WE'LL GO BACK TO WHEREVER, IT SEEMS LIKE IT WOULD BE

17  SOMEWHAT OF A WASTE OF TIME FOR THE COURT TO HAVE TO WEIGH IN

18  ON THAT.  I'M NOT SAYING THAT --

19         **THE COURT:**  WELL, I ASKED THEM THAT, AND THEY SAID,

20  NO, THEY'RE NOT GOING TO DO THAT.  SO THAT'S WHERE YOU ARE.

21         **MR. BALABANIAN:**  THANK YOU FOR YOUR TIME.

22         **THE COURT:**  ANYTHING ELSE?  OKAY.  GOOD.  THANK YOU.

23         (PROCEEDINGS ADJOURNED AT 1:56 P.M.)

24

25

1
## **CERTIFICATE OF TRANSCRIBER**

2

3      I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4   TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5   THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6   U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7   PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8   ABOVE MATTER.

9      I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10  RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11  WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12  FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13  ACTION.

14

15                    *jmcolumbini*

16                    JOAN MARIE COLUMBINI

17                    JULY 13, 2016

18

19

20

21

22

23

24

25

**JOAN MARIE COLUMBINI, CSR, RPR**
**RETIRED OFFICIAL COURT REPORTER, USDC**
**510-367-3043**