1   MAYER BROWN LLP
    John Nadolenco (SBN 181128)
2   350 South Grand Avenue
    25th Floor
3   Los Angeles, CA 90071-1503
    Telephone: (213) 229-9500
4   jnadolenco@mayerbrown.com

5   Lauren R. Goldman (*pro hac vice*)
    1221 Avenue of the Americas
6   New York, NY 10020
    Telephone: (212) 506-2647
7   lrgoldman@mayerbrown.com

8   Archis A. Parasharami (*pro hac vice*)
    1999 K Street, N.W.
9   Washington, D.C. 20006-1101
    Telephone: (202) 263-3328
10  aparasharami@mayerbrown.com

11  *Counsel for Defendant Facebook, Inc.*

12

13                      **UNITED STATES DISTRICT COURT**

14                      **NORTHERN DISTRICT OF CALIFORNIA**

15                          **SAN FRANCISCO DIVISION**

16  IN RE FACEBOOK BIOMETRIC              Master Docket No.: 3:15-CV-03747-JD
    INFORMATION PRIVACY LITIGATION
17                                                        and

18                                        Case No.: 3:16-CV-00937-JD
    THIS DOCUMENT RELATES TO:
19                                        **DEFENDANT FACEBOOK, INC.'S**
    ALL ACTIONS                           **REPLY IN SUPPORT OF ITS MOTION**
20                                        **TO DISMISS FOR LACK OF SUBJECT**
    _____  **MATTER JURISDICTION**
21
    FREDERICK WILLIAM GULLEN, on behalf   Date: September 14, 2016
22  of himself and all others similarly situated,  Time: 10:00 a.m.
                                          Location: Courtroom 11
23  Plaintiff,
                                          Hon. James Donato
24  v.

25                  FACEBOOK, INC.,

26  Defendant.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

I.     PLAINTIFFS HAVE ALLEGED NO CONCRETE "TANGIBLE" HARM ................... 2

II.    PLAINTIFFS HAVE ALLEGED NO CONCRETE "INTANGIBLE" HARM ............... 4

      A.    Plaintiffs Do Not Allege or Describe Their Asserted Harms ................................ 4

      B.    The Harms Asserted in Plaintiffs' Brief Do Not Fall Within the Limited Categories that Courts Have Considered Sufficient to Support Standing ............. 5

      C.    A BIPA Violation Does Not Resemble Any Historically Cognizable Harm ........ 8

      D.    The Illinois General Assembly Did Not Suggest that Every BIPA Violation Causes a Concrete Injury ........................................................................ 9

FACEBOOK'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
MASTER CASE NO. 3:15-CV-03747-JD; CASE NO. 16-CV-00937-JD

# TABLE OF AUTHORITIES

**Cases**

*Benavidez v. Anheuser Busch, Inc.*,
    873 F.2d 102 (5th Cir. 1989) ..................................................................................................4

*Bohannon v. Facebook, Inc.*,
    2014 WL 5598222 (N.D. Cal. Nov. 3, 2014) ..........................................................................2

*Bona Fide Conglomerate v. SourceAmerica*,
    2016 WL 3543699 (S.D. Cal. June 29, 2016)..........................................................................8

*Canessa v. J.I. Kislak, Inc.*,
    235 A.2d 62 (N.J. Super. Ct. 1967) ........................................................................................3

*Cantrell v. City of Long Beach*,
    241 F.3d 674 (9th Cir. 2001) .............................................................................................8, 10

*Carpenter v. United States*,
    484 U.S. 19 (1987)..................................................................................................................2

*Church v. Accretive Health, Inc.*,
    __ F. App'x __, 2016 WL 3611543 (11th Cir. July 6, 2016) ..................................................7

*Dolan v. Select Portfolio Servicing*,
    2016 WL 4099109 (E.D.N.Y. Aug. 2, 2016)...........................................................................7

*Duqum v. Scottrade, Inc.*,
    2016 WL 3683001 (E.D. Mo. July 12, 2016) .........................................................................8

*Fed. Elec. Comm'n v. Akins*,
    524 U.S. 11 (1998)...............................................................................................................5, 6

*Floyd v. United States*,
    860 F.2d 999 (10th Cir. 1988) ................................................................................................3

*FMC Corp. v. Boesky*,
    852 F.2d 981 (7th Cir. 1988) .............................................................................................8, 10

*Friends of Animals v. Jewell*,
    __ F.3d __, 2016 WL 3854010 (D.C. Cir. July 15, 2016) ......................................................7

*Groshek v. Time Warner Cable, Inc.*,
    2016 WL 4203506 (E.D. Wis. Aug. 9, 2016).........................................................................4

*Hancock v. Urban Outfitters, Inc.*,
    __ F.3d __, 2016 WL 3996710 (D.C. Cir. July 26, 2016) ....................................................10

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)............................................................................................................7, 8

*Jamison v. Bank of Am., N.A.*,
    2016 WL 3653456 (E.D. Cal. July 7, 2016) ............................................................................7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).................................................................................................................10

*Marbury v. Madison*,
    1 Cranch 137 (1803) .................................................................................................................9

*McCollough v. Smarte Carte, Inc.*,
    2016 WL 4077108 (N.D. Ill. Aug. 1, 2016) ...............................................................1, 5, 7, 10

*In re Nickelodeon Consumer Privacy Litig.*,
    __ F.3d__, 2016 WL 3513782 (3d Cir. June 27, 2016)..............................................................8

*Public Citizen v. Dep't of Justice*,
    491 U.S. 440 (1989)..............................................................................................................5, 6

*Shakir v. Alameida*,
    2008 WL 4811885 (C.D. Cal. Oct. 28, 2008).............................................................................3

*Smith v. Ohio State Univ.*,
    2016 WL 3182675 (S.D. Ohio June 8, 2016) ............................................................................7

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)..................................................................................................... *passim*

*Strautins v. Trustwave Holdings, Inc.*,
    27 F. Supp. 3d 871, 882 (N.D. Ill. 2014) ..................................................................................4

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)..................................................................................................................10

*Thomas v. FTS USA, LLC*,
    2016 WL 3653878 (E.D. Va. June 30, 2016) ............................................................................7

*Vigil v. Take-Two Interactive Software, Inc.*,
    No. 15-cv-8211 (S.D.N.Y.).........................................................................................................5

*Work v. U.S. ex. rel. Rives*,
    267 U.S. 175 (1925)...................................................................................................................9

**Statutes and Rules**

15 U.S.C. § 1681e...........................................................................................................................6

FACEBOOK'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
MASTER CASE NO. 3:15-CV-03747-JD; CASE NO. 16-CV-00937-JD

15 U.S.C. § 1681j..............................................................................................................6

740 ILCS 14/5..................................................................................................................10

765 ILCS 1075/10..............................................................................................................3

Fed. R. Crim. P. 41 ............................................................................................................3

**Other Authorities**

John G. Roberts, Jr., *Article III Limits on Statutory Standing*,
    42 DUKE L.J. 1219 (1992)...........................................................................................6

RESTATEMENT (SECOND) OF TORTS § 652C...................................................................3

1

## PRELIMINARY STATEMENT

2    The Supreme Court's decision in *Spokeo* eliminated the jurisdictional underpinnings of

3  this case by holding that "Article III standing requires a concrete injury even in the context of a

4  statutory violation."  136 S. Ct. at 1549.  As plaintiffs would have it, however, *Spokeo* decided

5  nothing.  They argue that *Spokeo* merely "re-iterated [a] long-standing" rule—even though their

6  complaints were structured around the Ninth Circuit statutory-standing rule that *Spokeo* nullified.

7  They repeatedly assert that "[a] plaintiff seeking to vindicate a statutorily created private right

8  need not allege actual harm"—citing a *concurrence* in *Spokeo* that the majority plainly rejected.

9  And they continue to contend that they can establish standing simply by alleging a violation of

10  BIPA—the exact theory that *Spokeo* squarely foreclosed.

11    After Facebook filed this motion, a court in the Northern District of Illinois held that an

12  alleged violation of BIPA is not by itself sufficient to establish Article III standing under *Spokeo*.

13  In *McCollough v. Smarte Carte, Inc.*, 2016 WL 4077108 (N.D. Ill. Aug. 1, 2016), the plaintiff

14  alleged that the defendant had collected her fingerprints in violation of the notice-and-consent

15  provisions of BIPA.  *Id.* at \*1.  Judge Coleman found it "difficult to imagine" how that violation

16  "could work a concrete harm" absent an "allegation that [the plaintiff's biometric] information

17  was disclosed or at risk of disclosure."  *Id.* at \*3-4.  "How can there be an injury if there is no

18  allegation that the [biometric] information was disclosed or at risk of disclosure?  It was simply

19  retained."  *Id.* at \*3.  The court concluded that the "plaintiff ha[d] alleged [only] the sort of bare

20  procedural violation that cannot satisfy Article III standing."  *Id.* at \*4.

21    Plaintiffs do not even attempt to distinguish *McCollough*; they merely fault Ms.

22  McCollough's lawyer for failing "to present the court with a cogent explanation" of her injury.

23  But plaintiffs' explanation here is no better.  They argue that BIPA protects one kind of

24  purportedly "tangible" interest—their "property right in the information that makes up their own

25  faces"; and two types of "intangible" interests—their right "to information about Facebook's

26  collection, retention, and use of their biometric identifiers," and "their right to privacy and to

27  control the use of their own likeness."  But they have not alleged how Tag Suggestions

28

1    diminished the value of their property, how they were affected by Facebook's alleged failure to

2    disclose the relevant information, or how Facebook's conduct harmed their privacy.  The alleged

3    violation of a statutory *right*—which will accompany an alleged violation of *every* statute that

4    provides a right of action—is not the same thing as a *concrete injury*.  Because plaintiffs have

5    alleged no concrete injury flowing from Facebook's alleged BIPA violation, they lack standing.

6                                **ARGUMENT**[1]

7    **I.      PLAINTIFFS HAVE ALLEGED NO CONCRETE "TANGIBLE" HARM.**

8            Three of the four plaintiffs alleged that "Facebook misappropriated the value of [their]

9    biometric identifiers."  Compl. ¶¶ 37-38, 44-45, 51-52.  Facebook demonstrated that this bare

10   allegation does not satisfy the standing requirement:  Even assuming that "biometric identifiers

11   are property" (PB 3)—which they are not, as discussed next—plaintiffs do not explain how the

12   value of their biometric identifiers has been diminished due to Tag Suggestions.  DB 6-8.

13   Plaintiffs do not claim that they *could* sell their biometric identifiers, that they *would* sell them,

14   or, critically, that the buyers would now pay *less* for their identifiers because of Facebook's

15   conduct.  Plaintiffs offer no response to this argument and do not address the cited authorities.

16          In any event, plaintiffs have failed to allege that their alleged biometric identifiers *are*

17   property.  It is true, of course, that *certain* "[i]nformation is frequently considered proprietary in

18   nature" (PB 2), such as "[c]onfidential information acquired or compiled by a corporation in the

19   course and conduct of its business," *Carpenter v. United States*, 484 U.S. 19, 26 (1987), and

20   intellectual property, *see Bohannon v. Facebook, Inc.*, 2014 WL 5598222, at *4 (N.D. Cal. Nov.

21   3, 2014) (cited at PB 2).  The law deems this information property because its "disclosure[]" to

22   competitors "could cause [ ] financial and operational harm."  *Id.*  But "most information is

23   simply information and not property"; "[t]o extend the definition of property to encompass all

24   information, or even all valuable information, would stretch it so far beyond the common

25

26   [1]      "DB" refers to Facebook's brief in support of its motion to dismiss in *In re Facebook
     Biometric Privacy Litigation*.  All citations in this brief refer to the record in *In re Facebook*.
27   "PB" is plaintiffs' joint opposition brief filed in both *In re Facebook* and *Gullen*.

28

1    understanding of 'property' as to be untenable." *Shakir v. Alameida*, 2008 WL 4811885, at \*13

2    (C.D. Cal. Oct. 28, 2008), *aff'd in part, rev'd in part on other grounds*, 520 F. App'x 523 (9th

3    Cir. 2013).  Plaintiffs have offered no authority indicating that the alleged biometric data at issue

4    here (even if valuable) is property; BIPA certainly does not say so.[2]

5         Nor is there any freestanding "property interest" in a person's "likeness" or "identity"—

6    much less one that is infringed by the use of facial-recognition technology to suggest that one

7    friend tag another in a photograph.  PB 2-3.  On plaintiffs' theory, it would be tortious to take a

8    picture of someone on a public street or to reveal the name of a friend to another friend.  The

9    authorities that they cite (and selectively quote) recognize torts for *specific uses* of an

10   individual's likeness that are not alleged here.   For example, plaintiffs cite a statute stating that

11   "[t]he right to control and choose whether and how to use an individual's identity for commercial

12   purposes *is recognized as each individual's right of publicity*."  765 ILCS 1075/10 (emphasis

13   added); *cf.* PB 2 (omitting italicized language).  But an essential element of a right-of-publicity

14   claim (generally regarded as an intangible privacy claim, not a tangible property claim) is

15   *disclosure* of information to the public, which plaintiffs have not alleged.  DB 12.

16        Plaintiffs also dig up a 1967 trial-court decision from New Jersey stating that "*insofar as

17   plaintiffs' claim is based on the appropriation of their likeness and name for defendant's

18   commercial benefit*, it is an action for invasion of their 'property rights."  *Canessa v. J.I. Kislak,

19   Inc.*, 235 A.2d 62, 76 (N.J. Super. Ct. 1967) (emphasis added); *cf.* PB 3 (omitting italicized

20   language).  *Canessa* is an outlier in characterizing a misappropriation-of-likeness claim as a

21   "property" tort rather than an intangible privacy claim.  *See* RESTATEMENT (SECOND) OF TORTS

22   § 652C.  More fundamentally, plaintiffs do not allege such a claim—*i.e.*, that Facebook *sold* their

23

24   ---
     [2]    Plaintiffs invoke the definition of "property" in Federal Rule of Criminal Procedure 41,
     which includes "documents, books, papers, any other tangible objects, and information."  PB 3

25   (quoting Fed. R. Crim. P. 41(a)(2)(A)).  This definition is deliberately broad; it implements the
     Fourth Amendment's exclusionary rule and thereby deters unlawful searches and seizures.  *See,

26   e.g.*, *Floyd v. United States*, 860 F.2d 999, 1006 (10th Cir. 1988).  BIPA contains no similar
     definition of "property," and Rule 41 certainly does not create a property interest for *all* purposes

27   in every item covered by its definition.

28

FACEBOOK'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
MASTER CASE NO. 3:15-CV-03747-JD; CASE NO. 16-CV-00937-JD

1    likenesses or that plaintiffs were deprived of the value of their identities. *See* DB 12; *Benavidez*

2    *v. Anheuser Busch, Inc.*, 873 F.2d 102, 104 (5th Cir. 1989) ("increased goodwill" among

3    consumers was an "incidental benefit" that "does not rise to the level of commercial benefit").

4    **II.    PLAINTIFFS HAVE ALLEGED NO CONCRETE "INTANGIBLE" HARM.**

5    Plaintiffs next argue that they have "suffered two distinct types of intangible injuries: the

6    informational injury caused by Facebook's failure to make the disclosures required by [BIPA],

7    and the invasion of their privacy rights caused by Facebook's collection of their biometric

8    identifiers" without their consent. PB 3. Both theories are meritless.

9    **A.    Plaintiffs Do Not Allege or Describe Their Asserted Harms.**

10    "[A]t the pleading stage," a plaintiff must "clearly allege facts demonstrating" an injury

11    in fact. *Spokeo*, 136 S. Ct. at 1547. Plaintiffs allege (¶¶ 65-66) that Facebook failed to "properly

12    inform Plaintiffs . . . that their biometric identifiers were being collected and stored," and that it

13    "violated Plaintiffs' . . . rights to privacy in their biometric identifiers." But even before *Spokeo*,

14    it was clear that a "right" (either to information or to privacy) is "not a type of injury by itself,

15    and an allegation that a defendant violated a [right] is not sufficient to confer standing; the

16    plaintiff must also allege that she has been injured by the violation to establish standing."

17    *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 882 (N.D. Ill. 2014). Plaintiffs have

18    not claimed that the mere collection or storage of their alleged biometric identifiers caused them,

19    *e.g.*, to suffer serious emotional harm; to be caught in a compromising situation that materially

20    affected their reputations, livelihoods, or relationships; or to experience identity theft.[3]

21    Presumably that is because (1) they did not suffer harm and/or (2) such claims would create a sea

22    of individualized issues, barring class certification.

23    Ultimately, plaintiffs' vague incantations of "informational rights" and "privacy rights"

24    are nothing more than restatements of their claim that Facebook violated BIPA. DB 3-5. That is

25    ――――――――――――――

[3]    *Cf. Groshek v. Time Warner Cable, Inc.*, 2016 WL 4203506, at \*3 (E.D. Wis. Aug. 9,

26    2016) (no standing for technical disclosure violation where plaintiff did not "allege[] that he did
not get the job he applied for as a result of the consumer report," or that "defendant released the

27    information in the report to other people, causing him embarrassment or damaging his credit").

28

1    manifestly insufficient, as another federal judge has explained.  In *Vigil v. Take-Two Interactive*

2    *Software, Inc.*, No. 15-cv-8211 (S.D.N.Y.), Judge Koeltl pressed the plaintiff's lawyer in vain to

3    articulate the harm flowing from an alleged violation of BIPA:

4         THE COURT:  But, when you say that you have concrete harm, your only
          concrete harm is the fact that a statute has been violated.  And I had thought that
5         *Spokeo* stands for the proposition that the violation of a statute alone is not a
          concrete injury sufficient for Article III, unless you can show a concrete injury,
6         which is something different from simply the statement that the statute was
          violated.  [Defendant] took [biometric information], and by taking this, they
7         violated the statute. . . .

8         [PLAINTIFF'S COUNSEL]:  The actual harm is my clients' personal face scans
          are in defendant's possession.  And let me—
9
          THE COURT:  Now, how can that be considered to be an actual harm, other than
10        the violation of the statute?

11   *Vigil* 6/29/2016 Hr'g Tr. at 22-23 (Ex. A);[4] *see also McCollough*, 2016 WL 4077108, at *4.

12             **B.        The Harms Asserted in Plaintiffs' Brief Do Not Fall Within the Limited
                           Categories that Courts Have Considered Sufficient to Support Standing.**
13
             A plaintiff cannot satisfy Article III merely by claiming some failure to provide
14
     "information" or some invasion of his "privacy."  Courts have recognized *specific forms* of
15
     concrete informational and privacy injuries, none of which plaintiffs have asserted.
16
             **1.  *Informational Harm*.**  Plaintiffs argue categorically that "[w]hen a statute requires
17
     disclosure of certain information, and a defendant who is required to provide that information
18
     fails to do so, the person who was supposed to receive the information has suffered an injury in
19
     fact."  PB 3-4.  They cite *Spokeo*'s statement that "[t]he violation of a procedural right granted
20
     by statute can be sufficient in some circumstances to constitute injury in fact," in which "case[] a
21
     plaintiff need not allege any *additional* harm beyond the one identified by Congress."  136 S. Ct.
22
     at 1549-50 (citing *Fed. Elec. Comm'n v. Akins*, 524 U.S. 11, 20-25 (1998) & *Public Citizen v.*
23
     *Dep't of Justice*, 491 U.S. 440, 449 (1989)).  Plaintiffs misread *Spokeo* and the cited authorities.
24

25

26   [4]    Following direction from the Second Circuit, Judge Koeltl *sua sponte* granted the
     plaintiffs leave to replead in light of *Spokeo*, mooting the defendant's motion to dismiss.  *See*
27   *Vigil* 7/1/2016 Order (Ex. B).  The defendant's second motion to dismiss is currently pending.

28
                                                       5

1     First, as plaintiffs concede (PB 7 n.3), *Akins* and *Public Citizen* are unlike this case in two

2  key respects:  Those plaintiffs alleged with specificity (1) that they were denied access to

3  information that they had *requested* and (2) that the nondisclosures adversely affected their

4  ability to participate in the democratic process.  In *Akins*, voters sought to compel AIPAC to turn

5  over information about its membership, contributions, and expenditures.  524 U.S. at 13-14.  The

6  Court found "no reason to doubt [plaintiffs'] claim that the information [at issue] would help

7  them . . . to evaluate candidates for public office," and that as a result, "the [plaintiffs'] injury

8  seem[ed] concrete and particular."  *Id.* at 21.  In *Public Citizen*, interest groups sued DOJ for

9  failing to disclose discussions about potential judicial nominees.  491 U.S. at 448-51.  The Court

10  emphasized that the plaintiffs "sought and were denied specific agency records" that they needed

11  to scrutinize the "workings" of the government and "participate more effectively in the judicial

12  selection process"—"a sufficiently distinct injury to provide standing."  *Id.* at 449.[5]

13     Second, *Spokeo* confirms that not every alleged failure to provide a required disclosure is

14  a concrete harm.  FCRA "requires consumer reporting agencies . . . to notify providers and users

15  of consumer information of their responsibilities," and "to post toll-free numbers for consumers

16  to request reports."  15 U.S.C. §§ 1681e(d), 1681j(a).  The *Spokeo* plaintiff invoked each of these

17  provisions, 136 S. Ct at 1546, but the Court deemed this insufficient:  "[E]ven if a consumer

18  reporting agency *fails to provide the required notice* to a user of the agency's consumer

19  information, that information regardless may be entirely accurate" and there would be no

20  standing.  *Id.* at 1550 (emphasis added).  Thus, "the mere violation of a statute that requires

21  disclosure of . . . information is [not] sufficient to confer standing on a plaintiff who was denied

22  access to that information"; plaintiffs' argument "plainly ignores the Supreme Court's reiteration

23  in *Spokeo*, in the context of an alleged violation of a statute involving an 'informational'

24

25  [5]     Chief Justice Roberts explained when he was in private practice:  "When an agency
wrongfully denies an individual's [information] request, that particular individual has suffered
26  injury in fact"; "[a]nother individual who has not made a disclosure request, and therefore has
*not* suffered a wrongful denial, has not been injured and does not have standing to sue."  John G.
27  Roberts, Jr., *Article III Limits on Statutory Standing*, 42 DUKE L.J. 1219, 1228 n.60 (1992).

28

1  consumer-related injury, that a plaintiff cannot 'allege a bare procedural violation.'" *Dolan v.*

2  *Select Portfolio Servicing*, 2016 WL 4099109, at *6 & n.7 (E.D.N.Y. Aug. 2, 2016).

3       Third, plaintiffs' theory would render *Spokeo* inapplicable to every one of the legion of

4  statutes that have a notice requirement—the statutory violation (failure to give notice) would

5  always be a concrete harm. This theory is simply a nonstarter. Judge Coleman rejected it in

6  *McCollough*, finding insufficient for standing the plaintiff's allegation that a defendant "violated

7  BIPA by failing to . . . inform her that it would retain her fingerprint data and for what period of

8  time." 2016 WL 4077108, at *3. Although the plaintiff had alleged "a technical violation of

9  section 14/15(b)(2)," she had "not allege[d] any harm that resulted." *Id.*[6]

10      Plaintiffs' other informational-harm cases (*see* PB 4-7) do not help them. In *Church v.*

11 *Accretive Health, Inc.*, __ F. App'x __, 2016 WL 3611543 (11th Cir. July 6, 2016), the Eleventh

12 Circuit held that a debtor had suffered concrete harm where a debt collector had failed to make

13 certain disclosures that were *necessary to clarify a separate demand for payment*, and where the

14 plaintiff had alleged that she was "very angry" and "cried a lot" as a result of the misleading

15 demand. *Id.* at *1; *see also McCollough*, 2016 WL 4077108, at *5 (distinguishing *Church*).

16 *Friends of Animals v. Jewell*, __ F.3d __, 2016 WL 3854010 (D.C. Cir. July 15, 2016), merely

17 confirms that a plaintiff must show that an alleged "nondisclosure has caused it to suffer the kind

18 of harm from which Congress . . . sought to protect individuals or organizations like it"; it does

19 not suggest that a mere non-disclosure is sufficient. *Id.* at *3. And in *Thomas v. FTS USA, LLC*,

20 2016 WL 3653878 (E.D. Va. June 30, 2016), standing was based on an allegedly unauthorized

21 *disclosure* of the plaintiff's personal information to a third party. *Id.* at *10; *see McCollough*,

22 2016 WL 4077108, at *5 (distinguishing *Thomas*).[7]

23 [6]    *See also Dolan*, 2016 WL 4099109, at *6 n.7; *Jamison v. Bank of Am., N.A.*, 2016 WL
   3653456, at *3-5 (E.D. Cal. July 7, 2016) (no standing to sue bank for alleged failure to disclose
24 insurance proceeds in mortgage payoff statements); *Smith v. Ohio State Univ.*, 2016 WL
   3182675, at *3 (S.D. Ohio June 8, 2016) (no standing under *Spokeo* based on failure to provide
25 disclosure in precise format required by the FCRA).

26 [7]    Plaintiffs also cite the Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455
   U.S. 363 (1982). PB 6. There, the plaintiff alleged that the defendant made false and
27 discriminatory *representations* to her about the unavailability of apartments, in violation of the

28

1    **2.   *Privacy Harm***.   Facebook cited a host of cases, both pre- and post-*Spokeo*, holding

2  that a privacy harm is concrete only if the plaintiff specifically alleges *both* (1) that sensitive

3  information was *disclosed to or stolen by third parties* and (2) that actual *harm* arose from those

4  disclosures.   *See* DB 8-10, 12-13 & nn. 2, 5-6; *see also Duqum v. Scottrade, Inc.*, 2016 WL

5  3683001, at \*8 (E.D. Mo. July 12, 2016).   Plaintiffs do not make any such allegation or respond

6  to the cases Facebook cited.   The cases they do cite (PB 12) all involve fundamentally different

7  privacy interests.   In *In re Nickelodeon Consumer Privacy Litigation*, __ F.3d__, 2016 WL

8  3513782 (3d Cir. June 27, 2016), the defendant *disclosed* private, personal information of minors

9  despite express assurances that it would neither collect nor disclose that information.   *Id.* at \*3.

10  *Bona Fide Conglomerate v. SourceAmerica*, 2016 WL 3543699 (S.D. Cal. June 29, 2016), held

11  that a plaintiff had standing to assert a privacy claim where the defendants "secretly recorded"

12  conversations of the plaintiff's employees "to obtain confidential and privileged employees to

13  use against [the plaintiff]," requiring the plaintiff "to spend significant resources to respond to

14  [the] improper recordings."   *Id.* at \*8.   *FMC Corp. v. Boesky*, 852 F.2d 981 (7th Cir. 1988),

15  involved an alleged "misappropriation of [ ] confidential business information" that caused a

16  "distinct and palpable injury."   *Id.* at 993, 995.   *Cantrell v. City of Long Beach*, 241 F.3d 674

17  (9th Cir. 2001), was about taxpayer standing (not privacy harm), and expressly confirms that

18  state law may create interests that support federal standing only when a plaintiff "establish[es] a

19  direct injury under the more stringent federal requirements [of Article III]."   *Id.* at 683.

20    **C.    A BIPA Violation Does Not Resemble Any Historically Cognizable Harm.**

21    Invoking *Dred Scott* and the right of married women to enter into contracts, plaintiffs

22  assert that *Spokeo* does not "effectively freeze the universe of sufficiently concrete harms to

23  those recognized as legal claims in the 18th Century."   PB 8-9.   Facebook has never taken any

24  such position. It merely applied *Spokeo*'s test for assessing intangible harm: whether the alleged

25  injury bears a "*close relationship* to a harm that has traditionally been regarded as providing a

26  Fair Housing Act.   Not only did this plaintiff undoubtedly suffer concrete harm in the form of
racial discrimination and the denial of housing, but the Court made clear that Congress had

27  deliberately elevated these harms to cognizable injuries in the statute. *See* 455 U.S. at 372-74.

28

8

1    basis for a lawsuit in English or American courts," 136 S. Ct. at 1549 (emphasis added)—*i.e.*, at

2    the time of the founding.  DB 10-11.

3        Plaintiffs do not, and cannot, contend that their purported "informational injury" meets

4    that test.  The informational harms that courts have recognized (pp. 5-7 *supra*) rest on a long

5    history of mandamus actions to compel *government* officials to perform ministerial duties

6    required by law.  *Work v. U.S. ex. rel. Rives*, 267 U.S. 175, 177 (1925); *Marbury v. Madison*, 1

7    Cranch 137 (1803).  Plaintiffs' theory bears *no* relationship to these actions—it would permit

8    suits against *private* actors who fail to disclose information that has *never* been requested.

9        As for the right to privacy:  Plaintiffs acknowledge that privacy torts "originat[ed]" in

10   1890.  PB 9.  They do not argue that their claim resembles those recognized even at *that* time

11   (DB 11-12) or, for that matter, *today* (DB 12-13; p. 8 *supra*).  They simply describe the legal

12   right at a high level of generality ("privacy"); assert that it has been actionable in *some* form "for

13   many years" (although not at the founding); characterize BIPA as "an extension of these . . .

14   principles" (without explanation); and conclude that "[p]laintiffs have standing to seek redress."

15   PB 9-10.  This reasoning is a mockery of *Spokeo*.

**D.    The Illinois General Assembly Did Not Suggest that Every BIPA Violation Causes a Concrete Injury.**

Plaintiffs assert that because the Illinois General Assembly "create[d] a valid legal right"

that "protects the privacy of consumers' unique and unchangeable biometric data," they "need

not allege actual harm beyond the invasion of that private right."  PB 10-11.  But *every* time a

legislature enacts a law with a right of action, it creates a legal right with a legislative purpose;

that alone does not indicate an intent to expand federal standing.  As *Spokeo* held, "Congress'

role in identifying and elevating intangible harms does not mean that a plaintiff automatically

satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and

purports to authorize that person to vindicate that right."  136 S. Ct. at 1549.[8]

---

[8]    To the extent that Justice Thomas's concurrence in *Spokeo*—which plaintiffs cite repeatedly (*see* PB 5-6, 11)—suggests otherwise, it inconsistent with the majority opinion.

FACEBOOK'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
MASTER CASE NO. 3:15-CV-03747-JD; CASE NO. 16-CV-00937-JD

1    Instead, *Spokeo* requires a far more precise legislative "judgment": to "elevat[e] to the

2    status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at

3    law."   136 S. Ct. at 1549 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992)

4    (Kennedy, J. concurring)).   A legislature that seeks to create "a case or controversy where none

5    existed before . . . must at the very least identify the injury it seeks to vindicate and relate the

6    injury to the class of persons entitled to bring suit."   *Lujan*, 504 U.S. at 580 (Kennedy, J.,

7    concurring).   BIPA's findings do not suffice:   They show a legislative concern about the risk of

8    *data breaches* and *identity theft*, not some generalized "informational" or "privacy" interest. *See,*

9    *e.g.*, 740 ILCS 14/5(c) ("[O]nce [biometric data] is compromised, the individual has no recourse,

10   [and] is at heightened risk for identity theft.").   And even if the legislature had a broader "inten[t]

11   to protect the privacy of personal consumer data" (PB 11 (citing Dkt. 120 at 18)), that in no way

12   indicates a judgment that *all* "consumers who unwittingly gave away their unique biometric data

13   without their consent . . . have been injured and are entitled to relief" (*id*.).

14   Finally, even if plaintiffs could show a legislative intent to create standing for their

15   asserted harms, that would not automatically *confer* standing; the legislature's judgment is

16   "instructive," not dispositive, *Spokeo*, 136 S. Ct. at 1549, and cannot alter the "hard floor of

17   Article III jurisdiction," *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009); *see also*

18   *Hancock v. Urban Outfitters, Inc.*, __ F.3d __, 2016 WL 3996710, at *3 (D.C. Cir. July 26,

19   2016).[9]   Federal standing requires a real-world injury, and plaintiffs have not claimed one.

20   Dated:  August 25, 2016                              MAYER BROWN LLP

21                                                        By: */s/ John Nadolenco*
                                                              John Nadolenco
22                                                            Lauren R. Goldman
                                                              Archis A. Parasharami

23                                                        *Counsel for Defendant Facebook, Inc.*

24

25   ─────────────────────
     [9]    Plaintiffs challenge *McCollough*'s conclusion that "a state statute cannot confer federal
26   constitutional standing."   PB 12 n.4 (quoting 2016 WL 4077108, at *4).   But  *Spokeo* held that
     *Congress* cannot confer constitutional standing simply by enacting a statute; it follows that a
27   *state* legislature cannot.  *FMC* and *Cantrell* are not to the contrary.  *See* p. 8 *supra*.

28

FACEBOOK'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
MASTER CASE NO. 3:15-CV-03747-JD; CASE NO. 16-CV-00937-JD