**MAYER•BROWN**

Mayer Brown LLP
350 South Grand Avenue
25th Floor
Los Angeles, California 90071-1503

Main Tel +1 213 229 9500
Main Fax +1 213 625 0248
www.mayerbrown.com

**John Nadolenco**
Direct Tel +1 213 229 5173
Direct Fax +1 213 576 8133
jnadolenco@mayerbrown.com

September 26, 2016

VIA ECF

Honorable James Donato
United States District Court
450 Golden Gate Avenue
San Francisco, California 94102

Re:   *In re Facebook Biometric Information Privacy Litig.*, 3:15-cv-03747-JD (N.D. Cal.) and *Gullen v. Facebook, Inc.*, No. 3:16-cv-00937-JD (N.D. Cal.)

Dear Judge Donato:

Facebook is meeting its discovery obligations. Plaintiffs' incomplete and inaccurate September 14 letter (Dkt. 146; "Pl. Ltr.") seeks this Court's intervention before it is remotely warranted. Indeed, the parties met and conferred on September 21 and made substantial progress toward resolving the vast majority of issues raised in plaintiffs' letter. The parties have sufficient time before the February 2017 discovery cut-off to negotiate any remaining disputes in good faith.

***Facebook's Search Methodology, Custodians, and Search Terms.*** Plaintiffs initially asked Facebook to start merits discovery by prioritizing documents "sufficient to fully describe" or "identify" how Facebook's challenged facial-recognition technology works. After interviewing the Company's engineers, Facebook reported to plaintiffs that it was likely that the only document "sufficient to show" how the technology worked would be Facebook's source code. Facebook offered to make the source code available for inspection. But plaintiffs switched gears and requested that Facebook produce all documents that "related to" the technology.

Accordingly, Facebook then embarked upon a two-stage discovery process. The first stage was to collect, review, and produce non-custodial documents; this effort yielded hundreds of pages of responsive discovery. In rolling productions on July 15, August 24, August 30, and September 1, Facebook produced (1) internal presentations on the challenged technology; (2) internal "Wiki" pages; (3) internal engineering correspondence ("Tasks"); and (4) historical versions of Facebook's Data Policy, notifications to users, and relevant Help Center pages.

Meanwhile, Facebook planned the second stage: a more traditional custodian review and production. To avoid inefficiency and duplication of effort, defense counsel sought to reach an agreement with plaintiffs on the contours of that search. On August 12, Facebook identified six proposed custodians and 26 proposed search terms. Plaintiffs suggested adding eight custodians and more than 40 search terms, many of which seemed far afield and likely to identify large numbers of irrelevant documents. Nevertheless, Facebook began analyzing plaintiffs' proposal.

Mayer Brown LLP operates in combination with other Mayer Brown entities (the "Mayer Brown Practices"), which have offices in North America, Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Hon. James Donato
September 26, 2016
Page 2

At a September 10 meet-and-confer, defense counsel explained the two-stage process discussed above; reported that Facebook was willing to add several of plaintiffs' proposed custodians and many of their proposed search terms; and offered to send a letter with revised proposals.

Without waiting for that letter or offering any further opportunity for discussion, plaintiffs filed their own letter with the Court on September 14. Plaintiffs' letter is both premature and misleading. When they filed it, plaintiffs *knew* Facebook's search methodology, they *knew* Facebook was willing to add custodians and search terms, they *knew* that Facebook would be sending them the details of that proposal in a letter, they *knew* the parties had agreed to meet and confer again before asking the Court to intervene, and they *knew* that review and production of email would commence as soon as the parties could agree on custodians and search terms.

In any event, Facebook sent the promised letter on September 16, agreeing to four of plaintiffs' eight additional custodians and 12 of their search terms. The parties met and conferred again on September 21, and Facebook has agreed to provide plaintiffs with more information about the burden associated with the custodians and search terms that remain disputed. In the meantime, Facebook will begin reviewing documents identified using the 10 custodians and 38 search terms that are not in dispute. In a September 23 letter memorializing the parties' recent discussions, plaintiffs reported that they are amenable to this approach.

Clearly, these continued meet-and-confer efforts remain productive. The parties are not at impasse, and Facebook is fully complying with its discovery obligations—something plaintiffs cannot seriously dispute. Instead of granting any of the relief that plaintiffs request, the Court should simply require the parties to continue to meet and confer in good faith.

***Source Code.*** Plaintiffs' request that the Court order Facebook to produce a paper copy of its source code is frivolous. Paragraph 8(c) of the Protective Order (Dkt. 87, 88) specifically allows Facebook to make its source code available for in-person inspection, and lays out the logistics of that process. *Id.* During the "assent" phase of the case, Facebook provided a hard copy of small, largely outdated portions of source code related to sign-up flow. But the *highly proprietary* and *far more voluminous* source code underlying Facebook's facial-recognition technology is another matter entirely: Facebook cannot risk creating hard copies of its internal code and is completely justified in insisting that plaintiffs conduct a traditional source-code inspection. *See Dynetix Design Solutions, Inc. v. Synopsis, Inc.*, 2012 WL 1232105, at *2 (N.D. Cal. Apr. 12, 2012). In their last discussion, the parties seemed to move past this issue and discussed how the in-person inspection will work; the details of that process are largely set forth in the Protective Order. The parties simply need to agree upon a date.

***Rule 30(b)(6) Depositions.*** Facebook has made clear that it will produce Facebook research scientist Yaniv Taigman to testify regarding Topics 1 through 5, 7, and 8 in plaintiffs' Rule 30(b)(6) notice. Mr. Taigman is the person most knowledgeable to testify about Facebook's facial-recognition technology. But he is an Israeli resident who is unable to travel to the U.S. for a deposition before November. We offered to make Mr. Taigman available for deposition earlier

Hon. James Donato
September 26, 2016
Page 3

either by videoconference or by arranging for a deposition in Israel. These are reasonable alternatives. *See, e.g.*, *Multiven, Inc. v. Cisco Sys., Inc.*, 2010 WL 1222310, at *1-*2 (N.D. Cal. Mar. 24, 2010). Alternatively, plaintiffs can depose Mr. Taigman in the United States in November. Plaintiffs have since requested that Facebook pay their travel costs if Mr. Taigman's deposition takes place outside the United States. Facebook is considering that request, and plaintiffs are currently working on an estimate of the costs. This is another issue where the parties are making progress without the Court's intervention.

As for the other subjects identified in plaintiffs' Rule 30(b)(6) notice: Facebook already designated Mark Pike to testify regarding Topic 6 (notice and consent "with respect to new or existing features or services"). Mr. Pike testified live on these subjects at the March 2, 2016 evidentiary hearing. Topic 9 relates to Facebook's "lobbying efforts," which are both irrelevant to plaintiffs' BIPA claim and protected by the *Noerr-Pennington* doctrine. *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2003). Evidence of any lobbying activity would not be admissible or reasonably calculated to lead to admissible evidence. If the Court is inclined to permit plaintiffs to seek discovery regarding Facebook's petitioning activities, Facebook respectfully requests the opportunity to file a short memorandum of law on this subject.

***Document Redactions.*** Facebook's redaction of discrete, non-responsive, and irrelevant information from certain of the documents that it has produced is permissible. *See, e.g.*, *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 2014 WL 4593338, at *5 (N.D. Cal. Sept. 15, 2014). Facebook has produced detailed logs identifying the basis for its redactions, and Plaintiffs have not sought to discuss any particular redaction with defense counsel.

***Interrogatory No. 14 and Request for Admission No. 3.*** Interrogatory No. 14 seeks "the number of photos of faces" uploaded to Facebook "from Illinois IP addresses." Facebook does not object to answering the interrogatory in principle, but it does not believe that IP addresses can be conclusively associated with any particular U.S. state. During the September 21 meet-and-confer, the parties discussed potential alternatives to IP addresses. Again, the parties simply need to further discuss the issue. Facebook properly objected to plaintiffs' requests for admission, which were loaded with poorly-defined terms and ignored the rule that "[r]equests for admission cannot be used to solicit admissions or denials as to legal conclusions." *Haggarty v. Wells Fargo Bank, N.A.*, 2012 WL 4113341, at *4 (N.D. Cal. Sept. 18, 2012). In any event, Facebook answered plaintiffs' Request for Admission No. 3, and denied it.

    Sincerely,

*/s/ John Nadolenco*
John Nadolenco, counsel for Defendant Facebook Inc.

cc: all counsel of record (*In re Facebook Biometric Information Privacy Litig.*, No. 3:15-cv-03747 (via ECF), and *Gullen v. Facebook, Inc.*, No. 3:16-cv-00937) (via email)

721675988