**MAYER·BROWN**

Mayer Brown LLP
350 South Grand Avenue
25th Floor
Los Angeles, California 90071-1503

Main Tel +1 213 229 9500
Main Fax +1 213 625 0248
www.mayerbrown.com

November 10, 2016

**John Nadolenco**
Direct Tel +1 213 229 5173
jnadolenco@mayerbrown.com

Honorable James Donato
United States District Court
450 Golden Gate Avenue
San Francisco, California 94102

Re:   *In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-cv-03747-JD (N.D. Cal.); *Gullen v. Facebook, Inc.*, No. 3:16-cv-00937-JD (N.D. Cal.)

Dear Judge Donato:

Pursuant to the Court's October 28, 2016 Minute Order (Dkt. 162[1]), Facebook submits this letter brief on the outstanding discovery disputes outlined in part in the parties' joint letter dated October 11, 2016 (Dkt. 158). The parties continue to dispute whether discovery should be permitted on four subjects: (a) Facebook's communications with certain foreign regulators about its facial recognition technology; (b) Facebook's acquisition of Face.com; (c) Facebook's patents related to its facial recognition technology; and (d) any "lobbying" activity by Facebook with respect to the Biometric Information Privacy Act ("BIPA"). Facebook seeks a protective order on each of these subjects. *See Jones v. Nutiva, Inc.*, 2016 WL 5387760, at *1 (N.D. Cal. Sept. 26, 2016) ("'[T]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,' including by precluding discovery, by conditioning disclosure or discovery on specified terms, by preventing inquiry into certain matters, or by limiting the scope of discovery to certain matters." (quoting Fed. R. Civ. P. 26(c)(1))). The parties also continue to dispute the propriety of Facebook's redaction of irrelevant parts of the documents it produces.

### A.   Documents Submitted to the European Union

Plaintiffs have requested "All Documents relating to Your communications with any local, state, federal, or international governmental or regulatory body concerning Your use of Face Finding and/or Facial Recognition, or Your collection, storage, retention, and/or use of Biometric Identifiers." Pl. First RFPs No. 12. Plaintiffs have informed Facebook that this request encompasses documents that Facebook submitted to the European Union (EU)— primarily, to the Irish Data Protection Commissioner (IDPC).

---

[1]   Unless otherwise indicated, citations to docket entries refer to the *In re Facebook* docket.

Mayer Brown LLP operates in combination with other Mayer Brown entities (the "Mayer Brown Practices"), which have offices in North America, Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Honorable James Donato
November 10, 2016
Page 2

Such discovery would be improper for at least four reasons: (1) the documents are irrelevant; (2) they are cumulative of other materials that Facebook is producing; (3) compelling their discovery would violate principles of international comity; and (4) discovery of these documents would be unduly burdensome because it would require Facebook to seek permission from the IDPC to share the documents and move for a protective order if the IDPC denies permission. Indeed, a court in this District precluded discovery of the same materials in a recent case against Facebook. *Campbell v. Facebook Inc.*, 2015 4463809, at *1 (N.D. Cal. July 21, 2015). Plaintiffs wholly ignored this case in the parties' joint letter.

*Irrelevant*. As this Court has recognized, "we're not in the EU" (06/29 Tr. at 9), and therefore Facebook's regulatory issues in the EU are irrelevant. Plaintiffs' class definitions are limited to "[a]ll persons who had their biometric identifiers, faceprints, or face templates collected, captured, received, or otherwise obtained by Facebook *while residing in Illinois*" (*In re Facebook* Compl. ¶ 53 (emphasis added)), and "[a]ll non-Facebook users who, *while residing in the State of Illinois*, had their biometric identifiers, including 'face templates' (or 'face prints'), collected, captured, received, stored, or otherwise obtained by Facebook" (*Gullen* Compl. ¶ 35 (emphasis added)). The documents that plaintiffs seek are confidential communications between a *foreign* Facebook affiliate and *foreign* regulators about how Tag Suggestions would work with respect to *foreign* individuals who are not part of the putative class. Any such communications have no relevance to plaintiffs' claim. *See Campbell*, 2015 WL 4463809, at *3 ("Plaintiffs seek to represent Facebook users in the United States and challenge a specific functionality alleged to have been operative on the U.S. Facebook website. . . . [T]he information Plaintiffs seek originated in Ireland, not the United States." (internal quotation marks and citation omitted)); *Hughes v. LaSalle Bank, N.A.*, 2004 WL 414828 at *1-2 (S.D.N.Y. Mar. 4, 2004) ("[T]o the extent that Plaintiffs seek discovery with respect to persons or entities that are not members of the putative class that Plaintiffs have alleged, they are going beyond the scope of the complaint in this action, and that is beyond the scope of permissible discovery.").

In the parties' joint letter, plaintiffs argued that the IDPC's decision to bar Facebook from using facial recognition technology, and Facebook's disabling of this technology in the EU, are "relevant to Facebook's technical ability to disable Facial Recognition Technology geographically, to identifying the overall geographic scope of the alleged unlawful conduct and to Facebook's proposed Dormant Commerce Clause defense." 10/11/2016 Joint Ltr. at 9. As noted above, however, the proposed classes include only Illinois residents; the "overall geographic scope of the alleged unlawful conduct" has no relevance. If plaintiffs believe they need information about the other technological issues they identify, they should target their requests to that information rather than broadly seeking *all* communications with foreign regulators. In fact, plaintiffs have already taken discovery on these other technological issues; their October 18 deposition of Facebook engineer Yaniv Taigman covered the "processes or procedures by which Facebook can or does manipulate and/or disable its Facial Recognition technology in order to comply with United States or European regulatory requirements." Pl. Am. Second Notice of 30(b)(6) Dep., Sch. A, Topic 4.

***Cumulative***.  Plaintiffs argue that the documents sought can help demonstrate "how [Facebook's] Facial Recognition Technology performs," including whether Facebook "in fact 'scan[s]' photos with its Facial Recognition Technology."  10/11/2016 Joint Ltr. at 9.  But even if the documents included relevant discussions of these issues, Facebook is producing numerous other documents that are more than sufficient for that purpose, including its source code.  Because "[p]laintiffs have alternative means of obtaining similar if not the same information they seek here," there is no reason for Facebook to produce the far more attenuated sources.  *Campbell*, 2015 WL 4463809, at *4 (refusing to compel production of Facebook documents submitted to IDPC in part because Facebook produced "alternative sources" including its "relevant source code").

***Comity***.  Plaintiffs have not offered any response to our argument grounded in principles of comity.  *See* 10/11/2016 Joint Ltr. at 8-9.  "Rule 26 grants the court discretion to limit discovery [based on] international comity."  *In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1081 (N.D. Cal. 2007) (citing *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for So. Dist. of Iowa*, 482 U.S. 522, 544 (1987)).  "American courts, in supervising pretrial proceedings, should exercise special vigilance to demonstrate due respect for any sovereign interest expressed by a foreign state."  *Id.*; *see also Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1476 (9th Cir. 1992).

Requiring disclosure of documents submitted to EU—and particularly to the IDPC—would have a serious chilling effect that would drastically undermine the regulators' objectives.  As the IDPC has explained in a recent report, "in common with many regulators in the world, it is not possible to publicly disclose details of our engagement with [ ] organizations [including Facebook Ireland], as this could negatively impact on the frankness of those conversations and therefore make effective regulation more difficult."  Annual Report of the Data Protection Commissioner of Ireland 12 (2014), *available at* https://www.dataprotection.ie/docimages/documents/Annual%20Report%202014.pdf.  Relying on this report, the court explained in *Campbell* that "foreign companies may be less forthcoming with the IDPC in the future if they know that their communications will be judged and dissected for entirely unrelated purposes in a United States court."  2015 WL 4463809, at *4 (internal quotation marks omitted).  Because "effective regulation may depend on the candidness of [ ] communications" between the regulator and the entity, "which in turn may depend on confidentiality with the entities" being regulated, *id.* at *4, those communications should not be subject to disclosure—particularly where, as here, plaintiffs have alternative means of obtaining the information they seek, *see, e.g.*, *Rubber Chems.*, 486 F. Supp. 2d at 1082 ("[C]ourts are less inclined to ignore a foreign state's concerns where the outcome of litigation does not stand or fall on the present discovery order, or where the evidence sought is cumulative of existing evidence." (internal quotation marks omitted)).

***Burden***.  Finally, the discovery sought would create a significant undue burden for Facebook.  *See* Fed. R. Civ. P. 26(b)(2)(C).  Because the IDPC does not disclose confidential information received from the organizations it regulates (as discussed above), Facebook is "likely under an equitable obligation to maintain the confidentiality of its communications with the IDPC as well."  *Campbell*, 2015 WL 4463809, at *2.  If the Court compels production of

Honorable James Donato
November 10, 2016
Page 4

these documents, Facebook will need to seek permission from the IDPC before producing them, and if the IDPC denies the request, Facebook will need to seek another protective order. All of this can and should be avoided.

**B.     Acquisition of Face.com**

Plaintiffs requested "[a]ll Documents and Communications concerning [Facebook's] 2012 acquisition of Face.com." Pl. First RFPs No. 10. The October 18 deposition of Mr. Taigman focused on Facebook's facial recognition technology, but plaintiffs' counsel also asked Mr. Taigman numerous questions about Facebook's acquisition of Face.com, which Mr. Taigman co-founded and which (like Facebook) developed software related to facial recognition. Among other things, plaintiffs' counsel asked Mr. Taigman about "the terms of th[e] deal" reached between Facebook and Face.com. Taigman 10/18/2016 Dep. at 109. Facebook's counsel asked plaintiffs to explain the relevance of these lines of questioning. *See id.* at 109-10. In a discussion off the record, plaintiffs informed Facebook that they considered the testimony relevant to establishing the value of Facebook's technology, which in turn would purportedly be relevant to plaintiffs' damages and whether they have been harmed for purposes of Article III standing. Facebook disagreed, and its counsel instructed Mr. Taigman not to answer questions on this subject, including questions about the amount of money that Facebook paid Face.com to acquire the company. *See id.* at 111-13.

Simply put, any *value* of the technology to *Facebook* has nothing to do with the *harm* that the *plaintiffs* allegedly suffered from Facebook's use of that technology. *See, e.g.*, *Silha v. ACT, Inc.*, 807 F.3d 169, 174-75 (7th Cir. 2015) ("[A] plaintiff's claim of injury in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss."); *In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) ("[A] plaintiff must do more than point to the dollars in a defendant's pocket; he must sufficient[ly] allege that in the process he lost dollars of his own."); *Cohen v. Facebook, Inc.*, 2011 WL 5117164, at *2 (N.D. Cal. Oct. 27, 2011) (complaint insufficient to plead injury where it alleged that "Facebook's use of plaintiffs' names and likenesses can be seen as serving a commercial purpose, undertaken with at least the intent of achieving growth in Facebook's user base, thereby resulting in monetary gain for Facebook").

In any event, the complaints do not even allege that Facebook has benefited commercially from Tag Suggestions (presumably because there is no basis for such an allegation and it would not advance plaintiffs' claims in any event). At the October 27 hearing, plaintiffs' counsel argued that "Facebook derives financial benefit from their collection of [biometric] information." 10/27/2016 Hr'g Tr. at 15. The Court pressed counsel to identify the portion of the complaints that makes this allegation. *See id.* at 15 ("Where is that in the Complaint? . . . Take a moment to find it. I don't see it."). Plaintiffs came up empty. *See id.* at 16 ("Well, we don't specifically allege that they're profiting from it . . . . [W]e don't think that's what's happening; at least, we don't have any information that that's happening."). The Court therefore informed plaintiffs that any argument on commercial benefit is "not going to help you." *Id.* It follows that plaintiffs have no need for discovery on this issue.

Honorable James Donato
November 10, 2016
Page 5

Plaintiffs have also suggested that the acquisition of Face.com, and the commercial benefit that Facebook purportedly derives from Tag Suggestions, is relevant to whether Facebook has obtained an "unjust enrichment" from the technology. This allegation, again, is nowhere to be found in the complaints; plaintiffs have never asserted an unjust enrichment claim in this case. And that is unsurprising: Unjust enrichment depends on whether the defendant "received an unjust benefit . . . at *plaintiffs' expense*." *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *16 (N.D. Cal. Nov. 6, 2009) (emphasis added). Plaintiffs have not claimed, and cannot claim, that they were subjected to any "expense" based on Facebook's acquisition of Face.com (or indeed its use of facial recognition technology more generally).

      C.      **Documents and Information Related to the Patents Associated with the Company's Facial Recognition Technology**

Although plaintiffs raised the discoverability of patents in their September 14 letter to the Court (Dkt. 146), and the parties later discussed the issue in their joint letter (10/11/2016 Joint Ltr. at 10-11), plaintiffs have not formally requested that Facebook produce any patents; thus, compelling discovery of any patents would be premature.

But Facebook nonetheless seeks a protective order for its patents because there will never be any legitimate reason to compel their production in this case. The only possible relevance of this evidence would be to show how Facebook's technology works. As discussed above, however, Facebook is producing many documents that explain the technology, including the source code itself; and plaintiffs had the opportunity to depose Mr. Taigman on this subject on October 18. The patents are at best cumulative, and any information that they might convey can be readily obtained from another source.

Indeed, when (as here) source code is being made available, it makes no sense to rely on patents to understand how a technology works. A patent merely grants rights relating to an invention; it often does not describe exactly how the technology functions as implemented. *See Fujifilm Corp. v. Motorola Mobility LLC*, 2013 WL 6185254, at *6 (N.D. Cal. Nov. 18, 2013) ("A patentee is not required to produce a listing of source code or a highly detailed description of an algorithm to be used to achieve the claimed functions." (internal quotation marks omitted)). Because Facebook's patents do not even necessarily show how it uses facial recognition, they are irrelevant, and not merely cumulative.

In any event, Facebook's patents are publicly available; there is no reason why Facebook should be burdened with producing them when plaintiffs already have access to them. In fact, plaintiffs marked one of the patents at the recent deposition of Mr. Taigman. Nor can plaintiffs obtain them on the grounds that they may need Facebook to identify which patents are related to Facebook's facial recognition technology and its Tag Suggestions feature; any such assessment by Facebook's attorneys would be privileged.

### D. Facebook's Alleged Lobbying Efforts Related to BIPA

Plaintiffs have requested "[a]ll Documents and Communications related to [BIPA] including, but not limited to, any Documents regarding compliance, non-compliance, amendments, or proposed amendments and correspondence with any government or elected official, their staff, or any lobbyist organization concerning the same." Pl. Third RFPs No. 4. Compelling discovery of documents relating to Facebook's lobbying efforts would violate its First Amendment right to petition the government. And any communications Facebook may have had with legislators are privileged under Illinois law.

The First Amendment guarantees the "right of the people . . . to petition the Government for a redress of grievance." A First Amendment rule known as the "*Noerr-Pennington* doctrine" "exempts petitioning of public authorities from civil liability on First Amendment grounds." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2003); *see Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137-44 (1960); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 669-70 (1965). Applying this doctrine, several courts have held that documents related to lobbying are inadmissible and non-discoverable unless they are so relevant to a specific issue as to outweigh First Amendment interests. *See, e.g.*, *In re Circuit Breaker Litig.*, 984 F. Supp. 1267, 1277 (C.D. Cal. 1997) (holding that on summary judgment, "because of the *Noerr-Pennington* protection afforded to Plaintiffs' petitioning activities, Defendants' evidence is limited to Plaintiffs' non-immune activities"); *Bristol-Myers Squibb Co. v. Ivax Corp.*, 77 F. Supp. 2d 606, 617 (D.N.J. 2000) (excluding evidence of communications with government because the statements "were made in an effort to induce favorable government action"); *Australia/Eastern U.S.A. Shipping Conf. v. United States*, 537 F. Supp. 807, 812-13 (D.D.C. 1982) (in considering whether a party should have to disclose "Noerr material," a court should balance "the relevance of the request" and the "harm to first amendment values"), *vacated on other grounds*, 1986 WL 1165605 (D.C. Cir. Aug. 27, 1986).[2]

The lobbying documents that plaintiffs seek are irrelevant to their claim, and any minimal relevance is overcome by the protection that should be afforded Facebook's right to petition. The question in this case is whether Facebook's technology complied with BIPA *as enacted*; what the law *might* have been, or what it *might* become, makes no difference. The documents do not show how Facebook's technology works or bear on whether Facebook's use of facial recognition technology violated BIPA.

---

[2] We acknowledge that the authority on this point is not unanimous; some courts have held that the *Noerr-Pennington* doctrine is "not a bar to discovery of evidence." *See, e.g.*, *N. Cal. Elec. Membership Corp. v. Carolina Power & Light Co.*, 666 F.2d 50, 53 (4th Cir. 1981). We respectfully submit that such a rule would substantially undermine the right to petition by subjecting defendants to burdensome discovery of constitutionally protected material. The Court should follow the authorities cited above.

Honorable James Donato
November 10, 2016
Page 7

Plaintiffs have suggested that the lobbying documents were "relevant to . . . Facebook's knowing violations of BIPA." 10/11/2016 Joint Ltr. at 6. But that argument shows exactly why plaintiffs are *not* entitled to these documents: Constitutionally protected lobbying efforts can *never* form the basis for a finding of willful misconduct. More broadly, lobbying documents cannot be deemed discoverable simply because the relevant statute is the subject of pending litigation; such a boundless principle would have a significant chilling effect on lawful petitioning activity.

In addition, any lobbying communications that Facebook may have had with legislators are privileged under Illinois law. *See* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1328 (9th Cir. 1995) ("Because Alaska state law supplied the rule of decision with respect to the claims in this case, Alaska privilege rules had to be applied."). Most lobbying documents, to the extent they exist, will be subject to the attorney-client privilege, the work-product doctrine, or both. Moreover, Illinois law creates a privilege for communications that are (1) made in confidence, as part of a relationship (2) to which confidentiality is essential, and (3) which "in the opinion of the community ought to be sedulously fostered," as long as (4) the injury from disclosing the relationship would exceed the benefit of increasing the likelihood of correctly deciding the litigation. *Ill. Educ. Labor Relations Bd. v. Homer Cmty. Consol. Sch. Dist.*, 547 N.E.2d 182, 185 (Ill. 1989).

All four of these requirements are satisfied with respect to any communications that Facebook and its representatives may have had with legislators:[3] Any such communications were made in confidence; confidentiality is essential to honest petitioning of the legislature; the inclusion of the right to petition in the First Amendment plainly shows that the "community" (indeed, the nation) seeks to "sedulously foster" this relationship; and the chilling of First Amendment rights easily overshadows any marginal difference that these documents could possibly make to the resolution of this litigation. Thus, the Court should hold that Facebook is not required to produce any lobbying-related documents.

E. **Redactions of Irrelevant Portions of Documents**

When the parties met and conferred before submitting their joint letter to the Court, plaintiffs expressed concern about Facebook's redaction of portions of documents that it deemed irrelevant. In particular, plaintiffs complained about Facebook's redaction of information about product features related to its facial recognition technology that have never been implemented, but have only been considered for future implementation. Plaintiffs have never explained why this information is relevant or why it might lead to the discovery of admissible evidence. Instead, they have asserted that Facebook's redactions made some produced documents difficult

---

[3] *But see Dukes v. Pneumo Abex Corp.*, 900 N.E.2d 1128, 1145 (Ill. App. Ct. 2008) (rejecting an argument that certain documents related to lobbying were covered by the privilege for confidential communications, with minimal analysis).

Honorable James Donato
November 10, 2016
Page 8

to understand, and made clear that their view is that Facebook is *never* allowed to redact irrelevant information.

Plaintiffs are simply wrong that redacting irrelevant information is never appropriate. Although "generally, redactions of documents based on relevance . . . are disfavored," there are situations where they are appropriate, including to protect information about a party's products that are not at issue in the case. *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 2014 WL 4593338, at *5 (N.D. Cal. Sept. 15, 2014) (defendant "properly redacted" information about "unaccused products" in producing documents).

Here, plaintiffs seek discovery from Facebook regarding a technology with countless possible applications even though the allegations in their complaints are focused on one application: Tag Suggestions. Facebook's internal documents are rarely specific to the application at issue—or even to facial recognition technology more generally. Plaintiffs should not be granted unfettered access to all of Facebook's internal discussions about potential future applications of facial recognition technology, and certainly should not be granted access to any chain of internal communication that happens to touch on such technology in passing.

Facebook remains willing to work with plaintiffs to try to make redacted documents more clear and to discuss more specific objections to redactions, but accepting plaintiffs' view would render the discovery in this case needlessly oppressive.

## Conclusion

The Court should grant Facebook a protective order with respect to (a) Facebook's communications with foreign regulators about its facial recognition technology; (b) Facebook's acquisition of Face.com; (c) Facebook's patents; and (d) any lobbying activity by Facebook with respect to BIPA. The Court should reject plaintiffs' argument with respect to Facebook's redactions.