MAYER BROWN LLP
John Nadolenco (SBN 181128)
350 South Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
jnadolenco@mayerbrown.com

Lauren R. Goldman (*pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2647
lrgoldman@mayerbrown.com

Counsel for Defendant Facebook, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE FACEBOOK BIOMETRIC INFORMATION PRIVACY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS<br>—————————————————<br>FREDERICK WILLIAM GULLEN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | **DEFENDANT FACEBOOK, INC.'S RENEWED MOTION TO DISMISS UNDER RULE 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Master Docket No.: 3:15-CV-03747-JD<br><br>Date: November 2, 2017<br>Time: 10:00 a.m.<br>Location: Courtroom 11<br><br>Hon. James Donato<br><br>[*Declaration of John Nadolenco and Proposed Order filed concurrently herewith*]<br><br>Case No. 3:16-cv-00937-JD |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1

STATEMENT OF THE ISSUE TO BE DECIDED ..................................................................... 2

BACKGROUND ........................................................................................................................... 2

ARGUMENT ................................................................................................................................. 3

    I.    PLAINTIFFS DO NOT ALLEGE A CONCRETE STATUTORY INTEREST ........................................................................................................... 4

    II.   PLAINTIFFS ALLEGE NO REAL-WORLD HARM .............................................. 8

CONCLUSION ............................................................................................................................ 12

i

FACEBOOK, INC.'S RENEWED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
MASTER CASE NO. 3:15-CV-03747-JD & CASE NO. 3:16-CV-00937-JD

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Braitberg v. Charter Commc'ns*,
   836 F.3d 925 (8th Cir. 2016) ............................................................................................. 6, 9

*Edwards v. First Am. Corp.*,
   610 F.3d 514 (9th Cir. 2010) ................................................................................................. 4

*In re Facebook Biometric Info. Privacy Litig.*,
   185 F. Supp. 3d 1155 (N.D. Cal. 2016) ............................................................................. 7, 10

*In re Google, Inc. Privacy Policy Litig.*,
   2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) .......................................................................... 10

*Gubala v. Time Warner Cable, Inc.*,
   846 F.3d 909 (7th Cir. 2017) ............................................................................................. 6, 9

*Hancock v. Urban Outfitters, Inc.*,
   830 F.3d 511 (D.C. Cir. 2016) ................................................................................................ 6

*In re Horizon Healthcare Servs., Inc. Data Breach Litig.*,
   846 F.3d 625 (3d Cir. 2017) ................................................................................................... 5

*Low v. LinkedIn Corp.*,
   2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ....................................................................... 10

*McCollough v. Smarte Carte, Inc.*,
   2016 WL 4077108 (N.D. Ill. Aug. 1, 2016) ......................................................................... 7, 9

*Robins v. Spokeo, Inc. ("Spokeo II")*,
   867 F.3d 1108 (9th Cir. 2017) ........................................................................................ *passim*

*Spokeo, Inc. v. Robins ("Spokeo I")*,
   136 S. Ct. 1540 (2016) ................................................................................................. 1, 3, 4, 6

*Strautins v. Trustwave Holdings, Inc.*,
   27 F. Supp. 3d 871 (N.D. Ill. 2014) ....................................................................................... 10

*Strubel v. Comenity Bank*,
   842 F.3d 181 (2d Cir. 2016) ................................................................................................. 4, 8

*Syed v. M-I, LLC*,
   853 F.3d 492 (9th Cir. 2017) ................................................................................................... 8

ii
FACEBOOK, INC.'S RENEWED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
MASTER CASE NO. 3:15-CV-03747-JD & CASE NO. 3:16-CV-00937-JD

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037 (9th Cir. 2017) ....................................................................................... 8, 9

*Vigil v. Take-Two Interactive Software, Inc.*,
    235 F. Supp. 3d 499 (S.D.N.Y. 2017) ............................................................................ *passim*

**Statutes**

740 ILCS 14/5 ........................................................................................................................ 2, 3, 7

15 U.S.C. § 1681e .......................................................................................................................... 3, 5

15 U.S.C. § 1681j ............................................................................................................................ 5

**Other Authorities**

RESTATEMENT (FIRST) OF TORTS § 570 (1938) ............................................................................. 5

## NOTICE OF MOTION & MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on November 2, 2017, at 10:00 a.m., before the Honorable James Donato, defendant Facebook, Inc. will and hereby does renew its motion to dismiss these actions for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Facebook's motion is based on this notice of motion and motion; the memoranda and other papers filed in support of Facebook's previous Rule 12(b)(1) motion, which are incorporated by reference herein; the memorandum of points and authorities that follows; the pleadings, papers, and other documents on file in these actions; and such other evidence and argument presented to the Court at or prior to any hearing in this matter. Facebook requests oral argument on this motion.

Dated: September 28, 2017                    MAYER BROWN LLP

By: */s/ John Nadolenco*
    John Nadolenco
    Lauren R. Goldman

*Counsel for Defendant Facebook, Inc.*

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **INTRODUCTION**

In June 2016, Facebook moved to dismiss these consolidated actions for lack of subject matter jurisdiction, arguing that the plaintiffs had failed to allege any concrete harm and therefore lacked Article III standing under the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ("*Spokeo I*"). After briefing and a hearing, the Court terminated Facebook's motions "for administrative purposes," "find[ing] it advisable to wait for the Ninth Circuit's guidance on the Article III issues." The Court ruled that Facebook would be permitted to "renew the motions . . . after the Ninth Circuit ha[d] issued its decision" in the remanded *Spokeo* action.

The Ninth Circuit has now issued its decision on remand and has reaffirmed the fundamental premise of Facebook's motion: "[E]ven when a statute has allegedly been violated, Article III requires such violation to have caused some *real . . . harm to the plaintiff*." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017) ("*Spokeo II*") (emphasis added). The Court of Appeals concluded that Mr. Robins had standing to assert a claim based on the alleged publication of false information about him in a consumer report on the defendant's website. That holding was based on two critical—and independently necessary—rationales. First, the particular statutory provision at issue protected a concrete interest—the "*dissemination* of false information" to *third parties*—that was "closely similar" to "interests that have long been protected in the law"; indeed, the court expressly declined to "consider whether a plaintiff would allege a concrete harm if . . . a materially inaccurate report about him was *prepared* but never *published*." *Id.* at 1114-16 & n.3 (first emphasis added). Second, the plaintiff "*specifically alleged*" that he had suffered multiple *real-world* harms to that interest: he was "out of work and looking for a job," the defendant had "diminished [his] employment prospects," and it had caused him to suffer "anxiety, stress, concern, and/or worry." *Id.* at 1117 (emphasis added).

Plaintiffs can satisfy neither of these requirements. They allege nothing more than bare violations of the notice-and-consent provisions of the Illinois Biometric Information Privacy Act

1

("BIPA")—specifically, that Facebook obtained their alleged "biometric identifiers" without adequately notifying them or obtaining their informed written consent. These cases therefore do not implicate any privacy interest resembling the one that *Spokeo II* recognized: the protection of personal information against disclosure to third parties. And the complaints do not allege *any* real-world harm, let alone the kind that courts have been willing to recognize as a basis for suit. Although plaintiffs vaguely assert that Facebook "violated" their "privacy rights," they have not even attempted to explain how these supposed "privacy" violations have *affected* them—by harming their reputations, their livelihoods, their relationships, their emotions, or the security of their data. According to their own complaints, any data that Facebook obtained about them is sitting safely on its servers.

At the hearing on Facebook's original motion to dismiss for lack of standing, this Court noted that plaintiffs' "complaint doesn't really say invasion of privacy," and that their other arguments on standing "simply cannot be right" and missed "the whole point of [the] standing inquiry." The Court was correct. These cases should be dismissed for lack of subject matter jurisdiction.

## STATEMENT OF THE ISSUE TO BE DECIDED

Whether plaintiffs have Article III standing to pursue their claims in this case.

## BACKGROUND

In each of these actions, the plaintiffs allege that Facebook violated BIPA by using facial-recognition technology, in connection with its Tag Suggestions feature, to collect their "biometric identifiers" without sufficient notice or consent. Compl. (Dkt. 40[1]) ¶¶ 3, 21-24, 63-67. Specifically, plaintiffs claim that Facebook violated two sections of BIPA: (1) Section 15(a), which requires private entities in possession of biometric identifiers to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers" (740 ILCS 14/15(a); Compl. ¶¶ 68-71); and (2)

---

[1] All docket entries refer to the *Facebook Biometric* matter; unless otherwise indicated, the corresponding *Gullen* filing contains materially similar information.

Section 15(b), which requires private entities to inform a person "in writing" and obtain a "written release" before they "collect, capture, purchase, . . . or otherwise obtain a person's . . . biometric identifier" (740 ILCS 14/15(b); Compl. ¶¶ 60-67). The complaints further allege that "Facebook misappropriated the value of [plaintiffs'] biometric identifiers" (Compl. ¶¶ 37-38, 44-45, 51-52) and "disregard[ed]" and "violated" plaintiffs' "privacy rights" (*id.* ¶¶ 5, 31, 66).

In June 2016, following the Supreme Court's decision in *Spokeo I*, Facebook moved to dismiss the cases for lack of standing. Def. Standing MTD (Dkt. 129); *see also* Pl. Standing Opp'n (Dkt. 138); Def. Standing Reply (Dkt. 140). After full briefing, the Court heard oral argument on the motions and took them under submission. 10/27/2016 Hr'g Tr. (Dkt. 167).[2]

On February 7, 2017, the Court issued an order (Dkt. 193) stating the following:

> Given that the Ninth Circuit currently has the [remanded *Spokeo II*] case under submission, the Court finds it advisable to wait for the Ninth Circuit's guidance on the Article III issues raised by defendant's motions in these cases. The Court consequently terminates the pending motions for administrative purposes. Defendant may renew the motions by filing notices of renewal after the Ninth Circuit has issued its decision . . . . If, after reviewing the forthcoming decision, the parties wish to file supplemental briefs, they may jointly propose a schedule for the Court's consideration.

The Ninth Circuit issued *Spokeo II* on August 15, 2017.

## ARGUMENT

Under *Spokeo I* and its progeny, a plaintiff may establish standing based on a statutory violation only by alleging *both* a concrete interest protected by the statute *and* actual harm to that interest. The plaintiffs here have alleged neither.

In *Spokeo I*, the plaintiff claimed that the defendant had published an inaccurate report about him on its website, in violation of a provision of the Fair Credit Reporting Act that "requires consumer reporting agencies to 'follow reasonable procedures to assure maximum possible accuracy' of consumer reports." 136 S. Ct. at 1545 (quoting 15 U.S.C. § 1681e(b)).[3]

---

[2] Facebook incorporates by reference its prior briefs and the arguments of counsel at the October 27, 2016 hearing.

[3] As discussed below, the *Spokeo* plaintiff originally invoked other provisions of FCRA,

3

The Ninth Circuit held that the plaintiff had standing to sue, relying on long-standing Circuit precedent that "[t]he injury required by Article III can exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010) (internal quotation marks omitted); *see Spokeo I*, 136 S. Ct. at 1546 n.5. The Supreme Court reversed, holding that "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo I*, 136 S. Ct. at 1549-50. The Court explained that in determining whether an "intangible" injury "constitutes injury in fact," a court should consider whether it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," and whether the legislature had made a "judgment" to "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* at 1549. The Court remanded the case to the Ninth Circuit to decide whether the plaintiff had alleged such an injury. *Id.* at 1550.

On remand, the Ninth Circuit recognized that under *Spokeo I*, a bare statutory violation will generally not be sufficient to establish standing: "[E]ven when a statute has allegedly been violated, Article III requires such violation to have caused some real—as opposed to purely legal—harm to the plaintiff." *Spokeo II*, 867 F.3d at 1112. The court held that a plaintiff must satisfy two requirements in order to establish standing based upon an alleged statutory violation: he must show (1) that "the statutory provisions at issue were established to protect [ ] concrete interests (as opposed to purely procedural rights)"; and (2) that "the specific procedural violations alleged in th[e] case actually harm, or present a material risk of harm, to such interests." *Id.* at 1113 (adopting the test set forth in *Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016)). The plaintiffs here have failed to satisfy either prong of this test.

**I.    PLAINTIFFS DO NOT ALLEGE A CONCRETE STATUTORY INTEREST.**

BIPA regulates two primary categories of conduct: (a) the collection, analysis, and retention of data about a person; and (b) the dissemination or sale of that information to third parties. The plaintiffs in this case have invoked only the first category: They claim that

---

but ultimately abandoned those allegations before *Spokeo II* was decided.

Facebook violated BIPA by collecting their biometric identifiers without providing BIPA-compliant notice and obtaining BIPA-compliant consent. *Spokeo II* does not suggest that such regulations give rise to a concrete interest. Quite the contrary: the court expressly limited its holding to FCRA's provisions regulating the *dissemination* of incorrect information to third parties, and indicated that the type of statutory claim presented by plaintiffs in this case would *not* support Article III standing.

In *Spokeo II*, the Ninth Circuit concluded that "the dissemination of false information in consumer reports can itself constitute a concrete harm" because "[c]ourts have long entertained causes of action to vindicate intangible harms caused by certain untruthful disclosures about individuals." 867 F.3d at 1114-15. "For example, the common law provided remedies for a variety of defamatory statements, including those which falsely attributed characteristics 'incompatible with the proper exercise of [an individual's] lawful business, trade, profession, or office.'" *Id.* at 1114 (quoting RESTATEMENT (FIRST) OF TORTS § 570 (1938)). "FCRA's privacy protections" were also comparable "to common law protections for 'a person's right to prevent the dissemination of private information.'" *Id.* (quoting *In re Horizon Healthcare Servs., Inc. Data Breach Litig.*, 846 F.3d 625, 638-40 (3d Cir. 2017)). In enacting these provisions of FCRA, "Congress ha[d] chosen to protect against a harm that is at least closely similar in kind to others that have traditionally served as a basis for lawsuit." *Id.* (emphasis omitted).

The court made clear that its holding was limited to the specific provisions of FCRA that Mr. Robins had invoked, and did not extend to other sections of the statute. Two of the limitations on the Ninth Circuit's holding are highly relevant here. First, the court expressly declined to "consider whether a plaintiff would allege a concrete harm if . . . a materially inaccurate report about him was *prepared* but never *published*." *Id.* at 1116 n.3. Second, the court noted that the plaintiff had abandoned his reliance on "other FCRA provisions" that "d[id] *not* turn on any alleged reporting inaccuracy" and would therefore have "present[ed] great difficulty for his standing argument," *id.* at 1116 n.2—specifically, FCRA's *notice* provisions.[4]

---

[4] *See* 15 U.S.C. §§ 1681e(d), 1681j(a) (requiring that consumer reporting agencies notify users of consumer information of their responsibilities and post toll-free numbers for consumers

5

FACEBOOK, INC.'S RENEWED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
MASTER CASE NO. 3:15-CV-03747-JD & CASE NO. 3:16-CV-00937-JD

In short, the Ninth Circuit (a) recognized only one concrete interest protected by FCRA—its prohibition against the unlawful dissemination of incorrect information in consumer reports; (b) disavowed any conclusion that the mere "prepar[ation]" of an inaccurate report could result in a concrete harm; and (c) noted that if the plaintiff had instead relied on FCRA's notice provisions, that circumstance would have "present[ed] great difficulty for his standing argument."

These conclusions align with out-of-Circuit cases decided since the Supreme Court issued *Spokeo I*: Courts have been willing to entertain privacy-related lawsuits only when they implicate *specific* privacy interests—like the protection against "untruthful disclosures" and "dissemination of private information"—that bear directly on a person's livelihood, reputation, or mental state. In *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017), for example, the plaintiff brought a claim based on the defendant's failure to destroy the plaintiff's personal information within the time period mandated by the Cable Communications Policy Act. The court concluded that there was "no indication of any violation of the plaintiff's privacy because there [wa]s no indication that [the defendant had] *released, or allowed anyone to disseminate*, any of the plaintiff's personal information in the company's possession," or "even [ ] that there [wa]s a *risk* of such leakage." *Id.* at 912 (first emphasis added). The court therefore affirmed the dismissal of the case for lack of Article III standing. *Id.* at 913.[5]

Plaintiffs here have invoked no such interest. We recognize that this Court has found that the BIPA statute, taken as a whole, has a "broad purpose of protecting privacy in the face of

---

to request reports); *Spokeo I*, 136 S. Ct. at 1545-46, 1550 ("even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate" and there would be no standing).

[5] *See also Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016) (no standing where plaintiff "allege[d] only that [the defendant] violated a duty to destroy personally identifiable information by retaining certain information longer than the company should have kept it," and did "not allege that [the defendant] disclosed the information to a third party, that any outside party ha[d] accessed the data, or that [the defendant] used the information in any way during the disputed period"); *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016) ("naked assertion" that the plaintiffs' zip codes were unlawfully "requested and recorded without any concrete consequence" did not support standing).

emerging biometric technology." *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1172 (N.D. Cal. 2016).[6] But that leaves open the question of what, if any, *concrete* privacy interests are protected by BIPA. BIPA *does* contain provisions that preclude private entities from "disclos[ing] . . . or otherwise disseminat[ing] a person's . . . biometric identifier," and from "sell[ing], leas[ing], trad[ing] or otherwise profit[ing] from a person's . . . biometric identifier," without meeting certain requirements. 740 ILCS 14/15(c), (d). But plaintiffs do not invoke those provisions: they rely solely on the sections of BIPA regulating the mere *collection* and *retention* of biometric data—its requirements that private entities (1) give notice and obtain consent from a consumer before collecting his biometric data, and (2) maintain a written policy for destruction of such data. *See id.* 14/15(a), (b); pp. 2-3 *supra*. These interests bear no relationship to those that have traditionally served as a basis for suit. *See Spokeo II*, 867 F.3d at 1116 nn.2-3; Def. Standing MTD at 10-13.

That is why two federal district courts have dismissed BIPA suits that likewise relied only on the notice-and-consent sections of the statute. In *McCollough v. Smarte Carte, Inc.*, 2016 WL 4077108 (N.D. Ill. Aug. 1, 2016), the plaintiff claimed that the defendant had collected her fingerprints in violation of BIPA's notice-and-consent requirements. *Id.* at *1. The court found it "difficult to imagine" how that violation "could work a concrete harm" absent an "allegation that [the plaintiff's biometric] information was *disclosed or at risk of disclosure*." *Id.* at *3-4 (emphasis added). Because the plaintiff had made no such claim, she "ha[d] alleged [only] the sort of bare procedural violation that cannot satisfy Article III." *Id.* at *4.

Next, in *Vigil v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 3d 499 (S.D.N.Y. 2017), Judge Koeltl dismissed a claim that a software company had violated BIPA by collecting biometric data as part of a video game. *Id.* at 502. Applying the very test adopted by the Ninth Circuit in *Spokeo II*, the court explained that a statutory violation can "manifest concrete injury

---

[6] Facebook maintains that BIPA was not intended to address "emerging biometric technology" in general; the General Assembly intended to regulate the use of biometric technology only in the context of "financial transactions and security screenings." 740 ILCS 14/5(a); *see* Def. Rule 12(b)(6) MTD (Dkt. 69) at 10-15.

where Congress conferred [a] procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a risk of real harm to that concrete interest." *Id.* at 508-09 (quoting *Strubel*, 842 F.3d at 190). Judge Koeltl found that "[t]he only concrete interest protected by the BIPA is biometric data *protection*," not merely "an individual's right to privacy in [the possession of his] biometrics." *Id.* at 510, 514 (emphasis added). And because there was "no allegation that [the defendant] ha[d] disseminated or sold the plaintiffs' biometric data to third parties," the case did not implicate BIPA's "data protection goal." *Id.* at 511, 513. The same is true here; plaintiffs' claims should be dismissed for this reason alone.

## II.   PLAINTIFFS ALLEGE NO REAL-WORLD HARM.

Even if plaintiffs had alleged a concrete statutory interest, their claims would still have to be dismissed for failure to satisfy *Spokeo II's* second prong:  they have claimed no "actual[] harm, or . . . material risk of harm, to [that] interest[]." *Spokeo II*, 867 F.3d at 1113. Their complaints do not claim that they have suffered a real-world harm of *any* kind.

In *Spokeo II*, the Ninth Circuit relied heavily on the plaintiff's "*specific alleg[ations]*" of actual harm to the concrete interest that the court found to be protected by FCRA. *Id.* at 1116 (emphasis added). In addition to alleging various inaccurate information that the defendant had disclosed about him (*i.e.*, the statutory violation), the plaintiff claimed "that he [wa]s out of work and looking for a job," and that he suffered from "*anxiety, stress, concern, and/or worry about his diminished employment prospects as a result*" of the defendant's conduct. *Id.* at 1117 (emphasis added) (internal quotation marks omitted). In other words, the plaintiff alleged a statutory violation *plus* a harmful result.

The same was true in the other post-*Spokeo I* Ninth Circuit cases that have found Article III standing. In *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017), the court held that the plaintiff had "allege[d] more than a bare procedural violation" of FCRA because he claimed that he "was *confused* by the inclusion of [a] liability waiver with [a job application] and *would not have signed it* had it contained a sufficiently clear disclosure." *Id.* at 499 (emphasis added). And in *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017), the plaintiff alleged a

violation of a statute that caused him "*actual harm*" by "disturb[ing] the [plaintiff's] solitude." *Id.* at 1043 (emphasis added).

The plaintiffs here have wholly failed to claim the "plus" factors that the Ninth Circuit deemed critical in *Spokeo II*, *Syed*, and *Van Patten*. Apart from marching through the claimed violations of BIPA (*see* Compl. ¶¶ 60-71), the complaints assert only two abstract theories that could possibly relate to injury. Neither is close to sufficient for standing.[7]

First, three of the four plaintiffs (although not Mr. Gullen) claim that Facebook "misappropriated the value of [their] biometric identifiers." Compl. ¶¶ 37-38, 44-45, 51-52. This theory fails because the complaints never explain how any value of plaintiffs' data was *diminished* by Tag Suggestions: They do not claim that they *could* sell their alleged biometric identifiers, that they *would* sell them, or, most critically, that the buyers would now pay *less* for their identifiers because of Facebook's conduct. Def. Standing MTD at 6-8; Def. Standing Reply at 2-4. This Court agreed at oral argument that plaintiffs' theory "simply cannot be right." 10/27/2016 Hr'g Tr. at 14; *see also id.* at 15 ("How is Facebook using [plaintiffs' likenesses] for commercial purposes? It's a free service."); *id.* at 16 ("That argument's not going to help you."); *id.* at 17 ("I don't personally believe that my biometrics are in any way monetizable or valuable."). The *Vigil* court rejected a similar argument: "[A]ny value to [the defendant] is irrelevant so long as [it] takes no action that diminishes the value of the plaintiffs' likeness." 235 F. Supp. 3d at 516. And the Seventh Circuit deemed this argument "gibberish" in *Gubala*. 846 F.3d at 913.[8]

---

[7] In their original opposition to Facebook's Rule 12(b)(1) motion, plaintiffs also argued that they had suffered an "informational injury" by virtue of Facebook's alleged failure to "disclos[e] certain information" required under BIPA. Pl. Standing Opp'n at 3-4. At oral argument, the Court agreed with Facebook (*see* Def. Standing Reply at 5-7) that the "foundation" of the cases recognizing such harms was that "the plaintiff had a right to get certain information" that was "unfairly denied"; a state legislature cannot "grant or define the parameters of this Court's jurisdiction" simply by creating a notice requirement. 10/27/2016 Hr'g Tr. at 25. As discussed above (at 5-6), *Spokeo II* confirms the Court's conclusion. *See* 867 F.3d at 1116 n.2; *see also Vigil*, 235 F. Supp. 3d at 513 (BIPA "is not akin to a statute where the right-to-information is a concrete interest in-of-itself"); *McCollough*, 2016 WL 4077108, at *3.

[8] *See also Braitberg*, 836 F.3d at 931 (no standing where plaintiff made no "plausible allegation that [defendant's] mere retention of the information caused any . . . harm to the value

9

Second, plaintiffs conclusorily allege that Facebook "violated" their "privacy rights." Compl. ¶¶ 5, 31.  Of course, "rights' are not a type of injury by itself"; "the plaintiff must also allege that she has been injured by the violation." *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 882 (N.D. Ill. 2014).  Unlike in *Spokeo II*, *Syed*, and *Van Patten*, the plaintiffs here do not allege that Facebook's mere collection of their biometric data *harmed* their "privacy" interests—either by causing them emotional harm or by materially affecting their reputations, livelihoods, or relationships.

It is clear why plaintiffs cannot claim any real-world harm stemming from the alleged violations of BIPA's notice-and-consent provisions:  the consolidated plaintiffs *received* notice that Facebook would apply facial-recognition software to their photos for the purpose of suggesting tags, and they do not—because they cannot—allege that Facebook's alleged failure to provide *more* or *different* notice would have caused them to do anything differently.  The *Vigil* court found this to be dispositive:  the plaintiffs had affirmatively permitted the defendant to use their face scans for video game play, 235 F. Supp. 3d at 505, but alleged that this consent was insufficient under BIPA because the defendant "did not specifically disclose that [the plaintiffs'] faces constituted biometrics."  *Id.* at 513.  The court concluded that "[e]ven without fully compliant notice and consent, no concrete BIPA interest can be harmed so long as the private entity only uses the biometrics collected as both parties intended."  *Id.* at 514.

So too here.  The Court has already held that the *In re Facebook* plaintiffs "assented to the user agreement when they signed up for Facebook" and also "agreed to the current user agreement."  *Facebook Biometric*, 185 F. Supp. 3d at 1166-67.  Facebook's user agreement states that "by using or accessing Facebook Services, you agree that [Facebook] can collect and use . . . content and information in accordance with the Data Policy as amended from time to

---

of that information"); *In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) ("[I]njury-in-fact . . . requires more than an allegation that a defendant profited from a plaintiff's personal identification information."); *Low v. LinkedIn Corp.*, 2011 WL 5509848, at *1-2, *5 (N.D. Cal. Nov. 11, 2011) (plaintiff failed to explain "how he was deprived of the economic value of [his] personal information") (internal quotation marks omitted).

10

FACEBOOK, INC.'S RENEWED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
MASTER CASE NO. 3:15-CV-03747-JD & CASE NO. 3:16-CV-00937-JD

1  time."  Statement of Rights and Responsibilities (Ex. A), *available at* https://www.facebook.com/legal/terms.  Facebook's Data Policy states:  "We also use information we have to provide shortcuts and suggestions to you.  For example, we are able to suggest that your friend tag you in a picture by comparing your friend's pictures to information we've put together from your profile pictures and the other photos in which you've been tagged. If this feature is enabled for you, you can control whether we suggest that another user tag you in a photo using the 'Timeline and Tagging' settings."  Data Policy (Ex. B), *available at* https://www.facebook.com/full_data_use_policy.  The Data Policy also explains:  "We store data for as long as it is necessary to provide products and services to you and others, including those described above.  Information associated with your account will be kept until your account is deleted, unless we no longer need the data to provide products and services."  *Id.*

Thus, the *In re Facebook* plaintiffs knew that Facebook was analyzing their photos so that they could be identified in new photos uploaded by their friends, for the purpose of suggesting tags—the precise conduct and purpose alleged in the complaint.  *See* Compl. ¶ 3 ("Tag Suggestions functions by scanning photographs uploaded by the user and then identifying faces appearing in those photographs.  If Tag Suggestions recognizes and identifies one of the faces appearing in the photograph, Facebook will suggest that individual's name or automatically tag them.").  There is no allegation that Facebook used plaintiffs' data for any other purpose. Even if plaintiffs were correct that Facebook failed to comply with BIPA's technical notice and consent provisions (which Facebook does not concede), Facebook used the plaintiffs' data only "as both parties intended."  *Vigil*, 235 F. Supp. 3d at 514.  Accordingly, there is no concrete harm.[9]

As this Court explained, plaintiffs' "complaint doesn't really say invasion of privacy." 10/27/2016 Hr'g Tr. at 17.  And even if it did, that would not be sufficient to establish standing.

---

[9]  Although Mr. Gullen did not agree to Facebook's terms (because he has never used Facebook), his inability to show harm is even starker.  Because Facebook does not create templates, suggest tags, or store any facial-recognition information about non-users, no data on Mr. Gullen can even conceivably be disclosed to third parties.

11
FACEBOOK, INC.'S RENEWED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
MASTER CASE NO. 3:15-CV-03747-JD & CASE NO. 3:16-CV-00937-JD

Courts have recognized standing on the basis of privacy violations, but only where the plaintiffs make at least *some* attempt to allege real-world harm to a concrete privacy interest. Plaintiffs' vague incantation of "privacy rights" is just a restatement of their claim that BIPA was violated. These cases should be dismissed.

## CONCLUSION

The Court should dismiss the complaints for lack of subject matter jurisdiction.

Dated: September 28, 2017

MAYER BROWN LLP

By: */s/ John Nadolenco*
     John Nadolenco
     Lauren R. Goldman

*Counsel for Defendant Facebook, Inc.*