Joel H. Bernstein (Admitted *pro hac vice*)
jbernstein@labaton.com
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
Tel: 212.907.0700
Fax: 212.818.0477

Shawn A. Williams (213113)
shawnw@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Tel: 415.288.4545
Fax: 415.288.4534

Jay Edelson (Admitted *pro hac vice*)
jedelson@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for In re Facebook Biometric Info. Plaintiffs and the Putative Class*

[Additional counsel appear on the signature page.]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| | Master Docket No. 3:15-cv-3747-JD |
| *In re Facebook Biometric Information Privacy Litigation* | **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| | Date: February 16, 2018<br>Time: 10:00 a.m.<br>Location: Courtroom 11 |
| | Hon. James Donato |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 2

ARGUMENT ............................................................................................................................. 5

I.    The proposed Class and Subclass are sufficiently numerous ...................................... 6

II.   Common questions predominate over individual issues for the claims of the Class
      and Subclass ............................................................................................................... 8

      A.    Each element of the Class's prima facie case presents a common question .... 8

      B.    Issues about territorial application of the BIPA present common questions .. 12

III.  The proposed named plaintiffs are typical of the proposed Class ............................. 14

IV.   The proposed named plaintiffs will adequately represent the Class........................... 14

      A.    The named plaintiffs are adequate................................................................ 14

      B.    Proposed class counsel is adequate ............................................................... 15

V.    A class action is a superior method of resolving the controversy.............................. 17

CONCLUSION ........................................................................................................................ 18

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Akaosugi v. Benihana Nat'l Corp.*,
    282 F.R.D. 241 (N.D. Cal. 2012) ................................................................6

4

*Amgen, Inc. v. Connecticut Retirement Plans & Trust Funds*,
    568 U.S. 455 (2013) ..........................................................................6, 10

5

6

*Avery v. State Farm Mut. Auto Ins. Co.*,
    835 N.E.2d 801 (Ill. 2006) ...............................................................12, 13

7

8

*Beall Bros. Supply Co. v. Industrial Comm'n*,
    173 N.E.64 (Ill. 1930) .....................................................................12

9

10

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) .............................................................7

11

*Califano v. Yamisaki*,
    442 U.S. 682 (1979) ........................................................................1

12

13

*Chinatown Neighborhood Ass'n v. Harris*,
    794 F.3d 1136 (9th Cir. 2015) ..........................................................13

14

15

*Ellsworth v. US Bank, N.A.*,
    2014 WL 2734953 (N.D. Cal. June 13, 2014) ......................................11

16

17

*In re Facebook Biometric Info. Privacy Litig.*,
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) ..............................................13

18

19

*Gold v. Lumber Liquidators, Inc.*,
    2017 WL 5513641 (N.D. Cal. Nov. 15, 2017) ......................................14

20

*Graham v. Pyramid Healthcare Solutions, Inc.*,
    2017 WL 2799928 (M.D. Fla. June 28, 2017) .....................................12

21

22

*Greater Los Angeles Ass'n for the Deaf v. CNN Int'l*,
    742 F.3d 414 (9th Cir. 2014) ............................................................13

23

24

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..........................................................14

25

26

*Hanon v. Dataprods. Corp.*,
    976 F.2d 497 (9th Cir. 1992) ............................................................14

27

*Landis v. Marc Realty, LLC*,
    919 N.E.2d 300 (Ill. 2009) ...............................................................5

28

*Larson v. Trans Union LLC*,
    2015 WL 3945052 (N.D. Cal. June 26, 2015) ................................................................12

*Makaeff v. Trump Univ. LLC*,
    2014 WL 688164 (S.D. Cal. Feb. 21, 2014) ....................................................................8

*Milbourne v. JRK Residential Am., LLC*,
    2016 WL 1071571 (E.D. Va. Mar. 15, 2016) ................................................................11

*Nitsch v. Dreamworks Animation SKG Inc.*,
    315 F.R.D. 270 (N.D. Cal. 2016) ..................................................................................8

*Ochoa v. McDonald's Corp.*,
    2016 WL 3648550 (N.D. Cal. July 7, 2016) .............................................................8, 10

*Rocky Mountain Farmers Union v. Corey*,
    730 F.3d 1070 (9th Cir. 2013) ....................................................................................13

*Six (6) Mexican Workers v. Ari. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ....................................................................................18

*Soares v. Flowers Foods, Inc.*,
    320 F.R.D. 464 (N.D. Cal. 2017) ................................................................................17

*In re TCT-LCD (Flat Panel) Antitrust Litig.*,
    267 F.R.D. 583 (N.D. Cal. 2010) ................................................................................15

*Torres v. Mercer Canyons, Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ....................................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...........................................................................................6, 8, 10

*In re Yahoo Mail Litig.*,
    308 F.R.D. 577 (N.D. Cal. 2015) ..............................................................................6, 7

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ....................................................................................18

**Statutes**

740 Ill. Comp. Stat. 14 ..................................................................................... *passim*

735 Ill. Comp. Stat. 5/13-202 .......................................................................................5

735 Ill. Comp. Stat. 5/13-205 .......................................................................................5

1

Fed. R. Civ. P. 23 ........................................................................................ *passim*

2

## Secondary Sources

3

"Average number of uploaded and linked photos of Facebook users as of January 2011, by
gender," https://goo.gl/RTmwr2 (accessed Dec. 8, 2017) ...................................6

4

5

Facebook, Inc., Registration Statement (Form S-1) (Feb. 1, 2012)............................2, 6

6

Internet World Stats, "United States," https://goo.gl/jLmMhk (accessed Dec. 8, 2017) ...............6

7

Josh Constine, TechCrunch, "Facebook now has 2 billion monthly users…and responsibility,"
https://goo.gl/RVfMai (June 27, 2017) ...........................................................2

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

Plaintiffs' claims in this case under the Illinois Biometric Information Privacy Act ("BIPA") center on fact-finding regarding the operation of facial-recognition software that remained materially unchanged over a period of years, and on the legal significance of contractual language that likewise remained unchanged over that same period. This is the type of situation that renders class treatment "peculiarly appropriate." *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979).

In 2010 Defendant Facebook, Inc. ("Facebook"), introduced a new feature on its omnipresent social-networking site: Tag Suggestions. Facebook has for many years allowed users to upload photos to its social-media platform. Before 2010 users could manually "tag" people—that is, identify them as appearing—in photos uploaded to Facebook. ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Facebook never asked for permission before enabling the feature for any of its users, and included only vague language discussing tag suggestions in its privacy policy.

Thus, to facilitate its tag-suggestions feature, Facebook not only scans the faces that appear in photos uploaded to its servers, but also stores information about the faces of nearly every one of its users. The threat this kind of database poses to individual privacy poses precisely the concerns that motivated the Illinois legislature to enact the BIPA, 740 Ill. Comp. Stat. 14. As the legislature found, "biometrics are unlike other unique identifiers," in particular because they can't be changed. *Id.* § 5(c). "Therefore, once [an individual's biometric data is] compromised, the individual has no recourse." *Id.* Special information, the legislature concluded, requires special protection.

Plaintiffs Adam Pezen, Carlo Licata, and Nimesh Patel contend that Facebook's decisions to implement its tag suggestions feature without clearly disclosing how it worked and

to automatically enroll all Facebook users in the program violated the fundamental protections codified in the BIPA. Resolution of the merits of that claim is for another day. For present purposes, the critical point is that since June 2011(by which point nearly all Facebook users were enrolled in tag suggestions), the operation of Facebook's facial-recognition technology and the content of the disclosures it made to users and the public are essentially unchanged. Plaintiffs therefore seek to certify a class of Facebook users who live in Illinois whose face appears in a photo uploaded to Facebook after June 7, 2011, and a subclass of Illinois residents for whom Facebook has a stored face template that was created after that same date. The critical questions at issue in this lawsuit—whether Facebook's facial-recognition software generates biometric identifiers as that term is defined in the BIPA, and whether Facebook's disclosures about its program sufficed under the statute—will be answered the same way for each individual in the proposed class. Accordingly, Plaintiffs move the court to certify the class and subclass described above, and appoint them as class and subclass representatives, and their lawyers as class counsel.

## BACKGROUND

Facebook is a ubiquitous social-networking platform, with more than 2 billion monthly active users. Josh Constine, TechCrunch, "Facebook now has 2 billion monthly users…and responsibility," https://goo.gl/RVfMai (June 27, 2017). Facebook's platform encourages individuals to share their lives, and individuals fill their Facebook pages with information about themselves, generating reams of data for Facebook to mine, sort, aggregate, disaggregate, and sell. Individuals also post scores of photos on Facebook; according to Facebook's securities registration statement, "more than 250 million photos *per day* were uploaded to Facebook in the three months end[ing] December 31, 2011." Facebook, Inc, Registration Statement (Form S-1), at 74 (Feb. 1, 2012).

Beginning with a small user group in December 2010, and then for nearly all users beginning June 7, 2011 (Dkt. 169, at 1; *see* Exh. 1), Facebook has mined these photos for use in its facial-recognition software. ███████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████   Exh. 2, Excerpts

1   from the Deposition of Omry Yadan ["Yadan Dep."] 40:6-15, 66:3-5.)) ██████████

2   ████████████████████████████████████████████████████

3   ██████

4   ████████████████████████████████████████████

5   ████████████████████████████████████████████████

6   ████████████████████████████████████████████████

7   ████████████████████████████████████████████████

8   ██████████████████████████████████████████

9   ███████████████████████████████████████████

10  ████████████████████████████████████████████████

11  █████████████████████████████████████████████████

12  ███████████████████████████████████████████████

13  ███████████████████████████████████████████████

14  █████████████████████████████████████████████████

15  ██████████████████████████████████████████████

16  ████████████████████

17  ██████████████████████████████████████████

18  ████████████████████████████████████████████████

19  ██████████████████████████████████████

20  ████████████████████████████████████████

21  ██████████████████████████████████████████████

22  █████████████████████████████████████████████████

23  ██████████████████████████████████████████

24  ██████████████████████████████████████████████

25  ███████████████████████████████████████

26  ████████████████████████████████████████████████

27  ████████████████████████████████████████████████

28  █████████████████████████████████████████████████

1 
2
3
4
5
6
7
8
9
10
11 Perhaps not surprisingly, then, Facebook's user agreement (variously called its "Terms of
12 Service," "Terms of Use," or "Statement of Rights and Responsibilities") says nothing about the
13 functioning of tag suggestions or its implications for user privacy.
14
15
16
17
18
19
20
21
22
23 That language appears in the Data Policy to this day. A user is not required or
24 asked to acknowledge any other disclosures before using Facebook's services or being
25 automatically included in the Tag Suggestions program.
26 Plaintiffs Adam Pezen, Carlo Licata, and Nimesh Patel contend that the operation of
27 Facebook's facial-recognition technology, combined with the minimal disclosures made in the
28 privacy policy, violates Illinois's Biometric Information Privacy Act, 740 Ill. Comp. Stat. 14.

1   The BIPA regulates the collection and retention of the biometric information of Illinois citizens

2   in precisely this type of situation. The law's passage was spurred by the impending bankruptcy

3   of a company, Pay by Touch, that had developed a grocery-store checkout system that used

4   customers' fingerprints to help streamline the payment process. (Dkt. 112, at 127:3-14.) The

5   bankruptcy created the danger that the collection of fingerprint data amassed by Pay by Touch

6   would be sold as an asset, so the Illinois General Assembly enacted the BIPA to ensure the

7   continued biometric privacy of Illinoisans. Recognizing the power of biometric information to

8   identify people, and the evolving understanding of the ways in which biometric identifiers can be

9   used, 740 Ill. Comp. Stat. 14/5, the General Assembly created several safeguards to help ensure

10  that Illinoisans can maintain control over their biometric information. As relevant here

11  companies may only collect information if they inform individuals up front what they are doing,

12  and obtain informed written consent to do so, 740 Ill. Comp. Stat. 14/15(b), and must establish

13  publicly available guidelines regarding when they will destroy that information, 740 Ill. Comp.

14  Stat. 14/15(a). Pezen, Licata, and Patel seek relief for Facebook's alleged violation of these two

15  statutory protections.

16                                    **ARGUMENT**

17      To pursue their claims, Plaintiffs propose the following Class and Subclass:

18      **Class:** All Facebook users living in Illinois whose face appeared in a photo
        uploaded to Facebook from Illinois between June 7, 2011, and the final
19      disposition of this action.[1]

20      **Subclass:** All people living in Illinois for whom Facebook has a stored "face
        template" that was created between June 7, 2011, and final disposition of this
21      action.[2]

22  _____

23  [1]   Carlo Licata, the first to file here, sued regarding the tag-suggestions technology on April 1,
    2015. *Licata v. Facebook, Inc.*, No. 15 C 4022, Dkt. 1, ¶ 1 (N.D. Ill. filed May 6, 2015) (notice
24  of removal). No specific limitations period applies to the BIPA, so it is governed by Illinois's 5-
    year residual statute of limitations. *See* 735 Ill. Comp. Stat. 5/13-205. Facebook has suggested
25  that it believes that 735 Ill. Comp. Stat. 5/13-202, the two-year statute of limitations applicable to
    civil actions under penal statutes, applies here. (Dkt. 169, at 25.) But the BIPA is not a penal
26  statute as that term is understood under Illinois law. *See Landis v. Marc Realty LLC*, 919 N.E.2d
    300, 307-08 (Ill. 2009) (explaining when a statute is "penal" under Illinois law).
27  [2]   Excluded from both the Class and Subclass are (1) any Judge of Magistrate Judge presiding
28  over the action, as well as members of their families, (2) Defendant, Defendant's subsidiaries,
    parents, successors, predecessors, and any entity in which the Defendant or its parents have a

_____

1    To proceed on behalf of a class, a plaintiff or plaintiffs must satisfy all the requirements

2    of Fed. R. Civ. P. 23(a), and the requirements of at least one part of Fed. R. Civ. P. 23(b). Here,

3    Plaintiffs must satisfy the predominance and superiority prongs of Fed. R. Civ. P. 23(b)(3). *Wal-*

4    *Mart Stores, Inc.v. Dukes*, 564 U.S. 338, 350 (2011). "The office of a Rule 23(b)(3) certification

5    ruling … is to select the method best suited to adjudication of the controversy fairly and

6    efficiently." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 460 (2013).

7    **I.     The proposed Class and Subclass are sufficiently numerous.**

8    Rule 23(a)(1) requires a proposed class to be "so numerous the joinder of all members of

9    is impracticable." Fed. R. Civ. P. 23(a)(1). That standard is generally met when the proposed

10   class contains at least 40 members. *Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241, 253

11   (N.D. Cal. 2012). "In determining whether numerosity is satisfied, the Court may consider

12   reasonable inferences drawn from the facts before it." *In re Yahoo Mail Litig.*, 308 F.R.D. 577,

13   589-90 (N.D. Cal. 2015).

14   Here, Facebook represented in 2011 that it had 161 million monthly active users from the

15   United States alone. Facebook, Inc., Reg. Stmt., at 44-45. If Illinois's share of these users is

16   proportional to its share of the U.S. population, then Facebook would have had an Illinois user

17   base of a little more than 6 million, a number that is sure to have grown since then. *See also*

18   Internet World Stats, "United States," https://goo.gl/jLmMhk (accessed Dec. 8, 2017) (reporting

19   that Illinois had more than 6.9 million Facebook users in March 2011). Most if not all of

20   Facebook's Illinois-based users likely had a photo of themselves uploaded from somewhere in

21   Illinois. And although many individuals may not have had enough tagged photos to generate a

22   face template in Facebook's database, in January 2011 (i.e., *before* Facebook implemented tag

23   suggestions for all users) the average user was tagged in 53 photos, far more than the 10 needed

24   to generate a face template. "Average number of uploaded and linked photos of Facebook users

25   as of January 2011, by gender," https://goo.gl/RTmwr2 (accessed Dec. 8, 2017). ████

26

27   controlling interest, and those entities' current and former employees, officers, and directors, (3)
     persons who properly and timely file a request for exclusion from the Classes, (4) persons who

28   have had their claims in this matter finally adjudicated or otherwise released, (5) counsel in this
     action, and (6) the legal representatives, successors, and assigns of any excluded person.

1

2
████████████████████████████████████████ (Exh. 8.) It is thus

3 reasonable to infer that the proposed Class has at least 40 members. *See Yahoo Mail*, 308 F.R.D.

4 at 590 (finding numerosity satisfied on bases of an "estimate" that there were hundreds of

5 thousands of class members).

6        Moreover, while the Ninth Circuit has squarely held that the feasibility (or lack thereof)

7 of identifying class members is generally not a reason to deny certification, *Briseno v. ConAgra*

8 *Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017), the proposed Class and Subclass present none

9 of the concerns that, *Briseno* acknowledged, might need to be addressed within the Rule 23

10 analysis. For instance, determining whether a face appears in a photo is a task that requires

11 minimal effort.

12

13

14

15

16

17

18

19

20

21

22

23

24

25        Facebook easily can confirm whether it has created a face template for an

26 individual who avers that she lives in Illinois.

27

28

**II.    Common questions predominate over individual issues for the claims of the proposed Class.**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has explained that commonality requires that a class's claims "must depend upon a common contention" which "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. In other words, the class must show not only that there are questions common to the class, but that those questions will generate answers common to the class. *Id.* A single common question suffices to satisfy this requirement. *Id.*

Fed. R. Civ. P. 23(b)(3) requires that common questions predominate over any individual questions. Commonality and predominance tend to overlap in ways that make them difficult to analyze separately. *See Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 287-88 (N.D. Cal. 2016). Indeed, as this Court has observed, the Supreme Court's recent explication of commonality leaves little to no work for the separate predominance requirement to do. *See Ochoa v. McDonald's Corp.*, 2016 WL 3648550, at *5 (N.D. Cal. July 7, 2016). The inquiry into whether common questions predominate "begins, of course, with the elements of the underlying cause of action." *Nitsch*, 315 F.R.D. at 288 (quotation omitted). Ultimately, though, "the inquiry contemplates a qualitative assessment," *id.*, that looks to whether the proposed class action can achieve "economies of time and expense," *Makaeff v. Trump Univ., LLC*, 2014 WL 688164, at *16 (S.D. Cal. Feb. 21, 2014).

**A.    Each element of the Class' prima facie cases presents common questions.**

Both the Class and Subclass press claims under sections 15(a) and (b) of the BIPA. The elements of those two BIPA claims are straightforward. Under 740 Ill. Comp. Stat. 14/15(b), an entity that "collect[s], capture[s], purchase[s], receive[s] through trade, or otherwise obtain[s] a person's or a customer's biometric identifier or biometric information" must first inform that person that the information is being collected and the reason for the collection, and receive a "written release" from the subject of the information. On this record, each element presents a common question.

First, does the information collected constitute a "biometric identifier"? *See* 740 Ill. Comp. Stat. 14/10 (defining "biometric identifier"). ████████████████████████ ████████████████████████████████████ ████████████████████████████████████

Specifically, plaintiffs contend that both the "face signature" and the "face template" constitute "scan[s] of face geometry" within the meaning of the BIPA, and are therefore biometric identifiers under that law. (The Class's claims center on the face signature, and the Subclass's on the face template.)

The evidence shows that resolution of these contentions will resolve an issue crucial to the claims of the class in one stroke, █████████████████████████ ██████████████████████████████ ████████████████████████████████ █████████████████████████████ ██████████████████████████████ ██████████████████████████████ ███████████████████████████ ██████████████████████████████ █████████████████████████████ ████████████████████████████████ ██████████████████████████████ ████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ████████████ ████████████████████ ████████████████████████████████ ████████████████████████████████

1    ████████████████████████████ The chance that an

2    individual in the proposed Class appears only in photos uploaded via one of these excluded

3    pathways seems vanishingly small, so the risk that an individual in the proposed Class truly lacks

4    a claim under the BIPA is trivially low. *See Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125,

5    1137 (9th Cir. 2016). (And this distinction is immaterial to the Subclass's claims.)

6          On the merits, Facebook is sure to object, as it did in its earlier briefing, that the fact that

7    both pieces of information were generated from a photograph is dispositive of the claims of both

8    Classes, because "photos" are excluded from the statutory definition of "biometric identifiers."

9    (*See* Dkt. 69, at 10-13.) That's no objection to class certification, however. Even if Facebook is

10   correct, the argument simply exposes a "fatal similarity" among class members, *Amgen*, 568 U.S.

11   at 471, that does not stand in the way of class certification, *Ochoa*, 2016 WL 3648550, at \*4.

12   And because the software operated in materially the same way at all times with respect to all

13   proposed members of both Classes, any other arguments Facebook might raise about the

14   software's operation have the same effect: The factfinder's choice between Plaintiffs' and

15   Defendant's characterization of Facebook's face-scanning software is a common question with a

16   common answer applicable to the Class as a whole. These disputes, therefore, can be resolved for

17   every class member "in one stroke." *Wal-Mart*, 564 U.S. at 350.

18         Second, does Facebook adequately inform class members that it is collecting and storing

19   biometric identifiers? Section 15 of the BIPA requires entities that collect such information to

20   inform the subject of the collection "that a biometric identifier or biometric information is being

21   collected or stored" and "the specific purpose and length of term for which a biometric identifier

22   or biometric information is being collected, stored, and used." 740 Ill. Comp. Stat. 14/15(b)(1),

23   (2). This issue, too, can be resolved for all members of each Class in one stroke. The evidence

24   shows that when Facebook users (and, thus, Class members) were asked to assent the Facebook's

25   user agreement (assent that was then used to opt individuals into the tag-suggestions program),

26   the only information relevant to this issue was available in Facebook's privacy policy. As

27   explained above, the relevant provisions of the privacy policy have remained the same

28   throughout the class period. Because of these uniform disclosures, resolution of this issue is

analogous to class actions dealing with form contracts. Courts "routinely certify" cases involving the interpretation of "form contracts and standardized policies and practices." *Ellsworth v. US Bank, N.A.*, 2014 WL 2734953, at *20 (N.D. Cal. June 13, 2014). When form contracts contain standard disclosures central to a class's claim, a factfinder's determination whether those disclosures comply with the defendant's legal obligations resolves in one stroke that issue for all class members. *See Milbourne v. JRK Residential Am., LLC*, 2016 WL 1071571, at *5 (E.D. Va. Mar. 15, 2016).

Finally, does Facebook obtain "written releases" from class members? *See* 740 Ill. Comp. Stat. 14/ 15(b)(3). The statute defines a "written release" as "informed written consent," 740 Ill. Comp. Stat. 14/10, so this third element of the claim is closely related to the second element, and as before can be resolved for all class members in a single proceeding. It is undisputable that since its inception the Tag Suggestions feature has been an "opt out" program, ██████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████ Plaintiffs assert that Facebook's decision to *automatically* enroll all users in the program, without obtaining any affirmative assent to the collection of their biometrics, cannot possibly constitute a "written release" under the statute. Either way, as with the question of whether class members were adequately informed, the language of the terms of service has remained materially identical throughout the class period, so the issue presents a common question for members of both proposed Classes.

Plaintiffs' second claim arises under § 15(a). That provision of the BIPA requires "a private entity in possession of biometric identifiers or biometric information" to "develop a written policy … establishing a retention schedule and guidelines for permanently destroying biometric identifiers or biometric information." *Id.* For the reasons stated above, resolution of the antecedent question of whether the information collected and stored by Facebook qualifies as a

1    "biometric identifier" is a common question with a common answer. And, as before, because the

2    question of whether Facebook made available to the public a written policy regarding the

3    retention and destruction of biometric identifiers or biometric information turns on the legal

4    significance of standard disclosures, the question is one that can be answered for all members of

5    each proposed Class in a single merits proceeding. *See, e.g.*, *Larson v. Trans Union LLC*, 2015

6    WL 3945052, at \*10 (N.D. Cal. June 26, 2015); *Graham v. Pyramid Healthcare Solutions, Inc.*,

7    2017 WL 2799928, at \*5 (M.D. Fla. June 28, 2017).

8    **B.    Issues about territorial application of the BIPA present common questions.**

9    Plaintiffs also expect that Facebook, like defendants in similar cases, including one

10   defended by the same lawyers, *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846 (N.D. Ill. Sept. 15,

11   2017), will object to certification of the class on grounds of extraterritoriality and the "dormant"

12   Commerce Clause. (Dkt. 169, at 30.) These companion defenses ask two questions: (1) Is this

13   a situation in which the BIPA was intended to apply?, and (2) Does application of the law here

14   override the policy choices of other states? Plaintiffs' present two simple theories: In order to

15   comply with the substantial policy of Illinois embodied by the BIPA, Facebook can either, as it

16   has done elsewhere, turn off tag suggestions in Illinois (as the Class contends), or it can give

17   Illinoisans the right to opt in to the program by not creating face templates until Illinois residents

18   affirmatively provide their informed consent (as the Subclass contends). Both theories permit

19   resolution of these issues in one stroke.

20   The question of extraterritoriality is one of legislative intent, to be informed by: (1) any

21   relevant statutory language, (2) the legislative history, and (3) the rule against giving statues

22   extraterritorial effect. *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 851-53 (Ill.

23   2006). *Avery* also makes clear that a law does not necessarily apply extraterritorially even if

24   some relevant conduct occurs outside of Illinois. *Id.* at 852-54 (concluding that the Illinois

25   Consumer Fraud Act governed transactions occurring "primarily and substantially" in Illinois,

26   even if the ultimate injury is not suffered in Illinois); *Beall Bros. Supply Co. v. Industrial*

27   *Comm'n*, 173 N.E. 64, 66 (Ill. 1930) (state law did not operate extraterritorially when it provided

28   remedy for injury suffered out of state because the parties entered into a contract in Illinois).

1    (And, in general, no question of extraterritoriality is presented by a state's decision to regulate a

2    commercial relationship in which one party is a resident of that state. *See Rocky Mountain*

3    *Farmers Union v. Corey*, 730 F.3d 1070, 1104 (9th Cir. 2013).)[3]

4           The legislative history of the BIPA makes two things clear: the General Assembly

5    intended that the Act would (1) "be applicable to private entities doing business in Illinois," and

6    (2) address the "very serious need [for] protections for the citizens of Illinois when it comes to

7    biometric information." 95th Ill. Gen. Assem., House Proceedings, 276th Legislative Day, May

8    30, 2008, at 249 (Statement of Rep. Ryg). And "by its express terms, BIPA manifests Illinois's

9    substantial policy of protecting its citizens' right to privacy in their personal biometric data," *In*

10   *re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1169 (N.D. Cal. 2016),

11   particularly in interactions with "major national corporations," 740 Ill. Comp. Stat. 14/5(b).

12   Given these background principles, it is clear that extraterritoriality presents a common question

13   because every member of the proposed Class and Subclass stand in the same relationship with

14   Facebook and Illinois in the crucial ways identified by the legislature.

15          The analysis under the Commerce Clause is similar. "A state may regulate commercial

16   relationships in which at least one party is located in [that state]." *Chinatown Neighborhood*

17   *Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir. 2015) (quotation omitted); *see Rocky Mountain*

18   *Farmers*, 730 F.3d at 1103-04 (same, noting that a state "may regulate with reference to local

19   harms"). Similarly, activity that occurs on the Internet is not immune from state-level regulation

20   if the defendant can identify where an individual is located. *Greater Los Angeles Ass'n for the*

21   *Deaf v. CNN Int'l*, 742 F.3d 414, 433 (9th Cir. 2014). And as discussed above, common evidence

22   shows that Facebook has that ability. Thus, any dormant commerce clause analysis will be

23   resolved in the same way for all members of the proposed Class and Subclass.

24

25

26

---

27   [3]   *Avery*'s "primarily and substantially" test is often used as shorthand for distinguishing in-
     state and out-of-state conduct in actions under Illinois law. But that is simply the line the court
28   drew for the Consumer Fraud Act. *Avery* does not necessarily answer the question of what it
     means for *other* Illinois statutes to apply extraterritorially.

1    The evidence therefore shows that the claims of the class and subclass feature multiple

2    common questions—far more than the one required by Fed. R. Civ. P. 23(a)(2)—and that

3    resolution of these questions will substantially advance the litigation.

4    **III.    The proposed named plaintiffs are typical of the proposed Classes.**

5        Given these common questions, and the legal theories of the Classes, it is clear that

6    plaintiffs Nimesh Patel, Adam Pezen, and Carlo Licata are typical of both proposed Classes. *See*

7    Fed. R. Civ. P. 23(a)(3). Typicality requires that the claims of the proposed named plaintiffs arise

8    from the same course of conduct as the claims of the proposed class. *Ochoa*, 2016 WL 3648550,

9    at *4. Each is an Illinois resident. (Dkt. 40, ¶¶ 7-9.) Each has been tagged in more than 10

10   pictures on Facebook, and none has opted out of Tag Suggestions, ███████████████████

11   ████████████████████████████████████████████████████████████████████

12   ████████████████████████████   and each has reason to believe that at least one

13   photo showing their face was uploaded from Illinois. (Exh. 25, Declaration of Adam Pezen, ¶¶ 2-

14   4; Exh. 26, Declaration of Carlo Licata, ¶¶ 2-5; Exh. 27, Declaration of Nimesh Patel, ¶ 2.)

15   What's more, so far as the record shows, each plaintiff was asked for their assent to the same

16   user agreement and privacy policy as all other class members, so their claims won't stand or fall

17   on unique grounds. *See Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Because

18   these facts establish that Pezen, Licata, and Patel each have suffered the same injury arising from

19   the same course of conduct, they are typical of the proposed Class and Subclass.

20   **IV.    The proposed named plaintiffs will adequately represent the class.**

21       Fed. R. Civ. P. 23(a)(4) requires that each named plaintiff adequately represent the class.

22   Rule 23(a)(4) also encompasses a requirement that proposed Class Counsel be adequate to

23   represent the proposed class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998).

24   Both requirements are satisfied.

25       **A.    The named plaintiffs are adequate.**

26       First, each proposed named plaintiff will adequately represent the class. The adequacy

27   prerequisite generally guards against inter-class conflicts, or conflicts between the named

28   plaintiffs and absent class members. *See Gold v. Lumber Liquidators, Inc.*, 2017 WL 5513641, at

1   \*5 (N.D. Cal. Nov. 15, 2017). No such conflicts are present here. The claims of the entire class

2   are predicated on an identical course of conduct. The same type of biometric information was

3   allegedly collected from the named plaintiffs as from the absent Class and Subclass members.

4          The named plaintiffs also have demonstrated their commitment to vigorously prosecuting

5   the action. (*See* Patel Decl., ¶¶ 3-6; Exh. 28, Excerpts from the Deposition of Adam Pezen,

6   185:12-186:3; Exh. 29, Excerpts from the Deposition of Carlo Licata, 149:16-150:8.) Each

7   proposed representative has already sat for multiple depositions and responded to numerous

8   discovery requests, demonstrating their commitment to prosecuting this action. *See In re TFT-*

9   *LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 595 (N.D. Cal. 2010) ("Here, the plaintiffs

10  have searched for products and documents, provided answers to written discovery, given

11  deposition testimony, and followed the progress of this litigation through communication with

12  counsel, and have demonstrated their ability to serve as class representatives.").

13         **B.      Proposed class counsel is adequate.**

14         The three proposed representatives have each retained sophisticated counsel who bring a

15  wealth of experience to bear on this litigation, and who will vigorously prosecute the action on

16  behalf of the class. It is clear that each proposed class counsel is experienced and qualified.

17         Adam Pezen has retained Joel Bernstein and his colleagues at Labaton Sucharow LLP.

18  Attorneys at Labaton Sucharow have served as lead counsel in a number of complex civil cases,

19  including *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141

20  (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors,

21  and also secured a $473 million recovery in *In re Schering-Plough Corp./ENHANCE Securities*

22  *Litigation*, No. 08-cv-0397 (D.N.J.), and a $294.9 million recovery in *In re Bear Stearns Cos.,*

23  *Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.). Labaton's

24  successful representation of plaintiffs has not gone unnoticed, as the firm has been recognized on

25  *National Law Journal*'s Plaintiff's Hot List, as one of the Top 50 Elite Trial Firms (again by

26  *National Law Journal*), and as one of the Most Feared Plaintiff's Firms by *Law360*. (See Firm

27  Resume of Labaton Sucharow LLP, attached as Exhibit A to Exh. 30, Declaration of Joel H.

28  Bernstein.)

1      Carlo Licata has retained Jay Edelson and the firm of Edelson PC. Edelson PC is a

2  pioneer in privacy and technology class actions. Indeed, it was research by Edelson PC attorneys

3  that led to the filing of these lawsuits. *See* Fed. R. Civ. P. 23(g)(1)(A)(*i*). Edelson PC "has

4  regularly engaged in major complex litigation, and has extensive experience in consumer privacy

5  class action lawsuits, and has been appointed class counsel in similar cases." *In re LinkedIn User*

6  *Privacy Litig.*, 309 F.R.D. 573, 584 (N.D. Cal. 2015). Indeed, Edelson PC attorneys have been

7  appointed class counsel in some of the largest adversarially certified privacy class actions,

8  *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014); *Harris v. comScore,*

9  *Inc.*, 292 F.R.D. 579 (N.D. Ill. 2013). The firm has secured substantial recovery in several

10  consumer-privacy class actions, *e.g.*, *Birchmeier*, No. 12 C 4069 (N.D. Ill. ($76 million

11  settlement fund in TCPA class action); *Rojas v. CEC*, No. 10 C 5260 (N.D. Ill.) ($20 million);

12  *Harris*, No. 11 C. 5807 ($14 million recovered for improper data collection), and was the first

13  firm to settle any class action under the BIPA, *see Sekura v. L.A. Tan Enters., Inc.*, No. 15 CH

14  16694 (Cir. Ct. Cook Cnty., Ill.). And Jay Edelson has been called (appropriately) "tech's least

15  friended man." Conor Dougherty, *Jay Edelson, the Class-Action Lawyer Who May Be Tech's*

16  *Least Friended Man*, N.Y. Times (Apr. 4, 2015). Edelson PC also was recently named an

17  "Illinois Powerhouse" by *Law360*, the only Plaintiff's firm to earn that distinction. (See Firm

18  Resume of Edelson PC, attached as Exhibit A to Exh. 31, Declaration of Jay Edelson.)

19      Nimesh Patel has retained Robbins Geller Rudman & Dowd LLP.  Robbins Geller is

20  among the largest and most successful plaintiffs' firms in the United States, having recovered

21  more than $45 billion across many of the most significant class actions in history, for example,

22  *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644 (S.D. Tex. 2006) ($7

23  billion recovery); *Jaffe v. Household Int'l, Inc.*, No. 02-cv-5893 (N.D. Ill.) ($2.4 billion class

24  action trial judgment); *In re Trans Union Corp. Privacy Litigation*, No. 00-cv-4729 (N.D. Ill.)

25  ($75 million recovery in data privacy class action); and *Kehoe v. Fidelity Federal Bank and*

26  *Trust*, No. 03-80593 (S.D. Fl.) ($50 million recovery in data privacy class action).  Robbins

27  Geller also recently secured a $25 million recovery on behalf of Trump University students in

28  two class actions against President Donald J. Trump. *See Low v. Trump University LLC and*

*Donald J. Trump*, No. 10-cv-0940 GPC-WVG (S.D. Cal.); *Cohen v. Donald J. Trump*, No. 13-cv-2519-GPC-WVG (S.D. Cal.). Founding partner Paul Geller recently served in a leadership position on the Plaintiffs' Steering Committee for the Volkswagen "Clean Diesel" Emissions case, a committee called a "class action dream team," whose efforts helped recover over $17 billion for consumers, the largest consumer settlement in history. And Stuart Davidson currently serves in a leadership role for the *In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 16-MD-02752-LHK (N.D. Cal.). (*See* Firm Resume of Robbins Geller Rudman & Dowd, LLP, attached as Exhibit A to Exh. 32, Declaration of Shawn Williams.)

And not only are proposed class counsel separately qualified, but they have successfully coordinated their efforts in this case, resulting in superb representation for the putative class. The adequacy requirement is therefore satisfied.

## V.   A class action is a superior method of resolving the controversy.

Finally, Fed. R. Civ. P. 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." The rule also sets forth four criteria germane to this requirement. All counsel in favor of certification.

The first factor, individual class member's interest in individually controlling the action, Fed. R. Civ. P. 23(b)(3)(A), "only weighs against class certification where individual damages run high such that individual class members have a strong interest in making individual decisions on whether and when to settle." *Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464, 485 (N.D. Cal. 2017) (quotations omitted). That is not the case here: The statute provides liquidated damages of $1,000 or $5,000, depending on whether a defendant's violation of a plaintiff's privacy is negligent or reckless. 740 Ill. Comp. Stat. 14/20(1), (2). (This is the damages theory pressed by the putative representatives.) A plaintiff who has suffered monetary harm can elect compensatory damages, but discovery to date has not revealed any class member who might be entitled to more than the liquidated damages provided by statute. And a $1,000 or $5,000 recovery is dwarfed by litigation costs, like the need for costly expert testimony, such that individual class members have essentially no interest in prosecuting the action on their own.

The second factor, the extent and nature of other proceedings, Fed. R. Civ. P. 23(b)(3)(B), also weighs in favor of certification. The factor weighs against certification only if a number of similar suits already are proceeding. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001). But here, of course, all lawsuits against Facebook regarding their face-recognition technology were brought together in this court, and the related *Gullen* action is being litigated by an individual who is not a part of either proposed class.

Third, it is desirable to concentrate litigation in this forum. *See* Fed. R. Civ. P. 23(b)(3)(C). Indeed, it is practically inevitable that litigation of this type would be concentrated here: Facebook's choice-of-forum clause requires these cases to be litigated in northern California, and CAFA jurisdiction would provide a federal forum for any class action under the BIPA. At worst, this factor is neutral.

Finally, there should be no issues of manageability here. *See* Fed. R. Civ. P. 23(b)(3)(D). A class action may be unmanageable if individual issues would present administrative problems, if notice would be particularly cumbersome, or if the claims process would be especially unwieldy. *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1304 (9th Cir. 1990). But there are few, if any, individual issues, so it is unlikely that a trial will present any overwhelming practical or administrative issues. Notice should not be particularly cumbersome, because each class member can be contacted through Facebook. And because class members, as explained above, can be identified in large part using data maintained by Facebook, the claims process should be relatively straightforward.

## CONCLUSION

The Court should certify the proposed class, appoint Adam Pezen, Carlo Licata, and Nimesh Patel to represent the Class and Subclass, and appoint Labaton Sucharow LLP, Robbins, Geller Rudman & Dowd LLP, and Edelson PC as Class Counsel.

Respectfully submitted,

**ADAM PEZEN**, **CARLO LICATA**, and
**NIMESH PATEL**, individually and on behalf of all others similarly situated,

Dated: December 8, 2017

By: /s/ Rafey Balabanian
One of Plaintiffs' Attorneys

Jay Edelson (Admitted *pro hac vice*)
jedelson@edelson.com
Alexander G. Tievsky (Admitted *pro hac vice*)
atievsky@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian (SBN – 315962)
rbalabanian@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.234.5342
Fax: 415.373.9495

Shawn A. Williams (SBN – 213113)
shawnw@rgrdlaw.com
David W. Hall (SBN – 274921)
dhall@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Tel: 415.288.4545
Fax: 415.288.4534

Paul J. Geller (Admitted *pro hac vice*)
pgeller@rgrdlaw.com
Stuart A. Davidson (Admitted *pro hac vice*)
sdavidson@rgrdlaw.com
Mark Dearman (Admitted *pro hac vice*)
mdearman@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Tel: 561.750.3000
Fax: 561.750.3364

James E. Barz (Admitted *pro hac vice*)
jbarz@rgrdlaw.com Frank A. Richter (Admitted *pro hac vice*)
frichter@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP

200 S. Wacker, 31st Floor
Chicago, Illinois 60606
Tel: 312-674.4674

Travis E. Downs III (Admitted *pro hac vice*)
travisd@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, California 92101
Tel: 619.231.1058
Fax: 619.231.7423

Joel H. Bernstein (Admitted *pro hac vice*)
jbernstein@labaton.com
Corban S. Rhodes (Admitted *pro hac vice*)
crhodes@labaton.com
Ross M. Kamhi (Admitted *pro hac vice*)
rkamhi@labaton.com
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
Tel: 212.907.0700
Fax: 212.818.0477

*Counsel for In re Facebook Biometric Info.*
*Plaintiffs and the Putative Class*