MAYER BROWN LLP
John Nadolenco (SBN 181128)
350 South Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
jnadolenco@mayerbrown.com

Lauren R. Goldman (*pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2647
lrgoldman@mayerbrown.com

Counsel for Defendant Facebook, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FREDERICK WILLIAM GULLEN, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>FACEBOOK, INC.,<br><br>        Defendant. | Case No.: 3:16-CV-00937-JD<br><br>**FACEBOOK'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT BASED ON ILLINOIS' EXTRATERRITORIALITY DOCTRINE AND THE DORMANT COMMERCE CLAUSE**<br><br>Hon. James Donato<br><br>**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED** |

The *Gullen* action—brought by a plaintiff who does *not* use Facebook, and who seeks to represent a class of non-users—has all the problems of the *Facebook Biometric* action, and several additional critical flaws of its own. Facebook's main summary judgment brief demonstrates that each of the plaintiffs' claims fails under both Illinois' extraterritoriality doctrine and the Constitution's dormant Commerce Clause, because Facebook's facial-recognition analysis and its creation and storage of "templates"—elements essential to liability in this case—take place on its servers outside Illinois. That entitles Facebook to judgment in both cases. But in any event, the Court should grant summary judgment in *Gullen* for two additional reasons. First, Mr. Gullen's theory would require Facebook to disable facial recognition entirely, everywhere in the world. Second, there is only one photo of Mr. Gullen on Facebook that was subjected even to the preliminary steps of the facial-recognition process, and it was taken in Pennsylvania and uploaded from Michigan—a factual scenario that Mr. Gullen's counsel has conceded "may not be a violation of BIPA." This Court has already expressed skepticism about the merits of *Gullen*. Discovery has confirmed those concerns.

## ARGUMENT

If BIPA imposed liability on Facebook for applying its technology to *non-user* Illinois residents who appear in photographs, Facebook would have no choice but to adopt Illinois' policy *globally* and cease using facial recognition altogether. It would be blatantly unconstitutional to apply Illinois law in a manner that requires Facebook to discontinue a service that people around the world enjoy and find useful. *See, e.g.*, *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 339 (1989) (state statute violated dormant Commerce Clause because it "require[d] out-of-state shippers to forgo the implementation of competitive-pricing schemes in out-of-state markets"); *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1322 (9th Cir. 2015) (en banc) ("easily conclud[ing] that [a] royalty requirement . . . violate[d] the dormant Commerce Clause" because it "regulat[ed] out-of-state art sales"); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017) (dormant Commerce Clause issue depends in part on "what Google's burdens of compliance would actually be under [BIPA], if it were read in the way the Plaintiffs suggest").

|   |   |
|---|---|
| 1 | ████████████████████████████████████████████ |
| 2 | ████████████████████████████████████████████ |
| 3 | ███████████████████████████████; *see* Facebook Mot. for Summ. J. at 3-5. |

Because Facebook does not create, save, or store templates for non-users, ██████████ ████████████████████████████████████████████████. "Facebook's software works by analyzing all eligible images and then discarding its analysis of images that do not match existing templates on its servers." *Id.* ¶ 32. ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████.

There is a second problem: Even if it *were* possible for Facebook to determine whether a person in a photo was a non-user, it would not be possible to obtain that person's consent. Facebook has no way of identifying, much less contacting, non-users. To be sure, non-users can be manually tagged in photos uploaded by users, but such tags are entirely worthless as a means of identification. A non-user tag is unadorned text; it does not link to any profile, because non-users do not *have* profiles. Such a tag is not associated with the non-user's face or identity in any way; ████████████████████████████████████████████████████████ ███████████████████████████████. And non-users can be tagged with *any* text, from "Uncle Rick" to "My Best Pal" to "Guy with a Funny Hat." Even in the unusual case when a non-user is manually tagged with his real, full name (as Mr. Gullen conveniently was[1]), ████████████████████████████████████████████████████████████████ ███████████████████████████████ And Facebook does not store any identifying information about such a person. *Id.* ¶ 30.

The Court recognized this basic problem at a hearing in June 2016. It questioned Mr. Gullen's counsel at length on the matter, and received no satisfactory response:

---

[1] The photo was uploaded on May 20, 2015; three months later, on August 20, 2015, it was tagged "Frederick W. Gullen"; Mr. Gullen filed his original complaint 11 days after the photograph was tagged. FBBIPA_00044567 (Ex. 2 to Yadan Decl.); Yadan Decl. ¶ 28.

> THE COURT: How would the BIPA work? I mean, BIPA is a written consent statute. . . . Surely, you're not contending that under the BIPA, Facebook has to . . . proactively get the written consent of anybody who might show up in a Facebook photograph? I mean, *that would be patently unreasonable. So I . . . don't understand how a . . . written notification and consent statute can apply to people who are non-users. . . . How could it comply with BIPA short of requiring . . . every living human in the state of Illinois to give proactive written consent.* I mean, could it otherwise comply with BIPA?
>
> MR. HEDIN: It could disable the face scanning feature from all photographs uploaded from IP addresses . . . that correspond to the state of Illinois.
>
> THE COURT: In other words, just a ban in the program?
>
> MR. HEDIN: Possibly.
>
> THE COURT: So basically, in your view, BIPA would make it entirely illegal to do tagging? . . . *You're saying that BIPA would make it patently illegal with no exceptions to do tagging* . . . .

6/29/2016 Hr'g Tr. at 9-10 (emphases added). On November 30, 2017, the Court had a similar exchange with Mr. Gullen's counsel, and was once again offered a nonsensical argument:

> THE COURT: . . . [H]ow is Facebook supposed to reach [a non-user]? . . . Facebook can't alert 310 million Americans . . . . What are they supposed to do?
>
> MR. MILIAN: Well, BIPA is a negligence statute, so it's not a strict liability statute. [S]omeone who wants to take biometric information can do it as long as they act reasonably, okay? . . . [O]nce a photo is uploaded from an Illinois IP address, . . . it's definable as something coming from Illinois. Before any facial recognition technology is applied to that photo, you can [send] a box to say: Hey, we see this is coming from Illinois. Do you consent? And a long list of things that you consent to, check the box: Yes, I do. And that's that.
>
> THE COURT: Well, suppose you're an Illinois family at the Grand Canyon and you take the rim crater shot and you do what everybody in my family does, you immediately upload it on site. How are they supposed to know?
>
> MR. MILIAN: *That may not be a violation.*

> THE COURT:  Where are you going to draw the line?
>
> MR. MILIAN:  I think you draw the line with photos uploaded from the State of Illinois. . . .
>
> THE COURT: . . . Facebook . . . gets millions of photographs a day, probably an hour.  They are supposed to screen every photograph[?] . . .   If I were in your position, I would begin thinking about how you're going to explain to me how this is supposed to work out. . . . I mean, you know, if I drive through Chicago and somebody [ ] takes a picture of me and it gets tagged on Facebook, ***I don't think that's what the BIPA was supposed to address. . . .  I'm not a Facebook user.  So it just seems more than Illinois contemplated.***

11/30/2017 Hr'g Tr. at 31-34 (emphases added).

There are several notable aspects of this colloquy.  For one thing, the Grand Canyon hypothetical that counsel conceded "may not be a violation" is indistinguishable from *Mr. Gullen*'s own facts.  Mr. Gullen alleges that there are two photos of him on Facebook.  One was never analyzed with facial-recognition technology because it was uploaded by a Page—the Facebook product that public figures and business organizations use to have a presence on Facebook—not by an individual person.  *See* GULLEN-000001 (Ex. 5 to Nadolenco Decl.); Yadan Decl. ¶ 27 (explaining that "[t]he photo at GULLEN-00001 was published to the Facebook page 'Glenview Patch'"; "[n]o faces were detected in the photo, no steps of the facial-recognition process were performed on the photo, no tag suggestions were made in connection with the photo, and no user-created tags exist for the photo"); ▮

▮ As Mr. Gullen testified at his deposition, ▮

▮ Thus, the only photo of Mr. Gullen on Facebook that was ever analyzed with the technology at issue was both taken and uploaded outside of Illinois.

4

More fundamentally, Mr. Gullen's proposed solutions are patently unworkable, for several reasons. First, the *Gullen* class is composed of Illinois *residents*, not Illinois *uploaders*.[2] Even if, as Mr. Gullen's counsel suggested, Facebook could get consent from people who *uploaded* photos in Illinois, that would not solve Mr. Gullen's alleged problem: that Facebook is failing to obtain consent from the Illinois residents *depicted* in those photos. Second, if Facebook were to "disable the face scanning feature" for users with Illinois IP addresses (6/29/2016 Hr'g Tr. at 10), that would not stop users *outside* Illinois from uploading photos of non-users (often by accident) who are Illinois residents—as in the Court's Grand Canyon example, or in Mr. Gullen's own situation.

Ultimately, then, Mr. Gullen is simply proposing a global ban on Facebook's use of facial-recognition technology. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

Neither Illinois law nor the dormant Commerce Clause permits an Illinois statute to "follow" its residents around wherever they go. The *Facebook Biometric* action is fatally flawed; but even if that action survives summary judgment, the *Gullen* action still fails.

## CONCLUSION

The Court should grant summary judgment in Facebook's favor.

---

[2] *See Gullen* Compl. (Dkt. 1-1) ("All non-Facebook users who, *while residing in the State of Illinois*, had their biometric identifiers, including 'face templates' (or 'face prints'), collected, captured, received, stored, used, or otherwise obtained by Facebook." (emphasis added)).

Dated:  December 8, 2017         MAYER BROWN LLP

By: */s/ John Nadolenco*
    John Nadolenco
    Lauren R. Goldman

*Counsel for Defendant Facebook, Inc.*