ROBBINS GELLER RUDMAN & DOWD LLP
SHAWN A. WILLIAMS (213113)
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

LABATON SUCHAROW LLP
JOEL H. BERNSTEIN
(Admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)
jbernstein@labaton.com

CAREY RODRIGUEZ MILIAN
    GONYA, LLP
DAVID P. MILIAN
(Admitted *pro hac vice*)
1395 Brickell Avenue, Suite 700
Miami, FL 33131
Telephone: 305/371-7474
305/372-7475 (fax)
dmilian@careyrodriguez.com

EDELSON PC
JAY EDELSON
(Admitted *pro hac vice*)
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Telephone: 312/589-6370
jedelson@edelson.com
312/589-6378 (fax)

Attorneys for Plaintiffs
[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re FACEBOOK BIOMETRIC INFORMATION PRIVACY LITIGATION | ) ) ) ) |
| | ) |
| This Document Relates To: | ) ) |
| ALL ACTIONS. | ) ) ) |
| | ) |
| FREDERICK W. GULLEN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| FACEBOOK, INC., | ) ) |
| Defendant. | ) ) ) |

Master File No. 3:15-cv-03747-JD

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER RULE 56(d)

Case No. 3:16-cv-00937-JD

DATE:           January 25, 2018
TIME:           10:00 a.m.
COURTROOM:      11, 19th Floor

1339802_1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................1

II. BACKGROUND ...................................................................................2

    A. Facebook's Course of Conduct ..................................................2

    B. Illinois's Biometric Information Privacy Act ............................4

    C. Procedural History .....................................................................5

III. LEGAL STANDARD ...........................................................................6

IV. FACEBOOK IS NOT ENTITLED TO SUMMARY JUDGMENT ....................7

    A. Facebook's Extraterritoriality Affirmative Defense Does Not Warrant Summary Judgment ...........................................8

        1. Facebook Failed to Plead, and Thus Waived, Its Purported Extraterritoriality Affirmative Defense ..................8

        2. Facebook's Reliance on Self-Serving Employee Declarations and Testimony of Suspect Credibility Is Insufficient to Carry Its Initial Burden on Summary Judgment ..................10

        3. Facebook's Course of Conduct in Violation of BIPA Commenced and Occurred Primarily and Substantially in Illinois ..................12

    B. Facebook's Dormant Commerce Clause Affirmative Defense Does Not Warrant Summary Judgment ..................16

V. IN THE ALTERNATIVE, FACEBOOK'S MOTION SHOULD BE DEFERRED .........20

VI. CONCLUSION ....................................................................................22

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD

- i -

# TABLE OF AUTHORITIES

**Page**

**CASES**

*1443 Chapin St., LP v. PNC Bank, Nat'l Ass'n*,
258 F.R.D. 186 (D.D.C. 2009)......................................................................20, 22

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970)..............................................................................................7

*Am. Booksellers Found. v. Dean*,
342 F.3d 96 (2d Cir. 2003)..................................................................................18

*Am. Guar. & Liab. Ins. Co. v. Westchester Surplus Lines Ins. Co.*,
334 F. App'x 839 (9th Cir. 2009) ........................................................................21

*Am. Top Eng., Inc. v. Lexicon Mktg. (USA), Inc.*,
No. 03 C 7021, 2004 U.S. Dist. LEXIS 11486
(N.D. Ill. June 18, 2004) ...................................................................................8, 9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................................................................................6, 7, 21

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E. 2d 801 (Ill. 2005) ...............................................................12, 13, 14, 15

*Beall Bros. Supply Co. v. Indust. Comm'n*,
173 N.E. 64 (Ill. 1930) .......................................................................................12

*Bio-Med. Research, Ltd. v. Thane Int'l, Inc.*,
249 F. App'x 539 (9th Cir. 2007) ........................................................................21

*Burlington N. Santa Fe R.R. v. Assiniboine
& Sioux Tribes of the Fort Peck Reservation*,
323 F.3d 767 (9th Cir. 2003) .........................................................................20, 21

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)............................................................................................20

*Chinatown Neighborhood Ass'n v. Harris*,
794 F.3d 1136 (9th Cir. 2015) ............................................................................19

*CTS Corp. v. Dynamics Corp. of Am.*,
481 U.S. 69 (1987)..............................................................................................16

*Deere & Co. v. Ohio Gear*,
462 F.3d 701 (7th Cir. 2006) ..............................................................................22

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY
JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD          - ii -

| | Page |
|---|---|

*Dennis v. Higgins,*
  498 U.S. 439 (1991) ................................................................16

*Dobrowolski v. Intelius, Inc.,*
  No. 17 CV 1406, 2017 U.S. Dist. LEXIS 138587
  (N.D. Ill. Aug. 29, 2017) ......................................................8, 9

*Doyle v. City of Medford,*
  327 F. App'x 702 (9th Cir. 2009) ..........................................20

*DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Connect Ins. Agency, Inc.,*
  No. C14-5880JLR, 2016 U.S. Dist. LEXIS 18614
  (W.D. Wash. Feb. 14, 2016) ...............................................9, 10

*F.T.C. v. Asia Pac. Telecomm., Inc.,*
  788 F. Supp. 2d 779 (N.D. Ill. 2011) ....................................18

*F.T.C. v. Pub. Clearing House, Inc.,*
  104 F.3d 1168 (9th Cir. 1997) ...............................................11

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.,*
  525 F.3d 822 (9th Cir. 2008) .................................................20

*Fara Estates Homeowners Ass'n v. Fara Estates, Ltd.,*
  No. 96-17338, 1998 U.S. App. LEXIS 481
  (9th Cir. Jan. 9, 1998) .............................................................7

*Ferguson v. Friendfinders, Inc.,*
  94 Cal. App. 4th 1255 (2002) ..........................................17, 18

*Graham v. Gen. U.S. Grant Post No. 2665, V.F.W,*
  43 Ill. 2d 1 (Ill. 1969) ...........................................................14

*Greater L.A. Agency on Deafness, Inc. v. CNN,*
  742 F.3d 414 (9th Cir. 2014) .................................................18

*Gros v. Midland Credit Mgmt.,*
  525 F. Supp. 2d 1019 (N.D. Ill. 2007) ..................12, 13, 14, 15

*H.R.R. Zimmerman Co. v. Tecumseh Prods. Co.,*
  No. 99 C 5437, 2002 U.S. Dist. LEXIS 16911
  (N.D. Ill. Sept. 5, 2002) ........................................................8, 9

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY
JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD          - iii

| | Page |
|---|---:|

*Hackett v. BMW of N. Am., LLC*,
  No. 10 C 7731, 2011 U.S. Dist. LEXIS 71063
  (N.D. Ill. June 30, 2011) ........................................................................................9

*Healy v. Beer Inst., Inc.*,
  491 U.S. 324 (1989)...........................................................................................16, 17

*Houghton v. South*,
  965 F.2d 1532 (9th Cir. 1992) .................................................................................7

*Hughes v. Okla.*,
  441 U.S. 322 (1979).................................................................................................16

*In re Facebook Biometric Info. Privacy Litig.*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ...............................................................5, 13

*Int'l Profit Assocs., Inc. v. Linus Alarm Corp.*,
  971 N.E. 2d 1183 (Ill. 2012) ...................................................................................16

*Jamison v. Summer Infant (USA), Inc.*,
  778 F. Supp. 2d 900 (N.D. Ill. 2011) ...............................................................13, 15

*Landau v. CNA Fin. Corp*,
  381 Ill. App. 3d 61 (Ill. 2008) ...............................................................................14

*MaryCLE, LLC v. First Choice Internet, Inc.*,
  890 A.2d 818 (Md. Ct. Spec. App. 2006) ...........................................................17, 18

*McGinest v. GTE Serv. Corp.*,
  360 F.3d 1103 (9th Cir. 2004) ................................................................................11

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
  No. 11-cv-5341 YGR, 2014 U.S. Dist. LEXIS 18640
  (N.D. Cal. Feb. 13, 2014)........................................................................................9

*Monroy v. Shutterfly, Inc.*,
  No. 16 C 10984, 2017 U.S. Dist. LEXIS 149604
  (N.D. Ill. Sept. 15, 2017) ...........................................................................8, 13, 19

*Morrison v. Mahoney*,
  399 F.3d 1042 (9th Cir. 2005) .................................................................................9

*Nat'l Fed'n of the Blind v. Target Corp.*,
  452 F. Supp. 2d 946 (N.D. Cal. 2006) ....................................................................18

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY
JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD          - iv -

*Nigro v. Sears, Roebuck & Co.*,
784 F.3d 495 (9th Cir. 2015) ............................................................................11

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
210 F.3d 1099 (9th Cir. 2000) ............................................................................7

*Pharm. Research & Mfrs. of Am. v. Cty. of Alameda*,
768 F.3d 1037 (9th Cir. 2014) ...........................................................................16

*Rivera v. Google Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2017) ........................................................ *passim*

*S.-Cent. Timber Dev., Inc. v. Wunnicke*,
467 U.S. 82 (1984) ...........................................................................................16

*S.E.C. v. Koracorp Indus., Inc.*,
575 F.2d 692 (9th Cir. 1978) ..............................................................................11

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ...............................................................................6

*SEC v. Phan*,
500 F.3d 895 (9th Cir. 2007) ...............................................................................11

*Shoemoney Media Grp., Inc. v. Farrell*,
No. 8:09CV131, 2009 WL 1383281
(D. Neb. May 14, 2009) ....................................................................................18

*Specht v. Google, Inc.*,
660 F. Supp. 2d 858 (N.D. Ill. 2009) ..................................................................14

*SPGGC v. Blumenthal*,
505 F.3d 183 (2d Cir. 2007)...............................................................................18

*State Dep't of Soc. Servs. v. Leavitt*,
523 F.3d 1025 (9th Cir. 2008) ............................................................................22

*State v. Heckel*,
24 P.3d 404 (Wash. 2001)..................................................................................17

*U.S. E.E.O.C. v. NCL Am., Inc.*,
536 F. Supp. 2d 1216 (D. Haw. 2008) ...............................................................10

*Vance v. United States*,
90 F.3d 1145 (6th Cir. 1996) .............................................................................22

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY
JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD     - v -

| | | Page |
|---|---|---|

*VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*,
  784 F.2d 1472 (9th Cir. 1986) ...........................................................21

*Westrope v. Ringler Assocs.*,
  No. 3:14-cv-00604-ST, 2015 U.S. Dist. LEXIS 17932
  (D. Or. Feb. 12, 2015)...............................................................8, 9

**STATUTES, RULES AND REGULATIONS**

Ill. Comp. Stat. 14 ...................................................................................4

Ill. Comp. Stat. 14/5(b) ........................................................................13

Ill. Comp. Stat. 14/15(a) .........................................................................5

Ill. Comp. Stat. 14/15(b) ...................................................................5, 17

Federal Rule of Civil Procedure
  Rule 8(c) ...............................................................................................9
  Rule 12(b) .............................................................................................9
  Rule 12(g) .............................................................................................9
  Rule 16(b) ...........................................................................................10
  Rule 56 .......................................................................................*passim*
  Rule 56(d) ...................................................................................*passim*
  Rule 56(f) ............................................................................................20

**SECONDARY AUTHORITIES**

10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, §2727, at
  480, 485 (3d ed. 1998) .......................................................................11

Jack Goldsmith & Alan Sykes, *The Internet and the Dormant Commerce Clause*,
  110 Yale L.J. 785, 816 (2001) ............................................................18

*11 Moore's Federal Practice – Civil §56.40* (3d ed. 2013) .....................10

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY
JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD         - vi

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and this Court's Standing Order for Civil Cases, Plaintiffs[1] hereby oppose Defendant Facebook, Inc.'s ("Facebook") Motion for Summary Judgment Based on Illinois' Extraterritoriality Doctrine and the Dormant Commerce Clause (ECF No. 257) ("MSJ"), hearing date set for January 25, 2018 at 10:00 a.m. In the alternative, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure and the Court's amended scheduling order (ECF No. 223) ("scheduling order"), Plaintiffs request that the Court defer Facebook's motion until after the close of expert discovery, such that the Court and parties can address all summary judgment grounds at once on a complete evidentiary record.

## I.    INTRODUCTION

Facebook has again jumped the gun. When these actions under the Illinois Biometric Information Privacy Act ("BIPA") were first consolidated before this Court, Facebook moved for early summary judgment on a fact-specific choice-of-law affirmative defense. After Plaintiffs and the Court indulged expedited discovery and an evidentiary hearing, the Court rejected Facebook's purported defense and returned the case to an orderly schedule, thus exposing Facebook's tact for what it was: a premature, futile distraction.

Now, in clear violation of the Court's scheduling order and admonition that summary judgment would come after expert discovery, Facebook has moved for summary judgment on the basis of two affirmative defenses. Just as before, Facebook's arguments lack merit.

Facebook failed to plead the first defense – extraterritoriality under Illinois law – and thus waived it. Even if not waived, Facebook relies on self-serving employee declarations and testimony, all of which depends on credibility determinations and thus cannot carry Facebook's initial burden on summary judgment. And, in any event, Facebook's BIPA violations occurred in Illinois because the overwhelming majority of circumstances relating to the violations occurred there. Facebook automatically collected Plaintiffs' scans of face geometry without consent from photos uploaded in Illinois, by Illinois residents, and from devices assigned Illinois-based internet protocol ("IP") addresses. Facebook targeted Illinois residents in Illinois, failed to get their consent in Illinois, failed

---

[1]    "Plaintiffs" refers to Nimesh Patel, Adam Pezen, Carlo Licata and Frederick William Gullen.

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD          - 1 -

1  to provide notice in Illinois, purports to have entered into related contracts with those Illinois

2  residents in Illinois, and issued BIPA-deficient disclosures and data retention policies to those

3  Illinois residents in Illinois. Indeed, ████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████████████████████████

5  ███████████████████████████████████████████████  As every court to

6  consider the issue agrees, on such facts, Facebook's BIPA violations occurred within Illinois.

7       Facebook's second defense – the dormant Commerce Clause – is even further off the mark.

8  To comply with BIPA, Facebook need only refrain from collecting scans of face geometry without

9  consent from photos uploaded in Illinois. Facebook already has the means to accomplish this.

10       Facebook's motion for summary judgment should be denied in its entirety.

11  **II.  BACKGROUND**

12       **A.  Facebook's Course of Conduct**

13       Facebook operates the largest online social network in the world, with millions of users in

14  Illinois alone. Facebook encourages users to fill their Facebook pages with personal information,

15  generating reams of data for Facebook to mine, sort, aggregate, disaggregate, and sell. One of the

16  principal sources of such information is the torrent of photos users upload daily.[2]

17       Since June 2011, virtually every uploaded photo has been immediately subjected to

18  Facebook's facial-recognition software.[3]  The software, ████████████████, enables

19  Facebook's "Tag Suggestions" feature ███████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████████████████████████

21  ██████████████████████[4]████████████████████████████████████████████████████████████

22

23  [2]  *See* Facebook's Registration Statement (U.S. Securities and Exchange Commission ("SEC")
    Form S-1), at 74 (Feb. 1, 2012) ("[M]ore than 250 million photos *per day* were uploaded to
24  Facebook in the three months end[ing] December 31, 2011."). All internal citations and quotations
    omitted, and emphasis added throughout, unless stated otherwise.

25  [3]  *See* ECF No. 169, at 1; ████████████████████████████  All "Ex. __" references are to
26  exhibits filed with the instant motion.

27  [4]  ██████████████████████████████████████████████████████████████████████████████████
    ████████████████████████████████████████
28

[REDACTED]
[REDACTED] [5]
[REDACTED] [6]

This integrated course of conduct commences immediately upon, and is complete within fractions of seconds after, the initial upload of a photo. At the time of upload, *inter alia*, Facebook knows: (a) the IP address associated with the device by which the photo was uploaded;[7] (b) the state where that device IP address is located;[8] (c) which Facebook user's account uploaded the photos; (d) whether that account is associated with someone living in or a business or other organization located within Illinois; (e) whether that user account has opted out of the Tag Suggestions feature;[9] and (f) whether the uploading device is mobile, thus that the face detection and cropping occur locally on the device in the state where the device is located.[10] Facebook also applies geo-recognition technology to spot geographic landmarks appearing in the photos and identifies where the photos were taken – *e.g*., identifying Sears Tower in the background and thus associating a photo (and any persons appearing therein) with Chicago, Illinois.[11]

---

[5] *See* Ex. 5, [REDACTED]

[6] [REDACTED]

[7] [REDACTED]

[8] [REDACTED]

[9] [REDACTED]

[10] [REDACTED]

[11] [REDACTED]

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD - 3 -

As Facebook insiders admit, the personal face-recognition data Facebook collects through this process ████████████████████████████████████████[12] Perhaps not surprisingly, then, Facebook's user agreement (variously called its "Terms of Service," "Terms of Use," or "Statement of Rights and Responsibilities") says nothing about collecting biometric data, or scanning, mapping and storing templates of users' facial geometry, or its implications for user privacy. In 2010, Facebook added language to its privacy policy (which it purports to incorporate into the user agreement) explaining simply that Facebook merely "compar[es] your friend's pictures to information we've put together from the photos you've been tagged in."[13] In 2013, Facebook added that it also derived information from profile pictures, though it left the remainder of the explanation unchanged.[14] A user is not required or asked to acknowledge any other disclosures before using Facebook's services or being automatically included in Facebook's face-recognition process.

## B. Illinois's Biometric Information Privacy Act

The foregoing course of conduct – Facebook's surreptitious collection of Illinois residents' face geometry – poses precisely the threat to individual privacy that motivated the Illinois legislature to enact BIPA. 740 Ill. Comp. Stat. 14. As the legislature found, "biometrics are unlike other unique identifiers" because they can't be changed. *Id.* "Therefore, once compromised, the individual has no recourse." *Id.* Accordingly, the Illinois legislature adopted several safeguards to ensure people in Illinois can maintain control over their face geometry and other biometric identifiers. As relevant here, private companies may only collect scans of face geometry in Illinois if they first inform the subject individuals and obtain their, or the subject's authorized representative's,

---

████████████████████████████████████████████████████

[12] ████████████████████████████████████████████████████

[13] ████████████████████████████████████████████████████

[14] ████████████████████████████████████████

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY
JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD        - 4 -

informed written consent, 740 Ill. Comp. Stat. 14/15(b), and must establish publicly available guidelines regarding when they will destroy the collected scans of face geometry. 740 Ill. Comp. Stat. 14/15(a). Across the board, Facebook fails to comply.

## C. Procedural History

To redress Facebook's wholesale BIPA violations, in Spring 2015, Plaintiffs commenced these class actions in Illinois. After transfer and consolidation in the Northern District of California,[15] Facebook moved early for summary judgment, raising two principal arguments: (1) an affirmative defense that claims under Illinois law were precluded by California choice-of-law clauses in Facebook's terms of use; and (2) a tortured statutory construction of BIPA that exempted the collection of biometric identifiers from photographs. After expedited discovery and an evidentiary hearing, the Court rejected both of Facebook's arguments, holding: (1) that Illinois's fundamental policy of biometric privacy trumped any purported right of California corporations to avoid diverse regulation; and (2) that Facebook's statutory interpretation was "antithetical to [BIPA's] broad purpose of protecting privacy in the face of emerging biometric technology" and rested on "no support in the words and structure of the statute." *See In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1172 (N.D. Cal. 2016).

Facebook then answered the complaint, alleging twenty-two affirmative defenses but making no mention of any defenses premised on extraterritoriality under Illinois law or violation of the dormant Commerce Clause. ECF No. 126. Five months later Facebook amended its answer, adding a dormant Commerce Clause affirmative defense but still failing to plead any defense of extraterritoriality under Illinois law. ECF No. 169.

During the September 7, 2017 status conference, the Court considered the case schedule in light of remaining fact discovery and yet-to-commence expert discovery, and specifically ordered –

---

[15] *See* Ex. 30 (Declaration of David P. Milian in Support of Plaintiffs' Opposition to Defendant Facebook, Inc.'s Motion for Summary Judgment Under Fed. R. Civ. P. 56(d)). Gullen commenced his action in Illinois on August 31, 2015. After dismissal on personal jurisdiction grounds, Gullen re-filed on January 26, 2016, in the Superior Court, County of San Mateo. On February 25, 2016, Facebook removed Gullen's action to this Court pursuant to 28 U.S.C. §§1332, 1441 and 1446.

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD          - 5 -

at Facebook's own urging, no less – that all motions for summary judgment be filed only after the close of expert discovery. The Court's instructions were clear:

> Court: There's going to be close of fact discovery. There's going to be close of expert discovery. Then you're going to do all of your motions after that. . . . Otherwise it's too chaotic.[16]

On September 11, 2017, the Court entered an amended scheduling order reflecting the same. ECF No. 223.

In accordance with that schedule, Plaintiffs filed their class certification motions on December 8, 2017. *See, e.g.*, ECF No. 255. Later that same day, Facebook filed its motion for summary judgment. ECF No. 257.

Given the plain procedural impropriety of Facebook's motion, Plaintiffs immediately moved the Court to summarily deny or continue the motion until after the close of expert discovery, in accordance with the Court's existing scheduling order and such that the Court and parties can address all summary judgment grounds at once on a full evidentiary record. ECF No. 262.

Still, as explained below, Facebook's motion for summary judgment also fails on the merits.

## III. LEGAL STANDARD

Summary judgment is only appropriate "when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the nonmoving party, the movant is clearly entitled to prevail as a matter of law." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 950 (9th Cir. 2009) (citing Fed. R. Civ. P. 56). A material issue of fact is a question the jury must answer under the applicable substantive law, and dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Id.* at 255.

Where, as here, "the moving party has the burden of proof at trial, that party must carry its initial burden at summary judgment by presenting evidence affirmatively showing, for all essential

---

[16] *See* Sept. 7, 2017 Transcript of Proceedings, at 19:17-21 (ECF No. 222).

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD          - 6 -

1  elements of its case, that no reasonable jury could find for the non-moving party." *Fara Estates*
2  *Homeowners Ass'n v. Fara Estates, Ltd.*, No. 96-17338, 1998 U.S. App. LEXIS 481, at *13-*14 (9th
3  Cir. Jan. 9, 1998); *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (same). "If a moving
4  party fails to carry its initial burden, the nonmoving party has no obligation to produce anything" and
5  summary judgment must be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099,
6  1102-03 (9th Cir. 2000); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970) ("No defense to an
7  insufficient showing is required."). Even if the moving party does carry its initial burden, the
8  nonmoving party "need only present evidence from which a jury might return a verdict in his favor.
9  If he does so, there is a genuine issue of fact that requires a trial," and thus summary judgment must
10 be denied. *Anderson*, 477 U.S. at 257.

11 **IV.    FACEBOOK IS NOT ENTITLED TO SUMMARY JUDGMENT**

12        Facebook's summary judgment motion argues two fact-specific affirmative defenses: (1) that
13 all the events and circumstances underpinning Plaintiffs' BIPA claims occur outside Illinois and,
14 thus, outside the territorial scope of BIPA; and (2) that applying BIPA to these circumstances would
15 violate the dormant Commerce Clause. Both fail.

16        As to the first, Facebook failed to plead, and thus waived, its purported extraterritoriality
17 affirmative defense. Even if not waived, Facebook's summary judgment motion relies entirely on
18 self-serving employee declarations and testimony insufficient to carry Facebook's initial burden on
19 summary judgment. In any event, Facebook's BIPA violations occurred in Illinois because the
20 overwhelming majority of circumstances relating to the violations occurred there. Facebook
21 automatically collected Plaintiffs' scans of face geometry without consent from photos uploaded in
22 Illinois, by Illinois residents, and from devices assigned Illinois-based internet protocol ("IP")
23 addresses. Facebook targeted Illinois residents in Illinois, failed to get their consent in Illinois, failed
24 to provide notice in Illinois, purports to have entered into related contracts with those Illinois
25 residents in Illinois, and issued BIPA-deficient disclosures and data retention policies to those
26 Illinois residents in Illinois. Indeed, ██████████████████████████████████████
27 ████████████████████████████████████████████████████████████████
28 ████████████████████████████████████ As every court to

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY
JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD          - 7 -

consider the issue agrees, on such facts, Facebook's BIPA violations occurred within Illinois. *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1101-02 (N.D. Ill. 2017) (under nearly identical circumstances, holding BIPA claims took place in Illinois); *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 U.S. Dist. LEXIS 149604, at *15-*17 (N.D. Ill. Sept. 15, 2017) (same).

Facebook's second defense also fails. Application of the BIPA in these circumstances does not violate the dormant Commerce Clause. Facebook is free to gather photos nationwide. Facebook is even free to extract scans of face geometry from photos uploaded outside Illinois. But Facebook is not free, absent informed consent, to extract scans of face geometry from photos uploaded in Illinois. To comply with BIPA, Facebook need only refrain from collecting scans of face geometry from photos uploaded in Illinois, or obtain BIPA-mandated consent before doing so. Facebook already has the technical means to accomplish this today.[17] It is only a matter of will. Applying BIPA to Facebook's misconduct thus does not violate the dormant Commerce Clause.

Facebook's motion for summary judgment should be denied in its entirety.

### A. Facebook's Extraterritoriality Affirmative Defense Does Not Warrant Summary Judgment

#### 1. Facebook Failed to Plead, and Thus Waived, Its Purported Extraterritoriality Affirmative Defense

Facebook's primary ground – extraterritoriality under Illinois law – is an affirmative defense. *See, e.g.*, *H.R.R. Zimmerman Co. v. Tecumseh Prods. Co.*, No. 99 C 5437, 2002 U.S. Dist. LEXIS 16911 (N.D. Ill. Sept. 5, 2002) (extraterritoriality under Illinois statute is an affirmative defense); *Am. Top Eng., Inc. v. Lexicon Mktg. (USA), Inc.*, No. 03 C 7021, 2004 U.S. Dist. LEXIS 11486 (N.D. Ill. June 18, 2004) (same); *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2017 U.S. Dist. LEXIS 138587, at *27 n.9 (N.D. Ill. Aug. 29, 2017) (same). Indeed, by definition, an affirmative defense is a "'defendant's assertion of facts and arguments, that if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true.'" *Westrope v. Ringler Assocs.*, No. 3:14-cv-00604-ST, 2015 U.S. Dist. LEXIS 17932, at *17 (D. Or. Feb. 12, 2015). Facebook's

17

██████████████████████████████
██████████████████████████████
███████████████

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD                - 8 -

extraterritoriality argument is exactly that. As Facebook's own motion frames the issue: "If Facebook's use of facial-recognition technology *did* violate BIPA, that alleged violation took place *outside* Illinois." MSJ at 1 (some emphasis in original). Thus, Facebook's extraterritoriality argument is, by its very nature, an affirmative defense. *See H.R.R. Zimmerman*, 2002 U.S. Dist. LEXIS 16911 (extraterritoriality under Illinois law held an affirmative defense); *Am. Top Eng.*, 2004 U.S. Dist. LEXIS 11486 (same); *Dobrowolski*, 2017 U.S. Dist. LEXIS 138587, at *27 n.9 (same).[18,19]

Facebook, however, elected not to plead this affirmative defense in its answer. Nor in its amended answer. Nor in any of its seriatim motions to dismiss. By repeatedly failing to plead or even raise this affirmative defense, Facebook waived it. *See, e.g.*, *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005) (a party "is required to raise every defense in its first responsive pleading, and defenses not so raised are deemed waived") (citing Fed. R. Civ. P. 8(c), 12(b),12(g)). Because Facebook waived its purported extraterritoriality affirmative defense, summary judgment for Facebook on that ground should be denied. *See, e.g.*, *DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Connect Ins. Agency, Inc.*, No. C14-5880JLR, 2016 U.S. Dist. LEXIS 18614 (W.D. Wash. Feb. 14, 2016) (where defendant failed to plead affirmative defense in answer,

---

[18]  *See also Westrope*, 2015 U.S. Dist. LEXIS 17932, at *18 (similar extraterritoriality argument under Alaska statute held an affirmative defense, explaining: "it is possible that Defendants' out of state actions in this case . . . may be sufficient to make Defendants . . . [liable for] violation of [the Alaska statute]. Despite that being true, if Defendants were able to show that they acted exclusively outside of Alaska . . . there would be no violation . . . . This is the dictionary definition of an affirmative defense."); *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 YGR, 2014 U.S. Dist. LEXIS 18640 (N.D. Cal. Feb. 13, 2014) (extraterritoriality argument under federal patent law held an affirmative defense).

[19]  Facebook's cited cases are not to the contrary. *See* ECF No. 266, at 4-5. None suggest extraterritoriality is anything other than an affirmative defense. Each simply dismissed where an extraterritoriality affirmative defense appeared on the face of the complaint. *See, e.g.*, *Hackett v. BMW of N. Am., LLC*, No. 10 C 7731, 2011 U.S. Dist. LEXIS 71063, at *5 (N.D. Ill. June 30, 2011) ("[I]f, *as Plaintiff claims*, he was induced to purchase the vehicle based on the false advertising, any deception occurred at the time of the transaction. Therefore there can be no ICFA claim."); *cf. Dobrowolski*, 2017 U.S. Dist. LEXIS 138587, at *27 n.9 (extraterritoriality under Illinois law is an affirmative defense).

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD        - 9 -

1   summary judgment on that affirmative defense denied as to defendant and instead entered for

2   plaintiff).[20]

### 2. Facebook's Reliance on Self-Serving Employee Declarations and Testimony of Suspect Credibility Is Insufficient to Carry Its Initial Burden on Summary Judgment

5       Even if not waived, summary judgment should still be denied because Facebook fails to carry

6   its initial evidentiary burden.  Facebook "bears the burden of persuasion at trial on th[is] issue," and

7   thus "may not meet its initial burden by pointing to the [Plaintiffs' purported] lack of evidence on

8   [the] issue."  *11 Moore's Federal Practice – Civil §56.40* (3d ed. 2013).  Rather, Facebook "must

9   produce evidence that would conclusively support its right to a judgment."  *Id.*  "In other words, the

10  evidence in the [Facebook's] favor must be so powerful that no reasonable jury would be free to

11  disbelieve it.  Anything less should result in denial of summary judgment."  *Id.*

12      Facebook's motion relies almost entirely on self-serving declarations and testimony from

13  current Facebook employees, Yaniv Taigman and Omry Yadan.[21]  Both depend on Facebook and the

14  viability of its face recognition program for their careers and compensation.  Both are prior

15  employees of Face.com who made millions of dollars leasing and then selling to Facebook the face-

16  recognition technology at the heart of this lawsuit.  Indeed, both may be individually liable for

17  Face.com's and their own violations of BIPA.  Facebook's self-serving declarations are also

18  conclusory, proclaiming without support how ████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████

---

20  [20]  None of the "limited exceptions" to waiver apply here.  Facebook attempts "to raise this [unpled]
21  affirmative defense after the scheduling order's cutoff for amended pleadings," and thus subjects
    itself to "the strict[] 'good cause' standard under Federal Rule of Civil Procedure 16(b)."  *DZ Bank
22  AG*, 2016 U.S. Dist. LEXIS 18614, at *80-*83.  Rule 16(b)'s good cause standard centers on the
    moving party's diligence: "'If that party was not diligent, the inquiry should end.'"  *Id.* at *81.  Here,
23  Facebook can offer no excuse for repeatedly failing to plead this affirmative defense.  The
    underlying facts – Facebook's own technology – have always been available to and under
24  Facebook's exclusive control.  "'[C]arelessness is not compatible with a finding of diligence and
    offers no reason for a grant of relief.'"  *Id.*  Moreover, fact discovery is already closed; Facebook's
25  sandbagging prejudices Plaintiffs, preventing any fact discovery into the contents of Facebook's
    declarations or any expert discovery at all.  *See, e.g., U.S. E.E.O.C. v. NCL Am., Inc.*, 536 F. Supp.
26  2d 1216, 1226 (D. Haw. 2008) (granting summary judgment for plaintiff on a defendant's failure to
    plead specific affirmative defense in part because defendant's failure to please defense prevented
27  plaintiffs from having sufficient time for discovery).

28  [21]  *See* MSJ at 2-5, 6-13.

[BLACK REDACTION] [22] Worse yet, much of Mr. Yadan's declaration directly contradicts his earlier testimony. [23] Without expert discovery, these contested conclusions remain in dispute. Given the many conflicts of interest, at trial Plaintiffs will challenge, and the jury will determine, whether and to what extent to credit any of their self-serving testimony. *SEC v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) ("'[t]hat an affidavit is selfserving bears on its credibility'"); *see also Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) ("The district court can disregard a self-serving declaration that states only conclusions . . . ."); *F.T.C. v. Pub. Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) (a "conclusory, self-serving affidavit" may be "insufficient to create a genuine issue of material fact").

Because Facebook's evidence obviously hinges on credibility determinations that must await the trier of fact, that evidence fails to carry Facebook's initial summary judgment burden, the evidentiary burden does not shift to Plaintiffs, and thus summary judgment must be denied. *See* Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment ("Where an issue as to a material fact cannot be resolved without observation of . . . witnesses in order to evaluate their credibility, summary judgment is not appropriate."); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 n.5 (9th Cir. 2004) ("when ruling on a summary judgment motion, the district court is not empowered to make credibility determinations."); *S.E.C. v. Koracorp Indus., Inc.*, 575 F.2d 692, 699 (9th Cir. 1978) ("[C]ourts have long recognized that summary judgment is singularly inappropriate where credibility is at issue. Only after an evidentiary hearing or a full trial can these credibility issues be appropriately resolved."); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, §2727, at 480, 485 (3d ed. 1998) ("The party opposing summary judgment does not have a duty to

---

[22] [BLACK REDACTION]

[23] [BLACK REDACTION]

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD — - 11 -

present evidence in opposition to a motion under Rule 56 in [] circumstances . . . when there is an issue as to the credibility of the movant's evidentiary material.").

### 3. Facebook's Course of Conduct in Violation of BIPA Commenced and Occurred Primarily and Substantially in Illinois

Even if Facebook had not waived its affirmative defense (it has) yet had carried its initial evidentiary burden (it has not), summary judgment would still be unwarranted because Plaintiffs' claims do not require an extraterritorial application of the statute.[24]

Contrary to Facebook's reductionist approach, MSJ at 8-10, under Illinois law "there is no single formula or bright-line test for determining whether a transaction occurs within [the] state." *Avery*, 835 N.E.2d at 854. It is certainly not required that all "necessary elements of liability" occur within Illinois. *Compare* MSJ at 9, *with Avery*, 835 N.E.2d at 851-53 (concluding that the Illinois law governed transactions occurring "primarily and substantially" in Illinois, even if the injury element is not suffered in Illinois); *Beall Bros. Supply Co. v. Indust. Comm'n*, 173 N.E. 64, 66 (Ill. 1930) (state law did not operate extraterritorially when it provided remedy for injury suffered out of state because the parties entered into a contract in Illinois).

"Instead, a court must analyze whether 'the circumstances relating to the transaction occur primarily and substantially' within Illinois." *Google*, 238 F. Supp. 3d at 1101 (quoting *Avery*, 835 N.E.2d at 853). "Circumstances will vary in every case but the factors considered in *Avery* . . . are instructive: the residency of the plaintiff, the location of harm, communications between parties (where sent and where received), and where a company policy is carried out." *Id*.; *see also Gros v. Midland Credit Mgmt.*, 525 F. Supp. 2d 1019, 1024 (N.D. Ill. 2007) ("It is [] incorrect [in

---

[24] The parties agree BIPA does not apply extraterritorially. Under Illinois law, a "'statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.'" *Avery v. State Farm Mut. Auto. Ins. Co*., 835 N.E. 2d 801, 852 (Ill. 2005). Because the express provisions of BIPA evince no such intent, only violations of BIPA that "take place" inside Illinois are actionable. *See id*.; *accord Google*, 238 F. Supp. 3d at 1100 (holding as to BIPA, "there is no sign of that sort of intent from the Illinois legislature" and thus that BIPA "is not authorized to have extraterritorial effect").

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD    - 12 -

1 determining whether a disputed transaction occurred in Illinois] to focus on only one aspect of the

2 disputed transaction.").[25]

3      Facebook ignores the overwhelming majority of circumstances relating to Plaintiffs' BIPA

4 claims that occurred in Illinois. Facebook automatically collected Plaintiffs' scans of face geometry

5 without authorization from photos uploaded in Illinois, and of Illinois residents. Facebook targeted

6 Illinois resident Facebook users in Illinois, failed to get their BIPA-required consent in Illinois,

7 failed to provide BIPA-required notice in Illinois, and issued BIPA-deficient disclosures and data

8 retention policies into Illinois. Facebook even purports to have entered into contracts with those

9 Illinois user residents in Illinois. ECF No. 69 at 6 (Facebook arguing that "[w]hen [Plaintiffs] signed

10 up for and used Facebook's services, plaintiffs entered into a contract . . . ."). Indeed, for a large

11 portion (likely a majority) of the proposed class and subclass – ████████████████████████

12 ████████████████████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████████████████████████

14 ██████ On these facts, Facebook's BIPA violations "occur[ed] primarily and substantially in

15 Illinois." *Avery*, 835 N.E. 2d at 854; *accord Google*, 238 F. Supp. 3d at 1101-02 (under nearly

16 identical circumstances, holding BIPA claims took place in Illinois); *Shutterfly*, 2017 U.S. Dist.

17 LEXIS 149604, at *15-*17 (same).

18      Facebook ignores these facts and hinges its entire argument on the location of a few

19 computer servers ████████████████████████████ But the physical location of the

20 apparatus that may complete Facebook's illegal face-scan extraction process is merely one fact

21 among many, and is by no means dispositive. *See Gros*, 525 F. Supp. 2d at 1024 (explaining that "it

22 is [] incorrect to focus on only one aspect of the disputed transaction"); *see also Jamison v. Summer*

23 [25]   The legislative history of the BIPA makes two things clear: the General Assembly intended that
24 the Act would (1) "be applicable to private entities doing business in Illinois," and (2) address the
"very serious need [for] protections for the citizens of Illinois when it comes to biometric
25 information." 95th Ill. Gen. Assem., House Proceedings, 276th Legislative Day, May 30, 2008,
at 249 (Statement of Rep. Ryg). "By its express terms, BIPA manifests Illinois' substantial policy of
26 protecting its citizens' right to privacy in their personal biometric data," *Facebook Biometric Info.
Privacy Litig.*, 185 F. Supp. 3d at 1169, particularly in interactions with "major national
27 corporations." 740 Ill. Comp. Stat. 14/5(b). Nowhere in BIPA, or its legislative history, is there any
indication that its protection is limited to conduct occurring entirely within Illinois, as Facebook
28 contends.

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY
JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD    - 13 -

*Infant (USA), Inc.*, 778 F. Supp. 2d 900, 910 (N.D. Ill. 2011) (circumstances relating to claim primarily and substantially occurred in Illinois, even though defendant's "principal place of business [was] outside of Illinois"). Server location is not the most significant factor in determining the situs of the violation here. BIPA is a statute about **informed consent** – it does not prohibit facial recognition, it merely requires informed consent before biometric data is extracted from photographs uploaded **from within Illinois**.[26]

In *Gros*, for example, the defendant argued that the disputed transaction took place outside of Illinois because the defendant was located in Arizona and the transaction was negotiated between defendant's representatives in California and Arizona. 525 F. Supp. 2d at 1024. In rejecting the defendant's argument, the district court explained:

> *Avery* instructs courts to consider the totality of the circumstances in determining whether the disputed transaction occurred "primarily and substantially" in Illinois. It is therefore incorrect to focus on only one aspect of the disputed transaction. Ford Credit's argument discounts the importance of such factors as Gros' residence, the location of the alleged harm, the site of Gros' dealings with Ford Credit, the Illinois court case, and the site of Gros' communications with MCM – all of which are "circumstances relating to [the] disputed transaction."

*Id.* at 1024-25 (alteration in original). Likewise in this case, the location of the servers used to extract Plaintiffs' scans of face geometry is just one aspect of Facebook's illegal biometrics collection and non-disclosure. The residence of Plaintiffs, the location corresponding to the IP addresses from which Plaintiffs' photos were uploaded, the location where the transaction was entered, and the location of the alleged harm (*i.e.*, where Facebook failed to obtained the requisite written release prior to extracting and collecting Plaintiffs' scans of face geometry) – are all "circumstances relating to the disputed transaction," *id.* at 1024, that occurred in Illinois.[27]

---

[26] Facebook's authorities are inapposite. *See, e.g.*, MSJ at 7-10 (citing *Landau v. CNA Fin. Corp*, 381 Ill. App. 3d 61 (Ill. 2008) and *Graham v. Gen. U.S. Grant Post No. 2665, V.F.W*, 43 Ill. 2d 1 (Ill. 1969)). Unlike this case, in *Landau*, the plaintiff "resided in Pennsylvania, bought her policy in Pennsylvania and only had contact with [defendant] in Pennsylvania." 381 Ill. App. 3d at 64. In *Graham*, the Illinois law at issue focused entirely on injuries from intoxication and the plaintiff's injury from intoxication occurred in Wisconsin, not Illinois. 43 Ill. 2d at 2-3. BIPA, in contrast, focuses on informed consent before collection of biometric data. Facebook failed to obtain informed consent (yet collected biometric data anyway) from Plaintiffs **in Illinois**. *See supra*.

[27] *See, e.g.*, *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009) (in applying *Avery* to an Illinois Deceptive Trade Practice Act claim, the court found that an infringement that "took place on the Internet and was international in scope" was nonetheless "occurring in Illinois").

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD          - 14 -

In *Google*, an Illinois federal court recently addressed BIPA claims brought by users and non-users under nearly identical circumstances and reasoned as follows:

> The question, then, is whether Google's activities – making face templates of [Plaintiffs] in photographs uploaded automatically from Google Droid devices in Illinois – are an extraterritorial (and therefore not-actionable) application of the [BIPA]. . . . [A]ll of the following are Illinois connections: [Plaintiffs] are Illinois residents; [Plaintiffs'] photographs were taken in Illinois; and [Plaintiffs'] photographs were allegedly "automatically uploaded in Illinois to the cloud-based Google Photos service . . . from an Illinois-based Internet Protocol ('IP') address." [Plaintiffs] also allege that it was in Illinois where Google failed to provide [Plaintiffs] with required disclosures and failed to get [Plaintiffs'] consent. . . . [Taking] the Plaintiffs' allegations as true . . . the alleged violations primarily happened in Illinois.
>
> *          *          *
>
> [Thus] the Court concludes that the Plaintiffs sufficiently allege facts that would deem the asserted violations as having happened in Illinois.

238 F. Supp. 3d at 1101-02. In so holding, the court expressly rejected the same argument Facebook presses here:

> Google contends that the face scans did not occur "primarily and substantially" in Illinois. . . . [based on the] location for the actual scanning of face geometry. In Google's reckoning, the location of the scan ("the place where a biometric identifier is 'collected, captur[ed] . . . . or otherwise obtained") is to be seen as the determinative "situs" of the [BIPA] violation. . . .
>
> But there is no bright-line rule for determining this . . . . ***Even if we do definitely determine that the scanning takes place outside of Illinois, that would not necessarily be dispositive***. []"The place of injury or deception is only one of the circumstances that make up a [] transaction and focusing solely on that fact can create questionable results. If, for example, the bulk of the circumstances that make up a [] transaction occur within Illinois, and the only thing that occurs out-of-state is the injury or deception, it seems to make little sense to say that the [] transaction has occurred outside Illinois."[]

*Id.* at 1102 (quoting *Avery*, 835 N.E.2d at 853; citing *Gros*, 525 F. Supp. 2d at 1024).

The same analysis applies here. Because the overwhelming majority of circumstances relating to Facebook's unauthorized collection of Plaintiffs' biometrics without consent occurred in Illinois, Plaintiffs' BIPA claims took place in Illinois.[28] At the very least, reasonable minds could

---

[28] *See also Jamison*, 778 F. Supp. at 910 (pursuant to *Avery*, plaintiff "clearly ha[d] standing" to sue under ICFA because plaintiff was resident of Illinois, purchased underlying product at a store in Illinois and used the products in Illinois, and because defendants "marketed and sold" the products in Illinois, notwithstanding fact that defendants' "principal place of business [was] outside of Illinois"); *cf., e.g., Avery*, 835 N.E. 2d at 854 (concluding that because the "overwhelming majority of circumstances relating to the disputed transactions in this case – State Farm's claims practices –

disagree as to whether the violations occurred "'primarily or substantially'" in Illinois, and thus a genuine issue of fact remains and summary judgment must be denied. *See, e.g.*, *Google*, 238 F. Supp. 3d at 1102 (rejecting the same argument raised by Facebook: "[T]he Plaintiffs sufficiently allege facts that would deem the asserted violations as having happened in Illinois. . . . [T]here is no bright-line rule for determining this . . . .").

**B.    Facebook's Dormant Commerce Clause Affirmative Defense Does Not Warrant Summary Judgment**

As an apparent afterthought, Facebook also argues that, "[i]f applied here, BIPA would violate" the dormant Commerce Clause. MSJ at 13. Facebook's argument fails twice over because: (1) as discussed above, Facebook's violations of BIPA occurred in Illinois; and (2) Facebook's compliance with BIPA poses no risk of burdening interstate commerce.

The Commerce Clause both affirmatively grants power to Congress to regulate interstate commerce but also implies a negative converse – "a substantive 'restriction on permissible state regulation' of interstate commerce." *Dennis v. Higgins*, 498 U.S. 439, 447 (1991) (quoting *Hughes v. Okla.*, 441 U.S. 322, 326 (1979)); *see also S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87 (1984). This negative implication – that states may not take actions that unduly interfere with the affirmative power of the federal government to regulate interstate commerce – is generally known as the "dormant commerce clause." *See CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 87 (1987). If a state regulation is neutral on its face or only has indirect effects on interstate commerce, the regulation will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *See Pharm. Research & Mfrs. of Am. v. Cty. of Alameda*, 768 F.3d 1037, 1044 (9th Cir. 2014).

Facebook contends the "'practical effect'" of applying BIPA in this case would be to control "'conduct beyond the boundaries'" of Illinois. MSJ at 13 (citing *Healy v. Beer Inst., Inc.*, 491 U.S.

---

occurred outside of Illinois for the out-of-state plaintiffs[,]" plaintiffs "have no cognizable cause of action under the Consumer Fraud Act"); *Int'l Profit Assocs., Inc. v. Linus Alarm Corp.*, 971 N.E. 2d 1183, 1194 (Ill. 2012) (IFCA claim did not occur in Illinois because "the claimant's residence is in Florida, the location of the deception was in Florida, the damages sought in the counterclaim occurred in Florida, and almost all of the communication related to the fraud claims occurred in Florida.").

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD                    - 16 -

324, 336-37 (1989)).  Not true.  As explained above, the photos of Plaintiffs were uploaded from within the state of Illinois from accounts associated with Illinois residents, and, therefore, Facebook could have obtained (but failed to obtain) a statutorily compliant written release for Plaintiffs in Illinois.  Because the photos of Illinois residents were uploaded in Illinois, as determined by IP address, and because Facebook could have but failed to comply in Illinois, the "practical effects" of complying with BIPA are felt entirely in Illinois.  *See Healy*, 491 U.S. at 336.[29,30]

Facebook further argues that complying with BIPA would "overrid[e] the decisions of California and other states."  MSJ at 15.  This is a red herring.  First, as the Court found in *Google* when confronted with the same argument and nearly identical allegations, the question of Facebook's ability to comply with BIPA in Illinois without burdening interstate commerce raises fact questions not capable of resolution as a matter of law.  *See Google*, 238 F. Supp. 3d at 1102.  Moreover, Facebook's assertion that it cannot comply with BIPA in Illinois without overriding its practices in other states is simply incorrect.  Facebook can readily determine whether a particular photograph is subject to the regulations of BIPA – that is, whether a photograph is uploaded from within Illinois – by analyzing whether an Illinois-based IP address is associated with the device

---

[29]   Contrary to Facebook's suggestion that "states [] stay out of this area," MSJ at 15, courts regularly reject dormant Commerce Clause challenges to state laws regulating or prohibiting Internet activity directed at a particular state's consumers.  *See, e.g.*, *MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818, 840-45 (Md. Ct. Spec. App. 2006) (upholding Maryland anti-spam email law); *Ferguson v. Friendfinders, Inc.*, 94 Cal. App. 4th 1255, 1263-66 (2002) (same; California); *State v. Heckel*, 24 P.3d 404, 412 (Wash. 2001) (same; Washington).

[30]   Through the declaration of Omry Yadan, Facebook offers similar elaborate hypotheticals as Shutterfly and Google did in their failed attempt to show that compliance with respect to non-users would be impossible without impacting nationwide business practices.  Regarding the consent of non-users, as the Court in *Google* recognized, BIPA merely requires taking reasonable steps toward compliance and permits obtaining the consent of the "subject of the biometric identifier . . . **or** the subject's legally authorized representative."  740 ILCS 14/15 (b).  If Facebook chooses to continue to scan photos of Illinois residents uploaded from Illinois IP addresses, it could comply (*i.e.*, not act negligently) with respect to non-users by obtaining the electronically signed release of the user and confirming that the user obtained authorization for biometric collection of all persons depicted in the photo.  If the electronically signed written release is not provided for a particular photograph originating from Illinois (*i.e.*, by the user clicking "No" to an on-screen prompt asking if he or she has obtained authorization from all individuals depicted), then the photograph could still be uploaded but Facebook would have to refrain from collecting any scans of face geometry from the Illinois uploaded photograph.  By doing so, Facebook would have taken reasonable steps toward compliance with respect to non-users' BIPA rights.  Alternatively, Facebook could refrain from scanning photos uploaded from Illinois thereby taking BIPA out of the equation altogether.

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD          - 17 -

uploading the photograph.  *See F.T.C. v. Asia Pac. Telecomm., Inc.*, 788 F. Supp. 2d 779, 786 (N.D. Ill. 2011) ("IP addresses correspond to the geographic location of an Internet connection . . . .").[31] Indeed, Facebook already has demonstrated the ability to deal with similar regulation ███████



██████████ [33]  The Ninth Circuit has repeatedly held that such state-specific inconveniences do not violate the dormant Commerce Clause.  *See, e.g.*, *Greater L.A. Agency on Deafness, Inc.*, 742 F.3d 414; *see also Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 961 (N.D. Cal. 2006) (rejecting Target's dormant Commerce Clause challenge to California state law on the ground that "Target could choose to make a California-specific website" and even if

---

[31]    Facebook relies on inapposite cases dealing with regulation of content made widely available on the Internet.  *See, e.g.*, MSJ at 14 (relying on *Am. Booksellers Found. v. Dean*, 342 F.3d 96 (2d Cir. 2003)).  Unlike Facebook's cited cases, this lawsuit involves conduct that can be altered or limited by location.  *See Greater L.A. Agency of Deafness, Inc. v. CNN*, 742 F.3d 414, 432-33 (9th Cir. 2014) (no Commerce Clause burden where law sought to be applied to "videos as they are accessed by California viewers" by a company that "could" engage in targeted activities); *SPGGC v. Blumenthal*, 505 F.3d 183, 195 (2d Cir. 2007) (distinguishing *Am. Booksellers* on grounds that defendant "has readily available" a way to distinguish viewers from different states); *Shoemoney Media Grp., Inc. v. Farrell*, No. 8:09CV131, 2009 WL 1383281, at *3 (D. Neb. May 14, 2009) (discussing Google's ability to prevent Internet advertising from appearing in particular locations); *see also MaryCLE*, 890 A.2d at 844 (distinguishing *Am. Booksellers* on similar grounds); *Ferguson*, 94 Cal. App. 4th at 1264 (distinguishing similar authority).  Even more important than Facebook's ability to limit its conduct by state (*i.e.*, to photos uploaded outside Illinois) is the fact that this case involves Facebook's conduct in Illinois, including its collection of personal biometric information from Illinois residents in Illinois.  Moreover, *Am. Booksellers* and its progeny appear to have been premised on a long-outdated understanding of how the Internet works.  *See* Jack Goldsmith & Alan Sykes, *The Internet and the Dormant Commerce Clause*, 110 Yale L.J. 785, 816 (2001) (noting that those courts "erroneously assume[d] that geographical . . . identification technologies are infeasible, and that in any event technological imperfection renders them useless").



1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD                   - 18 -

1  Target changed "its entire website in order to comply with California law, this does not mean that

2  California is regulating out-of-state conduct").

3      Of course, Facebook knows this full well. Facebook already has the ability to use IP

4  addresses to determine the geographical locations of incoming photographs.[34] *See supra* n.17. And

5  the very same lawyers representing Facebook here made and lost this "overwrought" argument in

6  *Shutterfly*, 2017 U.S. Dist. LEXIS 149604, at *18-*19. Addressing nearly identical circumstances –

7  BIPA's application to photos uploaded from within Illinois to an online platform headquartered

8  outside Illinois – the Court in *Shutterfly* rejected identical dormant Commerce Clause concerns as

9  follows:

10          According to Shutterfly, applying BIPA in this case would . . . [be] especially
    problematic . . . because California, where it is headquartered, previously rejected
11  legislation that would have regulated the collection and storage of biometric data. . . .
    Thus, Shutterfly contends that to apply BIPA to these facts would be to override
12  California's decision against regulating biometric data.

13          This contention is overwrought. Shutterfly cites [cases addressing] . . . laws
    [that] affected out-of-state conduct in a very different way, and to a very different
14  degree, than would result from applying BIPA in this case. . . .

15          [Plaintiff]'s suit, as well as his proposed class, is confined to individuals
    whose biometric data was obtained from photographs uploaded to Shutterfly in
16  Illinois. . . . It is true that the statute requires Shutterfly to comply with certain
    regulations if it wishes to operate in Illinois. But that is very different from
17  controlling Shutterfly's conduct in other states.

18  *Id.*, at *18-*20; *see also Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir.

19  2015) ("[A] state may regulate commercial relationships 'in which at least one party is located in

20  [that state].'") On these facts, there is simply "no basis for concluding that applying BIPA in this

21  case would entail control over out-of-state conduct in a way that would run afoul of the dormant

22  commerce clause." *Shutterfly*, 2017 U.S. Dist. LEXIS 149604, at *21.

23      Thus, just as courts have recognized as to nearly identical misconduct by Google (concerning

24  user and non-user claims) and Shutterfly (concerning non-user claims), Facebook has the ability to

25  reasonably comply with BIPA in Illinois by using IP address location technology to limit its

26

---

27  [34] *Supra* Ex. 17, FBBIPA_00039637 (Form 10-K filed 01/29/15 for the fiscal year ended December
    31, 2014: "In addition, our data regarding the geographic location of our users is estimated based on
28  a number of factors, such as the user's IP address and self-disclosed location.")

biometrics collection practices to photos uploaded from the 49 states other than Illinois. Indeed,

██████████████████████████████████████████████████████████████████████████

███████████████████████ [35] *See supra* n.17. Facebook cites no legal authority, nor is there any,

demonstrating that such an approach would result in Illinois projecting its regulatory policies into

other states in violation of the dormant Commerce Clause.

## V. IN THE ALTERNATIVE, FACEBOOK'S MOTION SHOULD BE DEFERRED

As detailed above, Facebook's motion for summary judgment should be denied in its

entirety. In the alternative, Plaintiffs request under Rule 56(d) that the Court defer Facebook's

motion until the close of expert discovery, consistent with the Court's scheduling order. *See* Fed. R.

Civ. P. 56(d).[36] To prevail under Rule 56(d), a party must show: (1) by way of affidavit, the specific

facts it hopes to elicit from further discovery; (2) the facts sought exist or are likely to exist; and

(3) the sought-after facts are relevant to opposing summary judgment. *See Doyle v. City of Medford*,

327 F. App'x 702, 703 (9th Cir. 2009) (citing *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan

Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008)).

"[T]he purpose of Rule 56[(d)] is to prevent 'railroading' the non-moving party through a

premature motion for summary judgment before the non-moving party has had the opportunity to

make full discovery." *1443 Chapin St., LP v. PNC Bank, Nat'l Ass'n*, 258 F.R.D. 186, 187 (D.D.C.

2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). "'Although Rule 56[(d)] facially

gives judges the discretion to disallow discovery when the non-moving party cannot yet submit

evidence supporting its opposition, the Supreme Court has restated the rule as *requiring,* rather than

merely permitting, discovery "where the non-moving party has not had the opportunity to discover

information that is essential to its opposition." "'*Burlington N. Santa Fe R.R. v. Assiniboine & Sioux*

---

[35] ██████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████

[36] Rule 56(d) was formerly Rule 56(f) and became Rule 56(d) as part of the 2010 Amendments to Rule 56. *See* Fed. R. Civ. P. 56, Advisory Committee Notes, 2010 Amendment to Rule 56 ("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).").

*Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). "Especially where, as here, documentation or witness testimony may exist that is dispositive of a pivotal question . . . lightning-quick summary judgment motions can impede informed resolution of fact-specific disputes." *Id.* at 774.

Ultimately, this case will turn in part on expert testimony explaining (and disputing) what precisely Facebook's technology does, to whom, and how it works. Facebook's premature motion is premised on declarations and testimony from Facebook engineers opining on how Facebook's technology purportedly works, and attempts to create the appearance of "no factual issues" by only allowing the Court to see their self-serving side of the story, while blocking Plaintiffs from discovering the truth. As detailed in Plaintiffs' Rule 56(d) declaration,[37] Facebook's motion comes while relevant documents remain unproduced, before expert discovery has even begun, and months before summary judgment motions are due per the Court's scheduling order. Additionally, as set forth in the Rule 56(d) declaration of Gullen's counsel, Omry Yadan's deposition should be re-opened in light of alleged revelations contained in his declaration concerning Gullen's photos. Further, Plaintiffs' expert should be permitted to review the relevant source code implicated by Yadan's statements regarding Gullen.

Where, as here, critical expert discovery has yet to even commence, deferral under Rule 56(d) is warranted. "Generally, a district court should grant a Rule 56[d] motion where the party opposing summary judgment timely seeks relief and specifically identifies relevant information for which there is a basis to believe the information sought actually exists."[38] *Am. Guar. & Liab. Ins. Co.*, 334 F. App'x at 840 (citing *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1472 (9th Cir. 1986)). "'[S]ummary judgment should not be granted while [an] opposing party

---

[37] ██████████████

[38] In *Am. Guar. & Liab. Ins. Co. v. Westchester Surplus Lines Ins. Co.*, 334 F. App'x 839, 840 (9th Cir. 2009), the Ninth Circuit found it an abuse of discretion to deny a Rule 56(d) motion where the case management order scheduled dispositive motions months later; *see Bio-Med. Research, Ltd. v. Thane Int'l, Inc.*, 249 F. App'x 539, 541 (9th Cir. 2007).

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD      - 21 -

1    timely seeks discovery of potentially favorable information.'" *State Dep't of Soc. Servs. v. Leavitt*,

2    523 F.3d 1025, 1034 (9th Cir. 2008).[39]

3    **VI.    CONCLUSION**

4         For the foregoing reasons, Facebook's motion for summary judgment should be denied in its

5    entirety.  Summary judgment should be entered for Plaintiffs on Facebook's waived affirmative

6    defense of extraterritoriality under Illinois law.  In the alternative, Facebook's motion should be

7    continued until after the close of expert discovery, consistent with the Court's scheduling order.

8    DATED:  December 22, 2017              ROBBINS GELLER RUDMAN
                                               & DOWD LLP
9                                          SHAWN A. WILLIAMS
                                           DAVID W. HALL

10

11                                              s/David W. Hall
12                                          DAVID W. HALL

13                                         Post Montgomery Center
                                           One Montgomery Street, Suite 1800
14                                         San Francisco, CA  94104
                                           Telephone:  415/288-4545
15                                         415/288-4534 (fax)

16                                         ROBBINS GELLER RUDMAN
                                               & DOWD LLP
17                                         PAUL J. GELLER*
                                           STUART A. DAVIDSON*
18                                         MARK DEARMAN*
                                           CHRISTOPHER C. MARTINS*
19                                         120 East Palmetto Park Road, Suite 500
                                           Boca Raton, FL  33432
20                                         Telephone:  561/750-3000
                                           561/750-3364 (fax)

21

22

23

24

25   [39] *See also Deere & Co. v. Ohio Gear*, 462 F.3d 701 (7th Cir. 2006) (summary judgment based on
     one-sided opinion not permitted); *Vance v. United States*, 90 F.3d 1145 (6th Cir. 1996) (expert
26   discovery and opinions typically not obtained and explored until background discovery and
     documents have been obtained); *1443 Chapin St.*, 258 F.R.D. at 187-88 (where plaintiff could
27   identify topics on which expert discovery had not taken place, motion for summary judgment was
     premature).
28

LABATON SUCHAROW LLP
JOEL H. BERNSTEIN*
CORBAN S. RHODES*
ROSS M. KAMHI*
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)

EDELSON PC
JAY EDELSON*
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Telephone: 312/589-6370
312/589-6378 (fax)

*Attorneys for Plaintiffs Adam Pezen, Carlo Licata
and Nimesh Patel*

* = Admitted *pro hac vice*

DATED: December 22, 2017

CAREY RODRIGUEZ MILIAN
   GONYA, LLP
DAVID P. MILIAN
FRANK S. HEDIN


                              s/David P. Milian
                         DAVID P. MILIAN

1395 Brickell Avenue, Suite 700
Miami, FL 33131
Telephone: 305/371-7474
305/372-7475 (fax)
fhedin@careyrodriguez.com
dmilian@careyrodriguez.com


BOTTINI & BOTTINI, INC.
FRANK A. BOTTINI, JR.
ALBERT Y. CHANG
YURY A. KOLESNIKOV
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Telephone: 858/914-2001
858/914-2002 (fax)
fbottini@bottinilaw.com
achang@bottinilaw.com
ykolesnikov@bottinilaw.com

*Attorneys for Plaintiff Frederick William Gullen,
and the Putative Class of Non-Users*

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY
JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD          - 23 -

## ATTESTATION

I, David W. Hall, hereby attest, pursuant to N.D. Cal. Local Rule 5-1(i)(3), that concurrence to the filing of this document has been obtained from each signatory.

s/David W. Hall
_____
DAVID W. HALL

1339802_1

PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFFS' DEFERRAL REQUEST UNDER 56(d) - 3:15-cv-03747-JD        - 24 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2107, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 22, 2107.

s/David W. Hall
DAVID W. HALL

ROBBINS GELLER RUDMAN
   & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail: dhall@rgrdlaw.com

# Mailing Information for a Case 3:15-cv-03747-JD In re Facebook Biometric Information Privacy Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Rafey Sarkis Balabanian**
  rbalabanian@edelson.com,docket@edelson.com

- **James E Barz**
  jbarz@rgrdlaw.com

- **Joel H. Bernstein**
  jbernstein@labaton.com,RKamhi@labaton.com,JGardner@labaton.com,kgutierrez@labaton.com,cvillegas@labaton.com,sauer@labaton.com,electroniccasefiling@lab

- **Stuart Andrew Davidson**
  sdavidson@rgrdlaw.com,5147990420@filings.docketbird.com,jdennis@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Mark Dearman**
  mdearman@rgrdlaw.com,ppuerto@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Mark J. Dearman**
  mdearman@rgrdlaw.com

- **Jay Edelson**
  jedelson@edelson.com,docket@edelson.com

- **Amanda M. Frame**
  aframe@rgrdlaw.com

- **Paul J. Geller**
  pgeller@rgrdlaw.com,swinkles@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Paul Jeffrey Geller**
  pgeller@rgrdlaw.com

- **Lauren R Goldman**
  lrgoldman@mayerbrown.com,mrayfield@mayerbrown.com,jmarsala@mayerbrown.com

- **David William Hall**
  dhall@rgrdlaw.com,inavarrete@rgrdlaw.com

- **Frank S Hedin**
  fhedin@careyrodriguez.com,dmilian@careyrodriguez.com,lmejia@careyrodriguez.com

- **Lily E. Hough**
  lhough@edelson.com,docket@edelson.com

- **Ross M Kamhi**
  rkamhi@labaton.com,kgutierrez@labaton.com,electroniccasefiling@labaton.com

- **David Philip Milian**
  DMilian@CareyRodriguez.com,ejimenez@careyrodriguez.com,ecf@careyrodriguez.com

- **John Nadolenco**
  jnadolenco@mayerbrown.com,rjohns@mayerbrown.com,los-
  docket@mayerbrown.com,jaustgen@mayerbrown.com,tstruwe@mayerbrown.com,gtmiller@mayerbrown.com

- **Alexander Nguyen**
  anguyen@edelson.com,docket@edelson.com

- **Archis A. Parasharami**
  aparasharami@mayerbrown.com

- **Archis Ashok Parasharami**
  aparasharami@mayerbrown.com,wdc.docket@mayerbrown.com

- **Matthew David Provance**
  mprovance@mayerbrown.com,courtnotification@mayerbrown.com

- **Corban S Rhodes**
  crhodes@labaton.com,kgutierrez@labaton.com,sauer@labaton.com,electroniccasefiling@labaton.com

- **Benjamin Harris Richman**
  brichman@edelson.com,docket@edelson.com

- **Frank Anthony Richter**
  frichter@rgrdlaw.com

- **Alexander Glenn Tievsky**
  atievsky@edelson.com,docket@edelson.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,smorris@rgrdlaw.com,ptiffith@rgrdlaw.com,dhall@rgrdlaw.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Vincent          J. Connelly
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

Facebook Inc.
Cooley LLP
3000 El Camino Real
Five Palo Alto Square
Palo Alto, CA 94306-2155