MAYER BROWN LLP
John Nadolenco (SBN 181128)
350 South Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
jnadolenco@mayerbrown.com

Lauren R. Goldman (*pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2647
lrgoldman@mayerbrown.com

*Counsel for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE FACEBOOK BIOMETRIC INFORMATION PRIVACY LITIGATION<br><br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS<br>───────────────────────────<br>FREDERICK WILLIAM GULLEN, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>FACEBOOK, INC.,<br><br>    Defendant. | **FACEBOOK'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT BASED ON ILLINOIS' EXTRATERRITORIALITY DOCTRINE AND THE CONSTITUTION'S DORMANT COMMERCE CLAUSE**<br><br>Master Docket No.: 3:15-CV-03747-JD<br><br>Date: January 25, 2018<br>Time: 10:00 a.m.<br>Location: Courtroom 11<br><br>Hon. James Donato<br><br><br>Case No. 3:16-cv-00937-JD |

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .......................................................................................................... 3

I.   PLAINTIFFS' CLAIMS FAIL UNDER ILLINOIS' EXTRATERRITORIALITY
     DOCTRINE ................................................................................................... 3

     A.   Facebook Has Not "Waived" Its Extraterritoriality Argument ............................. 3

          1.   Plaintiffs Have The Burden Of Proof On Extraterritoriality .................... 3

          2.   Plaintiffs Cannot Claim Unfair Prejudice Because They Were Well
               Aware Of Facebook's Extraterritoriality Argument ................................. 5

     B.   Facebook's Evidence Is More Than Sufficient For Summary Judgment,
          And Plaintiffs Have Not Disputed It ........................................................ 5

     C.   Plaintiffs' Proposed Application of BIPA Is Impermissibly Extraterritorial ......... 7

          1.   Any Alleged BIPA Violation Took Place Outside Illinois On
               Facebook's Servers ...................................................................... 7

          2.   There Is No Evidence Of Any Other Relevant Illinois Connection ........ 10

II.  IF APPLIED HERE, BIPA WOULD VIOLATE THE CONSTITUTION'S
     DORMANT COMMERCE CLAUSE ............................................................... 11

     A.   The Statute Would Regulate Out-Of-State Conduct ................................... 12

     B.   The Statute Would Subject Facebook To Inconsistent Legal Regimes ............... 13

III. THERE IS NO BASIS FOR DEFERRING FACEBOOK'S MOTION ....................... 14

IV.  MR. GULLEN HAS NOT ADDRESSED THE FLAWS UNIQUE TO HIS CASE ...... 15

CONCLUSION ..................................................................................................... 15

**Cases**

*Am. Floral Servs., Inc. v. Florists' Transworld Deliver Ass'n,*
   633 F Supp. 201 (N.D. Ill. 1986) ............................................................................10

*Am. Top English, Inc. v. Lexicon Marketing (USA) Inc.,*
   2004 WL 1403695 (N.D. Ill. June 21, 2004) ...........................................................4

*Avery v. State Farm Mut. Auto. Ins. Co.,*
   216 Ill. 2d 100 (2005) .................................................................................1, 3, 8

*Burlington N. Santa Fe. R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck
   Reservation,*
   323 F.3d 767 (9th Cir. 2003) ...................................................................................15

*In re Capacitors Antitrust Litig.,*
   2016 WL 5724960 (N.D. Cal. Sept. 30, 2016) .......................................................15

*David K. Lindemuth Co. v. Shannon Fin. Corp.,*
   637 F. Supp. 991 (N.D. Cal. 1986) ............................................................................8

*Dobrowolski v. Intelius, Inc.,*
   2017 WL 3720170 (N.D. Ill. Aug. 29 2017) .............................................................4

*Evans v. IAC/Interactive Corp.,*
   244 F.R.D. 568 (C.D. Cal. 2007) .............................................................................11

*Graham v. Gen. U.S. Grant Post No. 2665, V.F.W.,*
   43 Ill. 2d 1 (1969) ...........................................................................................2, 4, 8, 9

*Gros v. Midland Credit Mgmt.,*
   525 F. Supp. 2d 1019 (N.D. Ill. 2007) .......................................................................8

*H.R.R. Zimmerman Co. v. Tecumseh Prods. Co.,*
   2002 WL 31018302 (N.D. Ill. Sept. 9, 2002) ...........................................................4

*Hackett v. BMW of N. Am., LLC,*
   2011 WL 2647991 (N.D. Ill. June 30, 2011) .........................................................4, 8

*Healy v. Beer Inst., Inc.,*
   491 U.S. 324 (1989) ...................................................................................................12

*Hoffman v. Tonnemacher,*
   593 F.3d 908 (9th Cir. 2010) ...................................................................................15

*Jamison v. Summer Infant (USA), Inc.,*
   778 F. Supp. 2d 900 (N.D. Ill. 2011) .........................................................................8

*Korando v. Uniroyal Goodrich Tire Co.*,
   159 Ill. 2d 335 (1994) ........................................................................................3

*Landau v. CNA Fin. Corp.*,
   381 Ill. App. 3d 61 (2008) ..................................................................................4

*Magana v. Commonwealth of N. Mariana Islands*,
   107 F.3d 1436 (9th Cir. 1997) ............................................................................5

*Monroy v. Shutterfly, Inc.*,
   2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ............................................. 8, 13-14

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
   210 F.3d 1099 (9th Cir. 2000) ............................................................................5

*Norwood v. Vance*,
   591 F.3d 1062 (9th Cir. 2010) ............................................................................5

*Pac. Merch. Shipping Ass'n v. Goldstene*,
   639 F.3d 1154 (9th Cir. 2011) ..........................................................................13

*Pope v. Kaleta*,
   90 Ill. App. 2d 61 (1967) ...................................................................................3

*Publius v. Boyer-Vine*,
   237 F. Supp. 3d 997 (E.D. Cal. 2017)...............................................................12

*Rivera v. Google Inc.*,
   238 F. Supp. 3d 1088 (N.D. Ill. 2017) .......................................................8, 10, 13

*Sam Francis Found. v. Christies, Inc.*,
   784 F.3d 1320 (9th Cir. 2015) ....................................................................12, 14

*State of Cal. ex. rel. Cal. Dep't of Toxic Substances Control v. Campbell*,
   138 F.3d 772 (9th Cir. 1998) ............................................................................14

*Valley Air Serv. v. Southaire, Inc.*,
   2009 WL 1033556 (N.D. Ill. Apr. 16, 2009) ........................................................8

*Vroegh v. J&M Forklift*,
   165 Ill. 2d 523 (1995) ........................................................................................3

*Vulcan Golf, LLC v. Google Inc.*,
   552 F. Supp. 2d 752 (N.D. Ill. 2008) ...............................................................4, 8

*Xechem, Inc. v. Bristol-Myers Squibb Co.*,
   372 F.3d 899 (7th Cir. 2004) ..............................................................................4

**Statutes And Rules**

735 ILCS 5/2-613(d)..............................................................................................................3

740 ILCS 14/10..................................................................................................................10

Fed. R. Civ. P. 12(b)(6)......................................................................................................4

Fed. R. Civ. P. 56(c)(4)......................................................................................................6

Fed. R. Civ. P. 56(d)......................................................................................................2, 14

FACEBOOK'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:15-CV-03747-JD & CASE NO. 3:16-CV-00937-JD

# PRELIMINARY STATEMENT

Clearly concerned about the viability of their claims, and unable to dispute the material facts, plaintiffs offer a host of erroneous procedural arguments in an attempt to distract the Court from the two straightforward points at the heart of this motion for summary judgment: The conduct giving rise to this lawsuit—Facebook's facial-recognition process and its creation and storage of templates—takes place on Facebook's servers outside Illinois. And plaintiffs have offered no evidence of any relevant Illinois connection other than their own residency, which the Illinois courts have repeatedly deemed insufficient. As a matter of both Illinois and federal law, BIPA cannot be applied to conduct that takes place "primarily and substantially" *outside* Illinois. Plaintiffs' contrary position is built on three principal misstatements of the law and the record.

*First*, plaintiffs try to reverse the burden of proof. They contend that "extraterritoriality under Illinois law [ ] is an affirmative defense" (Pl. Opp'n at 8), and that therefore Facebook "waived" this point by failing to raise it in its answer (*id.* at 9); Facebook cannot carry its "evidentiary burden" with "self-serving employee declarations" (*id.* at 10); and plaintiffs had "no obligation to produce anything" (*id.* at 7). The premise is wrong, and all three conclusions fall along with it. Extraterritoriality is not an affirmative defense. Plaintiffs have the burden of proving that their claims satisfy this doctrine, because if they do not, they have "*no cause of action* under" the Illinois statute they invoke. *Avery*, 216 Ill. 2d at 190 (emphasis added).

*Second*, plaintiffs argue that the Court cannot consider the evidence in Facebook's motion "[w]ithout expert discovery." Pl. Opp'n at 11. This argument is baffling. Facebook's motion rests on two simple facts: (a) Facebook conducts its facial-recognition analysis, and creates and stores templates, on its servers; and (b) those servers are located outside Illinois. These facts are not subject to legitimate dispute; plaintiffs have not disputed them; and they do not even say how they *could* dispute them if they had expert discovery. Facebook's expert, Dr. Matthew Turk, did not offer any opinions about Facebook's network architecture; accordingly, his deposition will shed no additional light on Facebook's motion. And the report of *plaintiffs'*

expert, Dr. Atif Hashmi, served the same day as plaintiffs' opposition to summary judgment, contains an illustration *confirming* that facial recognition takes place on Facebook's servers:



*Third*, when plaintiffs finally turn to the substance, their entire argument is based on factual assertions that are both irrelevant and unsupported. The location of Facebook's facial-recognition analysis is dispositive because it is a "necessary element of liability." *Graham*, 43 Ill. 2d at 4. And even if it were *not* dispositive, plaintiffs have failed to counter this weight with any other nexus between their BIPA claims and Illinois. Plaintiffs offer a laundry list of purported Illinois connections, but each one is (a) merely a restatement of their claim that they are Illinois residents and (b) *unaccompanied by any record support or citations*.

Facebook filed a separate brief as to Mr. Gullen, the non-user plaintiff, pointing out that the only photo of him on Facebook that was subjected to face detection was uploaded from Michigan, a fact pattern that his lawyer conceded "may not be a violation of BIPA." That brief also explained that on Mr. Gullen's theory, Facebook would have to disable facial recognition *worldwide* to comply with BIPA. Mr. Gullen offers absolutely no response to these points.

Summary judgment should be granted. And as discussed below, plaintiffs have offered no basis to defer Facebook's motion under Rule 56(d). They cannot postpone the inevitable.

**ARGUMENT**

## I. PLAINTIFFS' CLAIMS FAIL UNDER ILLINOIS' EXTRATERRITORIALITY DOCTRINE.

### A. Facebook Has Not "Waived" Its Extraterritoriality Argument.

Plaintiffs' lead argument is that "extraterritoriality under Illinois law [ ] is an affirmative defense," and that by failing to plead this "defense" in its answer, "Facebook waived it." Pl. Opp'n at 9. That is wrong for two independent reasons.

#### 1. Plaintiffs Have The Burden Of Proof On Extraterritoriality.

Plaintiffs cite no Illinois case holding that extraterritoriality is an affirmative defense, and Facebook is aware of none. "An affirmative defense . . . admits the legal sufficiency of the cause of action. It assumes that the defendant would otherwise be liable, if the facts alleged are true, but asserts new matter by which the plaintiff's apparent right to recovery is defeated." *Vroegh v. J&M Forklift*, 165 Ill. 2d 523, 530 (1995). An argument that "attacks the legal sufficiency of the plaintiff's claim," rather than "giving color to the cause of action," is not an affirmative defense. *Id.* at 530-31; *see Korando v. Uniroyal Goodrich Tire Co.*, 159 Ill. 2d 335, 344 (1994).[1]

An argument based on Illinois' extraterritoriality doctrine denies that the plaintiff can *invoke the statute to begin with*. "[N]onliability under [a statute] . . . is not an affirmative defense"; it "is a denial of plaintiff's allegation that liability can be based upon the [statute]." *Pope v. Kaleta*, 90 Ill. App. 2d 61, 66 (1967). In *Avery*, the Illinois Supreme Court concluded that "the General Assembly did not intend the Consumer Fraud Act to *apply* to fraudulent transactions which take place outside Illinois." 216 Ill. 2d at 185 (emphasis added). And the court then held that "[f]our of the five named plaintiffs . . . ha[d] *no cause of action* under the Act" because they had alleged conduct that did not occur primarily and substantially in Illinois. *Id.* at 190 (emphasis added). A legal principle that determines *whether the plaintiff has a cause of action* is not an affirmative defense under any reasonable interpretation of that term.

---

[1] Examples include "payment, release, satisfaction, discharge, license, fraud, duress, estoppel, laches, statute of frauds, [and] illegality." 735 ILCS 5/2-613(d). The first is illustrative; it admits that the plaintiff was owed a payment, but asserts that it already occurred.

That is why numerous Illinois courts have granted pre-answer *motions to dismiss* based on the plaintiffs' failure to *allege* facts establishing their ability to bring a cause of action under the statute. *See* Def. MSJ at 7-9, 11-12; *e.g.*, *Graham*, 43 Ill. 2d at 8 ("the trial court properly dismissed count I of the amended complaint"); *Landau*, 381 Ill. App. 3d at 61-62 (affirming dismissal based on extraterritoriality doctrine); *Vulcan Golf*, 552 F. Supp. 2d at 775 (dismissing claim because "the plaintiffs point to no allegations that plausibly suggest that the purported domain scheme occurred primarily and substantially in Illinois"); *Hackett*, 2011 WL 264799, at *2 (dismissing because "Plaintiff fail[ed] to show that the fraud occurred in Illinois"). Plaintiffs write off these cases in a footnote, asserting that "[e]ach simply dismissed where an extraterritoriality affirmative defense appeared on the face of the complaint." Pl. Opp'n at 9. That assertion has no basis in the opinions. In general, "orders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). If these courts had drawn the conclusion that an affirmative defense was apparent from the complaints, they would have said so.

The cases plaintiffs cite (at 8) are not to the contrary. In *H.R.R. Zimmerman Co. v. Tecumseh Products Co.*, 2002 WL 31018302 (N.D. Ill. Sept. 9, 2002), the court granted the defendant leave to add an affirmative defense asserting that the statute at issue was limited to sales taking place in Illinois, but never suggested that the defendant was *required* to plead this issue, or that it bore the burden of proof. *Id.* at *3, *5. *American Top English, Inc. v. Lexicon Marketing (USA) Inc.*, 2004 WL 1403695 (N.D. Ill. June 21, 2004), supports *Facebook's* position; the court dismissed a claim under Rule 12(b)(6) because the plaintiff "ha[d] not alleged" that its claim arose within Illinois. *Id.* at *4. And although the court in *Dobrowolski v. Intelius, Inc.*, 2017 WL 3720170 (N.D. Ill. Aug. 29 2017), referred to five of the defendant's arguments (including an extraterritoriality argument) collectively as "affirmative defenses," it declined to reach these issues because it decided the case on a different ground, *id.* at *9; to the extent this dicta is inconsistent with Facebook's position, it conflicts with Illinois law.

## 2. Plaintiffs Cannot Claim Unfair Prejudice Because They Were Well Aware Of Facebook's Extraterritoriality Argument.

Even if the extraterritoriality doctrine *were* an affirmative defense, Facebook would not have waived it. The Ninth Circuit "ha[s] liberalized the requirement that defendants must raise affirmative defenses in their initial pleadings"; they may be raised at any time so long as "the delay does not prejudice the plaintiff." *Magana v. Commonwealth of N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997); *see Norwood v. Vance*, 591 F.3d 1062, 1076 (9th Cir. 2010). Plaintiffs do not claim any such prejudice, nor could they: Their motion for class certification, filed shortly *before* Facebook's summary judgment motion, expresses their "*expect[ation]* that Facebook . . . will object to certification of the class on the ground[] of extraterritoriality," without suggesting that this position was waived. Dkt. 255 at 12 (emphasis added).

## B. Facebook's Evidence Is More Than Sufficient For Summary Judgment, And Plaintiffs Have Not Disputed It.

Plaintiffs next quibble with the *form* of evidence that Facebook submitted to support its motion. Pl. Opp'n at 10-12. They say that the declaration and testimony Facebook submitted are "self-serving," that this evidence "hinges on credibility determinations that must await the trier of fact," and that "expert discovery" is necessary. *Id.* These arguments are premised on plaintiffs' incorrect assumption that "Facebook bears the burden of persuasion at trial." *Id.* at 10. Because plaintiffs have the ultimate burden, Facebook could satisfy its *initial* burden at summary judgment simply by "show[ing] that the nonmoving party does not have enough evidence of an essential element." *Nissan Fire*, 210 F.3d at 1102; *see* Def. MSJ at 6. But it has done much more. And critically, plaintiffs have offered absolutely no evidence to *dispute* the key facts.

Facebook submitted a sworn declaration and deposition testimony from two engineers who were instrumental to the development of its facial-recognition technology. *See* Def. MSJ at 3-5. Facebook also submitted documentary evidence from its production to support each of the key factual propositions. *See id.* Based on all of this evidence, Facebook made two simple points: (1) its facial-recognition analysis, and the creation and storage of templates, take place on Facebook's servers; and (2) those servers are all outside of Illinois. *Id.*

Plaintiffs do not contest Facebook's showing—they do not offer any evidence to dispute it, they do not seriously contend even that they *could* come up with more evidence to dispute it, and the evidence that they *have* submitted *confirms* what Facebook said. On the same day they filed their brief, they served a report from their retained expert, Dr. Hashmi, that expressly relies on, and reiterates, the facts stated by Messrs. Yadan and Taigman. █████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████. And Dr. Hashmi's report contains a graphic demonstrating that all the work is done by the servers once a photo is uploaded. *See* p. 2 *supra*.

Because they cannot dispute Facebook's evidence, plaintiffs are reduced to denigrating it as "self-serving" and lacking in "credibility." Pl. Opp'n at 11-12. These arguments are meritless. First, it was entirely proper for Facebook to rely on a declaration and deposition testimony to support its motion: Rule 56(c)(4) expressly contemplates this approach, requiring only that a witness have "personal knowledge" and "competen[ce] to testify on the matters"; Messrs. Yadan and Taigman plainly qualify. Second, plaintiffs have *already deposed these witnesses extensively* on the relevant issues; indeed, they *elicited* most of the testimony that Facebook relied on in its brief. *See* Yadan Dep. (Ex. 3 to Provance Decl.) at 88-90, 92-95, 98-99, 111-12, 129-33, 150-51, 154, 158, 173, 176-77, 179, 221-22, 227, 283-84; Taigman Dep. (Ex. 4 to Provance Decl.) at 241, 285-86, 363, 368. Plaintiffs offer no concrete attack on the engineers' credibility.[2] Third, Facebook *also* supported each key fact with documents produced during discovery. Def. MSJ at 3-5. There is no real dispute, much less a dispute of material fact.

[2] Plaintiffs briefly assert that "Mr. Yadan's declaration directly contradicts his earlier testimony" because he answered "I don't know" to the question whether "there is a particular server that houses the *FB Source [code] repository*"; they suggest that this somehow "contrast[s]

**C.      Plaintiffs' Proposed Application of BIPA Is Impermissibly Extraterritorial.**

Plaintiffs devote only four pages of their brief to the merits of the extraterritoriality issue. Pl. Opp'n at 12-16.  They "agree" with Facebook that "BIPA does not apply extraterritorially," and that they can invoke the statute only if the asserted violation took place "primarily and substantially" in Illinois.  Pl. Opp'n at 12 & n.24; *see* Def. MSJ at 6-7.  They also agree that the "violation" asserted here is Facebook's alleged "collection of Plaintiffs' biometrics without consent."  Pl. Opp'n at 15; *see* Def. MSJ at 8.  Thus, any alleged statutory violation took place on Facebook's servers outside of Illinois.  And even if that were not dispositive, plaintiffs offer no evidence that their proposed application of BIPA is domestic.  *See* Def. MSJ at 8-13.

**1.      Any Alleged BIPA Violation Took Place Outside Illinois On Facebook's Servers.**

Facebook demonstrated that (a) the most important factor in the extraterritoriality analysis is the location of the alleged statutory violation (Def. MSJ at 8-10); and (b) Facebook's facial-recognition analysis and storage of data take place on its servers outside of Illinois (*id.* at 3-5, 10-11).  Critically, plaintiffs do not dispute either of these points.  But they assert that Facebook cannot prevail based on "the location of a few computer servers sitting in warehouses in states other than Illinois" because "[s]erver location is not the most significant factor in determining the situs of the [BIPA] violation."  Pl. Opp'n at 13-14.  They contend that because "BIPA is a statute about *informed consent*," the alleged BIPA violation occurs where Facebook "failed to provide BIPA-required notice" and "failed to get BIPA-required consent."  *Id.* at 13.

Notwithstanding plaintiffs' flippant (and telling) remarks, it is not just that "a few" of Facebook's servers are outside Illinois—they *all* are.  Yadan Decl. (Dkt. 257-9) ¶¶ 6-7.  And these servers are not "sitting in warehouses"—they are analyzing and storing the data *on which*

---

. . . [with] his proclaimed expertise in his declaration."  Pl. Opp'n at 11 & n.23 (emphasis added) (quoting Yadan Dep. at 191).  There is no contradiction:  The location of the source code repository has nothing to do with the location of the facial-recognition analysis.  More broadly, as he said both at his deposition and in his declaration, Mr. Yadan does not know every single detail about how Facebook's algorithm works.  Yadan Decl. (Dkt. 257-9) ¶ 10.  But he *does* know—and gave extensive testimony about—the network architecture, *i.e.*, the *location* of each step of the process, either server-side or client-side.  *See* p. 6 *supra*.

*plaintiffs' claims depend*. To be sure, plaintiffs' claims *also* depend on whether Facebook failed to obtain their consent before performing these analyses. But as Facebook explained (Def. MSJ at 12-13)—to no response—that circumstance cannot supply a material Illinois connection.

First, this element of plaintiffs' claims depends on the allegation that Facebook *did not act*—that it did *not* give notice and did *not* get consent—and "[t]here is no 'place' where [an] omission occur[s]." *David K. Lindemuth*, 637 F. Supp. at 994. For notice-and-consent statutes, the extraterritoriality inquiry is coherent only if it focuses on the *actions* that the defendant allegedly took to *trigger* the statutory duties—here, the alleged collection and storage of data. *Cf. Vulcan Golf*, 552 F. Supp. 2d at 775. The *failure* to act has no meaningful "location."

Second, and relatedly, plaintiffs' assertion that Facebook failed to provide notice and obtain their consent "in Illinois" is nothing more than a restatement of the fact that they are Illinois residents—which Illinois courts have consistently found insufficient if the defendant's allegedly violative *conduct* took place outside the state. Def. MSJ at 11-12 (citing *Graham*, *Avery*, *Vulcan Golf*, *Valley Air*, and *Hackett*). In declining to give BIPA extraterritorial effect, the General Assembly made a deliberate policy choice to protect its residents' biometric data but to permit them to sue only when the unauthorized collection and storage occurs in Illinois. *See* Def. MSJ at 7; *Graham*, 43 Ill. 2d at 6-8. Plaintiffs offer no response to this point. And in the cases plaintiffs cite where the extraterritoriality doctrine was deemed satisfied (Pl. Opp'n at 12-14), the plaintiffs alleged several Illinois connections *in addition* to their residency. *See Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 910 (N.D. Ill. 2011) (plaintiff purchased the product at issue in Illinois, and used the product in Illinois, and the defendants "marketed and sold" the product in Illinois); *Gros v. Midland Credit Mgmt.*, 525 F. Supp. 2d 1019, 1024 (N.D. Ill. 2007) (in-state connections included "[plaintiff's] residence, the location of the alleged harm, . . . , and the site of [plaintiff's] communications with [defendant]").

Third, to the extent the absence of notice and consent contributes to the extraterritoriality analysis, the salient fact is not the location of the *plaintiffs*; it is the location of *Facebook*'s

creation of, decisions about, and issuance of its disclosures (which plaintiffs claim fail to satisfy BIPA). As discussed in Part I.C.2, there is no evidence that any of this occurred in Illinois.

Most fundamentally, even if Facebook's alleged failure to give notice and obtain consent *did* occur "in Illinois," there can be no question that Facebook's facial-recognition analysis is still a "necessary element of liability" under the Supreme Court's decision in *Graham*. 43 Ill. 2d at 4. In a two-sentence footnote, plaintiffs say that whereas the law in *Graham* "focused entirely on injuries from intoxication," "BIPA . . . focuses on informed consent before collection of biometric data." Pl. Opp'n at 14 n.26. Plaintiffs do not explain why this distinction matters, and it is illusory. Like BIPA (and most statutes), the Dram Shop Act regulated *conduct* that *resulted* in an injury: It provided that anyone injured by a drunk person could sue "any person who *by selling or giving alcoholic liquor[] cause[d] the intoxication*." 43 Ill. 2d at 3 (emphasis added). Although the plaintiff (the injured party) was a "resident[] of Illinois," and the "selling of alcoholic liquor" (the prohibited conduct) took place in Illinois, these connections were insufficient because "the automobile accident causing the plaintiff's injuries" was "[e]ssential to defendants' liability" and "occurred in Wisconsin." *Id.* at 2, 4. If the out-of-state car accident in *Graham* (*after* the defendants' liquor sale) was "essential to defendants' liability," then surely Facebook's out-of-state collection and storage of plaintiffs' alleged biometric data is equally "essential to [its] liability" and likewise bars the application of BIPA. *See Rivera*, 238 F. Supp. 3d at 1101 (key "question" under extraterritoriality doctrine "is whether Google's activities— making face templates of [the plaintiffs] in photographs"—"are an extraterritorial . . . application of" BIPA"); *Monroy*, 2017 WL 4099846, at *6 (analysis depended on "where the actual scan of Monroy's face geometry took place, and where the scan was stored").[3]

---

[3] Plaintiffs argue that *Rivera* "expressly rejected the same argument Facebook presses here" because it said that "[e]ven if we do definitively determine that the scanning takes place outside of Illinois, that would not necessarily be dispositive." Pl. Opp'n at 15 (quoting 238 F. Supp. 3d at 1102). Not so. The court made clear that the location of "Google's activities" would be the critical factor in the extraterritoriality analysis, 238 F. Supp. 2d at 1102, and the quoted statement simply recognized the possibility that the plaintiffs could develop additional facts about those activities. Unlike in this case, the *Rivera* court lacked sufficient information to determine whether, under *Graham*, facts essential to liability took place outside of Illinois.

## 2. There Is No Evidence Of Any Other Relevant Illinois Connection.

Ultimately, the Court need not decide which factor is most important under the extraterritoriality doctrine, because plaintiffs have utterly failed to satisfy their burden of presenting evidence of a connection (apart from their residency) between their claims and Illinois.[4] In their *brief*, plaintiffs offer a bare catalog of seven supposed Illinois connections, many of which are clearly duplicative: that Facebook (1) scanned "photos uploaded in Illinois"; (2) "targeted Illinois resident Facebook users in Illinois"; (3) "failed to get [plaintiffs'] BIPA-required consent in Illinois"; (4) "failed to provide BIPA-required notice in Illinois"; (5) "issued BIPA-deficient disclosures and data retention policies in Illinois"; (6) "entered into contracts with . . . user residents in Illinois"; and (7) ███████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████ Pl. Opp'n at 13; *see id.* at 1-2, 14 (similar allegations). Critically, *not one of these allegations is supported with a record citation*. And as discussed below, they fail for other reasons as well. "[Z]ero plus zero plus zero still equals zero." *Am. Floral Servs., Inc. v. Florists' Transworld Deliver Ass'n*, 633 F Supp. 201, 215 n.23 (N.D. Ill. 1986).

Plaintiffs' first alleged Illinois connection—the location of upload—cannot satisfy the extraterritoriality test because Facebook did not "need[] consent to upload the photographs"; "[i]t is only the collection of the biometric identifier (the scan) that requires consent [under BIPA]." *Rivera*, 238 F. Supp. 3d at 1102 n.11. Indeed, photos are expressly excluded from BIPA's definition of "biometric identifier" (740 ILCS 14/10); plaintiffs' theory is that the *analysis* of the photos constitutes a biometric identifier, and that analysis occurs outside of Illinois. Thus, the location of the upload is irrelevant. But in any event, plaintiffs have not offered any evidence (or even an allegation in their complaint) that photos of them *were* uploaded from Illinois.[5]

---

[4] Indeed, plaintiffs have not even offered proof of their residency; but because it is alleged in their complaint, and could readily be proven, Facebook assumes it for the sake of this brief.

[5] In their motion for class certification, the user plaintiffs (but not Mr. Gullen) asserted that "each [named plaintiff] has *reason to believe* that at least one photo showing their face was uploaded from Illinois." Consol. Pls.' Mot. for Class Cert. (Dkt. 255) at 14 (emphasis added). And they attached declarations from each plaintiff with an unadorned attestation that "[a]t least

10

The next five items on plaintiffs' list are, as discussed above, just restatements of their legally insufficient allegation that plaintiffs reside in Illinois and Facebook failed to comply with BIPA.  *See* p. 8 *supra*; Def. MSJ at 11-13.  And again, plaintiffs have not backed them up with evidence; they simply failed to take any discovery on these points, and did not even attempt to remedy that failure by submitting declarations (from their expert or otherwise).

Plaintiffs' seventh allegation—██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████—is triply flawed.  First, no class has been certified; summary judgment depends on whether the *named plaintiffs* have satisfied the extraterritoriality doctrine, and there is no evidence that face detection occurred locally on their friends' mobile devices. Second, plaintiffs have no evidence that their friends were in Illinois when they uploaded photos of them.  *See* p. 10 & n.5 *supra.*  Third, as Facebook's motion explained (at 3-4, 10), ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

In short, any BIPA violation took place outside of Illinois, and plaintiffs have offered no evidence of any other relevant Illinois connection.  Plaintiffs' claims fail under Illinois law.

## II.  IF APPLIED HERE, BIPA WOULD VIOLATE THE CONSTITUTION'S DORMANT COMMERCE CLAUSE.

Plaintiffs dismiss Facebook's Commerce Clause argument as "an apparent afterthought" (Pl. Opp'n at 16), and barely address the points Facebook made in its brief:  If BIPA were

---

one photo" with his face "was uploaded from Illinois."  Pezen Decl. (Dkt. 255-2) ¶ 4; Licata Decl. (Dkt. 255-3) ¶ 4; Patel Decl. (Dkt. 255-4) ¶ 2.  Plaintiffs do *not* attach these declarations to their opposition to summary judgment—presumably because they are plainly insufficient. According to the complaints, photos of the plaintiffs were uploaded and tagged by *other* users. Compl. ¶¶ 32, 39, 46.  Plaintiffs are therefore not competent to give testimony about the location of the upload; at minimum, they would need a declaration from the *uploader*, and Facebook would be entitled to depose him.  *See Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 571 (C.D. Cal. 2007) (plaintiff had no personal "knowledge of [ ] information contained in his declaration"; "[c]ounsel's lax approach to the preparation of declarations in a case where they seek to represent hundreds of thousands of people and seek millions of dollars is simply unacceptable").

1  applied here, it would (a) have the practical effect of controlling out-of-state conduct and

2  (b) subject Facebook to inconsistent legal regimes.  Def. MSJ at 13-15.

3  **A.  The Statute Would Regulate Out-Of-State Conduct.**

4  If BIPA applied here, it would have the "practical effect" of controlling Facebook's

5  ability to perform facial recognition and create and save templates on its out-of-state servers.

6  *Healy*, 491 U.S. at 336.  That outcome would conflict with the Ninth Circuit's decision in *Sam*

7  *Francis*, which "easily conclude[d]" that California's regulation of "out-of-state art sales" was

8  unconstitutional even though the plaintiffs were residents, 784 F.3d at 1323-24; and with

9  numerous cases "invalidat[ing] state laws regulating the internet where the . . . conduct occur[ed]

10  outside the borders of the state," *Publius*, 237 F. Supp. 3d at 1023.  *See* Def. MSJ at 13-14.

11  Plaintiffs ignore these cases and offer a convoluted response: that "the 'practical effects'

12  of complying with BIPA are felt entirely in Illinois" because "the photos of Plaintiffs were

13  uploaded from within the state of Illinois from accounts associated with Illinois residents, and,

14  therefore, Facebook could have obtained (but failed to obtain) a statutorily compliant written

15  release from Plaintiffs in Illinois."  Pl. Opp'n at 17.  Yet again, plaintiffs have invented facts and

16  distorted the law.  First, as discussed above (at 10), plaintiffs have not presented any evidence

17  that photos of them "were uploaded from within the state of Illinois."  Second, they certainly

18  have not proven that the photos were uploaded "from accounts associated with Illinois

19  residents"; plaintiffs claim that *they* are residents, but they have never purported to identify the

20  residency of the *uploaders*.  Third, neither the location of the upload nor the residency of the

21  uploader has anything to do with Facebook's alleged failure to "comply" with BIPA, let alone

22  establish that the effects of compliance would be "felt entirely" in Illinois; again, Facebook is

23  headquartered in California, and no component of its facial-recognition analysis occurs in

24  Illinois.  Most importantly, unless the conduct at issue occurs in Illinois, the Commerce Clause

25  precludes BIPA from imposing *any* requirement on Facebook to comply with the statute,

26  regardless of plaintiffs' (unsupported) belief that Facebook "could have" done so.

27

28

**B. The Statute Would Subject Facebook To Inconsistent Legal Regimes.**

Applying BIPA here would conflict with the policies of other states that have declined to regulate facial-recognition technology—most notably California, which has considered and rejected such a law, and which has adopted an express "policy of regulating Internet-based services only as specified by the Legislature." Def. MSJ at 14-15. Plaintiffs offer two responses.

First, they interpret *Rivera* to hold that a defendant's "ability to comply with BIPA in Illinois without burdening interstate commerce raises fact questions not capable of resolution as a matter of law." Pl. Opp'n at 17 (citing 238 F. Supp. 3d at 1102). That is mistaken. *Rivera* concluded that it was premature to address this argument at the *pleading* stage, but it expressly emphasized that "[w]hat is learned from *discovery* [ ] will inform . . . the Dormant Commerce Clause analysis." 238 F. Supp. 3d at 1104 (emphasis added). Like all questions of federal constitutional law, this determination need not be submitted to a fact-finder; to the contrary, the Ninth Circuit has made clear that a "*court* must . . . tak[e] into account the possibility that other states may impose inconsistent obligations." *Pac. Merch*, 639 F.3d at 1178 (emphasis added).

Second, plaintiffs argue that Facebook "can readily determine whether a particular photograph . . . is uploaded from within Illinois" and thereby "limit its biometrics collection practices to photos uploaded from the 49 states other than Illinois." Pl. Opp'n at 17-20. Even assuming that Facebook had this capability—which plaintiffs have not proven—their proposal does not align with either the allegations in the complaint or the contours of the proposed classes. It is under-inclusive because it would not require Facebook to obtain consent from all *Illinois residents who appear in photos*; if an Illinois resident appears in a photo uploaded from Kansas, plaintiffs' proposal would allow Facebook to analyze it. Their proposal is also over-inclusive because it would require Facebook to disable Tag Suggestions as to *non*-Illinois residents who appear in photos uploaded from Illinois—a Californian on vacation in Chicago, for example. Plaintiffs' proposed application of BIPA would require a California company to limit its use of facial-recognition technology for California residents—contrary to that State's policy.[6]

---

[6]    As plaintiffs point out (at 19), the court in *Monroy* denied Shutterfly's motion to dismiss

**III.    THERE IS NO BASIS FOR DEFERRING FACEBOOK'S MOTION.**

Plaintiffs argue "[i]n the alternative" that the Court should "defer Facebook's motion until the close of expert discovery" "under Rule 56(d)." Pl. Opp'n at 20-22. It should not.

A party seeking to "continue a summary judgment motion" must "show (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *State of Cal. ex. rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). Plaintiffs submit two declarations with various complaints about the supposed need for expert discovery, purported inconsistencies between Mr. Yadan's deposition testimony and his declaration, and a few documents that the Court recently ordered Facebook to produce. *See* Hall Decl. (Dkt. 272-30); Milian Decl. (Dkt. 272-31).

With three exceptions, Facebook has already addressed the substance of these allegations. *See* Part I.B *supra*. First, Mr. Milian asserts (at ¶ 3) that Mr. Yadan's "declaration contains [an] assertion heretofore never made or contained in any document produced in discovery: that Facebook does not apply its face scanning technology to photos, like Gullen's, uploaded to a business or organization page." There is no other way to put this: Mr. Milian has made a demonstrably false statement under oath. The record includes *dozens* of documents produced *more than a year ago* showing that facial recognition is not performed on Pages. *See, e.g.*, FBBIPA_00027112 (Ex. 5 to Yadan Decl.); Provance Decl. ¶¶ 3-5. Second, Mr. Hall asserts (at ¶ 5) that the opinions of Facebook's "yet to be disclosed expert witnesses . . . will inevitably impact Facebook's present motion." Facebook served its opening expert report shortly before plaintiffs filed their brief, and it does not discuss the issues presented by this motion. Third, Mr. Milian seeks (at ¶ 3) to "re-open" Mr. Yadan's deposition, even though (a) Mr. Yadan has

a BIPA claim under the dormant Commerce Clause, but that decision was based on two premises: that (1) "important information [wa]s lacking regarding how Shutterfly's technology works" (the material facts are clear here); and (2) "Monroy's suit, as well as his proposed class, [wa]s confined to individuals whose biometric data was obtained from photographs uploaded to Shutterfly in Illinois" (which is not the case with the plaintiffs here). 2017 WL 4099846, at *7-8. *Monroy* also did not address *Sam Francis* or the other Circuit authorities discussed above.

already given extensive testimony about Facebook's network architecture (*see* p. 6 *supra*); and (b) none of Mr. Gullen's attorneys even *appeared* at Mr. Yadan's deposition.

Neither declaration offers a single *specific* fact that "exists" and is "essential" to opposing Facebook's motion. Plaintiffs have had every opportunity to develop the record on these issues, and their own expert has confirmed the facts set forth in Facebook's motion. *See* pp. 2, 6 *supra*.[7] And contrary to plaintiffs' assertions (Pl. Opp'n at 21-22), Facebook's motion is entirely consistent with this Court's scheduling order[8] and is ripe for adjudication. The motion raises threshold dispositive questions; it would be premature for the Court to address any impact of the extraterritoriality and dormant Commerce Clause doctrines on class certification before resolving the case-dispositive question of whether BIPA can be applied to *any* plaintiff's claims.

## IV. MR. GULLEN HAS NOT ADDRESSED THE FLAWS UNIQUE TO HIS CASE.

Facebook filed a separate brief in the *Gullen* action demonstrating that (1) Mr. Gullen's theory would require Facebook to disable facial recognition entirely; and (2) there is only one photo of Mr. Gullen on Facebook that was subjected even to the preliminary steps of the facial-recognition process, and it was taken in Pennsylvania and uploaded from Michigan—a factual scenario that Mr. Gullen's counsel has conceded "may not be a violation of BIPA." *Gullen* Dkt. 106. Although Mr. Gullen joins the consolidated plaintiffs' brief, he does not address the separate flaws that are unique to him. He appears to recognize that he has no claim.

### CONCLUSION

The Court should grant summary judgment in favor of Facebook.

---

[7] *Cf. Burlington N. Santa Fe. R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773-74 (9th Cir. 2003) (upholding continuance of a summary judgment motion that the plaintiff had "brought . . . less than a month after filing the suit," where "*no discovery whatsoever* ha[d] taken place" in the action (emphasis added)).

[8] The Court's order provides that March 16, 2018 is the "*[l]ast* day to file dispositive and *Daubert* motions"; it does not require the parties to wait until that time to move for summary judgment. Dkt. 223 at 2 (emphasis added); *compare id.* at 1 (setting December 8, 2017 as the date for plaintiffs to "[f]ile class certification motion"). Indeed, the Ninth Circuit and this Court routinely permit parties to file multiple motions for summary judgment at different stages. *See, e.g.*, *Hoffman v. Tonnemacher*, 593 F.3d 908, 910-11 (9th Cir. 2010); *In re Capacitors Antitrust Litig.*, 2016 WL 5724960, at *2 (N.D. Cal. Sept. 30, 2016) (Donato, J.).

Dated: January 3, 2018

MAYER BROWN LLP

By: */s/ John Nadolenco*
    John Nadolenco
    Lauren R. Goldman

*Counsel for Defendant Facebook, Inc.*