1    MAYER BROWN LLP
     John Nadolenco (SBN 181128)
2    350 South Grand Avenue
     25th Floor
3    Los Angeles, CA 90071-1503
     Telephone: (213) 229-9500
4    jnadolenco@mayerbrown.com

5    Lauren R. Goldman (*pro hac vice*)
     1221 Avenue of the Americas
6    New York, NY 10020
     Telephone: (212) 506-2647
7    lrgoldman@mayerbrown.com

8    *Counsel for Defendant Facebook, Inc.*

9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

                       SAN FRANCISCO DIVISION
12

13   IN RE FACEBOOK BIOMETRIC            **FACEBOOK'S OPPOSITION TO**
     INFORMATION PRIVACY LITIGATION      **PLAINTIFFS' MOTION FOR CLASS**
14                                       **CERTIFICATION**

15                                       Master Docket No.: 3:15-CV-03747-JD

16   THIS DOCUMENT RELATES TO:           Date: March 29, 2018
                                         Time: 10:00 a.m.
17   ALL ACTIONS                         Location: Courtroom 11

18                                       Hon. James Donato

19                                       **REDACTED VERSION OF DOCUMENT(S)**
                                         **SOUGHT TO BE SEALED**

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 3

    A.    The Illinois Biometric Information Privacy Act .................................... 3

    B.    Facebook's Facial-Recognition Analysis. ............................................. 3

    C.    Plaintiffs' Complaint And Motion For Class Certification..................... 5

CLASS CERTIFICATION STANDARD ............................................................. 5

ARGUMENT ........................................................................................................ 6

I.    PLAINTIFFS' PROPOSED CLASS CANNOT BE CERTIFIED BECAUSE IT IS FUNDAMENTALLY DIFFERENT FROM THE ONE IN THEIR COMPLAINT. ............................................................................................. 6

    A.    Plaintiffs' New Proposed Class Definition Is Materially Broader......... 6

    B.    Plaintiffs Have Not Sought Leave To Amend Their Complaint, And Such An Amendment Would Be Inappropriate At This Late Stage. ............... 8

II.    PLAINTIFFS FAIL BOTH PRONGS OF RULE 23(b)(3). ............................... 9

    A.    Common Issues Do Not Predominate. .................................................. 9

        1.    BIPA's Statutory Injury Requirement Defeats Predominance. ............. 10

            a.    BIPA's "Aggrieved" Provision Requires A Showing Of Injury Beyond The Alleged Statutory Violation......................... 10

            b.    Proof Of Injury In This Case Will Be Individualized.................. 12

            c.    The Need For An Individualized Showing Of Injury Defeats Predominance Under Rule 23(b)(3)............................... 13

        2.    Even On Plaintiffs' Theory, Determining Whether Facebook Has Obtained A "Scan of Face Geometry" From A Putative Class Member Would Require A Photo-By-Photo Analysis. .......................... 15

        3.    If the Court Denies Facebook's Motion For Summary Judgment, Extraterritoriality Will Present Another Individualized Issue. ............... 16

        4.    Many Photos Uploaded To Facebook Are Derived From Paper Prints And Therefore Would Fall Within This Court's Interpretation Of BIPA's "Photographs" Exclusion. ............................. 18

    B.    A Class Action Is Not Superior To Individual Cases. ......................... 19

        1.    Plaintiffs' Damages Theory Confirms The Impropriety Of Class Treatment And Is Contrary To Due Process.......................... 19

i

2.    Plaintiffs' Proposed Class Definition Is Unworkable. ........................... 21

III.   THE NAMED PLAINTIFFS ARE NEITHER TYPICAL NOR ADEQUATE
CLASS REPRESENTATIVES. .................................................................................. 23

A.    The Named Plaintiffs Are Not Typical Because There Is No Competent
Evidence That Their Faces Appeared In A Photo Uploaded From Illinois. ........ 23

B.    The Named Plaintiffs Are Inadequate Because They Know Almost
Nothing About, And Have Contributed Almost Nothing To, These
Actions. ........................................................................................................... 24

CONCLUSION ............................................................................................................. 25

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*ABC Distrib., Inc. v. Living Essentials LLC,*
   2017 WL 2603311 (N.D. Cal. Apr. 7, 2017) ........................................................................14

4

5

*Am. Express Co. v. Italian Colors Rest.,*
   570 U.S. 228 (2013) .............................................................................................................5

6

7

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ............................................................................................................19

8

*Avery v. State Farm Mut. Auto. Ins. Co.,*
   216 Ill. 2d 100 (2005) .............................................................................................16, 17, 18

9

10

*Bateman v. Am. Multi-Cinema, Inc.,*
   623 F.3d 708 (9th Cir. 2010) ........................................................................................20, 21

11

12

*Berlowitz v. Nob Hill Masonic Mgmt.,*
   1996 WL 724776 (N.D. Cal. Dec. 6, 1996) ...................................................................1, 6

13

*Bodner v. Oreck Direct, LLC,*
   2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) ..................................................................24

14

15

*Briseno v. ConAgra Foods, Inc.,*
   844 F.3d 1121 (9th Cir. 2017) ...........................................................................................21

16

*Bruce v. Teleflora, LLC,*
   2013 WL 6709939 (C.D. Cal. Dec. 18, 2013) .................................................................15

17

18

*Burkhalter Travel Agency v. MacFarms Int'l, Inc.,*
   141 F.R.D. 144 (N.D. Cal. 1991) .....................................................................................24

19

20

*Campion v. Old Repub. Home Prot. Co.,*
   861 F. Supp. 2d 1139 (S.D. Cal. 2012) ..............................................................................9

21

*Campion v. Old Repub. Home Prot. Co.,*
   272 F.R.D. 517 (S.D. Cal. 2011) ......................................................................................14

22

23

*Carrera v. Bayer Corp.,*
   727 F.3d 300 (3d Cir. 2013).............................................................................................23

24

*Comcast Corp. v. Behrend,*
   569 U.S. 27 (2013)........................................................................................................2, 13

25

26

*Costelo v. Chertoff,*
   258 F.R.D. 600 (C.D. Cal. 2009) .......................................................................................6

27

28

*Cruz v. Lawson Software, Inc.*,
  2010 WL 890038 (D. Minn. Jan. 5 2010)....................................................................18

*Davis v. AT&T Corp.*,
  2017 WL 1155350 (S.D. Cal. Mar. 28, 2017) ............................................................6, 8

*De Stefan v. Frito-Lay, Inc.*,
  2011 WL 13176229 (C.D. Cal. June 6, 2011) .............................................................14

*Emery v. Clark*,
  604 F.3d 1102 (9th Cir. 2010) ....................................................................................11

*Evans v. IAC/Interactive Corp.*,
  244 F.R.D. 568 (C.D. Cal. 2007)................................................................................23

*In re Facebook Biometric Info. Privacy Litig.*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ................................................................18, 19

*In re Facebook, Inc., PPC Advert. Litig.*,
  282 F.R.D. 446 (N.D. Cal. 2012).................................................................................24

*Fields v. Mobile Messengers Am., Inc.*,
  2013 WL 6073426 (N.D. Cal. Nov. 18, 2013) .......................................................15, 22

*In re Flash Memory Antitrust Litig.*,
  2010 WL 2332081 (N.D. Cal. June 9, 2010) ...............................................................9

*Fraley v. Batman*,
  638 F. App'x 594 (9th Cir. 2016) ...............................................................................20

*Gannon v. Network Tel. Servs., Inc.*,
  2013 WL 2450199 (C.D. Cal. June 5, 2013) ..............................................................21

*Gold v. Lumber Liquidators, Inc.*,
  2017 WL 2688077 (N.D. Cal. June 22, 2017).............................................................6

*Graham v. Gen. U.S. Grant Post No. 2665, V.F.W.*,
  43 Ill. 2d 1 (1969) .......................................................................................................17

*Greer v. Ill. Hous. Dev. Auth.*,
  122 Ill. 2d 462 (1988) .................................................................................................11

*Gusman v. Comcast Corp.*,
  298 F.R.D. 592 (S.D. Cal. 2014) .................................................................................6

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................24, 25

iv

*In re Hulu Privacy Litig.*,
　2014 WL 2758598 (N.D. Cal. June 17, 2014) ........................................................20

*Juarez v. Jani-King of Cal. Inc.*,
　2010 WL 3766649 (N.D. Cal. Sept. 24, 2010) ........................................................23

*Kline v. Coldwell, Banker & Co.*,
　508 F.2d 226 (9th Cir. 1974) ...............................................................................20

*Landau v. CNA Fin. Corp.*,
　381 Ill. App. 3d 61 (2008) .....................................................................16, 17, 18

*Lightbourne v. Printroom Inc.*,
　307 F.R.D. 593 (C.D. Cal. 2015) ...........................................................................16

*Maglio v. Advocate Health & Hosps. Corp.*,
　40 N.E.3d 746 (Ill. Ct. App. 2015) ........................................................................11

*Mazza v. Am. Honda Motor Co.*,
　666 F.3d 581 (9th Cir. 2012) ...............................................................................16

*McCollough v. Smarte Carte, Inc.*,
　2016 WL 4077108 (N.D. Ill. Aug. 1, 2016) ...........................................................10

*Moore v. Apple Inc.*,
　309 F.R.D. 532 (N.D. Cal. 2015).............................................................................14

*Plascencia v. Lending 1st Mortg.*,
　2012 WL 253319 (N.D. Cal. Jan. 26, 2012)..........................................................6, 8

*Rivera v. Google Inc.*,
　No. 16-cv-2714 (N.D. Ill. June 27, 2017)................................................................21

*Rosenbach v. Six Flags Entm't Corp.*,
　__ N.E.3d __, 2017 IL App (2d) 170317 (Dec. 21, 2017)...........................2, 10, 11, 12, 14, 21

*Rosenbach v. Six Flags Entm't Corp.*,
　16-CH-13 (Ill. Cir. Ct. June 17, 2016)....................................................................11

*Sam Francis Found. v. Christies, Inc.*,
　784 F.3d 1320 (9th Cir. 2015) ...............................................................................17

*Sanchez v. Wal-Mart Stores, Inc.*,
　2009 WL 1514435 (E.D. Cal. May 28, 2009) ........................................................24

*Sandoval v. Cty. of Sonoma*,
　2015 WL 1926269 (N.D. Cal. Apr. 27, 2015) ..........................................................6

v

*Sekura v. Krishna Schaumberg Tan, Inc.*,
   2017 WL 1181420 (Ill. Cir. Ct. Feb. 9, 2017) ...................................................................10

*Sharemaster v. SEC*,
   847 F.3d 1059 (9th Cir. 2017) ...........................................................................................12

*Sherman v. CLP Res., Inc.*,
   2015 WL 13542762 (C.D. Cal. Feb. 4, 2015)......................................................................8

*Smith v. Microsoft Corp.*,
   297 F.R.D. 464 (S.D. Cal. 2014) ........................................................................................20

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) .....................................................................................13, 14

*Thomas v. Baca*,
   2012 WL 994090 (C.D. Cal. Mar. 22, 2012) .....................................................................22

*Tidenberg v. Bidz.com*,
   2010 WL 135580 (C.D. Cal. Jan. 7, 2010) .........................................................................22

*Vigil v. Take-Two Interactive Software, Inc.*,
   235 F. Supp. 3d 499 (S.D.N.Y. 2017)................................................................................10

*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*,
   274 F.R.D. 229 (S.D. Ill. 2011) .........................................................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)..............................................................................................5, 6, 23

*Welling v. Alexy*,
   155 F.R.D. 654 (N.D. Cal. 1994).......................................................................................24

*Whelan v. Miles Indus.*,
   2012 WL 12920688 (N.D. Cal. Sept. 12, 2012) ..................................................................9

*Xavier v. Philip Morris USA Inc.*,
   787 F. Supp. 2d 1075 (N.D. Cal. 2011) .............................................................................21

*Zinser v. Accufix Research Inst.*,
   253 F.3d 1180 (9th Cir. 2001) .............................................................................................9

**Statutes**

740 ILCS 14/10...............................................................................................................3, 18, 19

740 ILCS 14/15.........................................................................................................................3

740 ILCS 14/20...........................................................................................................1, 3, 10, 20

1

**Other Authorities**

2

Fed. R. Civ. P. 23 .................................................................................................................19, 20

3

McLaughlin on Class Actions (14th ed. 2017) ......................................................................13

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FACEBOOK'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:15-CV-03747-JD

1

**INTRODUCTION**

2   Plaintiffs have attempted a bait-and-switch. After the close of two years of fact

3   discovery, they have moved to certify a class that is fundamentally different from the one defined

4   in their consolidated complaint—without seeking leave to amend their pleading or even

5   acknowledging the change. Plaintiffs' motion should be denied for that threshold reason alone.

6   But more importantly, their new class definition does not help them: It only highlights and

7   exacerbates the problems with class treatment that have plagued these actions from the start.

8   Plaintiffs claim that Facebook violated the Biometric Information Privacy Act ("BIPA")

9   by using facial-recognition technology to analyze their photos without giving them adequate

10   notice or obtaining their consent. The complaint defined the proposed class to encompass users

11   of Facebook who reside in Illinois and "had their biometric identifiers, faceprints, or face

12   templates collected, captured, received, or otherwise obtained by Facebook." But plaintiffs now

13   seek to certify a class of all Illinois residents who have merely "*appeared* in a photo uploaded to

14   Facebook from Illinois"—regardless of whether any template, or even any *data*, has been

15   obtained from that photograph. The Court may not grant this motion; a "court is bound by the

16   class definition provided in the complaint." *Berlowitz v. Nob Hill Masonic Mgmt.*, 1996 WL

17   724776, at *2 (N.D. Cal. Dec. 6, 1996). And it is clear why plaintiffs have attempted to change

18   their class definition silently: Any amendment of the complaint would be unfair after two years

19   of fact discovery and motion practice predicated on the proposed class defined in the complaint.

20   In any event, plaintiffs have not come close to satisfying the rigorous requirements for

21   class certification. Individualized issues will overwhelm these cases and defeat predominance

22   under Rule 23(b)(3). First off, BIPA's private right of action is available only to someone

23   "aggrieved by a violation of this Act." 740 ILCS 14/20. The Illinois Appellate Court held last

24   month that to be "aggrieved," a plaintiff must prove an "injury or adverse effect" *beyond* the

25   alleged statutory violation; the claim fails when "the only injury he or she alleges is a violation

26   of [BIPA] by a private entity that collected his or her biometric identifiers and/or biometric

27   information without providing him or her the disclosures and obtaining the written consent

28

1

1  required by [the statute]." *Rosenbach v. Six Flags Entm't Corp.*, __ N.E.3d __, 2017 IL App

2  (2d) 170317, ¶¶ 15, 23 (Dec. 21, 2017).  This element of statutory liability—which is separate

3  from, and more stringent than, Article III standing—will require an individualized showing of

4  injury:  Many absent class members will not claim an injury beyond the collection of their

5  alleged biometric data, and if others do make such a claim, the form of alleged injury will vary

6  tremendously.  Standing alone, that precludes certification:  "[T]o meet the predominance

7  requirement," a plaintiff must be able to prove injury with "evidence that [is] common to the

8  class rather than individual to its members." *Comcast Corp. v. Behrend*, 569 U.S. 27, 30 (2013).

9  ████████████████████████████████████████████████████████████████████

10  ███████████████████████████        Thus, even on plaintiffs' theory—that Facebook's facial recognition

11  analysis involves a "scan of face geometry" under BIPA—the fact that someone is a member of

12  the class does not mean that Facebook collected *his* "scan of face geometry."  That determination

13  cannot be made without analyzing photos of each class member.  And there is no case *less* fit for

14  class treatment than one requiring an analysis of millions of photos.

15  Nor can plaintiffs satisfy the superiority requirement.  They make almost no attempt to

16  demonstrate that their proposed class action would be manageable, offering little more than the

17  vague assurance that there "should be no issues of manageability."  And their theory of damages

18  is nothing short of outrageous.  Each plaintiff admitted at his deposition that he has suffered *no*

19  *harm* from Facebook's alleged conduct, and plaintiffs do not give a reason to believe that *any*

20  class member is different in that respect.  Yet they claim entitlement to *billions* of dollars based

21  on an aggregation of BIPA's statutory damages provision.  Neither Rule 23 nor federal due

22  process permits certification of a no-injury class seeking an aggregate award in the billions.

23  Finally, plaintiffs' motion does not even satisfy Rule 23(a).  The named plaintiffs fail the

24  typicality prong because they have not shown that they are *members* of their newly-minted

25  putative class.  And they fail the adequacy prong because they made it strikingly clear at their

26  depositions that they know virtually nothing about this litigation, have done nothing on their own

27  to advance it, and do not understand their role as representatives.  Their motion should be denied.

28

# BACKGROUND[1]

## A.      The Illinois Biometric Information Privacy Act

BIPA regulates the collection and storage of (1) "biometric identifiers" and (2) "biometric information." 740 ILCS 14/10. "Biometric identifier means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," and excludes "photographs." *Id.* "Biometric information" means "any information . . . based on an individual's biometric identifier used to identify an individual," and "does not include information derived from items or procedures excluded under the definition of biometric identifiers" (like photographs). *Id.*

BIPA requires entities that "collect, capture, purchase . . . or otherwise obtain a person's or a customer's biometric identifier or biometric information" to first (1) inform the person of the collection or storage, as well as its purpose and length of term, "in writing"; and (2) obtain a "written release." *Id.* 14/15(b). Such entities must also develop and publish a written policy on the retention and destruction of biometric data. *Id.* 14/15(a).

The statute provides a limited right of action for "[a]ny person aggrieved by a violation of th[e] Act." *Id.* 14/20. For negligent violations, the plaintiff can obtain "liquidated damages of $1,000 or actual damages, whichever is greater"; for intentional or reckless violations, a plaintiff can collect "liquidated damages of $5,000 or actual damages, whichever is greater." *Id.*

## B.      Facebook's Facial-Recognition Analysis

Facebook's Tag Suggestions feature simplifies the tagging of photos. When a person uploads a photo, Facebook will sometimes, but not always, employ facial-recognition technology to determine whether certain of the uploader's Facebook friends appear in the photo; if so, Facebook may prompt the uploader to tag those friends. A user can turn the feature off at any time, in which case Facebook will delete any facial-recognition information previously derived from photos of that person and will no longer suggest that he be tagged when friends upload photos. When Facebook does apply facial recognition to a photo, the process has four steps. 1st Yadan Decl. (Ex. 1) ¶¶ 9, 11; Yadan Dep. (Ex. 2) at 84; Taigman Dep. (Ex. 3) at 128-29.[2]

---

[1]      Unless indicated, all exhibits are attached to the Declaration of John Nadolenco.

[2]      Yaniv Taigman and Omry Yadan are Facebook engineers who were closely involved

1. ***Face detection***:   First, Facebook's software analyzes the pixels in a photo to "determin[e] whether and where a face appears in an image"; ███████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ █████████████████████

2. ***Alignment***: █████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████

3. ***Representation***: █████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ █████████████████████

4. ***Classification***: ████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████

with the development of this technology.  Mr. Yadan has submitted sworn declarations both in support of Facebook's motion for summary judgment ("1st Yadan Decl.," re-filed contemporaneously) and its opposition to class certification ("2d Yadan Decl.").  Facebook's expert has served a report consistent with the facts below. *See* Turk Rpt. Part V.A (Ex. 4).

1

2

3

4

5

**C.     Plaintiffs' Complaint And Motion For Class Certification**

Plaintiffs allege that they are residents of Illinois with active Facebook accounts.  Compl. (Dkt. 40) ¶¶ 7-9, 32, 39, 46.  They claim that Facebook "use[d] facial recognition software to extract biometric data" from photos of them "through the use of an algorithm that calculates a unique digital representation of the face (which it calls a 'template') based on geometric relationship of their facial features."  *Id.* ¶ 23.  The complaint further alleges that Facebook "stored these biometric identifiers in a database" (*id.* ¶ 26); and that it violated BIPA by failing to make the requisite disclosures to, and obtain adequate releases from, plaintiffs before collecting and storing their templates (*id.* ¶¶ 65-67).  In the complaint, plaintiffs sought to represent a class of "[a]ll persons who had their biometric identifiers, faceprints, or face templates collected, captured, received, or otherwise obtained by Facebook while residing in Illinois." *Id.* ¶ 53.

Plaintiffs now seek certification under Rule 23(b)(3) of a class of "[a]ll Facebook users living in Illinois whose face appeared in a photo uploaded to Facebook from Illinois between June 7, 2011, and the final disposition of this action."  Pl. Mot. (Dkt. 255) at 5-6.  They also propose a subclass of "[a]ll people living in Illinois for whom Facebook has a stored 'face template' that was created between June 7, 2011, and final disposition of this action." *Id.*

## CLASS CERTIFICATION STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks omitted).  Rule 23 "imposes stringent requirements for certification that in practice preclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).  Plaintiffs "must affirmatively demonstrate [their] compliance with the Rule," and "certification is proper only if the trial court is satisfied, after a rigorous analysis,"

5

that the plaintiffs have met their burden of satisfying the four threshold requirements of Rule 23(a) and at least one of the three subdivisions of Rule 23(b).  *Dukes*, 564 U.S. at 350-51.

## ARGUMENT

## I. PLAINTIFFS' PROPOSED CLASS CANNOT BE CERTIFIED BECAUSE IT IS FUNDAMENTALLY DIFFERENT FROM THE ONE IN THEIR COMPLAINT.

A "court is bound by the class definition provided in the complaint." *Berlowitz v. Nob Hill Masonic Mgmt.*, 1996 WL 724776, at *2 (N.D. Cal. Dec. 6, 1996); *see also Gusman v. Comcast Corp.*, 298 F.R.D. 592, 597 (S.D. Cal. 2014) (same); *Costelo v. Chertoff*, 258 F.R.D. 600, 604 (C.D. Cal. 2009) (same).  When a party moves to certify a class that is *different* from the one in the complaint, a court will consider that proposed class only (1) "when the proposed modifications to the class definition are minor" or create a "narrower [class] than the class alleged in the complaint," *Davis v. AT&T Corp.*, 2017 WL 1155350, at *2 (S.D. Cal. Mar. 28, 2017) (alteration omitted); or (2) when the motion for class certification is accompanied by a meritorious motion "seeking leave to amend [the] complaint," *Gold v. Lumber Liquidators, Inc.*, 2017 WL 2688077, at *3 (N.D. Cal. June 22, 2017).  Neither condition is satisfied here.

### A. Plaintiffs' New Proposed Class Definition Is Materially Broader.

"While a party moving for class certification . . . can *narrow* the definition used in the complaint," it "cannot *expand* the class definition." *Sandoval v. Cty. of Sonoma*, 2015 WL 1926269, at *2 (N.D. Cal. Apr. 27, 2015); *see Plascencia v. Lending 1st Mortg.*, 2012 WL 253319, at *4 (N.D. Cal. Jan. 26, 2012) (declining to "expand the class beyond the . . . operative complaint").  Plaintiffs' motion seeks to expand the class definition in two material respects.[3]

First, the complaint limited the class to users for whom Facebook had created and stored a *template*—a string of numbers that is associated with an individual user's face and is *stored* by Facebook.   A template is created only in limited circumstances: when the user (1) has been tagged in at least one photo (or in some cases, when he has a recognizable profile photo); (2) has

---

[3]     The proposed class is narrower in one respect: it is limited to photos uploaded from Illinois.  But as discussed below, that limitation introduces additional problems with plaintiffs' proposal for class treatment. *See* Part III.A *infra*.

6

1   not opted out of Tag Suggestions; and (3) satisfies certain other privacy-based and regulatory

2   criteria (for example, templates are not created for minors).   Taigman Dep. at 239, 281.   By

3   contrast, the new class "center[s] on the face signature" (Pl. Mot. at 9), which is different from a

4   template:   A face signature is a series of numbers that represents an image of a face *in a*

5   *particular photograph*.   It is not associated with a particular user, exists only briefly, is not

6   saved, and is used as a means of determining whether the face in a newly-uploaded photo

7   matches any of the templates associated with the uploader's Facebook friends.   1st Yadan Decl.

8   ¶¶ 18, 20, 24-25.   It is undisputed that there are many people without templates whose *face*

9   *signatures* have been computed from photos.   Pl. Mot. at 3.[4]

10          Second, the new class definition is not even limited to people for whom a face signature

11   was computed; it encompasses everyone whose face appeared in *any* photograph uploaded to

12   Facebook from Illinois during the class period.   And so plaintiffs have done more than shift their

13   theory of the case from templates to face signatures (a dramatic change that would be improper

14   on its own); their class no longer depends on the collection of *data*.   It is much broader.[5]

---

15   [4]     Plaintiffs may respond that the complaint's proposed class definition encompassed face

16   signatures because it listed "faceprints" and "biometric identifiers" in addition to templates.
     Compl. ¶ 53.   But it is clear that the complaint used all three of these terms to mean the same

17   thing: a template.   Plaintiffs used the terms "faceprint" and "template" interchangeably (as do
     Facebook employees at times, *see* FBBIPA_00038185 (2d Yadan Decl. Ex. 2) ("A face template

18   . . . is a mathematical representation of the user's 'face print' if you will.")).   And plaintiffs'
     claim was that a saved template—not an ephemeral face signature—was the "biometric

19   identifier" that triggered BIPA's requirements.   As plaintiffs summarized:   "The 'template' data
     (or, alternatively, faceprint data) stored by Facebook is a form of biometric identifier extracted

20   from the image of a person's face," and Facebook "extracted biometric identifiers from [users']
     uploaded photographs and previously tagged pictures, and stored these biometric identifiers in a

21   database."   Compl. ¶¶ 24, 26.   *See also id.* ¶ 25 ("The process for creating image-based biometric
     identifiers (including those Facebook collects) is largely the same.   In each case, an algorithm is

22   used to calculate an individual's unique physical characteristics, which results in a biometric
     template that is separate and distinct from the image from which it was created."); *id.* ¶ 27

23   ("Facebook users unwittingly had their biometric identifiers extracted from photographs and then
     stored"); *id.* ¶¶ 36, 43, 50 (alleging, for each plaintiff, that "Facebook extracted from those

24   photographs a unique faceprint or 'template' for him containing his biometric identifiers,"
     "identified who he was," and "stored [his] biometric identifiers in its databases").

25
     [5]     This difference is confirmed by plaintiffs' proposal of a *subclass* that "center[s] on . . .

26   the face template" (Pl. Mot. at 9)—essentially the class proposed in the complaint.   The subclass
     has its own flaws.   Most notably, it is not a true subclass at all, because it does not depend on an

27

28

**B.      Plaintiffs Have Not Sought Leave To Amend Their Complaint, And Such An Amendment Would Be Inappropriate At This Late Stage.**

Plaintiffs' failure to seek leave to amend is no mere procedural defect: "[I]f Plaintiffs were to seek leave to amend the complaint to encompass the expanded [class definition], they would have to overcome a number of issues, including establishing diligence in seeking to amend and a lack of prejudice to the opposing party given the advanced state of the litigation." *Plascencia*, 2012 WL 253319, at *4.  Plaintiffs could not establish diligence.  The Court's deadline for amendments to pleadings was over a year ago—September 30, 2016.  Dkt. 137. Plaintiffs have long known the difference between face signatures and templates—Yaniv Taigman testified about these differences at his deposition in October 2016.  Taigman Dep. at 237-38, 273.  Nor could plaintiffs show the absence of prejudice—two years of discovery and motion practice have been predicated on their original class definition and their core allegation that Facebook's templates are the "biometric identifiers" allegedly triggering BIPA's requirements.  Indeed, just as in *Davis*, several of Facebook's responses to plaintiffs' discovery requests were expressly based on the original theory and definition.[6]  *See* 2017 WL 1155350, at *4 & n.2 (rejecting attempt to expand class definition 17 months after complaint; defendant had "objected to discovery requests seeking information" that it deemed "irrelevant" to the original

---

Illinois upload (*see id.* at 5), and is therefore in that respect *broader* than the main class.  *See, e.g.*, *Sherman v. CLP Res., Inc.*, 2015 WL 13542762, at *8 n.9 (C.D. Cal. Feb. 4, 2015) ("These are not clearly *subclasses*. . . .  [I]t appears that Plaintiffs have turned different theories of recovery affecting the broader . . . class into the 'subclasses.'").  The subclass—and, for the same reasons, the class proposed in the complaint—also suffers from virtually all of the problems of the main class, including:  Common issues do not predominate because an individualized analysis will be necessary to determine whether each class member is "aggrieved"; whether he has proposed a domestic application of BIPA; and whether his fact pattern fits within BIPA's "photograph" exclusion.  *See* Parts II.A.1, II.A.3-4 *infra*.  A class action would not be superior because plaintiffs' theory of damages is contrary to BIPA's intent.  *See* Part II.B.1 *infra*.  And the named plaintiffs are neither typical nor adequate class representatives.  *See* Part III *infra*.

[6]      *See, e.g.*, Def. Resp. to Pl. Interrogatory No. 14 (Ex. 5) (objecting to interrogatory because it departed from putative class definition by seeking "discovery of the number of photographs uploaded to Facebook from certain IP addresses [associated with Illinois]"); Def. Resp. to Pl. 1st Request for Admissions No. 9 (Ex. 6) (similar); Def. Resp. to Pl. 3d Requests for Production Nos. 2, 6 (Ex. 7) ("Facebook reserves the right to limit . . . the scope of its production . . . according to . . . Plaintiffs' allegations and putative class definition.").

8

class definition; reopening discovery "would impose additional costs and expenses on the parties and further delay this case"). There is no legitimate reason why plaintiffs waited until now to change their class definition so dramatically.[7]

## II.    PLAINTIFFS FAIL BOTH PRONGS OF RULE 23(b)(3).

### A.    Common Issues Do Not Predominate.

This Court may certify a Rule 23(b)(3) class only if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1189 (9th Cir. 2001).

Plaintiffs argue that three common questions are sufficient to support class treatment: (1) whether Facebook's facial-recognition analysis involves a "scan of face geometry" under BIPA; (2) whether Facebook provided plaintiffs with sufficient notice of the use of its technology and obtained a "written release" under BIPA; and (3) whether BIPA can be given extraterritorial effect. Pl. Mot. at 9-12. Facebook believes that it is entitled to judgment on these questions: It has already moved for summary judgment on the third, and will move for summary judgment on the other two in March. But the fundamental problem is that all of these are *threshold* questions; *even if plaintiffs were to prevail on all of these issues, that would not establish liability to a single class member.* Significant individualized issues would still require adjudication: (1) whether a class member has suffered a sufficient injury to invoke BIPA's private right of action; (2) whether facial recognition was performed on his photo; (3) whether the application of BIPA to his claim would be impermissibly extraterritorial; and (4) whether his

---

[7]    *See Whelan v. Miles Indus.*, 2012 WL 12920688, at *4 (N.D. Cal. Sept. 12, 2012) (denying motion to amend a complaint to "expand the original class definition" because "plaintiff ha[d] not shown diligence"; he did not seek leave until "after the briefing on the motion for class certification was completed"); *In re Flash Memory Antitrust Litig.*, 2010 WL 2332081, at *17 (N.D. Cal. June 9, 2010) (denying "as 'untimely'" motion to amend class action complaint "because plaintiffs waited until after their class certification filing to request [the amendment]"); *Campion v. Old Repub. Home Prot. Co.*, 861 F. Supp. 2d 1139, 1152 (S.D. Cal. 2012).

1  fact pattern fits within this Court's reading of BIPA's exception for "information derived from"

2  photos and thus cannot support a claim.  These issues will overwhelm any common ones.

3                    1.        **BIPA's Statutory Injury Requirement Defeats Predominance.**

4              BIPA's statutory injury requirement—the "aggrieved" provision in its private right of

5  action—squarely precludes class certification.  The Illinois Appellate Court held in December

6  that a private plaintiff is not aggrieved, and cannot sue under BIPA, where "the only injury he or

7  she alleges is a violation of [BIPA] by a private entity that collected his or her biometric

8  identifiers and/or biometric information without providing him or her the disclosures and

9  obtaining the written consent required by" the statute.  *Rosenbach v. Six Flags Entm't Corp.*, __

10  N.E.3d __, 2017 IL App (2d) 170317, ¶ 15 (Dec. 21, 2017).  The plaintiff must show that he

11  "suffered an actual injury" *over and above* the alleged collection of his biometric data without

12  notice and consent.  *Id.* ¶ 13.  This showing is necessarily individualized.  And under Supreme

13  Court and Circuit law, the need for an individualized showing of injury defeats predominance.[8]

14                    a.        **BIPA's "Aggrieved" Provision Requires A Showing Of Injury**
                                **Beyond The Alleged Statutory Violation.**

15

16              BIPA provides that "[a]ny person *aggrieved by* a violation of this Act shall have a right

17  of action . . . against an offending party."  740 ILCS 14/20 (emphasis added).  Until recently,

18  there was a split among the lower courts over whether this provision requires a plaintiff to show

19  that he has been actually injured by the statutory violation.  Two federal district courts had held

20  that it does,[9] and two state trial courts had drawn a contrary conclusion.[10]  Last month, the

---

[8]        This issue is distinct from Article III standing.  Facebook has a pending motion to dismiss these cases for lack of standing on the ground that plaintiffs have not suffered any real-world harm as a result of Facebook's alleged conduct.  Dkt. 227.  But even if the Court concludes that a violation of BIPA's notice-and-consent provisions is sufficient to satisfy Article III, it is *not* sufficient to satisfy the "aggrieved" requirement under *Rosenbach*, as discussed below.

[9]        *See Vigil v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 3d 499, 520 (S.D.N.Y. 2017) ("[T]he inclusion of 'aggrieved' in BIPA limits a private right of action to a party that can link an injury to a statutory violation."), *aff'd in part, rev'd in part on other grounds*, 2017 WL 5592589 (2d Cir. Nov. 21, 2017); *McCollough v. Smarte Carte, Inc.*, 2016 WL 4077108, at *4 (N.D. Ill. Aug. 1, 2016) ("[B]y limiting the right to sue to persons aggrieved by a violation of [BIPA], the Illinois legislature intended to include only persons having suffered an injury.").

[10]        *See Sekura v. Krishna Schaumberg Tan, Inc.*, 2017 WL 1181420 (Ill. Cir. Ct. Feb. 9,

                                                            10

1    Illinois Appellate Court sided with the federal courts in a written decision, which "federal courts
2    are bound to follow . . . unless there is convincing evidence that the state's highest court would
3    reach a different conclusion." *Emery v. Clark*, 604 F.3d 1102, 1118 (9th Cir. 2010).

4         In *Rosenbach*, the plaintiff claimed that when her son "purchased a season pass for a
5    Great America theme park," the "defendants fingerprinted him without properly obtaining
6    written consent or disclosing their plan for the collection, storage, use, or destruction of his
7    biometric identifiers." 2017 IL App (2d) 170317, ¶ 1. She alleged that "had she known of
8    defendants' conduct, she would not have allowed [her son] to purchase the pass," but did not
9    claim "any actual injury." *Id.* The trial court denied the defendants' motion to dismiss but
10   certified for interlocutory appeal the question of "whether an individual is an aggrieved person
11   . . . when the only injury he or she alleges is a violation of [BIPA] by a private entity that
12   collected his or her biometric identifiers and/or biometric information without providing him or
13   her the disclosures and obtaining the written consent required by [the statute]." *Id.* ¶ 15.

14        The Appellate Court answered unanimously "in the negative," holding that "*[i]f a person
15   alleges only a technical violation of the Act without alleging any injury or adverse effect, then he
16   or she is not aggrieved and may not recover*." *Id.* ¶¶ 28, 30 (emphasis added). "[I]f the Illinois
17   legislature intended to allow for a private cause of action for every technical violation of the Act,
18   it could have omitted the word 'aggrieved' and stated that every violation was actionable"; the
19   plaintiff's reading "would render the word 'aggrieved' superfluous." *Id.* ¶ 23. It was also
20   insufficient that the plaintiff asserted that her son's "right to privacy . . . ha[d] been adversely
21   affected," because she had not claimed *resulting* "actual injury" to that privacy right. *Id.* ¶ 20.

22        BIPA's "aggrieved" requirement is necessarily more stringent than Article III's standing
23   requirement. Under Illinois law, like under Article III, "[s]tanding requires some injury-in-fact
24   to a legally cognizable interest"; "[f]ederal standing principles are similar to those in Illinois."
25   *Maglio v. Advocate Health & Hosps. Corp.*, 40 N.E.3d 746, 752-53 (Ill. Ct. App. 2015) (citing
26   *Greer v. Ill. Hous. Dev. Auth.*, 122 Ill. 2d 462, 492-93 (1988)). Thus, when the General
27   2017) (reconsideration granted and complaint partially dismissed in light of *Rosenbach*);
     *Rosenbach v. Six Flags Entm't Corp.*, 16-CH-13 (Ill. Cir. Ct. June 17, 2016).
28

11

Assembly enacted BIPA, it was legislating against the backdrop of the injury-in-fact requirement, and deliberately required a showing of injury (the "aggrieved" rule) *beyond* what is required for state and federal standing. *See, e.g.*, *Sharemaster v. SEC*, 847 F.3d 1059, 1068 (9th Cir. 2017) ("[I]t is reasonable . . . to assume that Congress legislate[s] against the backdrop of . . . standing doctrines."). And as discussed next, that showing is inherently individualized.

### b.        Proof Of Injury In This Case Will Be Individualized.

There can be no question that BIPA's statutory injury requirement will necessitate individualized assessments of each of the millions of people that plaintiffs claim to be members of their proposed class. Pl. Mot. at 6. Some class members will not claim any injury beyond the collection of their alleged biometric data, and their claims will fail under *Rosenbach*. The named plaintiffs, for example, have affirmatively *disavowed* that they have suffered any injury resulting from the alleged violation of their BIPA rights. As their lawyer explained in November:

> THE COURT: You're not contending that Facebook sold [biometric data to] a third party, used it for advertising purposes or did anything else downstream from the actual collection that has harmed your client; is that right?
>
> MR. TIEVSKY: No. We don't believe that any consequential harm—we don't know if any consequential harm resulted. We haven't found that it happened.

11/30/2017 Hr'g Tr. at 8-9; *see* Licata Dep. (Ex. 8) at 146; Pezen Dep. (Ex. 9) at 173-74; Patel Dep. (Ex. 10) at 133-35.

If other class members do claim that they suffered consequential harm, such allegations are certain to come in various forms, and Facebook would be entitled to probe both the legal sufficiency and the credibility of those claims. For example, if a class member claims harm to his privacy rights, but (like the plaintiff in *Rosenbach*) does not identify the specific harm flowing from the alleged privacy violation, he is not "aggrieved." *See* 2017 IL App (2d) 170317, ¶ 20. Or if (again like *Rosenbach*) a plaintiff claims only that he would have opted out with adequate notice, he would not be "aggrieved." *See id.* ¶ 1. Another class member might *allege* an arguably sufficient harm (like emotional distress) but then concede that he knew all of the

relevant facts from Facebook's disclosures, and that he was free to (but did not) opt out of the feature. Those concessions would undermine any claim of injury, and there would need to be a determination by a fact-finder regarding whether or not that class member could recover.[11]

### c.   The Need For An Individualized Showing Of Injury Defeats Predominance Under Rule 23(b)(3).

In *Comcast*, the Supreme Court held "that to meet the predominance requirement," a plaintiff must "show [ ] that the existence of individual injury resulting from [an alleged statutory violation is] capable of proof at trial through evidence that [is] *common to the class rather than individual to its members*." 569 U.S. at 30 (emphasis added). "The Supreme Court made clear in . . . *Comcast* . . . that the linchpin to certification is assuring that determination of whether defendant's conduct caused injury to each class member can be made classwide and without resort to individualized assessments of each class member's circumstances." McLaughlin on Class Actions § 5:23 (14th ed. 2017). "[P]redominance will not be satisfied if plaintiffs must prove that each class member suffered personal or economic injury." *Id.*

Even before *Comcast*, the Ninth Circuit held that a statutory injury requirement defeats predominance when it requires individualized proof. In *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) (abrogated on other grounds by *Comcast*), the plaintiffs claimed that the defendants had "participated in a deceptive internet scheme, which induced numerous individuals to unwittingly sign up for a fee-based rewards program." *Id.* at 1016. The Ninth Circuit concluded that the plaintiffs could not obtain class certification for their claim under California's Consumer Legal Remedies Act, which required them to show that the deceptive conduct "caused them harm." *Id.* at 1022. Because no *inference* of harm could be applied to the class, and because there were "myriad reasons" why someone "who was not misled" might have

---

[11]     Plaintiffs' new class definition exacerbates these problems, because it will inevitably lead to even more material variations between class members. As discussed in Part II.A.2 below, some class members may never have had their faces detected by Facebook's facial-recognition technology. Others may have had their faces detected, but without any face signature created. Others may have had a face signature created, but there was no attempt to recognize their face. For others, no template was created. And still others may have opted out of Tag Suggestions and therefore had any templates deleted.

1   "intentionally signed up" for the program, "the class could not be certified."  *Id.* at 1024.  So too

2   here: ███████████████████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████████████ As this

4   illustrates, there are "myriad reasons" why a fully-informed person would "intentionally" choose

5   to participate in Tag Suggestions, and Facebook is entitled to investigate those circumstances.

6          Similar district court cases abound.  In *De Stefan v. Frito-Lay, Inc.*, 2011 WL 13176229

7   (C.D. Cal. June 6, 2011), the plaintiff sued his former employer based on an inaccurate pay stub.

8   *Id.* at *8.  He invoked a statute that, just like BIPA, required "an 'actual injury,' above and

9   beyond a technical violation of the statute."  *Id.*; compare *Rosenbach*, 2017 IL App (2d) 170317,

10  ¶ 28 ("If a person alleges only a technical violation of [BIPA] without alleging any injury or

11  adverse effect, then he or she is not aggrieved.").   The court held that because it could not

12  "presume injury based simply on a showing that the class members' pay stubs were inaccurate,

13  . . . evaluation of the injury prong would require individualized inquiries into the way that

14  alleged inaccuracies affected each class member," and "[c]lass certification [was] not

15  appropriate."  *De Stefan*, 2011 WL 13176229, at *8.  Again, the same is true here:  Because this

16  Court "cannot presume injury based simply on a showing that the class members' [biometric data

17  was collected without notice and consent], . . . [c]lass certification is not appropriate."  *Id.*[13]

18

19  [12]      Oddly, plaintiffs assert that "none" of the named plaintiffs "has opted out of Tag

20  Suggestions."  Pl. Mot. at 14.  It is unclear why they believe that would support their position,

    but it is false: ████████████████████████████████████████████████████████████████

21  ███████████████████████████████████████████████████████████████████████████████████

22  ███████████████████████████████████████████████████

23  [13]      *See also ABC Distrib., Inc. v. Living Essentials LLC*, 2017 WL 2603311 at *4 (N.D. Cal.

24  Apr. 7, 2017) (denying class certification where statute required "particularized showings of

    injury" that would be "individualistic"); *Moore v. Apple Inc.*, 309 F.R.D. 532, 543 (N.D. Cal.

25  2015) (denying certification because of "individualized inquiries necessary to determine whether

    an individual has . . . suffered an injury"); *Bruce v. Teleflora, LLC*, 2013 WL 6709939, at *7

26  (C.D. Cal. Dec. 18, 2013) ("When a case turns on individualized proof of injury, separate trials

    are in order."); *Campion v. Old Repub. Home Prot. Co.*, 272 F.R.D. 517, 533 (S.D. Cal. 2011)

27  (denying class certification because "[i]ndividual inquiries and proof would . . . be required to

    determine whether the alleged 'unfair' conduct actually caused injury to each class member").

28

### 2. Even On Plaintiffs' Theory, Determining Whether Facebook Has Obtained A "Scan of Face Geometry" From A Putative Class Member Would Require A Photo-By-Photo Analysis.

Although plaintiffs assert (at 9) that the "[c]lass's claims center on the face signature," class membership does not actually depend on whether Facebook created a face signature from the person's photo. To the contrary, plaintiffs' proposed class definition encompasses every Illinois resident whose "face appeared in a photo uploaded to Facebook from Illinois" during the class period. ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████ Accordingly, even if plaintiffs were correct that Facebook's technology involves a "scan of face geometry" within the meaning of BIPA, a photo-by-photo analysis would be required to determine whether each individual class member has a valid BIPA claim. This problem is fatal to class treatment.

Plaintiffs assert that "Facebook will have created a face signature for all (or nearly all) members of the proposed Class," that "most photos were uploaded in a way that triggered the facial-recognition process," and that the chances "seem[] vanishingly small" that a class member has never appeared in a photo analyzed with facial recognition. Pl. Mot. at 9-10. Plaintiffs cite to absolutely nothing—not record evidence, and not expert testimony—for these vague and qualified suppositions, which plainly cannot support their burden as the party moving for certification. *Fields v. Mobile Messengers Am., Inc.*, 2013 WL 6073426, at *4 (N.D. Cal. Nov. 18, 2013) ("burden is on plaintiffs, the party moving for class certification," to provide "documented evidence" showing "compliance with Rule 23").[14]

The absence of citations is unsurprising, because plaintiffs' suppositions are *wrong*: As discussed above (at 4-5), and as shown in documents produced to plaintiffs during discovery, ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

---

[14]   Plaintiffs assert (at 3) that Facebook's "process [is] best explained by the experts," but not only do they fail to provide any expert support for their motion; they have now served their expert report, and he has *not* addressed this point.

████████████████████████████████████████████████  Even if the Court concludes that Facebook's facial-recognition technology involves a "scan of face geometry," it will be necessary to determine, for each class member, whether a photo of *his* face was *analyzed* with that technology.  *See* 2d Yadan Decl. ¶ 10.

That determination will not be *possible* for many class members:  ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████  Common issues cannot predominate if each class member would have to prove liability on a photo-by-photo basis, and particularly if there is no feasible way of determining whether a class member was even subjected to the challenged practice.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595-96 (9th Cir. 2012) (district court abused discretion in certifying class where "many class members were never exposed to the allegedly misleading advertisements"); *Lightbourne v. Printroom Inc.*, 307 F.R.D. 593, 602 (C.D. Cal. 2015) (no predominance where "a photo-by-photo inquiry would be required").

### 3.    If the Court Denies Facebook's Motion For Summary Judgment, Extraterritoriality Will Present Another Individualized Issue.

In its motion for summary judgment, Facebook demonstrated that each of the plaintiffs' claims is barred by Illinois' extraterritoriality doctrine and the Constitution's dormant Commerce Clause.  Dkt. 257.  BIPA contains no "express provision[]" giving the statute extraterritorial effect.  *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184-85 (2005).  To bring a BIPA claim, a plaintiff must prove that the alleged statutory violation took place "primarily and substantially" in Illinois—*i.e.*, that "the majority of circumstances related to the alleged violation" occurred in that State.  *Landau v. CNA Fin. Corp.*, 381 Ill. App. 3d 61, 63-65 (2008)

(quoting *Avery*, 216 Ill. 2d at 187).[15]  If an event "essential to [Facebook's] liability" under BIPA took place outside Illinois, *Graham v. Gen. U.S. Grant Post No. 2665, V.F.W.*, 43 Ill. 2d 1, 4 (1969), a class member would have "*no cause of action*" under the statute, *Avery*, 216 Ill. 2d at 190 (emphasis added), and any application of BIPA to that person's claim would be unconstitutional, *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320 (9th Cir. 2015) (en banc).

Facebook's motion establishes that there is no genuine dispute of material fact on these issues: (a) the conduct giving rise to this lawsuit—Facebook's facial-recognition process and its creation and storage of templates—takes place on its servers outside Illinois; and (b) plaintiffs have offered no evidence of any relevant Illinois connection other than their own residency, which courts have repeatedly deemed insufficient.  Dkt. 257 at 6-15.  If, however, the Court concludes that Facebook is not entitled to summary judgment and certifies the proposed class, it would need to conduct a fact-intensive inquiry into whether each class member's proposed application of BIPA is domestic—if not, he has "no cause of action." *Avery*, 216 Ill. 2d at 190.

Each class member may attempt to prove an Illinois connection in different ways.  He may contend that he was in Illinois when he signed up for Facebook.  He may contend that a photo of him was taken in Illinois and then uploaded to Facebook from Illinois.  He may contend that he was in Illinois at the time that the photo was uploaded, or at the time Facebook performed a facial-recognition analysis.  Or he may claim that his alleged injury took place in Illinois—for example, that he was in Illinois when he found out about Tag Suggestions and immediately became distraught, or that his co-workers in Illinois saw a damaging photo of him and he was fired as a result.  Other class members may be unable to make any of these claims—for example, if they only recently moved to Illinois or if they were traveling elsewhere at the time of the sign-up, facial-recognition analysis, or alleged injury.  Plaintiffs' proposed subclass would be

---

[15]    Plaintiffs suggest here that BIPA *was* intended to apply extraterritorially, and that the *Avery* test does not apply outside the context of the Consumer Fraud Act.  *See* Pl. Mot. at 12-13 & n.3.  But in their subsequent opposition to Facebook's summary judgment motion, plaintiffs "agree[d]" that "BIPA does not apply extraterritorially," and that they can invoke BIPA only if the violation took place "primarily and substantially" in Illinois.  Dkt. 272 at 12 & n.24.

subject to even more variability:  That class definition does *not* depend on an Illinois upload (*see* n.5 *supra*); it includes people whose faces appear in photos taken and uploaded from *anywhere*.

Courts have commonly concluded that a class should not be certified where there are distinctions in the abilities of putative class members to invoke a state statute.  In *Avery* itself, for example, the plaintiff brought a purported class action against State Farm under Illinois' Consumer Fraud Act ("CFA"), alleging that State Farm had misrepresented the quality of an equipment manufacturer's parts.  216 Ill. 2d at 109.  The Supreme Court reversed the trial court's certification of a nationwide class.  *Id.* at 204.  It held that because the CFA did not expressly apply extraterritorially, the trial court had erred in certifying a class that "included class members whose [insurance] claims proceedings took place outside of Illinois."  *Id.* at 190; *see also Cruz v. Lawson Software, Inc.*, 2010 WL 890038, at *9 (D. Minn. Jan. 5 2010) (certification improper where statute did "not apply extraterritorially and an individualized inquiry into each putative class member would be necessary to determine whether the [statute] could be applied").

Plaintiffs try to evade this problem by misstating the test, arguing that Facebook could "comply with . . . BIPA" either by turning off Tag Suggestions in Illinois or by declining to create templates until a user affirmatively opts in to the program, and that "[b]oth theories permit resolution of these issues in one stroke."  Pl. Mot. at 12.  But the question is not whether Facebook could theoretically comply with BIPA by doing something differently in Illinois; the question is whether Facebook had any *duty* to comply with BIPA in the first place—which turns on whether the "circumstances related to the alleged violation" affecting each class member happened "primarily and substantially" in Illinois.  *Landau*, 381 Ill. App. 3d at 65.

### 4.   Many Photos Uploaded To Facebook Are Derived From Paper Prints And Therefore Would Fall Within This Court's Interpretation Of BIPA's "Photographs" Exclusion.

As discussed above, BIPA excludes both "photographs" and "information derived from" photographs.  740 ILCS 14/10.  At the pleading stage, this Court held that "'[p]hotographs' is better understood to mean paper prints of photographs, not digitized images stored as a computer file and uploaded to the Internet."  *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp.

3d 1155, 1171 (N.D. Cal. 2016). If the Court adheres to that reading,[16] it would present yet another question for each class member: whether the photos of him *are* derived from "paper prints." *Id.* Many photos uploaded to Facebook fit that description, and when a facial-recognition analysis is performed on such photos, the analysis proceeds in the exact same way as when the photo originated as a digital image. *See* Taigman Dep. at 134-36. To be sure, paper photos are *converted* to digital form before upload. But if the paper version is a "photograph" under BIPA, the digital version is "information derived from" that photo and thus excluded. 740 ILCS 14/10.

In short, a plaintiff-by-plaintiff, photo-by-photo inquiry will be necessary to determine virtually every element of the alleged BIPA violation. Common issues do not predominate.

## B.    A Class Action Is Not Superior To Individual Cases.

Plaintiffs had to establish that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Their one-page argument on this requirement (at 17-18) is remarkably breezy, and disregards the intractable problems that will arise from both their theory of damages and their proposed class definition.

### 1.    Plaintiffs' Damages Theory Confirms The Impropriety Of Class Treatment And Is Contrary To Due Process.

Each named plaintiff admitted at his deposition (and counsel later confirmed) that he has not been harmed by Facebook's alleged conduct. Nor have plaintiffs offered a reason to believe that *any* member of the putative class has been harmed. Yet plaintiffs claim entitlement to *billions* of dollars in damages: They estimate that there are at least 6 million people in their proposed class, and contend that each class member should be awarded either $1,000 or $5,000 based on BIPA's statutory damages provision. Pl. Mot. at 6, 17. That is extraordinary.

Even when these damages are viewed on an *individual* basis, a $1,000 or $5,000 award is sufficient to create an incentive to sue. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 616

---

[16]    Facebook respectfully disagrees with the Court's decision. As the Court contemplated (185 F. Supp. 3d at 1172), Facebook will present evidence in its forthcoming summary judgment motion that all photos uploaded to Facebook fit squarely within BIPA's exception, and that this exception bars plaintiffs' claims in their entirety.

(1997) ("denial of a class action" appropriate where "the stake of each member bulks large");

Fed. R. Civ. P. 23(b)(3)(A).  In TCPA cases, courts have held that a *$500* statutory penalty

creates a sufficient incentive.[17]  Plaintiffs assert that "a $1,000 or $5,000 recovery is dwarfed by

litigation costs."  Pl. Mot. at 17.  But the General Assembly expressly contemplated those costs

when it estimated the appropriate statutory award for a BIPA claim, providing that a prevailing

plaintiff may recover—*in addition* to damages—"reasonable attorneys' fees and costs, including

expert witness fees and other litigation expenses."  740 ILCS 14/20(3).  Under plaintiffs' theory,

class treatment would be superior in any case involving complicated facts and expert opinion.

That is not the law under Rule 23, and plaintiffs have offered no evidence (or argument) that the

General Assembly contemplated that *every* BIPA lawsuit be resolved by a class action.

More importantly, the *total* figure that plaintiffs are seeking—at least $6 billion—is

beyond the pale; under Ninth Circuit precedent, the superiority rule precludes "class actions [that

seek] outrageous amounts in statutory penalt[ies]."  *Kline v. Coldwell, Banker & Co.*, 508 F.2d

226, 233-34 (9th Cir. 1974).  In *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir.

2010), the Ninth Circuit clarified that *Kline*'s principle applies where "the potential for enormous

liability" "would be inconsistent with [the legislative] intent in enacting the statutory damages

provision."  *Id.* at 715, 722; *cf. id.* at 718 (finding that, in enacting the statute at issue, Congress

expressed no intent to foreclose large aggregated statutory awards, in part because "Congress

provided for punitive damages in addition to any actual or statutory damages").  Post-*Bateman*

authorities have reaffirmed that a disproportionately large statutory award in a class action not

only violates Rule 23, but also "implicate[s] due process concerns."  *Fraley v. Batman*, 638

F. App'x 594, 597 (9th Cir. 2016); *see also In re Hulu Privacy Litig.*, 2014 WL 2758598, at *23

(N.D. Cal. June 17, 2014) ("The aggregation of statutory damages claims potentially distorts the

---

[17]    *See Smith v. Microsoft Corp.*, 297 F.R.D. 464, 469 (S.D. Cal. 2014) ("[t]he TCPA allows
a litigant to seek statutory damages for each violation," and "this statutory remedy is designed to
provide adequate incentive for an individual plaintiff to bring a suit on his own behalf"); *Vigus v.
S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 238 (S.D. Ill. 2011).

1    purpose of both statutory damages and class actions, and if it does, it creates a potentially

2    enormous aggregate recovery for plaintiffs that in turn may induce an unfair settlement.").

3          By creating a private BIPA action only for an "aggrieved" person, the General Assembly

4    expressed a clear intent to limit BIPA damages to people who have suffered an actual injury.  *See*

5    Part II.A.1 *supra*.  "[I]f the Illinois legislature intended to allow for a private cause of action for

6    every technical violation of the Act, it could have omitted the word 'aggrieved' and stated that

7    every violation was actionable."  *Rosenbach*, 2017 IL App (2d) 170317, ¶ 23.  Certification of a

8    class that holds the potential for billions of dollars of liability absent any showing of harm would

9    fly in the face of that legislative decision.  *See Bateman*, 623 F.3d at 715, 722.  Indeed, one

10   district court has already expressed concerns about this sort of BIPA action.  In *Rivera v. Google*

11   *Inc.*, No. 16-cv-2714 (N.D. Ill.), the court denied Google's motion for certification of an

12   interlocutory appeal of a separate issue, but emphasized that its "conclusion d[id] not . . .

13   constitute an endorsement of . . . [BIPA]'s damages provisions"; "[t]here is room to debate

14   whether a mandatory-minimum damages scheme is appropriate for violations—*any* violation, on

15   a *per* violation basis, without regard to extent of actual injury—of a statute that deals with

16   rapidly advancing technology."  *Rivera* 1292(b) Order (Ex. 11) at 2.

17         Fortunately, this issue need not be debated, because the General Assembly itself

18   foreclosed plaintiffs' theory in this case by limiting relief to persons "aggrieved" by a violation.

19   But if BIPA *did* permit huge statutory damages awards in the absence of harm, class treatment

20   would be impermissible under Rule 23 and federal due process.

21                    **2.      Plaintiffs' Proposed Class Definition Is Unworkable.**

22         A key factor under Rule 23(b)(3) is "the likely difficulties in managing a class action."

23   *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127-28 (9th Cir. 2017) (Rule 23

24   incorporates a "manageability criterion").  A class is unmanageable when "there is no good way

25   to identify [ ] individuals" in the class or to provide them with notice, a judgment, or a

26   settlement.  *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011).[18]

27   ────────────
     [18]     *See also Gannon v. Network Tel. Servs., Inc.*, 2013 WL 2450199, at *3 (C.D. Cal. June 5,
28   2013) ("certification is improper" where "the process to identify [ ] class members would be . . .

                                                    21

1    Plaintiffs speculate that there "should be no issues of manageability . . . because class

2    members . . . can be identified in large part using data maintained by Facebook." Pl. Mot. at 18.

3    That is woefully deficient.   Plaintiffs cannot satisfy their burden under Rule 23 with glib

4    assurances that their proposed class action "should" work or that a "large part" of the class can

5    be identified. *See Fields*, 2013 WL 6073426, at *4.

6    In any event, their factual premise is incorrect.   There is no feasible way for Facebook to

7    identify all, or even most, users whose faces appear in photos uploaded to the service. █

8    ████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████

10   ███████████████████████████████████████     *See* p. 4-5 *supra*.   Nor

11   could Facebook necessarily determine whether the face belongs to a *putative class member*—a

12   person residing in Illinois whose photo was uploaded from Illinois.   Plaintiffs do not explain how

13   Facebook could determine the residency of every person who merely appears in an uploaded

14   photo.   They do contend that Facebook can determine the location of the *upload* "using IP

15   addresses" (Pl. Mot. at 7), but even that assertion is ill-founded:   IP addresses provide only a

16   rough estimate of location for *some* devices; for others, they provide no meaningful information

17   about location at all.   Not all IP addresses are accurately associated with a geographic location.

18   *See* Ruan Decl. ¶¶ 4-5.   And the IP address associated with a particular device will not always

19   match the *location* of that device. *Id.* ¶¶ 6-7.

20   All of this stems from the basic flaw in plaintiffs' proposed class definition: it requires a

21   plaintiff-by-plaintiff and photo-by-photo analysis.   Plaintiffs cannot evade these problems with

22   casual assertions about what Facebook can do with its technology.[19]

23   unmanageable"); *Thomas v. Baca*, 2012 WL 994090, at *3 (C.D. Cal. Mar. 22, 2012)
     (decertifying class where there was no "feasible way to reliably identify or notify members of the
24   class"); *Tidenberg v. Bidz.com*, 2010 WL 135580, at *2 (C.D. Cal. Jan. 7, 2010) ("[T]he need for
     a  definition  that  permits  identification of class members  is  particularly  important where  a
25   plaintiff seeks certification under Rule 23(b)(3), because it determines those who would be
     (1) entitled to relief, (2) bound by any judgment, or (3) both.").
26
     [19]   Nor can plaintiffs simply promise to present evidence on this issue after a determination
27   of the merits.   Rule 23(b)(3) requires them to establish the superiority prong at the *class
     certification* stage. *Fields*, 2013 WL 6073426, at *4.   And even if absent class members tried to
28

22

1

## III.  THE NAMED PLAINTIFFS ARE NEITHER TYPICAL NOR ADEQUATE CLASS REPRESENTATIVES.

2

### A.  The Named Plaintiffs Are Not Typical Because There Is No Competent Evidence That Their Faces Appeared In A Photo Uploaded From Illinois.

3

4 Plaintiffs' motion fails on another basic level:  they have not adduced competent proof of

5 their own membership in the proposed class.  The complaint does not allege that any photo of

6 any plaintiff was uploaded to Facebook *from Illinois*.  In their motion for certification, plaintiffs

7 make the remarkably weak assertion that they have "*reason to believe* that at least one photo

8 showing their face was uploaded from Illinois."  Pl. Mot. at 14 (emphasis added).  This claim is

9 backed up only by a conclusory declaration executed by each plaintiff saying that "[a]t least one

10 photo" of his face was uploaded from Illinois.  Dkt. 255-2 ¶ 4; Dkt. 255-3 ¶ 4; Dkt. 255-4 ¶ 2.

11 Plaintiffs' failure to declare *who* uploaded the photos is fatal to their attempt to establish

12 an Illinois upload.  They do not say that each plaintiff *himself* uploaded a photo of his face from

13 Illinois—which plaintiffs would have a foundation to declare if they were, in fact, the

14 uploaders—and they do not attach the photos.  Since the photos apparently were uploaded by

15 other people, plaintiffs need declarations from the *uploaders*, and Facebook is entitled to depose

16 them.  Courts routinely deny motions for class certification that are unsupported by adequate

17 evidence of essential facts.  *See, e.g.*, *Juarez v. Jani-King of Cal. Inc.*, 2010 WL 3766649, at *2

18 (N.D. Cal. Sept. 24, 2010) (denying motion for certification where declaration was "conclusory"

19 and declarant "lack[ed] personal knowledge"); *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568,

20 571, 579 (C.D. Cal. 2007) (plaintiff failed to establish "knowledge of [ ] information contained

21 in his declaration"; "[c]ounsel's lax approach to the preparation of declarations in a case where

22 they seek to represent hundreds of thousands of people and seek millions of dollars is simply

23 unacceptable").  This Court should do the same.

24

25 self-identify with an individualized showing that photos of them were uploaded from Illinois and
26 analyzed with facial recognition, Facebook would be entitled to contest that showing—requiring
discovery and millions of mini-trials.  *See Dukes*, 554 U.S. at 367 (class action defendant is
27 "entitled to litigate its . . . defenses to individual claims"); *Carrera v. Bayer Corp.*, 727 F.3d 300,
307 (3d Cir. 2013) ("A defendant has a . . . due process right to challenge the proof used to
28 demonstrate class membership.").

**B.     The Named Plaintiffs Are Inadequate Because They Know Almost Nothing About, And Have Contributed Almost Nothing To, These Actions.**

To satisfy Rule 23(a)(4), a party seeking class certification must demonstrate that he will "prosecute the action vigorously on behalf of the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  "[T]he Court must ensure that the litigation is brought by a named Plaintiff who understands and controls the major decisions of the case," *Sanchez v. Wal-Mart Stores, Inc.*, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009), because when counsel acts "on behalf of an essentially unknowledgeable client," that "risk[s] a denial of due process to the absent class members," *Burkhalter Travel Agency v. MacFarms Int'l, Inc.,* 141 F.R.D. 144, 154 (N.D. Cal. 1991).  *See, e.g., In re Facebook, Inc., PPC Advert. Litig.*, 282 F.R.D. 446, 454 (N.D. Cal. 2012) (named plaintiff inadequate because "he testified in his deposition that he knows essentially nothing about the case, and . . . would defer to counsel in prosecuting th[e] action").[20]

The named plaintiffs in these cases have freely admitted that they know almost nothing about their cases, that they are contributing almost nothing to this litigation, and that the suits are being driven entirely by their lawyers.  Specifically, Mr. Pezen testified that he:



Mr. Licata testified that he:



---

[20]     *See also Bodner v. Oreck Direct, LLC*, 2007 WL 1223777, at *2-3 (N.D. Cal. Apr. 25, 2007) (class representative inadequate where it was "clear from the record that plaintiff's counsel, and not the plaintiff, [wa]s the driving force behind th[e] action"); *Welling v. Alexy*, 155 F.R.D. 654, 659 (N.D. Cal. 1994) (representatives must "serve the necessary role of check[ing] the otherwise unfettered discretion of counsel").

1

2



3         Mr. Patel was deposed about a month later—more than enough time for counsel to

4    educate him about these issues if they cared to do so.  Yet Mr. Patel still testified that he:

5

6

7

8

9         Although plaintiffs devote several pages of their brief (at 15-17) to establishing the

10   qualifications of class *counsel*, they are able to muster only a single sentence in support of the

11   named *plaintiffs*' contribution: "Each proposed representative has already sat for multiple

12   depositions and responded to numerous discovery requests, demonstrating their commitment to

13   prosecuting this action."  *Id.* at 15.  That is nowhere near sufficient.  A named plaintiff does not

14   "prosecute [his] action vigorously," *Hanlon*, 150 F.3d at 1020, by doing nothing more than what

15   is required under penalty of judicial sanction.  Plaintiffs have not pointed to a single decision

16   they have made to advance their claims in this case, and their deposition testimony makes clear

17   that they do not understand the nature of their claims, the relief they are seeking, or their

18   obligations as putative class representatives.

19   **CONCLUSION**

20        The Court should deny plaintiffs' motion for class certification.

21   Dated:  January 26, 2018                  MAYER BROWN LLP

22
                                  By: */s/ John Nadolenco*

23                                         John Nadolenco

24                                         Lauren R. Goldman

                                  *Counsel for Defendant Facebook, Inc.*

25

26

27

28