Joel H. Bernstein (Admitted *pro hac vice*)
jbernstein@labaton.com
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
Tel: 212.907.0700
Fax: 212.818.0477

Shawn A. Williams (213113)
shawnw@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Tel: 415.288.4545
Fax: 415.288.4534

Jay Edelson (Admitted *pro hac vice*)
jedelson@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for In re Facebook Biometric Info. Plaintiffs and the Putative Class*

[Additional counsel appear on the signature page.]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| *In re Facebook Biometric Information Privacy Litigation* | Master Docket No. 3:15-cv-3747-JD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date: February 16, 2018<br>Time: 10:00 a.m.<br>Location: Courtroom 11<br><br>Hon. James Donato |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................................. 1

I.  The proposed class definition is proper ................................................................................. 2

II. The BIPA does not require any individualized showing of injury in this case that would defeat predominance. ............................................................................................................. 4

III. The supposed need for a "photo by photo" analysis to confirm class membership does not defeat predominance or superiority ................................................................................ 7

IV. Extraterritoriality concerns do not stand in the way of certification ..................................... 9

V.  Facebook's damages argument is meritless ........................................................................... 9

VI. Facebook's attacks on the Proposed Class Representatives Are Baseless .......................... 11

CONCLUSION .................................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Abraham v. WPX Energy Prod., Inc.*,
    2017 WL 4402398 (D.N.M. Sept. 30, 2017) ...................................................................... 3

*Allied Waste Servs. of N. Am., LLC v. Tibble*,
    177 F. Supp. 3d 1103 (N.D. Ill. 2016) ............................................................................... 6

*Am. Surety Co. v. Jones*,
    51 N.E.2d 122 (Ill. 1943) .................................................................................................. 5

*Am. Tower Corp. v. City of San Diego*,
    763 F.3d 1035 (9th Cir. 2013) .......................................................................................... 5

*In re Appointment of Special Prosecutor*,
    902 N.E.2d 730 (Ill. App. Ct. 2009) ................................................................................. 5

*Bateman v. Am. Multi-Cinema, Inc.*,
    623 F.3d 708 (9th Cir. 2010) .......................................................................................... 10

*Bautista v. Valero Mktg. & Supply Co.*,
    2017 WL 4418681 (N.D. Cal. Oct. 4, 2017) ................................................................... 12

*Berlowitz v. Nob Hill Masonic Mgmt.*,
    1996 WL 724776 (N.D. Cal. Dec. 6, 1996) ...................................................................... 3

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ...................................................................................... 3, 8

*Chapman v. First Index, Inc.*,
    796 F.3d 783 (7th Cir. 2015) ............................................................................................ 3

*Chi. Area Council of Boy Scouts of Am. v. City of Chi. Comm'n on Human Relations*,
    748 N.E.2d 759 (Ill. App. Ct. 2001) ................................................................................. 5

*In re Community Bank of N. Va. Mortg. Lending Practices Litig.*,
    795 F.3d 380 (3d Cir. 2015) ............................................................................................. 8

*Crull v. GEM Ins. Co.*,
    58 F.3d 1386 (9th Cir. 1995) ............................................................................................ 3

*Doe v. Chand*,
    781 N.E.2d 340 (Ill. App. Ct. 2002) ................................................................................. 5

*Fosnight v. LVNV Funding, Inc.*,
    310 F.R.D. 389 (S.D. Ind. 2015) ...................................................................................... 9

*Greeling v. Abendroth*,
    813 N.E.2d 768 (Ill. App. Ct. 2004) ................................................................................5

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..........................................................................................6

*Hartney Fuel Oil Co. v. Hamer*,
    998 N.E.2d 1227 (Ill. 2013) ...............................................................................................6

*Holman v. Experian Info. Sols., Inc.*,
    2012 WL 1496203 (N.D. Cal. Apr. 27, 2012) ..................................................................8

*In re Hulu Privacy Litig.*,
    2014 WL 2758598 (N.D. Cal. June 17, 2014) ................................................................11

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ..........................................................................................9

*Kanawi v. Bechtel Corp.*,
    254 F.R.D. 102 (N.D. Cal. 2008) ....................................................................................11

*Kobold v. Good Samaritan Regional Med. Ctr.*,
    832 F.3d 1024 (9th Cir. 2016) ..........................................................................................3

*Krueger v. Wyeth, Inc.*,
    310 F.R.D. 468 (S.D. Cal. 2015) ......................................................................................3

*In re Lenovo Adware Litig.*,
    2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ..................................................................4

*Leyva v. Medline Indus., Inc.*,
    716 F.3d 510 (9th Cir. 2013) .......................................................................................7, 9

*Mace v. Van Ru Credit Corp.*,
    109 F.3d 338 (7th Cir. 1997) ..........................................................................................10

*Marlo v. United Postal Serv., Inc.*,
    251 F.R.D. 476 (C.D. Cal. 2008) .....................................................................................6

*McCullough v. Smarte Carte, Inc.*,
    2016 WL 4077108 (N.D. Ill. Aug. 1, 2016) .................................................................5, 6

*Mirkarimi v. Nevada Property 1, LLC*,
    2015 WL 5022327 (S.D. Cal. Aug. 24, 2015) ..................................................................5

*Murray v. GMAC Mortg. Corp.*,
    434 F.3d 948 (7th Cir. 2006) ..........................................................................................11

*Ochoa v. McDonald's Corp.*,
   2016 WL 3648550 (N.D. Cal. July 7, 2016) ........................................................................... 4

*Opperman v. Path, Inc.*,
   2016 WL 3844326 (N.D. Cal. July 15, 2016) .......................................................................... 5

*Rosenbach v. Six Flags Entm't Corp.*,
   2017 IL App (2d) 170317 .............................................................................................. 4, 5, 6

*Application of Rosewell*,
   603 N.E.2d 681 (Ill. App. Ct. 1992) ..................................................................................... 10

*Shady Grove Orthopedics Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ................................................................................................................ 2

*Tabata v. Charleston Area Med. Ctr., Inc.*,
   759 S.E.2d 459 (W. Va. 2014) ............................................................................................... 5

*Torres v. Mercer Canyons, Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ............................................................................................ 7, 8

*U.S. Postal Serv. Bd. of Governers v. Aikens*,
   460 U.S. 711 (1983) .............................................................................................................. 11

**Statutes**

35 Ill. Comp. Stat. 200/23-15 ........................................................................................................ 10

410 Ill. Comp. Stat. 305/13 ............................................................................................................. 5

740 Ill. Comp. Stat. 14/20 ............................................................................................................... 5

Fed. R. Civ. P. 23 .................................................................................................................. *passim*

**INTRODUCTION**

Defendant Facebook, Inc. ("Facebook") concedes that the central issues in this case—whether it collects and stores biometric data and whether it obtains consent to collect that data—are common. And Facebook does not meaningfully contest that it scans the faces in all uploaded photos of class members, even if it may not ultimately recognize a face in every single photo. Facebook principally argues that the clear predominace of these common issues is irrelevant in light of a single decision of an intermediary Illinois court, *Rosenbach v. Six Flags Entertainment Corp.*, which Facebook contends requires individual showings of "statutory injury." But *Rosenbach* is plainly distinguishable and of questionable value given that it conflicts with long-settled principles of Illinois law. And even if that the decision applies, the many common issues in the case still militate in favor of certification.

*Rosenbach* aside, Facebook focuses its opposition largely on procedural issues that, in the end, do not preclude class certification. For example, Facebook complains that the proposed class definition differs from the tentative definition included in the complaint. But, especially in a highly technical case like this, it is expected that a class definition will evolve as the case progresses through fact and expert discovery. And, contrary to Facebook's assertion, no rule of law requires a proposed class definition be congruous with or narrower than the definition put forth in the complaint.

Facebook also incorrectly contends that that any claims process would require a "photo by photo" review. But that would be no different than a typical claims process where class members submit affidavits or other evidence of class membership that can be challenged or verified by the defendant. ████████████████████████████████████████████
████████████████████████████████████████████
████

Facebook last makes hackneyed and perfunctory attacks on the adequacy and typicality of the proposed class representatives. But the proposed named plaintiffs have demonstrated a sufficient understanding of the case to adequately represent the proposed class (the "Class").

Tellingly, Facebook's opposition omits any meaningful discussion of the proposed subclass (the "Subclass"), which is not subject to many of the same meritless attacks Facebook makes against the Class. A trial or claims process of the claims of the Subclass would not require a photo-by-photo review, nor would there be questions of whether Facebook even has collected the data in question. Thus both the proposed Class and Subclass should be certified.

**I.    The proposed class definition is proper.**

Plaintiffs' proposed Class and Subclass are clearly defined and appropriately tailored to the claims asserted and relief sought by proposed class members. Facebook nevertheless contends that certification of the Class (though not the Subclass) is impermissible because the proposed definition is somehow "broader" than the definition contained in the complaint. (Opp. at 6-9.) It is not altogether clear that the proposed Class is in fact broader: The class tentatively proposed in the operative complaint is essentially coterminous with Facebook's potential liability under the statute. (Dkt. 40, ¶ 53.) Without citation, Facebook argues that the class is limited "to users for whom Facebook had created and stores a template." (Opp. at 6.) Portions of the complaint did reference stored face templates (Dkt. 40, ¶¶ 24-27), but the complaint also described the process of extracting data from individual photos, a process that essentially characterizes the initial scans of face geometry that are the subject of the Class's legal theory (Dkt. 40, ¶¶ 4, 23). Facebook asserts that its discovery responses were premised upon its narrower interpretation of the complaint (Opp. at 8 & n.6), but there is no reason why a class definition should be limited by a defendant's self-serving discovery conduct if the definition otherwise comports with the evidentiary record the parties have compiled.

And at all events Facebook's proposed rule is at odds with federal law. Rule 23 sets forth a series of criteria plaintiffs must meet in order to certify a class. The Supreme Court has held that when plaintiffs satisfy those criteria a district court *must* certify a proposed class. *Shady Grove Orthopedics Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (in portion joined by a majority: Rule 23 "by its terms … creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."). The Ninth Circuit also has emphasized that courts should not engraft additional prerequisites to certification onto Rule 23.

*Briseno v. ConAgra Foods, Inc*, 844 F.3d 1121, 1126 (9th Cir. 2017). None of these or similar decisions has ever indicated that the outcome of a certification decision depends in any part on the relationship between the class proposed in a motion and the class proposed in a complaint.

A class definition should instead be keyed to the facts adduced in discovery, not to the complaint. *See, e.g.*, *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 477, 482-83 (S.D. Cal. 2015) (amending definition in light of more fully developed evidentiary record). In an individual case, a plaintiff is not limited by her complaint in what relief she can recover, so long as any new relief is consistent with the theories put forth in the complaint. *E.g.*, *Kobold v. Good Samaritan Regional Med. Ctr.*, 832 F.3d 1024, 1038 (9th Cir. 2016); *Crull v. GEM Ins. Co.*, 58 F.3d 1386, 1391 (9th Cir. 1995.). Different rules do not apply in the class-action context. *See Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) (Easterbrook, J.) (holding that a new class definition does not require the plaintiff to amend her complaint). Furthermore, Rule 23 is sufficiently flexible that it specifically allows the Court to modify the class definition at any point (even after trial) prior to judgment, but does not require that any modification narrow the class. *See* Fed. R. Civ. P. 23(c)(1)(C). Rule 23 is not a one-way ratchet.

Given the incompatibility of its proposed rule with the substance of federal law, the cases on which Facebook purports to rely provide little support for its argument. These cases don't cite any controlling rule of law but instead cite each other, creating what is essentially a judicial rumor chain. The first link in the chain is *Berlowitz v. Nob Hill Masonic Mgmt.*, 1996 WL 724776, at *2 (N.D. Cal. Dec. 6, 1996). For its assertion that a court is "bound" by the class definition proposed in the complaint, *Berlowitz* cites nothing. Other courts have appropriately questioned whether *Berlowitz* comports with the law and sound judicial administration. *See Abraham v. WPX Energy Prod., Inc.*, 2017 WL 4402398, at *17-*18 (D.N.M. Sept. 30, 2017) (concluding that a plaintiff is not bound in any sense by the class definition in her complaint). And at bottom *Berlowitz*'s statement is supported by precisely what it cited: nothing.

**II.      The BIPA does not require any individualized showing of injury in this case that would defeat predominance.**

Facebook's principal argument against certification is that, following an intermediate Illinois court's decision in *Rosenbach v. Six Flags Entm't Corp.*, 2017 IL App (2d) 170317, any proof of "statutory injury" will necessarily be individualized. (Opp. at 10-12.) In the first place, this is a merits question that, as Facebook presents it (e.g., Opp. at 12), appears to be more of a fatal similarity than a fatal dissimilarity. *See Ochoa v. McDonald's Corp.*, 2016 WL 3648550, at *4 (N.D. Cal. July 7, 2016). Indeed, if a violation of each class member's privacy rights did not establish injury under the BIPA, all class members claims would fail in unison. Thus, predominance is met.

Regardless, Facebook's reliance on *Rosenbach* is misplaced. *Rosenbach* is a carefully cabined opinion where the court noted that an alleged "injury or adverse effect [under BIPA] need not be pecuniary," *id.* ¶ 28, and that "harm or injury to a privacy right" – which the plaintiff there had ***not*** alleged – could suffice, *id.* ¶ 20 n.1. In other words, so long as Facebook's conduct constitutes an invasive of privacy, *Rosenbach* does not apply.

Unlike in *Rosenbach*, each Plaintiff here testified that they believed Facebook's collection of scans of their facial geometry to be an invasion of privacy. (*See* Exhibit 1, Excerpts of the Deposition of Carlo Licata, at 130:21-131:7, 149:22-150:5; Exhibit 2, Excerpts of the Deposition of Nimesh Patel, at 175:5-9, 175:25-176:10; Exhibit 3, Exceprts of the Deposition of Adam Pezen, at 160:21-161:16, 165:8-17.) Attempting to misdirect, Facebook points to testimony from the proposed named plaintiffs regarding their percieved utility of Facebook's tagging feature. But that's irrelevant. No matter how useful a person may find the tagging feature to be, the unconsented collection of biometric data, as Plaintiffs testified, is unquestionably an invasion of privacy.

Regardless, it is undisputed that each Class and Subclass member was subject to the same conduct that invaded the privacy of the named plaintiffs. In a variety of circumstances, courts have not hesitated to conclude that whether an act or type of act was invasive of privacy presents a common question. *E.g.*, *In re Lenovo Adware Litig.*, 2016 WL 6277245, at *18 (N.D. Cal. Oct.

27, 2016); *Opperman v. Path, Inc.*, 2016 WL 3844326, at *4, *12 (N.D. Cal. July 15, 2016); *Mirkarimi v. Nevada Property 1, LLC*, 2015 WL 5022327, at *2 (S.D. Cal. Aug. 24, 2015); *Tabata v. Charleston Area Med. Ctr., Inc.*, 759 S.E.2d 459, 466-67 (W. Va. 2014). The same result is appropriate here.

Furthermore, there is also good reason to believe that the Illinois Supreme Court would reject *Rosenbach*'s reasoning. *See Am. Tower Corp. v. City of San Diego*, 763 F.3d 1035, 1047-48 (9th Cir. 2013) (observing that single decision of intermediate state court was merely evidence of proper interpretation of state law and declining to follow decision in light of contrary evidence). Illinois courts have long recognized that an individual is "aggrieved" when their legal rights are violated. *See Am. Surety Co. v. Jones*, 51 N.E.2d 122, 126 (Ill. 1943) ("aggrieved" person is "a person who is immediately aggrieved by the act done, ... and not one who is only consequently aggrieved") (quotations omitted); *In re Appointment of Special Prosecutor*, 902 N.E.2d 730, 740 (Ill. App. Ct. 2009) (a party is "aggrieved in the legal sense when [a] legal right has been invaded . . . ."); *Greeling v. Abendroth*, 813 N.E.2d 768, 772 (Ill. App. Ct. 2004) ("aggrieved" means to "suffer [ ] from an infringement or denial of legal rights"); *Chi. Area Council of Boy Scouts of Am. v. City of Chi. Comm'n on Human Relations*, 748 N.E.2d 759, 770 (Ill. App. Ct. 2001). *Rosenbach* doesn't address any of this precedent.

*Rosenbach* also ignores, and arguably splits with, *Doe v. Chand*, 781 N.E.2d 340 (Ill. App. Ct. 2002). Interpreting a nearly identical right of action provision in a related statute, *see* 410 Ill Comp. Stat. 305/13, which is identical to 740 Ill. Comp. Stat. 14/20 but for the amount of available damages, the court in *Doe* held that the statutory "amounts can be recovered without proof of actual damages." 781 N.E.2d at 351. That reasoning is incompatible with *Rosenbach*'s requirement that some consequence is necessary to invoke the BIPA's identically worded right of action.

In the face of the overwhelming weight of Illinois precedent, *Rosenbach* relied on two federal decisions and a decision of the Wisconsin court of appeals. The principal federal decision discussed in *Rosenbach* is *McCullough v. Smarte Carte, Inc.*, 2016 WL 4077108 (N.D. Ill. Aug. 1, 2016). (The court also cited *Vigil v. Take-Two Interactive Software*, 235 F. Supp. 3d 499, 519–

21 (S.D.N.Y. 2017), but that decision largely adopted *McCullough*'s analysis.) *McCullough*, however, mistakenly relied on the meaning of "aggrieved" in other Illinois statutes that, unlike BIPA, *explicitly define* the term to require an injury resulting from a violation of the statute. *See* 2016 WL 4077108, at *4 (citing 70 Ill. Comp. Stat. 405/3.20). The legislature's choice not to define "aggrieved" in the BIPA reflects an intent to adopt the ordinary, or historically understood, meaning of the word. *Hartney Fuel Oil Co. v. Hamer*, 998 N.E.2d 1227, 1234 (Ill. 2013) ("Words should be given their plain and obvious meaning unless the legislative act changes that meaning."). Without a definition, "aggrieved" identifies those individuals whose rights were violated, it doesn't create a consequential harm requirement. Given the weak support for its conclusion, this Court should conclude that *Rosenbach*'s analysis would be rejected by the Illinois Supreme Court. *See Allied Waste Servs. of N. Am., LLC v. Tibble*, 177 F. Supp. 3d 1103, 1109 (N.D. Ill. 2016) (rejecting recent decisions of Illinois Appellate Court because those decisions implicitly conflicted with the past approach of the Illinois Supreme Court on the same issue).[1]

Finally, Facebook wrongly assumes that any need for individualized inquiry on the question of "aggrievement" necessarily destroys predominance. Predominance requires a comparative inquiry. *See Marlo v. United Postal Serv., Inc.*, 251 F.R.D. 476, 483 (C.D. Cal. 2008). When "significant aspect[s]" of a case like this one can be resolved on a classwide basis, class certification is ordinarily appropriate. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). And resolving whether Facebook's conduct invaded an individual's privacy is a simple matter, likely requiring just a sworn statement from a class member. Thus, even if Facebook is right on the merits, there's no reason to think that literal application of *Rosenbach* destroys the benefits created by classwide litigation of the common issues. Thus, certification would nevertheless be appropriate.

---

[1] If the Court has any doubts about the correct interpretation of Illinois law, it may make sense to stay decision pending the resolution of the appeal in *Sekura v. Krishna Schaumberg Tan, Inc.*, No. 18-1075, which is pending in the Illinois Appellate Court's First District.

**III.  The supposed need for a "photo by photo" analysis to confirm class membership does not defeat predominance or superiority.**

Facebook next decries the need for a "photo by photo" analysis. (Opp. at 15-19.)[2]

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████ The argument appears to be that the class is overbroad. *See Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1135-38 (9th Cir. 2016).

But Facebook overstates the issue. In the first place, Facebook's argument is premised in part on the notion that a "scan of face geometry" occurs only when the scan recognizes a face in a picture. ███████████████████████████████████████████████████████
████████████████████████████████████ *See* Exhibit 5, Rebuttal Expert Report of Jeffrey S. Dunn, at 8-9, 10-14, 24.) And even if Facebook is correct, Facebook's evidence doesn't demonstrate any predominance issue. The odds that Facebook's analysis of a single picture failed to inflict an invasion of a class member's biometric privacy are quite different from the odds that Facebook's conduct wasn't injurious with respect to the dozens if not hundreds of pictures of a single class member that were uploaded to Facebook. In other words, Facebook's evidence about the number of faces recognized in uploaded photos doesn't come close to

---

[2] Facebook grossly overstates its position when it asserts that "every element" of liability requires photo-by-photo review. (Opp at 19.) Whether the data generated by Facebook's facial-recognition software qualifies as a biometric identifier, for instance, is a question that can easily be answered without looking at every photo, as is the question whether Facebook has obtained consent to collect a class member's biometrics. In truth, this photo-by-photo review bears only on the amount of damages a class member would be entitled to. And "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

[3] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

establishing the kind of overbreadth necessary to defeat predominance. *See id.* at 1136-38. And, at all events, Facebook's concerns can be accommodated by simply construing the phrase "appeared in" within the class definition to mean those whose faces have been detected by Facebook's technology.[4] *Holman v. Experian Info. Sols., Inc.*, 2012 WL 1496203, at *8 (N.D. Cal. Apr. 27, 2012) ("District courts are permitted to limit or modify class definitions to provide the necessary precision.").

Facebook hints that these same concerns render the class action unmanageable. (Opp. at 16.) But given the amount of information Facebook collects on users, it isn't clear why a "photo by photo" review would be burdensome or unmanagable. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ In other words, a "photo by photo" claims process would be exactly like any claims process that requires the parties to consult the defendant's records. *See, e.g.*, *In re Community Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 397 (3d Cir. 2015) (approving process for identifying class members that required "consult[ing] CBNV's business records and then follow[ing] a few steps"); *see also Briseno*, 823 F.3d at 1133 (approving a claims process that permitted class members to self-identify through affidavits which the defendant would have the opportunity to test adversarially). Facebook seems to think this case is different because its technology has been "inconsistent" in the past, but that argument again relies on the faulty premise that only recognized faces have been "scanned." The default rule, of course, is that class certification should not be denied on manageability grounds except as a last resort. *Id.* at 1128. Facebook provides no compelling reason to displace the default rule here.

---

[4] Facebook's brief argument about paper prints (Opp. at 18-19) invokes similar concerns. Facebook implicitly acknowledges that a substantial majority of the photos uploaded to Facebook are digital photos to which the statute's exception for "photographs" does not apply. As to individuals who appear in digital uploads, the class is similarly situated with respect to Facebook. But Facebook believes the relative handful of scanned paper prints undercuts this similarity. Again, as in *Torres*, the argument doesn't defeat certification unless Facebook can tender evidence permitting the inference that a substantial portion of the class appears *only* in scanned paper prints. Facebook provides no reason to believe that such individuals exist in great numbers, if at all.

1   Finally, it bears noting that none of Facebook's concerns about photo-by-photo review
2   have anything to do with the Subclass. ███████████████████████████████████████████████
3   ████████████████████████████████████████████████████████████████████████████████████████
4   ███████████████████████████████████████████████████████████████████████████████
5   ███████████████████████████

**IV.   Extraterritoriality concerns do not stand in the way of certification.**

Facebook suggests (Opp. at 17-18) that Illinois's presumption against extraterritoriality will present too many individualized issues. But both the proposed Class and Subclass are premised in the first instance on Illinois citizenship. Plaintiffs have made clear in two previous filings their position that the proposed Class and Subclass definitions appropriately account for the legislature's intent on the scope of the BIPA. (Dkt. 272, at 12-20; Mem. at 12-14.) Facebook's contrary position, particularly as expressed in its opposition to class certification, cannot be squared with the intent of the Illinois legislature, and should be rejected.

**V.   Facebook's damages argument is meritless.**

Facebook's suggestion that Plaintiffs' damages theory precludes class treatment (Opp. at 19-21) is nonsense. First, the notion that the potential for a $1000 or $5000 damages award is sufficient incentive to pursue individual litigation lacks support in appellate precedent, the broad consensus of district court opinions, and common sense. *See, e.g.*, *Leyva*, 716 F.3d at 515 (concluding that a claim for "less than $10,000" was small enough to counsel in favor of class treatment). What's more, the question isn't whether $1,000 is sufficient incentive to litigate individually in a vacuum, but whether it is enough money *in the circumstances of this case* to justify individual litigation. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017). Here, a $1,000 award is not a sufficient incentive to litigate "against funded defenses and with a … need for expert testimony." *Id.*

Facebook suggests that the potential for an award of attorneys' fees militates against class certification (Opp. at 20), but courts have recognized that an award of fees can't compensate for many of the other burdens inherent in litigation, and so by itself is too thin a reed to support denying class certification. *E.g.*, *Fosnight v. LVNV Funding, Inc.*, 310 F.R.D. 389, 394 (S.D. Ind.

2015). And, as the Seventh Circuit has recognized, a fee-shifting provision encourages class litigation, promoting the deterrent effects of consumer-protection statutes. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The attorney's fee provision makes the class action more likely to proceed, thereby helping to deter future violations.").

Finally, due process is no impediment to certification (cf. Opp. at 20-21) because the potential for a large aggregate damages award is generally an inappropriate consideration at the class-certification stage. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 722 (9th Cir. 2010). *Bateman* instructs district courts only to examine whether class treatment is inconsistent with legislative intent. Facebook suggests that Illinois legislature has evinced an intent *not* to have BIPA claims litigated on a class basis by (1) inserting the word "aggrieved" into the right of action and (2) providing for the recovery of statutory damages. This is interpretive alchemy. The BIPA was enacted well after the Illinois statute providing for class actions was passed and says nothing about the availability of class relief, and so, as in *Bateman*, the Court should assume that the Illinois legislature presumed that the statute could be enforced through a class action. 623 F.3d at 717; *see Application of Rosewell*, 603 N.E.2d 681, 683 (Ill. App. Ct. 1992) ("Since the Revenue Act does not expressly exempt tax objection proceedings from class actions, we will not read into the statute such an exemption."), *superseded by statute as stated in Fakhoury v. Pappas*, 916 N.E.2d 1161 (Ill. App. Ct. 2009). In instances in which the Illinois legislature has meant to preclude class litigation, it has used much clearer language. *See* 35 Ill. Comp. Stat. 200/23-15(a) ("no complaint [under this law] shall be filed as a class action"). Such language is plainly absent from the BIPA. There is no indication that the legislature intended to encourage individual enforcement of the BIPA at the expense of class litigation. *See also Bateman*, 623 F.3d at 718-19 (observing that refusing to certify a class under a statute that provided for both statutory and actual damages would detract from both the compensatory and deterrent objectives of the statute).

And, of course, if the Court is concerned about the potential aggregate damages award available in this case, it retains the option to reduce the award after judgment to comport with Due Process. As Judge Easterbrook reasoned, "an award that would be unconstitutionally

excessive may be reduced, but constitutional limits are best applied after a class has been certified. Reducing recoveries by forcing everyone to litigate independently—so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims—has little to recommend it." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006); *see, e.g.*, *In re Hulu Privacy Litig.*, 2014 WL 2758598, at *23 (N.D. Cal. June 17, 2014) (observing that the size of a damages award is best addressed after a class is certified).

**VI.   Facebook's attacks on the Proposed Class Representatives are baseless.**

Facebook last argues in a perfunctory manner that none of the plaintiffs are qualified to represent the proposed Class and Subclass (Opp. at 23-25), but these arguments can be discarded quickly.

Facebook first observes that "no competent evidence" establishes any plaintiff's membership in the proposed Class or Subclass. But Facebook does not dispute either (1) that the available evidence permits the inference of Class membership, and (2) that the plaintiffs are in fact members of the proposed Class and Subclass. (Opp. at 23.) Facebook's argument, then, amounts to an argument that membership in a class may only be proved by direct evidence. But circumstantial evidence can be used to prove any fact in federal point. *U.S. Postal Serv. Bd. of Governers v. Aikens*, 460 U.S. 711, 714 n.3 (1983). As with many of its other arguments, no rule of law supports Facebook's argument.

Facebook's argument that the plaintiffs aren't adequate representatives because, to Facebook's mind, they know little about the lawsuit has been soundly rejected by numerous courts. "A named plaintiff does not need to have special knowledge of the case or possess a detailed understanding of the legal or factual basis on which a class action is maintained." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008). Here, the named plaintiffs have demonstrated a basic understanding of the facts and legal theory of the case. (See Dkt. 255, Exh. 28, at 182:6-184:7 (Pezen discussing class's legal theory regarding informed consent); Dkt. 255, Ex. 29, at 149:21-150:5 (Licata discussing same); Dkt. 285, Ex. 9-10, at 187:2-3 (Patel discussing same).) That is all that is required. *Id.* The testimony cited by Facebook demonstrates

no more than the plaintiffs' "normal degree of trust in [their] counsel's ability to handle the complexities of legal process and [their] understandable reticence to micromanage [their] lawyers' activities." *Bautista v. Valero Mktg. & Supply Co.*, 2017 WL 4418681, at *6 (N.D. Cal. Oct. 4, 2017).

## CONCLUSION

Both the proposed Class and Subclass should be certified, Plaintiffs named as class representatives, and their attorneys appointed as Class Counsel.

Respectfully submitted,

**ADAM PEZEN**, **CARLO LICATA**, and **NIMESH PATEL**, individually and on behalf of all others similarly situated,

Dated: February 9, 2018

By: /s/ Rafey Balabanian
One of Plaintiffs' Attorneys

Jay Edelson (Admitted *pro hac vice*)
jedelson@edelson.com
Alexander G. Tievsky (Admitted *pro hac vice*)
atievsky@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian (SBN – 315962)
rbalabanian@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.234.5342
Fax: 415.373.9495

Shawn A. Williams (SBN – 213113)
shawnw@rgrdlaw.com
John George (SBN – 292332)
jgeorge@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Tel: 415.288.4545

Fax: 415.288.4534

Paul J. Geller (Admitted *pro hac vice*)
pgeller@rgrdlaw.com
Stuart A. Davidson (Admitted *pro hac vice*)
sdavidson@rgrdlaw.com
Christopher Gold (Admitted *pro hac vice*)
cgold@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Tel: 561.750.3000
Fax: 561.750.3364

Joel H. Bernstein (Admitted *pro hac vice*)
jbernstein@labaton.com
Corban S. Rhodes (Admitted *pro hac vice*)
crhodes@labaton.com
Ross M. Kamhi (Admitted *pro hac vice*)
rkamhi@labaton.com
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
Tel: 212.907.0700
Fax: 212.818.0477

*Counsel for In re Facebook Biometric Info. Plaintiffs and the Putative Class*