1
MAYER BROWN LLP
John Nadolenco (SBN 181128)
2
350 South Grand Avenue
25th Floor
3
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
4
jnadolenco@mayerbrown.com

5
Lauren R. Goldman (*pro hac vice*)
1221 Avenue of the Americas
6
New York, NY 10020
Telephone: (212) 506-2647
7
lrgoldman@mayerbrown.com

8
*Counsel for Defendant Facebook, Inc.*

9

10
## UNITED STATES DISTRICT COURT

11
## NORTHERN DISTRICT OF CALIFORNIA

12
## SAN FRANCISCO DIVISION

13
IN RE FACEBOOK BIOMETRIC
INFORMATION PRIVACY LITIGATION

**FACEBOOK, INC.'S MOTION FOR
SUMMARY JUDGMENT**

14

Master Docket No.: 3:15-CV-03747-JD

15
THIS DOCUMENT RELATES TO:

Date: May 17, 2018
Time: 10:00 a.m.
16

Location: Courtroom 11
ALL ACTIONS
17

Hon. James Donato
18

*[Proposed Order and Declarations of John
Nadolenco, Yaniv Taigman, Dan Barak, and
Robert Sherman filed concurrently herewith]*
19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 2

    A.    The Illinois Biometric Information Privacy Act .................................................. 2

    B.    Tag Suggestions ................................................................................................. 3

            1.    Facebook's Holistic Approach To Facial Recognition ........................... 4

            2.    Facebook's Deep Neural Network ......................................................... 5

            3.    Facebook's Four-Step Pipeline ............................................................. 6

    C.    Facebook's Disclosures About Tag Suggestions ................................................ 8

ARGUMENT ....................................................................................................................... 9

I.    PLAINTIFFS HAVE NOT SATISFIED BIPA'S PRIVATE RIGHT OF
ACTION. ................................................................................................................... 9

    A.    The "Aggrieved" Provision In BIPA's Private Right Of Action Requires A
Showing Of Injury Beyond The Alleged Statutory Violation. ............................. 9

    B.    Plaintiffs Are Not "Aggrieved." ...................................................................... 11

            1.    Plaintiffs Have Disclaimed Any Injury Beyond Facebook's
Alleged Collection Of Their Biometric Data Without Notice And
Consent. ............................................................................................... 11

            2.    Plaintiffs Consented To Policies That Disclosed Facebook's
Conduct. ............................................................................................... 12

II.    PLAINTIFFS CANNOT RECOVER DAMAGES. .................................................. 14

    A.    BIPA Requires Plaintiffs To Prove That It Was Neglient For Facebook To
Conclude That Its Conduct Was Lawful............................................................ 14

    B.    Any Violation of BIPA Was Not Negligent. ...................................................... 15

            1.    BIPA Can Reasonably Be Interpreted To Exclude Tag
Suggestions. ......................................................................................... 15

                    a.    It is Reasonable To Read BIPA's Photographs Exception
To Apply To Both Digital And Paper Photos........................... 15

                    b.    Facebook's Technology Does Not Distinguish Between
Information Derived From Paper And Digital Photos................. 17

                    c.    No Appellate Court Has Construed BIPA's Photo
Exception. ............................................................................... 17

2.    Facebook Interpreted BIPA To Exclude Its Technology.......................... 18

III.    FACEBOOK HAS NOT OBTAINED PLAINTIFFS' BIOMETRIC
        IDENTIFIERS. ............................................................................................ 19

        A.    There Is No Evidence That Photos Of The Plaintiffs Were Even Subjected
              To Facial Recognition.......................................................................... 19

        B.    Facebook Does Not Collect Or Store Biometric Identifiers. .............................. 19

              1.    Facebook Does Not Obtain Any "Scan Of Face Geometry.".................. 19

                    a.    A "Scan Of Face Geometry" Is An Express Representation
                          Of Measurements Of Depths, Distances, Or Angles Among
                          Human-Notable Facial Features Used To Identify A
                          Person.................................................................................... 19

                    b.    Facebook's Templates Are Not Scans Of Face Geometry. ......... 20

                    c.    Facebook's Face Signatures Are Not Scans Of Face
                          Geometry................................................................................. 21

                    d.    No Other Part Of Facebook's Pipeline Involves The
                          Creation Of A Scan Of Face Geometry. ..................................... 23

              2.    Plaintiffs' Claims Are Barred By BIPA's Exclusion Of
                    Photographs................................................................................. 24

IV.    PLAINTIFFS' DAMAGES THEORY IS MERITLESS................................................ 24

V.    PLAINTIFFS DO NOT SEEK, AND CANNOT OBTAIN, AN INJUNCTION. .......... 25

CONCLUSION................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Aliano v. Joe Caputo & Sons*,
2011 WL 1706061 (N.D. Ill. May 5, 2011) ...........................................................25

*Bateman v. Am. Multi-Cinema, Inc.*,
623 F.3d 708 (9th Cir. 2010) .................................................................................25

*Botts v. Kompany.com*,
2013 WL 12131257 (C.D. Cal. Jan. 14, 2013) .....................................................25

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................................9

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) ...............................................................................21

*Doe v. Chao*,
540 U.S. 614 (2004) ..............................................................................................24

*Emery v. Clark*,
604 F.3d 1102 (9th Cir. 2010) ...............................................................................10

*In re Facebook Biometric Info. Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ....................................8, 13, 16, 20

*Great Lakes Dredge & Dock Co. v. City of Chicago*,
260 F.3d 789 (7th Cir. 2001) .................................................................................14

*Harrison v. Hardin Cty. Cmty. Unit Sch. Dist.*,
313 Ill. App. 3d 702 (2000) ...................................................................................14

*Kawolsky v. McDougal Hartmann Co.*,
84 Ill. App. 3d 410 (1980) .....................................................................................15

*Kline v. Coldwell, Banker & Co.*,
508 F.2d 226 (9th Cir. 1974) .................................................................................25

*Landwer v. Scitex Am. Corp.*,
238 Ill. App. 3d 403 (1992) ...................................................................................15

*Long v. Tommy Hilfiger U.S.A., Inc.*,
671 F.3d 371 (3d Cir. 2012) .............................................................................17, 18

*Maglio v. Advocate Health & Hosps. Corp.*,
40 N.E.3d 746 (Ill. Ct. App. 2015) ........................................................................11

*McDonald v. City of Spring Valley*,
285 Ill. 52 (1918) ...................................................................................................23

*Monroy v. Shutterfly, Inc.*,
2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ........................................................17

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
  210 F.3d 1099 (9th Cir. 2000) ........................................................................9

*Patel v. Facebook Inc.*,
  2018 WL 1050154 (N.D. Cal. Feb. 26, 2018) .......................................2, 11, 12, 13

*People v. Jennings*,
  252 Ill. 534 (1911) ...................................................................................17

*Perrin v. United States*,
  444 U.S. 37 (1979)....................................................................................16

*Pintos v. Pac. Creditors Ass'n*,
  2011 WL 3880411 (N.D. Cal. Sept. 2, 2011) .......................................................15

*Rivera v. Google Inc.*,
  238 F. Supp. 3d 1088, 1095 ..........................................................................17

*Rosenbach v. Six Flags Entm't Corp.*,
  __ N.E.3d __ IL App (2d) 170317 (Dec. 21, 2017)....................1, 9, 10, 11, 13, 14

*Safeco Ins. Co. v. Burr*,
  551 U.S. 47 (2007)..........................................................................15, 16, 17, 18

*Sharemaster v. SEC*,
  847 F.3d 1059 (9th Cir. 2017) ........................................................................11

*Sherman v. Ryan*,
  392 Ill. App. 3d 712 (2009) ...........................................................................14

*St. Louis, A & T.H.R. Co. v. Odum*,
  156 Ill. 78 (1895) ....................................................................................14

*Sterk v. Redbox Automated Retail, LLC*,
  672 F.3d 535 (7th Cir. 2012) .........................................................................24

*United Steel v. Shell Oil Co.*,
  2010 WL 11508796 (C.D. Cal. Aug. 27, 2010)..................................................25

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982) .................................................................................25

**Statutes**

740 ILCS 14/5 ...........................................................................................20

740 ILCS 14/10.......................................................................2, 16, 17, 20, 24

740 ILCS 14/15.............................................................................................3

740 ILCS 14/20..................................................................3, 9, 14, 15, 24, 25

**Other Authorities**

Fed. R. Civ. P. 56.................................................................................................................9

Jeremiah A. Armstrong, *The Digital Era of Photography Requires Streamlined Licensing and Rights Management*, 47 Santa Clara L. Rev. 785, 785 (2007) ...................16

## NOTICE OF MOTION & MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on May 17, 2018, at 10:00 a.m., before the Honorable James Donato, defendant Facebook, Inc. will and hereby does move for summary judgment under Federal Rule of Civil Procedure 56. Facebook respectfully submits that it is entitled to summary judgment on each of plaintiffs' claims. Facebook's motion is based on this notice of motion and motion; the memorandum of points and authorities that follows; the accompanying declarations of John Nadolenco, Yaniv Taigman, Dan Barak, and Robert Sherman; the pleadings, papers, and other documents on file in these actions; and such other evidence and argument presented to the Court at or prior to any hearing in this matter. Facebook requests oral argument on this motion.

Facebook has a pending motion for summary judgment based on Illinois' extraterritoriality doctrine and the Constitution's dormant Commerce Clause. Dkt. 257. In that motion, Facebook reserved its right to move for summary judgment on additional grounds pursuant to this Court's Amended Scheduling Order. *See Hoffman v. Tonnemacher*, 593 F.3d 908, 910-11 (9th Cir. 2010); *In re Capacitors Antitrust Litig.*, 2016 WL 5724960, at *2 (N.D. Cal. Sept. 30, 2016) (Donato, J.).

**INTRODUCTION**

Plaintiffs claim that Facebook violated the Illinois Biometric Information Privacy Act ("BIPA") by using facial-recognition technology to analyze photos of them without providing adequate notice or obtaining their consent. Despite two years of discovery, plaintiffs have failed to elicit *any* evidence on several critical elements of their claim—that they were aggrieved by Facebook's analysis of their photos, that Facebook's interpretation of BIPA was unreasonable, or that Facebook collected their alleged biometric identifiers in the first place. And the evidence affirmatively shows that Facebook told users the exact information it was collecting and how to opt out. This Court should grant summary judgment to Facebook for at least three main reasons.

***Not aggrieved.*** There is no evidence that plaintiffs were "*aggrieved* by a violation" of BIPA, as required by its private right of action. This Court has held that a BIPA violation, without more, is sufficient for Article III standing, but the Illinois Appellate Court held last December that it is *not* sufficient for statutory liability. Rather, a plaintiff must prove an "injury or adverse effect" *beyond* the unauthorized collection of his biometric data: The claim fails "when the only injury he or she alleges is a violation" of BIPA "by a private entity that collected his or her biometric identifiers and/or biometric information without providing him or her the disclosures and obtaining the written consent required by" the statute. *Rosenbach v. Six Flags Entm't Corp.*, __ N.E.3d __, 2017 IL App (2d) 170317 (Dec. 21, 2017). Ms. Rosenbach's claim was deficient even though she asserted that in her absence, Six Flags obtained her *minor son's* biometric identifiers, thereby invading his "right to privacy," without *any* disclosure.

This is an easier case than *Rosenbach*. Each named plaintiff has *affirmatively disavowed* that he was harmed by the alleged violation of his BIPA rights. As plaintiffs' counsel conceded: "[W]e don't know if any consequential harm resulted. We haven't found that it happened." 11/30/2017 Hr'g Tr. (Ex. 1[1]) at 8-9. Consequential harm is precisely what *Rosenbach* requires, and no plaintiff has claimed it. To the contrary, unlike the plaintiff in *Rosenbach*, one plaintiff

---

[1] Exhibits are attached to the Declaration of John Nadolenco unless otherwise indicated.

here admitted that the conduct alleged in this case was "*evident*" from the policies that this Court has deemed binding on each plaintiff.

**No negligence.**  BIPA does not permit a plaintiff to recover statutory damages unless the defendant "violates" BIPA "negligently," "recklessly," or "intentionally."  This requires proof that it was *objectively unreasonable* for Facebook to conclude that its conduct was lawful. Plaintiffs cannot make this showing.  BIPA expressly excludes both "photographs" and "information derived from" photographs, and Facebook's technology indisputably works by deriving information from photos.  The Court determined at the pleading stage that this provision excludes only "paper prints of photographs" and not "digital images," but for purposes of BIPA's negligence rule, what matters is that Facebook's interpretation was not *unreasonable*: The statute does not distinguish between print and digital photos, and digital photography was the norm when BIPA was enacted in 2008.

**No "scan of face geometry."**  Facebook has not obtained plaintiffs' "scans of face geometry."  Its software applies a holistic approach that produces a numeric representation of the entire face; it does not rely on geometric measurements of depths, distances, or angles between human-notable facial features like the eyes, ears, and mouth.  The Illinois General Assembly expressly considered regulating *all* "facial recognition" systems but decided to regulate *only* those systems that obtain "scans of face geometry."  Facebook's holistic system does not qualify.

This Court has said that "when an online service simply disregards [BIPA's] procedures," it violates "the right of an individual to maintain her biometric privacy."  *Patel v. Facebook Inc.*, 2018 WL 1050154, at *4 (N.D. Cal. Feb. 26, 2018).  That is simply not what happened here: Facebook told users the exact data it was collecting, and used that information to provide them with—as one plaintiff put it—"a nice feature" that lets them know when they appear in photos.

## BACKGROUND

### A.    The Illinois Biometric Information Privacy Act

BIPA regulates the collection and storage of (1) "biometric identifiers" and (2) "biometric information."  740 ILCS 14/10.  It defines "biometric identifier" as "a retina or

iris scan, fingerprint, voiceprint, or scan of hand or face geometry," and excludes "photographs." *Id.* "Biometric information" is "any information . . . based on an individual's biometric identifier used to identify an individual," and "does not include information derived from items or procedures excluded under the definition of biometric identifiers"—such as "photographs." *Id.*

BIPA requires entities that "collect, capture, purchase . . . or otherwise obtain a person's or a customer's biometric identifier or biometric information" to first (1) inform the person of the collection or storage, as well as its purpose and length of term, "in writing"; and (2) obtain a "written release" from that person. *Id.* 14/15(b). Such entities must also develop and publish a written policy on the retention and destruction of biometric data. *Id.* 14/15(a). BIPA provides a limited right of action for "[a]ny person aggrieved by a violation of this Act." *Id.* 14/20. For negligent violations, the plaintiff can obtain "liquidated damages of $1,000 or actual damages, whichever is greater"; for intentional or reckless violations, a plaintiff can collect "liquidated damages of $5,000 or actual damages, whichever is greater." *Id.* 14/20(1)-(2).

When the Illinois General Assembly enacted BIPA, it considered regulating *all* kinds of facial-recognition technology. One proposed version (presented by the Senate) defined "biometric identifier" to include "*records* or scans of hand geometry, facial geometry, *or facial recognition*." Am. to Senate Bill 2400 § 10 (Apr. 11, 2008) (Ex. 2) (emphases added). That proposal was rejected by the House of Representatives, and the enacted version regulates only "scan[s] . . . of face geometry," not all "records" of "facial geometry" or all forms of "facial recognition."

### B. Tag Suggestions

Plaintiffs' claims center on Facebook's Tag Suggestions feature. When a person uploads a photo, Facebook will sometimes, but not always, employ facial-recognition technology to determine whether certain of the uploader's Facebook friends appear in the photo; if so, Facebook may prompt the uploader to tag those friends. Facebook's technology is described in Dr. Matthew Turk's Expert Report (Ex. 3) and Rebuttal Report (Ex. 4). ███████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████

### 1.  Facebook's Holistic Approach To Facial Recognition

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████ *see*

FBBIPA_00009591 (Taigman Ex. 1) ("representation layer" generated by Facebook's algorithm is "an holistic face representation").  Plaintiffs' experts dispute that Facebook's system should be characterized as "holistic," but they do *not* dispute the salient points about how the technology

---

[2] ████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████ Dr. Turk, Mr. Taigman, and Mr. Yadan have each been deposed in this case.  Plaintiffs have submitted two expert reports: an opening report from Dr. Atif Hashmi, and a rebuttal report from Jeffrey S. Dunn.  Both were deposed last month.  Facebook has contemporaneously moved to exclude both of plaintiffs' experts under Federal Rule of Evidence 702 and *Daubert*, and to strike Mr. Dunn's report as improper rebuttal material.  Facebook will at times cite these reports to demonstrate that certain points are undisputed; these citations are not indications that the cited portions are appropriate or accurate in all respects.

[3] ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████

actually works.[4] ███████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████

        **2.      Facebook's Deep Neural Network**

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████ █████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████

──────────────
[4] ████████████████████████
████████████████████████████████████████████████████████████
████████
█ █████████████████████████████████████████████████████████
████████████████████████████████████████████████

### 3. Facebook's Four-Step Pipeline

█████████████████████████████████████████████████████████

██████████████████████████████████

**1. *Face detection*.** ████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████

**2. *Alignment*.** █████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████

**3. *Representation*.** ███████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

FACEBOOK'S MOTION FOR SUMMARY JUDGMENT, CASE NO. 3:15-CV-03747-JD



**4.** *Classification.*

FACEBOOK'S MOTION FOR SUMMARY JUDGMENT, CASE NO. 3:15-CV-03747-JD

[REDACTED]

### C. Facebook's Disclosures About Tag Suggestions

In December 2010, a few weeks before Tag Suggestions was launched, Facebook issued a post on its website "to be sure you know exactly how tag suggestions work: When you or a friend upload new photos, we use face recognition software— similar to that found in many photo editing tools—to match your new photos to other photos you're tagged in . . . and, whenever possible, suggest the name of the friend in the photos." FBBIPA_00001124 (Sherman Ex. 1); *see* Sherman Decl. ¶ 6.[7] The post explained how users can disable the feature "[i]f for any reason you don't want your name to be suggested." FBBIPA_0001124.

All Facebook users must agree to its "Statement of Rights and Responsibilities" ("SRR"). *See In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1166-67 (N.D. Cal. 2016) (holding that plaintiffs "assented to the user agreement when they signed up for Facebook" and "agreed to the current user agreement"). The SRR permits Facebook to "collect and use . . . content and information in accordance with the Data Policy." FBBIPA_00000025 (Sherman Ex. 2). The Data Policy states:

> We [ ] use information we have to provide shortcuts and suggestions to you. ***For example, we are able to suggest that your friend tag you in a picture by comparing your friend's pictures to information we've put together from your***

---

[7]    Robert Sherman is the Deputy Chief Privacy Officer at Facebook. Sherman Decl. ¶ 1. He has worked to develop and design privacy policies for Tag Suggestions. *Id.* ¶ 2.

*profile pictures and the other photos in which you've been tagged.* If this feature is enabled for you, you can control whether we suggest that another user tag you in a photo using the "Timeline and Tagging" settings. . . . We **store data for as long as it is necessary** to provide products and services to you and others, including those described above. Information associated with your account will be kept until your account is deleted, unless we no longer need the data to provide products and services."

FBBIPA_00044563-65 (Sherman Ex. 6) (emphases added). *See also* Sherman Decl. ¶¶ 10-13 (similar disclosures in prior versions of the Data Policy); FBBIPA_00044573 (Sherman Ex. 8).

███████████████████████████████████████████████████████████████████

███████████████████████████ If a user opts out, his template is deleted and facial recognition is not used to suggest that friends tag photos of him. Sherman Decl. ¶¶ 18-19.

<h2 align="center">ARGUMENT[8]</h2>

## I. PLAINTIFFS HAVE NOT SATISFIED BIPA'S PRIVATE RIGHT OF ACTION.

The "aggrieved" provision in BIPA's private right of action requires a plaintiff to prove that he suffered an actual injury *beyond* the alleged collection of his biometric data without notice and consent. Plaintiffs have not made such a showing: They have expressly disclaimed any "consequential harm," and that alone entitles Facebook to summary judgment. It is obvious *why* they cannot claim harm: They were given all the information they needed to understand Facebook's technology and how they could opt out.

### A. The "Aggrieved" Provision In BIPA's Private Right Of Action Requires A Showing Of Injury Beyond The Alleged Statutory Violation.

BIPA provides that "[a]ny person aggrieved by a violation of this Act shall have a right of action . . . against an offending party." 740 ILCS 14/20. Last December, the Illinois Appellate Court interpreted this language in BIPA for the first time. It held that this provision

---

[8] Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must identify the "portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), either by "produc[ing] evidence negating an essential element of the nonmoving party's claim," or by "show[ing] that the nonmoving party does not have enough evidence of an essential element," *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmovant to "produce evidence to support its claim or defense." *Id.* at 1103.

requires a plaintiff to prove more than a violation of BIPA's notice-and-consent provisions: the plaintiff must prove an "adverse effect or harm" flowing from that violation. *Rosenbach v. Six Flags Entm't Corp.*, __ N.E.3d __, 2017 IL App (2d) 170317, ¶ 21 (Dec. 21, 2017). This Court is "bound" by that decision absent "'convincing evidence' that the state's highest court would reach a different conclusion." *Emery v. Clark*, 604 F.3d 1102, 1118 (9th Cir. 2010).

In *Rosenbach*, Stacy Rosenbach sued Six Flags and its subsidiary on behalf of her minor child Alexander. 2017 IL App (2d) 170317, ¶ 1. She alleged that Alexander went to the defendants' theme park without her and purchased a season pass; he then "went to the security checkpoint at the park and his thumb was scanned into the Six Flags 'biometric data capture system.'" *Id.* ¶¶ 1, 7. "Upon Alexander's return home, plaintiff asked him for a booklet or paperwork that accompanied the season pass, but she learned that there was none." *Id.* ¶ 8. "[N]either she nor Alexander was informed in writing of the specific purpose and length of term for which Alexander's thumbprint would be collected, stored, and used and . . . neither she nor Alexander signed any written release regarding the thumbprint." *Id.* Ms. Rosenbach contended that Alexander's "right to privacy is a 'personal right' or a 'legal right' that [was] 'adversely affected'" by the BIPA violation, and that "had she known of defendants' conduct, she would not have allowed Alexander to purchase the pass." *Id.* ¶¶ 1, 20. The trial court certified for appeal the question "whether an individual is an aggrieved person [under BIPA] when the only injury he or she alleges is a violation of [BIPA] by a private entity that collected his or her biometric identifiers and/or biometric information without providing him or her the disclosures and obtaining the written consent required by [the statute]." *Id.* ¶ 15.

The Appellate Court answered unanimously "in the negative." *Id.* ¶ 30. It held that "[i]f a person alleges only a technical violation of the Act *without alleging any injury or adverse effect*, then he or she is not aggrieved and may not recover." *Id.* ¶ 28 (emphasis added).[9] The

---

[9] The court was not using the term "technical" to distinguish between trivial and non-trivial violations of BIPA. The question certified in *Rosenbach*, and answered "in the negative," covered the collection of *any* "biometric identifiers" without notice and consent. 2017 IL App (2d) 170317, ¶ 15. Thus, a "technical" violation under *Rosenbach* simply means a violation, standing alone, without any *consequential* harm.

term "aggrieved" had to be given independent effect: "[I]f the Illinois legislature intended to allow for a private cause of action for every technical violation of the Act, it could have omitted the word 'aggrieved' and stated that every violation was actionable." *Id.* ¶ 23.

This Court has ruled that for purposes of *Article III standing*, "the violation of statutory procedural rights in itself can be sufficient, without any additional harm alleged," particularly "when plaintiffs [are] deprived of procedures that protect[] privacy interests." *Patel*, 2018 WL 1050154, at *4. But *Rosenbach* expressly holds that BIPA's "aggrieved" requirement is more stringent: Ms. Rosenbach's contention that her child's "right to privacy . . . ha[d] been adversely affected" by the BIPA violation was insufficient, because she did not claim any *consequential* "actual injury, adverse effect, or harm." 2017 IL App (2d) 170317, ¶ 20.[10] To bring *any* suit, an Illinois plaintiff must allege an injury in fact; "[f]ederal standing principles are similar to those in Illinois." *Maglio v. Advocate Health & Hosps. Corp.*, 40 N.E.3d 746, 752-53 (Ill. Ct. App. 2015). The General Assembly drafted BIPA against that backdrop, and deliberately required a showing of injury *beyond* what is required for standing. *See Sharemaster v. SEC*, 847 F.3d 1059, 1068 (9th Cir. 2017) ("Congress legislate[s] against the backdrop of . . . standing doctrines.").

An Illinois court has already dismissed a different BIPA case under *Rosenbach*. 3/2/2018 Order, *Rottner v. Palm Beach Tan, Inc.*, No. 15-16695 (Ill. Cir. Ct.) (Ex. 12) ("*Rottner* Order"). In *Rottner*, the plaintiff alleged that a tanning salon had violated BIPA by scanning her finger without notice or consent. The trial court rejected the plaintiff's contention that she had adequately pleaded an "injury to a privacy right," emphasizing that "there ha[d] been no publication of Plaintiff's private information." *Id.* at 2. The court found that "*Rosenbach* is on point, binding, and precedential" in this regard. *Id.*

## B.   Plaintiffs Are Not "Aggrieved."

### 1.   Plaintiffs Have Disclaimed Any Injury Beyond Facebook's Alleged Collection Of Their Biometric Data Without Notice And Consent.

All three plaintiffs testified that they have *not* been harmed by Facebook's alleged

---

[10]   The court noted in a footnote that this allegation did not appear in the complaint. 2017 IL App (2d) 170317, ¶ 20 n.1. But it addressed the argument anyway. *Id.* ¶ 20.

collection of their data. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

But again, even if this suffices for Article III standing (*see Patel*, 2018 WL 1050154, at *4), it is insufficient for *liability* under *Rosenbach*, absent proof that the invasion of the plaintiff's "right to privacy" *resulted in* an "actual injury, adverse effect, or harm." Plaintiffs have proven no such injury: They did not testify that Facebook disclosed anything about them to third parties (*compare Rottner* Order at 2) or that Facebook embarrassed them, upset them, or otherwise harmed their emotions, reputations, or relationships.

Any remaining doubt was dispelled by their lawyer at a hearing last November:

> THE COURT: You're not contending that Facebook sold [biometric data to] a third party, used it for advertising purposes or did anything else ***downstream from the actual collection that has harmed your client***; is that right?
> MR. TIEVSKY: No. We don't believe that any consequential harm—***we don't know if any consequential harm resulted. We haven't found that it happened.***

11/30/2017 Hr'g Tr. at 8-9 (emphasis added). "Consequential harm" is *precisely* what BIPA requires. Plaintiffs have conceded themselves out of court.

### 2. Plaintiffs Consented To Policies That Disclosed Facebook's Conduct.

Because plaintiffs have failed to adduce any evidence of consequential harm, summary judgment would be warranted even if, like the defendants in *Rosenbach*, Facebook had disclosed *nothing* about its technology. But this is an easier case than *Rosenbach*: Facebook *did* provide plaintiffs with adequate notice and it *did* obtain their legal consent.

This Court has held that the purpose of BIPA is to "vest[] in Illinois residents the right to control their biometric information by requiring notice before collection and giving residents the

power to say no by withholding consent." *Patel*, 2018 WL 1050154, at *4. That purpose is fulfilled by Facebook's disclosures. Each plaintiff consented to Facebook's Data Policy when he signed up for Facebook. *Facebook Biometric*, 185 F. Supp. 3d at 1166-67. That policy explains that Facebook is "able to suggest that your friend tag you in a picture by comparing your friend's pictures to information we've put together from your profile pictures and the other photos in which you've been tagged." FBBIPA_00044563. Facebook "store[s] data for as long as it is necessary to provide products and services to you and others, including [Tag Suggestions]," and "[i]nformation associated with your account will be kept until your account is deleted, unless we no longer need the data to provide products and services." FBBIPA_00044565. Plaintiffs have recognized that this information was disclosed at all relevant times. Dkt. 263-3 at 1.



Facebook also tells people exactly how to opt out if they do not *want* Facebook to use facial-recognition technology on photos of them to suggest tags. *See* pp. 8-9 *supra*. ▇▇▇

Plaintiffs thus had all of the information they needed to exercise their "power to say no." *Patel*, 2018 WL 1050154, at *4. Critically, they had a great deal more information than the plaintiff in *Rosenbach*: That plaintiff had no knowledge that her child's biometric data was being obtained (2017 IL App (2d) 170317, ¶ 1, 8);[11] Six Flags did not supply either her or her

---

[11] *Cf. Patel*, 2018 WL 1050154, at *5 (distinguishing a BIPA case involving a fingerprint

son with *any* disclosures about their use of the scan (*id.* ¶ 8.); and she expressly alleged that "had she known of defendants' conduct, she would not have allowed [her son] to purchase the pass" at the theme park (*id.* ¶ 1). By contrast, the plaintiffs here gave legal assent to Facebook's Data Policy, which informed them about the precise data collection at issue here, and they do not contend than any additional information would have caused them to act differently.

Plaintiffs have not been "aggrieved" and have no right of action. 740 ILCS 14/20.

## II. PLAINTIFFS CANNOT RECOVER DAMAGES.

Plaintiffs cannot recover statutory damages because they have not proven that Facebook's alleged BIPA violation was negligent. BIPA excludes both "photographs" and "information derived from" photographs. Facebook's technology works by extracting information from photos—as Facebook expressly told users. It was at least *reasonable* for Facebook to believe that its software was covered by the photos exception.

### A. BIPA Requires Plaintiffs To Prove That It Was Negligent For Facebook To Conclude That Its Conduct Was Lawful.

BIPA permits a plaintiff to recover $1,000 "against a private entity that negligently violates a provision of this Act," and $5,000 against one "that intentionally or recklessly violates a provision of this Act." 740 ILCS 14/20(1)-(2). Because BIPA does not define "negligently," "recklessly," or "intentionally," these terms are defined according to Illinois common law. *Harrison v. Hardin Cty. Cmty. Unit Sch. Dist.*, 313 Ill. App. 3d 702, 705 (2000), *reversed on other grounds*, 197 Ill. 2d 466 (2001). Illinois courts define negligence as *objectively unreasonable* conduct. *See, e.g.*, *St. Louis, A & T.H.R. Co. v. Odum*, 156 Ill. 78, 82 (1895); *Great Lakes Dredge & Dock Co. v. City of Chicago*, 260 F.3d 789, 798 (7th Cir. 2001). If a party's conduct is not negligent, it necessarily is not reckless or intentional.[12]

---

scanner where "the plaintiff[] indisputably knew that [her] biometric data would be collected before [she] accepted the service[] offered by the [defendant]").

[12] Recklessness is "[g]ross negligence." *Sherman v. Ryan*, 392 Ill. App. 3d 712, 732 (2009). And intent refers to the "disregard of a known duty." *Landwer v. Scitex Am. Corp.*, 238 Ill. App. 3d 403, 409 (1992). Given the absence of evidence that any violation of BIPA was *negligent*, there clearly is no evidence that Facebook violated BIPA recklessly or intentionally.

Where, as here, an Illinois statute requires a showing of scienter with respect to the "violation" of the statute, the question is not whether the defendant *undertook the act* with that state of mind; it is whether the defendant "knew or showed reckless disregard for the matter of *whether its conduct was prohibited by the statute*." *Landwer v. Scitex Am. Corp.*, 238 Ill. App. 3d 403, 409 (1992) (emphasis added); *see Kawolsky v. McDougal Hartmann Co.*, 84 Ill. App. 3d 410, 413 (1980). Thus, the question is not whether Facebook should have known that it was performing facial recognition on photos. (And indeed, it is difficult to imagine how an entity could perform an *accidental* scan of face geometry.) The question is whether Facebook "negligently violate[d] a provision of this Act" (740 ILCS 14/20)—that is, whether it would be objectively unreasonable for Facebook to conclude that its conduct was lawful under BIPA.

Federal decisions are in accord. In *Safeco Insurance Co. v. Burr*, 551 U.S. 47 (2007), for example, the plaintiff claimed that the defendant insurance company had recklessly violated FCRA by failing to notify him that he had been subjected to adverse action based on information in a credit report. *Id.* at 52. The Supreme Court granted summary judgment, finding that the defendant was not even negligent: Its "*reading of the statute, albeit erroneous, was not objectively unreasonable*." *Id.* at 69 (emphasis added). The defendant's "reading ha[d] a *foundation in the statutory text*"; "no *court of appeals* had spoken on the issue"; and "no authoritative guidance ha[d] yet come from the FTC." *Id.* at 69-70 (emphases added).[13]

**B.      Any Violation of BIPA Was Not Negligent.**

**1.      BIPA Can Reasonably Be Interpreted To Exclude Tag Suggestions.**

**a.      It is Reasonable To Read BIPA's Photographs Exception To Apply To Both Digital And Paper Photos.**

For years, Facebook and other Internet companies—including Google, Shutterfly,

---

[13]      *See also*, *e.g.*, *Pintos v. Pac. Creditors Ass'n*, 2011 WL 3880411, at *3-4 (N.D. Cal. Sept. 2, 2011) (denying plaintiff summary judgment on whether defendant committed "negligent violation" of FCRA because plaintiff "proffer[ed] no undisputed evidence establishing as a matter of law that a reasonably prudent collection agency would have known [at the time] that the FCRA prohibited [the defendant's] conduct"; insufficient that defendant's *act* was intentional, because question was whether defendant "should have known at that time that its *action was impermissible*" (emphasis added)).

Amazon, and Apple—have applied facial-recognition technology to digital photos. Plaintiffs'
cases, brought in 2015, were the first to assert that such an analysis could subject a company to
liability under BIPA—a statute enacted in 2008. One main reason why this kind of technology
went unchallenged for so long is that, under BIPA, "[b]iometric identifiers do not include . . .
photographs," and "[b]iometric information does not include information derived from items or
procedures excluded under the definition of biometric identifiers." 740 ILCS 14/10.
Facebook's technology undisputedly works by deriving information from photos uploaded to the
service. *See* pp. 3-9 *supra*. Thus, at a minimum, a reading of BIPA that excludes Facebook's
technology "has a foundation in the statutory text." *Safeco*, 551 U.S. at 70.

This Court held at the pleading stage that the photo exception did not bar plaintiffs' BIPA
claim: "'Photographs' is better understood to mean paper prints of photographs, not digitized
images stored as a computer file and uploaded to the Internet." *Facebook Biometric*, 185 F.
Supp. 3d at 1171. Plaintiffs had not made this argument; the Court's conclusion rested on its
determination that "[t]he statute's focus is on newer technology" and excludes only "physical
identifiers that are more qualitative and non-digital in nature." *Id.*

Facebook respectfully submits that this reading is not the only reasonable one. "[U]nless
otherwise defined," words are given their "contemporary" meaning. *Perrin v. United States*, 444
U.S. 37, 42 (1979). BIPA does not distinguish between paper and digital photos. And when
BIPA was passed in 2008, digital photography was the norm: As a 2007 article explains,
"[d]igital photography entered the mainstream of consumer consciousness soon after the start of
the new century"; "four in five cameras sold in 2005 were digital." Jeremiah A. Armstrong, *The
Digital Era of Photography Requires Streamlined Licensing and Rights Management*, 47 SANTA
CLARA L. REV. 785, 785 (2007). Accordingly, it was hardly unreasonable to believe that a
reference to "photographs" in a 2008 statute encompassed both paper and digital images.[14]

Nor do the statute's regulated items and exceptions fit neatly into this Court's dichotomy

---

[14]     *See also* WEBSTER'S DICTIONARY 373 (2008 ed.) (Ex. 17) ("photography" means "the art
or process of producing images on a sensitive surface (as film or a CCD chip [a form of
technology commonly used in digital imaging])").

of "newer" and "older" technologies.  Several of the items regulated as biometric identifiers—hand-geometry, retina, and iris scans—have been used for identification since the 1980s.[15]  Fingerprints are often "non-digital" and have been used for centuries.  *People v. Jennings*, 252 Ill. 534, 546 (1911).  On the flip side, BIPA's *exclusions* are not limited to low-tech or physical sources; it also excluded high-tech *digital* images like MRIs and PET scans.  740 ILCS 14/10.

### b. Facebook's Technology Does Not Distinguish Between Information Derived From Paper And Digital Photos.

This Court correctly anticipated that "[a]s the facts develop, it may be that 'scan' and 'photograph' with respect to Facebook's practices take on technological dimensions that might affect the BIPA claims."  185 F. Supp. 3d at 1172.  The undisputed record shows that (1) many photos uploaded to Facebook are derived from paper prints and (2) ███████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████.  Facebook had no reason to distinguish between paper and digital photos when analyzing BIPA's applicability.

### c. No Appellate Court Has Construed BIPA's Photo Exception.

When Facebook launched Tag Suggestions, there was *no* authority interpreting BIPA's photo exception.  And it is still the case that "no court of appeals has spoken on the issue."  *Safeco*, 551 U.S. at 70; *see Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 377 (3d Cir. 2012) (defendant's interpretation was not "objectively unreasonable"; "district court authority putting [defendant] on notice that its interpretation was incorrect" was insufficient because "there was no guidance from the federal courts of appeal").  Absent such guidance, it was not negligent to interpret BIPA as excluding software that derived information from digital photos.[16]

---

[15]  *See* Stephen Mayhew, *Explainer: Hand Geometry Recognition*, BiometricUpdate.com (June 22, 2012) (Ex. 18); Rawlson King, *Explainer: Retinal Scan Technology*, BiometricUpdate.com (July 12, 2013) (Ex. 19).

[16]  In the intervening years, two district courts have denied motions to dismiss BIPA claims against Google and Shutterfly, but neither court adopted this Court's distinction between paper and digital photos.  *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1095 n.7 (N.D. Ill. 2017); *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *3 (N.D. Ill. Sept. 15, 2017).

17

### 2. Facebook Interpreted BIPA To Exclude Its Technology.

Because it was objectively reasonable to interpret BIPA to exclude Tag Suggestions, plaintiffs cannot recover statutory damages regardless of Facebook's *actual* reading. *Safeco*, 551 U.S. at 70 n.20; *Long*, 671 F.3d at 377 (argument that defendant "did not actually rely on *any* interpretation of [FCRA]" was "expressly foreclosed by *Safeco*"). But in any event, there is no genuine dispute that well *before* this suit, Facebook's consistent position was that BIPA did not apply to its technology.

Later that year, Facebook's Deputy Chief Privacy Officer testified before the Senate. In advance, Senator Franken asked: "Illinois and Texas state law requires that a company get a person's consent before generating a faceprint for him or her. . . . If Tag Suggestions is on by default—if it is an opt-out program—how are you complying with those laws?" FBBIPA_00000857 (Sherman Ex. 13). Facebook responded that "tag suggestions [ ] does not conflict with the laws of either state." *Id.* That conclusion was not negligent.

## III.  FACEBOOK HAS NOT OBTAINED PLAINTIFFS' BIOMETRIC IDENTIFIERS.

Plaintiffs cannot proceed to trial for each of two additional, independent reasons: (a) there is no evidence that photos of plaintiffs were subjected to facial recognition; and (b) Facebook's technology does not collect any "biometric identifiers."

### A.  There Is No Evidence That Photos Of The Plaintiffs Were Even Subjected To Facial Recognition.

In a lawsuit alleging that their privacy rights were invaded by Facebook's use of facial-recognition technology, one would think that plaintiffs would offer proof that Facebook actually applied that technology to their photos.  They did not:  There is no evidence that in any photos of plaintiffs uploaded to Facebook, their faces were detected, were aligned, or generated a face signature.  This basic failure of proof entitles Facebook to judgment.

### B.  Facebook Does Not Collect Or Store Biometric Identifiers.

#### 1.  Facebook Does Not Obtain Any "Scan Of Face Geometry."

When plaintiffs brought these actions, their sole claim was that Facebook's *stored templates* are "scans of face geometry" under BIPA.[17]  As discussed below, they have largely abandoned this theory.  But because they have not moved to amend their complaint, it is unclear what they now consider to be the "scan of face geometry" that Facebook supposedly obtains.

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

█████  In any event, there is no genuine dispute that Facebook does not produce such a scan.

#### a.  A "Scan Of Face Geometry" Is An Express Representation Of Measurements Of Depths, Distances, Or Angles Among Human-Notable Facial Features Used To Identify A Person.

When the General Assembly enacted BIPA, it rejected drafts of the bill that would

---

[17]  *See, e.g.*, Compl. ¶ 25 ("[A]n algorithm is used to calculate an individual's unique physical characteristics, which results in a biometric template that is separate and distinct from the image from which it was created."); *id.* ¶ 26 (alleging that Facebook "extracted biometric identifiers from [users'] uploaded photographs and previously tagged pictures, and stored these biometric identifiers in a database"); *id.* ¶¶ 27, 36, 43, 50.

regulate (a) all forms of "facial recognition" and (b) all "records" of "facial geometry." *See* p. 3 *supra*. Nor did it choose to regulate every "scan of a face." The legislature chose instead to regulate only facial-recognition technology that obtains a "scan of face geometry."[18]

"Geometry" "deal[s] with the relations, properties, and measurements of solids, surfaces, lines, points, and angles." WEBSTER'S DICTIONARY 207 (2008 ed.). Plaintiffs similarly define "face geometry" in their complaint as: a measurement of "*the distance between [a person's] eyes, nose, and ears.*" Compl. ¶ 23 (emphasis added); *see also id.* ¶ 4. ███████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████

By modifying "face geometry" with the noun "scan of" (as opposed to "records of"), the legislature clarified that the term means an *express representation* of "face geometry"—*i.e.*, *something that shows* geometric relationships between human-notable facial features. And because a "scan of face geometry" is a subset of the term "biometric *identifier*," any such scan under BIPA must be data that is *used to identify a person*. Other parts of BIPA refer more generally to "biometrics" (740 ILCS 14/5(a), (c)), "biometric-facilitated financial transactions" (*id.* 14/5(b)), and "biometric technology" (*id.* 14/5(f)), but BIPA *regulates* only an exclusive list of "biometric *identifiers*" and "biometric information" that is "based on an individual's biometric *identifier*" and "used to *identify* an individual" (*id.* 14/10 (emphases added)).

Accordingly, a "scan of face geometry" is an express representation of measurements of depths, distances, or angles among human-notable facial features used to identify a person.

### b. Facebook's Templates Are Not Scans Of Face Geometry.

Plaintiffs no longer contend that a template—*the only data on which they based their complaint, and the only facial-recognition data that Facebook stores*—is a "scan of face geometry." That is because a template is not a "scan" of *any* information about a person's face.

---

[18] In ruling on Facebook's motion to dismiss, this Court disagreed with Facebook's argument "that the only way to reconcile the statute's inclusion of 'scan' and exclusion of 'photographs' is to read the word 'scan' to mean in-person scan." *Facebook Biometric*, 185 F. Supp. 3d at 1171 (emphasis omitted). Facebook respectfully maintains that a "scan of face geometry" must be accomplished in person under BIPA.

It is a hyperplane—a mathematical divider between the vectors of numbers (face signatures) associated with particular users and those corresponding to other people. *See* pp. 7-8 *supra*. The template itself does not represent facial features at all. Nor does it even indirectly represent "face geometry" because, as discussed next, it is not even *derived* from data that represents geometric features of the face.

### c. Facebook's Face Signatures Are Not Scans Of Face Geometry.

Under Ninth Circuit law, plaintiffs cannot rely on face signatures as the purported "scan of face geometry" because they never sought leave to amend their complaint to assert this theory. *Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1291-92 (9th Cir. 2000) (district court properly refused to entertain a "new theory of liability at the summary judgment stage" because "the plaintiff should have moved to amend his pleadings during discovery"). But in any event, face signatures likewise do not qualify. ███████████████████████████████████████

███████████████████████████████████ ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[19] There is good reason why the General Assembly would distinguish between these two approaches: only feature-based systems implicate security concerns. Because feature-based approaches often use human-notable facial features, an unauthorized person or system who gains access to the parameters may be able to determine the identity of the face being processed for recognition. Turk Rpt. ¶¶ 119-20. Holistic approaches like Facebook's do not create these risks because they could not be used to steal someone's identity. *See* Turk Rpt. ¶ 123.

Plaintiffs' experts have conceded these facts: █████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████ █████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████████████████
█████ ██ █████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████ These legal conclusions are entitled to no weight; they

are inconsistent with the legislative history discussed above; and they are absurd.

As discussed in Facebook's brief in *Gullen* (at Part I), there are two other reasons why

[20] ████████████████████████████████████████████████████████
████████████████████████████████████████████████

[21] ████████████████████████████████████████████████████████
███████████████████████████████████

face signatures are not "scans of face geometry." First, BIPA does not require prior notice and consent for the collection of data that is not stored. Second, it would be impossible to provide anyone (user or non-user) with prior notice, or obtain his consent, *before* collecting a face signature; ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████ BIPA cannot be interpreted in a way that would make compliance impossible. *See, e.g.*, *McDonald v. City of Spring Valley*, 285 Ill. 52, 56 (1918).

### d. No Other Part Of Facebook's Pipeline Involves The Creation Of A Scan Of Face Geometry.

22

[REDACTED]

There is no genuine dispute of fact:  No part of Facebook's process involves the creation, collection, or storage of any "scan of face geometry."  Plaintiffs' claim fails.

### 2.    Plaintiffs' Claims Are Barred By BIPA's Exclusion Of Photographs.

For the reasons discussed at Point II.B.1 *supra*, Facebook respectfully submits that the Court should reconsider its preliminary determination that BIPA's exception for "photographs" and "information derived from" photographs, 740 ILCS 14/10, applies only to "paper prints of photographs" rather than "digitized images" and other "newer technology."

## IV.    PLAINTIFFS' DAMAGES THEORY IS MERITLESS.

If the Court does not conclude that Facebook is entitled to summary judgment on liability, it should alternatively grant full or partial summary judgment to Facebook on plaintiffs' damages claim for three reasons, apart from those discussed above.  *First*, BIPA allows a party to collect only "liquidated damages" or "actual damages, whichever is greater."   740 ILCS 14/20(1)-(2).   This provision applies only when the plaintiff proves that he *suffered* actual damages but cannot prove their full *amount*—which plaintiffs have failed to do.[23]  *Second*, as explained in Facebook's opposition to class certification, it would violate federal due process to permit plaintiffs to recover statutory damages where, as here, they have not been injured—and

---

[23]    *See, e.g.*, *Doe v. Chao*, 540 U.S. 614, 619-21 (2004); *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 537-38 (7th Cir. 2012) (actual damages required under statute allowing party to collect "actual damages but not less than liquidated damages in an amount of $2,500": [L]iquidated damages are intended to be an estimate of actual damages, and if [the violation] results in no injury at all . . . , the only possible estimate . . . would be zero.").

particularly where they seek to aggregate damages on a *class-wide* basis.[24] *Third*, to the extent plaintiffs can recover *any* statutory damages, they can recover for one BIPA "violation" per *person*—not per *photo*. Courts have applied this limitation on damages to similar statutes.[25]

## V. PLAINTIFFS DO NOT SEEK, AND CANNOT OBTAIN, AN INJUNCTION.

Plaintiffs do not appear to be seeking injunctive relief; they have asked the Court to certify only a Rule 23(b)(3) class. Dkt. 255 at 5-6. And they cannot satisfy the stringent requirements for that relief. "The basis for injunctive relief . . . has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). Plaintiffs have not shown *any* injury, let alone one that is irreparable and "not "adequately compensable by money damages." *United Steel v. Shell Oil Co.*, 2010 WL 11508796, at *7 (C.D. Cal. Aug. 27, 2010).

## CONCLUSION

The Court should grant summary judgment in favor of Facebook.

Dated: March 16, 2018

MAYER BROWN LLP

By: */s/ John Nadolenco*
John Nadolenco
Lauren R. Goldman

*Counsel for Defendant Facebook, Inc.*

---

[24]     *See* Dkt. 285 Part II.B.1; *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 715, 722 (9th Cir. 2010); *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 233-34 (9th Cir. 1974); *Aliano v. Joe Caputo & Sons*, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011).

[25]     *Compare* 740 ILCS 14/20 ("[a] prevailing *party* may recover [damages] for each violation" if it proves that defendant violated the statute negligently, recklessly, or intentionally (emphasis added)), *with Botts v. Kompany.com*, 2013 WL 12131257, at *2 (C.D. Cal. Jan. 14, 2013) (under Copyright Act, "[o]nly one penalty lies for multiple infringements of one work"), *and Aliano*, 2011 WL 1706061, at *4 ("FACTA imposes liability on a per-consumer basis, rather than on a per-receipt basis").