# EXHIBIT 17

# Submission by „Facebook Ireland Ltd"
# to the Office of the Irish Data Protection Commissioner

**Response to Complaint(s) Number: 9**

The following submission by "Facebook Ireland Ltd" is a response to complaints filed by "europe-v-facebook.org" before the Irish Data Protection Commissioner as amended by our "request for a formal decision". It was received by "europe-v-facebook.org" on September 30th 2013.

The submission starting on page 2 of this PDC does only reflect the view of "Facebook Ireland Ltd" and was not changed or amended. The submissions were likely drafted by Facebook Ireland's law firm "Mason, Hayes & Curran". We did not receive any addition documents from "Facebook Ireland Ltd". All other documents of this procedure can be downloaded on "europe-v-facebook.org".

**After we took a first look at the submissions by "Facebook Ireland Ltd" we want to mention the following points, to ensure that any reader will get the full picture of the procedure:**

1. In the submissions Facebook Ireland Ltd does in many cases **not responded to our complaints**, but produced arguments and submissions that are irrelevant to the complaints filed. It seems that Facebook Ireland Ltd is trying to "bypass" the arguments we entertained.

2. In the submissions Facebook Ireland Ltd does in many cases **summarize our complaints** in a way that does not reflect the content of our complaints. We do not know why Facebook Ireland Ltd has chosen this approach other then again "bypassing" the core of the complaints.

3. In the submission Facebook Ireland Ltd does not respond to the **legal arguments** that were submitted by us, but only focus on facts. The law is not cited in any of the submissions.

4. In the past 2 years Facebook Ireland Ltd has changed many functions. In the submissions Facebook Ireland Ltd does in many cases **mix the factual situation** throughout this time period. Our complains are usually separating facts and consequences before and after such changes.

5. In the submission Facebook Ireland Ltd does in many cases refer to the "**audit reports**". The basis for these reports is not public or independently verifiable. In many cases the DPC has only relied on unverified arguments by Facebook Ireland Ltd when making its assessment. Facebook Ireland Ltd is now relying on these findings, as if they were independently verifiable facts.

➔ **Therefore we recommend to consult our original complains, as amended by the "request for a formal decision" [DOWNLOAD] when analyzing the submissions from "Facebook Ireland Ltd".**

**COMPLAINT 9 – FACIAL RECOGNITION**

1. **BACKGROUND**

1.1. **What is tag suggest?**

Tag suggest is a Facebook feature aimed at making photo-tagging quick and easy. Facebook's facial recognition software uses an algorithm that generates a unique number or template based on facial features. Facial recognition technology enables Facebook to suggest that a user be tagged in photos that look like the particular user. The templates cannot be used to recreate an image of a user.

1.2. **Is the tag suggest feature enabled in the EU?**

FB-I does not currently offer users in the EU the ability to have templates created and stored. Therefore, users in the EU will not be suggested to others to be tagged in uploaded photos. Users in the EU may, however, receive tag suggestions based on templates of users outside of the EU.

The screenshot below, taken from an EU resident user's account, shows that tag suggest is unavailable to that user:



1.3. **Data Use Policy**

The Data Use Policy informs users about how information is received and used by Facebook. The Data Use Policy applies to users of Facebook worldwide. As such, features such as tag suggest are indicated in the Data Use Policy but are not available to all users:

> **Information others share about you**
>
> *We receive information about you from your friends and others, such as when they upload your contact information, post a photo of you, tag you in a photo or status update, or at a location, or add you to a group.*

***Other information we receive about you***

*We also put together data from the information we already have about you and your friends. For example, we may put together data about you to determine which friends we should show you in your News Feed or suggest you tag in the photos you post.*

**How we use the information we receive**

*to make suggestions to you and other users on Facebook, such as: suggesting that your friend use our contact importer because you found friends using it, suggesting that another user add you as a friend because the user imported the same email address as you did, or suggesting that your friend tag you in a picture they have uploaded with you in it*

> *We are able to suggest that your friend tag you in a picture by scanning and comparing your friend's pictures to information we've put together from the other photos you've been tagged in. This allows us to make these suggestions. You can control whether we suggest that another user tag you in a photo using the "How Tags work" settings. Learn more at: https://www.facebook.com/help/tag-suggestions*

1.4.  **Help Center**

The Help Center also provides users with information on the operation of Facebook's many features. Tag suggest is explained to users and the functions of the feature are clearly set out in the Help Center. For the sake of completeness, FB-I sets out the current version of the relevant provisions below. However, it is important to recall that tag suggest is not presently offered in the EU, and that EU resident users are not suggested in photographs, regardless of whether these photographs are uploaded by EU or US users.

**How does Facebook suggest tags?**

*To help you tag your friends, photos of the same person are automatically grouped together. We also suggest names for friends in some of these groups or on individual photos to help you save time tagging and sharing photos. These suggestions are made by saving some information about photos your friends are tagged in and comparing that information with photos you've uploaded. We're not automatically adding tags to photos, we're just suggesting friends you might want to tag.*

*We currently use facial recognition software that uses an algorithm to calculate a unique number ("template") based on someone's facial features, like the distance between the eyes, nose and ears. This template is based on photos you've been tagged in on Facebook. We use these templates to help you tag photos by suggesting tags of your friends. Templates are only created for people on Facebook who've been tagged in a photo. If you un-tag yourself from a photo, that photo is not used to create the template. We also couldn't use a template to recreate an image of you.*

*If we can't suggest a name automatically, we group similar photos together so you can tag them quickly.*

**What information does Facebook use to tell that a photo looks like me and to suggest that friends tag me?**
*Two types of information are required to see that a newly uploaded photo looks like someone who's been tagged on Facebook before:*

- **Information about photos you're tagged in** — *When you're tagged in a photo, we associate the tags with your account, compare what these tagged photos have in common and store a summary of this comparison. If you've never been tagged in a photo on Facebook or have untagged yourself in all photos of you on Facebook, then we do not have this summary information for you.*
- **Comparing your new photos to stored info about photos you're tagged in** — *Your or your friends' photos may be compared to the summary information we've stored about what your tagged photos have in common. The results of this comparison may be used to group photos or suggest that your friends tag photos that look like you. You and your friends have the option to ignore these suggestions.*

2

> *You are only tagged in the photo if your friend saves these suggestions. If friends do tag you, you'll be notified automatically and can untag yourself if you don't like the photo or don't want to be tagged.*

## 2.  FACTUAL ASSERTIONS MADE BY COMPLAINANT

The Complainant objects to FB-I's analysis of users' photos for tagging purposes and the alleged retention of biometric information by FB-I. In the Original Complaints, the Complainant alleges:

(a) *Facebook is not clearly indicating to users its use of photos, it is avoiding using the term 'facial recognition' and saying it generates biometrical data of every individual user, and there was no information given to, or agreement by, users in relation to the biometrical information gathered by FB-I.*

(b) *"The mere existence of such data bears tremendous privacy risks, since this could enable the holder of the data to analyze live information (e.g. CCTV) or to analyze information on the internet or by using cell phones. Public authorities may demand access to this information for their purposes."*[1]

In the Request for Formal Decision, the Complainant further alleges that:

(c) *Tag Suggest is currently active for users in the United States but there is no indication how the system distinguishes EU/EEA users.*

(d) *"FB-I is again using 'facial recognition' at least on a 'ad hoc' basis for all uploaded pictures and is at least using it to 'group' pictures what it thinks to be the same person".*

(e) *The Tag Suggest data of all users outside US/Canada should have been deleted.*

## 3.  AUDIT PROCESS

Tag suggest was one of the main technologies considered by the DPC during the audit. The final outcome of this process was that tag suggest was turned off in the EU and any existing biometrics of EU residents were deleted. This position remains unchanged.

### 3.1.  2011 Audit Report

In the 2011 Audit Report, the DPC set out the Complainant's allegations in the following terms:

> *The operation of this tag suggest feature was also the subject of Complaint 9 – Face Recognition from Europe-v-Facebook. The complainant contended that Facebook's photo-tagging suggestion feature involves the analysis of tagged photographs held within its systems. The complainant quoted Facebook's Privacy Policy which states that "if one of your friends uploads a picture of you, we may suggest that your friend tag you in the picture. We do this by comparing your friend's pictures to information we've put together from the photos you've been tagged in."*
>
> *The complainant has highlighted a number of issues of concern in relation to this feature. Firstly, he contended that Facebook is not admitting to the generation of biometric data. Secondly, as the feature is relatively new, users already signed up to Facebook might not have agreed to the new feature and have not been asked by Facebook to agree to the new features in the Privacy Policy. Thirdly, he contended that users were not provided with any specific information on the introduction of the feature. Finally, he stated that the feature is very difficult to de-activate and that even when a user has successfully deactivated the feature, any generated biometric data remains.*[2]

The DPC set out its understanding of the tag suggest feature in the 2011 Audit Report:

> *When a user uploads a photo album, photos containing the same person are automatically grouped together by Facebook. Facebook then suggests names for friends in some of these groups to help save the user time creating*

---

[1] Page 2 of Complaint 9 of the Original Complaints
[2] Pages 101 to 102 of the 2011 Audit Report

> *and sharing albums. Facebook indicates in its data use policy that these suggestions are made by saving certain information about the photos people are tagged in and comparing that information to newly uploaded photos to see if the newly uploaded photos are similar.*
>
> *If Facebook cannot suggest a name automatically, it groups similar photos together so the user can label them quickly and let friends know that a user has posted photos of them.[3]*

The DPC noted that the feature was previously the subject of communication between it and FB-I, and that the feature had drawn attention from other data protection authorities in other jurisdictions. The DPC considered the matter in conjunction with FB-I, with FB-I voluntarily implementing the additional guidance given by the DPC on this point :

> *The operation of the facial recognition/tag suggest feature was the subject of previous communication by this Office with FB-I following public concern on foot of its launch in the EEA. It was also examined and remains under examination by other data protection authorities. Our communication with FB-I at the time was not on foot of a complaint and sought to progress the matter to a satisfactory outcome that would be acceptable to all parties. The outcome agreed was not taken in the context of a formal decision of the Commissioner. At that time FB-I, while pointing to the information that was in its original Privacy Policy, along with further information given via its blog, a specific change in its Data Use Policy announced in December 2010, and the possibility to disable the auto-tagging feature via the user privacy settings, agreed voluntarily to take additional measures for users in the EU:*
>
> - *Each user was given prominent notice of the new feature on her/his Facebook home page. The notice appeared at least three times;*
>
> - *The notice provided a link to further information on the feature, including how to disable it; and*
>
> - *The then-current method of disabling the feature was modified to further simplify it.[4]*

The DPC then set out the response of FB-I with regard to the Complainant's Original Complaint. In particular, FB-I explained how users' consent is obtained, how 'tag suggest' actually operates to match faces and how the feature can be disabled:

> *Facebook indicated in response that it does get the consent of users, pointing to the fact that users do not have to participate in the tag suggestion feature and may disable it at any time. Facebook also pointed to the revised wording in its Privacy Policy which states:*
>
>> *We are able to suggest that your friend tag you in a picture by comparing your friend's pictures to information we've put together from the photos you've been tagged in. You can control whether we suggest that another user tag you in a photo using the "How Tags work" settings.*
>
> *In relation to deleting the feature, Facebook stated that instructions on how to do this are made clear in its Help Centre which states that*
>
>> *disabling tag suggestions will result in the deletion of the photo-comparison data that we use to make Tag Suggestions work.*
>
> *thus implying, stated Facebook, that there is no further processing of this data after deactivation.*
>
> *FB-I also wished to clarify in precise terms how the "Tag Suggest" feature operates. Facial recognition software is an algorithm that is applied to review the image of a face and calculate a unique identifier, which is a string of numbers ("number"), based on distinguishing characteristics, such as the shape of the eyes and the distance between eyes, nose, and ears. Once the number is calculated, a new image can be evaluated by the algorithm,*

---

[3] Page 101 of the 2011 Audit Report
[4] Page 101 of the 2011 Audit Report

> *converted to a number, and compared with a previous calculation. If the numbers are the same, a match has been identified.*
>
> *There are several important details about the way Facebook's Tag Suggest feature works which FB-I wished to emphasize:*
>
> 1. *It requires only a few tagged photos of a user in order for its facial recognition algorithm to calculate the number;*
> 2. *The number is constantly being updated based upon newly tagged photos;*
> 3. *Facebook's facial recognition technology is not structured to be able to take a random photo and match it to a photo in its databases, but rather is structured to be able to suggest specific friends to a user;*
> 4. *Photo-tagging using the tag suggest feature is not automatic but rather the user has to approve the tagging of the suggested friend;*
> 5. *A Facebook user is suggested only the names of friends from his or her closest circle of friends to tag in an uploaded photo, if there is a number match;*
> 6. *Given a number you can NOT recreate the image or do anything besides match it to another number; and*
> 7. *The number is only of a single face, which means you can have multiple numbers in a single photo (assuming there are multiple faces).[5]*

In appraising the introduction of the tag suggest feature, the DPC noted that the Hamburg Data Protection Authority had also considered the matter and reached its own conclusion on its compliance with German data protection law. In light of the Complainant's complaint, the DPC re-examined the matter and made a best practice recommendation to FB-I:

> *At the time of this Office's previous communications with FB-I on this issue we made clear our strong preference that the measures subsequently taken should have been in place before the auto-tagging feature was launched for EU users.*
>
> *Subsequent to that interaction with FB-I, the Hamburg data protection authority has separately considered this matter and has reached a conclusion in line with the provisions of German data protection law.*
>
> *This Office in the context of the current complaint has re-examined this matter. It remains our position that FB-I should have handled the implementation of this feature in the EEA in a more appropriate manner. The creation of the facial recognition identifier does constitute the processing of personal data and we do consider the creation of the identifier to constitute biometric data in relation to the user. Biometric data are not among the data categories given special protection in the Irish Data Protection Acts or in the EU Data Protection Directive. Our consideration of this issue must also have regard to case law[6] in Ireland regarding the use of biometrics. This case law has not considered that the processing of biometric data requires explicit consent. On the other hand, biometric data have been afforded special protection in the laws of certain States, and the EU's Article 29 Working Party has suggested that such a categorisation should be considered in the future EU data protection regime[7]. We therefore recommend from a best practice perspective that FB-I take additional action.[8]*

Following the carrying out of technical analysis of FB-I's systems and code, the DPC stated that it was satisfied that a user's facial profile is deleted when that user disables 'tag suggestions'.

> *We also took the opportunity on the audit to examine the code path executed when a user disables the "tag suggest" feature to ensure that the data representing a user's facial profile is appropriately deleted if the user decides to disable this feature. We have confirmed that the function used to delete the user's facial profile is invoked when the user disables "tag suggestions".[9]*

---

[5] Page 102 of the 2011 Audit Report
[6] *Dunnes Stores vs Data Protection Commissioner*, Circuit Court Appeal of an Enforcement Notice April 2010
[7] Advice paper on special categories of data ("sensitive data") (20 April 2011)
[8] Page 103 of the 2011 Audit Report
[9] Page 103 of the 2011 Audit Report

5

The DPC also set out FB-I's response in relation to the matter of consent and the form of the notification given to users:

*FB-I's Response*

*FB-I indicated from the outset its strong belief that it had obtained consent from users through their agreement to its Data Use Policy when they join Facebook to do the minimal additional processing of their photographs to make this popular feature possible. It stressed its belief that the processing is minimal because the use of the feature only offers a technical convenience and does not permit anyone to identify or tag someone who is not already their friend – the only people who can benefit from the "Tag Suggest" feature and the related processing are a user's friends, who could presumably have been able to recognize and tag the user themselves.*

*In consultation with the Commissioner, we provided additional notice to EEA users, including a direct link to disable the feature, by running the equivalent of advertisements on their home pages. We maintain that we have complied with Irish and EU Data Protection law, and are not obliged to do anything further. However, in the spirit of continuing cooperation, FB-I will provide an additional form of notification for Tag Suggest. It will appear at the top of the page when a user logs in. If they interact with it by selecting either option presented then it will disappear for the user. If the user does not interact with it then it will appear twice more for a total of 3 displays on the next successive log-ins. Before making a selection more detail about how the feature works will appear behind the Learn More link and will also be shown if a user clicks Adjust Your Settings.[10]*

The DPC set out its satisfaction with the response of FB-I and welcomed FB-I's decision to follow a best practice approach:

*For the reasons outlined above further notification in relation to the current deployment of the feature is not strictly legally necessary under Irish law. This Office therefore welcomes the commitment of FB-I to adopt a best practice approach in this area.[11]*

The DPC also offered a best practice recommendation to FB-I should the feature be further expanded:

*We would further expect that FB-I take a similar best practice approach and allow users to opt in to any further expansion of the Tag Suggest feature that would allow suggestions beyond just Friends.[12]*

### 3.2. Update Report

FB-I provided further information on the development of the tag suggest feature in its Update Report. FB-I set out the details of the DPC's best practice recommendations adopted following the 2011 Audit Report and the previous discussions with the DPC:

*Chapter 9— Facial Recognition/Tag Suggest[13]*

*FB-I has now provided two sets of notice to users of its tag suggestions feature powered by facial recognition technology and has updated its Data Use Policy with a link to a more detailed description of tag suggestions. As the Report of Audit described, prior to the audit, FB-I had already voluntarily taken additional measures to give notice to users in the EU:*

- *Each user was given prominent notice of the new feature on her/his FB-I home page. The notice appeared at least three times;*

- *The notice provided a link to further information on the feature, including how to disable it; and*

- *The then-current method of disabling the feature was modified to further simplify it.*

---

[10] Pages 103 to 104 of the 2011 Audit Report
[11] Page 104 of the 2011 Audit Report
[12] Page 104 of the 2011 Audit Report
[13] Pages 62 to 63 of the Update Report

> *Committed to representing best practices in this area, FB-I agreed to provide yet further notice to users. Between early January and July 2012, FB-I ran a banner on the user's homepage, which appeared at the top of the page when the user logged in. If the user interacted with the banner by selecting either option presented, then it disappeared for the user. If the user did not interact with it, then it appeared twice more for a total of three displays on the next successive log-ins. Before making a selection, more detail about how the feature works appeared behind a "Learn More" link. If the user clicked "Edit Settings", he would be taken to his privacy settings page where he could turn off the feature. See screenshot below:*



> *FB-I has also Expanded notice of tag suggestions in its new Data Use Policy, which now states:*
>
> *"We are able to suggest that your friend tag you in a picture by comparing your friend's pictures to information we've put together from the photos you've been tagged in. You can control whether we suggest that another user tag you in a photo using the How Tags Work settings."*
>
> *The "How Tags Work" link goes directly to the privacy settings where the user can turn off tag suggestions.*
>
> *After the Article 29 Working Party issued its recent Opinion on biometrics, the DPC indicated to FB-I the expectation that it would comply with the Opinion's recommendations. FB-I has temporarily stopped creating facial templates for users joining Facebook after July 1, 2012, while it decides on its approach to the Opinion's recommendations.*

### 3.3.   2012 Audit Report

The DPC, in its 2012 Audit Report, observed that the Article 29 Working Party had recently published an opinion which was directly relevant to the tag suggest feature:

> *In March, the Article 29 Working Party published an Opinion 02/2012 on facial recognition in online and mobile services[14]. This Opinion was directly applicable to how Facebook provides its Tag Suggest/Facial Recognition feature.[15]*

The DPC went on to consider the best practice recommendations made as part of the 2011 Audit Report and the responses by FB-I in that regard. It noted in relation to the matter of consent:

> **Recommendation: FB-I should have handled the implementation of this feature in a more appropriate manner and we recommended that it take additional steps from a best practice perspective to ensure the consent collected from users for this feature can be**

---

[14] http://ec.europa.eu/justice/data-protection/article-29/documentation/opinionrecommendation/files/2012/wp192_e n.pdf
[15] Page 36 of the 2012 Audit Report

*relied upon*

FB-I agreed with this Office in response to this recommendation that it would "provide an additional form of notification for Tag Suggest. It will appear at the top of the page when a user logs in. If the user interacts with it by selecting either option presented then it will disappear for the user. If the user does not interact with it then it will appear twice more for a total of 3 displays on the next successive log-ins. Before making a selection more detail about how the feature works will appear behind a Learn More link and will also be shown if a user clicks Adjust Your Settings."

It will be noted that this agreement was reached with FB-I prior to the Article 29 Opinion on the use of facial recognition generally in online services.

FB-I in its Update Report to this Office highlighted that it had now provided two sets of notice to users of its tag suggestions feature and had updated its Data Use Policy with a link to a more detailed description of tag suggestions. It also emphasised that prior to the Audit:

- Each user was given prominent notice of the new feature on her/his FB-I home page. The notice appeared at least three times;

- The notice provided a link to further information on the feature, including how to disable it; and

- The then-current method of disabling the feature was modified to further simplify it.

It further stressed that in specific response to the December Audit, between early January and July 2012, FB-I ran a banner on the user's homepage, which appeared at the top of the page when the user logged in. If the user interacted with the banner by selecting either option presented, then it disappeared for the user. If the user did not interact with it, then it appeared twice more for a total of three displays on the next successive log-ins. Before making a selection, more detail about how the feature works appeared behind a "Learn More" link. If the user clicked "Edit Settings", they would be taken to their privacy settings page where they could turn off the feature.

FB-I has highlighted that it has also updated its Data Use Policy and is providing users with access to the biometric template in the user's Expanded Archive.

In relation to existing users on the site, FB-I complied with the recommendations contained in the December Audit Report. The issue of how to capture an appropriate consent from new users was under active discussion with FB-I in the early part of the year, however as this Office was aware that the Article 29 Working Party was bringing forward its Opinion in this area it was decided to await its publication and further discuss the matter at that time.

Following publication this Office made clear to FB-I that we expected it to comply with the relevant recommendations in the Opinion. FB-I immediately undertook to do so and an outline mechanism to capture an appropriate consent from new users at a time that was most relevant such as when they were first tagged in a picture that they did not remove was agreed. The mechanism required the user to make a selection one way or the other to either use Tag Suggest or not and if they decided to not use the service, it would be turned off by simply selecting the option on screen. Relevant information was to be provided on screen in relation to the service and its use of biometrics.

This Office was also aware from both parties that the Hamburg Data Protection Authority was in contact with FB-I/Facebook on this issue. We had welcomed the previous decision the Hamburg DPA had taken to suspend a proposed action against Facebook Inc in relation to the Tag Suggest feature pending the completion of our negotiations with FB-I in the context of the re-audit.

We are aware that the Hamburg DPA took a decision to re-commence their suspended action which is directed at Facebook Inc. While FB-I has met the agreement with this Office as outlined in our audit report, we were

8

> *obviously conscious of the concerns expressed. Therefore we engaged in detailed discussion with FB-I to identify options towards a satisfactory outcome.*
>
> *Both this Office and FB-I were conscious however of the passage of time and therefore pending their conclusion, FB-I as a gesture of goodwill in August suspended the Tag Suggest feature for all EEA users who had joined since 1 July (it was possible to back-date it to this date due to a suspension for technical upgrade reasons around that time).[16]*

The DPC noted that there had been Irish case law on the matter of biometric data and that it had been decided that it was not a category of sensitive personal data that necessitated explicit consent:

> *As outlined in the December Audit, this Office is obligated to take account of Irish case law in relation to the use of biometrics which has not considered that the use of biometrics requires explicit consent. Therefore in a situation where FB-I has implemented the recommendations outlined by this Office and has suspended the service for new users with effect from 1 July 2012 until a holistic solution can be found, this Office does not consider that there is any basis for action by it against FB-I to re-consent previously enrolled users.[17]*

Notwithstanding the above, the DPC stated that FB-I made the decision to adopt a best practice approach by deleting all existing EU users' biometric templates and cease the creation of such templates for the time being:

> *Nevertheless, as in many areas during this audit we are acutely aware that it is incumbent upon us to take account of the views and opinions of colleague data protection authorities in other Member States who although they may have no direct jurisdiction over Facebook unlike the direct jurisdiction which this Office has over FB-I, do obviously have a right to represent the views of the residents of their countries or regions who use Facebook. Therefore taking account of the views of this Office on this matter, we are encouraged that FB-I notwithstanding any views it may have on the precise legal requirements that apply has decided to adopt a best practice approach in this area and has agreed to delete all existing biometric templates of EU users by October 15 at the latest. This will be verified by this Office. It has also agreed not to resume building templates until or unless it gives new notice and obtains consent from all EU users in a form consistent with this Office's guidance.[18]*

At the close of the DPC's review of the tag suggest feature, it noted that in accordance with its conclusion during the 2011 audit:

> *We have re-confirmed that disabling the Tag Suggest feature deletes the individual user template. This is outlined at Section 2.8 of the Technical Analysis Report.[19]*

In short, the audit process came to two conclusions about tag suggest.

First, in light of the steps that FB-I had taken as of the date of the 2012 Audit Report, tag suggest appeared to operate broadly in line with applicable data protection law ("*this Office does not consider that there is any basis for action by it against FB-I to re-consent previously enrolled users*"[20]).

Second, despite the legal position, FB-I and the DPC also agreed that FB-I would delete the biometrics of existing EU users and not resume building biometric templates of users in the EU without prior engagement between the DPC and FB-I.

### 3.4.    2012 Technical Audit Report

---

[16] Pages 37 to 38 of the 2012 Audit Report
[17] Page 38 of the 2012 Audit Report
[18] Page 38 of the 2012 Audit Report
[19] Page 39 of the 2012 Audit Report
[20] Page 38 of the 2012 Audit Report

As set out above in the 2012 Audit Report, the DPC's technical expert re-confirmed the deletion of the facial recognition data when a user disables the tag suggest functionality. He stated:

> *2.8 Deletion of Facial Recognition Data*
>
> *Facebook have incorporated the ability of the site to build a "signature" of an individual's face based on photos in which they have been tagged. This allows Facebook to automatically suggest other photos in which a user's friend has not been tagged but may still be present.*
>
> *It is possible that a user may want to disable this functionality and have the facial recognition data deleted.*
>
> *A code review was performed to ensure that when a user disables the tag suggestions feature that the facial recognition data for that user is deleted. It has been confirmed that the AllFacesDataDeleter deleter from the deletion framework is run whenever the user chooses to disable tag suggestions. The behaviour of this deleter will be exactly as described in Section 1.9.2.1.*[21]

4. **APPLICATION TO CURRENT COMPLAINT**

In light of the above, FB-I responds to the Complainant's specific factual allegations, which are:

(a) *Facebook is not clearly indicating to users its use of photos, it is avoiding using the term 'facial recognition' and saying it generates biometrical data of every individual user, and there was no information given to, or agreement by, users in relation to the biometrical information gathered by FB-I.*

As detailed in Sections 1.3 and 1.4 above, this information is clearly set out in the Help Center and Data Use Policy to the satisfaction of the DPC. Notwithstanding this, the feature is presently not available in the EU and does not apply to EU resident users.

(b) *"The mere existence of such data bears tremendous privacy risks, since this could enable the holder of the data to analyze live information (e.g. CCTV) or to analyze information on the internet or by using cell phones. Public authorities may demand access to this information for their purposes."*

The biometric profiles of EU users have been deleted. In any event, as noted above, the profiles could not have been used in this manner.

(c) *Tag Suggest is currently active for users in the United States but there is no indication how the system distinguishes EU/EEA users.*

As noted above, FB-I does not build biometric templates of EU resident users, regardless of whether or not those users are tagged in photos uploaded by EU or US users.

(d) *"FB-I is again using 'facial recognition' at least on a 'ad hoc' basis for all uploaded pictures and is at least using it to 'group' pictures what it thinks to be the same person".*

As noted above, FB-I does not build biometric templates of EU resident users, regardless of whether or not those users are tagged in photos uploaded by EU or US users. FB-I groups similar photos together using its proprietary technologies described above. These technologies are also used to determine if the user is from a jurisdiction where tag suggest has been disabled. However, this limited processing of photos does not entail the creation of biometric templates of EU resident users.

(e) *The Tag Suggest data of all users outside US/Canada should have been deleted.*

FB-I and the DPC agreed that FB-I would delete the tag suggest data of EU resident users. The DPC confirmed in its 2012 Annual Report that the matter had been satisfactorily dealt with:

---

[21] Page 57 of the 2012 Technical Audit Report

> *Those recommendations which were not implemented by FB-I as of that time [September 2012] were highlighted with a clear timescale for implementation listed. A deadline of 4 weeks for those matters to be brought to a satisfactory conclusion was set and FB-I progressed those matters to our satisfaction within the four week period.*[22]

---

[22] Page 19 of the Annual Report of the Data Protection Commissioner 2012

11