MAYER BROWN LLP
John Nadolenco (SBN 181128)
350 South Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
jnadolenco@mayerbrown.com

Lauren R. Goldman (*pro hac vice*)
Michael Rayfield (*pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
lrgoldman@mayerbrown.com
mrayfield@mayerbrown.com

*Counsel for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE FACEBOOK BIOMETRIC INFORMATION PRIVACY LITIGATION<br><br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **FACEBOOK'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br><br>Master Docket No.: 3:15-CV-03747-JD<br><br>Date: May 3, 2018<br>Time: 10:00 a.m.<br>Location: Courtroom 11<br><br>Hon. James Donato<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ....................................................................................................... 4

    A.    The Illinois Biometric Information Privacy Act .................................... 4

    B.    Tag Suggestions ........................................................................................ 4

        1.    Facebook's Holistic Approach To Facial Recognition ........................ 5

        2.    Facebook's Deep Neural Network ...................................................... 6

        3.    Facebook's Four-Step Pipeline ......................................................... 6

    C.    Facebook's Disclosures About Tag Suggestions .................................... 9

LEGAL STANDARD ............................................................................................... 10

ARGUMENT ............................................................................................................ 10

I.    FACEBOOK DOES NOT COLLECT OR STORE BIOMETRIC IDENTIFIERS ....... 10

    A.    Facebook's Facial-Recognition Technology Does Not Involve A "Scan Of Face Geometry." ................................................................... 11

    B.    Plaintiffs' New Theory Of Liability—Raised For The First Time In Their Motion—Cannot Be Squared With BIPA's Language Or The Record ............... 13

        1.    Plaintiffs' Proposed Definition Of "Scan Of Face Geometry" Is Fundamentally Flawed ............................................................... 13

        2.    ███████████████████████████ .................................................... 15

            a.    ██████████████████████ ..................................................... 15

            b.    ███████████████████████ .................................... 17

        3.    ████████████████████████ ................ 20

II.    A REASONABLE JURY COULD FIND THAT FACEBOOK HAS NOT VIOLATED BIPA'S NOTICE-AND-CONSENT RULES ........................................... 21

    A.    A Reasonable Jury Could Find That Facebook Obtained A "Written Release" From Each Plaintiff.................................................................. 21

    B.    A Reasonable Jury Could Find That Facebook Publishes An Adequate Retention And Destruction Schedule................................................... 24

CONCLUSION........................................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*Coryell v. Smith*,
 274 Ill. App. 3d 543 (1995) .................................................................................................23

*Del Vecchio v. Amazon.com, Inc.*,
 2012 WL 1997697 (W.D. Wash. June 1, 2012) ....................................................................23

*In re Facebook Biometric Info. Privacy Litig.*,
 185 F. Supp. 3d 1155 (N.D. Cal. 2016) .................................................................3, 9, 21, 24

*Gallagher v. Hasbrouk*,
 3 N.E.3d 913 (Ill. App. Ct. 2013) .........................................................................................14

*Gullen v. Facebook, Inc.*,
 2018 WL 1609337 (N.D. Cal. Apr. 3, 2018) .........................................................................13

*Hutchinson v. United States*,
 838 F.2d 390 (9th Cir. 1988) ................................................................................................19

*Mortensen v. Bresnan Commc'n, LLC*,
 2010 WL 5140454 (D. Mont. Dec. 13, 2010) .......................................................................23

*New Hampshire v. Maine*,
 532 U.S. 742 (2001) ..............................................................................................................21

*Patel v. Facebook Inc.*,
 2018 WL 1050154 (N.D. Cal. Feb. 26, 2018) .........................................................................4

*People v. Xiaohong Wu*,
 2014 IL App (2d) 131210-U (Ill. App. Ct. 2014) .................................................................14

*Perkins v. LinkedIn Corp.*,
 53 F. Supp. 3d 1190 (N.D. Cal. 2014) ..................................................................................22

*S. Cal. Gas Co. v. City of Santa Ana*,
 336 F.3d 885 (9th Cir. 2003) ................................................................................................10

*Schiff v. Friberg*,
 331 Ill. App. 3d 643 (2002) ..................................................................................................22

*Thomas v. Newton Int'l Enters.*,
 42 F.3d 1266 (9th Cir. 1994) ................................................................................................12

*United States v. Miguel*,
 338 F.3d 995 (9th Cir. 2003) ................................................................................................20

**Statutes**

740 ILCS 14/5 ........................................................................................................................15, 17

740 ILCS 14/10 .................................................................................2, 4, 13, 14, 15, 20, 21

740 ILCS 14/15 .............................................................................................2, 4, 14, 21

**Other Authorities**

Am. to Senate Bill 2400 § 10 (Apr. 11, 2008) ....................................................................4

Fed. R. Civ. P. 56(a) .........................................................................................................10

Webster's Dictionary (2008 ed.) .......................................................................................13

# INTRODUCTION

Discovery has shown conclusively that Facebook uses a holistic approach to recognize faces in photos; that it does not rely on geometric measurements of human-notable facial features like the eyes, nose, and ears; and that it tells all users in plain English how Facebook is using their data and how they can opt out of the process. Plaintiffs have nevertheless filed a motion for summary judgment that virtually disregards all of the expert opinions in the case (including their own); barely engages with the language of BIPA; and presents an entirely new theory of liability predicated on data used solely to standardize images of faces during a preliminary step of the facial-recognition pipeline—not to *identify* anyone. Nor do plaintiffs even *mention* this Court's holding that Facebook's policies—which fully disclose the conduct alleged in this case—bind each of them. The motion should be denied.

Plaintiffs' motion addresses three discrete issues: (1) whether Facebook "collects and stores biometric identifiers through scans of face geometry"; (2) whether Facebook obtained a "written release from plaintiffs"; and (3) whether Facebook made "available a written policy establishing a retention schedule and guidelines for permanently destroying the biometric identifiers it collects." Pl. MSJ (Dkt. 307) at 7-8.[1] Plaintiffs have not come close to establishing that there is no genuine dispute of fact on these questions.

***No expert support***. Even though plaintiffs' motion purports to address the highly technical question of how Facebook's algorithm works, it virtually ignores the expert reports and testimony introduced by *both* sides. The motion makes only a few passing references to the opinions of Facebook's expert Dr. Matthew Turk—one of the world's leading computer scientists—who conducted an extensive review of Facebook's technology and concluded that it is holistic and does not represent face geometry. Dr. Turk's opinion is sufficient on its own to

---

[1] Plaintiffs do not move for summary judgment on other issues that are essential to liability and addressed in Facebook's pending motions for summary judgment, including whether plaintiffs have satisfied Illinois' extraterritoriality doctrine, whether they have been "aggrieved" by any violation of BIPA, and whether Facebook was negligent. *See* Def. 1st MSJ (Dkt. 257); Def. 2d MSJ (Dkt. 299). For the reasons set forth in those motions, this Court should grant summary judgment in Facebook's favor on all of plaintiffs' claims. But even if the Court were to deny Facebook's motions and grant plaintiffs', important triable issues would remain.

create, at a bare minimum, a triable issue of fact. But this case does not even involve a meaningful battle of the experts. The report of *plaintiffs'* lead expert, Dr. Atif Hashmi, is mentioned only *twice* in their brief—presumably because he largely abandoned the opinions in his report at his deposition. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ These sources do not help the plaintiffs: What matters in this suit is how Facebook's technology *actually works* and whether it creates a *scan of face geometry* as that phrase is used *in BIPA*. As Facebook's motion for summary judgment explains, no reasonable jury could find that Facebook *does* collect or store scans of face geometry. Def. 2d MSJ at 19-24. And there is certainly more than sufficient evidence for a reasonable jury to find that it does not.

***Fundamentally flawed definition of "scan of face geometry*.**" Relying on BIPA's plain language and legislative history, Facebook explained in its motion for summary judgment that a "scan of face geometry" is (1) an express representation of (a "scan of") (2) measurements of depths, distances, or angles among human-notable facial features ("face geometry") (3) that is used to identify a person (a "biometric identifier"). Def. 2d MSJ at 19-20. In plaintiffs' motion, they assert—citing *only* the report of their proposed rebuttal expert—that "[a] scan of face geometry is the process of collecting biometric identifiers." Pl. MSJ at 8. That is entirely circular: BIPA *defines* "biometric identifier" as (among other things) a "scan of face geometry." 740 ILCS 14/10. Plaintiffs' reading would mean, nonsensically, that "[a] scan of face geometry is the process of collecting [scans of face geometry]." Pl MSJ at 8. And that reading cannot be squared with BIPA's structure: BIPA regulates private entities that "collect, capture, receive through trade, or otherwise obtain a person's or a customer's biometric identifier." 740 ILCS 14/15(b). A "biometric identifier" (and thus a "scan of face geometry") is plainly an *object*—a *representation* of face geometry—not a "process."

***No plausible theory of liability*.** Plaintiffs previously took the position that templates, and then face signatures, were "scans of face geometry" used to identify people. But they now

recognize that neither one involves the use of facial geometry, and so they have been forced to shift their theory to the *alignment* step of the pipeline, a pre-recognition step in which the image of the face is standardized in orientation and size. ████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████ And finally, BIPA doesn't regulate "biometric data"; it regulates "biometric identifiers" and "biometric information." Plaintiffs studiously avoid any contention that face signatures or templates fit *either* definition.

***Ignores Data Policy***. Plaintiffs also are not entitled to summary judgment on the question of whether Facebook obtained their "written release" and created an adequate "retention schedule." Plaintiffs never mention this Court's holding that they are bound by Facebook's user agreements. *See In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1166-67 (N.D. Cal. 2016). One of those agreements—Facebook's Data Policy—explains clearly that (1) Facebook is "able to suggest that your friend tag you in a picture by comparing your friend's pictures to information we've put together from your profile pictures and other pictures in which you've been tagged"; and (2) that the data Facebook collects is stored "for as long as it is necessary to provide products and services to you and others." ████████████████████████

██████████████████████████████████████████. A reasonable jury could find

---

[2] Exhibits are attached to the Declaration of John Nadolenco unless otherwise indicated. Each of these exhibits is already part of the summary judgment record.

that plaintiffs were never denied their "power to say no." *Patel v. Facebook Inc.*, 2018 WL 1050154, at *4 (N.D. Cal. Feb. 26, 2018). Plaintiffs' motion should be denied.

**BACKGROUND**[3]

### A.    The Illinois Biometric Information Privacy Act

BIPA regulates the collection and storage of (1) "biometric identifiers" and (2) "biometric information." 740 ILCS 14/10. It defines "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," with certain exclusions. *Id.* "Biometric information" is "any information . . . based on an individual's biometric identifier used to identify an individual." *Id.* BIPA requires entities that "collect, capture, purchase . . . or otherwise obtain a person's or a customer's biometric identifier or biometric information" to first obtain a "written release" from that person. *Id.* 14/15(b). Entities "in possession" of such data must develop and publish a written policy on its retention and destruction. *Id.* 14/15(a).

When the Illinois legislature enacted BIPA, it considered regulating *all* kinds of facial-recognition technology. One version presented by the Senate defined "biometric identifier" to include "*records or* scans of hand geometry, facial geometry, *or facial recognition.*" Am. to Senate Bill 2400 § 10 (Apr. 11, 2008) (emphases added). That proposal was rejected by the House of Representatives; the enacted version regulates only "scan[s] . . . of face geometry," not all "records" of "facial geometry" or all forms of "facial recognition."

### B.    Tag Suggestions

Plaintiffs' claims center on Facebook's Tag Suggestions feature. When a person uploads a photo, Facebook will sometimes, but not always, employ facial-recognition technology to determine whether certain of the uploader's Facebook friends appear in the photo; if so, Facebook may prompt the uploader to tag those friends.

Facebook's technology is described in the Expert Report and Rebuttal Report of Dr. Matthew Turk. ████████████████████████████████████

---

[3]     The material in this background section is also provided in Facebook's motion for summary judgment. *See* Def. 2d MSJ at 2-9. Facebook has included it here as well for ease of reference. But the Court may wish to skip to the argument section.

4

[4]

**1.    Facebook's Holistic Approach To Facial Recognition**

*see*

Ex. 5 at 9591 ("representation layer" is "an holistic face representation").

[4]     Facebook has moved to exclude both of plaintiffs' expert reports under Federal Rule of Evidence 702 and *Daubert*, and to strike Mr. Dunn's report as improper rebuttal material.  Dkts. 303, 305.  Citations to these reports in this brief are not indications that the cited portions are appropriate or accurate in all respects.

[5]

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ██████████████

6 **2.      Facebook's Deep Neural Network**

7 ███████████████████████████████████████████████

8 ████████████████████████████████████████████████

9 ████████████████████████████████████████████████

10 ███████████████████████████████████████████

11 ██████████████████████████████████████████████

12 ████████████████████████████████████████████████

13 ████████████████████████████████████████████████

14 ████████████████████████████████████████████████

15 ████████████████████████████████████████████████

16 ████████████████████████████████████████████████

17 ████████████████████████████████████████████████

18 ████████████████████████████████████████████████

19 ███████████████████████████ ██████████████████

20 ████████████████████████████████████████████████

21 ██████████████████████████

22 **3.      Facebook's Four-Step Pipeline**

23 █████████████████████████████████████████████

24 ████████████████████████████████████

25

26 [6]

27 ████████████████████████████████████████████████

28 ██████████████████████████████████████

**Face detection.** ████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████

**Alignment.** █████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████



*Representation.*

*Classification.*

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ███████████

5 ███████████████████████████████████████████████

6 ████████████████████████████████████████████████

7 ████████████████████████████████████████████████

8 ████████████████████████████████████████████████

9 ████████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 ████████████████████████████████████████████████

12 ██████████████████████████████████

**C.      Facebook's Disclosures About Tag Suggestions**

In December 2010, a few weeks before Tag Suggestions was launched, Facebook issued a post on its website "to be sure you know exactly how tag suggestions work:  When you or a friend upload new photos, we use face recognition software—similar to that found in many photo editing tools—to match your new photos to other photos you're tagged in . . . and, whenever possible, suggest the name of the friend in the photos."  Ex. 10 at 1124; *see* Sherman Decl. (Ex. 11) ¶ 6.[7]  The post explained how users can disable the feature "[i]f for any reason you don't want your name to be suggested."  Ex. 10 at 1124.

Additionally, all Facebook users must agree to its "Statement of Rights and Responsibilities" ("SRR").  *See Facebook Biometric*, 185 F. Supp. 3d at 1166-67 (holding that plaintiffs "assented to the user agreement when they signed up for Facebook" and "agreed to the current user agreement" by continuing to use their accounts after being directly notified of changes to the SRR).  The SRR permits Facebook to "collect and use . . . content and information in accordance with the Data Policy."  Ex. 12 at 25.

---

[7]      Robert Sherman is the Deputy Chief Privacy Officer at Facebook.  Sherman Decl. ¶ 1. He has worked to develop and design privacy policies for Tag Suggestions.  *Id.* ¶ 2.

The Data Policy states:

> We [ ] use information we have to provide shortcuts and suggestions to you. ***For example, we are able to suggest that your friend tag you in a picture by comparing your friend's pictures to information we've put together from your profile pictures and the other photos in which you've been tagged.*** If this feature is enabled for you, you can control whether we suggest that another user tag you in a photo using the "Timeline and Tagging" settings. . . . ***We store data for as long as it is necessary to provide products and services to you and others, including those described above.*** Information associated with your account will be kept until your account is deleted, unless we no longer need the data to provide products and services.

Ex. 13 at 44563-65 (emphases added). *See also* Sherman Decl. ¶¶ 10-13 (similar disclosures in prior versions of the Data Policy); Ex. 14 at 44573.[8] ███████████████████████ ████████████████████████████████████████████████████ If a user opts out, his template is deleted and facial recognition is not used to suggest that friends tag photos of him. Sherman Decl. ¶¶ 18-19.

## LEGAL STANDARD

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As the party with the burden of persuasion at trial, the [plaintiffs] must establish beyond controversy every essential element of [their] . . . claim." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). The non-moving party "can defeat summary judgment by demonstrating that the evidence, taken as a whole, could lead a rational trier of fact to find in its favor." *Id.*

## ARGUMENT

## II. FACEBOOK DOES NOT COLLECT OR STORE BIOMETRIC IDENTIFIERS.

Plaintiffs argue that "there is no genuine dispute of material fact that" Facebook "collects and stores biometric identifiers through scans of face geometry." Pl MSJ at 7-8. Quite the

---

[8] Plaintiffs claim that "Facebook has produced no evidence to show that this . . . language existed in the Data Policy prior to January 30, 2015." Pl. MSJ at 17. That is incorrect, as detailed in Rob Sherman's declaration (at ¶¶ 10-13). Indeed, as explained below (at 23), *plaintiffs* have conceded that, since 2011, Facebook's disclosures have informed users that Facebook was using their information to suggest tags. Dkt. 269 at 3. And again, this Court has held that plaintiffs agreed to the *current* user agreement through their continued use of Facebook.

contrary:  As Facebook's motion for summary judgment explains, *no* reasonable jury could find that Facebook *does* collect or store scans of face geometry.  Def. 2d MSJ 19-24.  But at minimum, a reasonable factfinder could find in Facebook's favor on this issue.  Plaintiffs have done nothing to undermine the unequivocal opinion of Facebook's expert Dr. Turk: ███

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████  Plaintiffs have therefore come up with a new theory of liability that rests on (1) a misreading of BIPA and (2) an antecedent step in Facebook's process that neither relies on face geometry nor serves to identify anyone.

### A.    Facebook's Facial-Recognition Technology Does Not Involve A "Scan Of Face Geometry."

Plaintiffs have not come close to establishing that there is no genuine dispute of fact on whether Facebook obtains a "scan of face geometry." ██████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████  Dr. Turk's

"[e]xpert opinion evidence is itself sufficient to create a genuine issue of disputed fact sufficient

to defeat a summary judgment motion." *Thomas v. Newton Int'l Enters.*, 42 F. 3d 1266, 1270 (9th Cir. 1994).[9]

But this case does not even present a true "battle of the experts," because plaintiffs' *own* experts disagree with the allegations on which plaintiffs' claims are based. The sole claim in plaintiffs' complaint was that Facebook's stored *templates* are "scans of face geometry" under BIPA.[10] ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

In plaintiffs' motion for class certification, they contended that Facebook's *face signatures* are "scans of face geometry"; ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████.

In short, *no* expert believes that Facebook's technology creates a scan of face geometry during the stages of the process in which people's faces are actually identified.

---

[9]    To be sure, Facebook has moved for summary judgment on this issue as well, and plaintiffs have offered expert opinions on the subject. But as explained below (at 16), plaintiffs' experts conceded the relevant facts at their depositions; Dr. Turk did not.

[10]    *See, e.g.*, Compl. ¶ 25 ("[A]n algorithm is used to calculate an individual's unique physical characteristics, which results in a biometric template that is separate and distinct from the image from which it was created."); *id.* ¶ 26 (alleging that Facebook "extracted biometric identifiers from [users'] uploaded photographs and previously tagged pictures, and stored these biometric identifiers in a database"); *id.* ¶¶ 27, 36, 43, 50.

## B. Plaintiffs' New Theory Of Liability—Raised For The First Time In Their Motion—Cannot Be Squared With BIPA's Language Or The Record.

Faced with the source code, Dr. Turk's opinions, and their own experts' concessions, plaintiffs have now abandoned any claim that Facebook's face signatures or templates are scans of face geometry. Plaintiffs' current theory appears to proceed in two steps. ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████. This theory is based on a nonsensical interpretation of BIPA and is unsupported by the record.[11]

### 1. Plaintiffs' Proposed Definition Of "Scan Of Face Geometry" Is Fundamentally Flawed.

In enacting BIPA, the General Assembly regulated an exclusive list of six "biometric identifiers": "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. BIPA does not define "scan of face geometry," no court has produced any definition to date, and no defendant has ever been held liable under this provision. Plaintiffs now appear to understand that this language creates a serious problem for them: They agree that "'face geometry' refers to the location and spatial relationships between the nose, eyes, mouth, chin, etc. and their relative positions in the digital image." Pl. MSJ at 8.[12] But all three experts

---

[11]  Plaintiffs repeatedly assert that Facebook's technology conducts a "scan of face geometry" "on every face in every uploaded photograph." Pl. MSJ at 9; *see id.* at 12, 15. But even if Facebook's technology created a scan of face geometry from *some* uploaded photographs (which it does not), plaintiffs have not even attempted to prove that such a scan is created from *all* photos. ████████████████████████████████████████ ████████████████████████████ *See also Gullen v. Facebook, Inc.*, 2018 WL 1609337, at *1 (N.D. Cal. Apr. 3, 2018) ("Facebook does not use facial recognition technology on photos uploaded to organizational accounts.").

[12] ████████████████████████████████████████ ████████

in this case say that Facebook's DNN does not analyze any such data. Determined to move for summary judgment anyway, plaintiffs have crafted a proposed definition of "scan of face geometry" that is designed to elide and conceal the flaws in their case: According to plaintiffs, "a scan of face geometry is the process of collecting biometric identifiers." *Id.* This interpretation is nonsensical for at least three separate reasons.

First, it is circular. Under BIPA, a "biometric identifier" is *defined* as (among other things) a "scan of face geometry." 740 ILCS 14/10. It would make no sense for BIPA to then define "scan of face geometry" as "the process of collecting biometric identifiers"—that is, "the process of collecting" *itself*. *See Gallagher v. Hasbrouk*, 3 N.E.3d 913, 927 (Ill. App. Ct. 2013) ("a statute should not be construed so that it results in absurdity").

Second, plaintiffs' reading cannot be squared with BIPA's grammatical structure. *See People v. Xiaohong Wu*, 2014 IL App (2d) 131210-U, ¶ 31 (Ill. App. Ct. 2014) (statutes are read "according to ordinary rules of grammar"). A scan of face geometry is an *object* under BIPA— something that a "private entity" may be "in possession of" (740 ILCS 14/15(a)) and that it "may collect, capture, receive through trade, or otherwise obtain" (*id.* 14/15(b)). It is not, as plaintiffs contend, a "process"—which cannot be "possessed" or "obtained."[13] And by limiting "face geometry" with the phrase "scan of" (while rejecting a bill that would have regulated "*records*" of "facial geometry"), the legislature clarified that the term means an *express representation* of "face geometry"—*i.e.*, *something that shows* geometric relationships between human-notable facial features. It is obvious why plaintiffs have characterized the statutory term as a "process": They understand that the data actually used for identification—face signatures and templates—

---

[13]    BIPA's definition of "biometric information" excludes "information derived from items *or procedures* excluded under the definition of biometric identifiers." 740 ILCS 14/10 (emphasis added). But this language refers only to the *exclusions* from "biometric identifier," some of which are processes (such as the "roentgen process"). *Id.* "Biometric information" *includes* only "*information*, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.* (emphasis added). The same is true of the items included under "biometric identifier"—items that are capable of being "collected," obtained," or "possessed."

do *not* expressly represent face geometry, and so they are attempting to sweep the entirety of Facebook's pipeline (including the locating of fiducial points) into BIPA's coverage.

Third, plaintiffs' definition omits a critical component of BIPA: A "scan of face geometry" is data that is *used to identify a person*—not merely to *standardize* an image—because otherwise it would not be a "biometric *identifier*." Other parts of BIPA refer more generally to "biometrics" (740 ILCS 14/5(a), (c)), "biometric-facilitated financial transactions" (*id.* 14/5(b)), and "biometric technology" (*id.* 14/5(f)), but BIPA *regulates* only an exclusive list of "biometric *identifiers*" and "biometric information" that is "based on an individual's biometric identifier" and "used to *identify* an individual" (*id.* 14/10 (emphases added)). BIPA's legislative findings confirm that the General Assembly's intent was to protect data that is "*biologically unique to the individual*" (*id.* 14/5(c) (emphasis added))—that is, data that can be used to distinguish between people. ████████████████████████████████████████

In sum, Facebook agrees with plaintiffs that a scan of face geometry must involve an analysis of "the location and spatial relationships between the nose, eyes, mouth, chin, etc. and their relative positions in the digital image." Pl. MSJ at 8. But this term is also confined to *express representations* of "face geometry" that are used to *identify* someone. And it surely is not defined as "the process of collecting biometric identifiers."



1    *No face geometry.* ██████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████████

4 ████████████████████████████████████████████

5 ████████████████

6 ████████████████████████████████████████████

7 ████████████████████████████████████████████

8 ████████████████████████████████████████████

9 ████████████████████████████████████████████

10 ████████████████████████████████████████████

11 ████████████████████████████████████████████

12 ████████████████████████████████████████████

13 ████████████████████████████████████████████

14 ████████████████████████████████████████████

15 ████████████████████████████████████████████

16 ████████████████████████████████████████████

17 ██████████████████████████████████

18 ████████████████████████████████████████████

19 ████████████████████████████████████████████

20 ████████████████████████████████████████████

21 ████████████████████████████████████████████

22 ████████████████████████████████████████████

23 ████████████████████████████████████████████

24 ████████████████████████████████████████████

25 ████████████████████████████████████████████

26 ██████████████████████████████████████

27

28

*No identification.* █████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

**b.** █████████████████████████████████████
█████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████ But these

documents do not help the plaintiffs, and they certainly do not eliminate a genuine dispute of

fact.  Not one of the cited sources has any connection to the way *BIPA* uses the relevant term.

And plaintiffs' assertions about these documents are riddled with distortions and misinformation.

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

[14]     Plaintiffs mischaracterize several of these documents. ████████████████

**DeepFace paper**. Plaintiffs claim next that *DeepFace*—a paper co-authored by Yaniv Taigman—supports plaintiffs' theory about Facebook's alignment stage. Pl. MSJ at 10-11. They contend that "[t]he DeepFace paper, and by association Facebook, admits that what Facebook describes as its face alignment pipeline . . . is dependent on a scan of face geometry from uploaded photographs." *Id.* at 10. Not so. For one thing, Facebook does not admit "by association" every statement in a paper authored before it even purchased the technology.[15] But more fundamentally, *DeepFace* never even *mentions* the words "face geometry," let alone "admits" that the alignment stage produces a "scan of face geometry." For example, plaintiffs quote the paper's statements that "alignment is based on using fiducial point detectors to direct the alignment process," and that "fiducial points are extracted by a Support Vector Regressor (SVR) trained to predict point configurations from an image descriptor." *Id.* (quoting Ex. 20 at 1215-16).

[15]    Although there are many similarities between the technology described in *DeepFace* and Facebook's technology, they are not identical.

[REDACTED]

[REDACTED]

**Help Center**. Plaintiffs also rely on language previously included in Facebook's Help Center, and other documents sent to regulators using similar language, stating: "We currently use facial recognition software that uses an algorithm to calculate a unique number ('template') based on someone's facial features, like the distance between the eyes, nose, and ears." Pl. MSJ at 3, 12-13. But liability cannot be based on how Facebook described its software to laypeople.

[REDACTED]

[REDACTED]

[REDACTED] Accordingly, summary judgment cannot be based upon this language. *See Hutchinson v. United States*, 838 F.2d 390, 392-93 (9th Cir. 1988) (claim involving technical matters requires "expert evidence" and cannot be "supported only by lay opinions").

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

In short, there is at *minimum* a genuine dispute as to whether Facebook's alignment stage involves a "scan of face geometry." Dr. Turk—one of the world's leading scholars on facial

---

[16] [REDACTED]

recognition—opined that it does not, and did not budge from this opinion at his deposition. Plaintiffs' experts largely agree with the substance of Dr. Turk's opinions. And the hodgepodge of documents that plaintiffs cite fall far short of eliminating a genuine dispute of fact.

**3.**



Second, even if it were true that face signatures and templates were "biometric *data*," that would not entitle plaintiffs to summary judgment. BIPA regulates two specific, delineated *categories* of biometric data: "biometric identifiers" and "biometric information." Plaintiffs now appear to recognize that face signatures and templates are not "scans of face geometry" and therefore are not "biometric *identifiers*" under BIPA. And plaintiffs have expressly disclaimed any reliance on the "biometric information" provision—that is, "information . . . based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10; *see* Pl. MSJ. at 2 n.2 ("An entity is liable under BIPA if it collects or captures one's biometric identifier *or* biometric information. . . . This case concerns Facebook's collection of biometric identifiers."); Pl. Resp. to Def. MTD (Dkt. 73) at 2 ("BIPA also protects biometric *information*, which is not at issue in this case"). It is clear why plaintiffs carefully staked out this position: The definition of "biometric information" expressly excludes "information derived from items and procedures excluded under the definition of biometric identifiers"—including "photographs." 740 ILCS 14/10. Any data "based on" a scan of face geometry cannot support plaintiffs' claims. *See, e.g.*, *United States v. Miguel*, 338 F.3d 995, 1002 n.20 (9th Cir. 2003) ("Judicial estoppel prevents a

party from taking a contrary position 'where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position.'" (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001))).

## III. A REASONABLE JURY COULD FIND THAT FACEBOOK HAS NOT VIOLATED BIPA'S NOTICE-AND-CONSENT RULES.

Plaintiffs seek partial summary judgment on the question whether Facebook complied with two of BIPA's requirements: (1) "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's . . . biometric identifier . . . unless it first . . . receives a written release executed by the subject of the biometric identifier" (740 ILCS 14/15(b)(3); Pl. MSJ at 16-18); and (2) "[a] private entity in possession of biometric identifiers . . . must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers" (740 ILCS 14/15(a); Pl. MSJ at 19).[17] Both of these arguments fail because there is more than enough record evidence to create a genuine dispute on whether Facebook obtains the required "written release" and publishes the required "retention schedule and guidelines."

### A. A Reasonable Jury Could Find That Facebook Obtained A "Written Release" From Each Plaintiff.

BIPA defines a "written release" as "informed written consent." 740 ILCS 14/10. A reasonable jury could find that Facebook obtained from each plaintiff informed written consent to use facial-recognition technology for the purpose of suggesting tags.

As explained above, when a user opens a new Facebook account, he must affirmatively assent to Facebook's SRR. This Court has already held that "all three plaintiffs assented to the [SRR] when they signed up for Facebook" by clicking a box indicating their agreement to those terms, and that "all three plaintiffs agreed to the *current* user agreement" by "continuing to use Facebook after receiving" notice of those changes. *Facebook Biometric*, 185 F. Supp. 3d at

---

[17] BIPA also requires companies that obtain biometric identifiers to first "inform[] the subject" of the collection or storage, as well as its "purpose and length of term," "in writing." 740 ILCS 14/15(b)(1)-(2). Plaintiffs do not move for summary judgment on these provisions.

1163-64, 1167 (emphasis added). As the Court explained, the "user agreement is clearly contractual and [is] unambiguously presented that way." *Id.* at 1167.

The SRR permits Facebook to "collect and use . . . content and information in accordance with the Data Policy." Ex. 12 at 25. The Data Policy states: "We [ ] use information we have to provide shortcuts and suggestions to you. For example, we are able to suggest that your friend tag you in a picture by comparing your friend's pictures to information we've put together from your profile pictures and the other photos in which you've been tagged." Ex. 13 at 44563-65. That is *precisely* the conduct that plaintiffs allege violates BIPA, and plaintiffs gave affirmative consent to that conduct.



Plaintiffs nevertheless argue that, because Facebook does not specifically say that it collects "biometric data," it "cannot now credibly contend that the Company in fact informs users that it collects their biometric data." Pl. MSJ at 16. Plaintiffs offer no authority for the proposition that an entity may obtain informed written consent under a statute only by using the statute's exact terminology. To the contrary, when Illinois courts have applied the concept of "informed consent" in the healthcare context—a circumstance that would naturally call for particularly precise disclosures—they have held that a plaintiff must point to "significant undisclosed information" that would "have changed the decision of a reasonable person." *Schiff v. Friberg*, 331 Ill. App. 3d 643, 657 (2002).[18] Illinois courts have also emphasized that this

---

[18] *See also, e.g.*, *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1195, 1212 (N.D. Cal.

question is generally "for the jury to decide." *Id.*; *see Coryell v. Smith*, 274 Ill. App. 3d 543, 550 (1995) ("[N]o one is in a better position than the jury to determine whether any alleged undisclosed information would have altered the plaintiff's decision to undergo the proposed treatment had it been disclosed.").

Plaintiffs also argue that "Facebook has produced no evidence to show" that the information about Tag Suggestions "existed in the Data Policy prior to January 30, 2015." Pl. MSJ 17. That argument fails for two reasons. First, it is flatly contradicted by plaintiffs' previous filing in this case, which expressly (and correctly) recognized that the information was disclosed in the Data Policy at all relevant times: "Facebook first included . . . in December 2009" a disclosure stating that it "may use information about you that we collect from other Facebook users to supplement your profile (such as when you are tagged in a photo or mentioned in a status update)"; and "in September 2011," Facebook's Data Policy included a disclosure explaining that it is "able to suggest that your friend tag you in a picture by . . . comparing your friend's pictures to information we've put together from the photos you've been tagged in." Dkt. 269 at 3[19]; *see also* Sherman Decl. ¶¶ 10-13 (describing similar disclosures in prior versions of the Data Policy). Second, and in any event, this Court has already held that plaintiffs are bound by the *current* user agreement, which incorporates the *current* Data Policy by reference.

---

2014) (dismissing claim that LinkedIn harvested non-user email addresses from plaintiffs' contact lists for marketing purposes because users were notified that LinkedIn was "asking for *some* information from" the email account and were then given a choice of forbidding this collection (emphasis added)); *Del Vecchio v. Amazon.com, Inc.*, 2012 WL 1997697, at *6 (W.D. Wash. June 1, 2012) (dismissing claim involving online collection of financial information and mailing addresses because Amazon's terms of use "notif[ied] visitors that [Amazon] will . . . place . . . cookies on their computers and use those cookies to monitor and collect information," even though terms did not say anything specific about what kind of information would be obtained); *Mortensen v. Bresnan Commc'n, LLC*, 2010 WL 5140454, at *4-5 (D. Mont. Dec. 13, 2010) (terms of service barred claim even though defendant "did not fully describe its intent to funnel [the] customer's complete, unfiltered Internet traffic to a third-party processor for profiling and ad-serving"; it was sufficient for defendant to disclose "that Plaintiffs' *electronic transmissions* would be monitored and would in fact be transferred to third-parties for the purposes of providing '*content or services*'" (emphases added)).

[19]    In its motion for summary judgment, Facebook mistakenly cited "Dkt. 263-3 at 1" for this point rather than Dkt. 269 at 3. Def. 2d MSJ at 13. We apologize for this error.

*Facebook Biometric*, 185 F. Supp. 3d at 1167. A reasonable jury could find that Facebook obtained plaintiffs' "informed written consent" and therefore secured the required "written release" under BIPA.[20]

**B.    A Reasonable Jury Could Find That Facebook Publishes An Adequate Retention And Destruction Schedule.**

Finally, plaintiffs argue that there is no genuine dispute that Facebook failed to develop and make public a written policy "establishing a retention schedule and guidelines for permanently destroying biometric identifiers." Pl. MSJ at 19. But again, a reasonable jury could conclude that Facebook's Data Policy does just that: It explains that Facebook "store[s] data for as long as it is necessary to provide products and services . . . , including [Tag Suggestions]," and that "[i]nformation associated with your account will be kept until your account is deleted, unless [Facebook] no longer need[s] the data to provide products and services." Ex. 13 at 44563-65. Notably, plaintiffs do *not* dispute that the Data Policy *provides* the required retention schedule. Instead, they argue cursorily that (1) "Facebook cannot rely on its Data Policy because Facebook claims (falsely) that it does not collect biometric data"; and (2) "[t]here is also no evidence that the Data Policy existed during the entirety of the relevant time period." Pl. MSJ at 19. The first argument is absurd—Facebook has every right to defend against this lawsuit *both* by arguing that it does not collect "biometric identifiers" under BIPA *and* by arguing that it discloses its collection of data to users. The second argument fails for the reasons just discussed: Plaintiffs have correctly conceded that materially similar disclosures were included in prior iterations of the Data Policy (*see* Dkt. 269 at 3; Sherman Decl. ¶¶ 10-13), and under this Court's prior ruling, the *current* policy controls in this case. *Facebook Biometric*, 185 F. Supp. 3d at 1167.

## CONCLUSION

Plaintiffs' motion for partial summary judgment should be denied.

---

[20]    To the extent plaintiffs' position now is that Facebook provided materially different disclosures at different times, that would introduce another individualized issue into the case that would defeat class certification. That is presumably why plaintiffs asserted earlier in the case that the disclosures were the same at all relevant times: to establish that Facebook's compliance with BIPA is an issue common to all class members. They cannot have it both ways.

Dated: April 16, 2018

MAYER BROWN LLP

By: */s/ John Nadolenco*
John Nadolenco
Lauren R. Goldman
Michael Rayfield

*Counsel for Defendant Facebook, Inc.*