ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
JOHN H. GEORGE (292332)
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
jgeorge@rgrdlaw.com
    – and –
PAUL J. GELLER (*pro hac vice*)
STUART A. DAVIDSON (*pro hac vice*)
CHRISTOPHER C. GOLD (*pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com
cgold@rgrdlaw.com

LABATON SUCHAROW LLP                EDELSON PC
JOEL H. BERNSTEIN(*pro hac vice*)   JAY EDELSON (*pro hac vice*)
CORBAN S. RHODES (*pro hac vice*)   RAFEY BALABANIAN (*pro hac vice*)
140 Broadway                        350 North LaSalle Street, Suite 1300
New York, NY 10005                  Chicago, IL 60654
Telephone: 212/907-0700             Telephone: 312/589-6370
212/818-0477 (fax)                  312/589-6378 (fax)
jbernstein@labaton.com              jedelson@edelson.com
crhodes@labaton.com                 rbalabanian@edelson.com

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re FACEBOOK BIOMETRIC INFORMATION PRIVACY LITIGATION | ) ) ) |
| | ) |
| This Document Relates To: | ) ) |
| ALL ACTIONS. | ) ) ) |
| | ) |

Master File No. 3:15-cv-03747-JD

CLASS ACTION

PLAINTIFFS' OPPOSITION TO FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT

DATE:     May 3, 2018
TIME:     10:00 a.m.
CTRM:     11, 19th Floor
JUDGE:    Hon. James Donato

**[REDACTED]**

1412551_2

**Page**

I.  INTRODUCTION .......................................................................................................1

II. ARGUMENT .............................................................................................................2

    A.    Standard of Law ................................................................................................2

    B.    Facebook Fails to Demonstrate the Absence of Genuine Issues of Material Fact Related to Whether Plaintiffs Were Aggrieved by Facebook's Violation of BIPA ...............................................................................................3

    C.    Facebook Did Not Obtain Informed Prior Written Consent to Collect Biometric Data as Required by BIPA .......................................................................3

        1.    Facebook Failed to Obtain Any Consent that Was *Informed* .....................6

        2.    Facebook Failed to Obtain Any Consent that Was *Written* ........................9

    D.    Facebook Fails to Identify the Absence of a Genuine Issue of Fact Concerning Plaintiffs' Recovery of Damages Under BIPA ..................................10

        1.    Facebook's Belated Request to Reconsider the *MTD Order* Violates the Procedure and Substance of L.R. 7-9 ...................................11

        2.    Mistake of Law Is Not a Defense and Facebook Could Not Establish Such a Mistake if It Were ...........................................................13

        3.    Plaintiffs Are Entitled to Recover for Each Violation and Need Not Prove Actual Damages ..............................................................................16

    E.    Facebook Has Collected, Obtained and Stored Plaintiffs' and Others' Biometric Identifiers ......................................................................................17

        1.    Plaintiffs Were Subject to Facebook's Facial Recognition Technology ..........................................................................................17

        2.    Facebook Undisputedly Collects, Obtains and Stores Scans of Face Geometry .....................................................................................19

            a.    Facebook Admittedly Scans Users' Face Geometry as Early as the Detection Tier of Its Facial Recognition Processing .............................................................................20

            b.    Face Signatures and Face Templates Are Also Scans of Face Geometry – Biometric Identifiers ........................................22

III. CONCLUSION ..........................................................................................................24

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Aliano v. Joe Caputo & Sons-Algonquin, Inc.*,
2011 WL 1706061 (N.D. Ill. May 5, 2011) ........................................................16

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...........................................................................................2

*Benson v. Terhune*,
304 F.3d 874 (9th Cir. 2002) .............................................................................9

*Botts v. Kompany.com*,
2013 WL 12131257 (C.D. Cal. Jan. 14, 2013) ................................................16

*Brickman v. Fitbit, Inc.*,
2017 U.S. Dist. LEXIS 202568 (N.D. Cal. Dec. 8, 2017) .................................1

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................1, 2

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) ..........................................................................22

*Doe v. Chao*,
540 U.S. 614 (2004) .........................................................................................16

*Ehrler v. Berryhill*,
2017 U.S. Dist. LEXIS 70860 (E.D. Wash. May 9, 2017) ..............................23

*In re Facebook Biometric Info. Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ..................................................... *passim*

*Jackson v. Bright*,
2015 U.S. Dist. LEXIS 38809 (N.D. Cal. Mar. 26, 2015) ...............................12

*Javansalehi v. BF & Assocs.*,
2011 U.S. Dist. LEXIS 126370 (D. Or. Nov. 1, 2011)....................................22

*Jerman v. Carlisle McNellie, Rini, Kramer & Ulrich, L.P.A.*,
559 U.S. 573 (2010)..........................................................................................13

*Long v. Tommy Hilfiger U.S.A., Inc.*,
671 F.3d 371 (3d Cir. 2012)..............................................................................14

*McDonald v. Washington Mut. Bank. F.A.*,
2000 U.S. Dist. LEXIS 11496 (N.D. Ill. June 26, 2000) ................................16

| | Page |
|---|---:|

*Monroy v. Shutterfly, Inc.*,
   2017 U.S. Dist. LEXIS 149604 (N.D. Ill. Sept. 15, 2017) ....................................15

*Nicaj v. Shoe Carnival, Inc.*,
   2014 U.S. Dist. Lexis 5453 (N.D. Ill. Jan. 16, 2014)
   *aff'd sub nom. Redman v. Radioshack Corp.*, 768 F.3d 622 (7th Cir. 2014)..........14

*Pintos v. Pac. Creditors Ass'n*,
   2011 WL 3880411 (N.D. Cal. Sept. 2, 2011) ...........................................................14

*Rivera v. Google, Inc.*,
   238 F. Supp. 3d 1088 (N.D. Ill. 2017) ......................................................................15

*Rosenbach v. Six Flags Entm't Corp.*,
   2017 IL App (2d) 170317 (Dec. 21, 2017) ..................................................................3

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007)................................................................................................13, 14

*Schaffer v. Litton Loan Servicing LP*,
   2008 U.S. Dist. LEXIS 124461 (C.D. Cal. July 31, 2008) .......................................16

*Spokeo, Inc. v. Robins*,
   _U.S._, 136 S. Ct. 1540 (2016).....................................................................................1

*St. Louis, A. & T. H. R. Co v. Odum*,
   156 Ill. 78 (1895) ......................................................................................................13

*Sterk v. Redbox Automated Retail, LLC*,
   672 F.3d 535 (7th Cir. 2012) ...............................................................................16, 17

*Trans World Airlines, Inc. v. Thurston*,
   469 U.S. 111 (1985)...................................................................................................13

*Tri-Valley CAREs v. U.S. Dept. of Energy*,
   671 F.3d 1113 (9th Cir. 2012) ..................................................................................12

*Vista Mktg., LLC. v Burkett*,
   812 F.3d 954 (11th Cir. 2016) ..................................................................................16

|  |  | **Page** |
|--|--|--|

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 56(a)..................................................................................................1
    Rule 56(c)..................................................................................................2
    Rule 1292(b) .............................................................................................15

**SECONDARY AUTHORITIES**

*Webster's New College Dictionary*
    242, 478, 1008 (3d ed. 2008) ...................................................................19

# I.    INTRODUCTION[1]

Facebook collects and stores biometric data from users in Illinois without their prior informed written consent in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. ("BIPA").

Facebook's motion for summary judgment (ECF No. 299) ("Motion" or "Mot."), its fourth dispositive motion, hardly attempts to point to an absence of a genuine issue of material fact as required by Federal Rule of Civil Procedure 56(a). As this court has recognized, "a principle purpose of summary judgment 'is to isolate and dispose of factually unsupported claims,'" not already decided issues of law. *Brickman v. Fitbit, Inc.*, 2017 U.S. Dist. LEXIS 202568, at *4 (N.D. Cal. Dec. 8, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).[2] Instead of directly addressing the facts at issue, Facebook again argues that notwithstanding the Supreme Court's ruling in *Spokeo, Inc. v. Robins*, _U.S._, 136 S. Ct. 1540 (2016), and this Court's February 26, 2018 ruling on defendant's renewed motion to dismiss (ECF No. 294) ("Renewed MTD Order"), plaintiffs have not been aggrieved by Facebook's violations of BIPA. Mot. at 9-14.

Facebook further claims, in what amounts to a motion for reconsideration filed two years late, that this Court got it wrong in May 2016 when it rejected Facebook's argument that BIPA excludes photographs from its definition of biometric identifiers. Mot. at 24. Failing reconsideration, the Motion is a prayer for forgiveness. Despite being directly warned in 2012 by the United States Senate Committee on the Judiciary ("Senate Judiciary Committee") that it was likely violating BIPA, Facebook argues that it should be excused because its army of lawyers and lobbyists just did not quite understand the law. Mot. at 18. Facebook asks the Court to essentially rewrite the BIPA damages provision to limit plaintiffs' recovery to ***one*** violation as opposed to recovery for "***each***" violation, as clearly stated in the statute, and require plaintiffs to show Facebook's violation was "willful," as opposed to the law's actual requirement of negligence, to recover the $1000 statutory minimum damages. Mot. at 18, 25. The Court should reject Facebook's

---

[1]    Defendant is Facebook, Inc. ("Facebook" or the "Company"). Plaintiffs are Adam Pezen ("Pezen"), Nimesh Patel ("Patel"), and Carlo Licata ("Licata").

[2]    All citations and footnotes omitted and emphasis is added unless otherwise indicated.

serial attempts to undo prior rulings, rewrite BIPA and essentially get a free pass based on its supposed ignorance.

Facebook's fact contentions concerning the ***merits*** of the case, relegated to the final few pages of its Motion, are unpersuasive and seriously undermined by the overwhelming evidence to the contrary, including Facebook's founder and Chief Executive Officer ("CEO") Mark Zuckerberg's ("Zuckerberg") admission just days ago that Facebook ***does not*** currently obtain prior affirmative consent from its users before collecting biometric data and the Company's admission that it collects users' "biometric data," but does not publicly use that term because it ████████████ Ex. 1 at FBBIPA_00009284.[3]

Facebook has utterly failed to carry its burden on summary judgment. In light of plaintiffs' identification of probative evidence going to every element of their claims, as well as this Court's recent acknowledgment that the parties, at a minimum, dispute the facts related to whether Facebook complied with BIPA's notice and consent provisions, Facebook's Motion must be denied.

## II.    ARGUMENT

### A.    Standard of Law

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323. A genuine issue of material fact exists if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion. Once a party has met its burden, the non-moving party must then present some significant, probative evidence indicating that a genuine issue of material fact exists as to each element of its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986). A mere scintilla of evidence is not enough. *Id*. at 252. The Court must view the evidence in a light most favorable to the non-moving party. *Id*. at 255.

---

[3]    All "Ex. _" references herein are to the Declaration of Shawn A. Williams in Support of Plaintiffs' Opposition to Facebook. Inc.'s Motion for  Summary Judgment, filed concurrently herewith, unless otherwise indicated.

### B. Facebook Fails to Demonstrate the Absence of Genuine Issues of Material Fact Related to Whether Plaintiffs Were Aggrieved by Facebook's Violation of BIPA

Although Facebook recognizes that plaintiffs allege an invasion of privacy (*see* Mot. at 12), it insists that plaintiffs were not "aggrieved" under BIPA because an invasion of privacy is "insufficient for liability . . . absent proof that the invasion . . . resulted in an 'actual injury, adverse effect, or harm.'" Mot. at 12. This Court has already flatly rejected Facebook's assertion, which relies on *Rosenbach v. Six Flags Entm't Corp.*, 2017 IL App (2d) 170317, ¶20 n.1 (Dec. 21, 2017) – a currently unpublished opinion by an intermediate court of appeals in Illinois. April 16, 2018 Order re Class Certification (ECF No. 333) ("Class Cert. Order") at 8-12; *see also* Renewed MTD Order at 6 (there is "little question that [through BIPA,] the Illinois legislature codified a right of privacy in personal biometric information"). The critical difference in *Rosenbach*, as this Court noted, is that unlike here, the plaintiff in *Rosenbach* **did not** allege that she (or her minor son who had his biometric data collected) "'suffered any actual injury.'" Class Cert. Order at 9. Rather, only a "technical violation" of BIPA's notice and consent requirements was alleged. *Id.* "As the Court has already found, there is no question that plaintiffs here have sufficiently alleged that intangible injury." *Id.* at 9-10. And "a fair reading suggests that the *Rosenbach* court would have reached the opposite conclusion had the allegations in this case been before it." *Id.* at 9. These distinguishing facts alone are sufficient to overcome Facebook's reliance on *Rosenbach*, but this Court has noted in a well-reasoned analysis: "[t]o the extent *Rosenbach* might be read differently, the Court would part company with it" (as well as the Illinois trial court opinion that relies on it). *Id.* at 10, 12.

### C. Facebook Did Not Obtain Informed Prior Written Consent to Collect Biometric Data as Required by BIPA

BIPA requires private entities that collect biometric data to comply with strict notice and affirmative consent provisions. BIPA is very clear on the type of affirmative consent it requires: *prior* "**informed written consent**." 740 ILCS 14/10, 14/15(b)(3). There is no dispute that Facebook's facial recognition technology used to power its "Tag Suggestions" tool is activated for all users by default. *See* Ex. 3 at FBBIPA_00009320 ███████████████████████ ███. That means that from the moment Facebook rolled out Tag Suggestions in January 2011 (*see*

Sherman Decl., ¶6),[4] Facebook was automatically collecting biometric data from every uploaded photo. Users, therefore, did not even have the ***opportunity*** to provide consent, much less to provide Facebook with the informed written consent that BIPA requires.[5]

While this Court has already recognized that the parties "contest the facts surrounding notice and consent" (Renewed MTD Order at 9), the April 10, 2018 Congressional testimony of Facebook founder and CEO Zuckerberg, should put this issue to rest. In response to questioning from Washington Senator Maria Cantwell, Zuckerberg conceded that Facebook ***does not*** obtain users' "affirmative consent" for its use of facial recognition technology, but that the Company will now "go forward and implement" the "affirmative consent and the special controls around sensitive types of technology, like face recognition, that are required in [Europe]." Ex. 4 at 15.

The European regulatory prohibitions surrounding privacy and affirmative consent are well known to Facebook. In 2012, German and European privacy regulations forced Facebook to deactivate its facial recognition technology for all users in the European Union ("EU"). Ex. 6. A press release announcing the administrative order by the Hamburg Commission for Data Protection and Freedom of Information stated that the order obliged Facebook to "make sure[] that biometric profiles of its . . . users will only be created and stored with their ***active consent***." *Id*. The press release stressed that it was "not the aim of this decision to prevent the use of this technology, but to give tools to the users which ***enables them to a conscious and active decision*** whether or not to participate in this technology." *Id*. Rather than comply with the "active consent" requirements in the EU, Facebook elected to simply deactivate Tag Suggestions for the continent while continuing to collect biometric data in the U.S. without "active consent," in violation of BIPA. Ex. 7; Ex. 8 at FBBIPA_00008128.

---

[4] Declaration of Robert Sherman in Support of Facebook, Inc.'s Motion for Summary Judgment (ECF No. 299-21) ("Sherman Decl.").

[5] On April 6, 2018, over a dozen consumer and privacy groups in the United States filed a Complaint, Request for Investigation, Injunction, and Other Relief with the United States Federal Trade Commission accusing Facebook of deceptively rolling out expanded uses of facial recognition technology without obtaining their explicit "opt-in" consent. *See* Ex. 5.

Here in the U.S., Facebook continues to collect users' biometric identifiers without obtaining affirmative consent. Just last week, *Wired Magazine* published an article titled "As Zuckerberg Smiles to Congress, Facebook Fights State Privacy Laws," reporting that lobbyists funded by Facebook have submitted proposed amendments to BIPA which would gut the statute and allow Facebook to continue its undisclosed collection of biometric data with impunity:

**Weakening a Biometrics Law in Illinois**

While Zuckerberg answered questions from Congress Wednesday, state representatives in Illinois were scheduled to attend the first of two hearings about a proposed amendment to the Biometric Information Privacy Act . . . .

The proposed amendment . . . if passed . . . would essentially gut the law, which is widely regarded as one of the strongest biometric privacy protections in the country. . . .

Passed in 2008, the Illinois ***law requires that companies ask permission before collecting biometric data, including for facial recognition***. It mandates corporations list the purpose and length of time a person's data will be stored, and to include those details in a written biometric privacy policy.

\*          \*          \*

Two sponsors of the legislation in the Illinois Senate – Napoleon Harris, and Chris Nybo ***each received contributions of $2,000 to $2,500 from Facebook*** late last year . . . . The amendment is also supported by the Illinois Chamber of Commerce's Tech Council, of which Facebook is a member.[6]

Ex. 11 at 2-3.

Facebook has never seriously claimed (because it cannot) that it complies with BIPA's strict notice and affirmative consent requirements and it has not pointed to any evidence that it does.[7] Instead, Facebook's position is that "every person who signs up for Facebook accepts terms of service and thereby consents" to the collection of biometric data and that continued use of Facebook after being put on notice equates to prior informed written consent. *See* ECF No. 169 ("Amended Answer") at 22. And in its Motion, Facebook asserts that it satisfied the "purpose" of BIPA by

---

[6]     In 2016, after this Court's May 5, 2016 Order (*In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016) ("*MTD Order*"), similar efforts were made to change the language of BIPA which, had they been successful, would have quieted BIPA. *See* Ex. 9; Ex. 10.

[7]     During the April 10, 2018 Senate hearing, Illinois Senator Dick Durbin expressed disappointment that Facebook was still opposing BIPA and asked Zuckerberg to explain how Facebook was complying. Zuckerberg did not provide an answer during his testimony. Ex. 4 at 26.

1  providing plaintiffs with "adequate notice" and obtaining their "legal consent." Mot. at 12-13. Each

2  of these contentions is devoid of legal support and should be rejected.

### 1.  Facebook Failed to Obtain Any Consent that Was *Informed*

4      BIPA requires private entities collecting biometric identifiers to "inform[] the subject . . . in

5  writing that a biometric identifier . . . is being collected or stored." 740 ILCS 14/15(b)(1). Facebook

6  relies on its user agreement and its Data Policy[8] which it asserts "informed [plaintiffs] about the

7  precise data collection at issue here." Mot. at 14. This assertion is belied by Facebook's denials that

8  it collects or stores biometric identifiers in the first place.[9] Neither the user agreement nor the Data

9  Policy informs users about Facebook's biometric data collection practices because nowhere in the

10 Data Policy (or the user agreement) does Facebook mention the words "biometric identifier,"

11 "biometric data," "face scan," "facial recognition," or any other term that would even hint to users

12 that their biometric data are being collected. We know now that Facebook's omission of such terms

13 is concededly intentional as the Company and software developers knew early on that the term

14 "biometric data" "tends to scare people off." Ex. 1 at FBBIPA_00009284. Facebook actually

15 admits that in order to obscure the fact that it collects biometric data, Facebook tells users "we use

16 existing photos of people to aid us with search in new photos," or it uses some other vague

17 terminology to refer to its practices. *Id.*

18     An examination of the Data Policies and user agreements in place during the relevant period

19 illustrate the vagueness of the language in those documents consistent with Facebook's policy of

20 intentionally avoiding use of the term biometric data. For example, the Data Policy purportedly in

21 place on October 5, 2010, stated only that ███████████████████████████████████

22 ████████████████████████████████████████████████████████████████

23 ███████████████████████ Sherman Decl., Ex. 2 at FBBIPA_00000927. The Data Policy

24 purportedly in effect on September 7, 2011, stated only that ███████████████████████

25 ████████████████████████████████████████████████████████████████

---

26 [8]  Also referred to as "Privacy Policy" or "Data Use Policy."

27 [9]  Indeed, it defies logic and reason for Facebook to deny it collects biometric identifiers while at
28 the same time maintaining it somehow discloses that it collects biometric identifiers.

█████████████████████████████████████████████████████████

Sherman Decl., Ex. 3 at FBBIPA_00000865. The data policies that were purportedly in effect on

June 8, 2012 and November 15, 2013, use similar language. *See* Sherman Decl., Exs. 4-5.[10] The

Data Policy purportedly in place as of September 29, 2016, merely states that ████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

Mot. at 13 (quoting Sherman Decl., Ex. 6 at FBBIPA_00044563).

The truth is that no user could reasonably glean from Facebook's deliberately vague

references to █████████████████████████████████" "information we receive

about you," and "information about you that we collect from other Facebook users" that Facebook

routinely collects, stores, and uses their biometric data (which is precisely what Facebook intended

in order to avoid ████████████). In fact, six years ago, during a 2012 hearing before the

Senate Judiciary Committee, former Senator Al Franken took issue with Facebook's lack of

transparency and questioned how a user could possibly make an informed decision if Facebook does

not actually tell them that it uses facial recognition:

> Nowhere on this screen or on the screen that you get when you click "Learn More,"
> do you see the words "facial recognition" or anything that describes facial
> recognition. . . . ***How can users make an informed decision about facial recognition
> in their privacy settings if you do not actually tell them in their privacy settings you
> are using facial recognition***?

Ex. 12 at 27.

And just last week, on April 10, 2018, during Zuckerberg's Congressional testimony, Louisiana

Senator John Kennedy exclaimed to Zuckerberg it was clear that Facebook's user agreement was not

designed to inform users rather, it appeared designed to "cover Facebook's rear end":

> [KENNEDY] ***Here's what everybody's been trying to tell you today***, and –
> and I say this gently. ***Your user agreement sucks***.

\*      \*      \*

---

[10] Unlike the current Data Policy, however, the prior versions that pre-date this litigation stated that Facebook is able to suggest tags by "scanning" user's pictures. In a transparent but futile effort to remove its practices from the reach of BIPA, Facebook removed its reference to "scanning" pictures from the current Data Policy. Sherman Decl., Ex. 6. *See also* Ex. 37 (Facebook's Proposed Data Policy as of April 5, 2018).

PLAINTIFFS' OPPOSITION TO FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT - 3:15-cv-03747-JD

*__The purpose of that user agreement is to cover Facebook's rear end. It's not to inform your users about their rights__.*

Ex. 4 at 63.

The only time Facebook has used the term *__facial recognition__* to refer to its practices was purportedly somewhere in its "Help Center." Sherman Decl., ¶16. But as Senator Franken noted, this page is buried deep within Facebook's website and requires users "to go through six different screens to get there." Ex. 12 at 27. Facebook contends that ███████████████████████████ ████████████████████████████████████████████. Mot. at 8 (citing Sherman Decl., ¶6 & Ex. 1 at FBBIPA_00001123). But there is no evidence that the language in this "Note" – or in the Help Center for that matter – was sent directly to any user in Illinois or was made part of the user agreement or Data Policy. In fact, Facebook concedes that the "Facebook and Privacy" page where the Note was purportedly published, has approximately 2.65 million total followers on Facebook, as compared to the *__7 million__* users in Illinois as of 2015. Sherman Decl., ¶7. More importantly, nothing in the Note mentions collection or storage of biometric data. *Id.* Ultimately, there is no evidence that Illinois residents were ever informed of Facebook's use of "facial recognition," let alone the collection of their biometric data.[11] Facebook admits that it only recently – "[o]n about December 17, 2017" – started *__directly__* notifying users that it uses "facial recognition." Sherman Decl., ¶14 & Ex. 7.

In addition to failing to inform users that their biometric data were being collected, Facebook also failed to satisfy BIPA's requirement that it "inform[] the subject . . . in writing of the specific purpose and length of term for which a biometric identifier . . . is being collected, stored, and used." 740 ILCS 14/15(b)(2). As Facebook notes, its only disclosure on this point is in the Data Policy, which states that ████████████████████████████████████████████████████

---

[11]  Facebook asserts that plaintiff Licata "admitted" that Facebook's use of facial recognition was "'evident'" from the Data Policy. But knowledge of "facial recognition" does not establish knowledge of Facebook's collection of biometric data. Moreover, Facebook concedes that Licata testified that Facebook should make it "*__very evident__* that this is taking place." Mot. at 13. Facebook also asserts, without citing any testimony, that "[n]either Mr. Pezen nor Mr. Patel has ever said otherwise" (*id.*), which is nonsensical. This entire case is based on Facebook's failure to adequately disclose its biometric data collection practices and Facebook need look no further than the Consolidated Class Action Complaint (ECF No. 40) ("Complaint") in this action to see where Pezen and Patel have said so.

████████████████████████████████████████████████████

████████████████████████████████████ Mot. at 13 (quoting Sherman Decl.,

Ex. 6 at FBBIPA_00044565). This language is insufficient for two reasons. First, because

Facebook fails to inform users that their biometric data is being collected, users cannot know that the

retention and destruction schedule, referencing "data" generally, applies to biometric identifiers.

Second, the evidence shows that Facebook's Data Policy did not even included this language prior to

June 8, 2012. *Compare* Sherman Decl., Ex. 4 *with* Sherman Decl., Exs. 2-3. So even if this

language was sufficient to satisfy BIPA (which it is not), the evidence indisputably shows that

Facebook made zero effort to comply with BIPA's notice provisions prior to June 8, 2012.

The evidence establishes that Facebook deliberately obscures the fact that it collects

biometric data, users are not informed about Facebook's practices, and are, thus, incapable of

providing Facebook with the ***informed*** consent BIPA requires. *See, e.g.*, *Benson v. Terhune*, 304

F.3d 874, 883 (9th Cir. 2002) (informed or knowing consent requires "'a full awareness of both the

nature of the right being abandoned'").

### 2. Facebook Failed to Obtain Any Consent that Was *Written*

Facebook also failed to obtain any consent that was ***written***, as required by BIPA. And

Facebook does not contend otherwise. Rather, relying on this Court's prior ruling that

"individualized notice in combination with a user's continued use is enough for notice and assent" to

Facebook's choice-of-law provisions, Facebook asserts that each plaintiff gave "***legal assent***" to the

Data Policy. Mot. at 13-14 (citing *MTD Order*, 185 F. Supp. 3d at 1166-67). As this Court noted, a

contract may be formed where "the offeror 'provide[s] ***reasonable notice***' of the proposed terms"

but here, while Facebook may have provided plaintiffs with "reasonable notice" of the choice-of-law

and venue terms, it provides users with ***no notice*** that it collects, uses, and stores their biometric

identifiers (a term, again, Facebook specifically and admittedly avoids using).[12] *See supra* §II.C.

---

[12] Moreover, under principles of contract law, the Data Policy would constitute a "browsewrap" agreement, which as this Court noted, "have been viewed with skepticism." *MTD Order*, 185 F. Supp. 3d at 1164-65.

The Court's *MTD Order* ruling related to Facebook's "**user agreement**" last revised on January 30, 2015, **not its Data Policy**, which is where Facebook claims to disclose its facial recognition practices. The Court based its ruling on evidence that Facebook provided **direct notice** to users by email that the terms of the user agreement were changing, and that Facebook users would also receive a "'jewel notification'" on their newsfeed regarding the change in terms. *MTD Order*, 185 F. Supp. 3d at 1167. Here, there is no evidence that Facebook provided users with the same direct BIPA-required notice or jewel notifications when it made changes to the Data Policy.

Furthermore, even under Facebook's meritless theory that plaintiffs gave "legal assent" to the Data Policy as of January 30, 2015, there is no evidence that Facebook waited for plaintiffs to manifest their assent to the Data Policy by continuing to use Facebook before Facebook collected their biometric identifiers. Facebook asserts that plaintiffs "had all of the information they needed to exercise their "'power to say no,'" by opting out of Tag Suggestions (Mot. at 13), but in reality, plaintiffs' only power (assuming they were aware of Facebook's default settings) was to say "stop," after the fact, to end Facebook's unauthorized collection of their biometric identifiers. Such power to say "stop" does not comply with BIPA's express requirement of **prior** consent. At bottom, there is no evidence that Facebook obtained written consent from plaintiffs as required by BIPA, and even if legal assent were sufficient (it is not), there is no evidence that Facebook ever obtained legal assent to the Data Policy, and certainly not before January 30, 2015.[13]

### D. Facebook Fails to Identify the Absence of a Genuine Issue of Fact Concerning Plaintiffs' Recovery of Damages Under BIPA

For each violation of BIPA, a prevailing party is entitled to recover: "(1) against a private entity that negligently violates a provision of [BIPA], liquidated damages of $1,000, or actual damages, whichever is greater; (2) against a private entity that intentionally or recklessly violates a

---

[13]   From the moment Facebook rolled out Tag Suggestions in January 2011 (*see* Sherman Decl., ¶6), Facebook was automatically collecting biometric data from every uploaded photo. But according to Facebook's own exhibits, the ███████████████████████████ ████████████████████████████████ *See* Sherman Decl., ¶12 & Ex. 4 (FBBIPA_00000870 at 75). That means that Facebook collected users' biometric data, at a minimum, for over a year before Facebook even produced a policy (albeit a vague and insufficient one), it claims users consented to.

1  provision of [BIPA], liquidated damages of $5,000 or actual damages, whichever is greater."  740

2  ILCS 14/20.

3       Facebook makes several arguments suggesting that even if plaintiffs prevail, they cannot

4  prove that they are entitled to any recovery of damages under BIPA.  *See* Mot. at 14-18.  None of

5  those arguments identify the absence of a genuine issue of fact.  And each have little, if any, support

6  in fact or the law.  First, Facebook makes an untimely request for reconsideration of this Court's

7  *MTD Order* that photographs are not excluded from BIPA's definition of "biometric identifier."

8  Mot. at 24.  But Facebook does not even attempt to comply with the procedural requirements of

9  Civil Local Rule ("L.R.") 7-9 and does not even try to meet any of the legal standards, *e.g.*,

10  identification of manifest error of law or fact or the emergence of new facts or binding authority.

11  L.R. 7-9.  Facebook also requests that the Court find, as a matter of law, that plaintiffs cannot

12  recover damages because Facebook's violations of BIPA, which were concededly not accidental, are

13  excused because Facebook simply didn't understand the law.  Mot. at 15-18.  Apart from identifying

14  no facts supporting this newly unpled defense, Facebook asks the Court to rewrite the BIPA

15  damages provision to replace "negligently violates" with "willfully violates" and then find as a

16  matter of law that Facebook was not willful or reckless in misinterpreting BIPA.  Mot. at 14-25.

17       Finally, Facebook contends that regardless of how many BIPA violations it committed

18  against any individual Facebook user, plaintiffs' recovery of damages should be limited to a single

19  violation per person, despite the plain language of the statute which permits a prevailing party to

20  recover for "each" violation.  Mot. at 25.[14]  None of these arguments have merit.

### 1.    Facebook's Belated Request to Reconsider the *MTD Order* Violates the Procedure and Substance of L.R. 7-9

22       On May 5, 2016, this Court found, contrary to Facebook's interpretation, BIPA's definition

23  of "biometric identifier" does not exclude biometric data or scans of face geometry collected from

24  photographs.  *MTD Order*, 185 F. Supp. 3d at 1171-72 ("to read that categorical exclusion into the

25  statute would substantially undercut it because the scanning of biometric identifiers is often based on

---

[14]   Recognizing it has no credible defense, Facebook has once again resorted to new lobbying efforts to change the statute to conform with its business interest.  Ex. 13; Ex. 11.

an image or photograph" and run contrary to the purpose of protecting privacy in the face of emerging biometric technology). The Court ultimately found plaintiffs' allegations that Facebook's facial recognition technology involves a scan of face geometry sufficient to adequately allege violations of BIPA. *Id.*

Facebook's request for reconsideration fails for multiple reasons, not the least of which is its failure to follow the procedural and substance of L.R. 7-9.[15] The Court may deny Facebook's request on that basis alone. *Jackson v. Bright*, 2015 U.S. Dist. LEXIS 38809, at *13 (N.D. Cal. Mar. 26, 2015) (citing *Tri-Valley CAREs v. U.S. Dept. of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012)). Facebook does not identify any change in material fact or law since the *MTD Order* and no manifest error of the Court to consider material facts or dispositive legal arguments. Nor does Facebook establish that it was diligent in seeking reconsideration as the request comes ***22 months after*** the *MTD Order*. *See* L.R. 7-9(b).

Facebook takes issue with the Court's ruling that BIPA's definition of biometric identifiers is better understood to mean "paper photographs" and "not digitized images stored as a computer file and uploaded to [Facebook]." *MTD Order*, 185 F. Supp. 3d at 1171. Facebook argues that it is "undisputed . . . that many photos uploaded to Facebook are derived from paper prints." Mot. at 17. But it cites ***no*** evidence (much less undisputed evidence) that many photos uploaded to Facebook are derived from paper prints. Moreover, there is simply no meaningful distinction between the Court's *MTD Order* reasoning and the testimony of Facebook's key witness Yaniv Taigman ("Taigman") who explains that paper photographs must be converted to digital photographs before being uploaded. *See* Ex. 14 at 134 (describing performance of facial recognition on paper photographs ***converted to jpegs*** or ***digitized*** stored on a computer and uploaded to Facebook); *see also* Ex. 15 at 123. The evidence proffered by Facebook agrees with the Court's analysis and is contrary to the basis of its current request for relief.

---

[15] L.R. 7-9(b) provides that a party moving for reconsideration of an interlocutory order must first seek leave to file such a motion ***and*** show: (1) that there has been a change in material fact or law from that which was presented to the Court before the entry of the order; (2) the emergence of new material facts or a change of law occurring after the order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such order. *Id.*

## 2. Mistake of Law Is Not a Defense and Facebook Could Not Establish Such a Mistake if It Were

The facts undisputedly establish that Facebook intentionally collects biometric identifiers from Illinois residents in order to drive its facial recognition technology and its Tag Suggestion feature. *See* Ex. 16. Facebook claims that even though its conduct is not accidental, it mistakenly interpreted BIPA to exclude photographs from its definition of biometric identifiers and that mistake of law, to the extent that it was not "objectively unreasonable," shields Facebook's damages. Mot. at 14-15. As a general rule, however, "ignorance of the law will not excuse any person either criminally or civilly." *Jerman v. Carlisle McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 583 (2010) (recognizing that intentional conduct can be subject to liability despite a mistaken belief that such conduct is justified under the law). Even where a statute specifically provides for a good faith defense, and BIPA does not, ignorance is no excuse. *Id.* at 601-05 (bona fide error defense does not extend to attorney misinterpretation of the scope of the statutory provisions).

Facebook relies on a court decision from 1895 to attempt to redefine "negligence" as "objectively unreasonable conduct." *See* Mot. at 14 (relying on *St. Louis, A. & T. H. R. Co v. Odum*, 156 Ill. 78, 82 (1895)). The black letter definition of negligence is well known. It is the "failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not [do], under circumstances similar to those shown by the evidence." *See* Illinois Pattern Jury Instructions ("IPI") §10.01. Meaning that, as of the enactment of BIPA in 2008, it was Facebook's duty to use ordinary care – the care a reasonably careful person would use under circumstances similar to those shown by the evidence. *See* IPI §10.04.

Facebook's obfuscation of the definition of negligence is transparently designed to create a defense where none exists. What Facebook is actually doing is asking the Court to rewrite BIPA to require a showing of willfulness rather than negligence like the statute says. "Willful[ness]" is a term "often understood in the civil context to excuse mistakes of law." *See Carlisle*, 559 U.S. at 1613 (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125-26 (1985)). The problem for Facebook is that BIPA does not use the word "willful" at all. 740 ILCS 14/20. Accordingly, Facebook's reliance on *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) is materially misplaced.

There, the Supreme Court interpreted the Fair Credit Reporting Act ("FCRA") to determine, whether defendant's violation of the FCRA rose to the level of ***willfulness***, as that term is used in FCRA, and the Court equated willfulness to ***recklessness*** – not negligence. The court in *Safeco* found that notwithstanding Safeco's violation of the statute, its reading of the statute was not objectively unreasonable and Safeco was thus "***not reckless*** in falling down in its duty." *Safeco*, 551 U.S. at 68; *Pintos v. Pac. Creditors Ass'n*, 2011 WL 3880411, at *3 (N.D. Cal. Sept. 2, 2011) (*Safeco* . . . "determined what constitutes a willful violation of FCRA . . . . *Safeco* did not substantively address negligence . . . ."). Facebook's reliance on *Long v. Tommy Hilfiger U.S.A., Inc*., 671 F.3d 371, 377 (3d Cir. 2012) is similarly misplaced as it did not evaluate negligence at all in determining liability for defendant's mistaken interpretation of the Fair and Accurate Credit Transactions Act ("FACTA"). There, after concluding that Tommy Hilfiger had violated the FACTA, the court determined that Tommy Hilfiger's violation was not "objectively unreasonable," and thus not "willful" or "reckless," because Tommy Hilfiger's interpretation of FACTA had some foundation in statute. *Id*. The court in *Nicaj v. Shoe Carnival, Inc.*, 2014 U.S. Dist. Lexis 5453 (N.D. Ill. Jan. 16, 2014) *aff'd sub nom. Redman v. Radioshack Corp.*, 768 F.3d 622 (7th Cir. 2014), made clear that both *Safeco* and *Long* analyzed the meaning and scope of "willful" violations, ***not*** "***negligence***," and each concluded that those defendants' erroneous interpretation of the FACTA was not "willful" unless it was "objectively unreasonable." *Id*. at *8-*9.

Even if mistake of law is a viable defense, and it's not, the evidence here demonstrates that any such mistake was "objectively unreasonable." An intentional act can subsume negligent or even willful violation where evidence shows that a defendant ***knew or should have known*** that conduct was impermissible. Even a "careless reading of the statute . . . may support liability for a negligent violation." *Pintos*, 2011 WL 3880411, at *4. Here, Facebook concedes that it actually knew of BIPA's prohibitions and requirements. In 2012, Facebook was directly confronted by the Senate Judiciary Committee specifically on its compliance with BIPA's informed consent requirements that must be met before it could legally collect biometric data. Ex. 12 at 27; Ex. 38. During that hearing, Facebook was asked how one could be expected to provide informed consent under the statute, much

less informed consent, when the Data Policy does not mention the collection of biometric data or facial recognition. *Id*. at 27; Ex. 17.

Facebook admits that there is no legal authority supporting its "misinterpretation" of the scope of BIPA. Mot. at 17.[16] But Facebook could have sought the appellate guidance it claims is lacking through Fed. R. Civ. P. 1292(b), after rulings in this case and others, but obviously elected not to. Mot. at 17. There is also no evidence that Facebook has attempted at any time since those rulings to receive prior written consent required by BIPA before collecting such biometric data. And apparently satisfied with the Courts' *MTD Order*, Facebook waited nearly **two years** to request reconsideration. In the interim, however, it renewed its motion to dismiss on Article III grounds arguing that its conduct did not cause actual harm, and filed its motion for summary judgment on extraterritoriality grounds arguing that that because of the purported location of its servers, the violation did not happen in Illinois.[17] ECF Nos. 129, 257.

Facebook's submission of 2012 correspondence with Australian authorities which further confirms its knowledge of BIPA and specifically quotes the statute. Mot. at 18; Sherman Decl., Ex. 12. Moreover, the document says nothing about excluding photographs from the definition "biometric identifiers," or anything about its flawed interpretation of BIPA. *Id.* What is clear is in that correspondence, Facebook materially mischaracterized BIPA claiming that the Illinois ███████████████████████████████████████████████████████ ████████ Mot. at 18 (citing Sherman Decl., Ex. 12 at FBBIPA_00040772) (emphasis in original). ████████████████████████████████████████████████████ ███████████████████████████████████████████████ Sherman Decl., Ex. 12 n.18. At bottom, Facebook's mistake of law defense appears to be yet another afterthought which

---

[16] Despite rulings in *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1095 (N.D. Ill. 2017), *Monroy v. Shutterfly, Inc.*, 2017 U.S. Dist. LEXIS 149604 (N.D. Ill. Sept. 15, 2017), and this case that "biometric identifiers" include information extracted from photographs from BIPA's definition, Facebook has continued to scan all photos for face geometry.

[17] The merits of each of Facebook's summary judgment arguments are questionable. ████████ ██████████████████████████████████████████████████████████ Ex. 18 at 12.

Facebook didn't even deem important enough to plead in its answer or its Amended Answer to the Complaint or raise prior to summary judgment. It lacks any legal merit or evidentiary support and should be rejected.

### 3. Plaintiffs Are Entitled to Recover for Each Violation and Need Not Prove Actual Damages

The plain language of BIPA states that a "prevailing party may recover for *each* violation," liquidated damages of $1,000 *or* actual damages, whichever is greater. 740 ILCS 14/20. If a plaintiff prevails against a defendant and proves more than one violation, the statute allows recovery for each violation not just one violation. *Id.*[18]

Facebook's assertion that plaintiffs must prove actual damages before they can recover liquidated damages also fails. Mot. at 24. BIPA does not suggest that one must prove actual damages at all, but clearly allows one to *choose* between actual damages and liquidated damages, whichever is greater. *See Vista Mktg., LLC. v Burkett*, 812 F.3d 954, 967-69 (11th Cir. 2016) (explaining the significance of statuary provision allowing a party to elect actual damages *or* statutory damages and noting that the election of statutory damages where provided for in the statute does not require proof of actual damages); *Schaffer v. Litton Loan Servicing LP*, 2008 U.S. Dist. LEXIS 124461 (C.D. Cal. July 31, 2008) (Holding that in a class action, plaintiff need not prove actual damages in order to recover statutory damages (citing *McDonald v. Washington Mut. Bank. F.A.*, 2000 U.S. Dist. LEXIS 11496 (N.D. Ill. June 26, 2000)).

*Doe v. Chao*, 540 U.S. 614, 619, 621 (2004), upon which Facebook relies, is inapposite and makes no mention at all of liquidated damages. Instead, the Supreme Court, interpreting the remedies under the Privacy Act of 1974, found that because the statute required to prove a statutory violation *and* resulting adverse consequences before triggering the damages provision, the plaintiff was required to first prove actual damages before being entitled to the statutory minimum. *Sterk v.*

---

[18] Ignoring BIPA's plain statutory language, Facebook argues that plaintiffs should be limited to damages of one violation per person is without merit and contrary to the statutes' plain language. Their reliance on *Botts v. Kompany.com*, 2013 WL 12131257 (C.D. Cal. Jan. 14, 2013) and *Aliano v. Joe Caputo & Sons-Algonquin, Inc.*, 2011 WL 1706061 (N.D. Ill. May 5, 2011) is misplaced as each analyze statutes (FACTA and Copyright Act of 1976) that do not provide for damage for each violation. Mot. at 25. Facebook's improper request should be rejected.

*Redbox Automated Retail, LLC*, 672 F.3d 535, 537 (7th Cir. 2012) actually undermines Facebook's argument as it holds that even where a statute states that a person aggrieved of a violation may recover "actual damages but not less than liquidated damages in the amount of $2500," that such language plainly allowed for the recovery of liquidated damages without the need to prove actual damages. *Id.* Under BIPA however, the violation is the injury. Renewed MTD Order at 6-7 (violation of BIPA notice and consent procedures constitute concrete injury). And, because actual damages might be difficult to estimate, the statute provides for disjunctive relief; either liquidated damages of a minimum of $1000 per violation *or* actual damages, whichever is greater. Aggregation of damages on a class-wide basis is plainly authorized by the statute as there is no prohibition against class actions in BIPA. Class Cert. Order at 15 ("[T]he Illinois legislature knows how to speak clearly when it wants to foreclose class actions.").

### E. Facebook Has Collected, Obtained and Stored Plaintiffs' and Others' Biometric Identifiers

Only by ignoring its own contemporaneous documents, manufacturing agreement between competing experts, imposing an unnaturally narrow definition of "scan of face geometry" and conveniently characterizing its facial recognition technology in a way that avoids its interpretation of BIPA, is Facebook able to portray the merits of plaintiffs' action as beyond reasonable dispute. Further, Facebook does not even bother to address its pre-2014 facial recognition technology, instead exclusively focusing on the post-2014 version of its system that uses a deep neural network ("DNN"). When BIPA is properly construed and the record is properly considered, there is no doubt that Facebook's Motion must be denied.

#### 1. Plaintiffs Were Subject to Facebook's Facial Recognition Technology

Contrary to its own records, Facebook contends that there is "no evidence" that any photos of plaintiffs were subject to the Company's facial recognition system. Mot. at 19. This is patently absurd. For example, Facebook's own record of plaintiff Patel's "Facial Recognition Data" states that Facebook has *165 examples* of his face (all of which were scanned for facial geometry) and

provides the three thresholds that it's facial recognition system uses to identify a user and provide a corresponding tag suggestion:[19]

## Nimesh Patel

### Facial Recognition Data

| | |
|---|---|
| Threshold 1 | 3.3230273723602 |
| Threshold 2 | 3.1131439208984 |
| Threshold 3 | 1.6582270860672 |
| Example Count | 165 |

Ex. 20; ██████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
█████████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

Ex. 19 at 7. Thus, Facebook has applied its facial recognition system to the hundreds of photos that it admits plaintiffs have uploaded, and to the photos of plaintiffs in which they have been tagged.

---

[19] This information is in Facebook's possession for every person for whom Facebook has scanned face geometry and stored a face template. ████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████████████

There is no genuine dispute that Facebook has in fact applied its facial recognition system to plaintiffs' faces.

### 2. Facebook Undisputedly Collects, Obtains and Stores Scans of Face Geometry

According to the Company, any one of its nearly two billion users can be identified from a photo of his or her face with ███████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████ ████████████████████████████████████

██ This, of course, defies common sense and is a blatant attempt to skirt BIPA's clear language and intent. The reality is that Facebook collects, obtains and stores scans of face geometry through the alignment, representation and classification phases of its pre- and post-2014 facial recognition systems.

Facebook contends that a "'scan of face geometry'" is limited to an "express representation of measurements of depths, distances, or angles among human-notable facial features used to identify a person." Mot. at 20. But BIPA provides no such limitation. Facebook offers no authority for its claim that "scan of" means "express representation," likely because there is none. Scan, which is both a noun and verb, includes any act of close examination, not merely a reproduction or representation. *Webster's New College Dictionary* 1008 (3d ed. 2008); Ex. 30, ¶¶11-12. And even according to Facebook's source, "geometry" includes "surface shape," the "relative arrangement of parts or elements[] such as shape" and "an arrangement of objects or parts that suggest geometric figures." *Webster's New College Dictionary* 242, 478 (3d ed. 2008); Ex. 30, ¶¶13-14. ████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

1   Accordingly, any act of close examination of a face's surface shape or the relative arrangement of

2   facial parts or shape is a "scan of face geometry."

3       To the extent Facebook contends a scan of face geometry only exists when an identification

4   is made, it is incorrect.  *See* Mot. at 20, 23-24.  The definition of a "biometric identifier," which

5   includes a "scan . . . of face geometry," does not include any requirement that the biometric identifier

6   actually be "used to identify an individual." 740 ILCS 14/10.  That limitation appears only under the

7   definition of "biometric information," an entirely separate issue under BIPA.  *Id*.  BIPA's purpose

8   would hardly be served if private entities could freely collect biometric identifiers without notice and

9   consent so long as they did not use that data to actually identify an individual.  740 ILCS 14/5

10  (biometrics are "unique" and "once compromised" cannot be changed).

11          **a.      Facebook Admittedly Scans Users' Face Geometry as
                       Early as the Detection Tier of Its Facial Recognition
12                     Processing**

13      Here, the parties are in agreement about the facts; during detection and alignment, ████

14  ████████████████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████



22  ████████████████████████████████████████████████████████████████████████. Facebook,

23  however, asserts that the detailed map of fiducial points is not a scan of face geometry because it is

24  not used to represent or distinguish an individual's face geometry and is not relied on to produce a

25  face signature or template.  Mot. at 23.  Neither is true.

26      Facebook merely parrots its expert to conclude that the fiducial point map is not a scan of

27  face geometry.  Mot. at 23.  ████████████████████████████████████████████████

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████

6 ████████████████████████████████  In other words, a scan of face

7 geometry.  *See* Ex. 30, ¶29.

8    Facebook is also wrong that it does not use information from fiducial points to create face

9 signatures or templates.  Mot. at 23. ████████ ████ ██████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 ████████████████████████████ █████████████████████████

16 ████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████

21 ██████  The evidence is clear – Facebook obtains scans of face geometry at the detection tier and

22 uses the information obtained to drive the subsequent recognition.

23 ───────────────────
[21]  Research article titled "DeepFace: Closing the Gap to Human-Level Performance in Face

24 Verification" ("DeepFace paper").

25 [22] ████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████

28 ██████████████████████████████████████



### b. Face Signatures and Face Templates Are Also Scans of Face Geometry – Biometric Identifiers

[redacted]

[redacted]

[23] Plaintiffs' position on face signatures is entirely consistent with the complaint allegations and, at most, is a "factual predicate tending to support the ***same legal theory*** of defendants' liability." *Javansalehi v. BF & Assocs.*, 2011 U.S. Dist. LEXIS 126370, at *17 (D. Or. Nov. 1, 2011) (refusing to apply *Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000) where, as here, theory of liability did not change from complaint). Facebook is well aware of plaintiffs' position, [redacted]

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████ Accordingly, the evidence clearly demonstrates that, at a minimum, Facebook cannot show the absence of a genuine issue of fact and is not entitled to judgment on the basis that face signatures are not scans of face geometry.

Facebook explanation for why a holistic face recognition system does not involve a scan of face geometry under BIPA – *i.e.*, the legislature was only concerned with systems that could be used to steal a person's identity – is also meritless.  Mot. at 21 n.19.  The legislature made no such distinction and explicitly stated that the law was needed because biometrics, whether from a holistic system or otherwise, "are biologically unique . . . [and] once compromised, the individual has no recourse."  740 ILCS 14/5(c).  Further, Facebook has no basis to conclude that its system cannot be breached. ████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████.[24]  Accordingly, summary judgment is unwarranted.

Despite Facebook's nonsensical claim, the evidence demonstrates that face templates are scans of face geometry and thus biometric identifiers.  *See* ████████████████████

██████████████████████████████████████████████████

███████████████████.  Facebook contends that face templates (also known as face models or hyperplanes) are not scans of face geometry or biometric data because the face signatures from which they are derived do not involve face geometry.  Mot. at 21.  As explained above, face signatures are scans of face geometry.  Thus, face templates, ████████████████████████████

---

[24]  Facebook's arguments incorporated by reference from a motion in the since-dismissed *Gullen* matter (Mot. at 22-23) should be stricken as they violate the page limit and prejudice plaintiffs.  And, contrary to its baseless contention, ███████████████████████████████████████ *Ehrler v. Berryhill*, 2017 U.S. Dist. LEXIS 70860, at *22 (E.D. Wash. May 9, 2017).

1 ██████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████.

5      In sum, Facebook is not entitled to summary judgment based on its arguments that no part of

6 its facial recognition system collects, obtains or stores scans of face geometry.

7 **III. CONCLUSION**

8      For the reasons stated above, the Court should deny Facebook's motion for summary

9 judgment.

10 DATED: April 16, 2018            Respectfully submitted,

11                               ROBBINS GELLER RUDMAN

12                                    & DOWD LLP
                              SHAWN A. WILLIAMS

13                               JOHN H. GEORGE

14 

15                                  s/ Shawn A. Williams
                              SHAWN A. WILLIAMS

16                               Post Montgomery Center
                              One Montgomery Street, Suite 1800

17                               San Francisco, CA 94104
                              Telephone: 415/288-4545

18                               415/288-4534 (fax)

19                               ROBBINS GELLER RUDMAN

20                                    & DOWD LLP
                              PAUL J. GELLER*

21                               STUART A. DAVIDSON*
                              CHRISTOPHER C. GOLD*

22                               120 East Palmetto Park Road, Suite 500
                              Boca Raton, FL 33432

23                               Telephone: 561/750-3000
                              561/750-3364 (fax)

24                               LABATON SUCHAROW LLP

25                               JOEL H. BERNSTEIN*
                              CORBAN S. RHODES*

26                               140 Broadway
                              New York, NY 10005

27                               Telephone: 212/907-0700
                              212/818-0477 (fax)

28

EDELSON PC
JAY EDELSON*
RAFEY BALABANIAN*
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Telephone: 312/589-6370
312/589-6378 (fax)

Attorneys for Plaintiffs

* = appearance *pro hac vice*

<div align="center">CERTIFICATE OF SERVICE</div>

I hereby certify that on April 16, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 16, 2018.

s/ Shawn A. Williams
SHAWN A. WILLIAMS
ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:  shawnw@rgrdlaw.com

# Mailing Information for a Case 3:15-cv-03747-JD In re Facebook Biometric Information Privacy Litigation

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Rafey Sarkis Balabanian**
  rbalabanian@edelson.com,docket@edelson.com

- **James E Barz**
  jbarz@rgrdlaw.com

- **Joel H. Bernstein**
  jbernstein@labaton.com,JGardner@labaton.com,kgutierrez@labaton.com,cvillegas@labaton.com,RKamhi@labaton.com,1375722420@filings.docketbird.com,electro

- **Michael P. Canty**
  mcanty@labaton.com,7677707420@filings.docketbird.com,lmehringer@labaton.com,fmalonzo@labaton.com,acarpio@labaton.com,electroniccasefiling@labaton.con

- **Albert Y. Chang**
  achang@bottinilaw.com,sammirati@bottinilaw.com

- **Vincent Connelly**
  vconnelly@mayerbrown.com

- **Stuart Andrew Davidson**
  sdavidson@rgrdlaw.com,5147990420@filings.docketbird.com,jdennis@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Mark Dearman**
  mdearman@rgrdlaw.com,9825585420@filings.docketbird.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Mark J. Dearman**
  mdearman@rgrdlaw.com

- **Jay Edelson**
  jedelson@edelson.com,docket@edelson.com

- **Amanda M. Frame**
  aframe@rgrdlaw.com

- **Paul J. Geller**
  pgeller@rgrdlaw.com,swinkles@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Paul Jeffrey Geller**
  pgeller@rgrdlaw.com

- **John Hamilton George**
  jgeorge@rgrdlaw.com

- **Christopher Chagas Gold**
  cgold@rgrdlaw.com,4703056420@filings.docketbird.com,jdennis@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Lauren R Goldman**
  lrgoldman@mayerbrown.com,mrayfield@mayerbrown.com,jmarsala@mayerbrown.com

- **Frank S Hedin**
  fhedin@hedinhall.com

- **Lily E. Hough**
  lhough@edelson.com,docket@edelson.com

- **Ross M Kamhi**
  rkamhi@labaton.com,kgutierrez@labaton.com,electroniccasefiling@labaton.com

- **David Philip Milian**
  DMilian@CareyRodriguez.com,ejimenez@careyrodriguez.com,ecf@careyrodriguez.com

- **John Nadolenco**
  jnadolenco@mayerbrown.com,rjohns@mayerbrown.com,los-
  docket@mayerbrown.com,jaustgen@mayerbrown.com,tstruwe@mayerbrown.com,gtmiller@mayerbrown.com,cgarcia@mayerbrown.com,jjennings@mayerbrown.cor

- **Alexander Nguyen**
  anguyen@edelson.com,docket@edelson.com

- **Archis A. Parasharami**
  aparasharami@mayerbrown.com

- **Archis Ashok Parasharami**
  aparasharami@mayerbrown.com,4085092420@filings.docketbird.com,wdc.docket@mayerbrown.com

- **Matthew David Provance**
  mprovance@mayerbrown.com,courtnotification@mayerbrown.com

- **Michael E Rayfield**
  mrayfield@mayerbrown.com

- **Corban S Rhodes**
  crhodes@labaton.com,kgutierrez@labaton.com,3936743420@filings.docketbird.com,sauer@labaton.com,electroniccasefiling@labaton.com

- **Benjamin Harris Richman**
  brichman@edelson.com,docket@edelson.com

- **Frank Anthony Richter**
  frichter@rgrdlaw.com

- **Lawrence A. Sucharow**
  lsucharow@labaton.com,kgutierrez@labaton.com,electroniccasefiling@labaton.com

- **Alexander Glenn Tievsky**
  atievsky@edelson.com,docket@edelson.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,smorris@rgrdlaw.com,ptiffith@rgrdlaw.com,dhall@rgrdlaw.com,e_file_sd@rgrdlaw.com,nlai@rgrdlaw.com

- **Mark R Winston**
  mwinston@labaton.com,kgutierrez@labaton.com,electroniccasefiling@labaton.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Vincent          J. Connelly
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

Facebook Inc.
Cooley LLP
3000 El Camino Real
Five Palo Alto Square
Palo Alto, CA 94306-2155
```