**Exhibit 1 to**

**Nadolenco Declaration**

(Facebook's Motion for Stays)

REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED

No. _____  **Filed Under Provisional Seal**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE FACEBOOK BIOMETRIC INFORMATION PRIVACY LITIGATION

CARLO LICATA, ADAM PEZEN, AND NIMESH PATEL, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Respondents*,

*v.*

FACEBOOK, INC.,
*Defendant-Petitioner.*

Petition for Permission to Appeal from the
United States District Court for the Northern District of California
Honorable James Donato
Case No. 3:15-cv-03747-JD

## PETITION FOR LEAVE TO APPEAL A CLASS CERTIFICATION ORDER UNDER RULE 23(f)

Lauren R. Goldman
Andrew J. Pincus
Michael Rayfield
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020

John Nadolenco
MAYER BROWN LLP
350 South Grand Avenue
Los Angeles, CA 90071

*Counsel for Petitioner*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, petitioner Facebook, Inc. states that it is a publicly held non-governmental corporation, that it does not have a parent corporation, and that no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

INTRODUCTION ................................................................1

QUESTIONS PRESENTED....................................................4

BACKGROUND .................................................................5

    A.    The Illinois Biometric Information Privacy Act .................5

    B.    Facebook's Tag Suggestions Feature............................5

    C.    Facebook's Disclosures About Tag Suggestions .................6

    D.    Plaintiffs' Complaints And Procedural History .................6

ARGUMENT:  THE DISTRICT COURT COMMITTED TWO
MANIFEST ERRORS ON FUNDAMENTAL QUESTIONS RELATED
TO RULE 23(b)(3)'S PREDOMINANCE REQUIREMENT ................8

I.    REVIEW IS WARRANTED BECAUSE BIPA'S STATUTORY
    INJURY REQUIREMENT DEFEATS PREDOMINANCE.......................8

    A.    BIPA's "Aggrieved" Provision Requires A Showing Of Actual
        Injury Beyond The Alleged Statutory Violation.................9

    B.    The District Court Manifestly Erred By Holding That The
        Aggrieved Provision Can Be Satisfied Through A Common
        Showing Of An Unidentified "Injury To A Privacy Right." .....10

        1.    Under Illinois Law, Proving A Generic "Injury To A
            Privacy Right" Is Insufficient .................11

        2.    Proof Of An "Injury To A Privacy Right" Is Necessarily
            Individualized..............................13

    C.    For Related Reasons, Class Certification Is Improper Because
        Most Class Members Lack Article III Standing .................15

II.    REVIEW IS WARRANTED BECAUSE THE APPLICATION OF
    ILLINOIS' EXTRATERRITORIALITY DOCTRINE DEFEATS
    PREDOMINANCE..........................................................16

    A.    The District Court Manifestly Erred In Holding That Residency
        Alone Is Sufficient To Satisfy Illinois' Extraterritoriality
        Doctrine ..................................................16

    B.    The Extraterritoriality Doctrine Defeats Predominance .......18

CONCLUSION .................................................................20

i

## TABLE OF AUTHORITIES

**Cases**

*Am. Sur. Co. v. Jones*,
384 Ill. 222 (1943) ...................................................................................12, 13

*Avery v. State Farm Mut. Auto. Ins. Co.*,
216 Ill. 2d 100 (2005) .......................................................................3, 4, 17, 20

*People ex rel. Benefit Ass'n v. Miner*,
56 N.E.2d 353 (1944) .....................................................................................13

*Campbell v. Facebook Inc.*,
315 F.R.D. 250 (N.D. Cal. 2016).....................................................................14

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ..........................................................................2, 8

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)........................................................................................3, 14

*Cruz v. Lawson Software, Inc.*,
2010 WL 890038 (D. Minn. Jan. 5, 2010) .......................................................20

*Emery v. Clark*,
604 F.3d 1102 (9th Cir. 2010) .........................................................................12

*In re Facebook Biometric Info. Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016)..............................................................7

*Gibbons v. Cannaven*,
66 N.E.2d 370 (Ill. 1946)................................................................................13

*Graham v. Gen. U.S. Grant Post*,
43 Ill. 2d 1 (1969) ......................................................................................17, 18

*Gulec v. Boeing Co.*,
698 F. App'x 372 (9th Cir. 2017) ....................................................................14

*Gullen v. Facebook*,
2018 WL 1609337 (N.D. Cal. Apr. 3, 2018)..................................................7, 19

*Hackett v. BMW of N. Am., LLC*,
  2011 WL 2647991 (N.D. Ill. June 30, 2011) ......................................................18

*Landau v. CNA Fin. Corp.*,
  381 Ill. App. 3d 61 (2008) ....................................................................16, 17

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ...................................................................16

*McCollough v. Smarte Carte, Inc.*,
  2016 WL 4077108 (N.D. Ill. Aug. 1, 2016) ......................................................10

*Murray v. Fin. Visions, Inc.*,
  2008 WL 4850328 (D. Ariz. Nov. 7, 2008) ......................................................14

*N. Fed. Sav. & Loan Ass'n v. Becker*,
  182 N.E.2d 155 (Ill. 1962) ....................................................................13

*Northtown Bank of Decatur v. Becker*,
  202 N.E.2d 540 (Ill. 1964) ....................................................................13

*Patel v. Facebook Inc.*,
  2018 WL 1050154 (N.D. Cal. Feb. 26, 2018) ......................................................7

*Rivera v. Google Inc.*,
  238 F. Supp. 3d 1088 (N.D. Ill. 2017) ...........................................................19

*Rosenbach v. Six Flags Entm't Corp.*,
  __ N.E.3d __, 2017 IL App (2d) 170317 ...............................................3, 9, 10, 11

*Spade v. Select Comfort Corp.*,
  __A.3d__, 2018 WL 1790394 (N.J. Apr. 16, 2018) ................................................13

*Spokeo v. Robins*,
  136 S. Ct. 1540 (2016) ........................................................................16

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ..................................................................5

*Syed v. M-I, LLC*,
  853 F. 3d 492 (9th Cir. 2017) .................................................................16

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ...................................................................................16

*Valley Air Serv. v. Southaire, Inc.*,
    2009 WL 1033556 (N.D. Ill. Apr. 16, 2009) ......................................................18

*Vigil v. Take-Two Interactive Software, Inc.*,
    235 F. Supp. 3d 499, 519 (S.D.N.Y. 2017) ...................................................9, 12

*Vulcan Golf, LLC v. Google Inc.*,
    552 F. Supp. 2d 752 (N.D. Ill. 2008) ...............................................................17

*Winger v. Chi. City Bank & Tr. Co.*,
    67 N.E.2d 265 (Ill. 1946) ...............................................................................13

**Statutes**

740 ILCS 14/5 ..................................................................................................5

740 ILCS 14/10 ................................................................................................5

740 ILCS 14/15 ................................................................................................5

740 ILCS 14/20 ............................................................................................2, 5

**Other Authorities**

Cal. Sen. Bill No. 169 (July 5, 2001) ..................................................................20

## INTRODUCTION

The critical question in determining whether to certify a Rule 23(b)(3) class action is whether individualized issues preclude a finding of predominance. Trial courts may not ignore elements of a claim that necessarily require proof from each class member in order to certify a class. When, as here, the claim arises under state law, federal courts must be particularly careful to abide by decisions of state courts explicating the elements of the claim.

The district court violated these principles in certifying a class action against Facebook seeking *billions of dollars* in statutory damages under the Illinois Biometric Information Privacy Act ("BIPA"). It refused to apply binding Illinois appellate precedent holding that a BIPA plaintiff must demonstrate (1) actual injury *beyond* the alleged statutory violation; and (2) that the circumstances related to the alleged statutory violation occurred "primarily and substantially" in Illinois—a standard that cannot be satisfied by the plaintiff's residency alone. The court thereby ignored significant variations among the circumstances of class members that defeat predominance under Rule 23(b)(3).

This case is speeding toward a trial that would violate Rule 23 and due process from day one. And Facebook does not stand alone; if the order below is allowed to stand, it will encourage plaintiffs to file even more defective class actions under BIPA—a fast-growing area of litigation—against other California

1

technology companies.  This Court's review is urgently needed.

Facebook and many other internet-based services use facial-recognition technology to help people organize and share their photos.  This suit challenges Facebook's "Tag Suggestions" feature, which uses facial recognition to make it easier for people to identify, or "tag," their friends in photos—an optional feature fully disclosed in Facebook's user agreements.  The plaintiffs are Illinois Facebook users who claim that Facebook did not satisfy BIPA's notice-and-consent requirements; they have disclaimed any actual harm from the alleged violations.

The district court certified a class of "Facebook users located in Illinois for whom Facebook created and stored a face template"—a mathematical model that Facebook uses to identify faces in photos—"after June 7, 2011."  Op. 1.  The court committed two principal errors in its analysis of Rule 23(b)(3)'s predominance requirement.  Each error satisfies both alternative grounds that this Court has established for review under Rule 23(f): it implicates "fundamental issue[s] of law relating to class actions" and rests on "manifest error."  *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 955 (9th Cir. 2005).

1.  The district court erred by treating BIPA's statutory injury requirement as a *common* issue rather than an *individualized* one.  BIPA requires a private plaintiff to prove he was "aggrieved by a violation of this Act."  740 ILCS 14/20.  The Illinois Appellate Court, three state trial courts, and two federal courts

2

have held that a plaintiff is *not* aggrieved "when the only injury he or she alleges is a violation" of BIPA's notice-and-consent provisions. *Rosenbach v. Six Flags Entm't Corp.*, __ N.E.3d __, 2017 IL App (2d) 170317, ¶ 15. The plaintiff must prove an "injury or adverse effect" *beyond* the alleged violation. *Id.* ¶ 23.

That requirement cannot be satisfied by common proof. Rather, it will turn on how (if at all) a particular class member was affected by the alleged collection of his biometric data—for example, whether it affected his emotions, reputation, or relationships. The need for an individualized showing of harm defeats predominance. *Comcast Corp. v. Behrend*, 569 U.S. 27, 30 (2013). Dismissing *Rosenbach* as a "non-binding data point," however, the district court held that plaintiffs could satisfy the aggrieved requirement by proving an unidentified, class-wide "injury to a privacy right"—not real-world harm specific to each class member. Op. 9. The court thereby deprived Facebook of the right to contest injury individually, committing manifest error on a fundamental Rule 23 principle.

2.    The district court circumvented another individualized question by failing to apply Illinois' extraterritoriality doctrine. It acknowledged that BIPA does not have extraterritorial effect, but held that any Illinois *resident* can invoke the statute regardless of where the alleged violation took place. Op. 12. Yet the Illinois courts have repeatedly rejected a test "based on the residency of the plaintiff"; a statute's application is domestic only when the circumstances relating

to the alleged violation occurred "primarily and substantially within" Illinois. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 182, 187 (2005).   Under Illinois law, a variety of factors beyond the plaintiff's residency are relevant to this determination, including where Facebook performs its facial-recognition analysis (always on its servers outside of Illinois); where it stores user templates (same); where a class member agreed to Facebook's policies (this factor will vary among class members); where his photo was taken and uploaded (likewise variable); where he was when the facial-recognition analysis was performed (variable); and where any injury occurred (variable).

When combined, the trial court's errors—in conflict with state and federal decisions—resulted in the certification of a class that could not be sustained on appeal.  This Court should intervene now rather than force the parties to litigate a multi-week, flawed trial with potentially billions of dollars at stake.

## QUESTIONS PRESENTED

1.     Whether Rule 23(b)(3)'s predominance requirement precludes class certification when the plaintiffs' claims are based on a state statutory cause of action that requires an individualized showing of actual injury.

2.     Whether the predominance requirement precludes class certification when a class member's ability to sue turns on whether the circumstances related to his individual claim occurred "primarily and substantially" in Illinois.

4

# BACKGROUND[1]

## A.    The Illinois Biometric Information Privacy Act

BIPA was enacted in 2008 to address the growing use of biometric technologies "in the business and security screening sectors" in Illinois.  740 ILCS 14/5(a).  The statute does not regulate *all* uses of biometric technology; it covers only six specified "biometric identifiers": "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," as well as information derived from one of these biometric identifiers and used to identify a person.  *Id.* 14/10.  A host of items—including both "photographs" and "information derived from" photographs—are expressly exempted from the statute's reach.  *Id.*  Entities that collect regulated data must obtain a written release and publish a retention policy.  *Id.* 14/15.  "Any person aggrieved by a violation of th[e] Act" may seek the greater of (1) actual damages or (2) liquidated damages of $1,000 for a negligent violation or $5,000 for a reckless or intentional violation.  *Id.* 14/20.

## B.    Facebook's Tag Suggestions Feature

Facebook provides a service that enables billions of people around the world to connect and share with their friends and family.  Since 2005, people have been able to upload and share photos on Facebook and, if they choose, "tag" the friends who appear in them.  A tag is text that appears on the photo with the friend's name;

---

[1]    "Dkt." refers to the district court docket, No. 15-cv-03747 (N.D. Cal.).

it links to his or her Facebook profile.  Facebook launched Tag Suggestions in 2010.   When a person uploads a photo, Facebook sometimes uses facial recognition to determine whether his Facebook friends appear in the photo (the feature applies only to friends, not everyone on Facebook); if so, Facebook gives him the option to tag those friends.  This process occurs, and users' templates are stored, on Facebook's servers outside Illinois.  Dkt. 257-9 ¶¶ 6, 11.

### C.   Facebook's Disclosures About Tag Suggestions

All Facebook users must agree to its terms and Data Policy.  The Data Policy explains that Tag Suggestions works by "comparing your friend's pictures to information [the template] we've put together from your profile pictures and the other pictures in which you've been tagged."  Dkt. 299-27.  The Data Policy also explains how users can turn the feature off (in which case any user template is deleted).  *Id.*  Many people like the feature; many have opted out.  Dkt. 299-41.

### D.   Plaintiffs' Complaints And Procedural History

Plaintiffs allege that they are Illinois residents with active Facebook accounts, and that Facebook violated BIPA by using facial-recognition software to obtain "scans of face geometry" from their photos without complying with BIPA's notice and consent provisions.  Dkt. 40 at 2-3.[2]  Facebook moved to dismiss,

---

[2]      A non-user of Facebook, Frederick Gullen, brought a separate action that was deemed related to this one.  On April 3, 2018, the district court granted

6

arguing that plaintiffs' claim was barred by (1) a California choice-of-law provision in Facebook's terms, and (2) BIPA's exception for "information derived from" photographs. Dkt. 69. The district court denied the motion. *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016). It held that plaintiffs had assented to the terms, but that the choice-of-law clause had to yield to Illinois' stronger interest in "the outcome of this BIPA dispute." *Id.* at 1166-70. The court then concluded that BIPA's term "'[p]hotographs' is better understood to mean paper prints of photographs, not digitized images." *Id.* at 1171.[3]

The court later denied Facebook's motion to dismiss for lack of Article III standing, stating that "the abrogation of the procedural rights mandated by BIPA necessarily amounts to a concrete injury" and no "real-world harm[]" is required. *Patel v. Facebook Inc.*, 2018 WL 1050154, at *4 (N.D. Cal. Feb. 26, 2018).

On April 16, the district court granted plaintiffs' motion for class certification. Op. 1 The parties' cross-motions for summary judgment will be heard on May 3, 2018, and trial is scheduled to begin on July 9, 2018.

---

summary judgment in Facebook's favor in that action. *Gullen v. Facebook*, 2018 WL 1609337 (N.D. Cal. Apr. 3, 2018).

[3]     Facebook maintains that both of these rulings were error. In conducting the choice-of-law analysis, the court failed to consider California's countervailing interest in encouraging innovation and its express decision *not* to regulate biometric technologies. *See* p. 18 *infra*. As to the photos exception: BIPA does not distinguish between digital and paper photos, and when the statute was passed in 2008, digital photography was already the norm.

**ARGUMENT**

**THE DISTRICT COURT COMMITTED TWO MANIFEST ERRORS ON FUNDAMENTAL QUESTIONS RELATED TO RULE 23(b)(3)'S PREDOMINANCE REQUIREMENT.**

Rule 23(f) review is "most appropriate" when either (1) "the certification presents an unsettled and fundamental issue of law relating to class actions" or (2) "the district court's . . . decision is manifestly erroneous." *Chamberlan*, 402 F.3d at 959. In holding that common issues predominate, the district court committed two manifest errors on fundamental questions of class action law.

## I. REVIEW IS WARRANTED BECAUSE BIPA'S STATUTORY INJURY REQUIREMENT DEFEATS PREDOMINANCE.

BIPA's statutory injury requirement—the limitation of the private right of action to a plaintiff "aggrieved by a violation of this Act"—defeats predominance. The Illinois Appellate Court, three state trial courts, and two federal courts have held that a plaintiff may satisfy this requirement only by making an inherently *individualized* showing of "actual injury" beyond the collection of his biometric data without notice and consent. Under Supreme Court and Circuit precedent, the need for a showing of individualized injury precludes class certification. The district court manifestly erred by treating BIPA's "aggrieved" requirement as a *common* issue that plaintiffs may satisfy by asserting a generic "injury to a privacy right" on a class-wide basis. For similar reasons, the court also erred by certifying a class that includes members who have not suffered an Article III injury-in-fact.

8

## A.    BIPA's "Aggrieved" Provision Requires A Showing Of Actual Injury Beyond The Alleged Statutory Violation.

The only Illinois appellate decision construing BIPA's aggrieved provision was issued last December.  Stacy Rosenbach alleged that her minor son went to the defendants' theme park without her and purchased a season pass, and that "his thumb was scanned into the Six Flags 'biometric data capture system.'" *Rosenbach*, 2017 IL App (2d) 170317, ¶¶ 1, 7.  She contended that the defendants violated BIPA by failing to provide her with notice or obtain her consent; that her son's "right to privacy" was "adversely affected"; and that "had she known of defendants' conduct, she would not have allowed [him] to purchase the pass."  *Id.* ¶¶ 1, 20.  The trial court certified the question of "whether an individual is an aggrieved person when *the only injury he or she alleges* is a violation of [BIPA] by a private entity that *collected his or her biometric identifiers* and/or biometric information without providing him or her the disclosures and obtaining the written consent required by [BIPA]" (*id.* ¶ 15)—*i.e.*, whether a violation of the statute's notice-and-consent provisions, standing alone, could support a claim.

The Appellate Court answered unanimously "in the negative."  *Id.* ¶ 30.  It held that "[i]f a person alleges only a technical violation of the Act *without alleging any injury or adverse effect*, then he or she is not aggrieved and may not recover."  *Id.* ¶ 28 (emphasis added).  "[I]f the Illinois legislature intended" otherwise, "it could have omitted the word 'aggrieved' and stated that every

9

violation was actionable." *Id.* ¶ 23  Ms. Rosenbach's contention that her child's "right to privacy . . . ha[d] been adversely affected" was insufficient, because she did not claim any resulting "actual injury, adverse effect, or harm." *Id.* ¶ 20.

Two federal courts had previously dismissed BIPA claims based in part on the plaintiffs' failure to "establish an injury due to a statutory violation." *Vigil v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 3d 499, 519 (S.D.N.Y. 2017), *aff'd in part, rev'd in part on other grounds*, 717 F. App'x 12 (2d Cir. 2017); *see McCollough v. Smarte Carte, Inc.*, 2016 WL 4077108, at *4 (N.D. Ill. Aug. 1, 2016).  More recently, three Illinois trial courts have dismissed BIPA cases under *Rosenbach*, one of which expressly rejected the plaintiff's contention that she had satisfied the "aggrieved" requirement by pleading "injury to a privacy right." *Rottner* Order at 2 (Ex. 1); *see Yeske* Order (Ex. 2); *Sekura* Order (Ex. 3).

### B. The District Court Manifestly Erred By Holding That The Aggrieved Provision Can Be Satisfied Through A Common Showing Of An Unidentified "Injury To A Privacy Right."

The district court nevertheless held that the aggrieved requirement did not defeat predominance.  Op. 12.  It appeared to recognize that a bare statutory violation is insufficient: a party is not aggrieved if "the only injury alleged . . . [is] a violation of [BIPA's] notice and consent requirements."  Op. 9 (quoting *Rosenbach*).  But the court determined that "*Rosenbach* would find that injury to a privacy right is enough to make a person aggrieved under BIPA," and "plaintiffs

10

here have sufficiently alleged that intangible injury."  Op. 9-10.  It then held that plaintiffs could attempt to prove this claimed injury on a *class-wide* basis.  Op. 10.

This reasoning is manifestly erroneous for two independent reasons: (1) proving an "injury to a privacy right" is *insufficient* under state law; and (2) proof of an "injury to a privacy right" necessarily is *individualized*.

### 1. Under Illinois Law, Proving A Generic "Injury To A Privacy Right" Is Insufficient.

The district court's reading of *Rosenbach* rested on a footnote saying that the plaintiff "did not allege in her complaint any harm or injury to a privacy right." Op. 9 (quoting *Rosenbach*, ¶ 20 n.1).  But Ms. Rosenbach *did* make that argument on appeal, and the Appellate Court (aware that she could amend her complaint) *rejected it on the merits*:  "Although plaintiff asserts . . . that Alexander's right to privacy is a 'personal right' or a 'legal right' that has been 'adversely affected,' . . . there must be an actual injury, adverse effect, or harm in order for the person to be 'aggrieved.'"  2017 IL App (2d) 170317, ¶ 20.  The district court did not address this language or *Rottner*'s holding that a BIPA complaint had to be dismissed even though it *did* plead an "injury to a privacy right."  *Rottner* Order at 2.

The district court also concluded that, '[t]o the extent *Rosenbach* might be read differently" (*i.e.*, to require real-world harm), it was merely "a non-binding data point for ascertaining Illinois law."  Op. 10.  Of course, intermediate state appellate decisions are more than "non-binding data points" for interpreting state

law; "federal courts are *bound* to follow [intermediate courts] unless there is convincing evidence that the state's highest court would reach a different conclusion." *Emery v. Clark*, 604 F.3d 1102, 1118 (9th Cir. 2010).

No such evidence exists. The district court noted, first, that "the Illinois legislature codified a right to privacy in personal biometric information." Op. 11. But there is a difference between codifying a right and permitting a private action to recover for violation of that right. By including the aggrieved provision, the legislature made clear that a plaintiff may *sue* only when he suffers real-world harm—as the Illinois courts have held.

The district court also cited a 1943 case involving a *different* statute "for the proposition that, under Illinois law, an individual is 'aggrieved' when 'a legal right is invaded by the act complained of.'" Op. 11 (quoting *Am. Sur. Co. v. Jones*, 384 Ill. 222, 229-30 (1943)). In *Jones*, foreign insurance companies challenged the Illinois' Director of Insurance's decision to allow a domestic insurance company to operate in Illinois, invoking a statute that specified the venue in which a company that "is aggrieved" could contest such a decision. 384 Ill. at 224, 227-28. The Illinois Supreme Court held that "'[a]ggrieved' means having a substantial grievance" and that the plaintiffs were not "aggrieved" because they were not *parties* to the administrative order—a status *necessary* but not *sufficient* to qualify as "aggrieved." *Id.* at 229-30. Every Supreme Court decision that has cited *Jones*

12

has held that "aggrieved" *limits* the category of people who may bring suit.[4]  *Jones* has never been cited for the proposition that a party can be "aggrieved" without suffering real-world harm.  Most fundamentally, *Jones confirms* the real-world harm requirement: because the plaintiffs were not parties to the proceeding, they could not have been "aggrieved" by—suffered real harm from—the decision.[5]

### 2.    Proof Of An "Injury To A Privacy Right" Is Necessarily Individualized.

Even if BIPA's "aggrieved" requirement could be satisfied by an "injury to a privacy right," the district court did not explain how plaintiffs could *prove* that injury on a *class-wide* basis through common evidence.  They cannot.

"[T]o meet the predominance requirement," a plaintiff must "show [ ] that the existence of individual injury resulting from [an alleged statutory violation is] capable of proof at trial through evidence that [is] *common to the class rather than individual to its members*."  *Comcast*, 569 U.S. at 30 (emphasis added).  But "invasion of privacy claims require highly individualized determinations of fact

---

[4]    *See Northtown Bank of Decatur v. Becker*, 202 N.E.2d 540, 543 (1964); *N. Fed. Sav. & Loan Ass'n v. Becker*, 182 N.E.2d 155, 156 (1962); *Winger v. Chi. City Bank & Tr. Co.*, 67 N.E.2d 265, 272 (1946); *Gibbons v. Cannaven*, 66 N.E.2d 370, 372 (1946); *People ex rel. Benefit Ass'n v. Miner*, 56 N.E.2d 353, 356 (1944).

[5]    Illinois is not alone in its interpretation of the term "aggrieved."  This month, the Supreme Court of New Jersey held that under a state statute providing a cause of action to an "aggrieved consumer," a plaintiff who "suffers no monetary or other harm as a result of [ ] noncompliance" is not "entitled to a remedy."  *Spade v. Select Comfort Corp.*, __ A.3d __, 2018 WL 1790394, at *3 (N.J. Apr. 16, 2018).

and law that make class certification under Rule 23(b)(3) inappropriate." *Murray v. Fin. Visions, Inc.*, 2008 WL 4850328, at *5 (D. Ariz. Nov. 7, 2008); *see, e.g.*, *Campbell v. Facebook, Inc.*, 315 F.R.D. 250, 268 (N.D. Cal. 2016) (denying Rule 23(b)(3) class because "the extent of any intrusion into the plaintiff's privacy would depend on [ ] facts" specific to a "given class member").

Many class members may not believe their privacy has been invaded; they may like Tag Suggestions or may not care about it. ███████████████

████████████████████████████████████████

███████████████████████████████████████ Plaintiffs' counsel conceded that no plaintiff "know[s] if any consequential harm resulted" from Tag Suggestions: "We haven't found that it happened." Dkt. 299-2 at 8-9.

If other class members do claim a privacy injury, the allegations will vary, and Facebook will be entitled to probe their legal sufficiency and credibility. If a class member alleges that his privacy was invaded, but concedes that Facebook's disclosures clearly explained what Facebook was doing with his data and how to opt out, a fact-finder could reasonably determine that he suffered no privacy harm. *See Gulec v. Boeing Co.*, 698 F. App'x 372, 373 (9th Cir. 2017) (dismissing "invasion of privacy claim . . . in light of [plaintiff's] consent to the phone interviews."). ████████████████████████████████████████

████████████████████████████████████

That is why this Court denies class certification where a statute requires a showing of harm beyond the violation.  In *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011), the plaintiffs claimed that the defendants "induced numerous individuals to unwittingly sign up for a fee-based rewards program."  *Id.* at 1016. The statute required them to show that the deceptive conduct "caused them harm." *Id.* at 1022.  Because no *inference* of harm applied to the class, and there were "myriad reasons" why someone "who was not misled" might have "intentionally signed up" for the program, "the class could not be certified."  *Id.* at 1024.

So too here:  There are "myriad reasons" why a fully-informed person would "intentionally" choose to participate in Tag Suggestions.  Even if a class member claims a privacy harm—and again, there is no basis to conclude that *every* one will—he will have to *prove* that harm on an individualized basis before he can recover.  The district court's contrary decision was manifest error.

### C.   For Related Reasons, Class Certification Is Improper Because Most Class Members Lack Article III Standing.

To the extent the district court's class certification order is interpreted to hold that proof of a statutory violation by itself constitutes an "invasion of privacy" satisfying the "aggrieved" requirement, certification of the class was improper because the court failed to recognize that individualized determinations are required to weed out class members who lack Article III standing.  Taken together, (1) the court's ruling on Facebook's motion to dismiss under Article III and (2) an

interpretation of "aggrieved" that requires no individualized showing of actual harm would mean that there will be members of the class who cannot satisfy the minimum constitutional requirement set forth in *Spokeo v. Robins*, 136 S. Ct. 1540, 1549-50 (2016): a showing of "concrete injury even in the context of a statutory violation."  Under Circuit law, "no class may be certified that contains members lacking Article III standing."  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012); *see also Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017) (initial opinion based finding of Article III standing on statutory violation alone; amended opinion found standing based only on individualized allegation of actual harm—that the plaintiff would not have authorized the credit check "had [the waiver notice] contained a sufficiently clear disclosure, as required in the statute").

## II.   REVIEW IS WARRANTED BECAUSE EACH CLASS MEMBER'S OBLIGATION TO PROVE THAT HIS ALLEGED CLAIM IS DOMESTIC DEFEATS PREDOMINANCE.

The district court committed a second manifest error in applying the Illinois law principle that bars extraterritorial application of Illinois statutes.  The individualized proof required by that rule defeats predominance.

### A.   The District Court Manifestly Erred In Holding That Residency Alone Is Sufficient To Make The Application Of BIPA Domestic.

The district court correctly recognized that "BIPA does not have extraterritorial reach."  Op. 12.  To invoke BIPA, a plaintiff must prove that the alleged violation took place "primarily and substantially" in Illinois: "the majority

16

of circumstances related to the alleged violation" must occur in that State.  *Landau v. CNA Fin. Corp.*, 381 Ill. App. 3d 61, 63-65 (2008).  If a "necessary element of liability did not take place in Illinois," *Graham v. Gen. U.S. Grant Post*, 43 Ill. 2d 1, 4 (1969), the plaintiff has "no cause of action," *Avery*, 216 Ill. 2d at 190.

The district court found that this test did not present an individualized issue: "this case is deeply rooted in Illinois" because "[t]he named plaintiffs are located in Illinois along with all of the proposed class members."  Op. 12.[6]  But Illinois courts have expressly *rejected* a residence-based extraterritoriality test.   In *Graham*, the Illinois Supreme Court dismissed a suit under the Dram Shop Act based on injuries from a drunk-driving accident.  43 Ill. 2d at 2.  The plaintiff, the drunk driver, and the defendant liquor stores were *all* "residents of Illinois."  *Id.*  Because "the automobile accident"—a "necessary element of liability"—"occurred in Wisconsin," the statute did not apply.  *Id.* at 2, 4.  The Supreme Court confirmed in *Avery* that the test is *not* "based on the residency of the plaintiff" but on whether the facts related to the alleged violation "occur primarily and substantially within" Illinois.  216 Ill. 2d at 182, 186.  The district court did not mention *Graham*, the quoted portion of *Avery*, or the host of other decisions Facebook cited.[7]

---

[6]     The court also asserted that this case involves "use of Facebook mainly in Illinois" (Op. 12), but there is no evidence to support that assertion.

[7]     *See Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (dismissing class action alleging that plaintiffs were residents who

Compounding its error, the court found it relevant that this case is "governed by Illinois law pursuant to California choice of law principles."  Op. 12.  But extraterritoriality is a *substantive state law doctrine*, not a question "of conflict or choice of laws."  *Graham*, 43 Ill. 2d at 5-6.  Precisely *because* the court held that Illinois law applies, it had to apply *that* state's extraterritoriality doctrine and give effect to the legislature's policy decision to restrict BIPA to conduct in Illinois.  *Id.* at 7 ("[W]hether [a statute] should be given extraterritorial effect is a question of policy . . . uniquely one for the legislature, not the courts, to ponder and decide.").

### B.    The Extraterritoriality Doctrine Defeats Predominance.

Properly applied, the extraterritoriality doctrine precludes class treatment. Each class member may claim a different Illinois connection beyond his own residency:  One may contend that he was in Illinois when he signed up for Facebook, or when his template was created.  Another may claim that a photo of him was taken in Illinois and uploaded to Facebook from Illinois, or that he was in

---

conducted business in Illinois because they failed to allege "that the purported deceptive . . . scheme occurred primarily and substantially in Illinois"); *Valley Air Serv. v. Southaire, Inc.*, 2009 WL 1033556, at *12 (N.D. Ill. Apr. 16, 2009) (*Avery* considered residency test but "went on to adopt an entirely different test"; dismissing claim by "Illinois citizen" who "communicated with [the defendant] from Illinois" and "felt injury in Illinois," because the circumstances "at the heart of the claim" "occurred in Arkansas"); *Hackett v. BMW of N. Am., LLC*, 2011 WL 2647991, at *2 (N.D. Ill. June 30, 2011) (dismissing resident's fraud claim even though injury took place in Illinois; "fraudulent conduct" took place elsewhere).

Illinois when these events occurred, or that he was injured in Illinois.[8]  Any of these connections would have to be balanced against the undisputed fact that the facial recognition process and storage of templates take place on Facebook's out-of-state servers.  *See Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1102 (N.D. Ill. 2017) (in BIPA case, extraterritoriality turns on multiple factors, including residency, location of upload, and where "the alleged scans actually take place").

Indeed, as the district court acknowledged, "the claims of some class members may only be peripherally related to Illinois."  Op. 14.[9]  A class member may have moved to Illinois only recently, or was traveling elsewhere at the time of the sign-up, upload, facial-recognition analysis, or alleged injury.  In the dismissed non-user case (*see* n.2 *supra*), the court granted summary judgment to Facebook because the only Facebook photo of the Illinois-resident plaintiff that had been subjected to any part of the facial-recognition process was taken in Pennsylvania and uploaded from Michigan.  *Gullen v. Facebook*, 2018 WL 1609337, at *1 (N.D. Cal. Apr. 3, 2018).[10]  There are no doubt many similar users.

Courts—including *Avery*—have commonly concluded that a class should

---

[8]    Notably, the district court rejected plaintiffs' proposed class definition that depended on an Illinois upload.  Op. 4-5.

[9]    Accordingly, Facebook preserves its position that, even under the district court's erroneous class-certification order, each plaintiff will need to show on an individualized basis that his claim is sufficiently connected to Illinois.

[10]    Facebook does not create templates for people who do not use Facebook.

not be certified where there are distinctions in the abilities of putative class members to invoke a state statute.[11]  Because the district court started with the flawed premise that residency is enough, it failed to analyze the implications of the extraterritoriality doctrine for Rule 23(b)(3).

The district court's ruling has serious practical consequences for Facebook and numerous other Internet-based companies that apply facial-recognition technology to photos.  Illinois is one of only three states that regulates biometric technology; the other two have no private right of action; and California (where Facebook is headquartered) has *considered and rejected* a law that would have regulated "facial recognition technology."  Cal. Sen. Bill No. 169 (July 5, 2001).  Several putative class actions have been filed against Internet companies under BIPA.  By holding that an Illinois resident can invoke an Illinois statute regardless of where the defendant's conduct or the plaintiff's injury took place, and certifying a class of millions of people seeking billions of dollars, the decision below permits one state's statute to override the decisions of 47 others to stay out of this area.

## CONCLUSION

This Court should grant the petition for leave to appeal.

---

[11]  *Avery*, 216 Ill. 2d at 190 (reversing certification of nationwide class that included "members whose [insurance] claims proceedings took place outside of Illinois"); *see also Cruz v. Lawson Software, Inc.*, 2010 WL 890038, at *9 (D. Minn. Jan. 5, 2010) (no certification where statute did "not apply extraterritorially and an individualized inquiry into each putative class member would be necessary to determine whether the [statute] could be applied").

Respectfully submitted,

/s/ Lauren R. Goldman

Lauren R. Goldman
Andrew J. Pincus
Michael Rayfield
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
lrgoldman@mayerbrown.com
apincus@mayerbrown.com
mrayfield@mayerbrown.com

John Nadolenco
MAYER BROWN LLP
350 South Grand Avenue
Los Angeles, CA 90071
(213) 229-9500
jnadolenco@mayerbrown.com

*Counsel for Defendant-Petitioner*

Dated: April 30, 2018

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25, I hereby certify that the foregoing Petition for Leave to Appeal a Class Certification Order Under Rule 23(f) and the accompanying exhibits will be sent by overnight delivery service on May 1, 2018 to plaintiffs' counsel of record listed in the attached service list.  A courtesy copy will also be sent to plaintiffs' counsel via electronic mail on May 1, 2018.

Dated: April 30, 2018                    /s/ *Lauren R. Goldman*

Lauren Goldman, MAYER BROWN LLP

**SERVICE LIST**

Paul J. Geller
Mark Dearman
Stuart A. Davidson
ROBBINS GELLER RUDMAN
& DOWD LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com
sdavidson@rgrdlaw.com

Frank A. Richter
James E. Barz
ROBBINS GELLER RUDMAN
& DOWD LLP
200 S. Wacker, Suite 3100
Chicago, IL 60606
frichter@rgrdlaw.com
jbarz@rgrdlaw.com

Shawn A. Williams
ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery Center, Suite 1800
San Francisco, CA 94104
shawnw@rgrdlaw.com

Corban S. Rhodes
Joel H. Berstein
Ross M. Kamhi
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
crhodes@labaton.com
jbernstein@labaton.com
rkamhi@labaton.com

Jay Edelson
J. Dominick Larry
EDELSON P.C.
350 N. LaSalle Street,13th Floor
Chicago, IL 60654
jedelson@edelson.com
nlarry@edelson.com

Rafey S. Balabanian
Lily Hough
EDELSON P.C.
123 Townsend Street, Suite 100
San Francisco, CA 94107
rbalabanian@edelson.com
lhough@edelson.com

**Form 8.**     **Certificate of Compliance Pursuant to 9th Circuit Rules 28.1-1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** _____

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28.1-1.
The brief is [        ] words or [        ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is [5,067] words or [        ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [        ] words or [        ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [        ]
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [        ]
words or [        ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2
(a) and is [        ] words or [        ] pages, excluding the portions exempted by Fed. R. App. P. 32
(f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2
(c)(2) or (3) and is [        ] words or [        ] pages, excluding the portions exempted by Fed. R.
App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and
(6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is [        ] words or [        ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or
Unrepresented Litigant    [/s/Lauren R. Goldman]          Date [Apr 30, 2018]

("s/" plus typed name is acceptable for electronically-filed documents)

*(Rev.12/1/16)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FACEBOOK BIOMETRIC INFORMATION PRIVACY LITIGATION | Case No. 3:15-cv-03747-JD |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **ORDER RE CLASS CERTIFICATION** <br> Re: Dkt. No. 255 |

In this privacy action against defendant Facebook, Inc. ("Facebook"), named plaintiffs Nimesh Patel, Adam Pezen, and Carlo Licata move for class certification. Dkt. No. 255. Plaintiffs' claims are sufficiently cohesive to allow for a fair and efficient resolution on a class basis. Consequently, the case will proceed with a class consisting of Facebook users located in Illinois for whom Facebook created and stored a face template after June 7, 2011.

## BACKGROUND

The material facts of this case are reported in a number of prior orders. *See, e.g.*, *Patel v. Facebook Inc.*, __ F. Supp. 3d. __, No. 3:15-cv-03747-JD, 2018 WL 1050154, at *1 (N.D. Cal. Feb. 26, 2018) ["*Spokeo* order"]. Briefly summarized, plaintiffs are Facebook users who challenge its "Tag Suggestions" program, which scans for and identifies people in uploaded photographs to promote user tagging. Plaintiffs allege that Facebook collects and stores their biometric data without prior notice or consent in violation of their privacy rights and Sections 15(a) and 15(b) of the Illinois Biometric Information Privacy Act, 740 Ill. Comp. Stat. 14/1 *et seq.* ("BIPA"). Dkt. No. 40.

The salient facts for class certification are undisputed. Facebook launched Tag Suggestions on June 7, 2011. Dkt. No. 255 at 2. In broad strokes, Tag Suggestions is powered by

a four-step facial recognition process. Initially, the software tries to detect faces (the "detection" step) and standardizes any detected faces for qualities like orientation and size (the "alignment step"). Dkt. No. 256-8 ¶¶ 13-17. For each face that is detected and aligned, Facebook computes a "face signature," which is a "string of numbers that represents a particular image of a face" (the "representation" step). *Id.* ¶ 18. Face signatures are then run through a stored database of user "face templates" to look for matches (the "classification" step). *Id.* ¶¶ 21-23. A face template is "a string of numbers that represents a boundary" between the face signatures of a given Facebook user and the face signatures of others, and is calculated based on that user's photographs. *Id.* If a computed face signature falls within the boundary described by a user's face template, Facebook suggests tagging the user. *See* Dkt. No. 284-20 at 37. Facebook represents, with no challenge from plaintiffs, that face signatures are not stored. Dkt. No. 256-8 ¶ 20. Only face templates are kept by Facebook.

Facebook's facial recognition technology is reliable but not foolproof. Facebook estimates that 90% of faces appearing in photographs are successfully detected, and of those detected faces, 85% are successfully aligned. Dkt. No. 284-9 ¶¶ 5-6. That means approximately 76% of faces appearing in photographs reach the representation step and have face signatures computed. Facebook states that in 2014, it was able to match around 67% of detected faces with users, which somewhat understates current matches because the rate has risen as the technology has matured. *Id.* ¶¶ 8-9.

Plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(3) and propose a class of all "Facebook users living in Illinois whose face appeared in a photo uploaded to Facebook from Illinois between June 7, 2011, and the final disposition of this action." Dkt. No. 255 at 5. Plaintiffs also propose an alternative class of all "people living in Illinois for whom Facebook has a stored 'face template' that was created between June 7, 2011, and final disposition of this action." *Id.*

## LEGAL STANDARDS

As the parties seeking certification, plaintiffs bear the burden of showing that the requirements of Federal Rule of Civil Procedure 23 are met. *Mazza v. Am. Honda Motor Co.*, 666

2

1   F.3d 581, 588 (9th Cir. 2012).  The proposed class action must satisfy all four requirements of

2   Rule 23(a), and at least one of the sub-sections of Rule 23(b).  *Comcast Corp. v. Behrend*, 569

3   U.S. 27, 33 (2013); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001),

4   *amended by* 273 F.3d 1266 (9th Cir. 2001).

5   Rule 23(a) imposes four prerequisites.  The class must be "so numerous that joinder of all

6   members is impracticable" (numerosity).  There must be "questions of law or fact common to the

7   class" (commonality).  The claims or defenses of the named plaintiffs must be "typical of the

8   claims or defenses of the class" (typicality).  And the named parties must show that they "will

9   fairly and adequately protect the interests of the class" (adequacy).  Fed. R. Civ. P. 23(a)(1)-(4).

10  To obtain a Rule 23(b)(3) class, plaintiffs must also must show that "questions of law or

11  fact common to class members predominate over any questions affecting only individual

12  members" (predominance) and that a class action is "superior to other available methods for fairly

13  and efficiently adjudicating the controversy" (superiority).  Fed. R. Civ. P. 23(b)(3).

14  The Court's "class-certification analysis must be rigorous and may entail some overlap

15  with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Connecticut Ret. Plans & Trust*

16  *Funds*, 568 U.S. 455, 465-66 (2013) (internal quotations and citations omitted).  "That is so

17  because the class determination generally involves considerations that are enmeshed in the factual

18  and legal issues comprising the plaintiff's cause of action." *Comcast*, 569 U.S. at 33-34 (internal

19  quotations and citations omitted).  These principles apply to the Rule 23(a) and 23(b) analysis

20  alike. *Id.* at 34.

21  The rigorous analysis, however, has its limits.  "Rule 23 grants courts no license to engage

22  in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to

23  the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23

24  prerequisites for class certification are satisfied." *Amgen*, 586 U.S. at 466.  The class certification

25  procedure is decidedly not an alternative form of summary judgment or an occasion to hold a

26  mini-trial on the merits. *Alcantar v. Hobart Service*, 800 F.3d 1047, 1053 (9th Cir. 2015).  The

27  goal under Rule 23 is "to select the metho[d] best suited to adjudication of the controversy fairly

28  and efficiently." *Amgen*, 568 U.S. at 460 (internal quotations omitted) (modification in original).

United States District Court
Northern District of California

3

That means deciding whether efficiency and the interests of justice are best served by having the named plaintiffs go forward to the merits as individuals or on behalf of a class as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)). *See generally Brickman v. Fitbit, Inc.*, No. 3:15-CV-02077-JD, 2017 WL 5569827, at *2-3 (N.D. Cal. Nov. 20, 2017).

The decision of whether to certify a class is entrusted to the sound discretion of the district court. *Zinser*, 253 F.3d at 1186.

## DISCUSSION

### I.       The Initial Proposed Class

Plaintiffs initially propose a class consisting of all Illinois Facebook users appearing in a photograph uploaded to Facebook. This broad definition is not viable because it poses insurmountable problems with superiority and manageability, commonality, predominance, and is not "reasonably co-extensive with Plaintiffs' chosen theory of liability." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136-37 (9th Cir. 2016).

Simply appearing in an uploaded photograph does not necessarily mean that a face signature or template was collected or stored, or that any biometric data was harvested. As plaintiffs acknowledge, Facebook "locates certain landmarks on the face and uses that data to create a three-dimensional map of the face" only after the initial steps of detection and alignment are successfully completed. Dkt. No. 255 at 3. Unique physical characteristics are not involved in the detection step, which is about locating all faces rather than a specific face. The detection and alignment steps fail for approximately 24% of faces appearing in photographs. *See* Dkt. No. 284-9 ¶¶ 5-6. The uncertainty generated by this match failure rate is compounded by evidence in the record, which plaintiffs do not contest, that Facebook cannot reliably determine whether a face signature was ever computed from a particular photograph, *id.* ¶¶ 11-12, and that face signatures are not stored, Dkt. No. 256-8 ¶ 20. The record also shows that at times during the proposed class period, the software did not consistently compute face signatures from a given photograph. *See* Dkt. No. 284-9 ¶ 12.

4

United States District Court
Northern District of California

United States District Court
Northern District of California

1    These uncontested facts establish that uploading a photo did not necessarily result in the

2    collection of biometric data.  Consequently, a class defined by uploaded photographs is too

3    amorphous and potentially over-inclusive to be certified.  *See Torres*, 835 F.3d at 1139; *Lozano v.*

4    *AT & T Wireless Servs., Inc.*, 504 F.3d 718, 730 (9th Cir. 2007).  Plaintiffs suggest that a vigorous

5    claims process can fix these problems, but that only pushes them down the road to a later stage.

6    Facebook will have no greater ability to resolve these uncertainties at the verification stage than at

7    this definitional one.  Plaintiffs' citations to claims procedure cases are inapposite for this reason.

8    *See, e.g.*, *In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*, 795 F.3d 380, 397 (3d

9    Cir. 2015) (defendant already possessed all relevant records and identification method was reliable

10   and repeatable).

11   Plaintiffs also suggest that they can obtain certification on the theory that users with

12   multiple photos posted on Facebook are likely to have had at least one processed in the

13   representation or classification steps, where biometric data is collected.  Dkt. No. 292 at 7.  That

14   too is inherently imprecise, and plaintiffs do not offer any statistical or other methods that might

15   translate this presumed likelihood into a reasonably certain class definition.

16   **II.    The Certified Class**

17   Plaintiffs' alternative proposal is tied to face templates, and with a minor modification it

18   provides a sound basis for certification.  A class comprised of Facebook users located in Illinois

19   for whom Facebook created and stored a face template after June 7, 2011, satisfies Rule 23's

20   requirements and neutralizes most of Facebook's objections, which go mainly to problems caused

21   by the use of face signatures to define the class.  This definition modestly refines plaintiffs'

22   alternative class proposal, and will be used for the remaining Rule 23 analysis.  *See Armstrong v.*

23   *Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001) ("district court may redefine the class") (citing *Penk*

24   *v. Oregon State Bd. of Higher Educ.*, 816 F.2d 458, 467 (9th Cir. 1987)), *abrogated on other*

25   *grounds by Johnson v. California*, 543 U.S. 499 (2005).

26   **A.  Numerosity, Adequacy, and Typicality**

27   The numerosity, adequacy, and typicality requirements in Rule 23(a) are readily satisfied

28   for a template-based class of Illinois users.  Plaintiffs reasonably estimate that millions of Illinois

5

United States District Court
Northern District of California

1    residents are Facebook users, many of whom have been tagged in enough photographs to have

2    face templates. Dkt. No. 255 at 6. Plaintiffs' arguments are uncontested by Facebook, and

3    numerosity is established.

4        Adequacy is also not an issue. Neither named plaintiffs nor their counsel have an apparent

5    conflict of interest with other class members, and the hard-fought proceedings in this case amply

6    establish that they will "prosecute the action vigorously on behalf of the class." *Hanlon v.*

7    *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Facebook says adequacy cannot be found

8    because the named plaintiffs "know almost nothing" about their case or claims, but that goes too

9    far. Dkt. No. 285 at 24. The deposition testimony by the named plaintiffs shows a perfectly

10   adequate understanding of the case, and it clearly manifests their concerns about Facebook's

11   treatment of personal biometric data. *See, e.g.*, Dkt. Nos. 255-5; 255-6; 284-23; 284-24; 284-25.

12   This is not a situation where the named plaintiffs "are startlingly unfamiliar with the case."

13   *Dufour v. Be LLC*, 291 F.R.D. 413, 419 (N.D. Cal. 2013) (internal quotations omitted). In any

14   event, objections to adequacy based on a named representative's alleged ignorance are disfavored.

15   *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-74 (1966). Even if the named plaintiffs

16   have relied heavily on the advice of attorneys and others, it is hardly a badge of inadequacy to

17   seek help from those with relevant expertise, particularly in a complex case like this one. *Baffa v.*

18   *Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 62 (2d Cir. 2000).

19        There is no serious doubt that typicality is satisfied, too. Named plaintiffs are Illinois

20   Facebook users with face templates suing under Illinois law on behalf of fellow users in Illinois.

21   That is enough to "assure that the interest of the named representative aligns with the interests of

22   the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Typicality may be a

23   bar to certification if other members would suffer because the named plaintiffs would be

24   "preoccupied with defenses unique to" them. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th

25   Cir. 2017) (quoting *Hanon*, 976 F.2d at 508). That is not the situation here. Facebook has not

26   shown that named plaintiffs would be preoccupied with unique defenses, or are in any way

27   atypical with respect to the overall class.

28

**B. Commonality and Predominance**

The main thrust of Facebook's non-technical objections to certification go to the somewhat overlapping factors of commonality under Rule 23(a)(2) and predominance under Rule 23(b)(3). These inquiries go to the heart of whether adjudication of the claims on a class basis would be fair, efficient and superior to individual prosecution.

The commonality requirement is satisfied when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Because any competently crafted class complaint literally raises common questions," the Court's task is to look for a common contention "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Alcantar*, 800 F.3d at 1052 (internal quotations and citations omitted). What matters is the "capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal quotations omitted) (emphasis in original).

Rule 23(a)(2) does not demand total uniformity across a class. "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019. Rule 23(a)(2) imposes a "'rigorous' commonality standard." *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).

Rule 23(b)(3) requires that common questions of law or fact predominate over individual ones. The predominance inquiry asks whether "common questions present a significant aspect of the case and [if] they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022 (internal quotations omitted); *see also Tyson Foods v. Bouaphakeo*, __ U.S. __, 136 S.Ct. 1036, 1045 (2016). Each element of a claim need not be susceptible to classwide proof, *Amgen*, 568 U.S. at 468-69, and the "important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres*, 835 F.3d at 1134. Rule 23(b)(3) permits certification when "one or more of the central issues in the action are common to the class and can be said to predominate, . . . even though other important matters

7

will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson*, 136 S. Ct. at 1045 (internal quotations omitted).

As the Court has discussed in other decisions, the line separating the commonality inquiry under Rule 23(a)(2) and the predominance assessment under Rule 23(b)(3) can be elusive. *See Ochoa v. McDonald's Corp.*, Case No. 14-cv-02098 JD, 2016 WL 3648550, at *5-6 (N.D. Cal. July 7, 2016). *Wal-Mart* emphasized the commonality inquiry, but the Supreme Court has also advised that "[i]f anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast*, 569 U.S. at 34. Whatever the precise demarcation might be between the two inquiries, it is clear that commonality alone will not fulfill Rule 23(b)(3), and that the main concern under subsection (b)(3) "is the balance between individual and common issues." *In re Hyundai and Kia Fuel Economy Litigation*, 881 F.3d 679, 691 (9th Cir. 2018) (internal quotations omitted); *see also Tyson*, 136 S.Ct. at 1045 (purpose of the Rule 23(b)(3) inquiry is to determine whether the proposed class is "sufficiently cohesive to warrant adjudication by representation") (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). As a practical matter, commonality and predominance can be assessed in tandem, with a careful eye toward ensuring that the specific requirements of each are fully satisfied. *See, e.g.*, *Just Film*, 847 F.3d at 1120-21.

As an initial matter, there is no doubt that a template-based class poses common legal and factual questions, namely: did Facebook's facial recognition technology harvest biometric identifiers as contemplated under BIPA, and if so, did Facebook give users prior notice of these practices and obtain their consent? Facebook agrees that these questions reach the entire class, Dkt. No. 285 at 9, but challenges whether common answers will predominate. Specifically, Facebook contends that three issues can be resolved only by individualized evidence of: (1) whether a class member is "aggrieved" as that word is used in BIPA, which grants a private right of action only to "persons aggrieved" under it; (2) whether a class member's claims fall within BIPA's territorial scope; and (3) whether a class member was depicted in photographs derived from "paper photos . . . converted to digital form before upload." *Id.*

Facebook puts greatest emphasis on its argument about the meaning of "aggrieved." It relies almost exclusively on *Rosenbach v. Six Flags Entertainment Corporation*, 2017 IL App (2d)

8

170317 (Ill. App. Ct. 2017), a currently unpublished opinion by an intermediate court of appeals in Illinois. The BIPA claim in *Rosenbach* arose out of the practice by the defendant amusement parks of fingerprinting season pass holders so that thumb scans could speed up entry into the park. The parks collected a minor's thumbprint when he purchased a pass, and his mother subsequently objected under BIPA that the parks had not provided prior notice or obtained consent. She sued on those grounds. The trial court initially denied defendants' motion to dismiss but certified questions about the meaning of "aggrieved" to the appellate court. *Rosenbach* is the intermediate court's response to the certified questions.

As a threshold matter, *Rosenbach* does not bear the heavy weight Facebook seeks to place on it. Facebook heatedly insists that *Rosenbach* interpreted "aggrieved" to require injury or harm "*beyond* the alleged statutory violation." Dkt. No. 285 at 1 (emphasis in original). But the opinion is far less pertinent or definitive than Facebook contends, and a fair reading suggests that the *Rosenbach* court would have reached the opposite conclusion had the allegations in this case been before it. *Rosenbach* states on several occasions that the plaintiff in that case -- the mother of the minor fingerprinted by the amusement park defendants -- did not allege that she or her son "suffered any actual injury." *See, e.g.*, *Rosenbach*, 2017 IL App (2d) 170317, ¶ 10 ("Plaintiff alleged not that she or Alexander suffered any actual injury, but that, had she known of defendants' conduct, 'she never would have purchased a season pass for her son.'"). Instead, "the only injury alleged" by the plaintiff was "a violation of the notice and consent requirements of section 15(b) of the Act," and her argument was that "a mere technical violation of the Act is sufficient to render a party 'aggrieved.'" *Id*. ¶ 18. Critically, the *Rosenbach* court expressly observed that "Plaintiff did not allege in her complaint any harm or injury to a privacy right," *id*. ¶ 20 n.1, and underscored that the "injury or adverse effect need not be pecuniary" to qualify a person as "aggrieved" under BIPA. *Id*. ¶ 28. Facebook glosses over these essential parts of *Rosenbach* to say it demands some undefined "actual" harm beyond injury to a privacy right, but the better reading is *Rosenbach* would find that injury to a privacy right is enough to make a person aggrieved under BIPA. As the Court has already found, there is no question that plaintiffs

9

here have sufficiently alleged that intangible injury. *See, e.g.*, Dkt. No. 40 ¶ 17 (Facebook "continues to violate millions of Illinois residents' legal privacy rights"); *id.* ¶ 31.

This is enough to overcome Facebook's objections based on its interpretation of *Rosenbach*. To the extent *Rosenbach* might be read differently, the Court would part company with it. To be sure, principles of comity and federalism counsel that federal courts should not lightly disregard state court interpretations of state law. But as an intermediate court opinion, *Rosenbach* is a non-binding data point for ascertaining Illinois law, and if "other persuasive data" convinces the Court that the Illinois Supreme Court would decide otherwise, the Court need not follow it. *Am. Tower Corp. v. City of San Diego*, 763 F.3d 1035, 1047 (9th Cir. 2014); *Klein v. United States*, 537 F.3d 1027, 1032 (9th Cir. 2008).

A considerable amount of "persuasive data" would indeed call into serious doubt an intermediate court decision holding that BIPA requires "actual" injury beyond an invasion of privacy. First and foremost is the plain language of BIPA itself. As the Illinois Supreme Court has held, the "cardinal rule in interpreting a statute is to give effect to the intent of the legislature." *People v. Fort*, 88 N.E.3d 718, 723 (Ill. 2017) (internal citation omitted). The legislature's intent is best determined from the language of the statute itself, which should be read as a whole to determine "its nature, its object and the consequences that would result from construing it one way or the other." *Id.* at 723-724 (internal quotations omitted); *see also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33 (2000) ("fundamental canon of statutory construction" to define words in reference to "context" and "overall statutory scheme") (quoting *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989)).

These well-established canons of interpretation are crucial here, because a plain of reading of BIPA "leave[s] little question that the Illinois legislature codified a right of privacy in personal biometric information" rooted in "a long tradition of claims actionable in privacy law" and extending to control over one's data, independent of disclosure or misuse risks. *Patel*, 2018 WL 1050154, at *4. This intent cannot be squared with a construction of "aggrieved" that requires some other "actual" injury, whatever that might be, particularly when deprivation of BIPA's notice and consent requirements amounts to the "precise harm the Illinois legislature sought to

10

prevent." *Id.* Such a holding would be all the more questionable because the Illinois legislature clearly knows how to condition a cause of action on actual injury simply by saying so in the statute. *See, e.g.*, 815 Ill. Comp. Stat. Ann. 505/10a (Illinois Consumer Fraud and Deceptive Business Practices Act) (private right of action limited to person who suffers "actual" damage). The legislature did not choose to say so in BIPA, and that choice must be given weight.

This statutory analysis would be enough on its own to turn away Facebook's characterization of *Rosenbach*. *See Am. Tower*, 763 F.3d at 1047 (text of statute alone is persuasive data). Express precedent from the Illinois Supreme Court is another point of persuasive data against it. The Illinois high court has determined that "aggrieved" parties under an Illinois statute are those with a "direct, immediate and substantial interest rather than a speculative, theoretical, inconsequential or remote interest." *Am. Sur. Co. v. Jones*, 384 Ill. 222, 230 (Ill. 1943). The Illinois Supreme Court made this determination in the context of an insurance statute, but did not cabin its holding to that statute or the facts before it. *Jones* stands for the proposition that, under Illinois law, an individual is "aggrieved" when "a legal right is invaded by the act complained of." *Id.* at 229-230 (quoting *Glos v. People*, 259 Ill. 332, 340 (Ill. 1913)).

Tellingly, *Rosenbach* omits any discussion of *Jones*, and Facebook also does not address it in its papers. That is a concern because *Jones* is good law in Illinois and is actively cited today by other federal courts and Illinois state courts, significantly in the BIPA context. *See, e.g.*, *Vigil v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 3d 499, 520 (S.D.N.Y. 2017) (citing *Jones* in interpreting BIPA). A convincing construction of "aggrieved" in BIPA would need to account for *Jones*, and not rely entirely, for example, on decisions from courts outside Illinois. *See, e.g.*, *Rosenbach*, 2017 IL App (2d) 170317, ¶ 22 (citing Wisconsin decision).

An analysis of *Jones* is particularly important because a good argument can be made that Facebook's reading of *Rosenbach* is not consistent with it. *Jones* holds that a party is aggrieved by an act that directly or immediately affects her legal interest. In contrast, Facebook portrays *Rosenbach* as saying that the word "aggrieved" requires a plaintiff to affirmatively plead some additional "actual injury" as an element of her claim, whatever that undefined extra harm might

be.  Dkt. No. 285 at 10.  This is a significantly more limited construction of "aggrieved" than

afforded by *Jones*, and the grounds on which it can be harmonized with *Jones* are not at all clear.

It is also worth noting that the facts in *Rosenbach* place it several steps away from this

case.  In *Rosenbach*, the plaintiff's son provided his thumbprint for scanning by the defendant.

*Rosenbach*, 2017 IL App (2d) 170317, ¶ 7.  As the *Spokeo* order discussed, an express request for

a fingerprint scan is a far cry from the situation here, where plaintiffs plausibly argue that simply

using Facebook or reading Facebook's user policy did not put them on notice that Facebook was

collecting their biometric data.  *See Patel*, 2018 WL 1050154, at *5 (distinguishing fingerprinting

cases).  Indeed, an Illinois trial court has applied *Rosenbach* to dismiss a BIPA case precisely

because the plaintiff expressly allowed defendants to take a fingerprint scan and so could not plead

an invasion of privacy.  *Rottner v. Palm Beach Tan, Inc., et al.*, No. 15 CH 16695 (Ill. Cir. Ct.

Mar. 2, 2018) (available at Dkt. No. 315-1).

Consequently, if *Rosenbach* were to be read as Facebook urges, persuasive data convinces

the Court it would not be a good prediction of how the Illinois Supreme Court would interpret

"aggrieved" under BIPA.  It follows that Facebook has not demonstrated on the basis of

*Rosenbach* that a predominance of individual inquiries would defeat class certification.

Facebook's other commonality and predominance objections also pose no certification bar.

Facebook raises an "extraterritoriality" contention based on the assertion that its servers are not

located within Illinois.  The parties agree that BIPA does not have extraterritorial reach because no

"clear intent in this respect appears from the express provisions of the statute," *Avery v. State

Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 185 (Ill. 2005), but disagree how that applies here.[1]

There is no genuine dispute that this case is deeply rooted in Illinois.  The named plaintiffs

are located in Illinois along with all of the proposed class members, and the claims are based on

the application of Illinois law to use of Facebook mainly in Illinois.  As the Court found in a prior

order, the case is properly governed by Illinois law pursuant to California choice of law principles,

*In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1169 (N.D. Cal. 2016), and

---

[1] Facebook raises a similar argument in its motion for summary judgment.  The Court considers it here with respect to certification only.

United States District Court
Northern District of California

Facebook does not contest the application of Illinois law in opposing class certification.  None of the class members are non-residents suing under Illinois law, which is the paradigmatic situation for the presumption against the extraterritorial application of local law.  *See, e.g.*, *Avery*, 216 Ill.2d at 187.  Facebook has not tendered any evidence to indicate that the circumstances relating to the challenged conduct did not occur "primarily and substantially within" Illinois.  *Id.*  Class members do not need to show more in order to sue under BIPA, particularly in light of BIPA's express concerns about data collection by "[m]ajor national corporations," 740 Ill. Comp. Stat. Ann. 14/5(b).  *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010) (territoriality inquiry looks to the "objects of the statute's solicitude").

Contrary to Facebook's suggestion, the geographic location of its data servers is not a dispositive factor.  Server location may be one factor in the territoriality inquiry, but it is not the exclusive one.  As *Avery* cautions, "focusing solely on [only one circumstance] . . . can create questionable results" where "the bulk of the circumstances . . . occur within Illinois."  *Avery*, 216 Ill.2d at 186; *see also Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1102 (N.D. Ill. 2017) (in BIPA face scan context, even if "the scanning takes place outside of Illinois, that would not necessarily be dispositive").  *Avery*'s warning is particularly apt here because the functionality and reach of modern online services like Facebook's cannot be compartmentalized into neat geographic boxes.  Making the geographic coordinates of a server the most important circumstance in fixing the location of an Internet company's conduct would yield the questionable results *Avery* counsels against.  Among other problematic outcomes, it would effectively gut the ability of states without server sites to apply their consumer protection laws to residents for online activity that occurred substantially within their borders.  *See Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1104 (9th Cir. 2013) (state cannot "impose its own regulatory standards on another jurisdiction" but "may regulate with reference to local harms").  Correlatively, a single-minded focus on server location would also potentially nationalize the consumer protection laws of states that host servers, which in this case includes California.  Both outcomes are fraught with unintended and undesirable consequences.

United States District Court
Northern District of California

Facebook also suggests that the claims of some class members may only be peripherally related to Illinois. It says for example that some class members might have just moved to Illinois with face templates created elsewhere. Dkt. No. 285 at 18. Maybe so, but Facebook does not offer anything other than its own conjecture on this point, and mere "speculation" about class variability "does not meet [defendant's] burden of demonstrating that individual . . . issues predominate." *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 729 (9th Cir. 2012).

As a final contention, Facebook says that predominance cannot be found because individualized inquiries may be necessary to determine which users' face templates were derived from scans of paper photographs. This too is unavailing. Assuming for discussion purposes only that a class member's claim could turn on whether an uploaded photograph was taken by a digital versus film camera, Facebook simply asserts with no accompanying evidence that "[m]any photos uploaded to Facebook fit that description." Dkt. No. 285 at 19. Conclusory allegations with no support in the record will not defeat commonality and predominance. *Brickman*, 2017 WL 5569827, at *5.

### C. Superiority

The closing consideration for certification is whether any fairness or practical case management reasons count against it. "Rule 23(b)(3) requires that a class action be 'superior to other available methods for fairly and efficiently adjudicating the controversy,' and it specifically mandates that courts consider 'the likely difficulties in managing a class action.'" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127-28 (9th Cir. 2017).

A class action is clearly superior to individual proceedings here. While not trivial, BIPA's statutory damages are not enough to incentivize individual plaintiffs given the high costs of pursuing discovery on Facebook's software and code base and Facebook's willingness to litigate the case. *Just Film*, 847 F.3d at 1123. The class will be manageable because members can be identified in a straightforward way. Facebook has collected a wealth of data on its users, including self-reported residency and IP addresses. *See* Dkt. No. 255 at 7. Facebook does not argue that determining the location of Facebook users with face templates would be unduly difficult or subject to significant uncertainty.

14

Facebook seems to believe that a class action is not superior because statutory damages could amount to billions of dollars. Dkt. No. 285 at 20. To be sure, class certification may be inappropriate where it would result in damages inconsistent with legislative intent. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 722-23 (9th Cir. 2010); *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 235 (9th Cir. 1974). But the Illinois legislature knows how to speak clearly when it wants to foreclose class actions. *See, e.g.*, 35 Ill. Comp. Stat. 200/23-15(a) ("no complaint shall be filed as a class action"). Facebook suggests that BIPA's limitation of relief to "aggrieved" persons bespeaks a reluctance to impose hefty penalties on non-compliant companies, but it offers no evidence or cogent explanation in support of that claim, and to the extent it relies on *Rosenbach*, the argument is rejected for the previously stated reasons. In addition, substantial damages are not a reason to decline class certification because it is within the Court's discretion to reduce a liquidated damages award to comport with due process at a later stage of the proceedings. *See, e.g.*, *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1309 (9th Cir. 1990).

## CONCLUSION

The Court certifies a class of Facebook users located in Illinois for whom Facebook created and stored a face template after June 7, 2011.

**IT IS SO ORDERED.**

Dated: April 16, 2018

_____
JAMES DONATO
United States District Judge

# Exhibit 1

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

JENNIFER ROTTNER, individually and on
behalf of all others similarly situated,
    *Plaintiff*,

    v.

PALM BEACH TAN, INC., a Texas corp.,
PBT ACQUISITION I, LLC, a Texas LLC, and
JOHN DOE DEFENDANTS 1-20, Ill. citizens,
    *Defendants*.

No. 15 CH 16695

Judge Celia Gamrath

Calendar 6



## ORDER GRANTING MOTION TO RECONSIDER AND
## DISMISSING COMPLAINT WITH PREJUDICE

This matter comes on Defendants' motion to reconsider the Order entered on July 18, 2016, which allowed Plaintiff's BIPA claim to stand. Pursuant to *Rosenbach v. Six Flags Ent. Corp.*, 2017 IL App (2d) 170317, the motion to reconsider is granted and Plaintiff's complaint is dismissed with prejudice.

### Standard for Reconsideration

"The purpose of a motion to reconsider is to allow a party to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of existing law." *Am. Serv. Ins. Co. v. China Ocean Shipping Co. (Americas) Inc.*, 2014 IL App (1st) 121895, ¶ 42. The decision to grant or deny a motion to reconsider is within the court's discretion. *Id.*

### Background Facts

On July 18, 2016, the court denied Defendants' motion to dismiss Plaintiff's BIPA claim on the grounds Plaintiff had standing as a person aggrieved by a technical violation of BIPA. On December 20, 2016, the court denied Defendants' motion to reconsider that order, but struck Plaintiff's damages claim because no injury or adverse effect was alleged.

Defendants subsequently moved to dismiss Plaintiff's only remaining claim for injunctive relief. On June 22, 2017, the court denied Defendants' motion to dismiss, believing Plaintiff could proceed on the injunctive aspect of her complaint notwithstanding the absence of actual damages or harm and lack of dissemination of her protected information.

## *Rosenbach* Requires Reconsideration

On December 21, 2017, the Second District Appellate Court decided *Rosenbach* and took the highly unusual step of referring specifically to the instant, unrelated pending case where this court allowed Plaintiff to proceed on the injunctive aspect of her BIPA claim. The Appellate Court said this was inappropriate. *Rosenbach*, 2017 IL App (2d) 170317, ¶28. "In order for *any* of the remedies to come into play [under BIPA], the plaintiff must be '[a]ny person aggrieved by a violation of this Act.' 740 ILCS 14/20 (West 2016). If a person alleges only a technical violation of the Act without alleging any injury or adverse effect, then he or she is not aggrieved and may not recover under any of the provisions in section 20." *Id.*

Plaintiff argues *Rosenbach* was wrongly decided, but acknowledges this court is bound by the decision. *See State Farm Fire & Cas. Co. v. Yapejian*, 152 Ill.2d 533, 540 (1992). While the First District Appellate Court is free to disregard and disagree with *Rosenbach,* this court is not. It must yield to *Rosenbach*'s holding that neither liquidated damages nor injunctive relief is authorized under BIPA when the only injury alleged is a statutory violation.

Plaintiff contends her complaint alleges more than a mere statutory violation and that she suffered pecuniary damages and injury to a privacy right. The court disagrees. Damages and injury from the technical BIPA violation are not well pled. This is evident from the court's findings on the record and Orders entered on July 18, 2016, December 20, 2016, and June 22, 2017, as well as the uncontroverted fact Plaintiff allowed Defendants to scan her fingerprint and there has been no publication of Plaintiff's private information to sustain injury to a privacy right. Accordingly, Plaintiff's entire BIPA claim fails. *See Rosenbach*, 2017 IL App (2d) 170317, ¶28.

## Conclusion

The court finds *Rosenbach* is on point, binding and precedential, and specifically indicates Plaintiff's claim for injunctive relief should not proceed. Since this is all that is left of Plaintiff's complaint, her complaint is dismissed with prejudice.

Judge Celia Gamrath

IT IS ORDERED:

MAR 02 2018
Circuit Court - 2031

1. Defendants' motion to reconsider is granted.
2. Plaintiff's complaint is dismissed with prejudice.
3. The status date of March 12, 2018, and all future deadline dates, are stricken.
4. This Order is final and immediately appealable.

ENTER: _____

Judge Celia Gamrath, No. 2031
Circuit Court of Cook County
Chancery Division

2

# Exhibit 2

# State of Illinois
# In the Circuit Court of Judicial Circuit #7
# Macoupin County

335
YESKE, ROBERT ET AL                                    P   001 }
VS.                                                              }   Case number:   2017-L -000024
MACOUPIN ENERGY, LLC ET AL                             D   001 }

Notice to:

| LENGERICH, VALERIE | | |
|---|---|---|
| 330 NORTH WABASH | SUITE 3300 | CHICAGO, IL 60611-0000 |
| WISE, BRANDON M | | |
| 818 LAFAYETTE AVE  FLOOR 2 | | SAINT LOUIS, MO 63104-0000 |

Take notice that the following entry was made on  Monday, April 02, 2018

KRD-Ruling-Defendant's Motion for Summary Judgment is GRANTED, albeit                          KRD
reluctantly, because this court is bound by the Second District's
opinion in Rosenbach v Six Flags, 2017 IL App (2d) 170317. Clerk to
send copy of docket entry to attorneys of record.

/s/LEE ROSS, Circuit Clerk (EDF)

Circuit Clerk,   LEE ROSS

This notice mailed on Monday, April 02, 2018.

Deputy

LENGERICH, VALERIE                                                                              EDF
330 NORTH WABASH
SUITE 3300
CHICAGO, IL 60611-0000

# Exhibit 3

**Order** (2/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

SEKURA

**v.**

KRISHNA SCHAUMBERG TAN, INC.

No. 16 CH 04945

### ORDER

This matter coming before the Court on Defendant's Motion to Reconsider, due and adequate notice having been given, and the Court being duly advised in the premises,

IT IS HEREBY ORDERED:

1. For the reasons outlined in Rosenbach v. Six Flags Entertainment Corp., No. 2-17-0317 (2d Dist 2017), Defendant's Motion is GRANTED.
2. Counts I ~~and II~~ of Plaintiff's Complaint are hereby dismissed with prejudice and judgment as to Count I ~~and II~~ entered in Defendant's favor.
3. Pursuant to Ill. S. Ct. R. 304(a), the Court finds that there is no just reason for delaying judgment as to Counts I ~~and II~~ nor any just reason for delaying an appeal from this Order or the judgment as to Counts I ~~and II~~.
4. The stay shall remain in place as to Count III and the Parties shall report how the wish to proceed within 30 days.

**Atty. No.:** 62075

**Name:** Edelson PC

**Atty. for:** Plaintiff

**Address:** 350 N LaSalle, 13th Flr.

**City/State/Zip:** Chicago, IL 60654

**Telephone:** (312) 589-6370

**ENTERED:**

JUDGE DAVID B. ATKINS

**Dated:** JAN 16 2018

Circuit Court-1879

**Judge**      **Judge's No.**

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Copy Distribution - White: 1. ORIGINAL - COURT FILE Canary: 2. COPY Pink: 3. COPY