MAYER BROWN LLP
John Nadolenco (SBN 181128)
350 South Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
jnadolenco@mayerbrown.com

Lauren R. Goldman (*pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
lrgoldman@mayerbrown.com

*Counsel for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE FACEBOOK BIOMETRIC INFORMATION PRIVACY LITIGATION<br><br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **MOTION OF FACEBOOK, INC. AND MARK ZUCKERBERG TO STRIKE AND/OR QUASH PLAINTIFFS' SUBPOENA TO APPEAR AND TESTIFY AT A HEARING OR TRIAL**<br><br>Master Docket No.: 3:15-CV-03747-JD<br><br>Date: June 28, 2018<br>Time: 10:00 a.m.<br>Location: Courtroom 11<br><br>Hon. James Donato<br><br>*[Declaration of John Nadolenco filed concurrently herewith]* |

## NOTICE OF MOTION & MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on June 28, 2018, at 10:00 a.m., before the Honorable James Donato, defendant Facebook, Inc. ("Facebook") and Mark Zuckerberg, Chairman and Chief Executive Officer of Facebook, will and hereby do move this Court to strike and/or quash plaintiffs' subpoena for Mr. Zuckerberg's appearance and testimony at trial.  Facebook's and Mr. Zuckerberg's motion is based on this notice of motion and motion, the memorandum of points and authorities that follows, the accompanying declarations of Mr. Zuckerberg and John Nadolenco, the pleadings, papers, and other documents on file in these actions, and such other evidence and argument presented to the Court at or prior to any hearing in this matter.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

    A.    Facebook And Mr. Zuckerberg ............................................................................ 2

    B.    This Action ........................................................................................................... 3

ARGUMENT ....................................................................................................................... 5

I.      RULE 37 BARS PLAINTIFFS' ATTEMPT TO CALL MR. ZUCKERBERG AS
      A WITNESS AT TRIAL. ...................................................................................... 5

II.    THE SUBPOENA WOULD UNDULY BURDEN MR. ZUCKERBERG AND
      FACEBOOK. ......................................................................................................... 7

    A.    Courts Regularly Prohibit Attempts To Compel The Testimony Of
          Corporate Executives Who Have No Unique Personal Knowledge Of The
          Relevant Facts. ..................................................................................................... 8

    B.    This Court Should Prohibit Plaintiffs' Attempt To Harass Mr. Zuckerberg,
          Who Has No Unique Personal Knowledge Of The Facts Relevant To This
          Litigation. ............................................................................................................. 9

          1.    Mr. Zuckerberg Lacks Unique Personal Knowledge About The
               Facts At Issue In This Litigation. ............................................................. 9

          2.    Plaintiffs Did Not Seek Less Burdensome Means Of Obtaining
               The Subpoenaed Information. ................................................................. 10

CONCLUSION ................................................................................................................. 11

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Affinity Labs of Tex. v. Apple, Inc.*,
4
    2011 WL 1753982 (N.D. Cal. May 9, 2011) ....................................................................9, 10

5

*Bartko v. Fid. Nat'l Fin., Inc.*,
    2013 WL 12114440 (C.D. Cal. Apr. 11, 2013) ........................................................................6
6

7
*Brown v. Wal-Mart Store, Inc.*,
    2018 WL 2011935 (N.D. Cal. Apr. 27, 2018) .........................................................................6

8

*Celerity, Inc. v. Ultra Clean Holding, Inc.*
9
    2007 WL 205067 (N.D. Cal. Jan. 25, 2007) ...................................................................1, 8, 9

10

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*,
    2015 WL 9434782 (E.D. Cal. Dec. 24, 2015) ........................................................................11
11

12
*Dauth v. Convenience Retailers, LLC*,
    2013 WL 4103443 (N.D. Cal. Aug. 12, 2013) .....................................................................8, 9

13

*Doble v. Mega Life & Health Ins.*,
14
    2010 WL 1998904 (N.D. Cal. May 18, 2010) .......................................................................10

15

*Ellena v. Standard Ins. Co.*,
    2013 WL 4520200 (N.D. Cal. Aug. 23, 2013) .........................................................................9
16

17
*Finjan, Inc. v. Proofpoint, Inc.*,
    2015 WL 9900617 (N.D. Cal. Oct. 26, 2015).........................................................................6

18

*Groupion, LLC v. Groupon, Inc.*,
19
    2012 WL 359699 (N.D. Cal. Feb. 2, 2012) .........................................................................8, 9

20

*Kirk v. Schaeffler Grp. USA, Inc.*,
    2015 WL 12600341 (W.D. Mo. June 15, 2015) ......................................................................6
21

22
*Labadie v. Dennis*,
    2008 WL 5411901 (W.D. Mich. Dec. 23, 2008) .....................................................................6

23

*Estate of Levinston v. Cty. of Kern*,
24
    320 F.R.D. 520 (E.D. Cal. 2017) ............................................................................................9

25

*Luke v. Family Care & Urgent Med. Clinics*,
    323 F. App'x 496 (9th Cir. 2009) ...........................................................................................5
26

27
*Mulvey v. Chrysler Corp.*,
    106 F.R.D. 364 (D.R.I. 1985) ...............................................................................................11

28

ii

*Plew v. Limited Brands, Inc.*,
    2012 WL 379933 (S.D.N.Y. Feb. 6, 2012)................................................................8

*Pollock v. Energy Corp. of Am.*,
    2015 WL 757458 (W.D. Pa. Feb. 23, 2015) ............................................................8

*Reddy v. Nuance Commc'ns Inc.*,
    2015 WL 4648008 (N.D. Cal. Aug. 5, 2015) ...........................................................8

*Smiley v. Hologic, Inc.*,
    2017 WL 4244861 (S.D. Cal. Sept. 25, 2017)..........................................................6

*Smith v. Aurora Pub. Schools*,
    318 F.R.D. 429 (D. Colo. 2016) ..............................................................................7

*Spencer v. Peters*,
    2012 WL 6608616 (W.D. Wash. Dec. 18, 2012) .....................................................6

*Tyco Thermal Controls, LLC v. Redwood Indus., LLC*,
    2012 WL 2571318 (N.D. Cal. July 2, 2012).............................................................7

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) .................................................................................5

**Other Authorities**

Chan Zuckerberg Initiative, About, https://www.chanzuckerberg.com/about. .............................2

Facebook newsroom Company Info ............................................................................................2

Facebook, Corporate Governance Guidelines ..............................................................................2

Facebook, Inc. Form 10-K for the Fiscal Year Ended December 31, 2017 ...................................2

Fed. R. Civ. P. 37........................................................................................................................5

Fed. R. Civ. P 26.....................................................................................................................5, 9

Fed. R. Civ. P. 45.....................................................................................................................7, 9

Fed. R. Civ. P. 45 Advisory Committee Notes (1991 Amendment) ..........................................8, 9

Fed. R. Civ. P. 45 Advisory Committee Notes (2013 Amendment) ............................................9

MOTION OF FACEBOOK AND MARK ZUCKERBERG TO STRIKE AND/OR QUASH,
CASE NO. 3:15-CV-03747-JD

**INTRODUCTION**

Facebook and Mark Zuckerberg, Facebook's Chairman and Chief Executive Officer, respectfully move to strike and/or quash plaintiffs' "Subpoena to Appear and Testify at a Hearing or Trial" (Ex. 1) served on Mr. Zuckerberg on May 14, 2018. There is no suggestion anywhere in this case's voluminous discovery record that Mr. Zuckerberg possesses any unique knowledge relevant to this case. Plaintiffs never sought documents related to Mr. Zuckerberg from Facebook during discovery, never sought to depose him, and did not identify him as a potential witness in their Rule 26(a) disclosures until a few days ago. And yet now, less than two months before trial is set to commence, plaintiffs inexplicably seek to compel Mr. Zuckerberg to divert substantial time and resources away from his responsibilities running Facebook to prepare for and testify in this case.

This is a transparent effort to harass Mr. Zuckerberg and pressure Facebook, as evidenced by the fact that plaintiffs never even identified Mr. Zuckerberg in their Rule 26(a) disclosures until just a few days ago—well after they had knowledge of Mr. Zuckerberg's limited role in the facts relevant to this case and months after the close of discovery. Under Rule 37(c), plaintiffs' abject and unjustified failure to disclose and timely supplement their disclosures under Rule 26 precludes their attempt to now subpoena Mr. Zuckerberg and include him on their proposed witness list.

Furthermore, plaintiffs' attempt to bypass less burdensome means of obtaining the information they seek from Mr. Zuckerberg is universally regarded as improper and a basis for quashing the subpoena under Rule 45(d). Given the "tremendous potential for abuse," courts permit parties to compel a high-level corporate executive to testify *only* where (1) that executive has unique personal knowledge about the facts at issue in the case, and (2) the party seeking the testimony has exhausted other, less burdensome means of obtaining that information without success. *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007). Plaintiffs' subpoena satisfies neither requirement. Plaintiffs cannot identify any unique personal knowledge possessed by Mr. Zuckerberg about facts that are relevant to this case. And

1   despite years of discovery, plaintiffs never sought any less burdensome means of determining

2   whether Mr. Zuckerberg has any such information and of obtaining it.  Plaintiffs cannot now

3   burden and disrupt Mr. Zuckerberg's and Facebook's business to conduct a belated fishing

4   expedition at trial.

5                                                **BACKGROUND**

6          **A.      Facebook And Mr. Zuckerberg**

7          Mr. Zuckerberg founded Facebook in 2004 and currently serves as its chairman and

8   CEO.  Facebook has almost 1.5 billion daily active users and employs nearly 28,000 people

9   across the world.  Facebook newsroom, Company Info, https://newsroom.fb.com/company-info/.

10  Facebook also owns several subsidiary companies, including Instagram, LLC, WhatsApp Inc.,

11  and Oculus VR, LLC.  *See* Facebook, Inc. Form 10-K for the Fiscal Year Ended December 31,

12  2017 at 5, Ex. 21.1, https://tinyurl.com/y7dh48f3.

13         In his role as Facebook's CEO, Mr. Zuckerberg is responsible for setting the overall

14  direction and product strategy for the Company.  *See* Facebook newsroom, Company Info,

15  https://newsroom.fb.com/company-info/.  Additionally, as Chairman of Facebook's Board of

16  Directors, Mr. Zuckerberg advises Facebook's management team, monitors its performance, and

17  approves significant transactions.  *See* Facebook, Corporate Governance Guidelines,

18  https://investor.fb.com/corporate-governance/corporate-governance-guidelines/default.aspx.  He

19  spends a significant number of hours every week fulfilling these responsibilities, which require

20  attendance at meetings with the Company's Board, Facebook employees, government

21  representatives, investors, and others who are critical to ensuring the successful operation of

22  Facebook.

23         Mr. Zuckerberg is also a co-founder of the Chan Zuckerberg Initiative (CZI), a

24  philanthropic organization that supports science and promotes equality in health, education,

25  scientific research, and energy.  Chan Zuckerberg Initiative, About,

26  https://www.chanzuckerberg.com/about.  He is involved in making investment and grant

27  decisions for CZI, and regularly meets with its employees.

28

**B.     This Action**

Plaintiffs brought this action against Facebook in 2015, alleging that Facebook violated Illinois's Biometric Information Privacy Act (BIPA) by using facial-recognition technology in connection with its Tag Suggestions feature to analyze photos of them without providing adequate notice or obtaining their consent.

Plaintiffs did not seek to designate Mr. Zuckerberg as a document custodian.  Ex. 2 (Pls.' Initial List of Proposed Additional Search Terms).  During discovery, Facebook produced over 15,000 documents in response to document requests propounded by plaintiffs.  Fewer than twenty documents in this voluminous discovery record even reference Mr. Zuckerberg in connection with Tag Suggestions or facial recognition; none was created by him.  Those documents were created by Facebook employees who worked with Facebook's facial-recognition technology.  They reveal that Mr. Zuckerberg's involvement in the development and implementation of Facebook's facial-recognition technology and policies was limited to attendance at periodic meetings at which certain aspects of the technology and Facebook's use of it were discussed.

Plaintiffs have deposed five current Facebook employees and one former Facebook employee who—in contrast to Mr. Zuckerberg—were and are intimately involved in the creation and development of Facebook's facial-recognition technology, the policies relating to that technology, and Facebook's sign-up process and terms of service:

- Yaniv Taigman:  Plaintiffs took a Rule 30(b)(6) deposition of Yaniv Taigman—the principal creator of Facebook's technology—on Facebook's facial-recognition technology and how the Company uses information created or collected through the use of that technology.  *See* Ex. 3 (Pls.' Amended Second Notice of Deposition Pursuant to Federal Rule of Civil Procedure 30(b)(6)); Ex. 4 (Taigman Dep.) at 38, 99-102.

- Omry Yadan:  Plaintiffs deposed Omry Yadan, an engineer who worked with Mr. Taigman and who continues to manage Facebook's facial-recognition technology on a daily basis.  *See* Ex. 5 (Yadan Dep.) at 51, 60-61, 235.

- Mark Pike:  Plaintiffs took a Rule 30(b)(6) deposition of Mark Pike, a privacy program manager at Facebook who helped create an archive of Facebook's past terms and policies, on the subject of Facebook's sign-up process and

terms of service.  *See* Ex. 6 (Plaintiff Carlo Licata's Notice of Rule 30(b)(6) Deposition of Defendant Facebook, Inc.); Ex. 7 (Pike Dep.) at 23, 41.

- Joaquin de Lombaert:  Plaintiffs took a Rule 30(b)(6) deposition of Joachim de Lombaert, an engineering manager at Facebook, on the subject of Facebook's sign-up process.  Ex. 8 (De Lombaert Dep.) at 9, 11.

- Robert Sherman:  Plaintiffs deposed Robert Sherman, Facebook's Deputy Chief Privacy Officer, about Facebook's Tag Suggestions feature and the disclosures, privacy policies, and procedures implemented by Facebook in connection with that feature.  *See* Ex. 9 (Sherman Dep.) at 142-44.

- Dan Barak:  Plaintiffs deposed Dan Barak, the former facial-recognition project manager at Facebook.  *See* Ex. 10 (Barak Dep.) at 51-52, 54.

Mr. Zuckerberg was not mentioned—either by plaintiffs' counsel or by the deponent—in the depositions of Mr. Taigman, Mr. Yadan, Mr. Pike, or Mr. de Lombaert.  And he was mentioned only briefly in the depositions of Mr. Sherman and Mr. Barak, each of whom testified that he attended a handful of meetings with Mr. Zuckerberg where facial recognition was discussed (Ex. 10 at 192; Ex. 9 at 86-87), but that they and the other Facebook employees they worked with were the ones with day-to-day responsibility for managing the work being done on facial recognition and for developing privacy solutions and policies for Facebook's services.  *See* Ex. 10 at 54-64; Ex. 9 at 142-44.

The sparseness of the references in the documents and testimony to Mr. Zuckerberg is not surprising:  Mr. Zuckerberg has never been responsible for daily oversight of Facebook's use of facial-recognition technology or the decisions or policies relating to Tag Suggestions.  *See* Decl. of Mark Zuckerberg.  Other Facebook employees, like the ones deposed by plaintiffs, possessed those responsibilities and periodically briefed Mr. Zuckerberg on significant issues.  *Id.*  Given the lack of any evidence that Mr. Zuckerberg had any meaningful involvement in the facts relevant to this litigation, plaintiffs understandably never sought to depose Mr. Zuckerberg or to identify him as a potential witness for trial (until just a few days ago).

Discovery closed on November 17, 2017.  As of that date, plaintiffs had not supplemented their initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1),

which did not identify Mr. Zuckerberg by name, but rather only referred vaguely to "[a]gents and employees of defendant Facebook, Inc." Ex. 11 (Pls.' Initial Disclosures Pursuant to Federal Rule of Civil Procedure Rule 26(a)(1)) at 3.

On May 14, two months before trial, with no prior discussion with Facebook, plaintiffs suddenly served Mr. Zuckerberg with a subpoena to appear and testify at trial. The evening of May 15, plaintiffs updated their Rule 26(a) disclosures to include Mr. Zuckerberg by name for the first time, asserting that he has discoverable information on "Facebook's facial recognition technology and its application to photos on Facebook," as well as "Facebook's compliance with U.S. and European privacy laws." Ex. 12 (Pls.' Supplemental Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A) and 26(e)(1)) at 4.

## ARGUMENT

## I.   RULE 37 BARS PLAINTIFFS' ATTEMPT TO CALL MR. ZUCKERBERG AS A WITNESS AT TRIAL.

Plaintiffs' eleventh-hour attempt to compel Mr. Zuckerberg to appear and testify at trial is barred because they did not timely disclose him under Federal Rule of Civil Procedure 26(a)(1). Rule 26(a)(1) requires parties to disclose "the name and, if known, the address and telephone of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." And it provides a continuing obligation to supplement the disclosures "in a timely manner." Fed. R. Civ. P 26(e); *see also Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009) ("Rule 26(e) creates a 'duty to supplement,' not a right."). If a party fails to comply with these requirements, "the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (Rule 37(c)(1)'s sanctions are "self-executing" and "automatic").

Plaintiffs did not name Mr. Zuckerberg in their initial disclosures, served in January 2016. Ex. 11.[1] And they did not update that disclosure for over two years—until a few days

---

[1]      Plaintiffs' initial generic disclosure of "[a]gents and employees of defendant Facebook,

1    ago, well after discovery had already closed and less than two months before trial is scheduled to

2    commence.  Indeed, plaintiffs did not even supplement their disclosure until *after* they served

3    Mr. Zuckerberg with the subpoena.  Courts regularly find that supplementation of disclosures

4    after the close of discovery—or even shortly *prior* to the close of discovery—is untimely.  *See,*

5    *e.g., Brown v. Wal-Mart Store, Inc.*, 2018 WL 2011935, at *3-7 (N.D. Cal. Apr. 27, 2018)

6    (supplemental disclosure made after close of discovery was untimely); *Smiley v. Hologic, Inc.*,

7    2017 WL 4244861, at *2-3 (S.D. Cal. Sept. 25, 2017) (party's supplements after close of

8    discovery were untimely); *Finjan, Inc. v. Proofpoint, Inc.*, 2015 WL 9900617, at *3-4 (N.D. Cal.

9    Oct. 26, 2015) (supplemental disclosures were untimely where served just before the close of

10   discovery); *Kirk v. Schaeffler Grp. USA, Inc.*, 2015 WL 12600341, at *6-7 (W.D. Mo. June 15,

11   2015) (finding disclosure after close of discovery an untimely supplement); *Spencer v. Peters*,

12   2012 WL 6608616, at *2 (W.D. Wash. Dec. 18, 2012) (supplemental disclosures were untimely

13   where served close to the discovery deadline).  Plaintiffs' dawdling for half a year after even the

14   close of fact discovery cannot be considered "timely" in any sense of the word.

15        Plaintiffs cannot escape Rule 37(c)'s "self-executing" sanctions for their failure to

16   comply with Rule 26 by showing that their failure was substantially justified or harmless.  There

17   is no excuse for plaintiffs' failure to identify Mr. Zuckerberg until the eve of trial:  Mr.

18   Zuckerberg has been Chairman and CEO of Facebook since well before this case commenced.

19   And his limited involvement in the facts relevant to this case has been known to plaintiffs for at

20   least eight months:  Robert Sherman was deposed in September 2017; Dan Barak was deposed in

21   October 2017; and all documents were produced by November 2017.  There has been no new

22   information that suddenly makes Mr. Zuckerberg a uniquely relevant witness[2]—except for the

23   Inc." was plainly insufficient to satisfy their obligation to disclose Mr. Zuckerberg under Rule
     26(a).  *See, e.g., Bartko v. Fid. Nat'l Fin., Inc.*, 2013 WL 12114440, at *4 (C.D. Cal. Apr. 11,
24   2013) (excluding witnesses because "generic, non-specific disclosures are insufficient to meet
     the purpose of Rule 26"); *Labadie v. Dennis*, 2008 WL 5411901, at *2 (W.D. Mich. Dec. 23,
25   2008) (holding that "list[ of] generic categories of persons, such as 'all members of plaintiff's
     family,' or 'all investigating persons' . . . is patently insufficient and amounts to a non-
26   disclosure" under Rule 26(a)(1)).

27   [2]     In their reply brief in support of their summary judgment motion and their opposition to
28   Facebook's motion for summary judgment, plaintiffs cite to statements made by Mr. Zuckerberg

MOTION OF FACEBOOK AND MARK ZUCKERBERG TO STRIKE AND/OR QUASH,
CASE NO. 3:15-CV-03747-JD

knowledge that trial will begin in under two months, and plaintiffs' apparent desire to make that trial as burdensome on Facebook as possible.  That desire is not a legitimate justification for plaintiffs' untimely disclosure, particularly given the harm to Facebook.  The purpose of Rule 26 is to permit parties to "plan their discovery [and broader case] strategy accordingly," and because plaintiffs did not put Facebook on notice that they might use Mr. Zuckerberg's testimony in support of their case, Facebook was entitled to presume they would not and to plan accordingly. *Smith v. Aurora Pub. Schools*, 318 F.R.D. 429, 432 (D. Colo. 2016).  Upending that plan less than two months before trial is unquestionably and incurably prejudicial to Facebook.  *See, e.g., Tyco Thermal Controls, LLC v. Redwood Indus., LLC*, 2012 WL 2571318, at *2 (N.D. Cal. July 2, 2012) (precluding party from calling witnesses who were not disclosed as required under Rule 26(a) and where discovery had long since closed and trial was imminent).

## II.   THE SUBPOENA WOULD UNDULY BURDEN MR. ZUCKERBERG AND FACEBOOK.

Plaintiffs' subpoena to Mr. Zuckerberg should also be quashed under Federal Rule of Civil Procedure 45(d)(3)(A)(iv), which provides that a court "must quash or modify a subpoena that . . . subjects a person to undue burden."  Plaintiffs' trial subpoena of Mr. Zuckerberg—the highest-ranking executive of Facebook, one of the largest companies in the world—unquestionably imposes a substantial burden on both him and Facebook.  Balanced against this burden is nothing of legitimate value for plaintiffs.  Mr. Zuckerberg does not possess any information that is not already available to plaintiffs from other witnesses and documents, as evidenced by the fact that plaintiffs never even sought to depose him, and never even sought to

---

in his April 10, 2018 testimony before Congress (more than a month before plaintiffs' supplemental disclosures).  Dkt. 341 at 2, 4, 7-8; Dkt. 359 at 3, 12.  Plaintiffs' briefs mischaracterized Mr. Zuckerberg's testimony.  *See* Dkt. 350 at 13-14.  That testimony was about data privacy and election concerns arising from Cambridge Analytica's fraudulent acquisition of Facebook users' data and has nothing to do with whether Facebook's facial-recognition technology used in support of Tag Suggestions violated BIPA; it is irrelevant and inadmissible, as Facebook explains in a forthcoming motion *in limine*.  To the extent any of the testimony *is* ultimately deemed admissible, it does not contain any new information about Mr. Zuckerberg's involvement in the facts relevant to this case.

1    designate him as a document custodian.  The only purpose of plaintiffs' subpoena is to harass

2    Mr. Zuckerberg and Facebook.

3        **A.    Courts Regularly Prohibit Attempts To Compel The Testimony Of Corporate Executives Who Have No Unique Personal Knowledge Of The Relevant Facts.**

4

5        "Virtually every court" that has addressed attempts to compel the testimony of an

6    "official at the highest level or 'apex' of corporate management has observed that such [requests]

7    create[] a tremendous potential for abuse or harassment."  *Celerity*¸ 2007 WL 205067, at *3;

8    *accord Dauth v. Convenience Retailers, LLC*, 2013 WL 4103443, at *1 (N.D. Cal. Aug. 12,

9    2013); *Groupion, LLC v. Groupon, Inc.*, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012).  A

10   party seeking the testimony of a high-ranking corporate officer must establish that the executive

11   has "unique, non-repetitive, firsthand knowledge of the facts at issue in the case," and that other,

12   less intrusive means of obtaining the information have been exhausted without success.  *Dauth*,

13   2013 WL 4103443, at *1; *accord Celerity*, 2007 WL 205067, at *3; *Groupion*, 2012 WL

14   359699, at *2; *see also Plew v. Limited Brands, Inc.*, 2012 WL 379933, at *3 (S.D.N.Y. Feb. 6,

15   2012) ("Where a plaintiff fails to make any demonstration that the executive possesses some

16   unique knowledge of the issues in the case, it may be appropriate to preclude a redundant

17   examination of a high-placed executive.")   (internal quotation marks and brackets omitted).

18   Compelling a high-level decisionmaker to testify where he or she is "removed from the daily

19   subjects of the litigation [and] has no unique personal knowledge of the facts at issue" is

20   improper.  *Celerity*, 2007 WL 205067, at *3.

21       This rule is axiomatic when it comes to trial testimony.  *See, e.g., Reddy v. Nuance*

22   *Commc'ns Inc.*, 2015 WL 4648008, at *4 (N.D. Cal. Aug. 5, 2015) (precluding plaintiff from

23   calling defendant's CEO, because requiring him to testify—"when she did not even see[k] to

24   depose him—would be harassment").[3]  But courts, particularly in this Circuit, go further and

25   ───────────────

[3]      *See also*, *e.g.*, *Pollock v. Energy Corp. of Am.*, 2015 WL 757458, at *5-6 (W.D. Pa. Feb.

26   23, 2015) (precluding plaintiffs from calling executives of defendant where plaintiffs "have not shown that either proposed witness has unique or special knowledge of the facts at issue and that

27   there are not less burdensome means for obtaining the information sought" and never even sought to depose the witnesses); *Plew*, 2012 WL 379933, at *3; *see also* Advisory Committee

28

8

apply the rule to apex depositions even in the liberal context of discovery, where the default rule is that it is otherwise "rare for a court to disallow the taking of a deposition." *Estate of Levinston v. Cty. of Kern*, 320 F.R.D. 520, 524 (E.D. Cal. June 22, 2017); *see, e.g., Dauth*, 2013 WL 4103443, at *2; *Ellena v. Standard Ins. Co.*, 2013 WL 4520200, at *2 (N.D. Cal. Aug. 23, 2013); *Groupion*, 2012 WL 359699, at *3-5; *Affinity Labs of Tex. v. Apple, Inc.*, 2011 WL 1753982, at *15-17 (N.D. Cal. May 9, 2011).[4]

### B. This Court Should Prohibit Plaintiffs' Attempt To Harass Mr. Zuckerberg, Who Has No Unique Personal Knowledge Of The Facts Relevant To This Litigation.

A straightforward application of this case law compels the quashing of plaintiffs' subpoena.

#### 1. Mr. Zuckerberg Lacks Unique Personal Knowledge About The Facts At Issue In This Litigation.

Plaintiffs' trial subpoena of Mr. Zuckerberg is improper because he is "removed from the daily subjects of [this] litigation" and has no unique personal knowledge relevant to this case. *Celerity*, 2007 WL 205067, at *3. Plaintiffs claim that Mr. Zuckerberg possesses information about Facebook's facial-recognition technology, its application to photos on Facebook, and Facebook's compliance with U.S. and European privacy laws. Ex. 12. As an initial matter, this Court has held that Facebook's compliance with European privacy laws is wholly irrelevant to this case, which is about Facebook's compliance with the State of Illinois's law. Discovery Order (Dkt. 183) at 1; 01/05/2017 Hr'g Tr. (Dkt. 133) at 12-13. And Mr. Zuckerberg had no involvement in the creation or design of Facebook's facial-recognition technology and is not involved in daily decisionmaking about Tag Suggestions. He certainly does not possess *unique*,

---

Notes to Fed. R. Civ. P. 45 (1991 Amendment) (noting that under Rule 45(d)(3)(A)(iv) (then 45(c)(3)(A)(iv)), "it might be unduly burdensome to compel an adversary to attend trial as a witness if the adversary is known to have no personal knowledge of matters in dispute").

[4]     Courts often prohibit depositions of high-level corporate executives under Rule 26(c)(1), which provides that that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Rule 45(d) "tracks the provisions of Rule 26(c)." Advisory Committee Notes to Fed. R. Civ. P. 45 (1991 Amendment) (discussing Rule 45(c)(3), which was later renumbered as Rule 45(d)(3)(A)(iv), *see* Advisory Committee Notes to Fed. R. Civ. P. 45 (2013 Amendment))*.

personal, first-hand knowledge of the facts relevant to these issues.[5]  Decl. of Mark Zuckerberg. That knowledge is possessed by other corporate employees who *are* responsible for working day-to-day on those issues—including the current and former employees already deposed by plaintiffs.  Indeed, plaintiffs' own belated supplemental disclosures indicate that other employees—including Robert Sherman, Yaniv Taigman, and Omry Yadan—possess information on the very topics they claim Mr. Zuckerberg has.  *See* Ex. 12.  And, as confirmed by the documents and deposition testimony in this case, all of Mr. Zuckerberg's knowledge about the relevant facts is derived from those employees through periodic briefings.  Because Mr. Zuckerberg does not possess unique personal knowledge about the facts relevant to these issues, plaintiffs' last-minute attempt to compel his testimony at trial is improper.

### 2. Plaintiffs Did Not Seek Less Burdensome Means Of Obtaining The Subpoenaed Information.

Plaintiff's trial subpoena of Mr. Zuckerberg is particularly inappropriate because plaintiffs never pursued less burdensome means of obtaining the testimony they now seek.  Even if Mr. Zuckerberg did have some unique and relevant personal knowledge, which he does not, subpoenaing him to testify at trial is certainly not the least burdensome way of obtaining that information.  Plaintiffs did not even ask Mr. Taigman or Mr. Yadan any questions about Mr. Zuckerberg's involvement in or knowledge about how Facebook's facial-recognition technology works or the development of Facebook's policies and procedures.  Mr. Sherman and Mr. Barak testified about the content of the relevant meetings that Mr. Zuckerberg attended, and plaintiffs

---

[5]     As noted *supra* n.2, Mr. Zuckerberg's testimony to Congress on April 10 did not include any new information about Mr. Zuckerberg's involvement with or knowledge about the facts relevant to this litigation.  It certainly did not suggest that Mr. Zuckerberg possesses *unique*, first-hand knowledge about the facts relevant to this litigation.  *See, e.g., Doble v. Mega Life & Health Ins.*, 2010 WL 1998904, at *3 (N.D. Cal. May 18, 2010) (granting protective order of defendant's CEO despite his public statements and participation in relevant events because, among other things, his public statements "were part of his job as the public face of the company, and did not represent any personal participation by him in the process of negotiating the settlement").  And plaintiffs can ask the other witnesses at trial about it.  *Cf. Affinity Labs of Tex.*, 2011 WL 1753982, at *6-9 (barring party from deposing CEO of Apple, Inc. about his public statements because they failed to first seek written or deposition discovery from others about the statements).

1   never sought to depose all of the other attendees of those meetings.  Plaintiffs did not even seek

2   to depose Mr. Zuckerberg; nor did they attempt to designate him as a document custodian.

3          By contrast, the burden on Mr. Zuckerberg of testifying at trial is obvious.  As

4   Facebook's Chairman and CEO, Mr. Zuckerberg has numerous competing demands on his time,

5   and works to ensure that he is able to devote the necessary time, energy, and attention to each of

6   those demands to successfully manage and oversee Facebook's operations.  Taking the time to

7   properly prepare and testify at trial in this case would be extremely disruptive to his duties and

8   the Company's business.

9          Moreover, compelling Mr. Zuckerberg to testify at trial in this case would set a dangerous

10  precedent that could exponentially multiply the burden on him and Facebook.  Facebook is a

11  frequent target for litigation.  And like other CEOs of major corporations, Mr. Zuckerberg is a

12  "singularly unique and important individual who [could] be easily subjected to unwarranted

13  harassment and abuse."  *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985).

14  Permitting plaintiffs to compel Mr. Zuckerberg to testify at trial in this case despite his tangential

15  involvement in the facts at issue would throw open the door to plaintiffs seeking his testimony in

16  virtually *any* case against Facebook merely because he is Facebook's Chairman and CEO.  As a

17  result, Mr. Zuckerberg "could have all of his . . . time monopolized by discovery [and testifying]

18  in [those] lawsuits," such that his role would no longer be to run Facebook, but to testify in

19  lawsuits.  *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL

20  9434782, at *2 (E.D. Cal. Dec. 24, 2015).  Such a result cannot be sanctioned under Rule 45.

## CONCLUSION

22         This Court should strike and/or quash the subpoena.

24  Dated:  May 22, 2018

                              MAYER BROWN LLP

26                            By: */s/ John Nadolenco*
                                  John Nadolenco
27                                Lauren R. Goldman

                              *Counsel for Defendant Facebook, Inc.*