UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FACEBOOK BIOMETRIC INFORMATION PRIVACY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Case No. 3:15-cv-03747-JD<br><br>**ORDER RE REQUEST FOR STAY**<br>Re: Dkt. No. 364 |

Defendant Facebook, Inc., has requested a complete stay of this case pending the Ninth Circuit's decision on whether to accept interlocutory review of this Court's order certifying a class for trial. Dkt. No. 364. The request is in an unusual procedural posture. Facebook filed it on May 7, 2018, and noticed a hearing on it for June 14, 2018 under the usual 35-day notice period provided for in Civil Local Rule 7-2(a). Plaintiffs filed an opposition under that timeline on May 21, 2018. Dkt. No. 387. Facebook then filed a short reply on May 22, 2018, Dkt. No. 394, along with a request to advance the stay hearing to May 24, 2018, Dkt. No. 396. It appears Facebook filed a stay request directly with the Ninth Circuit, too, without the benefit of the Court's disposition of this request.

Although the propriety of Facebook's conduct can be questioned, the Court addresses the substance of the stay request in this order. A stay is denied.

As an initial matter, Facebook misapprehends the governing standards for a stay. The Court's analysis is controlled by *Nken v. Holder*, 556 U.S. 418 (2009), and *Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011). In *Nken*, the Supreme Court held that four factors determine the propriety of a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the

proceeding; and (4) where the public interest lies." 556 U.S. at 426 (internal quotation omitted). In *Leiva-Perez*, our circuit found that *Nken* "raised the minimum permissible showing of irreparable harm necessary to justify a stay," and underscored "the bedrock requirement that stays must be denied to all petitioners who did not meet the applicable irreparable harm threshold, regardless of their showing on the other stay factors." 640 F.3d at 965. *Leiva-Perez* also made clear that "even certainty of irreparable harm has never *entitled* one to a stay," and so "a proper showing regarding irreparable harm was, and remains, a necessary but not sufficient condition for the exercise of judicial discretion to issue a stay." *Id*. (emphasis in original).

Facebook departs from these standards by focusing almost exclusively on the merits of the Court's class certification decision and making virtually no showing at all on the critical element of irreparable harm. Its main arguments about harm are that a trial might be expensive, and sending notice to the class in advance of the trial will embarrass it and inflict "reputational" injury. Dkt. No. 394 at 3. Neither point comes close to warranting a stay.

Facebook's concerns about the expense of trial are particularly thin. The sum total of this argument is the unadorned statement that a trial could cost a lot of money and might result in a substantial award of damages. These generalizations are not developed or supported by any showing that trying this case is likely to inflict anything other than the usual and ordinary expenses. To the contrary, the well-developed record in this case indicates that the jury will be asked to decide relatively straightforward disputes of fact. While the case has a certified class, that is not a complicating factor. The Court knows from experience that trying a class action is virtually identical to trying a case brought by an individual plaintiff. There is no practical difference between the two in terms of time and expense. And looking at the action as a whole, the Court has no reason to believe this will be a "monster" trial that imposes crippling costs on either side. Nor would the Court let that happen. As the Court's Standing Order for Civil Jury Trials indicates, it works with the parties to ensure that jury time is used efficiently and without waste. Among other measures, that entails the imposition of strict time limits on opening statements, closing statements, and trial testimony, early resolution of evidence disputes and jury instructions, and other time-management tools, all of which will be thoroughly discussed at the

1    pre-trial conference on June 21, 2018.  Facebook has not identified anything that would make this
2    case stand out in terms of trial duration or costs.
3          More broadly, Facebook's trial expense argument is based on a faulty proposition.  In
4    effect, it suggests that the ordinary costs of trying a case are grounds for a stay.  It is certainly true
5    that trials cost litigants money, but that is hardly a reason in itself to push them off, particularly in
6    a case like this, where all the pre-trial motions have been decided, summary judgment has been
7    denied to both sides, and all that remains is for the jury to resolve the disputes of fact.  Every party
8    going to trial faces the same cost issue Facebook raises, albeit typically without Facebook's deep
9    financial resources, and Facebook offers no reason why it should be treated differently and
10   afforded a stay.  The risk of a large judgment does not change that conclusion.  Many litigants go
11   to trial with the same or greater risk to themselves in the outcome.  Facebook's speculation on a
12   possible damages verdict is just that.  It is entirely possible that Facebook will prevail and that
13   plaintiffs will take nothing, or win a damages award far smaller than Facebook fears.
14         Facebook's concern about reputational injury is equally unpersuasive.  The parties have
15   advised the Court in other contexts about the wide media coverage nationally and in Illinois of the
16   case as a whole, the claims and defenses the parties have raised, and the orders issued over the
17   course of the litigation.  *See, e.g.*, Dkt. No. 370 at 8.  It is hardly a secret that Facebook is being
18   sued for alleged violations of the Biometric Information Privacy Act and that a jury trial has been
19   set.  Facebook also appears to believe that notifying class members via two of its user notification
20   channels, *see* Dkt. No. 402, would cause untoward embarrassment.  That goes too far.  Facebook
21   is an online business that routinely communicates with users through online notifications about a
22   myriad of topics.  It ill suits Facebook to complain about sticking with that routine communication
23   protocol to give class notice and opt-out information.  Many cases have held that a defendant's
24   online channels constitute the best practicable notice to individual class members.  *See, e.g.*,
25   *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 596 (N.D. Ill. 2011); *Shurland v. Bacci Cafe &*
26   *Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 147 (N.D. Ill. 2010); *Jermyn v. Best Buy Stores, L.P.*,
27   No. 08 CIV. 00214 CM, 2010 WL 5187746, at *8 (S.D.N.Y. Dec. 6, 2010).  The same applies
28   here, as the Court has held.  *See* Dkt. No. 390.  It is also worth noting that Facebook took an active

United States District Court
Northern District of California

3

1 role with plaintiffs in negotiating the form and content of the notices, with substantial participation by the Court. The notices are fair, neutral and unburdened by anything remotely embarrassing to Facebook.

Facebook's concern that notifying class members now might cause confusion later is also overblown. Facebook has not proffered any evidence indicating that class members would be left in a state of disarray and befuddlement, as it suggests, if developments during trial or post-trial appellate review resulted in a change to or decertification of the class. Common sense strongly advises to the contrary. It is highly doubtful any class member would be unable to understand subsequent changes in the case, or be thrown into confusion by such an event.

These points are the only things Facebook offers as possible irreparable harm, and their insufficiency necessitates the denial of their stay request. *Leiva-Perez,* 640 F.3d at 965 (citing *Nken*, 556 U.S. at 432-34). Facebook's merits arguments are only slightly rewarmed versions of the arguments made against class certification. They are no more persuasive the second time around. In addition, the Court expressed its concern in the order denying summary judgment that Facebook's challenge to the certification order is based upon a misrepresentation of the Court's reasoning and analysis. Dkt. No. 372 at 2. The merits discussion in the stay request makes the same mistake.

This case has been pending since 2015 and is one of the Court's oldest open matters. The parties have litigated it heavily, and the Court has heard and decided two motions to dismiss, three motions for summary judgment, a class certification motion, multiple discovery disputes, and other matters. Discovery closed many months ago and the expert witness work is done. The case is ripe for trial, and Facebook's last-minute request to derail that is denied.

**IT IS SO ORDERED.**

Dated: May 29, 2018

JAMES DONATO
United States District Judge