ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
JOHN H. GEORGE (292332)
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
jgeorge@rgrdlaw.com

LABATON SUCHAROW LLP
MICHAEL P. CANTY (*pro hac vice*)
CORBAN S. RHODES (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)
lsucharow@labaton.com
mcanty@labaton.com
crhodes@labaton.com

EDELSON PC
JAY EDELSON (*pro hac vice*)
BENJAMIN RICHMAN (*pro hac vice*)
ALEXANDER G. TIEVSKY (*pro hac vice*)
350 North LaSalle Street, 14th Floor
Chicago, IL 60654
Telephone: 312/589-6370
312/589-6378 (fax)
jedelson@edelson.com
brichman@edelson.com
atievsky@edelson.com

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re FACEBOOK BIOMETRIC INFORMATION PRIVACY LITIGATION | Master File No. 3:15-cv-03747-JD |
| _____ | <u>CLASS ACTION</u> |
| This Document Relates To: | PLAINTIFFS' UNOPPOSED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
|     ALL ACTIONS. | |
| _____ | |

# TABLE OF CONTENTS

**Page**

I.   ISSUES TO BE DECIDED .................................................................................. 1

II.  MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

III. BACKGROUND ............................................................................................... 2

    A.   Facebook's Alleged Violation of BIPA ............................................... 2

    B.   Relevant Procedural and Litigation History ........................................ 3

IV.  THE SETTLEMENT ........................................................................................ 8

    A.   Class Definition .................................................................................... 8

    B.   Monetary Relief .................................................................................... 8

    C.   Prospective Relief ................................................................................. 8

    D.   Release .................................................................................................. 9

    E.   Class Notice .......................................................................................... 9

    F.   Incentive Awards .................................................................................. 9

    G.   Attorneys' Fees and Expenses ............................................................ 10

V.   ARGUMENT ................................................................................................... 10

    A.   Legal Standard .................................................................................... 10

    B.   Class Certification Need Not Be Revisited ......................................... 12

    C.   The Settlement Is Fair, Reasonable and Adequate and Should Be
        Preliminarily Approved ....................................................................... 14

        1.   The Cash Component of the Settlement is the Largest Privacy
            Settlement in U.S. History, and Provides Class Members Excellent
            Value ....................................................................................... 15

        2.   Non-Monetary Components of the Proposed Settlement Serve to
            Ensure User's Privacy Rights .................................................. 19

        3.   Plaintiffs Have a Strong Case but Risks and Expense of Continued
            Litigation Are High .................................................................. 19

            a.   Popularity of Facebook's Platform Posed Substantial Risk
                to a Finding of Liability ................................................. 20

Page

b.    Location of Facebook's Processing of Facial Recognition Data Posed a Substantial Risk for Extended Appellate Review of Trial Recovery ........................ 21

c.    Post-Trial Potential for Substantial Reduction in Damages Limited the Likelihood of Multi-billion Dollar Recovery Where Plaintiffs Did Not Incur Economic Loss .......................... 22

d.    The Longer the Case Continued, the Higher the Likelihood an Amendment to the Law or a Successful Appeal Would Force the Class to Take Nothing ................................. 24

4.    The Proposed Settlement is the Product of Serious, Informed, Arm's-Length Negotiations, and Contains No Obvious Deficiencies ............................................. 25

5.    The Extent of Discovery Completed and Stage of the Proceedings Favors Preliminary Approval ............................ 26

VI.    The Procedural Guidance for Class Action Settlements have been Satisfied and Weigh in Favor of Approving the Settlement ................. 26

A.    Guidance 1: Differences, Range, and Plan of Allocation ..................... 26

B.    Guidance 2: The Proposed Settlement Administrator ......................... 29

C.    Guidance 3: The Proposed Notices to the Settlement Class are Adequate .......... 30

1.    The Proposed Notice Satisfies Due Process ........................ 30

D.    Guidance 4 and 5: Opt-Outs and Objections ......................... 31

E.    Guidance 6: The Intended Attorneys' Fees and Expenses Request .................... 31

F.    Guidance 7: The Proposed Settlement and Proposed Service Awards Do Not Unjustly Favor Any Class Members, Including Named Plaintiffs ............... 32

G.    Guidance 8: Cy Pres Awardees .................................. 32

H.    Guidance 9: Proposed Timeline ................................. 33

I.    Guidance 10: Class Action Fairness Act ........................... 34

J.    Guidance 11: Past Distributions .................................. 34

VIII.    CONCLUSION ................................................. 34

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*American Surety Co. v. Jones,*
    384 Ill. 222 (1943) ............................................................................. 6

*Ayala v. Coach, Inc.,*
    No. 14-CV-02031-JD, 2016 WL 9047148 (N.D. Cal. Oct. 17, 2016) ............................. 30

*Bellinghausen v. Tractor Supply Co.,*
    306 F.R.D. 245 (N.D. Cal. 2015) ................................................................. 32

*Carlotti v. ASUS Computer Int'l,*
    No. 18-cv-03369-DMR, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) .................. 10, 26

*Carroll v. Crème de la Crème, Inc.,*
    2017-CH-01624 (Ill. Cir. Ct.) ................................................................. 17

*Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) ................................................................. 15

*Cotter v. Lyft, Inc.,*
    176 F. Supp. 3d 930 (N.D. Cal. 2016) ....................................................... 11, 19

*Coulter-Owens v. Rodale,*
    No. 1:14-cv-12688-RHC-RSW (E.D. Mich.) ................................................... 18

*Ebarle v. Livelock Inc.,*
    No. 15-cv-00258-HSG, 2016 WL 234364 (N.D. Cal. Jan. 20, 2016) ........................ 24

*Edmond v. DPI Specialty Foods,*
    2018-CH-09573 (Ill. Cir. Ct.) ................................................................. 17

*Fid. Fed. Bank & Tr. v. Kehoe,*
    547 U.S. 1051 (2006) ............................................................................. 23

*Fraley v. Facebook, Inc.,*
    966 F. Supp. 2d 939 (N.D. Cal. 2013) ....................................................... 16

*Golan v. Free Eats.com, Inc.,*
    930 F.3d 950 (8th Cir. 2019) ................................................................. 21

*Guttmann v. Ole Mexican Foods, Inc.,*
    No. 14-cv-04845-HSG, 2015 WL 13236627 (N.D. Cal. Nov. 13, 2015) ................... 25

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ............................................................... 11, 15

*Harris v. Vector Mktg. Corp.,*
    No. C–08–5198 EMC, 150 F.3d 1011 (9th Cir. 1998) ...................................... 26

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
3:15-cv-03747-JD
4848-1892-4213.v1

- iii -

Page

*Hart v. Colvin*,
  No. 15-cv-00623, 2016 WL 6611002 (N.D. Cal. Nov. 9, 2016) ......................... 11, 14, 15

*Hashw v. Dept. Stores Nat'l Bank*,
  182 F. Supp. 3d 935, 940 (D. Minn. Apr. 26, 2016) ...................................................... 16

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ....................................................................................... 24

*In re Capital One Telephone Consumer Protection Act Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) .............................................................................. 16

*In re Equifax Data Breach Litig.*,
  No. 117-md-2800-TWT (M.D. Ga. Jan. 13, 2020).......................................................... 15

*In re Google Buzz Privacy Litig.*,
  No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011)................................... 17

*In re Home Depot Data Breach Litig.*,
  No. 1:14-md-02583 (N.D. Ga. Aug. 23, 2016)............................................................... 15

*In re Hyundai & Kia Fuel Economy Litig.*,
  926 F.3d 539 (9th Cir. 2019) (en banc) ....................................................................... 14

*In re Lenovo Ad-ware Litig.*,
  No. 15-md-02624-HSG, 2018 WL 609994 (N.D. Cal. Nov. 21, 2018) ..................... 25, 26

*In re Linkedin User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015)................................................................................... 32

*In re Netflix Privacy Litig.*,
  No. 5:11–CV–00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ..................... 18

*In re Vizio, Inc., Consumer Privacy Litigation*,
  No. 16-ml-02693-JLS-KES (C.D. Cal.).......................................................................... 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  MDL No. 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016)..................... 19

*In re Yahoo! Data Breach Litigation*,
  No. 5:16-MD-02752-LHK, 2019 WL 387322 (N.D. Cal. Jan. 30, 2020) ................. 15, 30

*Jermyn v. Best Buy Stores, L.P.*,
  No. 08 Civ. 00214(CM), 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010)............................ 31

*Kehoe v. Fidelity Fed. Bank & Tr.*,
  No. 03-80593-CIV-HURLEY/LYNCH (S.D. Fla.)............................................................ 16

*Kinder v. Meredith Corp.*,
  No. 1:14-cv-11284 (E.D. Mich.)..................................................................................... 16

NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
3:15-cv-03747-JD
4848-1892-4213.v1

- iv -

**Page**

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ........................................................................ 12, 15, 17, 18

*Lloyd v. Xanitos*,
   2018-CH-15351 (Ill. Cir. Ct.) ........................................................................ 17

*Marshall v. Lifetime Fitness*,
   No. 2017 CH 14262 (Ill. Cir. Ct.) ........................................................................ 18

*McGee v. LSC Commcn's*,
   No. 2017 CH 12818 (Ill. Cir. Ct.) ........................................................................ 18

*McKnight v. Uber Techs., Inc.*,
   No. 14-cv-05615-JST, 2019 WL 3804676 (N.D. Cal. Aug. 13, 2019) ...................... 10, 15

*McLeod v. Bank of Am., N.A.*,
   No. 16-cv-03294-EMC, 2018 WL 5982863 (N.D. Cal. Nov. 14, 2018) ........................ 20

*Mendez v. C-Two Group, Inc.*,
   No. 13-cv-05914-HSG, 2017 WL 1133371 (N.D. Cal. Mar. 27, 2017) ........................ 12

*Moeller v. Am. Media, Inc.*,
   No. 5:16-cv-1167-JEL-EAS (E.D. Mich.) ........................................................................ 16

*Noroma v. Home Point Fin. Corp.*,
   No. 17-cv-07205-HSG, 2019 WL 1589980 (N.D. Cal. Apr. 12, 2019) ........................ 25

*O'Connor v. Uber Techs., Inc.*,
   201 F. Supp. 3d 1110 (N.D. Cal. 2016) ........................................................................ 11

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ........................................................................ 11

*Patel v. Facebook, Inc.*,
   932 F.3d 1264 (9th Cir. 2019) ........................................................................ 20

*Prelipceanu v. Jumio Corp.*,
   2018 CH 15883 (Ill. Cir. Ct.) ........................................................................ 17

*Raden v. Martha Stewart Living Omnimedia, Inc.*,
   No. 16-cv-12808 (E.D. Mich.) ........................................................................ 18

*Ralston v. Mortgage Investors Group, Inc.*,
   No. 5:08-CV-00536-JF(PSGx), 2013 WL 12175069 (N.D. Cal. June 19, 2013) ....... 13, 14

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................ 25

*Rosado v. Ebay Inc.*,
   No. 5:12-cv-04005-EJD, 2016 WL 3401987 (N.D. Cal. June 21, 2016) ........................ 32

NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
3:15-cv-03747-JD
4848-1892-4213.v1

Page

*Rosenbach v. Six Flags Entm't Corp.*,
 2019 IL 123186 ................................................................................................ 6

*Satchell v. Fed. Exp. Corp.*,
 Nos. C03–2659 SI, C 03–2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .......... 25

*Schulte v. Fifth Third Bank*,
 805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................ 31

*Schwarzschild v. Tse*,
 69 F.3d 293 (9th Cir. 1995) ............................................................................. 6

*Sekura v. L.A. Tan Enters., Inc.*,
 No. 2015 CH 16694 (Ill. Cir. Ct.) ................................................................ 17, 18

*Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*,
 271 F.R.D. 139 (N.D. Ill. 2010) ..................................................................... 31

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016) ................................................................................... 5

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) .......................................................................... 10

*Stokes v. Interline Brands, Inc.*,
 No. 12-cv-05527-JD, 2014 WL 5826335 (N.D. Cal. Nov. 10, 2014) ........................... 11

*United States v. Dish Networks LLC*,
 256 F. Supp. 3d 810 (C.D. Ill. 2017), *rev'd*, 954 F.3d 970 (7th Cir. 2020) .................... 21

*Watts v. Aurora Chicago Lakeshore Hosp. LLC*,
 2017-CH-12756 (Ill. Cir. Ct.) ....................................................................... 17

*Zhirovetsky v. Zayo Grp., LLC*,
 2017 CH 9323 (Ill. Cir. Ct.) ......................................................................... 18

**Rules and Statutory Provisions**

18 U.S.C. § 2710 .............................................................................................. 16

740 ILCS 14 ............................................................................................... *passim*

Fed. R. Civ. P. 23 ......................................................................................... *passim*

**Other Authorities**

5 *Moore's Federal Practice*, §23.85 ..................................................................... 26

6 Newberg on Class Actions § 18:19 ................................................................... 27

Illinois HB 5103 (2018) .................................................................................. 22

**Page**

Illinois HB 5374 (2020) ................................................................................................ 22, 23

Illinois HB 6074 (2016) .................................................................................................... 22

Illinois SB 2134 (2019) ..................................................................................................... 22

Illinois SB 3053 (2018) ..................................................................................................... 22

Illinois SB 3591 (2020) ..................................................................................................... 22

Illinois SB 3592 (2020) ..................................................................................................... 22

Illinois SB 3593 (2020) ..................................................................................................... 23

Manual for Complex Litigation § 21.63 ............................................................................ 33

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on May 21, 2020 at 10:00 a.m., or as soon thereafter as they may be heard, Carlo Licata, Nimesh Patel, and Adam Pezen ("Plaintiffs") on behalf of themselves and all members of the Class, hereby respectfully move this Court for an Order, pursuant to Rule 23 of the Federal Rules of Civil Procedure: (i) finding that the proposed settlement ("Settlement") is within the range of final approval as fair, reasonable, and adequate, and granting preliminary approval of the proposed Settlement; (ii) approving the form and substance of the proposed notice, as well as the proposed methods of disseminating notice to the Class; (iii) scheduling a date for the final fairness hearing and relevant deadlines in connection therewith; and (iv) such other and further relief as this Court deems just and proper.

This Motion is supported by the following memorandum of points and authorities, the accompanying Declaration of Jay Edelson ("Edelson Decl.") and the exhibits thereto, including the Stipulation and Agreement of Settlement, dated May 4, 2020 ("Stipulation"), which is attached as Exhibit 1 thereto.

## I.    ISSUES TO BE DECIDED

1.    Whether the Court should find that the proposed Settlement is within the range of final approval and grant preliminary approval of the proposed Settlement on the terms set forth in the Stipulation.

2.    Whether the Court should approve the form and substance of the proposed notice of Settlement of Class Action as well as the manner of notifying the Class of the Settlement.

3.    Whether the Court should schedule a hearing to determine whether the Settlement should be finally approved and to consider Class Counsel's application for an award of attorneys' fees and payment of expenses, including awards to the Class Representatives.

## II.    MEMORANDUM OF POINTS AND AUTHORITIES

In 2015, in the first ever class action filed under Illinois's Biometric Information Privacy Act ("BIPA"), 740 ILCS 14, plaintiff Carlo Licata alleged that the "Tag Suggestions" function on Facebook's social media platform required the collection and use of biometric data in a way that violates Illinois law. Nearly five years later, following several complicated legal disputes, years of intense fact and expert discovery, several path-marking rulings from this Court, and review of key

1   jurisdictional questions and of class certification by the United States Court of Appeals for the

2   Ninth Circuit, the parties have reached a settlement that is the largest consumer class action

3   settlement ever in a privacy case. The proposed Settlement provides a non-reversionary cash

4   recovery of $550 million to the Class this Court previously certified as well as important non-

5   monetary prospective relief requiring Facebook to turn its Face Recognition feature "off" for all

6   Class Members and to delete existing face templates for Class Members unless they provide

7   express consent to turn Face Recognition "on." *See* Stipulation ¶ 2.9(a).

8        In absolute monetary terms, the Settlement is historic. It dwarfs every previous settlement

9   in a BIPA class action, but it also stands out on a per-class-member basis. The Settlement provides

10  cash relief that far outstrips what class members typically receive in privacy settlements, even in

11  cases in which substantial statutory damages are involved. Consistent with its respect of Class

12  Members' privacy rights, the Settlement also incorporates meaningful forward-looking relief by

13  ensuring that Facebook secures the kind of informed and written consent that BIPA demands. This

14  Settlement was reached by counsel with unique understanding of the merits of the case and

15  eliminates the risk and uncertainty of continued proceedings in this Court and in future appeals as

16  well as ongoing legislative risks as described herein. From any angle, the proposed Settlement is

17  a superb result for the certified Class, and represents a fair, reasonable, and adequate resolution of

18  the case.

19  **III.    BACKGROUND**

20       **A.    Facebook's Alleged Violation of BIPA**

21       As the Court well knows, this case centers on the "Tag Suggestions" tool that Facebook

22  incorporated into its social media platform beginning in 2010. Even before 2010, Facebook

23  permitted users to identify individuals appearing in uploaded images by "tagging" them in a given

24  image. With "Tag Suggestions," when a Facebook user uploads an image to the platform, the "Tag

25  Suggestions" tool will detect faces in that image and suggest the identity of individuals depicted

26  in the image. By mid-2011, the tool was live for, among others, all Illinois Facebook users over

27  the age of 18, and was automatically activated for those Facebook accounts. (Facebook provided

28  NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
    UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
    3:15-cv-03747-JD                                                                      - 2 -

1   users the option to disable the tool. Whether that option satisfied BIPA was, as explained below, a

2   point of contention between the parties.) Facebook subsequently rolled out a new "Face

3   Recognition" setting to replace "Tag Suggestions."

4        Plaintiffs contend that "Tag Suggestions" (or "Face Recognition") violates BIPA. BIPA

5   prohibits the collection or storage of a person's biometric data without prior informed, written

6   consent. Absent prior notice and consent, "[n]o private entity may collect, capture, purchase,

7   receive through trade, or otherwise obtain a person's or a customer's biometric identifier or

8   biometric information[.]" 740 ILCS 14/15(b). "Biometric identifier," as defined under the statute,

9   includes a "scan of . . . face geometry." *See* 740 ILCS 10, 14/15. Plaintiffs contend that Facebook's

10  technology violates these prohibitions for class members because: (1) the process of creating a

11  "face template" involves scanning face geometry extracting from uploaded images the unique

12  biometric identifiers of an individual's face, and (2) by automatically enrolling many Facebook

13  users, including all of those over the age of 18 in Illinois, in "Tag Suggestions" (and later "Face

14  Recognition"), Facebook failed to obtain informed and written consent to the collection of

15  biometric identifiers.

16      **B.**     **Relevant Procedural and Litigation History**

17       On April 1, 2015, the first of three lawsuits that were eventually consolidated into the

18  present action was filed by Carlo Licata in Cook County Circuit Court. The lawsuits of Adam

19  Pezen and Nimesh Patel, filed in the United States District Court for the Northern District of

20  Illinois, soon followed. Facebook promptly removed Licata's action to federal court, and, after

21  Facebook filed a motion to transfer the cases to the Northern District of California, the parties

22  stipulated to the transfer of all three cases to this Court.

23       After the Plaintiffs filed their Consolidated Class Action Complaint ("Complaint") (Dkt.

24  40), Facebook moved to dismiss the Complaint principally on choice-of-law grounds, asserting

25  that the Plaintiffs' Illinois claims were barred by a California choice-of-law provision in

26  Facebook's user agreement. (Dkt. 69.) Plaintiffs opposed the choice-of-law argument on the

27  grounds that, among other things, BIPA reflected a fundamental Illinois public policy that should

28

NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
3:15-cv-03747-JD        - 3 -

1  not be displaced by contract. (Dkt. 73, at 3-6.) On its own motion, the Court converted Facebook's

2  submission, insofar as it concerned choice of law, to a motion for summary judgment. The parties

3  thereafter marshaled evidence and argument regarding contract formation and choice of law (*see*

4  Dkts. 96, 97), and lodged evidentiary objections as well. (Dkt. 105.) On March 2, 2016, the Court

5  held a three-hour evidentiary hearing at which the parties introduced live evidence and the Court

6  heard argument and conducted its own additional inquiry regarding the applicability of Facebook's

7  choice-of-law provision and the merits of Facebook's contract-based defense. (Dkt. 109.)

8  Thereafter, in a detailed order thoroughly addressing each element of California's choice-of-law

9  rules, the Court adopted Plaintiffs' position and refused to enforce the choice-of-law clause,

10 concluding that "there [is] no reasonable doubt that the Illinois Biometric Information Privacy Act

11 embodies a fundamental policy of the state of Illinois" and that Illinois's "greater interest" in the

12 dispute was "readily apparent." (Dkt. 120, at 16-19.)

13         What followed was a long, and often contentious, discovery period. The parties exchanged

14 tens of thousands of pages of documents. And although the parties worked diligently to resolve

15 any disputes they had regarding document productions, on four separate occasions the parties

16 found themselves unable to resolve their differences absent intervention by the Court. (Dkts. 146,

17 149, 168, 173, 209, 216, 243, 252.) In addition, Plaintiffs conducted several lengthy and often

18 highly technical depositions of Facebook personnel, and Facebook likewise deposed each of the

19 named plaintiffs. In addition to the exchange of documents and fact depositions, both sides

20 marshaled the testimony of well-credentialed experts to opine on the operation of the technology

21 behind the "Tag Suggestions" tool. This meant detailing an expert to conduct an on-site review of

22 Facebook's source code over a period of weeks. Both sides also submitted rebuttal expert reports,

23 which delved into the finer points of biometrics, in order to assist the factfinder in making an

24 intelligent assessment of the facts and technical underpinnings of this case.

25         Amidst all of the heavy lifting the parties were doing to develop the factual record,

26 Facebook also attempted to short-circuit the case in a motion to dismiss contending that the

27 Plaintiffs lacked standing to sue. Facebook's motion relied upon the Supreme Court's decision in

28

1   *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), in which the Supreme Court emphasized that a

2   plaintiff must suffer a "concrete" injury-in-fact in order to have standing to sue. After initially

3   putting the motion on hold while the Ninth Circuit was considering *Spokeo* on remand, the Court

4   denied Facebook's refiled motion, concluding that the BIPA "codified a right of privacy in

5   biometric information" by vesting "in Illinois residents the right to control their biometric

6   information by requiring notice before collection and giving residents the power to say no by

7   withholding consent." (Dkt. 294, at 6.) If collection occurs without notice, and without giving the

8   subject the right to say no, "the precise harm the Illinois legislature sought to prevent is then

9   realized." (*Id.*)

10          While Facebook's renewed jurisdictional motion was pending, the parties also initiated a

11   flurry of more fact-intensive motions practice. First, Plaintiffs moved for certification of a class of

12   all Facebook users living in Illinois whose face appeared in an image uploaded to Facebook from

13   Illinois after June 7, 2011 (the date by which "Tag Suggestions" were live for all users), and a

14   subclass of Facebook users living in Illinois for whom Facebook had stored a face template over

15   the same time frame. (Dkt. 254.) Facebook filed a motion for summary judgment contending that

16   (1) in light of Illinois's extraterritoriality doctrine, BIPA does not apply because Facebook's facial

17   recognition processing and creation of face templates occurred only on servers outside of Illinois,

18   and (2) in any event the dormant commerce clause barred relief for similar reasons. (Dkt. 257.)

19   Facebook later filed a second motion for summary judgment, arguing that (1) Plaintiffs were not

20   "aggrieved" by Facebook's purported violation of BIPA so they could not recover damages, (2)

21   that Facebook was not negligent so Plaintiffs could not recover anything, and (3) that Facebook

22   did not collect anyone's biometric identifiers because its technology does not rely on "human-

23   notable" facial features. (Facebook also re-raised its extraterritoriality and "aggrieved" contentions

24   in opposition to Plaintiffs' motion for class certification.) (Dkt. 299.) Plaintiffs cross-moved for

25   partial summary judgment pointing to internal Facebook documents culled from Facebook's

26   document productions acknowledging that Facebook's servers "scan" faces, and their supporting

27   experts' testimony that the information collected is generally understood as "face geometry." As

28

NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
3:15-cv-03747-JD                                                                                    - 5 -

1   the Court later recounted, the parties "filed over 100 pages of briefs for the cross-motions,

2   accompanied by several hundred pages of documents and emails, deposition testimony, expert

3   reports and other exhibits." (Dkt. 372, at 1.)

4           The Court appropriately considered the class certification motion first, *see Schwarzschild*

5   *v. Tse*, 69 F.3d 293, 295, 297 n.4 (9th Cir. 1995), and to say that certification was heavily contested

6   would be an understatement. The parties disputed whether the requirement that a BIPA plaintiff

7   be "aggrieved" implied a requirement of monetary or physical harm as a prerequisite to recovery.

8   The Court concluded that it did not, reasoning that the only reported case from the Illinois

9   Appellate Court on the issue seemed to accept "that injury to a privacy right is enough to make a

10  person aggrieved under BIPA," but that, if that case did require monetary or physical harm, it was

11  wrongly decided under Illinois law. (Dkt. 333, at 9-11.) Indeed, this Court noted that, under Illinois

12  law, "a party is aggrieved by an act that directly or immediately affects her legal interest," relying

13  on the Illinois Supreme Court's decision in *American Surety Co. v. Jones*, 384 Ill. 222, 230 (1943).

14  The Court's decision was later supported by the Illinois Supreme Court's unanimous decision in

15  *Rosenbach v. Six Flags Entertainment*, 2019 IL 123186, which adopted verbatim this Court's

16  interpretation of the statute as laid out in the *Spokeo* and class certification decisions, and which

17  also relied on *Jones* to reject the reasoning of the appellate court. *See id.* ¶ 31 (citing *Jones*), ¶¶ 33-

18  34 (quoting this Court). Having presciently resolved the interpretive issue presented by the word

19  "aggrieved," the Court also rejected the plaintiffs' broader proposed class, instead certifying, with

20  a modification, the plaintiffs' narrower proposal.

21          All the while, the parties attempted on two occasions to reach a settlement. The first

22  attempt, through a mediation with the Honorable Layn Phillips (Ret.), occurred in May 2016,

23  shortly after the Court's order denying Facebook's motion to dismiss on choice-of-law grounds.

24  The mediation proved unsuccessful. The second formal attempt at a settlement occurred in May

25  2018, at a Court-ordered mediation session before Magistrate Judge Ryu. By the time the parties

26  met with Judge Ryu, the Court had certified the Class, the factual record had been fully developed,

27  and the parties' summary judgment positions had been memorialized, giving both sides much more

28  NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
    UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
    3:15-cv-03747-JD                                                                           - 6 -

information with which to evaluate their strengths and weaknesses, as well as the value of the case. As such, some progress was made. But the parties also left this mediation unable to reach a settlement. (Dkt. 362; *see* Edelson Decl. ¶ 5.)

The Court then issued a series of rulings, and the parties began preparing for trial in earnest. The Court denied all the pending summary judgment motions in full, finding that the parties' submissions highlighted "a multitude of fact disputes," and noting that an "often unsettled" record could not support judgment for either party. (Dkt. 372, at 1.) In order to keep the Court's scheduled trial date, the parties then began working nearly around the clock on the necessary pretrial tasks. Over the course of two weeks, the parties exchanged several drafts of proposed notice to the Class and met and conferred several times in an attempt to agree on the particulars of a notice program. Ultimately, the parties were forced to ask the Court to resolve some lingering differences in their notice proposals, which the Court resolved by ordering notice be provided to the Class through Facebook "jewel" notification and on Class Members' Facebook "newsfeed," as well as via email from a third-party administrator. The parties also exchanged proposed motions *in limine*, issued trial subpoenas, and, in accordance with the Court's standing order, met and conferred on these matters as well. During this time, Class Counsel met with a trial consultant in an intense week-long session in order to develop and road test a trial strategy.

The parties' all-consuming trial preparations were brought to a halt when the Ninth Circuit accepted Facebook's interlocutory appeal of class certification and issued an emergency stay of all district court proceedings. The parties submitted over 150 pages of briefing regarding the Court's orders rejecting Facebook's motion to dismiss for lack of standing and certifying a class. The parties' submissions were joined by seven amicus briefs. After oral argument, the Ninth Circuit ultimately affirmed this Court's decisions in all respects, and denied Facebook's petition for rehearing *en banc* without a vote or dissent. Facebook thereafter retained former Acting United States Solicitor General Neal Katyal and petitioned the Supreme Court for a writ of certiorari.

Like the rest of this litigation, the Settlement ultimately reached by the parties was the result of extended, vigorous negotiation. The parties recognized that the pendency of Facebook's

1 certiorari petition provided a window of opportunity to settle the case. They retained former United

2 States Ambassador Jeffrey Bleich to guide their discussions. (*See* Declaration of Jeffrey L. Bleich

3 ["Bleich Decl."], attached as Exhibit 3 to the Edelson Decl., ¶ 1.) The scheduled eight-hour

4 mediation stretched to 11 as the parties worked to reach a settlement. (*Id.* ¶ 2.) The day ended with

5 an agreement in principle, but much work left to be done to finalize all the terms. The parties later

6 returned to Ambassador Bleich for assistance on remaining issues and have worked diligently since

7 then to reach agreement on the many unique aspects of this Settlement. (*Id.* ¶ 3.)

8 **IV.    THE SETTLEMENT**

9         For the Court's convenience, the key terms of the Settlement are summarized below:

10        **A.    Class Definition**: All individuals located in Illinois for whom Facebook stored a

11 face template after June 7, 2011.[1] (*See* Dkt. 333.)

12        **B.    Monetary Relief**: Facebook has agreed to create a Settlement Fund of $550

13 million, from which each class member who submits an approved claim shall be entitled to a *pro*

14 *rata* share, after deducting administrative expenses, any fee award to Class Counsel, and any

15 incentive payments to the Class Representatives. No portion of the Settlement Fund will revert to

16 the Defendant. Class Members shall be paid by check or electronic payment, at their election. Any

17 checks not cashed within ninety (90) days will either be redistributed to claiming Class Members,

18 or, if the amount is nominal, donated to a Court-approved *cy pres* recipient. (Stipulation ¶¶ 2.1-

19 2.4, 2.6.)

20        **C.    Prospective Relief:** Facebook has agreed to turn Face Recognition settings for

21 Class members to "off" and to delete existing face templates for Class members who do not

22 affirmatively set their Face Recognition setting to "on" within 180 days of the Settlement's

23 effective date. Before Class Members turn their Face Recognition settings to "on," Facebook will

24

25 _____

[1]    The only modification of the class certified by this Court is a standard list of persons related to
26 the litigation that are excluded from the Class: "(1) any Judge, Magistrate, or mediator presiding
over this Action and members of their immediate families, (2) the Defendant, Defendant's
27 subsidiaries, parent companies, successors, predecessors, and any entity in which Facebook or its
affiliates have a controlling interest and its employees, officers and directors, (4) Class Counsel,
and (5) the legal representatives, successors or assigns of any such excluded persons."

28 NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
3:15-cv-03747-JD                                                                      - 8 -

1   disclose, in a separate document that complies with BIPA, how it uses face templates. If a Class

2   member takes no action after reviewing this document, Face Recognition will remain "off" for that

3   Class member and any corresponding face template stored by Facebook would be deleted. The

4   foregoing relief will not apply to Class Members who joined Facebook after September 3, 2019

5   (the date on which Facebook ceased automatically activating Face Recognition for new users), and

6   certain other users who already went through an opt-in process. (*Id*. ¶ 2.9.)

7         **D.**    **Release**: In exchange for the settlement relief detailed above, Facebook will receive

8   from the Class a release that is narrowly tailored to the claims related to the use of facial

9   recognition technology on users located in Illinois. The release covers claims that were actually

10   litigated in this action, or could have been, whether through formal motion practice or in terms of

11   information sought and produced in discovery. This release is no broader than would be the

12   operation of res judicata were this case litigated to judgment. (*Id*. ¶ 1.25.)

13         **E.**    **Class Notice**: Class members will be notified by the methods as ordered by the

14   Court after certification of the Class; namely, by email through a third-party administrator as well

15   as by Facebook jewel notification and the Facebook newsfeed. The Court-approved content of the

16   notice has been modified as necessary to reflect the settlement of this action, but nonetheless

17   communicates Class Members' rights and options under the Settlement in plain, easily understood

18   language. (*Id*. ¶¶ 4.2-4.3.)

19         **F.**    **Incentive Awards**: Named Plaintiffs and Class Representatives Nimesh Patel,

20   Adam Pezen, and Carlo Licata have vigorously pursued these claims on their own behalf and on

21   behalf of absent Class members since 2015. Each has been integral to the successful prosecution

22   of the matter. As will be further described in sworn declarations that will be filed in conjunction

23   with counsels' request for an award of attorneys' fees, reimbursement of expenses, and incentive

24   awards for the named plaintiffs, in addition to each researching and filing their complaints, each

25   named plaintiff responded to substantial requests for production from their personal files, and

26   provided live deposition testimony – twice. Each of them attended the second mediation, either in

27   person, or in one case telephonically from abroad. In light of these efforts, Plaintiffs will move for

28

1   an incentive award of no more than $7,500 each, in recognition of the time, effort and expense

2   they incurred pursuing claims that benefited the entire Class.

3   **G.   Attorneys' Fees and Expenses**: Plaintiffs will separately seek an award of

4   attorneys' fees and reimbursement of litigation costs and expenses to be paid by Defendant from

5   the Settlement Fund. The request for an award of attorneys' fees will not exceed the Ninth Circuit's

6   benchmark of 25% of the fund, and counsel estimate that they will request an award of litigation

7   costs and expenses of around $981,000.00, plus whatever additional expenses are incurred and/or

8   invoiced while implementing the Settlement. There is no "clear sailing" provision, and Facebook

9   may challenge the fee and expense request if it desires. The three firms the Court appointed as

10  Class Counsel have agreed to split any awarded fees equally.[2]

11  **V.   ARGUMENT**

12  **A.   Legal Standard**

13  "'The Ninth Circuit maintains a strong judicial policy that favors the settlement of class

14  actions.'" *Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369-DMR, 2019 WL 6134910, at *3

15  (N.D. Cal. Nov. 19, 2019) (quoting *McKnight v. Uber Techs., Inc.*, No. 14-cv-05615-JST, 2017

16  WL 3427985, at *2 (N.D. Cal. Aug. 7, 2017)).[3] The Court must, however, "determine whether a

17  proposed settlement is fundamentally fair, adequate and reasonable" pursuant to Rule 23(e). *Staton

18  v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "Assessing a settlement proposal requires the

19  district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense,

20  complexity, and likely duration of further litigation; the risk of maintaining class action status

21  throughout the trial; the amount offered in settlement; the extent of discovery completed and the

22  stage of the proceedings; the experience and views of counsel; the presence of a governmental

---

24  [2]   Labaton Sucharow LLP will also compensate its former Illinois Counsel from its share of the
25  fee award. In compliance with the Northern District's *Procedural Guidance for Class Action
    Settlements*, Counsel states that, to date, they have invested approximately 30,000 hours into this
    matter, resulting in a base lodestar of approximately $20,430,000.00. Counsel have further
26  incurred approximately $981,000.00 in expenses. Counsel will provide a detailed accounting of
    these figures when they move for an award of fees and costs. (Edelson Decl. ¶¶ 9-12.)

27  [3]   All citations and footnotes omitted, and emphasis added unless otherwise indicated.

28

participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The primary consideration in evaluating a class settlement agreement is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). "The proposed settlement must be 'taken as a whole, rather than the individual component parts' in the examination for overall fairness." *Hart v. Colvin*, No. 15-cv-00623, 2016 WL 6611002, at *5 (N.D. Cal. Nov. 9, 2016) (citing *Hanlon*, 150 F.3d at 1026).

The Court will give preliminary approval of a class settlement and notice only when: (i) "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations"; (ii) "has no obvious deficiencies"; (iii) "does not improperly grant preferential treatment to class representatives or segments of the class"; and (iv) "falls with the range of possible approval." *Stokes v. Interline Brands, Inc.*, No. 12-cv-05527-JD, 2014 WL 5826335, at *3 (N.D. Cal. Nov. 10, 2014). "'In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiffs' expected recovery balanced against the value of the settlement offer.'" *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1120-21 (N.D. Cal. 2016) (quoting *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016)); *see also* This District's *Procedural Guidance for Class Action Settlements, United States District Court, Northern District of California*, available at https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

By any measure, the proposed Settlement is an outstanding result for the Class. The Settlement resolves the claims of the Class previously certified by the Court. The Settlement establishes a non-reversionary Settlement Fund of $550 million out of which claiming Class Members will receive a *pro rata* payment after deducting the costs of the Settlement, attorneys' fees and expenses, and Class Representative awards. As explained below, Class Counsel expect, based upon their experience in consumer class actions and precedent set by other BIPA settlements (bearing in mind that this case is unique even among BIPA cases), a higher-than-usual claims rate

in this case, likely in the range of 15% to 30%. As a result, Class Counsel project that claiming Class Members will receive between approximately $150 and $300, or between 15% and 30% of the possible recovery on an individual claim. The Settlement also contains important prospective relief, with Facebook to turn its Face Recognition feature off for all Class Members and to delete existing face templates for Class Members unless they provide express consent to turn Face Recognition on within 180 days of the Settlement becoming final.[4] Finally, the Settlement contemplates a program of notice to the class that is identical to the notice that this Court already approved.

The proposed Settlement is fair, reasonable, adequate and an overall superb result for the Class. Accordingly, Plaintiffs seek entry of an order: (i) granting preliminary approval of the proposed Settlement; (ii) approving the form and manner of notice of the proposed Settlement to the Class; and (iii) setting a hearing date for final approval of the Settlement, Class Counsel's application for attorneys' fees and expenses, and Plaintiffs' application for awards reflecting their contribution to the litigation and a schedule for various relevant deadlines relevant.

### B.   Class Certification Need Not Be Revisited

The Ninth Circuit has made clear that class action settlements reached before formal certification of a litigation class are subject to higher scrutiny. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). This more exacting standard is inapplicable here because the Court certified the Class, and the Ninth Circuit affirmed that decision.

Moreover, the Court need not revisit its class certification Order during preliminary approval if "no facts that would affect the Court's reasoning have changed." *Mendez v. C-Two Grp., Inc.*, No. 13-cv-05914-HSG, 2017 WL 1133371, at *3 (N.D. Cal. Mar. 27, 2017). This is particularly true where the proposed settlement provides relief for "the same persons" as the

---

[4]    Exempted from this process are Class members who signed up for Facebook after September 2019 (when Face Recognition was set to off by default for new users) or Class Members who already manually enabled Face Recognition for themselves after Facebook disabled the feature for them as they will have already provided express consent to turn Face Recognition on.

NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
3:15-cv-03747-JD                                                                                    - 12 -

certified class. *Ralston v. Mortg. Inv'rs Grp., Inc.*, No. 5:08-CV-00536-JF(PSGx), 2013 WL 12175069, at *1 (N.D. Cal. June 19, 2013).

Here, the certified Class and the settlement Class are functionally identical. *See supra* note 1. That said, the Court's class certification and notice Orders left open the ultimate question of how precisely to determine who is "located" in Illinois.[5] The Court has provided the parties with valuable guidance in this regard. At the hearing on notice following certification, the Court noted that someone in Illinois for "less than three months" would not meet the criteria for Class membership such that that user would not be "eligible to get any of the damages that might be awarded." (Exhibit 2 to the Edelson Decl., at 15:16-19). The parties have engaged extensively to develop a notice program that is consistent with the Court's approved guidance at the class certification hearing, including the Court's admonitions about the difference between notice untethered to fund distribution and notice attaching a claim form.[6] Ultimately, the parties have

---

[5]    Although the Court ordered that notice be sent to every individual who, according to Facebook's data, had a "predicted home address" in Illinois for at least 60 consecutive days, that didn't resolve the issue of who exactly would be entitled to make a claim for payment at settlement or after verdict.

[6]    Exh. 2, at 15:9-19 ("This is not writing checks. There is -- a lot of things have to happen before that ever happens. Now, it's okay to be -- throw a wider net, cast a wider net for notice. It may be that we use a shorter time period for notice … but should the day come that claim forms get submitted, we tighten it up.")

NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
3:15-cv-03747-JD                                                                                    - 13 -

1    agreed that an individual should be deemed "located in Illinois" if she lived in Illinois for 183 or

2    more days. (Stipulation, Exh. C.) This time period falls short of Illinois's residency requirements

3    (one full year), but is long enough to include such individuals as college students while still

4    excluding transients. To be clear, however, the proposed 183-day location requirement does not

5    mandate a continuous presence exclusively in Illinois for such a period of time. (*Id.*) Thus, for

6    instance, the undergrad at Northwestern who visits his parents out of state for the holidays and

7    later leaves the state for spring break would be included and entitled to claim. On the other side of

8    the ledger, the 2L resident of California, who attends UCLA Law School but spends a summer

9    internship at a Chicago law firm would not be. This best effectuates both this Court's and the Ninth

10   Circuit's rulings regarding the BIPA's lack of extraterritorial application, while maintaining the

11   integrity of the certified Class, and is a common-sense approach to providing Illinoisans with

12   protection under an Illinois statute.

13        No new facts have developed since the Ninth Circuit affirmed class certification that would

14   affect the certification decision, especially now that this settlement has taken any trial management

15   concerns off the table. *See In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 556-57 (9th

16   Cir. 2019) (en banc). Moreover, the result in the Ninth Circuit and this settlement are powerful

17   evidence that Class Counsel and the Class Representatives have continued to vigorously prosecute

18   this action on the certified Class's behalf, and there are no new facts that should affect the

19   appointment of any firm or plaintiff as champion of the certified class. *See Ralston*, 2013 WL

20   12175069 at *1 (finding that when previously certified, the class representative and class counsel

21   should remain in their roles for class settlement). Consequently, there is no need for the Court to

22   revisit class certification here.

23        **C.    The Settlement Is Fair, Reasonable, and Adequate and Should Be**
             **Preliminarily Approved**
24

25        "Preliminary approval of a settlement is appropriate if 'the proposed settlement appears to

26   be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does

27   not improperly grant preferential treatment to class representatives or segments of the class, and

28   falls within the range of possible approval.'" *Hart*, 2016 WL 6611002, at *5. "The proposed

settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class." *See id.* (citing *Hanlon*, 150 F.3d at 1027). "[W]ether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane*, 696 F.3d at 819. In assessing fairness, the Court considers:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004); *see McKnight*, 2019 WL 3804676, at *4.

### 1. The Cash Component of the Settlement is the Largest Privacy Settlement in U.S. History, and Provides Class Members Excellent Value

The cash component of the Settlement is $550 million and is the largest known privacy settlement ever. (Stipulation ¶ 1.30.) In absolute terms, the Settlement is without meaningful comparators. In terms of overall settlement value, the previous largest privacy settlement on record where cash was made available, was the consumer lawsuit against Equifax following its data breach exposing the information of 147 million class members. And although that settlement was valued at $380 million, much of that value came in the form of credit monitoring, and only $31 million was actually made available to claiming class members, who, if affirmed by appeal, would eventually receive essentially nominal relief.[7] Other large privacy settlements with cash payments—all in the data-breach context, as well—include the $195 million settlement in *In re Home Depot Data Breach Litigation* and the pending $117.5 million settlement in *In re Yahoo!*

---

[7] Although the settlement was touted as providing $125 to each claiming class member, at the time of final approval in that case, approximately 11,700,000 class members had filed claims, meaning they would be receiving about $2.64, not $125. *See* Final Approval Order, at 10, ECF No. 956, *In re Equifax Data Breach Litig.*, No. 117-md-2800-TWT (M.D. Ga. Jan. 13, 2020).

NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
3:15-cv-03747-JD                                                                    - 15 -

1    *Data Breach Litigation*. But, in each of those settlements, the size of the class was multiple times

2    the size of the Class here.

3           The cash recovery provided for here also dwarfs recovery provided for in the settlement of

4    other privacy claims with available statutory damages. Large class actions under the Telephone

5    Consumer Protection Act, which provides for $500 in statutory damages, typically settle for less

6    than $40 per person. *See*, *e.g.*, *In re Capital One Telephone Consumer Protection Act Litig.*, 80 F.

7    Supp. 3d 781, 787 (N.D. Ill. 2015) (providing $34.60 to each claiming class member); *Hashw v.

8    Dept. Stores Nat'l Bank*, 182 F. Supp. 3d 935, 940, 944-45 (D. Minn. Apr. 26, 2016) (approving

9    settlement providing class members who received over 100 calls in violation of the TCPA a single

10   $33.20 payment). And a large privacy case under the Drivers' Privacy Protection Act from 15

11   years ago provided a $50 million cash settlement affording approximately 600,000 class members

12   $160 of the $2,500 they might have been entitled to. *Kehoe v. Fidelity Fed. Bank & Tr.*, No. 03-

13   80593-CIV-HURLEY/LYNCH (S.D. Fla.)*. And in *In re Vizio, Inc., Consumer Privacy Litigation*,

14   No. 16-ml-02693-JLS-KES (C.D. Cal.), the plaintiffs alleged that Vizio, through its smart TVs,

15   collected an individual's viewing history and transmitted that information, along with personally

16   identifiable information, to third parties in violation of the Video Privacy Protection Act, 18 U.S.C.

17   § 2710, which allows for recovery by aggrieved individuals of $2,500, *id.* § 2710(c)(1)-(2). From

18   the resulting $17 million settlement, claiming class members received between $13 and $31 per

19   Vizio television purchased. A Michigan statute, the Preservation of Personal Privacy Act, mirrors

20   the VPPA, although it allowed, until a recent amendment, for recovery of $5,000. In settlements

21   reached to resolve class action claims under that law, class members recovered between $32.40,

22   *Kinder v. Meredith Corp.*, No. 1:14-cv-11284 (E.D. Mich.), and $105.03, *Moeller v. Am. Media,

23   Inc.*, No. 5:16-cv-1167-JEL-EAS (E.D. Mich.). Such recoveries are the norm even in cases against

24   Facebook. In *Fraley v. Facebook, Inc.*, a class sued Facebook for using their likenesses without

25   consent in "Sponsored Stories," allegedly in violation of the laws of several states, at least one of

26   which authorized statutory damages of $750. In the resulting settlement, claiming class members

27   got $15. *See* 966 F. Supp. 2d 939, 943-44 (N.D. Cal. 2013).

28

1   And too often, statutory privacy class actions commonly settle and are approved despite

2   securing no relief to the Class, or only *cy pres* relief, despite the availability of large statutory

3   damages amounts. *See*, *e.g.*, *Lane*, 696 F.3d at 820–22 (9th Cir. 2012); *In re Google Buzz Privacy*

4   *Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *3-5 (N.D. Cal. June 2, 2011) (approving $8.5

5   million *cy pres* payment as sole monetary relief in case where statutory damages of up to $10,000

6   per claim were available to a class of millions).

7   The Settlement also stands out in the BIPA space on a per-class member basis. Under the

8   BIPA, a prevailing plaintiff may recover $1,000 for each negligent violation and $5,000 for each

9   intentional violation. *See* 740 ILCS 14/20. In the only other finally approved consumer BIPA

10   settlement, class members received $125. *See Sekura v. L.A. Tan Enters., Inc.*, No. 2015 CH 16694

11   (Ill. Cir. Ct.). Another consumer settlement is currently pending before the court in *Prelipceanu v.*

12   *Jumio Corp.*, 2018 CH 15883 (Ill. Cir. Ct.). The settlement fund in *Jumio* is $7 million, although

13   the parties provide no estimate of class size or likely recovery.[8]

14   As this Court's summary judgment Order noted, the evidence regarding whether Facebook

15   was negligent in violating the BIPA did not permit judgment as a matter of law to either party.

16   (Dkt. 372, at 8.) The Court also allowed that Facebook's "mistake of law" defense might well

17   foreclose any finding that Facebook acted intentionally, especially in light of the fact that Plaintiffs

18   tendered no evidence showing that Facebook did not genuinely misapprehend BIPA's scope. (*Id.*,

19   at 9.) Thus, an individual plaintiff litigating a claim identical to the Class's claim would likely be

20

21   ———————————

[8]   While there are relatively few consumer BIPA settlements, there are several cases brought by

22   employees and against their employers in Illinois State courts involving biometric timeclocks.

23   Some—like other privacy settlements referenced in this brief—have been for zero cash and given the class credit monitoring. *E.g.*, *Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Ill. Cir.

24   Ct.). More recent employment BIPA settlements have settled for $1,000 or more per person. *E.g.*, *Edmond v. DPI Specialty Foods*, 2018-CH-09573 (Ill. Cir. Ct.) (fund constituting $1,000 per

25   person with direct checks); *Watts v. Aurora Chicago Lakeshore Hosp. LLC*, 2017-CH-12756 (Ill. Cir. Ct.) (fund constituting $1,000 per person with direct checks); *Lloyd v. Xanitos*, 2018-CH-

26   15351 (Ill. Cir. Ct.) (fund constituting $1,300 per person with direct checks). In all these cases, and the other noted below, the class were at most a few hundred or few thousand people for whom

27   the defendant had U.S. Mail addresses.

28   NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
3:15-cv-03747-JD                                                                      - 17 -

entitled, if she prevailed on questions of liability, to $1,000. Here, as explained above, Class Counsel estimates that claiming Class Members will receive between $150 and $300.[9] This amount compares favorably to per-class member recovery in similar BIPA actions.

In many privacy case settlements, including several of the cases just described, claiming class members receive *cy pres* relief or at best dozens of dollars rather than hundreds. The instant Settlement bucks that trend. And while the estimated recovery does represent a discount from full recovery in an individual case, as detailed below, the discount to the monetary component is warranted in light of the benefit to the Class and risks to recovery through continued litigation.

Finally, given the context of a global pandemic, the timely distribution of settlement funds is also a benefit to the Class. Courts and litigants often consider the time-value of money as a factor favoring settlements over lengthy trials and appeals. *See Lane*, 696 F.3d at 820 (affirming approval of class action settlement, in part because "the immediate benefits represented by the Settlement outweighed the possibility—perhaps remote—of obtaining a better result at trial"); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2013 WL 1120801, at *5 (N.D. Cal. Mar. 18, 2013) (determining that the settlement was fair, adequate and reasonable when the calculation of the value of the case took into account the time value of money). That consideration is particularly acute in the present climate, and the value of meaningful settlement relief delivered to Class

---

[9]    As stated above, this estimate is based upon a predicted claims rate of 15-30%. In BIPA settlements utilizing a claims form, typical claims rates have been in the mid-teens: *Sekura v. L.A. Tan Enters., Inc.*, No. 2015 CH 16694 (Ill. Cir. Ct.) (19% claims rate); *McGee v. LSC Commc'n's*, No. 2017 CH 12818 (Ill. Cir. Ct.) (13% claims rate); *Marshall v. Lifetime Fitness*, 2017 CH 14262 (Ill. Cir. Ct.) (16% claims rate). In at least one instance, a settlement achieved a 30% claims rate. *See Zhirovetsky v. Zayo Grp., LLC*, 2017 CH 9323 (Ill. Cir. Ct.). But it bears noting that these classes were far smaller than the certified class here, ranging in size from 500 individuals to 37,000. In compliance with this District's *Procedural Guidance on Class Action Settlements*, Class Counsel submits that a different, but still useful, comparator are settlements under Michigan's Preservation of Personal Privacy Act. As here, these settlements involved claims against a defendant with whom the class had a direct relationship. Claims rates in these settlements have ranged from 11%, in *Coulter-Owens v. Rodale*, No. 1:14-cv-12688-RHC-RSW (E.D. Mich.) to 16%, in *Raden v. Martha Stewart Living Omnimedia, Inc.,* No. 16-cv-12808 (E.D. Mich.). Again, these classes are also far smaller than the Class in the instant case. Although experience would suggest that the large size of this Class is likely to result in a lower claims rate, Counsel's estimate is comparatively optimistic because of the attention this case has received, and the comprehensiveness of the proposed notice plan, which is discussed below.

1  Members this year is far greater than the impact of compensation that might come years from now

2  after a trial and appeals.

### 2.    Non-Monetary Components of the Proposed Settlement Serve to Ensure User's Privacy Rights

In addition to the $550,000,000 cash offered in the Settlement, the Settlement incorporates non-monetary prospective relief that confers a substantial benefit on the Class. Specifically, under the terms of the proposed Settlement, Facebook will automatically turn Class Members' Facial Recognition settings to "off," and delete any face template they have for a Class member unless that Class member affirmatively opts in to Facial Recognition after receiving BIPA-compliant disclosures in a standalone document. (Stipulation ¶ 2.9.) In other words, Facebook will be precluded not only by statute, but also by a separately enforceable agreement from collecting or storing Class Members' biometric data, through facial recognition technology or any other means in Illinois, without specific Class Member consent. These non-monetary components of relief, in combination with recent additional changes to Facebook's facial recognition practices, provide a structural framework of compliance and protection of the privacy rights of Class Members and the residents of Illinois.

### 3.    Plaintiffs Have a Strong Case but Risks and Expense of Continued Litigation Are High

"Determining whether the settlement falls in the range of reasonableness … requires evaluating the relative strengths and weaknesses of the plaintiffs' case." *Cotter*, 176 F. Supp. 3d at 935. Here, of course, both sides were confident in the strength of their respective positions. Moreover, this Court's summary judgment Order concluded that the record was insufficient to resolve as a matter of law *any* of the factual questions going to liability and damages in this case. (Dkt. 372.) Indeed, the Court itself acknowledged that "It is entirely possible that Facebook will prevail and that plaintiffs will take nothing or win a damages award far smaller than Facebook fears." (Dkt. 404, at 3.) Thus, while Plaintiffs remain confident they would have prevailed at trial, "Plaintiffs' strong claims are balanced by the risk, expense, and complexity of their case, as well as the likely duration of further litigation." *In re Volkswagen "Clean Diesel" Mktg., Sales*

*Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2016 WL 6248426, at *11 (N.D. Cal. Oct. 25, 2016).

Mindful, as the Court has pointed out, that every case involves general litigation risk, Plaintiffs and Class Counsel identified four specific risks that justify the specific agreement reached here. We discuss these in turn.[10]

### a.   Popularity of Facebook's Platform Posed Substantial Risk to a Finding of Liability

One unique and specific hurdle that Plaintiffs would have needed to clear at trial is the fact that, notwithstanding recent public dialogue concerning Facebook's privacy approach, the ubiquitous social media platform remains very popular, and it will be impossible to empanel jurors that have not already formed opinions about Facebook. More importantly, beyond the popularity of Facebook as a social media platform, "Tag Suggestions," the very lynchpin of this case, is, according to Facebook, among the most popular features on Facebook, and one that at least one of the named Plaintiffs continued to use it even after being fully informed about the operation of "Tag Suggestions" in his deposition. A jury, especially a jury in San Francisco, might well reject liability in light of positive attitudes regarding Facebook or its features, or might equate continued use and enjoyment with consent, with the potential to either defeat Plaintiffs' claims outright or create individualized issues of fact.

### b.   Location of Facebook's Processing of Facial Recognition Data Posed a Substantial Risk for Extended Appellate Review of Trial Recovery

Second, both this Court's opinion certifying the class and the Ninth Circuit's opinion affirming that order leave open the possibility that additional fact-finding relevant to Illinois's extraterritoriality doctrine could ultimately preclude recovery. Thus, there is a real risk that a jury

---

[10]   Our discussion of these specific risks should not suggest that the general risks inherent in a trial do not also help serve to justify a settlement here. In this case, especially, concerns about the unpredictability of the trial process are not inchoate fears easily dismissed. The trial in this case would have involved the presentation of highly technical information both through experts and through interested defense witnesses. The complexity of the facts at issue only increase the uncertainty for all parties involved.

1   could find, as Facebook maintains, that the relevant conduct occurred exclusively on servers

2   located outside of Illinois and reject the relevance of any of the Illinois connections to this case,

3   potentially rendering BIPA inapplicable. If Facebook were to convince the jury that alleged

4   violations of BIPA, *i.e.*, the collection, creation, or storage of biometric identifiers without

5   informed consent, occurred primarily and substantially on servers located outside of Illinois,

6   Facebook would escape liability altogether under Illinois' extraterritoriality doctrine. *See Patel v.*

7   *Facebook, Inc.*, 932 F.3d 1264, 1276 ("If the violation of BIPA occurred when Facebook's servers

8   created a face template, the district court can determine whether Illinois extraterritoriality doctrine

9   precludes the application of BIPA"); *see also McLeod v. Bank of Am., N.A.*, No. 16-cv-03294-

10  EMC, 2018 WL 5982863, at *5 (N.D. Cal. Nov. 14, 2018) (granting preliminary approval and

11  recognizing the "risk that a jury could agree with [d]efendants" version of the evidence and

12  liability). At the same time, this hypothetical fact-finding might not preclude recovery altogether,

13  but might have presented intractable manageability problems requiring decertification of the Class.

14  *See Patel*, 932 F.3d at 1276 ("[I]f future decisions or circumstances lead to the conclusion that

15  extraterritoriality must be evaluated on an individual basis, the district court can decertify the

16  class"). Neither result would be beneficial for the class and the monetary relief was accordingly

17  adjusted to account for this risk.

18          **c.      Post-Trial Potential for Substantial Reduction in**
                      **Damages Limited the Likelihood of Multi-billion Dollar**
19                    **Recovery Where Plaintiffs Did Not Incur Economic**
                      **Loss**
20
            The Court also reminded the parties that, even if Plaintiffs prevailed at trial, it has the power
21
    to reduce the damages award if it was out of proportion to the harm suffered by the Class. (*See*
22
    Dkt. 333, at 15.) There are recent privacy cases where statutory damages have been sharply
23
    reduced because they were found to be out of proportion with the alleged offense, in violation of
24
    the Due Process Clause. *See, e.g.*, *Golan v. Free Eats.com, Inc.*, 930 F.3d 950, 962-63 (8th Cir.
25
    2019) (statutory award in TCPA class action of $1.6 billion reduced to $32 million); *United States*
26
    *v. Dish Networks LLC*, 256 F. Supp. 3d 810, 982-84 (C.D. Ill. 2017) (damages of approximately
27
    $2.1 billion reduced to $280 million), *rev'd*, 954 F.3d 970, 979-80 (7th Cir. 2020) (vacating
28

1 damages reduction but noting that "an award of $660 billion for the conduct DISH engaged in

2 would be impossible to justify"). A motion to reduce damages in this case likely would be well-

3 taken. A verdict for the Class here might lead to a damages award of several billions of dollars.

4 Facebook is surely one of the few companies who could absorb such a judgment, but it could make

5 a persuasive case that such an award is disproportionate to any privacy harm caused by the Tag

6 Suggestions or Face Recognition tool.

7     **d.**   **The Longer the Case Continued, the Higher the**

       **Likelihood an Amendment to the Law or a Successful**

8        **Appeal Would Force the Class to Take Nothing**

9     Outside the courtroom, there remains an increasingly growing possibility that the BIPA

10 itself will change in ways detrimental to the Class's claims, if it is even able to survive

11 the onslaught of professional lobbyists now devoted to   killing it.   Indeed, in   each Legislative

12 session, more and more proposed amendments are introduced seeking to gut the law, each

13 time with more significant changes and with increasingly powerful backers. These efforts began

14 early in the litigation: In fact, just twenty days after this Court ruled on Facebook's motion to

15 dismiss—which coincided with the end of the regular Illinois legislative session and headed into

16 a holiday weekend—one proposed amendment was introduced that sought to retroactively amend

17 the law to preclude its application to uploaded digital images regardless of the information

18 collected or the process of its extraction (the principal merits issue Facebook had just lost in its

19 motion to dismiss). *See* Illinois HB 6074 (2016). Since then, the law's opponents have sought to

20 amend the law in the following ways:

21   o  To eliminate the law's private right of action, *see* SB 3592 (2020); SB 2134 (2019);

22   o  To permit the recovery of damages only for intentional violations, eliminating the ability

23     to recover damages for negligent violations, *see* SB 3591 (2020);

24   o  To eliminate or reduce the ability of a plaintiff to recover liquidated damages, *see* SB 3776

25     (2020; SB 3593 (2020); HB 5374 (2020);

26   o  To eliminate protections regarding informed consent, collection, and storage of biometric

27     information, *see* SB 3053 (2018); HB 5103 (2018); and

28

NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
3:15-cv-03747-JD                        - 22 -

1        o    To require pre-suit notice before any action for damages, *see* SB 3593 (2020); HB 5374

2          (2020).

3       These efforts have grown in intensity as time passes: This year alone, six bills were

4 introduced to amend BIPA.

5       While industry lobbyists have been successful in gutting state-level privacy laws in other

6 situations, BIPA remains unchanged, for now. In the end, the longer this litigation lasts, the greater

7 the chance that the law will change in a way that eviscerates Plaintiffs' claims or requires the Court

8 to revisit certification.

9       Not only must recovery take account of these specific risks, but also of the near certainty

10 that post-trial proceedings would take years. Following any favorable jury verdict, there would of

11 course be the typical post-trial motions, as well as a contested claims process, but even before any

12 of that, a long and drawn out process of briefing the issue of the appropriate class-wide damage

13 award. A second appeal would be a near certainty and would permit Facebook to challenge not

14 only the Court's trial rulings, but also the earlier rulings on choice-of-law and the applicability of

15 the BIPA's so-called "photograph exclusion." During oral argument at the Ninth Circuit, Facebook

16 stated its intention to press these prior merits rulings further. Any decision on a reduction of

17 damages to account for Due Process also would be before the Court of Appeals. The damages

18 issue also is one that, in the right case, is likely to garner the attention of the Supreme Court. This

19 may well be that case, given that a class-wide judgment could, absent a reduction, be tens of

20 billions of dollars. Indeed, in the previously cited *Kehoe v. Fidelity Federal* case under the Driver's

21 Privacy Protection Act, Justices Scalia and Thomas specially concurred with the Court's denial of

22 Fidelity Federal's certiorari petition with a view of statutory damages penalties that presumably is

23 shared by some of the newer justices on the Court, stating, "the total amount at stake may reach

24 $40 billion. This enormous potential liability, which turns on a question of federal statutory

25 interpretation, is a strong factor in deciding whether to grant certiorari." *Fid. Fed. Bank & Tr. v.*

26 *Kehoe*, 547 U.S. 1051 (2006).

27

28   NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
3:15-cv-03747-JD                                             - 23

1   Although few cases are taken up by the Supreme Court, this case is likely to present issues

2   that meet the criteria for certiorari. Of course, any issues resolved by the Supreme Court would

3   likely precipitate further proceedings in the district court, and perhaps a third appeal. Lengthy post-

4   trial proceedings, especially those that delay a second or third appeal, also might allow other courts

5   to disagree with the Ninth Circuit's opinion on standing. In sum, given the time value of money,

6   excessive delay is almost never in a class's best interests, but here, delay is fraught with even more

7   peril than usual.

8           **4.**     **The Proposed Settlement is the Product of Serious, Informed, Arm's-Length Negotiations, and Contains No Obvious**

9                   **Deficiencies**

10   While the relief provided by the settlement speaks for itself, Plaintiffs also note that the

11   settlement bears absolutely none of the warning signs that the Ninth Circuit has instructed district

12   courts to watch out for. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th

13   Cir. 2011). Obvious deficiencies include "indications of a collusive negotiation, unduly

14   preferential treatment of class representatives, . . . or excessive compensation of attorneys." *Ebarle*

15   *v. Lifelock Inc.*, No. 15-cv-00258-HSG, 2016 WL 234364, at *6 (N.D. Cal. Jan. 20, 2016). "Clear

16   sailing" arrangements and reversionary funds may suggest the presence of collusion or bad faith.

17   *In re Bluetooth*, 654 F.3d at 946-47.

18   The proposed settlement does not include any indication of collusive negotiations.

19   Attorneys' fees and incentive awards were not pre-arranged through a "clear sailing" agreement—

20   indeed, there is no clear sailing provision here—and no portion of the Settlement Fund will revert

21   to Defendant. Moreover, it took the parties three different attempts at mediation—first with the

22   highly respected neutral, Judge Layn Phillips (ret.), then Magistrate Judge Ryu, and finally with

23   Ambassador Jeff Bleich—over the course of 4 years to reach an acceptable settlement. With little

24   happening by way of negotiation (*i.e.*, no formal demands or offers having been made), if anything

25   the first mediation simply reinforced the parties' resolve to litigate the issues in dispute. The second

26   mediation, which was the settlement conference before Magistrate Judge Ryu, while ultimately

27   unsuccessful, yielded some progress in the sense that the parties left the mediation with a clear

28

1    understanding of each other's settlement position. The third mediation, which Ambassador Bleich

2    presided over, proved successful but only after hard-fought negotiations, which frankly started on

3    the day of mediation, and continued for the next three months as part of the process of reducing

4    the settlement to writing.[11] (*See* Bleich Decl. ¶¶ 2-3.)

5            Settlements resulting from formal mediations conducted by an experienced mediator

6    further weigh in "favor of granting preliminary settlement approval." *Noroma v. Home Point Fin.*

7    *Corp.*, No. 17-cv-07205, 2019 WL 1589980, at *7 (N.D. Cal. Apr. 12, 2019); *see Satchell v. Fed.*

8    *Exp. Corp.*, Nos. C03-2659 SI, C 03–2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)

9    ("The assistance of an experienced mediator in the settlement process confirms that the settlement

10   is non-collusive.").

11           Moreover, no segment of the Class, including Class Representatives, will receive

12   preferential treatment under this settlement. Any Class member who submits an approved claim

13   by the claims deadline is entitled to a *pro rata* portion of the Settlement Fund. (Stipulation ¶ 2.6.)

14   Named Plaintiffs may seek incentive awards as compensation for the risk and expense they

15   incurred as class representatives, but such awards are "fairly typical" in class action settlements.

16   *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). The Ninth Circuit generally

17   finds that "incentive awards to named plaintiffs in a class action are permissible and do not render

18   a settlement unfair or unreasonable." *Guttmann v. Ole Mexican Foods, Inc.*, No. 14-cv-04845-

19   HSG, 2015 WL 13236627, at *5 (N.D. Cal. Nov. 13, 2015).

20           In sum, the Settlement bears no markers suggesting collusion or unfairness.

21           **5.    The Extent of Discovery Completed and Stage of the**
              **Proceedings Favors Preliminary Approval**
22

23           Moreover, class action settlements receive "an initial presumption of fairness" when they

24   are reached following sufficient discovery and genuine arm's-length negotiation. *In re Lenovo Ad-*

25   
     _____

26   [11] The parties jointly agreed to use Ambassador Bleich as the arbitrator of any disputes about the
     Settlement Agreement (up until its signing, at which point, of course, the Court decides all issues),
27   and Ambassador Bleich faithfully and diligently served in that role. The parties had a number of
     additional disputes after the mediation, which Ambassador Bleich helped resolve.

28

*ware Litig.*, No. 15-md-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (quoting *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011)). Because "most of the discovery is completed[,] … it suggests that the parties arrived at a compromise with a full understanding of the legal and factual issues surrounding the case." *Carlotti*, 2019 WL 6134910, at *6; *see 5 Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.); *Lenovo*, 2018 WL 6099948, at *7 (noting that the fact that "significant discovery" taken supported preliminary approval). In this case, counsel for Plaintiffs engaged in extensive discovery beginning in December 2015, with the propounding of multiple sets of written discovery and interrogatories. Plaintiffs reviewed many thousands of documents produced by Facebook in connection with its facial recognition technology and its development and usage. Plaintiffs took or defended 16 depositions, including depositions of Facebook's top software engineers in charge of developing Facebook's facial recognition technology. Plaintiffs also engaged their own software engineer experts, one of whom examined Facebook's facial recognition software pipeline to gain a full understanding of the complexity of the technology. Plaintiffs pursued and litigated the action through motions for summary judgment and *Daubert* motions. In addition, counsel for Plaintiffs successfully defended the class certification order in the Ninth Circuit. Finally, Plaintiffs also aggressively prepared for trial including exchanges of motions *in limine*, trial exhibits, and witness lists. Plaintiffs further engaged reputable trial consultants and participated in five days of intense trial preparation before the Ninth Circuit granted Facebook's petition for appeal under Fed. R. Civ. P. 23(f). Class counsel plainly had sufficient information to make an informed decision on the resolution of this case.

**VI.    The Procedural Guidance for Class Action Settlements have been Satisfied and Weigh in Favor of Approving the Settlement**

   **A.    Guidance 1: Differences, Range, and Plan of Allocation**

        **1.    Guidance 1(a):** *If a litigation class has not been certified, any differences between the settlement class and the class proposed in the operative complaint and an explanation as to why the differences are appropriate in the instant case.*

This section is not applicable because the Class has been certified.

    2.     ***Guidance 1(b): If a litigation class has been certified, any differences between the settlement class and the class certified and an explanation as to why the differences are appropriate in the instant case.***

The only modification of the Class this Court certified is a standard list of persons related to the litigation that are excluded from the Class. *See supra* note 1. The parties likewise have agreed on a way to resolve certain questions prompted by the Court's class-certification Order without modifying the Class definition.

    3.     ***Guidance 1(c): If a litigation class has not been certified, any differences between the claims to be released and the claims in the operative complaint and an explanation as to why the differences are appropriate in the instant case.***

This section is not applicable because the Class has been certified.

    4.     ***Guidance 1(d): If a litigation class has been certified, any differences between the claims to be released and the claims certified for class treatment and an explanation as to why the differences are appropriate in the instant case.***

The Settlement releases claims relating to Facebook's collection, storage, and dissemination of biometric data related to facial recognition technology from individuals located in Illinois. (Stipulation ¶ 1.26.) While the focus of this case has been on the collection and storage of biometric data, claims related to dissemination were investigated during discovery (and represented by Facebook to have not occurred). And, in any event, such claims would ordinarily be lost if not brought in an action challenging collection and storage of the same biometric data. *See* 6 Newberg on Class Actions § 18:19 (explaining the impact of res judicata on judgments entered in class actions).

    5.     ***Guidance 1(e): The anticipated class recovery under the settlement, the potential class recovery if plaintiffs had fully prevailed on each of their claims, and an explanation of the factors bearing on the amount of the compromise.***

The Class will receive $550 million in cash, less approved fees and expenses, through the Settlement. Had Plaintiffs fully prevailed on each of their claims, the maximum possible damages at trial would have been $1,000 per negligent violation and $5,000 per willful or reckless violation.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

There are many factors that contributed to Plaintiffs' acceptance of a discount to that maximum value, which are fully explained in Section V(C) above.

> **6.     Guidance 1(f): *The proposed allocation plan for the settlement fund.***

This is a traditional common fund settlement that pays *pro rata* claims to Class Members who submit a Claim Form to receive a portion of the Net Settlement Fund. The Net Settlement Fund is the portion of the Settlement Fund that remains after any attorneys' fees, costs, expenses, taxes and tax-related expenses, and Class Representative awards are deducted. The amount of the payment will depend on how many Class Members file valid claims and the amount of fees, costs, expenses, and awards deducted from the fund.

> **7.     Guidance 1(g): *If there is a claim form, an estimate of the number and/or percentage of class members who are expected to submit a claim in light of the experience of the selected claims administrator and/or counsel from other recent settlements of similar cases, the identity of the examples used for the estimate, and the reason for the selection of those examples.***

As explained below, Class Counsel expect, based upon their experience in consumer class actions and precedent set by other BIPA settlements (bearing in mind that this case is unique even among BIPA cases), a higher-than-usual claims rate in this case, likely in the range of 15% to 30%. As a result, Class Counsel project that claiming class members will receive between $150 and $300, or between 15% and 30% of the possible recovery on an individual claim, after the maximum request for attorneys' fees and expenses are deducted.[12]

---

[12]  Of course, Plaintiffs do not mean to be presumptuous when it comes to how much in fees they stand to be awarded by the Court. To the contrary, Class Counsel—are keenly aware of the robust and detailed application yet to be submitted in order to justifying any request for an award of attorneys' fees from this Court. Plaintiffs will be well-prepared to make the necessary showing at the appropriate time, but for purposes of estimating class-member recovery, the most conservative and transparent way of providing concrete figures to the Court and the Class is to simply assume the amount of attorneys' fees to be awarded and provide a net estimate from there.

NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 3:15-cv-03747-JD

- 28 -

8.    **Guidance 1(h)** *In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the potential amount or range of amounts of any such reversion, and an explanation as to why a reversion is appropriate in the instant case*

The settlement is non-reversionary; there will be no reversions.

## B.    Guidance 2: The Proposed Settlement Administrator

In connection with implementation of the notice program and administration of the settlement benefits, the parties seek the approval of the Court to appoint Gilardi & Co. LLC ("Gilardi") to serve as the Settlement Administrator. Gilardi has vast experience in many complex class action lawsuits. In addition, in May 2018, after the Court granted Plaintiffs' motion for class certification and approved the parties' pendency notice, Gilardi worked with counsel for Plaintiffs and Facebook to collect and process Class Members' email addresses for the service of notice through direct email and built the class action notice website in accordance with the Court-approved notice on May 25, 2018. However, on May 29, 2018, because of the Ninth Circuit's order permitting Facebook's Rule 23(f) appeal, the website was taken down and email notice was suspended. Nevertheless, in accordance with this District's *Procedural Guidance for Class Action Settlements*, Class Counsel solicited bids for the administration of the settlement from five well known and experienced claims administrators. After reviewing the bids from each claims administrator, Class Counsel concluded that Gilardi, because of its experience, familiarity with the case, and the merits of its bid, is best suited to execute the claims administration in this action and respectfully requests that the Court approve its selection. In compliance with this District's *Procedural Guidance for Class Action Settlements*, Class Counsel states that the various firms appointed Class Counsel have retained Gilardi (and KCC, LLC, a class-action administrator that recently purchased Gilardi) a total of 50 times in the past two years. (Edelson Decl. ¶ 14.). Based upon the estimates provided by the proposed claims administrators, including email notice and the preparation and management of settlement website, the parties expect administrative costs to be approximately $1.6 million. (*See* Stipulation ¶ 1.28.)

### C.   Guidance 3: The Proposed Notices to the Settlement Class are Adequate

For class actions like this one, certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must be written in "'plain, easily understood language' and 'generally describe the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard.'" *In re Yahoo!*, No. 16-MD-02752 LHK, 2019 WL 387322, Amended Order Denying Motion for Preliminary Approval of Class Action Settlement, at *8 (N.D. Cal. Jan. 30, 2019) (citing *Churchill Vill. L.L.C.*, 361 F.3d at 575). Notice should include: (1) class counsel's contact information, (2) a settlement website maintained by the settlement administrator that contains copies of the notice, the settlement agreement, the fee request and other relevant documents, and instructions on how to access the case docket on PACER or in person. *Procedural Guidance for Class Action Settlements*. Under the current Rule 23(c)(2)(B), "[t]he notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

### 1.   The Proposed Notice Satisfies Due Process

Here, the proposed notice program provides for notice to be distributed by: (i) direct email notice to class members' last known email address in Facebook's records; (ii) jewel notification on each Class member's Facebook homepage; and (iii) posting in each Class member's Facebook newsfeed. (Stipulation ¶ 4.2.) This manner of notice was previously approved by the Court after briefing from the parties. (*See* Dkt. 390.) *See also Ayala v. Coach, Inc.*, No. 14-CV-02031-JD, 2016 WL 9047148, at *2 (N.D. Cal. Oct. 17, 2016) (approving email as among adequate forms of notice).[13] The parties have agreed, in addition, to publication notice through the placement of advertisements in two Chicago newspapers. (Stipulation ¶ 4.2(d).)

---

[13]   May 29, 2018 Stay Order (Dkt. 404) at 3 ("Facebook is an online business that routinely communicates with users through online notifications about a myriad of topics. . . . Many cases have held that a defendant's online channels constitute the best practicable notice to individual

NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 3:15-cv-03747-JD

- 30 -

1        In addition to the above, the proposed notice program provides for the launch and

2   maintenance of a dedicated settlement website allowing Class Members to review the Stipulation,

3   detailed notice materials, including the summary notice and the long-form notice, which provide

4   clear and concise information concerning all relevant aspects of the litigation, access to the briefs

5   and declarations in support of final approval and the fee award once they are fully filed with the

6   Court. (Stipulation ¶ 4.2(e).) Accordingly, the content and method of dissemination of the

7   proposed notice fully comports with the requirements of Due Process and applicable case law.

8        The combination of these multiple forms of direct notice are well designed to provide the

9   most comprehensive notice to the Class.

10   **D.      Guidance 4 and 5: Opt-Outs and Objections**

11        The proposed Class Notice complies with Rule 23(e)(5) in that it discusses the rights

12   Settlement Class Members have concerning the Settlement. The proposed Class Notice includes

13   information on a Settlement Class Member's right to: (1) request exclusion and the manner for

14   submitting such a request; (2) object to the Settlement, or any aspect thereof, and the manner for

15   filing and serving an objection; and (3) participate in the Settlement and instructions on how to

16   complete and submit a Claim Form to the Settlement Administrator. (*See* Stipulation Exhs. C, F,

17   G.) The Notice also provides contact information for Class Counsel, as well as the postal address

18   for the Court.

19   **E.      Guidance 6: The Intended Attorneys' Fees and Expenses Request**

20        Plaintiffs will separately seek an award of attorneys' fees and litigation costs and expenses

21   to be paid from the Settlement Fund. The request for an award of attorneys' fees will not exceed

22   25% of the Settlement Fund (which, given counsel's current lodestar of approximately $20.43

23   million, *see supra* at note 2, would result in a multiplier of approximately 6.7) and counsel estimate

24   that the request for costs and expenses shall be approximately $981,000.00. There is no "clear

---

26   class members). *See, e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595-96 (N.D. Ill. 2011); *Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 147 (N.D. Ill. 2010);

27   *Jermyn v. Best Buy Stores, L.P.*, No. 08 Civ. 00214(CM), 2010 WL 5187746, at *7-8 (S.D.N.Y. Dec. 6, 2010).

28   NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
3:15-cv-03747-JD                                                                              - 31 -

1   sailing" provision, and Facebook may challenge the request if it desires. The three firms appointed

2   Class Counsel by the Court have agreed to split any awarded fees equally. (Stipulation ¶ 8.1.)

### F.      Guidance 7: The Proposed Settlement and Proposed Service Awards Do Not Unjustly Favor Any Class Members, Including Named Plaintiffs

5       Named Plaintiffs and Class Representatives Nimesh Patel, Adam Pezen, and Carlo Licata

6   have vigorously pursued these claims since 2015. Each has been integral to the successful

7   prosecution of the matter. The named plaintiffs will detail their involvement in the litigation

8   through sworn declarations submitted in connection with the motion for an incentive award, but,

9   in brief, in addition to each researching and filing their complaints, each named plaintiff has

10  responded to substantial requests for production from their personal files, and each has provided

11  live deposition testimony—twice. Each of them attended the second mediation, either in person,

12  or in one case telephonically from abroad. In light of these efforts, Plaintiffs will move for an

13  incentive award of no more than $7,500 each in recognition of the time, effort and expense they

14  incurred pursuing claims that benefited the entire Class. These awards are well within the

15  established range accepted by Courts in this district. *Bellinghausen v. Tractor Supply Co.*, 306

16  F.R.D. 245, 267 (N.D. Cal. 2015) ("Incentive awards typically range from $2,000 to $10,000.");

17  *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015) ($5,000 incentive award

18  is presumptively reasonable); *Rosado v. eBay Inc.*, No. 5:12-cv-04005-EJD, 2016 WL 3401987,

19  at *9 (N.D. Cal. June 21, 2016) (same). Moreover, because the Settlement is not conditioned on

20  the Court's approval of the full (or any) amount of a Service Award, the Settlement does not grant

21  preferential treatment to Named Plaintiffs.

### G.      Guidance 8: Cy Pres Awardees

23      The Settlement Agreement provides that if settlement checks remain uncashed after ninety

24  (90) calendar days, such funds shall be apportioned pro rata to participating Class Members in a

25  second distribution, if practicable. To the extent that any second distribution is impracticable, or

26  second-distribution funds remain in the Settlement Fund after an additional ninety (90) calendar

27  days, such funds shall revert to the American Civil Liberties Union of Illinois, as approved by the

28

1  Court. Such funds shall be earmarked for use in the ACLU of Illinois's privacy work. (Stipulation

2  ¶ 2.6.)

3         The American Civil Liberties Union of Illinois is a nationally recognized public interest

4  group working to protect privacy rights, and his been active in protecting the biometric privacy

5  rights of Illinoisans and is therefore an appropriate recipient of cy pres funds, if any. The

6  organization has responsible oversight over the use of its funds and has been approved by many

7  courts in other privacy matters as cy pres recipients.

8  **H.    Guidance 9: Proposed Timeline**

9         The last step in the settlement approval process is to hold a final approval hearing at which

10 the Court will hear argument and make a final decision about whether to approve the Settlement

11 pursuant to Rule 23(e)(3). *See Manual for Complex Litigation*, *supra*, § 21.63.

12        The parties have submitted a proposed preliminary approval order ("PAO") concurrently

13 with this joint motion, pursuant to Local Civil Rule 7.2(c), setting forth the proposed schedule of

14 events from here through final approval.

15        Specifically, the parties propose the following schedule:

16

| Settlement | Due Date |
|---|---|
| Deadline for commencing the transmission of the notice and claim form and publication of the summary notice | 35 calendar days after entry of the PAO (the "Notice Date") |
| Deadline for filing a final approval motion and application for attorney's fees and expenses, and service awards | 14 calendar days before the Objection/Exclusion Deadline |
| Deadline for submitting claim forms | 56 calendar days after the notice date (the "Claims Deadline") |
| Deadline for objecting to or requesting exclusion from the Settlement | 56 calendar days after the notice date (the "Objection/Exclusion Deadline") |
| Deadline for filing a reply in support of final approval of Settlement and award for attorney's fees and expenses, and service awards; deadline for Settlement Administrator declaration | 14 calendar days after the Objection/Exclusion Deadline |
| Final approval hearing | Approximately 119 calendar days after entry of the PAO, at the Court's convenience |

28

The parties respectfully submit that this proposed schedule complies with Rule 23 and CAFA, while securing the recoveries for Class Members in a timely fashion.

### I.      Guidance 10: Class Action Fairness Act

CAFA notice is required and under the Settlement Facebook is coordinating compliance with 28 U.S.C. § 1715 at its own cost. (Stipulation ¶ 4.2(f).)

### J.      Guidance 11: Past Distributions

As discussed in greater detail above (*see supra* at V(C)(1)), the settlement in this matter is the largest known consumer data privacy settlement in United States history and is without meaningful comparators. When viewed alongside the other largest data privacy consumer class action settlements, the present settlement compares favorably in nearly every respect, as discussed above.

## VII.      CONCLUSION

In light of the significant benefits provided by the Settlement, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for preliminary approval.

DATED: May 8, 2020                    Respectfully submitted,

                                            EDELSON PC
                                            JAY EDELSON*
                                            RYAN D. ANDREWS*
                                            BENJAMIN RICHMAN*
                                            ALEXANDER G. TIEVSKY*


                                            _____
                                                      s/ Jay Edelson
                                            [ATTORNEY SIGNATURE]

NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 3:15-cv-03747-JD

- 34 -

1

350 North LaSalle Street, 14th Floor

2

Chicago, IL 60654
Telephone: 312/589-6370

3

312/589-6378 (fax)

4

EDELSON PC

5

RAFEY BALABANIAN
J. AARON LAWSON

6

LILY HOUGH
123 Townsend Street, Suite 100

7

San Francisco, CA 94107
Telephone: 415/212-9300

8

415/373-9435 (fax)

9

ROBBINS GELLER RUDMAN
   & DOWD LLP

10

PAUL J. GELLER
STUART A. DAVIDSON

11

CHRISTOPHER C. GOLD
120 East Palmetto Park Road, Suite 500

12

Boca Raton, FL 33432
Telephone: 561/750-3000

13

561/750-3364 (fax)

14

ROBBINS GELLER RUDMAN
   & DOWD LLP

15

PATRICK J. COUGHLIN
ELLEN GUSIKOFF STEWART

16

LUCAS F. OLTS
RANDI D. BANDMAN

17

655 West Broadway, Suite 1900
San Diego, CA 92101

18

Telephone: 619/231-1058
619/231-7423 (fax)

19

ROBBINS GELLER RUDMAN
   & DOWD LLP

20

SHAWN A. WILLIAMS
JOHN H. GEORGE

21

Post Montgomery Center
One Montgomery Street, Suite 1800

22

San Francisco, CA 94104
Telephone: 415/288-4545

23

415/288-4534 (fax)

24

LABATON SUCHAROW LLP

25

MICHAEL P. CANTY*
CORBAN S. RHODES*

26

140 Broadway
New York, NY 10005

27

Telephone: 212/907-0700
212/818-0477 (fax)

28

NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
3:15-cv-03747-JD

1

2

3          Attorneys for Plaintiffs
           * = appearance *pro hac vice*
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on May 8, 2020, I served the above and foregoing Notice of Motion

3

and Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval

4

of a Class Action Settlement by causing true and accurate copies of such paper to be filed with

5

the Court's CM/ECF system, which will send e-mail notification of such filing to counsel for all

6

parties.

7

<u>s/ Rafey Balabanian</u>

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28