1 | Jay Edelson (Admitted *pro hac vice*)
jedelson@edelson.com
2 | EDELSON PC
350 North LaSalle Street, Suite 1400
3 | Chicago, Illinois 60654
Tel: 312.589.6370
4 | Fax: 312.589.6378

5 | Paul J. Geller (Admitted *pro hac vice*) | Michael P. Canty (Admitted *pro hac vice*)
pgeller@rgrdlaw.com | mcanty@labaton.com
6 | ROBBINS GELLER RUDMAN & DOWD LLP | LABATON SUCHAROW LLP
120 East Palmetto Park Road, Suite 500 | 140 Broadway
7 | Boca Raton, Florida 33432 | New York, New York 10005
Tel: 561.750.3000 | Tel: 212.907.0700
8 | Fax: 561.750.3364 | Fax: 212.818.0477

*Counsel for In re Facebook Biometric Info. Plaintiffs and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| *In re Facebook Biometric Information Privacy Litigation* | Master Docket No. 3:15-cv-3747-JD<br><br>**DECLARATION OF JAY EDELSON** |

DECLARATION OF JAY EDELSON | CASE NO. 3:15-cv-03747-JD

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1. I am an attorney admitted to practice in the State of Illinois, and have been admitted to practice before this Court *pro hac vice*. I am over the age of 18, and fully competent to make this declaration. This Declaration is based upon my personal knowledge, except where expressly noted otherwise.

2. I am the founder, President and CEO of my law firm, Edelson PC ("Edelson" or the "Firm"). My Firm was among those appointed Class Counsel in this matter by the Court, along with Robbins Geller Rudman & Dowd LLP ("RGRD") and Labaton Sucharow LLP ("Labaton").

3. Attached to this Declaration as Exhibit 1 is a true and correct copy of the Stipulation of Class Action Settlement entered into by the parties to this matter, along with exhibits thereto.

4. Attached to this Declaration as Exhibit 2 is a true and correct copy of excerpts from the transcript of the hearing in this case that took place on May 21, 2018.

5. The parties attempted to resolve this dispute through mediation three times during these proceedings. First, on May 16, 2017, the parties exchanged statements and attended a private mediation with Judge Layn Phillips (ret.), but were unable to reach a resolution. On May 4, 2018, the parties again participated in a Court-ordered mediation before Magistrate Judge Donna M. Ryu, but again were unable to reach an agreement. On January 15, 2020, the parties participated in a third mediation with Ambassador Jeffrey L. Bleich in San Francisco. After considerable arms-length negotiations, the parties were able to reach an agreement in principle to resolve this action, subject to Court approval.

6. Thereafter, Class Counsel worked diligently with Facebook's counsel and Ambassador Bleich to finalize the agreement and negotiate points of dispute not resolved by the agreement in principle.

7. Attached to this Declaration as Exhibit 3 is the Declaration of Ambassador Jeffrey L. Bleich.

8. I believe that the claims asserted in this case have merit, that they would have ultimately succeeded at trial and on any subsequent appeal. But based on my experience I recognize that Facebook has raised relevant factual and legal defenses that pose risks to the Class, namely: (i) obstacles to an aggregate recovery for Class members; and (ii) issues of law would be reviewed de novo on appeal even after Plaintiffs prevailed at trial. In addition to the defenses presented by Facebook, I am aware that in each legislative session in Illinois that several proposed amendments to BIPA have been introduced by increasingly powerful backers seeking to gut the law. As such, I believe that the prospect of an amendment to BIPA, which had the potential of severely undercutting—if not disposing altogether—the claims asserted in this case, posed perhaps the most significant risk to recovery on behalf of the Class. I have also taken into account the uncertain outcome and risks of any litigation, especially in complex actions, as well as the difficulty and delay inherent in such litigation and the appeals that would follow any judgment in favor of the Class. I believe that the settlement eliminates uncertainty in the outcome and presents an exceptional result for the Class, and one that will be provided without delay. Therefore, I believe that it is in the best interest of the Class to settle this case and that the "released claims" identified in the settlement be fully and finally compromised, settled, and resolved with prejudice, and barred pursuant to the terms and conditions set forth in the settlement.

9. My Firm uses a time and expense management system called "Freshbooks," through which our attorneys and staff are required to keep track of their time and expenses. Based on an initial review of the report generated by this software, Edelson has logged approximately 12,300 hours in uncompensated time resulting in a total balance of approximately $8,300,000 in attorneys' fees and approximately $220,000 in expenses.

10. Labaton has informed me that it uses a time and expense management system called "Rainmaker," to keep and track its firm's time and expenses and has reported to me that, based on its initial review of the report generated by this software, to date it has logged

approximately 8,300 hours in uncompensated time resulting in a total balance of approximately $5,230,000 in attorneys' fees and approximately $365,000 in expenses.

11. RGRD has informed me that it uses Thomson Reuters' "3E Elite," to keep and track its firm's time and expenses and has reported to me that, based on its initial review of the report generated by this software, it has logged approximately 9,400 hours in uncompensated time resulting in a total balance of approximately $6,900,00 in attorneys' fees and approximately $396,000 in expenses.

12. In accordance with this District's guidelines, each of the above-referenced the firms will present their final time and expense details along with sworn declarations attesting to the accuracy of the same on the schedule set by the Court.

13. In addition, all of the above-mentioned law firms expect to spend the requisite additional time necessary to fully implement the parties' settlement, to address any class member questions, and to present the settlement to the Court for final approval. Additional expenses will also be invoiced and/or incurred.

14. Prior to selecting Gilardi & Co. as the settlement administrator, we requested proposals from Gilardi and four other top class action settlement administrators. After receiving proposals, we followed up with the three top candidates and requested revised proposals. Ultimately, we believed that Gilardi & Co. would provide the best notice and claims service to the Class. My Firm has retained Gilardi (and/or its parent company KCC) in six class actions in the last two years. RGRD has reported to me that it has retained Gilardi (and/or its parent company KCC) in forty-two class actions in the last two years. Labaton has reported to me that it has retained Gilardi (and/or its parent company KCC) in two class actions in the last two years.

15. The named plaintiffs in this matter, appointed by the Court to be Class Representatives, have been integral to the prosecution of this litigation. Each helped research and file their complaint, has responded to substantial requests for production from their personal files, each has provided live deposition testimony on two occasions. These efforts will be further detailed in sworn declarations submitted in a motion for an incentive award.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of May, at Chicago, Illinois.

/s/ Jay Edelson