**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel: (415) 373-1671
Email: aapton@zlk.com

**LEVI & KORSINSKY, LLP**
Gregory M. Nespole (*pro hac vice* application pending)
55 Broadway
New York, New York 10006
Tel.: (212) 363-7500
Email: gnespole@zlk.com

*Counsel for Levi & Korsinsky, LLP*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re FACEBOOK BIOMETRIC INFORMATION PRIVACY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTION | Master File No. 3:15-cv-03747-JD<br><br>**CLASS ACTION**<br><br>**LEVI & KORSINSKY, LLP'S SUR-REPLY IN RESPONSE TO PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Judge: Hon. James Donato<br>Courtroom: 11, 19th floor<br>Hearing Date: September 22, 2020<br>Hearing Time: 11:00 a.m. |

Levi & Korsinsky, LLP ("LK") submits this sur-reply to address the additional restrictions Class Counsel seek for the first time in their "reply" brief (Docket No. 480), which were not previously raised in the Emergency Motion for a Temporary Restraining Order (Docket No. 477).[1]

LK exercised its First Amendment right to fully and truthfully inform class members who may be dissatisfied with the proposed settlement that they can opt-out and pursue a greater monetary recovery and that LK is prepared to represent them if they choose to do so. As Judge Tigar stated in another case denying a request for a TRO and a preliminary injunction barring future communications with class members: **"[P]arties (and non-parties) are free to encourage class members to opt out of or vote against a class action settlement, provided they do so in a fair manner that avoids material misrepresentations or omissions."** *Retiree Support Grp. Of Contra Costa Cnty. v. Contra Costa Cnty.*, 2016 U.S. Dist. LEXIS 99720, at *17 (N.D. Cal. 2016) (emphasis added);[2] *see also In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1245 (N.D. Cal. 2000) (rejecting argument that class members are "walled off from any effort at solicitation").

LK's communications with class members were neither false nor misleading. Ironically, it is Class Counsel's descriptions of the materials that are misleading and incomplete. Near the top of the very first website a class member sees after clicking an internet advertisement, they are informed of their choice to opt out prominently, and in the same size font as their choice to participate in the class, as follows:

> Facebook has entered into a class action settlement to resolve claims that it illegally collected faceprints of users based on their photos. You have a choice. You can participate in the class settlement, which is described here [links to Court-approved settlement description] . . .

---

[1] Compare Docket No. 447 at 6 (seeking "an emergency order that . . . directs Levi & Korsinsky LLP to immediately cease all advertising relating to this case, including Facebook advertisements and the website located at www.signup.legalclaim.info/facial-recognition/") with Docket No. 480 at 2-3 (seeking a bar to future communications with class members, an accounting of all class members who contacted LK, a corrective notice campaign and invalidation of requests for exclusions).

[2] Similarly, the Third Circuit Court of Appeals has held that an attorney may solicit opt outs from a class settlement. *See In re Cnty. Bank of N. Virginia*, 418 F.3d 277, 313 (3d Cir. 2005). These decisions are consistent with Fed. R. Civ. P. 23(c)(2)(B), which affords class members the right to contact their own counsel to determine whether joining a class-wide settlement is in their best interests. *Cf. Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985).

You also have the choice to opt out of the class settlement and sign up to pursue a claim separately with us. We cannot guarantee any outcome, but we believe we may be able to get you more than the class settlement.

We are assisting clients who want to retain counsel and opt out of the settlement. However, you do not need to retain us in order to opt out of the settlement. You are free to opt out (or participate in) the settlement without retaining us.

The website further includes a host of additional disclosures, which Class Counsel fails to address in its motion, making it clear that LK made serious efforts to ensure that class members had full information. These disclosures include:

- "Levi & Korsinsky is not part of the class action case or class action settlement. By signing up with us, you will be opting out of the class action settlement and choosing to bring your own claim outside of the class."

- "The class action plaintiffs agreed to settle the case because they believed there were risks to continuing to litigate their case and though the settlement amount was fair. You can read about those risks and why the class plaintiffs believed the settlement was fair here [link to preliminary approval motion.]"

- "The Court has preliminarily approved the class settlement. You can read the Court's order here. The settlement will not be final and guaranteed until the Court grants final approval of the settlement."

- "Under the Court's preliminary approval order, you must either opt out of the class or submit a claim in the settlement by November 23, 2020. If you do not either opt out of the class or submit a claim in the settlement by November 23, 2020, you will lose your claim and receive no compensation."

In addition, Class Counsels' motion fails to inform the Court that, before *any* class member can sign up to opt out, the class member must not only view the website with the above disclosures, but also sign a representation agreement explicitly stating so, and ultimately sign a form stating that they:

> request exclusion from the class action settlement in *In Re Facebook Biometric Information Privacy Litigation,* No. 3:15-cv-03747-JD (N.D. Cal.). I do not want to participate in the class settlement in this action.

No individual who went through this process could reasonably consider this exercise as anything other than retaining LK to represent them in opting-out and pursuing a claim outside the class action.

When Class Counsel first approached LK on Friday evening to object to LK's advertisements and website (hereinafter "Materials"), LK explained that it did not believe the Materials were misleading, but that it would be willing to consider reasonable changes in the spirit of compromise.

Class Counsel was unable or unwilling to identify any changes that would satisfy them and filed their temporary restraining order instead. In a continued effort to confer in good faith, LK temporarily took down its website and ceased the Facebook advertisements, thereby mooting the TRO. *See Retiree Support Grp. Of Contra Costa Cnty.*, 2016 U.S. Dist. LEXIS at *28 ("A TRO is a stopgap measure to prevent further harm until proceedings on a preliminary injunction are complete and therefore it is unnecessary here."). And LK again invited Class Counsel to meet and confer in a good faith attempt to address all of their concerns. Class Counsel made clear that they would not be satisfied with *any* advertising from LK, and that their real goal was to impose a categorical ban on speech to class members. That is plainly impermissible.

In pursuit of their broad gag order, Class Counsel musters precious little justification. First, Class Counsel asserts that "[t]he advertisements ask people to 'sign up for a claim' with absolutely no explanation that the type of 'claim' the advertisements are referring to." But that assertion is facially false; even the briefest review of LK's website shows that it provides extensive explanation of the type of claim the advertisements are referring to. Class Counsel also attempts to argue that the mere use of word "claim" is inherently misleading. But Class Counsel do not have a trademark on the word "claim." Black's Law Dictionary defines a "claim" as a "demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for[.]". *See* Black's Law Dictionary (11th Ed. 2019). When an individual opts out of a class settlement and pursues a legal remedy, they are pursuing a "claim." There is nothing inaccurate about the use of that term. More broadly, there is nothing in the Materials that would lead a consumer to believe that by submitting their information they are submitting a claim form pursuant to the proposed class settlement in this matter.

Finally, Class Counsel now demand more: they request both a ***prior restraint*** on LK from any future communications with settlement class members who seek to exercise their opt-out rights under Rule 23 of the Federal Rules of Civil Procedure and this Court's preliminary approval order, while also seeking to invalidate valid requests for exclusions. Class Counsel's true motives are transparent. They are using a TRO and preliminary injunction to make it difficult for those class members, who are or may be dissatisfied with the individual recovery amounts, to opt-out of the class settlement and seek separate

representation. Nothing justifies Class Counsel's efforts to obtain such extraordinary relief.

Below, LK first explains in detail the opt-out process and accompanying representations and lastly explains why a TRO and preliminary injunction should be denied.

# **THE MATERIALS ACCURATELY AND UNAMBIGUOUSLY EXPLAINED TO CLASS MEMBERS THEIR RIGHT TO OPT-OUT**

Class Counsel selectively ignore the numerous and conspicuous disclosures explaining the class member's right to remain a member of the class. The text of the site, which has been provided in screenshots as Exhibit 2 to the Declaration of Christopher L. Dore (the "Dore Declaration") (D.I. 477-2), contradicts Class Counsel's narrative.[3] In fact, under a graphic showing "How to Sign Up for a Claim" and directly above a different-colored graphic, the site unequivocally informs class members of their options: either remain a member of the class and participate in the settlement or "opt out of the class settlement and sign up to pursue a claim separately with [LK]":

> **Facebook has entered into a class action settlement to resolve claims that it illegally collected faceprints of users based on their photos.**
>
> You have a choice. You can participate in the class settlement, which is described here. The amount each class member will receive depends on how many people participate in the settlement, but the parties estimate that each class member would receive between $200 and $400. To get that amount you must submit a claim in the class action settlement.
>
> You also have the choice to opt out of the class settlement and sign up to pursue a claim separately with us. We cannot guarantee any outcome, but we believe we may be able to get you more than the class settlement.
>
> We are assisting clients who want to retain counsel and opt out of the settlement. However, you do not need to retain us in order to opt out of the settlement. You are free to opt out (or participate in) the settlement without retaining us.

D.I. 477-3 at p.3. Notably, this description is the first time the website describes the class settlement. Thus, in the very first mention of the class settlement, LK clearly explained, in the same size font, that class members have a clear choice, and that they are under no obligation to retain LK regardless of what choice they make. Later on the same page, after a brief description of Illinois' Biometric Information

---

[3] LK notes that, while Class Counsel's exhibit shows the site in question as separate screen shot pages, the actual website exists as a single continuous page. Thus, the viewable content for any given individual depends on the actual device and preferences used to access the site. For their part, LK has sought to make all information as easily accessible as possible, eliminating the need for any visitor to click through or peruse separate sites for pertinent information.

4     **Master File No.** 3:15-cv-03747-JD
LEVI & KORSINSKY'S SUPPLEMENTAL RESPONSE

Privacy Act, LK **again** informed visitors not only of the existence of a pending class action settlement already entered into by Facebook, but also of the visitor's opportunity to give the settlement offer a "thumbs down" and the potential "choice to opt out of the class settlement and sign up to pursue a claim separately with [LK]":



Facebook has entered into a class action settlement to resolve claims that **it illegally collected faceprints of users based on their photos**. You have a choice. You can participate in the class settlement, which is described here. The amount each class member will receive depends on how many people participate in the settlement, but the parties estimate that each class member would receive between $200 and $400. To receive compensation under the class action settlement, you must submit a claim.

**Compensation for Individuals Whose Privacy Rights Were Violated by Facebook**

You also have the choice to opt out of the class settlement and sign up to pursue a claim separately with us. Under the Illinois Privacy Law, individuals who had their faceprints collected without their written consent are entitled to up to $5000 per violation.

We cannot guarantee any outcome, but **we believe we may be able to get you more than the class settlement.**



D.I. 477-3 at p.5. Finally, in a subsection about the firm under the heading "About Us," LK explicitly stated in plain terms that it **was not** part of the class action or class settlement and that by signing up with the firm through the site any visitor would be "opting out of the class action settlement and choosing to bring [their] own claim outside of the class action":

> Levi & Korsinsky is not part of the class action case or class action settlement. By signing up with us, you will be opting out of the class action settlement and choosing to bring your own claim outside of the class action.
>
> The class action plaintiffs agreed to settle the case because they believed there were risks to continuing to litigate their case and thought the settlement amount was fair. You can read about those risks and why the class plaintiffs believe the settlement was fair here.
>
> The Court has preliminarily approved the class settlement. You can read the Court's order here. The settlement will not be final and guaranteed until the Court grants final approval of the settlement.
>
> Under the Court's preliminary approval order, you must either opt out of the class or submit a claim in the settlement by November 23, 2020. If you do not either opt out of the class or submit a claim in the settlement by November 23, 2020, you will lose your claim and receive no compensation.

D.I. 477-3 at p.6. LK went so far as to provide hyperlinks in each of the above-identified representations to a separately maintained page hosting several pertinent documents from the class settlement, including the notice, preliminary approval order, motion and amended motion for preliminary approval, and the amended stipulation of settlement (signified by the blue underlined "described here" or "here"). That site, like the main website before it, states clearly and upfront that the choice to pursue an individual claim by submitting on that website lies with the class member:

> Facebook has entered into a class action settlement to resolve claims that it illegally collected faceprints of users based on their photos. **You have a choice.** You can participate in the class settlement, which is described in the documents below.
>
> Or you may opt-out of the class settlement and sign up to pursue a claim separately with us.

D.I. 477-3 at p.7.

In each of these instances, the identified text was in a conspicuous font and stated in plain language that the class member would be excluding themselves from the class settlement and pursuing an individual claim should they move forward.

In fact, while Class Counsel point to comments left by Facebook users as somehow indicating "that potential class members are misunderstanding the nature of the advertisement" (TRO at p.4), Class Counsel overlooks that Facebook users can leave comments on the Facebook page without ever visiting or reading the signup page (as many internet commenters are known to do). There is accordingly no

evidence that anyone who completed the signup process was (or reasonably could be) confused. Further an inspection of that comment section submitted as Exhibit 3 to the Dore Declaration shows several individuals who, upon visiting the site, clearly understood that it related to opting out. *See* ECF 477-4 at p.6 (Comment of Jeanne Thompson: "This is a private company wan[t]ing you to opt-out of the class action suit. . ."); *id*. (Comment of Val Frailey: "It says you have the choice to opt out."); *id*. at 10 (Comment of Jennifer Raymond: "[I]t opts you out because you can't be in the class ac[t]ion and sue the company individually."); *id*. at 15 (Comment of KayLean Walden: ("Ya this removes from [t]he class action not add you to it you fill it out and you opt out of it.").

## **CLASS COUNSEL ARE NOT ENTITLED TO A TEMPORARY RESTRAINING ORDER**

"The Supreme Court has emphasized that injunctive relief is 'an extraordinary remedy never awarded as of right.'" *Maffick LLC v. Facebook, Inc*., No. 20-cv-05222-JD, 2020 U.S. Dist. LEXIS 162517, at *1 (N.D. Cal. Sep. 3, 2020) (Donato, J.) (quoting *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 24, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)). As this Court stated in *Maffick*:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Winter*, 555 U.S. at 20). Alternatively, a preliminary injunction may issue where "serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," if the plaintiff "also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. at 1135. . . . In all cases, at an "irreducible minimum," the party seeking an injunction "must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105-06 (9th Cir. 2012) (internal quotation and citation omitted); *see also Garcia v. Google, Inc*., 786 F.3d 733, 740 (9th Cir. 2015) ("The first factor under *Winter* is the most important -- likely success on the merits."). Because of this importance, when "a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three [*Winter* elements]." *Id.* (internal quotations and citations omitted).

*Maffick*, 2020 U.S. Dist. LEXIS 162517, at *2-*3.

Each factor militates against the entry of the requested TRO and preliminary injunction.

*First*, Class Counsel will be unable to show the likelihood of prevailing on the merits of their claim because any such claim that LK is misleading class members is demonstrably untrue based on the

clear language of the evidence upon which Class Counsel relies. *See supra*.

The United States Supreme Court explicitly held in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-102 (1981) that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Unable to convince the Court that the plain language of the site will provide a route to success, Class Counsel argues that LK's mere use of the word "claim" anywhere on the website somehow renders the entire site misleading. TRO at 4. This is unsupported by the plain meaning of the word "claim."

Every instance where the word "claim" is used falls squarely within the well-recognized definition of the word, further undercutting any likelihood of success by Class Counsel. *See* Black's Law Dictionary (11th Ed. 2019) (definition of claim: "A demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for. — Also termed claim for relief (1808).").

The untenable nature of Class Counsel's argument is further highlighted by their allegation that LK "intentionally misappropriate[d] much of the parties' carefully-created and Court-approved Facebook ads for itself." Reply at 2, n.2. But the images Class Counsel cite do not remotely support that assertion. Indeed, the only thing the images have in common is that they show a biometric scan of a face, which is hardly surprising given the nature of the claims at issue.

| ECF No. 477-3 (Levi & Korsinsky image) | ECF No. 468 at 73-74 (parties' Facebook ads) |
|---|---|
|  |  |

A simple search of "facial recognition" on Google Images demonstrates that LK's website merely uses the same sort of imagery anyone would use on a page addressing facial recognition claims.



*Second*, there is no irreparable harm whatsoever because the assertion that LK's site "is designed to fool class members into believing that they are communicating with class counsel when that is not the case" is completely unsupported. TRO at p.5. Instead, LK clearly states that it is not class counsel and makes evident to any visitor to the site that their retention of the firm would be on an opt-out basis. These representations are repeated in the firm's representation agreement presented to parties interested in pursuing an individual claim against Facebook (which required a separate signature), as well as in the opt-out form presented as the last step to an individual seeking to continue forward with the opt-out process. *See* Nespole Ex. A (form of opt-out that was separately executed by any individual opting out through L&K's site). As such, there can be no irreparable harm.[4]

*Finally*, the balance of the equities and consideration of the public interests dovetail and weigh in favor of LK. Class Counsel's requested TRO is purely an unconstitutional prior restraint on free speech. Setting aside Class Counsel's characterization of LK's maintenance of an information-based website designed to better inform members of a settlement class of their right to pursue an individual claim as a "solicitation," Class Counsel's request for a prior restraint of LK's speech is antithetical to its First Amendment rights. As this Court stated in *Maffick*: "A court order that forbids speech activities, which is what [Class Counsel] seeks, is a 'classic prior restraint of speech'. . . 'Prior restraints pose the

---

[4] Class Counsel's attempt to manufacture irreparable harm on the basis of class members' supposed short attention spans (*see* TRO at p.5 ("For many class members, there may only be one opportunity to catch their attention on this matter before it is diverted")), is a specious argument based on nothing more than speculation. In actuality, the Court has previously ordered notice to be provided to absent class members through **seven different methods**. *See* Order Granting Preliminary Approval of Class Action Settlement at 6 (D.I. 474) (approving proposed forms of notice that included email notice, jewel and news feed notice, publication notice, settlement website, targeted internet ad campaign, and CAFA notice). What they are really asking for is that there be only one portal for class members to access: theirs.

'most serious and the least tolerable infringement on First Amendment rights,' and there is a 'historical and heavy presumption against such restraints.'" *Id.,* 2020 U.S. Dist. LEXIS 162517, at *3 (citations omitted). "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Tory v. Cochran*, 544 U.S. 734, 738 (2005) (quoting *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976)). A requested injunction that restricts speech must be therefore be denied unless "(1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest, … (2) the [proposed injunction] is narrowly drawn, … and (3) less restrictive alternatives are not available." *Levine v. U.S. Dist. Ct*., 764 F.2d 590, 595 (9th Cir. 1985). Prior restraints, "if permissible at all, are permissible only in the most extraordinary of circumstances." *Columbia Broad. Sys., Inc. v. U.S. Dist. Ct*., 729 F.2d 1174, 1183 (9th Cir. 1984).

As set forth herein, Class Counsel's claim that LK is misleading members of the class necessarily fails when stripped of its rhetoric and false premises. However, even if the subject matter of LK's website could be subject to disagreement (and LK submits that it is not where the language makes clear the firm's role in helping class members opt out), under no circumstances is an application for temporary restraining order and motion for preliminary injunction the proper forum for adjudicating such a claim. To do so would be to ignore the "special vice of prior restraint" – that "communication will be suppressed . . . before an adequate determination that it is unprotected by the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels*., 413 U.S. 376, 390 (1973).[5] When viewed in this context, it is clear that the balance of the equities and the public interest weigh against the requested TRO. *See IBiz, LLC v. City of Hayward*, 962 F. Supp. 2d 1159, 1170 (N.D. Cal. 2013) (noting "loss of…constitutional rights" as factor in balancing equities).

## CONCLUSION

The relief Class Counsel seeks is extraordinary. Counsel have not shown that LK has done anything wrong at all, let alone met the extraordinarily high standard for a prior restraint on speech protected speech. For each of the foregoing reasons, the requested TRO should be denied.

---

[5] S*ee Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 639–41 (1985) (holding that the First Amendment prohibits regulation of attorney advertising that is not false or deceptive).

| 1 | September 22, 2020 |
|---|---|
| 2 | LEVI & KORSINSKY, LLP |
| 3 |    */s/Adam M. Apton* |
| 4 | Adam M. Apton (SBN 316506) |
|   | 388 Market Street, Suite 1300 |
| 5 | San Francisco, CA 94111 |
|   | Tel: (415) 373-1671 |
| 6 | Email: aapton@zlk.com |
| 7 | |
|   | LEVI & KORSINSKY, LLP |
| 8 | Gregory M. Nespole |
|   | (*pro hac vice* application pending) |
| 9 | 55 Broadway |
|   | New York, New York 10006 |
| 10 | Tel.: (212) 363-7500 |
|   | Email: gnespole@zlk.com |

## **CERTIFICATE OF SERVICE**

It is hereby certified that a true and correct copy of the foregoing was served electronically via the Court's electronic filing system on the date below upon all counsel of record in this matter.

Dated: September 22, 2020

*/s/Adam M. Apton*
Adam M. Apton