# Exhibit 1

1  EDELSON PC
   Jay Edelson (*pro hac vice*)
2  Benjamin H. Richman (*pro hac vice*)
   Alexander G. Tievsky (*pro hac vice*)
3  350 North LaSalle Street, 14th Floor
4  Chicago, IL 60654
   Telephone: (312) 589-6370
5  Fax: (312) 589-6379
   jedelson@edelson.com
6
7  ROBBINS GELLER RUDMAN & DOWD LLP
   Paul J. Geller (*Pro Hac Vice*)
8  Stuart A. Davidson (*Pro Hac Vice*)
   Christopher C. Gold (*pro hac vice*)
9  120 East Palmetto Park Road, Suite 500
   Boca Raton, FL 33432
10 Telephone: 561/750-3000
11 561/750-3364 (fax)
   pgeller@rgrdlaw.com
12
13 LABATON SUCHAROW LLP
   Michael P. Canty (*pro hac vice*)
14 Corban S. Rhodes (*pro hac vice*)
   140 Broadway
15 New York, NY 10005
   Telephone: (212) 907-0700
16 Fax: (212) 818-0477
   mcanty@labaton.com
17
18
19 Counsel for plaintiffs
20
21                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
22                      SAN FRANCISCO DIVISION

23 In re FACEBOOK BIOMETRIC            )   Master File No. 3:15-cv-03747-JD
24 INFORMATION PRIVACY LITIGATION      )
                                       )   CLASS ACTION
25 ─────────────────────────────────── )
                                       )
   This Document Relates To:           )   DECLARATION OF CLASS COUNSEL
26                                      )
                                       )
27      ALL ACTIONS.                    )
                                       )

28

   DECLARATION OF CLASS COUNSEL - 3:15-cv-03747-JD

We, Jay Edelson, Paul Geller, and Michael Canty, hereby jointly declare and state as follows:

1.     We are each partners at one of the firms named as Class Counsel in the above-captioned Action and have appeared on behalf of the certified class. We make this declaration based on our personal knowledge, as to each of our firms, and our review of the records our respective firms kept during the pendency of this case.

**I.     Background**

2.     In this Action, Plaintiffs alleged that Facebook violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA"), through its unauthorized collection and storage, and subsequent use of its users' biometric information without informed consent.

3.     Biometric information is any information captured, converted, stored or shared based on a person's biometric identifier used to identify an individual. A "biometric identifier" is any personal feature that is unique to an individual, including fingerprints, iris scans, DNA, "face geometry" and others.

4.     The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

5.     Facebook is a worldwide social media company that claims over one billion users.

6.     Facebook users can use the Facebook platform to upload and share photographs with friends, relatives, and other Facebook users. Once a user uploads a photograph on Facebook, the user can "tag" other Facebook users and non-users who appear in the photograph.

7.     In 2010, Facebook implemented a program called "Tag Suggestions." Tag Suggestions scans user uploaded photographs, identifies the faces appearing in those

photographs, and, if Tag Suggestions recognizes and identifies one of the faces appearing the photograph, Facebook suggests that individual's name or automatically tags them.

8. Three class actions were filed against Facebook alleging BIPA violations in connection with Tag Suggestions: (1) On April 1, 2015, Plaintiff Carlo Licata filed a putative class action complaint against Facebook in the Circuit Court of Cook County, Illinois, alleging violations of the BIPA, related to the alleged unauthorized collection and storage of his biometric data.; (2) On April 22, 2015, Plaintiff Adam Pezen filed a putative class action complaint alleging similar claims in the United States District Court for the Northern District of Illinois; (3) On May 14, 2015, Plaintiff Nimesh Patel filed a putative class action complaint alleging similar claims, also in the Northern District of Illinois.

## II.     Early Motion Practice

### A.     Facebook's Motion to Transfer Venue & Removal to Federal Court

9. On May 6, 2015, Facebook removed the Licata case from the Circuit Court of Cook County, Illinois, to the United States District Court for the Northern District of Illinois.

10. On July 1, 2015, Facebook moved to transfer venue to the United State District Court for the Northern District of California. (ECF No. 20.)

11. Facebook argued that by signing up for a Facebook account, Plaintiffs agreed to the terms of service of the website. The terms of service included, among other things a valid and enforceable forum selection clause. *Id.*

12. Ultimately, the Parties stipulated to transfer the three separate cases from the District Court for the Northern District of Illinois to the District Court for the Northern District of California. (ECF No. 120.)

13. On July 29, 2015, the Pezen and Patel cases, along with the removed Licata case, were transferred to the Northern District of California and consolidated into this Action. *Id.*

### B.     Facebook's First Motion to Dismiss the Consolidated Class Action Complaint on Choice-of-Law and Contract Formation Grounds

14. After transfer and consolidation, on August 28, 2015, Plaintiffs filed an amended Consolidated Class Action Complaint. (ECF No. 40.)

15.     On October 9, 2015, Facebook moved to dismiss the Consolidated Class Action Complaint. (ECF No. 69.)

16.     Facebook's first motion to dismiss principally argued that: (1) Plaintiffs cannot pursue a claim under BIPA because they agreed, by virtue of the signing up for a Facebook account, that California law governs their dispute with Facebook; and, (2) the BIPA does not apply to Tag Suggestions. *Id.*at 6, 10.

17.     On November 9, 2015 Plaintiffs filed their opposition to Facebook's first motion to dismiss denying that they agreed to Facebook's terms of service agreement, which includes the choice-of-law provision. (ECF No. 73.) Plaintiffs denied that they agreed to Facebook's user agreement, including the choice-of-law provision and further argued that the motion to dismiss raised fact disputes that could not be resolved in a Rule 12(b)(6) motion. *Id.*

## C.     The Court's Conversion of the First Motion to Dismiss into Summary Judgment Proceedings

18.     On December 16, 2015, the Court held a hearing on Facebook's motion to dismiss. On its own motion, the Court converted the portion of Facebook's motion to dismiss related to contract formation and enforceability into a summary judgment proceeding under Rule 56. (ECF No. 83.) Defendant's second argument for dismissal—that plaintiffs had failed to state a claim under BIPA—was taken under submission pending resolution of the choice-of-law question. *Id.*

19.     The Court further ordered an evidentiary hearing on the contract formation dispute for the choice-of-law provision. *Id.*

## D.     Expedited Discovery Regarding Facebook's Converted Motion for Summary Judgment

20.     Over the next three months, the Parties engaged in expedited discovery to resolve questions of fact related to the contract formation.

21.     In February 2016, each of the three named Plaintiffs sat for the first of two depositions in the Action.

22.     That same month, Plaintiffs also took the depositions of Mark Pike, a privacy program manager, and Shannon Chance, a legal analyst and custodian of records for Facebook.

23.     During this period the Parties produced nearly a thousand pages of documents. Additionally, Facebook made two hard copy productions of its source code.

**E.     Evidentiary Hearings on Contract Formation and Choice-of-Law Provision and the Court's Decision**

24.     On February 24, 2016, both Parties submitted briefing ahead of the upcoming evidentiary and summary judgment hearing. (ECF Nos. 96, 97.)

25.     Thereafter, on March 2, 2016, the Court held an evidentiary and summary judgment hearing, which included live and recorded testimony from five witnesses. Facebook called two live witnesses: Joachim De Lombaert, an engineering manager, and Mark Pike. (ECF Nos. 96, 109.) Plaintiffs cross-examined both witnesses and presented portions of each of the three plaintiffs' videotaped depositions. (ECF No. 109.)

26.     Immediately after the evidentiary hearing, the Court heard oral argument on the summary judgment issues: whether a contract had been formed on choice-of-law, and if so, whether it should be enforced to bar plaintiffs from asserting claims.

27.     On May 5, 2016, "[a]fter briefing and an evidentiary hearing on disputed fact issue underlying choice of law", the Court opted to "resolve[ ] the factual dispute of whether or not Plaintiffs consented to a California choice-of-law provision as argued by Facebook." (ECF No. 120.) The Court found that Plaintiffs stated a claim under BIPA and denied Facebook's first motion to dismiss and motion for summary judgment. *Id*.

28.     In its order denying Facebook's motion to dismiss and summary judgment, the court first made findings of fact based on the evidence discussed and above, then ruled on the choice-of-law issues. *Id.* The Court ruled that (1) a choice-of-law agreement was formed; and (2) the contractual choice-of-law clause could not be enforced to bar Plaintiffs' BIPA claims.

29.     The Court applied the choice-of-law rules of the forum state, California, to hold that the California choice-of-law clause is contrary to a fundamental policy of Illinois, and, that

1  Illinois has a greater interest in the determination of the case. *Id.* at 17. Accordingly, summary

2  judgment on this issue was denied.

3      30.    The Court also denied Facebook's first motion to dismiss, rejecting Facebook's

4  contention that the BIPA categorically excluded all information involving photographs from its

5  scope. *Id.* at 22.

6      31.    On June 2, 2016, Facebook filed its Answer to the Amended Consolidated Class

7  Action Complaint. In the Answer, Facebook denied substantially all of the allegations in the

8  Complaint related to its unauthorized collection, storage, and subsequent use of its users'

9  biometric information. (ECF No. 126.)

10  **III.    Legislative Challenges to BIPA**

11      32.    On May 26, 2016, Class Counsel learned that an industry-sponsored effort was

12  underway at the Illinois capital to undermine the Court's motion to dismiss decision through

13  extra-judicial means. Over the next two days, Class Counsel worked furiously to protect putative

14  class members' right to assert the claims in this Action.

15      33.    Earlier that same day—the Thursday before Memorial Day weekend and just

16  before the end of the Illinois General Assembly session—a "gut and replace" amendment was

17  introduced to a "Uniform Disposition of Unclaimed Property Act" (which, as the name suggests,

18  had absolutely nothing whatsoever to do with biometric information or consumer privacy). *See*

19  Declaration of Tiffany Elking (ECF No. 465-4.) The new amendment transformed the bill into

20  one that sought to retroactively amend BIPA to prevent the law's application to digital images.

21  In other words, if the bill passed it would have undone the Court's recent ruling on the motion to

22  dismiss and left putative class members without a remedy against Facebook under BIPA.

23      34.    The use of "gut and replace" procedure, which allowed the bill to skip many of

24  the normal stages of legislation that the unrelated and now-gutted bill had already been through,

25  as well as the 11th hour timing of the bill, was clearly a concerted effort to change the law under

26  cover of dark without any public scrutiny.

27      35.    Class Counsel immediately worked to bring this issue of great public importance

28  into the light, working with numerous stakeholders, including consumer and privacy advocacy

1    groups, many of whose outraged members are also class members here, as well as government

2    officials, media, legislators and interest groups, to ensure that a full and fair debate would be had

3    on any such legislation. In the end, with the light of public scrutiny upon it and general public

4    uproar, the sponsor of the amendment tabled the bill the day after the amendment was

5    introduced.

6         36.    This turned out to be only the first of many legislative challenges to BIPA during

7    the course of this litigation. Over the next four years, Class Counsel continued to protect class

8    members' rights to assert claims in this Action against repeated industry-sponsored efforts to

9    eviscerate BIPA, including organizing and participating in hundreds of meetings with

10   stakeholders—including industry representatives and trade associations—and virtually every

11   Illinois State Representative and Senator.

12        37.    In 2018, there was a significant increase in industry-sponsored efforts to gut

13   BIPA. First, two identical bills were filed to amend BIPA. One bill, Senate Bill 3053, was filed

14   in the Illinois Senate by the Chair of the Telecommunications and Information Technology

15   Committee. The other bill, House Bill 5103, was filed by the Chair of the House Judiciary

16   Committee. The introduction of two identical bills, particularly by Chairmen of their own

17   respective committees, signaled a coordinated and serious effort to amend BIPA. Also, filing a

18   bill in both the House and Senate meant that Class Counsel had to work diligently with both

19   chambers at the same time (over 175 legislators) to inform them of the consequences of these

20   bills.

21        38.    Fortunately, Class Counsel was able to work with the bill sponsor who ultimately

22   "held" it, while the stakeholders shared their issues and concerns. After months of back and forth

23   and countless meetings with various stakeholders, the Senate sponsor reluctantly agreed to not

24   call the bill.

25        39.    Last year, another senior Senator introduced Senate Bill 2134 which sought to

26   amend BIPA by removing the private right of action. Fortunately again, after many negotiations

27   and meetings, Class Counsel was able to prevent this bill from gaining momentum and moving

28   out of the Senate.

40.     Finally, this past year, Class Counsel saw six bills introduced to amend BIPA. Two of the bills were introduced in the Illinois House of Representatives by the Illinois House of Representatives' Minority Leader, and three by the Assistant Republican Leader that introduced Senate Bill 2134 from the year prior. The sixth bill was introduced by the same Senator who had filed Senate Bill 3053 two years prior, however, now this Senator is the Assistant Majority Leader/Senate Pro Tempore. Each of the six bills, if passed, would effectively gut the law's private-enforcement scheme. *See* Illinois HB 5374 (2020); SB 3593 (2020); SB 3591 (2020); SB 2134 (2019). But generally speaking, the bills to gut BIPA sought to:

- eliminate the law's private right of action, *see* HB 3075 (2020); SB 3592 (2020); SB 2134 (2019);
- permit the recovery of damages only for intentional violations, eliminating the ability to recover damages for negligent violations, *see* SB 3591 (2020);
- eliminate the ability of a plaintiff to recover liquidated damages, *see* SB 3593 (2020); HB 5374 (2020);
- eliminate protections regarding informed consent, collection, and storage of biometric information, *see* SB 3053 (2018); HB 5103 (2018); and
- require pre-suit notice before any action for damages, *see* SB 3593. HB 5374.

41.     Unfortunately, each year, the attempts to eviscerate BIPA get more significant and the likelihood of happening, gets more real. That said, Class Counsel will continue to vigorously protect the interests of the class members from industry-sponsored attempts to gut BIPA.

## IV.     Discovery

42.     Although the question of subject-matter jurisdiction (discussed in detail below) remained on the table, discovery continued after the Court's ruling on Facebook's converted summary judgment motion. Over the course of many months, the Parties conduced significant fact discovery and expert discovery, including a second round of depositions of all plaintiffs, the Parties' respective experts, and Facebook fact witnesses.

### A.     Fact Discovery and Depositions

43.     The Parties negotiated and agreed to a Protective Order governing the treatment of documents and other information produced in discovery that was entered on February 12, 2016. (ECF No. 88.)

44.     The Parties also negotiated and submitted a Stipulation and Pretrial Scheduling Order and several modifications to the Scheduling Order, to govern, among other things, the scheduling of amended pleadings, fact and expert discovery, the filing of motions for class certification and summary judgment and *Daubert* motions. (ECF Nos. 32, 137, 190, 223.) When the Parties failed to reach an agreement on amending the Scheduling Order, the Parties briefed the issue and the Court weighed in on the matter. (ECF Nos. 224-26, 229.)

45.     In addition, in January 2016, the Parties exchanged initial disclosures in accordance with Rule 26(a)(1) of the Federal Rules of Civil Procedure.

46.     In December 2015, both Plaintiffs and Facebook respectively served their first requests for production of documents.

47.     In the months that followed, Plaintiffs engaged in numerous meet and confers and extensive negotiations with Facebook's counsel over the scope and adequacy of both sides' discovery responses, including detailed discussions regarding search terms to be used and custodians whose documents should be searched.

48.     Plaintiffs searched for and gathered documents that were responsive to Facebook's requests for production of documents, and Class Counsel then reviewed the documents. Plaintiffs also responded to interrogatories propounded by Facebook on matters related to class certification and summary judgment.

49.     In total, Class Counsel took or defended 16 fact witness depositions, including highly technical depositions of Facebook's top software engineers in charge of developing Facebook's machine learning algorithms that operated its facial recognition technology.

50.     The Parties worked diligently to resolve numerous discovery disputes, including countless meet and confer negotiations on a broad range of issues, but ultimately filed three motions to compel and/or for protective orders.

51.     Throughout document discovery, the Parties exchanged tens of thousands of pages of documents.

**B.**     **Expert Discovery**

52.     The highly technical nature of this case required significant work by subject-matter experts to prepare for trial. Plaintiffs and their experts conducted seven weeks of on-site review of Facebook's source code, building a deep understanding of Facebook's highly complex data structures and machine learning algorithms. This work was essential to rebut Facebook's eventual contention that, due to the way in which its algorithm processes facial images, it was not utilizing "scans of face geometry" within the meaning of BIPA.

53.     Drawing on his extensive code review, and Class Counsel's depositions of Facebook's software engineers, Plaintiffs' expert, Dr. Atif Hashmi, prepared a detailed report that was exchanged with Facebook on December 22, 2017. (ECF No. 303-2.) Dr. Hashmi's report fundamentally opined that Facebook's facial recognition algorithm "utilize[s] facial geometry to determine the location of facial landmarks including eyes, nose, mouth, chin, and others in unaligned face images." (ECF No. 372 at 4.)

54.     Also on December 22, 2017, Facebook served on Plaintiffs the report of their expert, Dr. Matthew Turk. (ECF No. 303-9.) Dr. Turk primarily opined that "[t]hrough an iterative trial-and-error training process, Facebook's [current technology] ... learned for itself what features of an image's pixel values are most useful for the purpose of characterizing and distinguishing images of human faces." (ECF 372 at 5.)

55.     To rebut Dr. Turk's report, Class Counsel quickly retained another expert, Jeffrey Dunn, the former Technical Director for Biometrics at the National Security Agency Laboratory for Physical Science, who is an expert in the biometrics industry. (ECF No. 343 at 8.)  Mr. Dunn submitted his rebuttal report on February 2, 2018 (ECF No. 305-2).

56.     Dr. Turk also submitted a rebuttal report to Dr. Hashmi's report on February 2, 2018, which argued principally that Facebook's technology "'does not explicitly detect human-notable facial features' but instead 'combines and weights different combinations of different aspects of the entire face image's pixel values. …'" (ECF No. 372 at 5.)

57.     Class Counsel defended the depositions of Dr. Hashmi and Mr. Dunn on February 23, 2018 and February 26, 2018, respectively, and took the deposition of Dr. Turk on February 28, 2018.

**V.     Post-Answer Dispositive Motion Practice.**

    **A.     Facebook's Motion to Dismiss For Lack of Subject Matter Jurisdiction**

58.     On June 29, 2016, Facebook filed a motion to dismiss under Rule 12(b)(1) and Rule 12(h)(3) for lack of subject matter jurisdiction.

59.     Facebook principally argued that under the Supreme Court's then-recent decision, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Plaintiffs lacked Article III standing because statutory violations are insufficient to establish standing. Facebook further argued that a violation of the Illinois BIPA does not cause tangible harm. (ECF No. 129.)

60.     Counsel for Facebook had significant experience with this issue, because they represented the petitioner in *Spokeo* before the Supreme Court and the Ninth Circuit. Fortunately, Class Counsel had similar experience, as Edelson PC represented the respondent.

61.     On August 4, 2016, Plaintiffs filed a response opposing the motion. (ECF No. 138.) Plaintiffs argued that they possess Article III standing and that the District Court for the Northern District of California had federal jurisdiction because (i) Facebook's invasion of Plaintiffs property right in the information that makes up their own faces is a tangible injury that confers standing; and (ii) the informational injury Plaintiffs suffered when Facebook failed to make statutorily required disclosures is grounded in their right to privacy and to control the use of their own likeness.

62.     On February 7, 2017, this Court denied Facebook's second motion to dismiss for lack of subject matter jurisdiction. The motion was denied with leave to renew pending the Ninth Circuit's decision in *Spokeo* on remand from the Supreme Court. (ECF No. 193.)

**B.    Facebook's Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction**

63.    On September 28, 2017, after the Ninth Circuit issued its decision in *Spokeo* on remand, Facebook renewed its second motion to dismiss for lack of subject matter jurisdiction. (ECF No. 227.)

64.    Facebook reasserted its arguments that Plaintiffs do not allege a concrete statutory interest and that plaintiffs do not allege an actual "real-world" harm. *Id.*

65.    On October 26, 2017, Plaintiffs filed an opposition to the renewed motion. (ECF No. 236.) Plaintiffs reasserted, among other things, that the Court has already recognized that BIPA protects a concrete interest, the right to privacy in personal biometric data.

66.    On November 30, 2017, the Court held a hearing on the renewed motion to dismiss and took the motion under consideration. (ECF No. 249.) Guided by the Court's standing order, oral argument for the Plaintiffs was presented by an associate with fewer than six years of experience. (ECF No. 241.)

67.    On February 26, 2018, the Court denied Facebook's renewed motion to dismiss for lack of subject matter jurisdiction. (ECF No. 294.) In doing so, the Court became one of the first to interpret and apply the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), stating that "*Spokeo I* did not announce new standing requirements … Rather, it sharpened the focus on when an intangible harm such as the violation of a statutory right is sufficiently concrete to rise to the level of an injury in fact." *Id.* The Court's conclusions in this order have since been widely cited, including by the Illinois Supreme Court, and, as discussed in detail below, were affirmed in full by the Ninth Circuit.

**C.    Plaintiffs' Motion for Class Certification**

68.    On December 8, 2017, while the *Spokeo* motion was still under Court's review, Plaintiffs moved for class certification under Federal Rule of Civil Procedure 23(b)(3). (ECF No. 255.) Plaintiffs argued that the proposed class and subclass met the four prerequisites of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and the prerequisites of Rule 23(b)(3) (predominance and superiority). *Id.*

69.     Plaintiffs proposed a class of all "Facebook users living in Illinois whose face appeared in a photo uploaded to Facebook from Illinois between June 7, 2011, and final disposition of this action." *Id.* at 5.

70.     On January 26, 2018 Facebook filed an opposition to class certification. Facebook principally argued that the class definition was inadequate and that individualized issues would predominate over class wide issues. (ECF No. 285.)

71.     In support of their class certification request, Plaintiffs filed 24 exhibits along with an additional six exhibits in reply. (ECF Nos. 255, 292.)

72.     The Court held a hearing on the motion for class certification on March 29, 2018. Oral argument was again presented by an attorney with fewer than six years of experience. (ECF No. 313.)

73.     On April 16, 2018, the Court granted Plaintiffs' motion for class certification by certifying a class consisting of: "Facebook users located in Illinois for whom Facebook created and stored a face template after June 7, 2011." (ECF No. 333.)

**D.     Facebook's Motion for Summary Judgment Based on Illinois' Extraterritoriality Doctrine and the Dormant Commerce Clause**

74.     The same day that Plaintiffs moved for class certification, Facebook moved for summary judgment based on Illinois' extraterritoriality doctrine and the Dormant Commerce Clause. (ECF No. 257.)

75.     Facebook contended that (i) in light of Illinois's extraterritoriality doctrine, BIPA does not apply because Facebook's facial recognition processing and creation of face templates occurred only on servers outside of Illinois, and (ii) in any event the Dormant Commerce Clause barred relief for similar reasons.

76.     On December 22, 2017, Plaintiffs filed a motion in opposition to Facebook's summary judgment motion. (ECF No. 272.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E.     The Parties' Cross-Motions for Summary Judgment**

77.     Less than a month after their earlier motion for summary judgment, on March 16, 2018, Facebook filed a second motion for summary judgment. (ECF No. 299.) This marked the third time that the Court took Facebook's summary judgment arguments under consideration.

78.     Facebook argued, among other things that: (1) Plaintiffs were not "aggrieved" by Facebook's purported violation of BIPA so they could not recover damages; (2) Facebook was not negligent so Plaintiffs could not recover anything; and (3) that Facebook did not collect anyone's biometric identifiers because its technology  "has no express dependency on human facial features at all." (ECF No. 372 at 4.) Facebook also re-raised its extraterritoriality and "aggrieved" contentions in opposition to Plaintiffs' motion for class certification. (ECF No. 299.)

79.     Simultaneously, Plaintiffs cross-moved for partial summary judgment arguing that it was undisputed that Facebook used facial recognition technology to collect and store biometric identifiers prior to informed consent in violation of BIPA. (ECF No. 307.)

80.     The Parties each filed motions to exclude the reports, opinions and testimony filed by the other party's experts. Plaintiffs moved to exclude the testimony of Defendant's proposed expert, Dr. Turk. (ECF No. 301.) Facebook moved to exclude portions of the expert report of Dr. Hashmi and Mr. Dunn. (ECF Nos. 303, 305.) The Court later noted the magnitude of the filings, stating that, "the parties filed over 100 pages of briefs for the cross-motions, accompanied by several hundred pages of documents and emails, deposition testimony, expert testimony and other exhibits." (ECF No. 372.)

81.     On May 14, 2018, the Court denied the three outstanding summary judgment motions, clearing the way for a jury trial. (ECF No. 372.)

**F.     Trial Preparation**

82.     The following week, after briefing and argument, the Court directed that notice be disseminated to class members using the Facebook platform by the end of May. (ECF No. 390.) Jury selection remained scheduled to begin on July 9, 2018.

83.     In accordance with the Court's pre-trial procedures, eight motions in limine were exchanged (but not filed) by the Parties on May 17, 2018. Over the following week, Plaintiffs sent Facebook: (i) a Proposed Agreed Upon Statement of Undisputed Facts, (ii) a Proposed Witness List, (iii) a Proposed Exhibit List, and (iv) a Proposed Jury Instructions and Verdict Forms. Additionally, Class Counsel had drafted eight oppositions to the motions in limine, which were scheduled to be exchanged by May 27, 2018.

84.     On May 9, 2018, Plaintiffs served six subpoenas on relevant individuals, including Mark Zuckerberg, compelling them to testify at the upcoming trial. On May 22, 2018, Facebook and Mr. Zuckerberg filed a motion to strike and/or quash the subpoena.

85.     Plaintiffs aggressively prepared for trial, including exchanges of eight motions in limine, 526 trial exhibits (258 exhibits on Plaintiffs proposed list; 268 exhibits on Facebook's proposed list), and witness lists that included more than 17 witnesses.

86.     In addition to the preparation required by the Court, Class Counsel also worked hard to ensure that they were prepared to present the Class's case to the jury in the most compelling manner possible. To that end, Class Counsel further engaged a highly respected trial consultant, Rodney Jew of CDS Strategy Consulting, and participated in five days of intensive trial preparation before the Ninth Circuit stayed the case. That preparation allowed Class Counsel to put together demonstrative exhibits and determine how to present a highly technical narrative to a lay jury.

## VI.     Appellate and Illinois Proceedings

### A.     Facebook's Petition for Leave to Appeal and Request to Stay the Case.

87.     On April 30, 2018, Facebook filed a petition for interlocutory review of the class certification order in the United States Court of Appeals for the Ninth Circuit. (ECF No. 361.)

88.     Shortly thereafter, Facebook moved for a complete stay of the case pending the Ninth Circuit's decision on whether to accept interlocutory review of this Court's order certifying a class for trial. (ECF No. 364.) Plaintiffs opposed, noting that they were prepared for trial. (ECF No. 387.)

89.    On May 29, 2018, the Court denied Facebook's motion for a complete stay. (ECF No. 404.) In denying the stay, the Court noted that the case has been pending since 2015, the Court has decided two motions to dismiss, three motions for summary judgment, a motion for class certification, multiple discovery disputes, and other matters. "Discovery closed many months ago and the expert witness work is done. The case is ripe for trial, and Facebook's last-minute request to derail that is denied." *Id.*

90.    In response, Facebook filed an emergency motion to requesting the Ninth Circuit to stay this Court's proceedings pending consideration of the 23(f) petition.

91.    On May 29, 2018, the Ninth Circuit granted both Facebook's emergency stay motion and the petition for interlocutory review. (ECF No. 406.)

**B.    Illinois Supreme Court Proceedings in the Seminal *Rosenbach v. Six Flags* Case**

92.    The day after the Ninth Circuit granted Facebook's petition for interlocutory review of the class certification, on May 30, 2018, the Supreme Court of Illinois allowed another petition in an unrelated BIPA action pending in the Illinois state courts, *Rosenbach v. Six Flags Entertainment Corp.* ("*Rosenbach*").

93.    The importance of the *Rosenbach* case to the then recently certified Class is hard to overstate. The appealed-from intermediate appellate ruling in *Rosenbach* was cited to no less than 26 times in the Parties' class certification briefs in this Action, and was the backbone of Facebook's most strenuous attack. (*See* ECF No. 333 at 8 ("Facebook puts greatest emphasis on its argument about the meaning of 'aggrieved.' It relies almost exclusively on *Rosenbach v. Six Flags Entertainment Corporation*, 2017 IL App (2d) 170317 (Ill. App. Ct. 2017)"). Consequently, more than a quarter of the Court's order was appropriately addressed to Facebook's argument that Plaintiffs were not "aggrieved" within the meaning of the statute based on *Rosenbach*. *Id.* at 8-12. After careful analysis of other Illinois precedent and the facts in *Rosenbach*, the Court correctly found that the intermediate decision "would not be a good prediction of how the Illinois Supreme Court would interpret 'aggrieved' under BIPA." *Id.* at 12.

94.    Class Counsel submitted an amicus brief in the Rosenbach appeal on behalf of the Class Representatives here on July 7, 2018, although leave to file the brief was denied along with several other movants.

95.    On January 25, 2019, the Illinois Supreme Court did in fact refer explicitly to this Court's reasoning in rejecting the argument put forth by the defendants there (and Facebook here) to narrowly construe the term "aggrieved" within the statute. *See Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1204 (Ill. 2019) ("We reject [that argument] as well, as a recent federal district court decision correctly reasoned we might do. *In re Facebook Biometric Information Privacy Litigation*, 326 F.R.D. 535, 545-47 (N.D. Cal. 2018)").

**C.    Ninth Circuit Briefing and Argument.**

96.    Although Facebook's petition had been largely about class certification, its opening brief focused heavily on the issue of subject-matter jurisdiction in addition to class certification.

97.    Class Counsel responded to both sets of arguments in writing and at oral argument. Both briefing and oral argument in the Ninth Circuit were primarily handled by associates, with partner supervision.

98.    As described above, after Class Counsel had filed its brief on behalf of the Class but before oral argument, the Illinois Supreme Court issued its landmark opinion in *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, which drew heavily on this Court's reasoning to conclude that a person need not have suffered harm other than unauthorized collection of biometric information to be considered "aggrieved" under the meaning of BIPA.

99.    In response, on January 31, 2019, Class Counsel filed a motion to vacate the order granting the interlocutory appeal on the basis that *Rosenbach* rendered the appeal insubstantial. The motion was taken with the case.

**D.    The Ninth Circuit Affirms This Court's Order on Class Certification and Confirms that Subject-Matter Jurisdiction Is Proper.**

100.    On August 8, 2019, the Ninth Circuit affirmed this Court's order in full. (ECF No. 416.)

101.    On behalf of a unanimous panel, Judge Sandra Ikuta held that Plaintiffs alleged a concrete and particularized harm, sufficient to confer Article III standing, because BIPA protected the plaintiffs' concrete privacy interest, and violations of the procedures in BIPA actually harmed or posed a material risk of harm to those privacy interests. The panel also agreed with Plaintiffs that the Court had not abused its discretion in certifying the class.

### E.    Facebook's Petition For a Rehearing *En Banc* Is Denied

102.    On September 9, 2019, Facebook petitioned the Ninth Circuit for a rehearing or rehearing *en banc*. (ECF No. 417.) In addition to its trial counsel, Facebook retained Neal Katyal, former Acting U.S. Solicitor General, to appear on its behalf.

103.    After additional briefing from both Parties and amici curiae, the Ninth Circuit declined to hear the case *en banc*, with no judges calling for a vote. (ECF No. 418.)

### F.    Facebook Petitions for a Writ of Certiorari

104.    On December 2, 2019, Facebook filed a petition for a writ of certiorari with the Supreme Court of the United States. (ECF No. 419.)

105.    In its Petition for a Writ of Certiorari, Facebook presented three questions for the Supreme Court:

> i.    Whether a court can find Article III standing based on its conclusion that a statute protects a concrete interest, without determining that the plaintiff suffered a personal, real-world injury from the alleged statutory violation.
>
> ii.    Whether a court can find Article III standing based on a risk that a plaintiff's personal information could be misused in the future, without concluding that the possibility of misuse is imminent.
>
> iii.    Whether a court can certify a class without deciding a question of law that is relevant to determining whether common issues predominate under Rule 23.
>
> U.S. Supreme Court (No. 19-709).

106.    The petition garnered substantial interest from third parties. Third parties, Washington Legal Foundation, the Consumer Data Industry Association, and TechFreedom filed

1   amicus curiae briefs with the Supreme Court. All three of the amicus briefs were filed in support

2   of Facebook, urging the high court to grant certiorari. *See* U.S. Supreme Court (No. 19-709).

3       107.    Additionally, on Facebook's motion (and over Plaintiffs' objection), the Ninth

4   Circuit stayed issuance of the mandate pending the Supreme Court's resolution of its petition,

5   effectively continuing the stay until the Supreme Court disposed of the case. (ECF No. 419.)

6       108.    On January 21, 2020 the Supreme Court denied Facebook's petition without

7   asking for a response from Class Counsel. (ECF No. 426.)

8   **VII.    Mediations and Settlement**

9       109.    The Parties attempted to resolve this dispute through mediation three separate

10  times at different stages of the proceedings, reaching a settlement only after Facebook's *en banc*

11  petition had been denied.

12      **A.    The Parties Unsuccessfully Attempt to Resolve the Dispute Through
           Mediation on Two Occasions**

13

14      110.    First, on May 19, 2017, following an exchange of opening and reply mediation

15  statements, the Parties attended a private mediation with Judge Layn Phillips (ret.), but were

16  unable to reach, or make progress toward, resolution. After the first mediation, Facebook stated

17  that they were interested in letting the motions resolve the case.

18      111.    Subsequently, this Court ordered the Parties to mediation. (ECF No. 325.)

19      112.    On May 4, 2018, the Parties again participated in mediation before Magistrate

20  Judge Donna M. Ryu in Oakland. The Parties exchanged statements containing their respective

21  positions, but once again, despite being on the cusp of a trial, were unable to reach an agreement.

22      **B.    The Parties Reach an Agreement in Principle After the Third
           Mediation**

23

24      113.    On January 15, 2020, the Parties participated in a third mediation with former

25  Ambassador Jeffrey L. Bleich in San Francisco. After exchanging statements with their

26  respective positions for a third time and considerable arm's-length negotiations, the Parties were

27  able to reach an agreement to resolve this Action.

28

114.     On February 3, 2020, the Parties advised the Court that they had reached an agreement in principle. (ECF No. 427.)

115.     Shortly thereafter the Court held a status conference where the Parties advised the Court that they intend to file a motion for preliminary approval in mid-March. (ECF No. 430.)

116.     Although the Parties reached an agreement in principle there remained a number of issues requiring careful consideration before filing a motion for preliminary approval.

117.     While the process for delivering class notice had begun when the Court ordered notice in May 2018 (ECF No. 390), it was put on hold after the Ninth Circuit's stay order. Because of the amount of time that had passed, the data from the previous notice plan had become stale and needed to be redone. Class Counsel worked together with Facebook's counsel and Facebook's engineers to put together a comprehensive notice plan.

118.     The Parties made a joint request for an extension of time to file a motion for preliminary approval. (ECF No. 439.) The Court granted to Parties joint request for the extension. In doing so, the Court also set a firm jury trial start date of July 13, 2020 at 9:00 AM. (ECF No. 440.)

**C.     Motion For Preliminary Approval of the Original Settlement**

119.     On May 8, 2020 Plaintiffs filed an unopposed motion for preliminary approval of the proposed settlement. (ECF No. 445.)

120.     Plaintiffs argued that they believed that the claims asserted in the Action had merit, that they would have ultimately succeeded at trial, and on any subsequent appeal, but that Plaintiffs and Class Counsel recognize that Facebook has raised relevant factual and legal defenses namely that there are i) obstacles to an aggregate recovery for class members and that ii) several issues of law would be reviewed de novo on appeal even after plaintiffs' prevailed at trial.

121.     Given that Facebook has spared no expense in litigating thus far, Class Counsel believe that Facebook would likely exhaust all potential judicial remedies during and after a trial if this matter is not resolved before trial.

122.    Class Counsel have also taken into account the uncertain outcome and risks of any litigation, especially in complex actions, as well as the difficulty and delay inherent in such litigation. Class Counsel believe that the Settlement presents an exceptional result for the Class, and one that will be provided without delay. Therefore, Class Counsel believe that it is in the best interest of the Class to settle the Action and that the Released Claims be fully and finally compromised, settled, and resolved with prejudice, and barred pursuant to the terms and conditions set forth in this Settlement Agreement.

123.    On June 4, 2020 the Court held a hearing on the motion, denying it without prejudice, listing several concerns (including the amount of the monetary relief and the utility of the prospective relief given the existence of an FTC consent decree) and requesting additional briefing. (ECF No. 456.)

### D.    The Parties Renegotiate and the Court Grants Preliminary Approval of the Revised Settlement

124.    On July 9, 2020, Plaintiffs filed a supplemental brief in support of the preliminary approval of the class action settlement. (ECF No. 465.) The supplemental brief explained primarily the basis for accepting the monetary relief for the Class and addressed the concerns that the Court raised at the original preliminary approval hearing.

125.    On July 22, 2020, Plaintiffs filed an Amended Stipulation of Class Action Settlement, which included substantial additional benefits to Class Members. (ECF No. 468.)

126.    In addition to other changes in the revised agreement, Facebook agreed to pay $650,000,000 into a non-reversionary cash fund. This represented an increase of $100,000,000 from what Facebook had previously agreed to pay. (ECF Nos. 445, 474.) Class Counsel are not seeking any fees from the additional $100,000,000.

127.    For a conduct remedy, Facebook agreed to set the Face Recognition default user setting to "off" and to delete all existing and stored face templates for class members unless Facebook obtains a class member's express consent after a separate disclosure about how Facebook will use the face templates. (ECF No. 468 at 13.) Silence or inaction by the user will be deemed a withholding of consent, and the Face Recognition function will be set to "off." *Id.*

128.     To consider the revised agreement, the Court held another hearing in July 2020, and heard live testimony from Gary McCoy, Facebook's Face Recognition Product Manager. (ECF No. 472.) Mr. McCoy testified on several issues that the Court had previously cited in denying the preliminary approval of the settlement the first time: Specifically, Mr. McCoy testified regarding the adequacy of the proposed notice to the Class and the class definition.

129.     Importantly, Mr. McCoy detailed why the new relief agreed to in the settlement is not in fact redundant of measures already required of Facebook under the consent decree entered into with the Federal Trade Commission. *Id*.

130.     The Amended Stipulation of Settlement also addressed the Court's concerns regarding the scope of release and the opt-out period. The definition of "released parties" was revised to expressly exclude entities that did not use the Tag Suggestions feature. *Id.* The opt-out period was also changed to "no later than 60 calendar days after the Notice Date."

131.     The Parties also remedied the proposed claim form and notice issues that the Court identified in the initial stipulation of settlement. (ECF No. 474.) The Settlement Agreement requires directed jewel notifications, notice via Facebook users' newsfeed channel, direct email notice, and a web page dedicated to the lawsuit. *Id.*

132.     On August 19, 2020, the Court granted preliminary approval of the Settlement. (ECF No. 474.)

**E.     Class Notice and Claims Submission**

133.     Since preliminary approval was granted, Class Counsel has worked diligently with the Court-appointed settlement administrator, Gilardi & Co., and others to ensure that the most effective notice program practicable was developed and implemented.

134.     Specifically, Class Counsel conferred with Professor Dan Ariely, Professor of psychology and behavioral economics at Duke University, so as to maximize the likelihood that class members would file claims. Professor Ariely explained what he called consumers' "no-action bias," which is the principle that people generally prefer to do nothing over something. Accordingly, at Professor Ariely's suggestion, Class Counsel and Facebook agreed to change the claim form flow so that class members who try to leave the website without submitting a claim

1  (i.e., "do nothing") can't proceed without clicking a button indicating their understanding that

2  their share of the settlement would be distributed pro rata to other class members (i.e., "do

3  something"). That change was designed to reduce if not eliminate the no-action bias

4  and encourage the submission of claims.

5      135.   Additionally, Class Counsel worked with the claims administrator to timely send

6  out notice to millions of email addresses belonging to class members. Class Counsel also were

7  able to rapidly identify several issues impeding the distribution of the notice to certain class

8  members, and worked with the settlement administrator to quickly resolve those issues in order

9  to complete the notice process ordered by the Court.

10     136.   Class Counsel have carefully monitored the implementation of the notice

11 program, but also maintained close contact with Class Representatives and class members

12 throughout. As a result, on September 17, 2020, Class Counsel learned of misleading

13 advertisements by the firm of Levi & Korsinsky that were intended to confuse class members

14 into believing their ads were providing a means to submit claims in the Settlement, when in fact

15 they were soliciting opt-outs.

16     137.   Class Counsel moved for a Temporary Restraining Order within hours of learning

17 about the misleading advertisements to prevent further confusion and remedy the extant harm

18 (ECF No. 477.) Levi & Korsinsky filed its response later that day (ECF No. 479), and Plaintiffs

19 filed their Reply on September 21, 2020. (ECF No. 480.)

20     138.   The Court held a hearing on September 22, 2020 and found that the use of the

21 term "claim" in the solicitations, and the timing of the solicitations (published in advance of the

22 court-approved class notice), were deceptive and misleading. The Court ordered Levi &

23 Korsinsky not to run any further advertisements or opt-out solicitations, or to communicate in

24 any way with the 3,000 respondents (ECF No. 486.)

25     139.   As of earlier this week, a total of 1,163,344 claims have been submitted in

26 connection with the Settlement, and only 48 people have opted out of the Class. One objection

27 has been filed with the Court. (ECF No. 497.)

28

1      Each of the undersigned declares under penalty of perjury under the laws of the United

2 States that the foregoing is true and correct to the best of their knowledge.

3      Executed this 15th day of October 2020.

4                       /s/Paul Geller

5                       Paul Geller

6                       /s/Jay Edelson

7                       Jay Edelson

8

9                       /s/Michael Canty
                      Michael Canty

10

11                **SIGNATURE ATTESTATION**

12

13      I hereby attest that the content of this document is acceptable to all persons whose

14 signatures are indicated by a conformed signature (/s/) within this e-filed document.

15                       /s/Jay Edelson

16

17

18

19

20

21

22

23

24

25

26

27

28