Kendrick Jan, CA SBN 105149
Kendrick Jan, APC
402 West Broadway, Suite 1520
San Diego, CA 92101
Telephone:  (619) 231-7702
kj@jan-law.com

John J. Pentz, Esq., Mass. Bar No. 561907
19 Widow Rites Lane
Sudbury, MA 01776
Telephone: (978) 261-5725
jjpentz3@gmail.com
(*pro hac vice pending*)

Counsel for Objectors Frankfother and Flanagan

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK BIOMETRIC INFORMATION PRIVACY LITIGATION<br>_____<br><br>This Document Relates to:<br><br><br><br><br><br><br><br><br>_____ | ) Master File No. 3:15-cv-3747-JD<br>)<br>) CLASS ACTION<br>)<br>) MOTION OF OBJECTORS<br>) FRANKFOTHER AND<br>) FLANAGAN FOR<br>) ATTORNEY'S FEES<br>)<br>) Judge:  James Donato<br>) Courtroom: 11<br>) Hrg. Date:  April 22, 2021<br>) Time:  10:00 a.m.<br>) |

## **NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on April 22, 2021, at 10:00 a.m., or as soon thereafter as this matter may be heard by the Honorable Judge James Donato of the United States District Court for the Northern District of California, Objectors Dawn Frankfother and Cathy Flanagan hereby move the Court pursuant to Local Rule of Civil Procedure 54-5 for an order awarding Objectors Frankfother and Flanagan attorney's fees in the amount of $119,880, to be paid from the settlement fund or out of the attorney's fees this Court awarded to Class Counsel on February 26, 2021.  A proposed form of order is filed herewith.

## **ARGUMENT**

Objectors Dawn Frankfother and Cathy Flanagan move this Court for an order awarding their counsel $119,880 in attorney's fees based on their objections to Class Counsel's attorney's fees which resulted in a benefit to the Class of $12.5 million.  As further discussed below, this Court's Order Re Final Approval, Attorneys' Fees and Costs, and Incentive Awards, adopted the Objectors' theories and arguments that resulted in a reduction of the fee in the amount of $12.5 million.

Objectors who provide a substantial benefit to the class through their objections are entitled to fees as a matter of law.  *See Rodriguez v. Disner*,

688 F.3d 645, 659 (9th Cir. 2012).  This Court's Fee Order adopted many of the Objectors' arguments regarding the irrelevance of the 25% benchmark in a case that settles for $650 million, as well as the approximate range of the market rate for settlements of that size.  In their Objection, objectors cited and discussed the holding in *In re: Wash. Pub. Power Supply sys. Secs. Litig.*, 19. F.3d 1291 (9th Cir. 1994), in support of their opposition to Class Counsel's fee request.  Document 504, p. 9.  This case was cited three times by the Court in its fee award.  Document 537, p. 15-16 and 18.  The Objectors were the only party in this action who argued that the fee requested by Class Counsel was excessive and that this Circuit's benchmark is irrelevant for settlements that exceed $500 million.  The Objectors argued that the market rate, as reflected in fee agreements recently enforced in this Circuit and others, as well as in fee studies that surveyed several years of megafund class action settlements to determine the mean and median fee rates, was far closer to 12% than 25%.  While Objectors argued for a lower market rate based upon actual fee agreements and a particular fee study, this Court chose to use a percentage -- 15% -- derived from a different fee study.  Despite this discrepancy, this Court adopted Objectors' general arguments regarding the market rate and benchmark irrelevance, and therefore the Objectors' objections were clearly "in aid of" the ultimate result.  *See In re Wells Fargo & Co. Shareholder*

3

*Derivative Litig.*, N.D. CA No. 4:16-cv-05541, Order Granting in Part and Denying in Part Motion for Attorney's Fees and Denying Motion for Sanctions (March 4, 2021) (a copy of this decision is attached as *Exhibit A*). In *Wells Fargo*, an objector made a similar argument to the one made by Objectors in the instant case, namely, that fee award percentages in megafund settlements go down as settlement amounts go up.[1]  Although in *Wells Fargo* an award of greater than the objector-recommended percentage was made, the court nevertheless awarded the objector his full lodestar, since the fee objections "were in aid of" the court's fee order.  *Id*. at p. 5.  *See also Gottlieb v. Barry*, 43 F.3d 474, 491 (10th Cir. 1994) (error to deny fees to objector that benefitted class by successfully arguing for reduction in class counsel's fees).

The Objectors' fee request here is stronger than the one in *Wells Fargo*, since in that case Judge Tigar noted that many of his misgivings about class counsel's fee request were matters of record at the time the objections were filed.  *Id*. at p. 4.  Because of this, the court refused to give the objector credit for the full reduction in fees.  Here, however, the Court had not expressed any concern or misgiving regarding Class Counsel's planned fee request prior to filing of the Objections.  Even though the Court conducted two preliminary

---

[1] In *Wells Fargo* the argument made was that the fee should be no more 17.9%, though the court ultimately made a percentage fee award of 22% against a settlement fund of $240M. See Exhibit A, p. 5.

approval hearings during summer 2020, and rejected the first $550 million settlement as inadequate, the Court never mentioned any misgivings about the attorney's fees Class Counsel intended to request, even when given an opportunity at the second hearing.

> And I don't want to get ahead of myself, but we really didn't talk about our fee request. We never got there at the first hearing. But what we had put in the original stip and presented to Your Honor was that the plaintiffs' lawyers would seek no more than 25 percent, the benchmark. … we are seeking no more than 20 percent of the original $550 million and zero percent of the additional hundred million dollars … which is 16.9 percent of the 650…

Document 470 at p. 28-29.  In response to this disclosure, the Court did not express any disapproval or misgivings about the level of Class Counsel's planned fee request.

The Ninth Circuit has held that it is improper to deny a fee to objectors when the court did not express any concerns or misgivings about the matters raised in objections prior to the time the objections are filed.  *See Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 963 (9th Cir. 2009).

> Objectors who challenged the incentive awards argue that the district court improperly denied fees attributable to that work. The court rejected their request for fees on the footing that Objectors' counsel "did not add anything" to its decision to deny incentive awards. This seems clearly erroneous to us. The court was not focused on the incentive agreements before Objectors took exception to them after the motion to award payments to the class representatives was filed. In the wake of that objection, the court denied the motion for incentive awards in its entirety

> because the amounts requested were unreasonable and the incentive agreements were inappropriate and contrary to public policy. The net effect was to leave $325,000 in the settlement fund -- for distribution to the class as a whole -- that otherwise would have gone to the class representatives. Given this, we cannot let stand a ruling that Objectors did nothing that increased the fund or substantially benefitted the class members. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1051 (9th Cir. 2002). Therefore, we remand for the district court to reconsider the extent to which Objectors added value that increased the fund or substantially benefitted the class members, and to award attorney's fees accordingly.

*Id*. Here, neither the Court, the Defendant, nor any other party raised any objection to Class Counsel's fee request prior to the filing of the Objectors' objections. This Court was not focused on the attorney's fees prior to the filing of the objections, and in any event had not made any fee concerns a matter of record. In these circumstances, it is unfair and an abuse of discretion to deny a fee to objectors' counsel who expended substantial time and labor to object to a matter when the court has not indicated on the record that it intends to grant the relief requested by objectors. *See White v. Auerbach*, 500 F.2d 822, 830 (2nd Cir. 1974) (it is "unfair to counsel when, seeking to protect his client's interest and guided by the facts apparent on the record, he spends time and effort to prepare and advance an argument which is openly adopted by the court, but then receives no credit therefor because the court was thinking along that line all the while." (quoting *Green v. Transitron Electronic Corp*., 326 F.2d 492, 498-499 (1st Cir. 1964))).

6

Here, especially in light of the Declaration of Brian T. Fitzpatrick in which he argued that "rational clients … overwhelmingly choose to pay fixed percentages or escalating percentages of one-third or more; they do not pay their lawyers smaller percentages if they recover more for them," Objectors' intervention and rebuttals were absolutely necessary.  Document 499-2,  p.8. In the face of this remarkable misrepresentation of actual fee agreements, Objectors cited to the Court numerous instances of fee agreements that do just the opposite, including the very recent example from *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922 (9th Cir. 2020), where the fee agreement there called for "a lower fee percentage as the overall class recovery increased," *id*. at 927, and an ultimate fee of 12%.  *Id*. at 928.  Document 504, p. 12.  The Objectors could not just sit back and concede the false information contained in the Fitzpatrick Declaration, but instead felt compelled to address the declaration's falsity, especially in the absence of any record showing the Court had any misgivings about Class Counsel's fee request.

The Frankfother/Flanagan Objection cited only Supreme Court and 9th Circuit law in connection with the fee contest.  Document 504, p. 8-13. Included among these cites was a discussion of *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935 (9th Cir. 2011).  Document 504, p. 12.  Which case

was likewise relied upon by the Court in its fee award.  Document 537, p. 15 and 17-19.

It was only in response to Plaintiffs' supplemental briefing – and emails from Class Counsel describing that Illinois law applied to the case – that Objectors filed an Opposition citing 7th Circuit law in connection with the fee concern.  Document 518, p. 7.  While Objectors in their Opposition cited to some 7th Circuit caselaw in support of their arguments regarding market rate fees in megafund settlements of a half billion dollars or more, those arguments were not dependent upon this Court finding that 7th Circuit law controlled the fee award.  In light of *In re Optical Disk Drive, supra*, the difference between 9th Circuit and 7th Circuit fee law is negligible, and the 7th Circuit cases provided additional relevant data points showing what the market rate is in megafund cases nationwide.  Indeed, the 15% selected by the Court in this case is identical to the percentage dictated by the 7th Circuit in the *Synthroid* case cited in Objectors' briefing.[2]

---

[2]  It should be noted, some portion of Objectors' counsel's time was necessarily spent rebutting Class Counsel's false accusations toward counsel and responding to Class Counsel's unwarranted discovery motion made immediately upon filing of the Objection. Courts have refused to exclude such time when allowing an award of fees to objector counsel.  *See In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2015 U.S. Dist. LEXIS 106943 at *14 (ND Cal. July 31, 2015).

**AMOUNT REQUESTED**

While the Objectors may request a percentage of the $12.5 million they helped save the Class, and although prior courts have awarded objectors up to 10% of amounts preserved on behalf of the class, Objectors here are limiting this fee request to the amount of current unenhanced lodestar, or $119,880, which is equivalent to 0.9 percent of the benefit conferred upon the Class.  To the extent this Court is inclined to disallow a portion of the lodestar because it was not specifically related to the fee objections, Objectors request a modest multiplier that would result in a fee award of $119,880.

**CONCLUSION**

For the foregoing reasons, this Court should award Objectors' counsel fees in the amount of $119,880.

Respectfully submitted,
Dawn Frankfother and CathyFlanagan
by their attorneys,

s/ *Kendrick Jan*
Kendrick Jan, APC
402 West Broadway, Suite 1520
San Diego, CA 92101
Tel: (619) 231-7702
kj@jan-law.com

John J. Pentz, Esq., *pro hac vice*
19 Widow Rites Lane
Sudbury, MA 01776
Phone: (978) 261-5725
jjpentz3@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing was filed with the Clerk of Court using CM/ECF on March 12, 2021, and as a result has been served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.


By: *<u>s/ Kendrick Jan</u>*

EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE WELLS FARGO & COMPANY
SHAREHOLDER DERIVATIVE
LITIGATION

This Document Relates To:

        ALL ACTIONS

Lead Case No. 16-cv-05541-JST

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR
ATTORNEY'S FEES AND DENYING
MOTION FOR SANCTIONS**

Re: ECF No. 318, 329

Before the Court are Objectors Kevin Fisher and John Cashman's joint motion for

attorney's fees, ECF No. 318, and Co-Lead Plaintiffs' motion for sanctions against Fisher and his

counsel, ECF No. 329. The Court will grant the motion for fees as to Cashman and deny it as to

Fisher and will deny the motion for sanctions.

I.      **BACKGROUND**

This is a shareholder derivative action on behalf of nominal Defendant Wells Fargo & Co.

against the company's officers, directors, and senior management ("Individual Defendants").

Consolidated Amended Verified Stockholder Derivative Complaint ("Compl."), ECF No. 83 ¶ 64.

The substance of Plaintiffs' claims is set forth in greater detail in the Court's prior orders on

Defendants' motions to dismiss. *See* ECF No. 129 at 1-9; ECF No. 174 at 2-4. In short, Plaintiffs

allege that, "[f]rom at least January 1, 2011 to the [time the Complaint was filed] ('the Relevant

Period'), Defendants knew or consciously disregarded that Wells Fargo employees were illicitly

creating millions of deposit and credit card accounts for their customers, without those customers'

knowledge or consent." Compl. ¶ 1. Plaintiffs sought to hold Individual Defendants accountable

for these failures under various securities laws and common-law duties.

On April 7, 2020, the Court granted final approval of a settlement and awarded attorney's

EXHIBIT A

fees to Co-Lead Counsel. ECF No. 312; *see also* ECF No. 314 (final judgment and order of dismissal). The settlement provides that the Individual Defendants' insurers pay $240 million to Wells Fargo. ECF No. 312 at 3. The settlement also identifies various Wells Fargo reforms that the parties attribute to the litigation in this case, including $122.5 million in clawbacks from certain Individual Defendants and $20 million in corporate governance reforms. *Id.* The Court found the settlement fair, reasonable, and adequate under Federal Rule of Civil Procedure 23.1(c). *Id.* at 8. As for attorney's fees, the Court awarded $52.8 million to Co-Lead Counsel, a reduction of $15.2 million from the $68 million they had requested. *Id.* at 28.

The procedural history of this case is described in greater detail in the Court's final approval order. *Id.* at 2-3. For the purposes of this motion, it suffices to say that Cashman filed an objection to Co-Lead Counsel's motion for attorney's fees on July 11, 2019, ECF No. 281, and Fisher filed an objection on July 12, 2019, ECF No. 284. Cashman also filed a response to the Court's October 24, 2019 order to show cause why it should not appoint an expert witness to determine the appropriate hourly rate for contract attorney services in order to calculate Co-Lead Counsel's lodestar. ECF No. 305.

On May 4, 2020, Fisher and Cashman filed the instant motion for attorney's fees. ECF No. 318. Cashman also seeks an incentive award of $1,000. *Id.* at 13. Co-Lead Plaintiffs opposed these motions, ECF No. 322; Nominal Defendant Wells Fargo filed a non-opposition and consent, ECF No. 326; and Fisher and Cashman filed separate replies, ECF Nos. 325, 327. On June 12, 2020, Co-Lead Plaintiffs filed a motion for sanctions against Fisher and his counsel. ECF No. 329. Fisher and Cashman filed separate oppositions, ECF Nos. 330, 331, and Co-Lead Plaintiffs filed a reply, ECF No. 332. The Court took the motions under submission without a hearing.

On July 15, 2020, Co-Lead Plaintiffs filed a motion to submit additional facts and argument in support of sanctions against Fisher and his counsel. ECF No. 333. Wells Fargo and Fisher each filed a response. ECF Nos. 338, 339. Co-Lead Plaintiffs filed a reply on August 5, 2020. ECF No. 341. On August 7, 2020, Co-Lead Plaintiffs filed a statement of recent decision regarding *Pearson v. Target Corp.*, 968 F.3d 827 (7th Cir. 2020). ECF No. 342.

EXHIBIT A

**II. JURISDICTION**

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, as well as 15 U.S.C. § 78aa.

**III. LEGAL STANDARD**

Objectors to a class or derivative action settlement are entitled to attorney's fees from the settlement fund where their objections "result in an increase to the common fund" or otherwise "substantially benefit the class members." *Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002)). A court may "deny fees to objectors whose work is duplicative, or who merely echo each others' arguments and confer no unique benefit to the class." *Id.* at 658-59.

Courts may use either the common fund or lodestar approach when awarding attorney's fees in a shareholder derivative suit. *See In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1449 (N.D. Cal. 1994).

Disgorgement is an equitable remedy and a district court has "broad discretion" in deciding whether to employ it. *S.E.C. v. Clark*, 915 F.2d 439, 454 (9th Cir.1990). *See also Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1195 (9th Cir. 2016) ("Disgorgement is a remedy in which a court orders a wrongdoer to turn over all profits obtained by violating the law" and "[a] district court has 'broad equity powers to order'" it. (citation omitted)).

**IV. DISCUSSION**

Fisher and Cashman argue that they provided a substantial benefit to Wells Fargo in the form of the $15.2 million reduction in fees awarded to Co-Lead Counsel, asserting that the reduction resulted from the Court's "adopt[ion of] the Objectors' theories and arguments." ECF No. 318 at 3. Fisher and Cashman contend that they "independently developed and submitted similar arguments to this Court in their respective Objections" and that they had no prior association with each other before the instant motion for fees, which they have filed jointly for the sake of efficiency. *Id.* They seek a lump sum of $500,000 in attorney's fees, though they provide independent lodestar calculations. *Id.* at 12-13. Cashman also seeks an incentive award of $1,000. *Id.* at 13.

EXHIBIT A

United States District Court
Northern District of California

Co-Lead Plaintiffs argue that Objectors are not entitled to any fees because their arguments were either unsuccessful or had already been raised by the Court and thus resulted in no additional benefit to Wells Fargo. ECF No. 322 at 5. Co-Lead Plaintiffs also contend that Objectors have not provided sufficient support to demonstrate that their requested fee award of $500,000 is reasonable. *Id.* at 21.

In addition, Co-Lead Plaintiffs argue that the Court should not award fees to Fisher and his counsel because they "are engaged in a scheme to extort the Bank for a hefty payday in connection with" Fisher's appeal of the settlement in a similar derivative action against Wells Fargo in California state court. *Id.* at 6. The settlement in the instant case is contingent upon the finalization of the state court settlement. *See* ECF No. 270-1 at 20. Co-Lead Plaintiffs allege that Fisher filed a "frivolous appeal" of the state court settlement in order to pressure Wells Fargo into paying him to drop the appeal and allow the settlement in the instant case to move forward. ECF No. 322 at 19. Co-Lead Plaintiffs' motion for sanctions asks the court to order disgorgement of the $1.75 million that Wells Fargo has agreed to pay Fisher in exchange for dropping his appeal of the state court settlement. ECF No. 329 at 16.

**A. Substantial Benefit**

Objectors argue that they saved Wells Fargo $15.2 million in attorney's fees that otherwise would have been awarded to Co-Lead Counsel. ECF No. 318 at 6. Specifically, objectors take credit for (1) the exclusion of $20 million in corporate governance reforms from the value of the common fund, *id.* at 6-7; (2) the exclusion of $60 million in clawbacks from the value of the common fund, *id.* at 8-9; (3) the reduction of lodestar billing rates for contract attorneys, *id.* at 11; ECF No. 325 at 12-13, and (4) the departure from the Ninth Circuit common fund benchmark of 25 percent, ECF No. 318 at 11.

Objectors did, in fact, make objections regarding all these issues. However, in its order granting preliminary approval of the settlement, the Court had already flagged its concerns about how to value the corporate governance reforms and clawbacks in the common fund. *See* ECF No. 274 at 10 (expressing concern over "what value to assign to the remedial actions taken by Wells Fargo" and noting other causative factors). And well before any filing by these objectors, this

4

EXHIBIT A

1    Court already had a longstanding, publicly-expressed interest in the appropriate determination of

2    contract attorneys' hourly rates for lodestar purposes.  *See In re: Cathode Ray Tube (CRT)*

3    *Antitrust Litig.*, MDL No. 1917, Case No. C-07-5944 JST, 2016 WL 4126533, at *8 (N.D. Cal.

4    Aug. 3, 2016) (expressing concern about "the proper treatment of contract attorney costs in the

5    calculation of a lodestar").  Nor is there anything novel about the undersigned awarding attorney's

6    fees of less than 25 percent when the common fund is very large, as it is here, *see, e.g.*, *Hefler v.*

7    *Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018)

8    (20 percent fee request was "within the median range of 19-22.3 percent in fees awarded in cases

9    with large settlements over $100 million"); *Rodman v. Safeway Inc.*, No. 11-cv-03003-JST, 2018

10   WL 4030558, at *5 (N.D. Cal. Aug. 23, 2018), a fact the Court brought to Co-Lead Counsel's

11   attention in the preliminary approval order, *see* ECF No. 274 at 12 n.8.

12          Accordingly, while Fisher's and Cashman's objections might have been *in aid of* the

13   Court's conclusions, they were not *responsible for* them.  *See id.* at 10 (flagging concerns about

14   how to value Wells Fargo's remedial actions but withholding a conclusion "[p]ending any

15   objection from shareholders and further information from the parties").  The Court's citations to

16   Fisher and Cashman's objections in its final approval order was not proof of causation.  It was

17   simply a notation that Objectors shared the Court's concerns.

18          Objectors justify their requested fee award in large part on the $15.2 million that their

19   objections allegedly saved Wells Fargo in attorney's fees.  *See* ECF No. 318 at 4 (stating that "the

20   Objectors . . . are seeking just $500,000, which is only 3.15% of the $15.2 million in decreased

21   attorney fees and costs that have been ordered by this Court").  But because the Court had already

22   identified the concerns Fisher and Cashman expressed in their objections, it cannot be the case that

23   Objectors saved Wells Fargo the entire $15.2 million in attorney's fees that the Court subtracted

24   from Co-Lead Counsel's requested award.  There thus is no support for the $500,000 in fees

25   Objectors request.

26          This does not mean, however, that Objectors are not entitled to any compensation

27   whatsoever for their work.  *See* ECF No. 322 at 10.  As noted above, the objections were in aid of

28   the Court's order, and they did provide some assistance in properly valuing the common fund and

United States District Court
Northern District of California

5

EXHIBIT A

1    calculating the appropriate lodestar.  To that extent, Objectors provided a benefit to the bank and

2    are entitled to some amount in attorney's fees.  But neither Objectors nor Co-Lead Counsel

3    provide any proposed attorney's fees figure between $500,000 and zero.  The Court therefore

4    proceeds to address the appropriate amount below.

5        **B.      State Court Settlement**

6        Much of Co-Lead Plaintiffs' opposition to Objectors' fee request, and all of their sanctions

7    motion, is devoted to what they describe as an "objector blackmail" scheme implemented by

8    Fisher and his counsel.  ECF No. 329 at 7.  Objector blackmail is a well-known class and

9    derivative action phenomenon whereby objectors "use an appeal [of a class action or derivative

10   settlement] as a means of leveraging compensation for themselves or their counsel."  *Vaughn v.*

11   *Am. Honda Motor Co., Inc.*, 507 F.3d 295, 300 (5th Cir. 2007); Brian T. Fitzpatrick, *The End of*

12   *Objector Blackmail?*, 62 Vand. L. Rev. 1623, 1624 (2009) ("objector 'blackmail' is simply a

13   specific application of the general concern with legal regimes that permit one or more individuals

14   to 'hold out' and disrupt collective action," in this case by "fil[ing] wholly frivolous objections

15   and appeals for no other reason than to induce . . . side payments from class counsel").  Partly to

16   prevent this dynamic, Rule 23(e)(5) requires court approval of a payment made in connection with

17   an objection, including for "forgoing, dismissing, or abandoning an appeal from a judgment

18   approving the proposal."  Fed. R. Civ. P. 23(e)(5)(B)(ii); *see also* Fed. R. Civ. P. 23(e)(5)(B)

19   advisory committee's note to 2018 amendment ("At least in some instances, it seems that

20   objectors – or their counsel – have sought to obtain consideration for withdrawing their objections

21   or dismissing appeals from judgments approving class settlements.  And class counsel sometimes

22   may feel that avoiding the delay produced by an appeal justifies providing payment or other

23   consideration to these objectors.").

24       Co-Lead Plaintiffs' blackmail allegations arise from consolidated Wells Fargo shareholder

25   derivative cases in San Francisco and San Mateo County Superior Courts ("the California

26   Derivative Litigation").  *See Wells Fargo Derivative Cases*, No. CJC-18-004966 (S.F. Cnty.

27   Super. Ct.) (including *In re Wells Fargo & Co. Derivative Litig.*, No. CGC-16-554407 (S.F. Cnty.

28   Super. Ct.); *Herron v. Stumpf, et al.*, No. 18-CIV-00466 (San Mateo Cnty. Super. Ct.)).  The

United States District Court
Northern District of California

6

**EXHIBIT A**

1    settlement in the instant case is contingent upon the dismissal with prejudice of the California

2    Derivative Litigation.  *See* ECF No. 270-1 at 20.  On July 12, 2019, the San Francisco court

3    granted preliminary approval of a settlement in the California Derivative Litigation.  ECF No.

4    322-1 ¶ 6.  On September 10, 2019, lead plaintiffs in that litigation, who are also represented by

5    Co-Lead Counsel, filed a motion for final approval of the settlement and a motion for attorney's

6    fees.  *Id.* ¶ 7.

7          On October 21, 2019, Fisher filed objections to both motions.  *Id.* ¶ 8; ECF No. 329-2.

8    The parties dispute whether Fisher waived his objection to the settlement at the final approval

9    hearing, which was not recorded.  *See* ECF No. 322-1 ¶ 10; ECF No. 327-1 ¶ 12.  The court

10   granted final approval and awarded fees on January 15, 2020.  ECF No. 322-1 ¶ 13.  On March 10,

11   2020, Fisher appealed both orders.  *Id.* ¶ 14; ECF No. 327-1 ¶¶ 20.  On May 29, 2020, Fisher and

12   Wells Fargo reached a settlement agreement by which Fisher agreed to dismiss his appeal of the

13   state court settlement in exchange for $1.75 million and an agreement that Wells Fargo would not

14   oppose his fee motion in the instant case.  ECF No. 327-7 at 4-6.

15         Co-Lead Plaintiffs claim that Fisher's appeal of the state settlement was frivolous because

16   he waived his objection at the final approval hearing and did not have standing to appeal.  ECF

17   No. 322 at 19-20.  They argue that he filed his appeal in order to hold up not just the state

18   settlement but the federal one, exploiting Wells Fargo's desire for finality and distribution of both

19   the state and federal settlement amounts.  *Id.* at 19.  Fisher counters that he did have standing to

20   appeal and that Wells Fargo, which was represented by sophisticated counsel, was not extorted by

21   the arrangement.  ECF No. 327 at 12-14. Cashman attempts to distance himself[1] from the

22

23   [1] The Court observes that the "separate" replies contain multiple nearly identical passages.
     *Compare, e.g.*, ECF No. 325 at 7 (emphasis in original):

24
25              Plaintiffs are not satisfied with Ninth Circuit law, so they insert
                commentary into this quotation, emphasizing their interjected words
26              "i.e. cause." Opp. 6. But *Rodriguez II* does not support Plaintiffs'
                theory that causation is especially difficult to prove. To the contrary,
27              the Ninth Circuit *reversed and remanded* a district court that denied
                attorneys' fees on the theory that the district court relied on "its own
                analysis of the case law." *Id.* at 660. The opinion stands for the
28              unremarkable proposition that a court commits *legal error* when it
                denies an objector attorneys' fees for a benefit created by issues not

                                                      7

EXHIBIT A

allegations against Fisher by filing a separate reply and noting that his attorney "has consistently opposed the tactic of 'objector blackmail' and does so again here." ECF No. 325 at 5 n.1.

Fisher notes that the objections he raised to the state court settlement were similar to those he raised in this case. ECF No. 327 at 14. As in this case, he takes sole credit for the reduction in fees awarded by the state court to lead plaintiffs' counsel –$3.5 million, or 43 percent, of the requested $8.25 million. *Id.* ("This reduction of approximately $3.5 million in attorneys' fees is a

---

> previously raised by the district court.
>
> Plaintiffs argue that the Objectors are not entitled to a fee unless they raise a wholly new issue that the district court was unaware of, but *Rodriguez II* cannot be read so narrowly. *Rodriguez II* instead affirmed the rejection of attorneys' fees to several "me too" objectors "capitalizing on arguments already made by the Schneider Objectors regarding why class counsel's fees should be reduced." *Id.* at 659. Thus, "where objectors do not add any new legal argument or expertise, and do not participate constructively in the litigation or confer a benefit on the class, they are not entitled to an award premised on equitable principles." *Id.* But this does not describe Cashman, who constructively participated in the litigation.

*with* ECF No. 327 at 5-6 (emphasis in original):

> Plaintiffs, however, are not satisfied with Ninth Circuit law, so they insert commentary into this quotation, emphasizing their interjected words "i.e. cause." ECF No. 322 at 6. But *Rodriguez II* does not support Plaintiffs' theory that causation is especially difficult to prove. To the contrary, the Ninth Circuit *reversed and remanded* a district court that denied attorneys' fees on the theory that the district court relied on "its own analysis of the case law." *Id.* at 660. The opinion stands for the unremarkable proposition that a court commits legal error when it denies an objector attorneys' fees for a benefit caused by issues not previously raised by the district court.
>
> Further, Plaintiffs argue that the Objectors are not entitled to a fee unless they raise a wholly new issues that the district court was unaware of, yet *Rodriguez II* stands for no such proposition. Rather, *Rodriguez II* affirmed the court's refusal to grant attorneys' fees to several "me too" objectors "capitalizing on arguments already made by the Schneider Objectors regarding why class counsel's fees should be reduced." *Id.* at 659. Thus, "where objectors do not add any new legal argument or expertise, and do not participate constructively in the litigation or confer a benefit on the class, they are not entitled to an award premised on equitable principles." *Id.* Unlike those objectors in *Rodriguez II*, Fisher and Cashman are not objectors who did not "add any new legal argument or expertise" but instead they constructively participated in the litigation and aided this Court.

Thus, it is not clear how much "distance" Cashman actually created.

EXHIBIT A

direct monetary benefit to Wells Fargo and was based solely on Fisher's two separate California Action objections in which he was the lone objector.").  Fisher cites no portion of the state court's approval orders crediting him for this reduction, however, and the Court's own review of those orders does not support Fisher's assertion.  The state court awarded less than lead plaintiffs' requested amount by reducing their attorneys' billable hours, applying a blended hourly rate, and not using a multiplier.  ECF No. 327-5 at 3.  While Fisher takes credit for the court's reduction of certain billing rates, *see* ECF No. 327-1 ¶ 18, the court had already noted its concern about inflated rates, ECF No. 322-6 at 8-9.  Likewise, while the court noted that it "len[t] credence to Fisher's arguments against the award of a multiplier," ECF No. 327-5 at 11 n.13, it had already signaled that it was unlikely to use one, *see* ECF No. 322-6 at 9 & n.11.

Regardless, Fisher contends that his $1.75 million payment from Wells Fargo constitutes compensation for whatever benefit his work provided the bank.  *See* ECF No. 327 at 14-15 ("Wells Fargo and Objector represent and acknowledge that the Payment to Objector reflects a portion of the savings achieved for Wells Fargo in the form of the reduction in fees awarded to plaintiffs' counsel in the State Action after Objector filed his Objections.") (quoting Fisher's settlement agreement with Wells Fargo in the California Shareholder Litigation, ECF No. 327-7 at 3).  This explanation is unsatisfying.  It seems much more likely that the payment reflected whatever benefit Fisher conferred in the state court litigation *and* a premium on the ability to unlock hundreds of millions of dollars in state and federal settlement funds.  *See Pearson*, 968 F.3d at 836 ("the value to defendants in paying off [the objector] lay in finally being rid of the *Pearson* litigation as a whole").  Additionally, by seeking this payment in the state rather than federal litigation, Fisher appears to have attempted to avoid the scrutiny of Rule 23(e)(5).

However, the Court is not convinced that, even if there was bad faith here, disgorgement of a settlement payment reached by two sophisticated, represented parties in a separate lawsuit would be an appropriate or even permissible remedy.  Co-Lead Plaintiffs invoke the Court's "inherent power to levy sanctions, including attorneys' fees, for 'willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .'"  *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) (quoting *Roadway Express, Inc. v. Piper*,

EXHIBIT A

United States District Court
Northern District of California

447 U.S. 752, 766 (1980)); *see also* ECF No. 329 at 16-17. However, the only authority they cite for the proposition that "[d]isgorgement is an appropriate equitable remedy" in this context is *Porter v. Warner Holding Co.*, 328 U.S. 395, 398-99 (1946), which held that district courts exercising their equitable powers under the Emergency Price Control Act of 1942 were empowered to order disgorgement of rents charged in excess of the maximums set by the statute.

Following the conclusion of briefing on this motion, Co-Lead Plaintiffs filed a statement of recent decision calling the Court's attention to *Pearson v. Target Corp.*, 968 F.3d 827 (7th Cir. 2020). ECF No. 342. In that case, "plaintiffs filed a putative class action in federal district court in Illinois alleging that defendants had made false claims about certain dietary supplements they manufactured and distributed." *Pearson*, 968 F.3d at 830. After certain procedural events not relevant here, the parties negotiated and submitted to the district court for approval a settlement of plaintiffs' claims. *Id.* "The agreement provided for a common fund of $7.5 million and a permanent injunction against certain labeling statements." *Id.* Three class members – Randy Nunez, Steven Buckley, and Patrick Sweeney – objected to the settlement. *Id.* Nunez had previously filed his own separate case in district court in California. *Id.* The *Pearson* district court approved the proposed settlement, and the objectors appealed, but all three dismissed their appeals before briefing began. *Id.* The dismissals struck a fourth class member, Theodore Frank,[2] as suspicious. *Id.* at 830-31. It eventually came to light that the objectors had "received side payments in exchange for dismissing their appeals – $60,000 each to Nunez and Buckley and $10,000 to Sweeney, totaling $130,000 – while the class had received nothing." *Id.* at 831. Frank moved for an order requiring objectors to disgorge these payments, and the district court denied the motion. *Id.* As to Nunez and Buckley, the court "concluded that 'the record failed to confirm suspicions of blackmail or other wrongdoing'" because their counsel asserted that the objections had been made in good faith. *Id.* As to Sweeney, while the court had its suspicions about the basis for the payment, it "found the question ultimately irrelevant because there was no basis to conclude that the side settlements harmed the class by taking money that had been earmarked for

---

[2] As noted above, Frank is also counsel for objector Cashman in this case.

EXHIBIT A

it." *Id.* (quotation marks omitted).

The Seventh Circuit reversed. Basing its decision "on long-established principles of equity," *id.*, it found that objectors had taken on a fiduciary duty to other class members – a duty they breached when they "sacrificed [the class's] interests to their own advantage by selling their appeals without benefit to the class," *id.* at 833 (alterations and quotation marks omitted). It held that regardless of whether the objections had merit, the payments were inappropriate:

> Either those objections had enough merit to stand a genuine chance of improving the entire class's recovery, or they did not. If they did, the objectors sold off that genuine chance, which was the property of the entire class, for their own, strictly private, advantage. If they did not, the objectors' settlements of meritless claims traded only on the strength of the underlying litigation, also the property of the entire class, to leverage defendants' and class counsel's desire to bring it to a close. Either way, the money the objectors received in excess of their interests as class members was not paid for anything they owned, and thus belongs in equity to the class.

*Id.* at 834 (citations and quotation omitted). Accordingly, the *Pearson* court held, the district court had erred in denying Franks's motion.

*Pearson* is an elegant, well-reasoned contribution to the class-action jurisprudence, but there is an important factual difference between that case and this one: the payments made in *Pearson* were made for the withdrawal of objections in that case, while the payment at issue here was made for the withdrawal of an objection in the state case – a case that is pending before another court. While *Pearson* is persuasive authority that a district court may order disgorgement of side payments received in a case pending before it, Co-Lead Plaintiffs have not cited any authority that would allow this Court to order disgorgement of monies received in a case pending before *another* court. Indeed, to the extent *Pearson* addresses the question at all, it supports not ordering disgorgement. The *Pearson* court noted that if Nunez had taken a payment to settle his separate California case, he could have "avoid[ed] . . . scrutiny," *id.* at 835, suggesting that in that instance the court would not have ordered disgorgement.

This leaves the Court with no authority to grant Co-Lead Counsel's requested relief. The court agrees with *Pearson* that side payments received for the purpose of withdrawing objections frequently amount to constructive fraud. *Id.* at 832. It seems likely that that is what happened

11

EXHIBIT A

here.  But without any on-point authority, the Court will not interfere with a finalized settlement in another court, no matter how compelling the equities.[3]  The motion for sanctions is thus denied.[4]

Given Fisher's acknowledgement that his objections to the settlement in the California Shareholder Litigation were similar to those he raised in this case, however, and the Court's finding that these objections merely supported a conclusion it would otherwise have reached, the Court finds that Fisher's $1.75 million payment from Wells Fargo has more than amply compensated him for any benefit he may have provided the bank via his objections to these settlements.  Accordingly, the Court awards Fisher no attorney's fees for his objections in this case.  It finds that this approach serves Rule 23(e)(5)'s goal of ensuring that objector payments do not "perpetuate[] a system that can encourage objections advanced for improper purposes."  *See* Fed. R. Civ. P. 23(e)(5)(B) advisory committee's note to 2018 amendment.

### C.    Amount in Fees for Cashman

Cashman seeks $242,243.58 in fees, with a claimed lodestar of $98,473 and a multiplier of 2.46.  ECF No. 318 at 12-13.  He contends that this amount, which is 1.64 percent of the $15.2 million benefit he and Fisher claim to have obtained for the class, ECF No. 325 at 15, is appropriate as "a small fraction of the 25% benchmark and the 22% awarded class counsel."  ECF No. 318 at 13.  As the Court has already found that Cashman cannot take credit for the $15.2 million reduction in attorney's fees, it rejects this framing.  It will instead award a lodestar payment.  *See In re Oracle Sec. Litig.*, 852 F. Supp. at 1449 (courts have discretion to use either the common fund or the lodestar approach when awarding fees in shareholder derivative suit).

Co-Lead Plaintiffs contest Cashman's $98,473 lodestar, noting that Cashman's attorney, Theodore H. Frank, failed to keep contemporaneous time records or discount time spent pursuing arguments that were duplicative or unsuccessful, and arguing that the rate he seeks is inflated.  ECF No. 322 at 23-28.  The Court rejects the latter argument, noting that the rates Cashman seeks

---

[3] The Court also wonders how it would react if a court in another jurisdiction ordered relief based on the specifics of a settlement reached in one of the Court's own cases.

[4] Co-Lead Plaintiffs' motion to submit additional facts and argument on this motion, *see* ECF No. 333, is also denied.

EXHIBIT A

United States District Court
Northern District of California

for his attorneys ($899 for Frank, $747 for another attorney, and $661 for two more junior

attorneys, *see* ECF No. 325-1 ¶¶ 26-27) are in line with the rates the Court approved for Co-Lead

Counsel (up to $1,075 for partners or "of counsel" attorneys and up to $660 for associates, *see*

ECF No. 312 at 20).  As for the contemporaneous record argument, the Court stated the following

in awarding fees to Co-Lead Counsel, who themselves had not provided contemporaneous

records:

> The Court agrees with Co-Lead Counsel that contemporaneous time
> records are not always required.  "California courts have . . . approved
> fee awards based on declarations describing the hours worked on
> various tasks, without providing underlying time records of the hours
> worked and the type of work performed."  *Ridgeway v. Wal-Mart
> Stores Inc.*, 269 F. Supp. 3d 975, 987 (N.D. Cal. 2017) (citing *Lunada
> Biomedical v. Nunez*, 230 Cal. App. 4th 459, 487-88 (2014)); *see also
> City of Colton v. Singletary*, 206 Cal. App. 4th 751, 785 (2012);
> *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 64 (2008).  The same is
> true in the Ninth Circuit.  *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115,
> 1121 (9th Cir. 2000).  And this district's local rules require only that
> the motion include "[a] statement of the services rendered by each
> person for whose services fees are claimed together with a summary
> of the time spent by each person, and a statement describing the
> manner in which time records were maintained," while providing the
> Court with discretion to require additional documentation. Civil L.R.
> 54-5(b)(2).

*Id.* at 26-27.

Frank has provided a declaration in which he briefly summarizes the work that he and his

colleagues performed on the case.  *See* ECF No. 318-2 ¶ 16 (estimating that Frank spent more than

25.1 hours editing the objections and his declaration, preparing for and attending the fairness

hearing, researching and drafting a response to the order to show cause, and monitoring filings);

*id.* ¶ 17 (estimating that Anna St. John spent 2.6 hours editing the objections); *id.* ¶ 18 (estimating

that Frank Bednarz spent 56.4 hours "reviewing the fee application and settlement and related

litigation, researching and drafting sections of the objection and declaration, and consulting on

case strategy, editing filings, and helping Mr. Frank prepare for the fairness hearing"); *id.* ¶ 19

(estimating that Adam Schulman spent 55.5 hours "researching and drafting sections of the

objection and consulting on case strategy, editing filings, [and] helping Mr. Frank prepare for the

fairness hearing and argument in the Ninth Circuit").  While this declaration provides the bare

minimum amount of detail required to support a fee award in the Ninth Circuit, *see Fischer*, 214

EXHIBIT A

F.3d at 1121, it does not allow the Court to determine whether Cashman's counsel have excluded time spent on objections that were not ultimately successful, *see Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) ("[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.").  However, the Court is mindful that "the determination of fees 'should not result in a second major litigation'" and seeks "to do rough justice, not to achieve auditing perfection."  *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 437).  Cashman's objections aided the Court in its decision to reduce the fee award to Co-Lead Counsel by more than $15 million.  In light of this figure, the Court finds that Cashman's requested lodestar of $98,473 provides reasonable compensation for the benefit he provided.

The Court denies the requested incentive award, however, finding unpersuasive Cashman's argument that he "exposed himself to the risk of private investigation and harassing discovery" – not that such discovery ever occurred – and that he refrained from engaging in the kind of objector blackmail he condemns in the context of the allegations against Fisher.  *See* ECF No. 318 at 13.

**CONCLUSION**

For the foregoing reasons, Objectors' motion for attorney's fees is GRANTED as to Cashman and denied as to Fisher.  Cashman is awarded $98,473 in fees, with no incentive payment.  Co-Lead Plaintiffs' motion for sanctions is DENIED.

**IT IS SO ORDERED.**

Dated:  March 4, 2021



_____
JON S. TIGAR
United States District Judge

EXHIBIT A