EDELSON PC
Jay Edelson (*pro hac vice*)
Benjamin H. Richman (*pro hac vice*)
Alexander G. Tievsky (*pro hac vice*)
350 North LaSalle Street, 14th Floor
Chicago, IL 60654
Telephone: (312) 589-6370
Fax: (312) 589-6379
jedelson@edelson.com

ROBBINS GELLER RUDMAN & DOWD LLP
Paul J. Geller (*pro hac vice*)
Stuart A. Davidson (*pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com

LABATON SUCHAROW LLP
Michael P. Canty (*pro hac vice*)
Corban S. Rhodes (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Fax: (212) 818-0477
mcanty@labaton.com

*Counsel for Plaintiffs*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re FACEBOOK BIOMETRIC INFORMATION PRIVACY LITIGATION <br><br> This Document Relates To: <br><br> ALL ACTIONS. | Master File No. 3:15-cv-03747-JD <br><br> <u>CLASS ACTION</u> <br><br> PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR APPEAL BONDS <br><br> Judge: Hon. James Donato <br> Courtroom: 11 – 19th Floor <br> Hearing Date: May 27, 2021 <br> Time: 10:00 a.m. |

In response to class counsel's motion to set standard appeal bonds of $5,000, Objector Kara Ross ("Ross") asks the Court to enter a lower bond through a two-page brief with no citation to authority or other evidence supporting her position, which violates this Court's rules. *See* Local Rule 7-4(a)(5). Counsel for Objectors Dawn Frankfother ("Frankfother") and Cathy Flanagan ("Flanagan") also ask for the imposition of a smaller bond, but have gone a step further and, notwithstanding raising arguments never before pressed in this Court (and, thus, foreclosed on appeal), used their response to carry out a criminal threat of blackmail.

"Objector blackmail is a well-known class and derivative action phenomenon whereby objectors use an appeal [of a class action or derivative settlement] as a means of leveraging compensation for themselves or their counsel." *In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 16-cv-05541-JST, 2021 WL 926706, at *4 (N.D. Cal. Mar. 4, 2021) (Tigar, J.) (internal quotation marks omitted). As class counsel explained to the Court in several previous filings, counsel for Objectors Frankfother and Flanagan, John Pentz ("Pentz"), is well-known for such behavior. (*See* Dkts. 507, 517, 541, 551.) Typically, such objector blackmail took the form of waiting for an objection to be overruled and then Pentz demanding a payment of fees to himself to not bring or drop a frivolous appeal. The recent amendments to Rule 23 that require the district court to sign off on any such payments have forced a change in strategy for Pentz and his ilk.

Class counsel did not anticipate, however, that Pentz would engage in the more traditional form of blackmail, by demanding a payment to stay silent about facts that the blackmailer perceives to be embarrassing or criminal. In advance of a mediation assessment conference in the Ninth Circuit, Pentz and his co-counsel Kendrick Jan ("Jan") threatened to expose what they claimed to be embarrassing and criminal actions by class counsel (although, as will be explained below, they are neither) unless class counsel agreed to settle the objection. According to Pentz and Jan, the alleged illegality of class counsel could be kept from this Court if class counsel mediated and agreed to a reduction in their fees such that Pentz and Jan could get paid substantially more in attorneys' fees than they have already requested from the Court. Immediately after class counsel refused to negotiate on these terms, Pentz and Jan made good on

their blackmail threat in their response to Plaintiffs' motion for an appeal bond, which they filed late on a Saturday night, days before the deadline.

First, the arguments in Frankfother and Flanagan's brief have almost nothing to do with the issue before the Court on this motion, and to the extent that they do, they are meritless. Second, Frankfother and Flanagan's brief makes sense only in the context of their counsel's blackmail scheme. And finally, Ross's threadbare objections to a $5,000 appeal bond can safely be disregarded.

## I. Frankfother and Flanagan's Arguments Are Waived And Irrelevant.

As is apparent from their opposition and host of exhibits, Frankfother and Flanagan's opposition has almost nothing to do with the issue of an appeal bond. They do not suggest that they are financially unable to post a bond, and they argue—without citation to anything at all—that the requested bond is too high. But given the varying costs of an appeal, $5,000 bonds are routine and claims of inability to pay without evidence are insufficient. *See Miletak v. Allstate Ins. Co.*, No. 06-cv-03778-JW, 2012 WL 3686785, at *2 (N.D. Cal. Aug. 27, 2012) (noting that "Objector . . . has presented no evidence that she would be unable to pay an appeal bond"). And while they promise that costs will not be difficult to collect, their actions, as discussed below, suggest that such representations are not to be trusted.

Instead, Frankfother and Flanagan focus almost solely on the second factor identified in *Zamora v. Lyft, Inc.*, No. 16-cv-02558-VC, 2018 WL 5819511, at *1 (N.D. Cal. Nov. 6, 2018): whether their arguments are likely to succeed on appeal. In support of their position, they argue – for the first time – that they are likely to win on appeal because one of the firms representing the class, Edelson PC ("Edelson"), purportedly filled out its Illinois lobbyist registration forms incorrectly. To be clear, Frankfother and Flanagan do not suggest that Edelson failed to register. Indeed, they attach years' worth of Edelson's registration forms. Rather, they argue that because Edelson did not list the named plaintiffs' and absent class members' names and addresses on those forms, all of the lobbying was "illegal" and cannot be counted as part of the lodestar cross-check.

Setting aside that the argument is utterly meritless, it has almost no chance to succeed on appeal because it is forfeited. Despite having many opportunities to do so, Frankfother and Flanagan have never brought this purported issue to the Court's attention until now, when the Court no longer has jurisdiction to consider its merits. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). The Ninth Circuit has held repeatedly that "an issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it." *Armstrong v. Brown*, 768 F.3d 975, 981 (9th Cir. 2014). Such issues will only be considered under "exceptional circumstances," and they will not be considered when, as here, the party trying to raise them makes no attempt at all to explain why those circumstances exist. *Club One Casino, Inc. v. Bernhardt*, 959 F.3d 1142, 1153 (9th Cir. 2020). Although Frankfother and Flanagan suggest that they have raised this issue and accuse the court of "ignor[ing]" it, (Dkt. 552 at 2), that is plainly false. If it were true, there would have been no need for them to submit a lengthy brief, dozens of pages of additional evidence, and another declaration to support their position. (*See* Dkt. 552-1, Declaration of Kendrick Jan dated May 1, 2021, and accompanying exhibits.) Focusing on an issue that has clearly been forfeited does not demonstrate that a litigant is likely to prevail on appeal. Just the opposite.

If, by some remote chance, the Ninth Circuit were to decide to exercise its discretion to consider a brand new argument that this Court never looked at, Frankfother and Flanagan still would not win because they are wrong on the law. The statute at issue is the Lobbyist Registration Act, which, among other things, requires that entities engaged in lobbying activities provide "[t]he name and address of the client or clients employing or retaining the registrant to perform such services or on whose behalf the registrant appears." 25 ILCS 170/5(b). The word "client," Frankforther and Flanagan fail to recognize, is a defined term meaning "any person or entity that *provides compensation* to a lobbyist to lobby State government . . . ." 25 ILCS 170/2(m) (emphasis added). Here, when Edelson submitted its lobbyist registration paperwork, neither the named plaintiffs nor any other class member were providing it with compensation to lobby the state government. Accordingly, Edelson determined that would have been incorrect to list them as clients and did not do so. Instead, it registered itself both as a lobbyist (because its

1  employees were personally engaged in lobbying activities) and as a client (because it paid
2  Tiffany Elking to engage in lobbying).

3        Even assuming, for a moment, that Edelson's good faith interpretation of the statute was
4  wrong and that it did fill out its paperwork incorrectly, Frankforther and Flanagan's conclusion
5  that this will somehow result in reversal of the fee award is mistaken. While the Court did
6  conduct a lodestar cross check, it determined that the fee was reasonable on a percentage basis,
7  not a lodestar basis. (*See* Dkt. 537 at 18-19.) As the Ninth Circuit explained to Pentz just last
8  month, a minor discrepancy or even an error in a lodestar calculation does not require reversal of
9  a percentage-based fee award. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 20-
10 15898, 2021 WL 1511501, at *2 n.3 (9th Cir. Apr. 16, 2021).

11       Further, Frankforther and Flanagan provide no explanation for their logical leap that
12 purportedly incorrect paperwork could transform Edelson's submission of lobbying time as part
13 of their lodestar into an illegal fee that must be returned and can never be cured. To be clear, the
14 time submitted involves work on behalf of the class by Edelson attorneys, not work contracted to
15 outside lobbyists. Nevertheless, the argument appears to be that due to the purported paperwork
16 mistake, the Court must assume that all of the lobbying time expended was actually on behalf of
17 another entity, and is therefore not correctly considered to be work on behalf of the class. (Dkt.
18 552 at 7.) But Frankforther and Flanagan fail to appreciate that there is no indication of any
19 actual wrongdoing. The lobbyist disclosure rules are intended to provide transparency in who
20 lobbies state government, and here, none of Edelson's lobbying activities have been kept a secret
21 from the Court, the Legislature, or the public. Edelson not only discussed the nature of its
22 employees' lobbying at length, but it submitted a declaration from Ms. Elking detailing her
23 lobbying as well. (Dkt. 465-4.) Further, Edelson has discussed its role this lawsuit in local and
24 national news on many occasions. *See, e.g.*, Tony Briscoe, *Suit: Facebook facial recognition*
25 *technology violates Illinois privacy laws*, CHI. TRIBUNE (April 1, 2015), https://bit.ly/33zfT7X;
26 Conor Dougherty, *Tech Companies Take Their Legislative Concerns to the States*, N.Y. TIMES
27 (May 27, 2016), https://nyti.ms/3y2fYyS; Ally Marotti, *Ill. law could force Facebook to pay*
28 *billions: Lawsuit alleges violations of biometric privacy in facial tagging*, CHI. TRIBUNE (April

17, 2018), https://bit.ly/3tGpqoe. Frankforther and Flanagan also never suggest what Edelson could possibly gain by intentionally skirting registration requirements in the way that they describe. The suggestion that Edelson's lobbyist paperwork is evidence of a nebulous, apparently pointless, yet somehow nefarious scheme is rebutted by the very disclosures that it filed demonstrating compliance with the Registration Act. At the very worst, these allegations involve a misunderstanding of what information needs to be on the requisite forms.

Even if Edelson was required to include information about the class on the form, the enforcement structure of the Registration Act confirms that Frankfother and Flanagan's claims of wronging doing are easily cured and not "illegal." The statute provides that its enforcement is delegated to the Secretary of State Inspector General, who "shall initiate investigations of violations of this Act upon receipt of credible evidence of a violation." 25 ILCS 170/11(a). In the event it finds such a violation, the Inspector General is required to notify the alleged violator in writing. As long as the alleged violator "agrees to take action to correct the alleged violation within 30 calendar days" and does so, the Inspector General is prohibited from referring the matter for prosecution. *Id.* In other words, if something is wrong with the lobbyist paperwork, then the solution is to fix the paperwork, not to assume that intentional violations of registration requirements have taken place.

Edelson believes that it has been fully transparent, and that it completed all of the lobbying paperwork related to this case correctly and in accordance with the law. If the Inspector General were to find an error and request a corrected disclosure form, Edelson would certainly comply. To date, it has heard nothing from that office. Nor, it appears, has Frankfother, Flanagan, Pentz, or Jan reported Edelson to the Inspector General to conduct an investigation.

## II.   Frankfother and Flanagan's Counsel Engaged in Blackmail.

Some additional context is required to understand why Frankfother and Flanagan are raising this new issue now in opposition to a short motion for an appeal bond. As noted above, that additional context involves unethical and potentially criminal blackmail on the part of attorneys Pentz and Jan. After their clients filed their notice of appeal and a mediation assessment conference with the Ninth Circuit mediator was scheduled, Pentz and Jan reached out

to class counsel Paul Geller individually inviting a conversation about a discrete issue about the conduct of one of the lead firm's fees. (Declaration of Paul J. Geller ¶ 3, attached as Exhibit A.) This was followed by an email from Pentz where he accused Edelson of violating Illinois law and stated that "our appeal is a challenge to a discrete component of the fee award with a value of $12 million that could be resolved by compromise. We suggest a mediation of this issue as a courtesy to Class Counsel in order to avoid the delay of an appeal **and embarrassment of Class Counsel if the lobbying issue is highlighted in a reported decision.**" (*Id.* at ¶ 4 (emphasis added).) On a subsequent phone call to class counsel, Pentz and Jan explained that the cost of resolving the appeal would be substantially more than they were requesting in their petition for fees for purportedly causing the reduction in class counsel's fee request from the Court. (*Id.* at ¶ 5.) In order to avoid what these attorneys believed to be embarrassing to Edelson or exposure of Edelson's purported illegality, Pentz and Jan intended to keep their allegations of Edelson's wrongdoing from this Court.

In California, "[e]xtortion is the obtaining of property or other consideration from another, with his or her consent . . . induced by a wrongful use of force or fear." Cal. Penal Code § 518. "Fear, such as will constitute extortion, may be induced by a threat": [t]o accuse the individual threatened . . . of a crime," "[t]o expose, or to impute to him, her, or them a deformity, disgrace, or crime," or "[t]o expose a secret affecting him, her, or them." Cal. Penal Code § 519. The federal extortion statute, while less specific, covers the same conduct. *See United States v. Koziol*, 993 F.3d 1160, 1182 (9th Cir. 2021) ("[W]e find nothing in the plain language of the statute that requires us to conclude that threats of reputational harm are not within the purview of the Hobbs Act."). Pentz and Jan's own words demonstrate that they attempted to blackmail class counsel, in the criminal sense of that word. To be clear: they threatened to expose what they believed to be a crime and an embarrassing secret about Edelson's lobbying unless they were paid.

It is likely not a coincidence that Pentz and Jan waited until their appeals were subject to a Ninth Circuit mediation assessment conference to engage in extortion. It is common for objectors to try to use the guise of a mediation to cover their attempts at extortion. *See, e.g.*,

*Clark v. Gannett Co.*, 122 N.E.3d 376, 382 (Ill. App. Ct. 2018). However, Ninth Circuit Rule 33 has been amended to clarify that the secrecy of mediation does not extend to cases where disclosure of what took place during that mediation is required by law. Illinois attorneys are required by law to report known misconduct to the appropriate disciplinary authority, and they can be subject to discipline for failure to do so. *In re Himmel*, 533 N.E.2d 790, 796 (1988) (suspending attorney for failure to report known misconduct by another attorney). Because the blackmail threat has been carried out in this Court, this Court is the appropriate disciplinary authority, and the undersigned Illinois attorneys ask that this brief constitute their report. *See* Local Rule 11-6(a) (providing for district judges, not attorneys, to refer matters for attorney discipline). They will also send copies of this brief to the state disciplinary authorities in California and Massachusetts and are determining whether it is appropriate to seek the involvement of federal or state law enforcement.

Class counsel is acutely aware at least one court has found an objector's attempt at extortion not to violate the federal extortion statute because it related to litigation. *Edelson PC v. Bandas Law Firm PC*, No. 16-cv-11057, 2018 WL 723287, at *8 (N.D. Ill. Feb. 6, 2018). In that action, Chief Judge Pallmeyer's advice was for Edelson to refuse to accede to objectors' extortionate demands and instead "place its trust in the courts, and their time-tested procedures[.]" *Id.* at *14 (internal quotation marks omitted). They, and their co-counsel, are now taking that advice. Frankfother and Flanagan have made almost no attempt to demonstrate that an appeal bond is inappropriate, having instead used their response brief as a means to carry out a blackmail scheme. Accordingly, there is no reason to deny the request for appeal bonds. Edelson trusts that the Court will take whatever further action it deems appropriate with respect to Pentz and Jan's unethical and likely criminal behavior.

### III. The Court Can Disregard Ross's Threadbare Arguments.

Finally, the other objector, Ross, has also filed a short response in opposition to the request for appeal bonds. She argues that the requested bond is too high and objects that it is improper for class counsel to argue that "courts in other cases have ordered other objectors to post this same bond amount." (Dkt. 553 at 1.) Citation to the decisions of other courts as

1  persuasive authority is a defining feature of the American legal system, so it is difficult to see
2  how this is problematic (Ross herself offers *ipse dixit* instead of such citations).
3        Ross also suggests that she would "financially struggle to post a bond of $5,000,"
4  although she did not bother to offer even a declaration to that effect. Although her failure to
5  submit evidence of her inability to pay may weigh this factor against her, *Miletak*, 2012 WL
6  3686785, at *2, she would likely be unable to make such a showing. Ross holds a position as
7  Assistant Professor of Political Science at Loyola University Chicago. While her salary is not a
8  matter of public record, documents filed by her employer with the U.S. Department of Labor
9  indicate that another assistant professor at the same university teaching a similar discipline was
10 paid a $79,000 salary in 2020. (*See* H1B LCA Details for LOYOLA UNIVERSITY CHICAGO
11 with Case Number I-200-20086-438347, attached as Exhibit B.) It seems unlikely that a $5,000
12 appeal bond would pose any substantial hardship to Ross.

### IV.   Conclusion.

Because neither objector has provided any authority for the proposition that a $5,000 appeal bond is inappropriate, the bond request should be granted.

DATED:  May 12, 2021

s/ Jay Edelson
Class Counsel

EDELSON PC
JAY EDELSON*
BENJAMIN RICHMAN*
ALEXANDER G. TIEVSKY*
350 North LaSalle Street, 14th Floor
Chicago, IL  60654
Telephone:  312/589-6370
312/589-6378 (fax)

EDELSON PC
RAFEY BALABANIAN (315962)
LILY HOUGH (315277)
150 California Street, 18th Floor
San Francisco, CA 94111
Telephone: 415/212-9300
415/373-9435 (fax)

|   |   |
|---|---|
| 1 | ROBBINS GELLER RUDMAN |
|   |   & DOWD LLP |
| 2 | PAUL J. GELLER* |
|   | STUART A. DAVIDSON* |
| 3 | 120 East Palmetto Park Road, Suite 500 |
|   | Boca Raton, FL  33432 |
| 4 | Telephone:  561/750-3000 |
|   | 561/750-3364 (fax) |
| 5 |   |
|   | ROBBINS GELLER RUDMAN |
| 6 |   & DOWD LLP |
|   | PATRICK J. COUGHLIN |
| 7 | ELLEN GUSIKOFF STEWART |
|   | LUCAS F. OLTS |
| 8 | RANDI D. BANDMAN |
|   | 655 West Broadway, Suite 1900 |
| 9 | San Diego, CA  92101 |
|   | Telephone:  619/231-1058 |
| 10 | 619/231-7423 (fax) |
| 11 | ROBBINS GELLER RUDMAN |
|   |   & DOWD LLP |
| 12 | SHAWN A. WILLIAMS (213113) |
|   | JOHN H. GEORGE (292332) |
| 13 | Post Montgomery Center |
|   | One Montgomery Street, Suite 1800 |
| 14 | San Francisco, CA  94104 |
|   | Telephone:  415/288-4545 |
| 15 | 415/288-4534 (fax) |
| 16 | LABATON SUCHAROW LLP |
|   | MICHAEL P. CANTY* |
| 17 | CORBAN S. RHODES* |
|   | 140 Broadway |
| 18 | New York, NY  10005 |
|   | Telephone:  212/907-0700 |
| 19 | 212/818-0477 (fax) |
| 20 | Attorneys for Plaintiffs and Class Counsel |